UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

STEPHEN M. WILSON, *et al.*,                :    07 Civ. 6176 (LTS)

                Plaintiffs,                :    **PRELIMINARY**
                                                         **PRE-TRIAL STATEMENT**

      -against-                :

IMAGESAT INTERNATIONAL N.V., *et al.*,       :

                Defendants.                :

------------------------------------------------------------------X

## PRELIMINARY PRE-TRIAL STATEMENT

Pursuant to paragraph 4 of the Court's initial conference order dated July 11, 2007, and Fed. R. Civ. P. 26(f), the parties respectfully submit the following Preliminary Pre-Trial Statement.

**(a)    STATEMENT OF THE NATURE OF THE ACTION**

A brief summary of each party's description of this action follows. The parties respectfully refer the Court to Plaintiffs' Complaint (filed July 2, 2007) and to Defendants' upcoming motions to dismiss the Complaint (which will be filed on October 15, 2007) for more complete descriptions of their views of the action.

**Plaintiffs' Position**

This is an action by minority security holders of Defendant ImageSat International N.V ("ImageSat"), a Netherlands Antilles (Curacao) company that is now headquartered in Israel but has regularly conducted business in New York. The Defendants include ImageSat; two of ImageSat's largest shareholders, Israel Aerospace Industries, Ltd. ("IAI") and Elbit Systems Ltd. ("Elbit"); and thirteen of their present and former directors and officers.

ImageSat's principal business is the sale of exclusive regional rights, under Satellite Operating Partner ("SOP") agreements, to the use of its two "EROS" high-resolution earth observation satellites. As the industrial suppliers of ImageSat's satellites which are by far the company's largest capital investments, IAI and Elbit and their personnel have always played a substantial role in ImageSat's operations. However, it was always understood, and represented to investors including Plaintiffs, that ImageSat would be run as an autonomous, apolitical commercial entity, whose business would be entirely separate and distinct from the businesses of IAI and/or Elbit. Contractual arrangements were entered into, and promises made, to protect the minority shareholders' rights and to guarantee the commitments made to them at the time of their investments.

Defendants have consistently breached these promises and violated their duties to the minority shareholders. Defendants have, among other things, blocked and interfered with ImageSat's ability to enter into various lucrative transactions, either to curry political and economic favor on behalf of themselves or their Israeli government sponsors, and/or because IAI (an Israeli government-owned company) and Elbit sought to usurp ImageSat's business opportunities for themselves. By reason of Defendants' wrongdoing, ImageSat has lost business opportunities and revenues amounting to hundreds of millions of dollars.

Defendants also have actively defrauded ImageSat and its shareholders. For example, from 2001 to 2006, IAI (and its satellite payload subcontractor Elbit) billed ImageSat for, and collected, tens of millions of dollars for work on a satellite known as the "2001 EROS B" satellite although, as alleged in the Complaint, the technical specifications for this satellite were never completed and no such satellite ever advanced to a material stage of construction.

Defendants have also intentionally damaged ImageSat and its minority shareholders through IAI's and Elbit's intentional breaches of a series of contracts establishing ImageSat as the "exclusive vehicle" for the commercialization of Israeli military earth observation satellite technology, which contracts were entered into in order to induce Plaintiffs to invest in the continuation of the then nearly defunct Israeli space program. Most recently, Defendants have breached the 2000 Master Agreement under which IAI agreed to provide ImageSat with exclusivity rights, non-compete rights, and rights of first refusal with respect to the commercialization of present and future IAI (Israeli military) earth observation satellite technology – which IAI has breached (i) by agreeing to commercialize its new synthetic aperture radar (SAR) earth observation satellites and services to a third-party corporation (in a transaction that in its initial phase is anticipated to result in revenues to IAI of up to $1.6 billion), and (ii) by seeking to sell satellite earth observation services from Israeli government financed and owned earth observation satellites to customers worldwide, including ImageSat's SOP customers, and in direct competition with ImageSat's proprietary SOP service concept. ImageSat, its defendant directors and officers (most of whom are designees of IAI and/or Elbit), and the other Defendants have done nothing to protect the rights of ImageSat and its minority shareholders in these and numerous other matters detailed in the Complaint.

As a result of Defendants' wrongful conduct, ImageSat is no longer an independent business providing apolitical commercial earth observation satellite services for the financial benefit of all of its shareholders, but instead has been converted to a thinly disguised "front" whose financial interests are subordinated to the financial, export, and political agenda of the Israeli defense establishment, comprised of its largest government and private defense contractors (IAI and Elbit respectively) and their Israeli military sponsors.

Defendants' conduct has consistently been characterized by multiple breaches of fiduciary duty, self-dealing, and other willfully fraudulent, deceptive, and oppressive acts, whose net effect, individually and cumulatively, has been to strip hundreds of millions of dollars of shareholder value from ImageSat and to further and wrongfully dilute and devalue or destroy each of the Plaintiffs' ownership interests in ImageSat. Plaintiffs, as disenfranchised minority shareholders and security holders of ImageSat, are the targeted victims of Defendants' wrongful acts and omissions. As described in more detail below, Plaintiffs' legal claims against Defendants include breaches of fiduciary duty, corporate waste, self-dealing, fraud, racketeering activity and violation of the RICO statute, fraudulent conveyances, breaches of contract, corrupt business practices, and other misconduct directed against ImageSat's minority shareholders and investors. Because many of the acts forming an integral part of Defendants' wrongful acts, including but not limited to virtually all of its private and institutional capital-raising activities, took place in New York, New York, and several of the governing documents are expressly to be governed by and construed under New York law, this Court represents the appropriate forum to redress Defendants' wrongful conduct.

**Defendants' (Other than Defendant DePalma) Position**

This is an action by investors and founding executives of ImageSat International N.V. ("the "Company"), a satellite company incorporated in the Netherlands Antilles with its principal place of business in Israel, alleging that certain financial difficulties the Company has encountered in recent years can be attributed to misconduct on the part of the Company's two largest shareholders, Israel Aerospace Industries ("IAI") and Elbit Systems, Ltd. ("Elbit"), and to fourteen individuals who currently or formerly served as directors and officers of the Company. Most of the Plaintiffs are not based in the United States, IAI and Elbit are based in Israel, thirteen of the fourteen individual defendants and based in Israel, and the allegations revolve around events that took place in Israel

and invoke interests of the Israel Ministry of Defense. Defendants believe that this lawsuit should not proceed in this Court on jurisdictional grounds or under the doctrine of *forum non conveniens*. Furthermore, the law of the Netherlands Antilles – which governs most of the claims under New York's internal affairs doctrine – does not give Plaintiffs standing to assert the majority of their claims.

If this lawsuit proceeds beyond the pleadings, Defendants will demonstrate based on a full evidentiary record that they acted at all times consistent with their duties as shareholders and directors and that each of the board decisions that the Plaintiffs second-guess through hindsight was a legitimate exercise of the directors' business judgment.

**Defendant DePalma's Position**

This is an action by investors and founding executives of the Company, alleging that certain financial difficulties the Company has encountered in recent years can be attributed to misconduct on the part of the Company's two largest shareholders, Israel Aerospace Industries Ltd. ("IAI") and Elbit Systems, Ltd. ("Elbit"), and to fourteen individuals who currently or formerly served as directors and officers of the Company.

Defendant DePalma acted at all times consistent with his duties as a shareholder and director and exercised his business judgment with respect to each of the board decisions challenged in the Complaint.

(b)     **STATEMENT AS TO BASES OF THIS COURT'S JURISDICTION**

**Plaintiffs' Position**

This Court has subject-matter jurisdiction over this action because Plaintiffs have asserted federal claims for relief under the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, over which the United States District Courts have subject matter jurisdiction

pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331.

Even if this action did not include RICO claims, this Court would still have subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(3), because this is an action between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." See also Tango Music, LLC v. DeadQuick Music, Inc., 348 F.3d 244, 245-46 (7th Cir. 2003); Scotts Co. v. Rhone-Poulenc, S.A., 347 F. Supp. 2d 543, 545 (S.D. Ohio 2004). With regard to the issue raised by Defendants below concerning the citizenship of defendant Jacob Weiss, if this becomes a matter of jurisdictional significance, discovery will be needed to ascertain the facts surrounding Mr. Weiss's citizenship and domicile. Moreover, even if the RICO claims are ultimately dismissed, the Court may exercise supplemental jurisdiction to retain the case under 28 U.S.C. § 1367.

**Defendants' (other than Defendant DePalma) Position**

This Court does not have subject matter jurisdiction. Plaintiffs have asserted jurisdiction based on the diversity of the parties, but defendant Jacob Weiss is alleged to be a citizen of Israel and the United States, but not a citizen of any state. As such, there can be no diversity jurisdiction because Mr. Weiss does not fit into any of the categories of parties for which diversity jurisdiction exists – citizens of states and "citizens or subjects of a foreign state" or "foreign states". See 28 U.S.C. §1332(a)(1)-(4). Because Section 1332 makes no provision for diversity jurisdiction in an action by or against such a person, courts have consistently held that the presence of a citizen of the United States who is not the citizen of a state, such as Mr. Weiss, automatically defeats diversity jurisdiction in any action. See Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828 (1989); see also Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 68 (2d Cir. 1990). The fact that Mr. Weiss is also a citizen of Israel does not change the analysis, because only the American citizenship of a dual citizen is recognized for purposes of diversity jurisdiction. See Action S.A. v. Marc Rich &

Co., Inc., 951 F.2d 504, 507 (2d Cir. 1991).

The Court also lacks federal question jurisdiction because, as Defendants will show in our motion to dismiss, the RICO claim, Plaintiffs' only federal claim, should be dismissed. If the RICO claim is dismissed, the court should decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). See Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 123-24 (2d Cir. 2006).

**Defendant DePalma's Position**

Defendant DePalma has no position as to the Court's jurisdiction over this action at this time.

(c) **STATEMENT OF ALL MATERIAL UNCONTESTED OR ADMITTED FACTS**

There are no material uncontested or admitted facts at this time.

(d) **STATEMENT OF ALL UNCONTESTED LEGAL ISSUES**

There are no uncontested legal issues at this time.

(e) **STATEMENT OF ALL LEGAL ISSUES TO BE DECIDED BY THE COURT**

Under a previous Stipulation and Order in this case, the parties have agreed that Defendants have until October 15, 2007 to answer or move against the Complaint. All Defendants have advised that they intend to move to dismiss the Complaint under Fed. R. Civ. P. 12(b). Defendants, individually and/or collectively, intend to raise the following legal issues in their motions to dismiss:

(i) Whether the Court has subject matter jurisdiction over the action;

(ii) Whether the Court has *in personam* jurisdiction over the Defendants;

(iii) Whether Israel is a more appropriate forum for the litigation of this action under the doctrine of *forum non conveniens*;

(iv) Whether Plaintiffs, as shareholders of a Netherlands Antilles corporation, have standing to assert claims against the company, its directors, and other shareholders relating to the internal affairs of the company;

(v)    Whether Plaintiffs have standing to allege against IAI and Elbit a breach of contractual agreements to which Plaintiffs are not parties; and whether Plaintiffs have standing to assert against IAI and Elbit a claim for fraudulent conveyance;

(vi)    Whether the option- and warrant-holder plaintiffs have standing to assert the claims in the complaint;

(vii)    Whether certain of the Claims for Relief are barred by the applicable statutes of limitations;

(viii)    Whether certain of Plaintiffs' claims are barred by the Foreign Sovereign Immunities Act and/or the doctrine of comity;

(ix)    Whether Plaintiffs have standing to assert the RICO claims and, if they do, whether those claims have been adequately pleaded;

(x)    Whether Plaintiffs' fraud claims satisfy Fed. R. Civ. P. 9(b); and

(xi)    Failure to state a claim.

(f)    **STATEMENTS OF MATERIAL DISPUTED FACTS**

Substantially all the material facts asserted by Plaintiffs in their Complaint are disputed at this time.

(g)    **STATEMENT OF THE LEGAL BASIS FOR EACH CAUSE OF ACTION AND COUNTERCLAIM ASSERTED**

**Plaintiffs' Position**

The First, Second, Third, Fourth, Fifth, and Sixth Claims for Relief are tort claims against various Defendants for breach of fiduciary duty. The legal basis of each of these claims is that each of the named Defendants breached the fiduciary duties of loyalty, care, candor, and good faith that it or he owed to ImageSat and ImageSat's shareholders with respect to the transactions, acts, and omissions discussed in each respective claim, or in the alternative, aided and abetted other

8

Defendants in such breaches of fiduciary duty.

The Seventh, Eighth, and Ninth Claims for Relief are claims against various Defendants for corporate waste. The legal basis of each of these claims is that each of the named Defendants committed or caused to be committed corporate waste of ImageSat's assets in connection with the transactions, acts, and omissions discussed in each respective claim.

The Tenth Claim for Relief is a claim against all Defendants for self-dealing, in that the Defendants engaged in inequitable self-dealing at the expense of ImageSat's shareholders in connection with the transactions, acts, and omissions discussed in the Complaint.

The Eleventh and Twelfth Claims for Relief are claims asserted against all Defendants under the Racketeer Influenced Corrupt Organization Act (RICO), 18 U.S.C. § 1961 *et seq*. The Eleventh Claim alleges that the defendants continuously conducted the business of one or more enterprises, in foreign and interstate commerce through a pattern of racketeering activity, including acts of mail fraud and wire fraud, in violation of 18 U.S.C. § 1964(c). The Twelfth Claim alleges that the defendants conspired to violate RICO, in violation of 18 U.S.C. § 1964(d).

The Thirteenth Claim for Relief is a claim asserted against all Defendants for common-law fraud, alleging that Defendants defrauded Plaintiffs in connection with the various transactions, acts, and omissions alleged in the Complaint. The legal basis for this claim is the tort doctrine of common-law fraud.

The Fourteenth, Fifteenth, and Sixteenth Claims for Relief are claims asserted against Defendants IAI and Elbit for breach of contract, alleging that these defendants breached identified provisions of the satellite supply contracts, master agreement, and stock purchase agreements referenced therein. The legal basis for this claim is the law of contracts.

The Seventeenth and Eighteenth Claims for Relief are claims asserted against Defendant

ImageSat in connection with the issuance to certain Plaintiffs of bridge warrants that were supposed to have an expiration term of ten years, but state that they have an expiration term of five years. The Seventeenth Claim is based on the doctrine of reformation, and asserts that what is believed to be an inadvertent scrivener's error in the drafting of the bridge warrants should be corrected. The Eighteenth Claim, asserted in the alternative, is based on the doctrine of common-law fraud.

The Nineteenth Claim for Relief is a claim asserted against Defendants IAI and Elbit for fraudulent conveyance in connection with the 2001 satellite supply contract. The legal basis for this claim is the statutory and common law of fraudulent transfers and conveyances.

The Twentieth Claim for Relief is a claim asserted against those Defendants who are natural persons seeking disgorgement of compensation paid to them in their capacities as directors, officers, and/or employees of ImageSat. The legal basis of this theory is the "faithless servant" doctrine and analogous principles of law.

The Twenty-First Claim for Relief is a claim against all Defendants for conversion and misappropriation of ImageSat's assets, based on all the transactions, acts, and omissions alleged in the Complaint. The legal basis for this theory is the tort doctrine of conversion.

The Twenty-Second Claim for Relief is a claim against all Defendants for unjust enrichment and restitution, based on all the transactions, acts, and omissions alleged in the Complaint. The legal basis for this theory is the equitable doctrines of unjust enrichment and restitution.

**Defendants' Position**

Defendants have not yet asserted any counterclaims.

(h)   **STATEMENT OF THE LEGAL BASIS FOR EACH DEFENSE ASSERTED OR EXPECTED TO BE ASSERTED**

With respect to their defenses on the pleadings, Defendants respectfully refer the Court to § (e) above, which outlines the arguments that Defendants will raise in their motions to dismiss to be

filed on October 15, 2007.

Defendants have not yet completed their analyses of all defenses they would raise on the merits should this case proceed beyond the pleadings stage, although the crux of each Defendant's defense is that such Defendant acted at all times consistent with his or its duties as directors and shareholders and that each of the directors exercised his respective business judgment based on the best interests of the Company and all of its shareholders.

(i)  **STATEMENT OF THE MEASURE OF PROOF AND ON WHOM BURDEN FALLS AS TO EACH CAUSE OF ACTION OR DEFENSE**

Plaintiffs bear the burden of proving, by a preponderance of the evidence, the elements of each of the claims for relief asserted in the Complaint. Plaintiffs bear the burden of proving that this Court has subject-matter jurisdiction over the action. Once Defendants raise their challenge to personal jurisdiction, Plaintiffs bear the burden of demonstrating that jurisdiction is appropriate. With regard to the other defenses, Defendants bear the burden of proving the elements of each defense

(j)  **AMENDED PLEADINGS, ADDITION OR SUBSTITUTION OF PARTIES AND PROPOSED DEADLINES THEREFOR**

The parties propose that the scheduling of deadlines for amending the pleadings and for adding or substituting parties take place after the Court has ruled on Defendants' motions to dismiss the Complaint.

(k)  **STATEMENT REGARDING CONSENT TO TRANSFER CASE TO MAGISTRATE JUDGE FOR ALL PURPOSES, INCLUDING TRIAL**

The parties have not consented to the transfer of this case to a United States Magistrate Judge for all purposes including trial.

(l)     **STATEMENT REGARDING CHANGES IN TIMING, FORM OR REQUIREMENTS OF RULE 26(a) DISCLOSURES, INCLUDING WHEN RULE 26(a)(1) DISCLOSURES WERE OR WILL BE MADE**

The parties will exchange initial Rule 26(a)(1) disclosures on October 9, 2007. The parties do not presently request any changes in the timing, form, or requirements of Rule 26(a) disclosures.

(m)     **STATEMENT OF SUBJECTS ON WHICH DISCLOSURE MAY BE NEEDED AND PROPOSED DISCOVERY CUT-OFF DATE**

**Plaintiffs' Position**

Disclosure will be needed in this action as to the facts underlying each of Plaintiffs' causes of action and legal theories. Disclosure will also be needed in this action with respect to Defendants' defenses to the Complaint, including defenses to be raised in Defendants' Rule 12(b) motions such as alleged lack of jurisdiction, *forum non conveniens*, and statute of limitations.

Plaintiffs propose that the scheduling of a discovery cut-off date and other deadlines take place after the Court has ruled on Defendants' motions to dismiss the Complaint, except that if discovery is needed in connection with Defendants' motions to dismiss, the parties will consult to establish, with the approval of the Court, an appropriate timetable for such discovery.

**Defendants' Position**

Defendants submit that it would be premature for merits-based discovery to take place until the Court has ruled on their motions to dismiss, particularly because those motions will address, among other things, whether this Court has jurisdiction over the action and the parties and whether, if it does, this Court is the appropriate forum for this litigation. Defendants have taken steps to ensure that all of their potentially relevant documents are being preserved. To the extent that discovery is appropriate in connection with their motions to dismiss for lack of personal jurisdiction, Defendants are prepared to consult with Plaintiffs to establish, with the approval of the Court, an appropriate timetable for such discovery after those motions are filed.

**(n) STATEMENT WHETHER AND TO WHAT EXTENT EXPERT EVIDENCE WILL BE REQUIRED AND PROPOSED DEADLINES FOR EXPERT DISCOVERY**

The parties anticipate that expert evidence may be required in this case on issues including, but not limited to, valuation and damages. The parties propose that deadlines for expert discovery should be established after Defendants' Rule 12(b) motions to dismiss are resolved, except that if any expert affidavits or reports are filed in connection with Defendants' motions to dismiss, the parties will consult to establish, with the approval of the Court, an appropriate timetable for any appropriate expert discovery.

**(o) STATEMENT AS TO CHANGES WHICH SHOULD BE MADE IN THE LIMITATIONS ON DISCOVERY, AND STATEMENT AS TO OTHER LIMITS WHICH SHOULD BE IMPOSED**

**Plaintiffs' Position**

In view of the size and complexity of the case and the number of parties on each side, that Fed. R. Civ. P. 30(a)(2)(A)(i), limiting the number of depositions to be taken by each side to ten, Fed. R. Civ. P. 30(d), limiting the duration of each deposition to seven hours, and Fed. R. Civ. P. 33(a), limiting the number of interrogatories that each party may serve, should be waived.

**Defendants' Position**

In light of the number of parties to the action and the fact there will also likely to be third-party discovery of witnesses in Israel and elsewhere, Defendants agree that the parties should be permitted to conduct some reasonable number of depositions beyond the limitation of ten per side. With regard to any other changes on the limitations on discovery, Defendants submit that this issue should be determined if and when this case moves beyond the pleadings stage.

**(p) STATEMENT AS TO STATUS OF SETTLEMENT DISCUSSIONS AND PROSPECTS FOR SETTLEMENT**

All parties to this action are represented by experienced counsel (including in-house counsel

in the case of most of the corporate parties), and it is anticipated that settlement discussions may occur in due course.

(q) **STATEMENTS REGARDING TRIAL WITH OR WITHOUT A JURY AND THE NUMBER OF TRIAL DAYS EXPECTED FOR EACH PARTY'S CASE**

The parties understand that all or most of the claims asserted in the Complaint are triable by jury upon demand by any party. To date, no party has demanded a jury trial, but the time for the parties to do so pursuant to Fed. R. Civ. P. 38(b) has not yet expired. The parties believe that at this stage it would be premature for them to estimate the number of trial days that will be required for the presentation of each party's case, except to state that the case will require substantial trial time.

(r) **OTHER MATTERS**

The parties have no other matters to raise with the Court at this time.

Dated: New York, New York
October 5, 2007

                                    Respectfully submitted,

                                    GANFER & SHORE, LLP

                                    By: _____
                                          Ira Brad Matetsky (IM1881)
                                          William A. Jaskola
                                          Matthew N. Tobias
                                          Matthew R. Maron
                                  360 Lexington Avenue
                                  New York, New York 10017
                                  (212) 922-9250
                                  (212) 922-9335 (facsimile)
                                  imatetsky@ganshore.com
                                  *Attorneys for Plaintiffs*

MILBANK TWEED HADLEY & McCLOY LLP

By: *Sander Bak* by SBm by permis

    Sander Bak (SB2263)
    Deborah Elman (DE2310)
1 Chase Manhattan Plaza
New York, New York 10005
(212) 530-5000
(212) 530-5219 (facsimile)
sbak@milbank.com
*Attorneys for Defendants ImageSat International*
  *N.V., Moshe Keret, Izhak Nissan, Jacob Weiss,*
  *Shimon Eckhaus, Gino Piperno-Beer, David*
  *Arzi, and Yoav Chelouche*


COHEN TAUBER SPIEVACK & WAGNER LLP

By: *Stephen Wagner* by SBm by permis

    Stephen Wagner
420 Lexington Avenue, Suite 2400
New York, New York 10170
(212) 586-5800
(212) 586-5095 (facsimile)
swagner@ctswlaw.com

-and-

PAUL, WEISS, RIFKIND, WHARTON &
  GARRISON LLP

By: *Eric S. Goldstein* by SBm by permis

    Eric S. Goldstein
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000
(212) 757-3990 (facsimile)
egoldstein@paulweiss.com
*Attorneys for Defendants*
  *Israel Aerospace International, Ltd.*
  *and Yehoshua Eldar*

15

GREENBERG TRAURIG, LLP

By: _____
      Simon J. Miller
200 Park Avenue
New York, New York 10166
(212) 801-9200
(212) 801-6400 (facsimile)
millersj@gtlaw.com
*Attorneys for Defendants*
  *Elbit Systems, Ltd., Joseph Ackerman,*
  *Michael Federman, Joseph Gaspar,*
  *and the Estate of Jacob Toren*


WEIL, GOTSHAL & MANGES LLP

By: _____
      Robert F. Carangelo (RC3162)
      Stacy Nettleton (SN1028)
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
(212) 310-8007 (facsimile)
robert.carangelo@weil.com
*Attorneys for Defendant James DePalma*