**מגדל**

**70 שנה**

חברה לביטוח בע"מ

| | |
|---|---|
| דף-1 | עותק למבוטח    999    אלביט מערכות בע"מ    51661-06 |

תעודת חידוש לפוליסת "חבות דירקטורים ונושאי משרה"
בכפיפות לכל הרשום בפוליסה המקורית ובתוספותיה.

דולר ארה"ב

| | |
|---|---|
| 295,000.00 | פרמיה נטו |
| .00 | דמי רישום |
| .00 | דמי פוליסה |
| .00 | הטלים |
| .00 | דמי בולים |
| 295,000.00 | לתשלום במזומן |
| 295,000.00 | סה"כ לתשלום |

ענף: 652    פוליסה: 06/2520000687/מ    תוספת: 0

שם בעל הפוליסה:
אלביט מערכות בע"מ    ELBIT STSTEMS
כתובת    : מרכז תעשיות מדע 1
חיפה
מס. מזהה : 520043027/ח    מיקוד: 31053
מס. מבוטח: 520043027
תקופת הביטוח: מ-28/09/06    שעה: 00:01
עד- 27/09/07    שעה: 24:00

כל הסכומים בדולר ארה"ב

| פרמיה שנתית | שעור הפרמיה | סכום הביטוח | תאור הכסוי |
|---|---|---|---|
| 295,000.00 | | 20000,000 | גבולות אחריות |

לכל מספר תובעים בקשר למקרה אחד או לסדרת
מקרים הנובעים ממקרה אחד ולכל הפיצויים
שיש לשלם במשך תקופת הביטוח.

הוצאות משפטיות:
עד 20% מעבר לגבולות האחריות בישראל בלבד.

השתתפות עצמית
-----------

לדירקטור ונושא משרה    - למקרה    1

לכל הדירקטורים ונושאי משרה - לתקופה    1

לחברה    75,000
לחברה (כולל הוצאות)    - $150,000    בכל תביעה בארה"ב וקנדה כולל תביעות EPL
לחברה (כולל הוצאות)    - $350,000    בארה"ב וקנדה בתביעות SEC ו-ENTITY COVER
לחברה (כולל הוצאות)    - $250,000    בשאר העולם בתביעות SEC ו-ENTITY COVER

תאריך רטרואקטיבי    00/00/01
מוצהר ומוסכם כי בנדגוד לאמור לעיל
תאריך רטרואקטיבי - בלתי מוגבל.

הנהלת החברה - רח' אפעל 4 קרית-אריה, פתח-תקוה 49511 ת.ד. 3063. פתח-תקוה 49130. טל. 03-9168888 פקס. 03-9168887
מערך עסקים - בנין אית-היולדר 1, קרית-אריה, פתח-תקוה 49512 ת.ד. 3063 פתח-תקוה 49130. טל. 03-9295050. פקס. 03-9295060
מרחב סנטרי - רח' חיצניה 4, קרית-אריה, פתח-תקוה 49512 ת.ד. 3063 פתח-תקוה 49130. טל. 03-9276868. פקס. 03-9276540
מרחב מרכז - רח' חיצניה 4, קרית-אריה, פתח-תקוה 49512 ת.ד. 3063 פתח-תקוה 49130. טל. 03-9276111. פקס. 03-9276200
מרחב צפון - שד' בן-גוריון 6, חיפה 35414. ת.ד. 9191 חיפה 31091. טל. 04-8352626. פקס. 04-8554455
מרחב ירושלים - רח' בן-יהודה 34, ירושלים 94230. ת.ד. 659 ירושלים 91006. טל. 02-6291291. פקס. 02-6244933

מגדל לשרותך
סרכז מידע ושירות לקוחות
טל. 03-920-1010
פקס. 03-920-1020
www.migdal.co.il

570100004

70 שהה

**מגדל**

חברת לביטוח בע"מ

דף-2                    עותק למבוטח                    51661-06 אלביט מערכות בע"מ 999
                                                       ענף: 652 פוליסה מ/2520000687/06    תוספת: 0
                                                       ELBIT STSTEMS
                                                       שם בעל הפוליסה: אלביט מערכות בע"מ

| תאור הכסוי | סכום הביטוח | שעור הפרמיה | פרמיה שנתית |
|---|---|---|---|

נוסח פוליסה: CORPORATE GUARD ISR 9/97 והתנאים המצורפים

מוצהר ומוסכם כי דפי רשימה אלו כפופים לדפי הרשימה והפוליסה המצ"ב

מוסכם ומוצהר בזה כי שטופס ההצעה שמולא ונחתם ע"י המבוטח
ושהעתקו מצורף בזה מהווה חלק בלתי נפרד מפוליסה זו.

                    סה"כ פרמיה שנתית 295,000.00

ה ר ח ב ו ת   ו ת ו ס פ ו ת

ג)1 ביטוח בדולרים
------------

מוצהר ומוסכם בזה כי:
א. "דולר" משמעו : דולר של ארצות הברית.
ב. תואיל וגבולות האחריות בפוליסה זו נקובים בדולרים לא יחול עליהם סעיף הצמדת
   גבולות האחריות שבתנאי הפוליסה.
ג. המבוטח ישלם לחברה את דמי הבטוח בשקלים שסכומם יחקבע לפי שער המטבע ביום
   הקובע כהגדרתם להלן.
ד. תגמולי בטוח בגין תביעות שהוערכו בדולרים ישולמו ע"י החברה בשקלים אשר
   יחושבו לפי שער המטבע ביום הקובע כהגדרתם להלן.
ה. "שער המטבע" : השער היציג של הדולר, האחרון שפורסם ע"י בנק ישראל סמוך לפני
   יום הקובע.
ו. "היום הקובע": 1) לצורך תשלום דמי הבטוח לחברה - היום בו שולמו דמי הבטוח
      בפועל לחברה.
   2) לצורך תשלום תגמולי הבטוח ע"י החברה - היום בו הוצא השיק
      ע"י החברה לפקודת המבוטח או המוטב.
ז. גבולות האחריות של החברה לכל תקופת הפוליסה,הרשומים בפוליסה ביום הוצאתה או
   ביום הוצאת תוספת תגדיל גבולות אחריות,ירופחתו - חל מיום תשלום התביעה -
   בסכום התביעה ששולם בשקלים כשהוא מומר לדולרים לפי שער המטבע ביום תשלום
   התביעה.

ג)2 תנאי תשלום דמי הביטוח.
-----------------

1. "תשלום במזומן" -    דמי הביטוח יסולקו במלואם תוך  28  יום מיום תחילת הביטוח.

2. "גביה רגילה" -    לא חתם המבוטח על טופס "שרות שיקים" לשם גבית דמי הביטוח
   על ידי חיוב חשבונו בבנק, ישולמו  דמי  הביטוח לחברה ב- 6
   תשלומים חודשיים רצופים.
   מועד התשלום הראשון תוך 21 יום מיום תחילת הביטוח או מיום

570100004

מטה החברה - רח' אפעל 4 קרית-אריה, פתח-תקוה 49511 ת.ד. 3063. פתח-תקוה 49130. טל. 03-9168888 פקס. 03-9168887
מוקד עסקים - משרד הנפקות - רח' היצירה 1, קרית-אריה, פתח-תקוה 49512 ת.ד. 3063 פתח-תקוה 49130. טל. 03-9295050 פקס. 03-9295060
מרחב סוכנויות - רח' היצירה 1, קרית-אריה, פתח-תקוה 49512 ת.ד. 3063 פתח-תקוה 49130. טל. 03-9276868 פקס. 03-9276540
מרחב מרכז - רח' היצירה 1, קרית-אריה, פתח-תקוה 49512. טל. 03-9276111 פקס. 03-9276540
מרחב צפון - שד' ג'-גוריון 1, חיפה 35414. ת.ד. 9191 חיפה 31091. טל. 04-8352626 פקס. 04-8554455
מרחב ירושלים - רח' בן-יהודה 34, ירושלים 94230. ת.ד. 659 ירושלים 91006. טל. 02-6291291 פקס. 02-6244933

מגדל לשירותך
מרכז מידע ושירות לקוחות
טל. 03-920-1010
פקס. 03-920-1020
www.migdal.co.il

**מגדל**

חברה לביטוח בע"מ

דף-3   עותק למבוטח   999   אלבדיט מערכות בע"מ   06-51661
ELBIT STSTEMS   תוספת: 0   פוליסה/מ/06 0687/2520000   ענף: 652
שם בעל הפוליסה: אלבדיט מערכות בע"מ

הוצאת הפוליסה - המאוחר ביניהם. בכל מקרה לא יחול תשלום
כלשהו לאחר תום תקופת הביטוח .

3.גביה ב"שרות שיקים" - חתם המבוטח על טופס  "שרות שיקים"  לשם גבית דמי הביטוח
על ידי חיוב חשבונו  בבנק ישולמו דמי הביטוח  בתשלומים
לשיעורין בהתאם לרשום בפסיקת "פירוט התשלומים" .

4.כל תשלום, לרבות  "תשלומי במזומן",  תשלום ע"י  "גביה ע"י תשלום או תשלום ע"י גביה
ב-"שרות שיקים", ישולם לחברה בשקלים לפי "שער המטבע" ביום התשלום.

ג)3 פיגור בתשלומי דמי הביטוח
----------------------

א. במקרה שהמבוטח לא ישלם את דמי הביטוח בשיעורים ובמועדים הנקובים בפוליסה,
   יהיה על המבוטח לשלם לחברה בגין כל סכום שלא שולם במועדו, הפרשי שער בהתאם
   לשינויים שיחולו בשער היצגיג של הדולר בתקופת הפיגור, בצירוף ריבית פיגגורים
   על פי השיעור המתפרסם על-ידי בנק לאומי לישראל לגבי הלואות נקובות בדולרים
   ארה"ב לתושבי ישראל, ביום פרעון הסכום שבפיגור.

ב. תקופת הפיגור תחושב חחל מהיום בו היה על המבוטח לשלם את דמי הביטוח כנקוב
   בפסיקת תנאי "תשלום דמי הביטוח" ובפסיקת "פרוט התשלומים" שברשימה, ועד למועד
   תשלום דמי הביטוח בפועל.

ג)4 שיפוט ישראלי
-------------

מוצהר ומוסכם בזה כי למרות כל דבר אחר הכתוב בפוליסה, החברה לא תהא חייבת לפצות
את המבוטח בעד כל סכום/ים שהמבוטח יחיה מחוייב לשלם לפי פסק דין שינתנו נגדו
ע"י בית משפט כלשהו שמושבו מחוץ לתחום שדפוטם של בתי משפט ישראליים (להלן "פסק
דין זר") או בעד כל סכום/ים שהמבוטח יהיה מחוייב לשלם לפי פסק דין של בית משפט
ישראלי הנותן תוקף לפסק דין זר או שמבוסס במישרין או בעקיפין על פסק דין זר
שניתן בקשר לתביעה נגד המבוטח.

ג)5
--------------------------------------------------------------

אם ישולם כל סכום של סכום הפרמיה הנקוב תוך 28 יום מיום תחילת
הביטוח ינוכו מהתשלום דמי האשראי.

מגדל חברת הביטוח בע"מ   זהיר לקוח ח/520043027
תאריך הדפסה: 24/10/06   (הדפסה חוזרת ב-15/02/07)
זהוי משני: 520043027
בוררדו: 10/06   מקיש: 008   מאשר: 8

מטה החברה/ד רח' אפעל 4 קרית-אריה, פתח-תקוה 49514 ת.ד. 3063, פתח-תקוה 49130 טל. 03-9168888 פקס. 03-9168887
מרכז עסקים - מנהל השירות רח' היצירה 1, קרית-אריה, פתח-תקוה 49512 ת.ד. 3063 פתח-תקוה 49130 טל. 03-9295050 פקס. 03-9295060
מרכז סוכנויות - רח' היצירה 1, קרית-אריה, פתח-תקוה 49512 ת.ד. 3063 פתח-תקוה 49130 טל. 03-9276868 פקס. 03-9276540
מרכז מערב - רח' היצירה 1, קרית-אריה, פתח-תקוה 49512 ת.ד. 3063 פתח-תקוה 49130 טל. 03-9276111 פקס. 03-9276200
מרחב צפון - שד' בן-גוריון 6, חיפה 35414 ת.ד. 31091 חיפה 9191 טל. 04-8352626 פקס. 04-8554455
מרחב ירושלים - רח' בן-יהודה 34, ירושלים 94230 ת.ד. 659 ירושלים 91006 טל. 02-6291291 פקס. 02-6244933
www.migdal.co.il   טל. 03-920-1010   פקס. 03-920-1020

**MIGDAL**
INSURANCE CO. LTD.



# *CorporateGuard*
# *for Directors & Officers*

*POLICY NUMBER: 2520000687/06*

4 Efal St., Kiryat-Aryeh, Petach Tikva, Israel 49511 P.O.B. 3063 Petach Tikva,
Israel 49130 Tel: 972-3-916-8888, Fax: 972-3-9168687 www.migdal.co.il

# *CorporateGuard*
# *for Directors & Officers*



## Schedule

|  |  |  |
|---|---|---|
|  | **Policy Number:** | 2520000687/06 |
| **Item 1.** | *Policyholder* | Elbit Systems Ltd. |
|  | **Address** | Advanced Technology Center , Haifa , 31053 |

**Item 2.**  *Policy Period*

From: 28.9.2006
To:    27.9.2007
(00:01 a.m. standard time at address in Item 1)

**Item 3.**  **Limit Of Liability**

Total aggregate for all *loss,* arising out of all *claims* made against all *insureds* under all insurance covers combined (including *defence costs* except as provided in 5.3 Limit of Liability) : $ 20,000,000

**Item 4.**  **Retention**

Insurance cover B and indefinable
*loss* : $ 150,000 in respect of USA/CANADA
   including EPL Claims
   excluding what is mentioning hereafter
   $ 350,000 in respect of USA/Canada in
   respect of SEC *Claims* and Entity *Claims*

   $ 75,000 in respect of the Rest of the World
      excluding what is mentioning hereafter
      $ 250,000 in respect of Rest of the World in
      respect of Entity *Claims* and SEC Claims

As specified in 5.4 Retention, only one retention shall be applied for *loss* arising from any *claim* or *claims* alleging a *single wrongful act.*

**Item 5.**  **Premium**

Net Premium payable: $ 295,000.-
Total premium payable: $ 295,000.-

**Item 6.**  *Continuity Dates*

(i)  Pending & prior litigation: 28.8.1994
(ii) Pollution *claims*: 28.8.1994

**Item 7**  **New Subsidiary Cover**

15 % as attached endorsement

**Item 8.**  *Jurisdiction*

World Wide Including USA/CANADA , however policy interpretation according to Israel law.

**Item 9.**  **Retroactive Date**

Unlimited

INSURANCE CO. LTD.



| Item 10. Wording | CorporateGuard Isr 9/97 |
|---|---|
| Item 11. Additional conditions | 1. Major Shareholder Exclusion – 20% |

1. Major Shareholder Exclusion – 20%
2. Prospectus Exclusion – Future
3. Total War and All terrorism Exclusion
4. Nuclear Facility Exclusion
5. Discovery Period Clause.
6. No Liability Retention waiver .
7. Professional Liability Exclusion with failure to supervise coverage
8. Patent / Intellectual Property Exclusion
9. Representation at Investigation Clause
10. Pollution Defence Costs ,UK only – GBP 250,000
11. Extension 4.2, New Subsidiary- Amended.
12. Extension 4.3, Outside Directorship –Amended.
13. Entity Cover Extension
14. Wording Amendments
15. Appendix A
16. Appendix B

**SIGNED FOR AND ON BEHALF OF THE INSURER**

DATE: 15/11/2006

# *CorporateGuard*
# *for Directors & Officers*

**70 Years**

**MIGDAL**

In consideration of the payment of the premium, the *insurer* agrees as follows:

## 1. Insurance Cover

### A: DIRECTORS AND OFFICERS LIABILITY

The *insurer* shall pay the *loss* of each *insured* resulting from any *claim* first made against the *insured* during the *policy period* and notified to the *insurer* during the *policy period* for any *wrongful act* in the *insured's* capacity as a *director* or *officer* of the *company* except for and to the extent that the *company* has indemnified the *insured*.

### B: CORPORATE REIMBURSEMENT

The *insurer* shall pay the *loss* of the *company* resulting from any *claim* first made against the *insured* during the *policy period* and notified to the *insurer* during the *policy period* for any *wrongful act* in the *insured's* capacity as a *director* or *officer* of the *company* but only when and to the extent that the *company* is permitted or required by the law, to indemnify the *insured* for the *loss*.

Subject to the terms and conditions of this policy, the *insurer* shall advance *defence costs* resulting from any *claim* before its final resolution.

## 2. Definitions

2.1   *Associated Company* means any company of which the *policyholder* owns on or before the inception of the *policy period* more than 20 per cent but less than 50 per cent of the issued and outstanding voting shares either directly or indirectly through one or more of its *subsidiaries*.

2.2   *Claim* means:
(i)   any suit or proceeding brought by any person or organisation against an *insured* for monetary damages or other relief, including non-pecuniary relief;
(II)         any written demand from any person or organisation that it is the intention of the person or organisation to hold an *insured* responsible for the results of any specified *wrongful act*;
    ( iii) any criminal prosecution brought against an *insured*;
    (iv) any administrative or regulatory proceeding or official investigation regarding any specified *wrongful act* of an *insured;*
Any *claim* or *claims* arising out of, based upon or attributable to a *single wrongful act* shall be considered to be a single *claim* for the purposes of this policy.

INSURANCE CO. LTD.



2.3  **Company** means the *policyholder* specified in Item 1 of the Schedule and any *subsidiary*, division, sector, region, product group or other internal company structure or segment detailed in an organisation chart or similar document and which has been granted this status by the *policyholder* or a *subsidiary* before the date of the *wrongful act*.

2.4  **Continuity date(s)** means the date(s) specified in Item 6 of the Schedule. The pending and prior litigation *continuity date* shall be the date from which the *policyholder* has maintained uninterrupted cover with the *insurer*, or with any other insurer if the initial proposal form submitted to such insurer is provided to and accepted by the *insurer* at the inception of this policy, or such other date(s) as agreed with the *insurer*.

2.5  **Defence costs** means reasonable and necessary fees, costs and expenses incurred with the written consent of the *insurer* (including premiums for any appeal bond, attachment bond or similar bond, but without obligation to apply for or furnish any bond) resulting solely from the investigation, adjustment, defence and appeal of any *claim* but shall not include the salary of any *insured*.

2.6  **Director** or **officer** means any natural person duly appointed or elected as a director, general manager, managing director, deputy general manager, or vice general manager of the *company*, and any other manager who is directly subject to the authority of the general manager, and any other natural person who fulfils a function mentioned above, even if his title differs therefrom.

2.7  **Discovery period** means the period of time specified in Extension 4.4, immediately following the termination of this policy during which written notice may be given to the *insurer* of any *claim* first made against the *insured* during such period of time for any *wrongful act* occurring prior to the end of the *policy period* and otherwise covered by this policy.

2.8  **Employment practice claim** means any *claim* or series of related *claims* relating to a past present or prospective employee of the *company* and arising out of any actual or alleged unfair or wrongful dismissal, discharge or termination, either actual or constructive, of employment, employment-related misrepresentation, wrongful failure to employ or promote, wrongful deprivation of career opportunities, wrongful discipline; failure to furnish accurate job references; failure to grant tenure or negligent employee evaluation; or sexual or workplace or racial or disability harassment of any kind (including the alleged creation of a harassing workplace environment); or unlawful discrimination, whether direct, indirect, intentional or unintentional, or failure to provide adequate employee policies and procedures, provided that the cause of action stipulated in the *claim* does not arise under or derive from infringement of any specific Labor Law, or any stipulation in a group agreement which the *company* is subject to.

INSURANCE CO. LTD.



2.9   **Full annual premium** means the annual premium level in effect immediately prior to the end of the *policy period*.

2.10  **Insured** means any natural person who was, is, or shall become a *director* or *officer* of the *company*. Cover will automatically apply to any natural person who becomes a *director* or *officer* after the inception date of this policy.

2.11  **Insurer** means the New Hampshire Insurance Company.

2.12  **Loss** means damages, judgments, settlements and *defence costs;* however, *loss* shall not include civil or criminal fines or penalties imposed by law, non-compensatory damages including punitive or exemplary damages (other than damages awarded for libel and slander), taxes, any amount for which the *insured* is not legally liable or matters which may be considered uninsurable under the law pursuant to which this policy shall be construed. Damages, judgments, settlements and *defence costs* incurred in more than one *claim* against the *insured* but resulting from a *single wrongful act* shall constitute a single *loss.*

2.13  **No liability** means:
   (a) a final judgment of no liability obtained prior to trial in favor of all *insureds* by reason of a motion to dismiss or a motion for summary judgment after the exhaustion of all appeals; or
   (b) a final judgment of no liability obtained after trial in favor of all *insureds,* after the exhaustion of all appeals.
      In no event shall the term *no liability* apply to a *claim* made against an *insured* for which a settlement has occurred.

2.14  **Not-for-profit entity** means an entity registered in the Not For Profit Registrar according to the Israeli Not For Profit Entity Law, 1980, or any similar entity organised under the laws of any other jurisdiction, or a trade association which for the purposes of this policy shall mean a body of persons, whether incorporated or not, which is formed for the purpose of furthering the trade interests of its members, or of persons represented by its members.

2.15  **Outside entity** means any *associated company,* any *not-for-profit entity* or any other corporation, partnership, joint venture or other organisation, which has been listed by endorsement to this policy.

2.16  **Policyholder** means the organisation specified in Item 1 of the Schedule.

2.17  **Policy period** means the period of time from the inception date to the expiry date specified in Item 2 of the Schedule.

2.18  **Pollutants** include (but are not limited to) any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes (but is not limited to) material to be recycled reconditioned or reclaimed.

2.19 *Security* means any note, stock, bond, debenture, evidence of indebtedness, share or other equity or debt security of the *company,* and shall include any certificate of interest or participation in, receipt for, warrant or other right to subscribe to or purchase, voting trust certificate relating to, certificate of **MIGDAL** deposit for, or other interest in any of the foregoing.

2.20 *Single wrongful act* means a *wrongful act* or any related, continuous or repeated *wrongful acts,* whether committed by the *insured* individually or by more than one *insured* and whether directed to or affecting one or more than one person or legal entity.

2.21 *Subsidiary* means companies in which the *policyholder,* either directly or indirectly through one or more of its *subsidiaries;*
  1.    controls the composition of the board of directors; or
  2.    controls 50% or more of the voting power; or
  3.    Holds 50% or more of the issued share capital.
  Cover for any *claim* against any of the *directors, officers* and employees of any *subsidiary* shall apply only for *wrongful act(s)* committed while such company is a *subsidiary* of the *policyholder.* However, upon written request by the *policyholder,* the *insurer* shall consider, after assessment and evaluation of the increased exposure, granting cover for *wrongful act(s)* committed prior to the acquisition of the *subsidiary* by the *policyholder.*

2.22 *Transaction* means any one of the following events:
  (A) the *policyholder* consolidates with or merges into or sells all or substantially all of its assets to any other person or entity or group of persons and/or entities acting in concert; or
  (B) any person or entity, whether individually or together with any other person or persons, entity or entities acquires an amount of the outstanding shares representing more than 50 per cent of the voting power for the election of *directors* of the *policyholder,* or acquires the voting rights for such an amount of the shares.

2.23 *Wrongful act* means any actual or alleged breach of duty, breach of trust, neglect, error, misstatement, misleading statement, omission, breach of warranty of authority or other act by the *insured* in their respective capacities as a *director* or *officer* of the *company* or as a director or officer of any *outside entity,* or any matter claimed against them solely because of their status as a *director* or *officer* of the *company.*

INSURANCE CO. LTD.



## 3. Exclusions

The *insurer* shall not be liable to make any payment for *loss* in connection with any *claim* made against the *insured:*

3.1   arising out of, based upon or attributable to:

1.   the gaining in fact of any personal profit or advantage to which the *Insured* was not legally entitled;

2.   profits in fact made from the purchase or sale by the *insured* of *securities* of  the *company* within the meaning of Section 16(b) of the Securities Exchange Act of 1934 (USA) and any amendments thereto or similar provisions of any state statutory law;
The committing in fact of any dishonest or fraudulent act.
For the purpose of determining the applicability of these exclusions, the *wrongful act* of any *insured* shall not be imputed to any other *insured*. These exclusions shall only apply if it is established through a judgment, or any other final adjudication adverse to the *insured,* or any admission by an *insured* that the relevant conduct did in fact occur;

3.2   arising out of, based upon or attributable to the facts alleged or to the same or related *wrongful act(s)* alleged or contained in any *claim* which has been reported or in any circumstances of which notice has been given under any policy of which this policy is a renewal or replacement or which it may succeed in time;

3.3   arising out of, based upon or attributable to any pending or prior litigation as of the pending and prior litigation *continuity date* specified in Item 6 (i) of the Schedule, or alleging or deriving from the same or essentially the same facts as alleged in the pending or prior litigation;

3.4   which are brought by or on behalf of any *insured* or the *company;* provided, however, that this exclusion shall not apply to:
(i) any *employment practice claim* brought by any *insured;*
(ii) any *claim* brought or maintained by an *insured* for contribution or indemnity, if the *claim* directly results from another *claim* otherwise covered under this policy;
(iii) any shareholder derivative action brought or maintained on behalf of the *company* without the solicitation, assistance or participation of any *insured* or the *company;*
(iv) any *claim* brought or maintained by a liquidator, receiver or administrative receiver either directly or derivatively on behalf of the *company* without the solicitation, assistance or participation of any *insured* or the *company;*
(v) any *claim* brought or maintained by any former *director* or *officer* of the *company.*

3.5   arising out of, based upon or attributable to or in any way involving, directly or indirectly, the actual, alleged or threatened discharge, dispersal, release or escape of *pollutants;* or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralise *pollutants,* nuclear material or nuclear waste

INSURANCE CO. LTD.

Provided, however, that this exclusion shall not apply to any *claim* made against the *insured* by any shareholder of the *company* either directly or derivatively, alleging damage to the *company* or its shareholders, unless on or before the pollution *continuity date* specified in Item 6 (ii) of the Schedule, the *company,* the *insured* or any employee of the *company* with managerial responsibilities over environmental affairs, control or compliance, knew or could have reasonably foreseen that there existed any situation, circumstance or *wrongful act* which could have given rise to a *claim* against the *company,* or the *insured.*

3.6    in a capacity as trustee or fiduciary under law (statutory or non-statutory including common) or administrator of any pension, profit sharing or employee benefits program, including but not limited to an actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974 (USA) or the Pensions Act 1995 (UK) and any amendments thereto or any similar provisions of the law, common or statutory, of any state, territory, jurisdiction, or political subdivision thereof;

3.7    arising out of, based upon or attributable to any act or omission in the *insured's* capacity as a director or officer of any entity other than the *company,* or by reason of the *insured's* status as a director or officer of the other entity, other than as provided in Extension 4.3;

3.8    for bodily injury, sickness, disease, death or emotional distress of any person, or damage to or destruction of any tangible property, including loss of use thereof; provided, however, that any *claim* for emotional distress shall not be excluded with respect to an *employment practice claim.*

# 4. Extensions

Subject to all of the terms and conditions of this policy, cover is extended as follows:

### 4.1    *Representation at Investigations and Examinations*

This policy shall provide cover for any reasonable and necessary fees, costs and expenses incurred with the prior written consent of the *insurer* resulting from any legally required attendance by any *director* or *officer* of the *company* at any official investigation, examination, inquiry or other similar proceeding in relation to the affairs of the *company.*

If the *director* or *officer* of the *company* believes that as a result of such official investigation, examination, inquiry or other similar proceeding, circumstances exist which may reasonably be expected to give rise to a *claim,* notice must be given to the *insurer* of the circumstances and the reasons for anticipating a *claim,* with full particulars as to dates and persons involved in accordance with General provision 5.5.

INSURANCE CO. LTD.

### 4.2    *New Subsidiaries*

Cover under this policy is extended to any *subsidiary* which the *policyholder* acquires or creates after the inception date of this policy provided that the *subsidiary:*

1.    has total gross assets which are less than the amount specified in Item 7 of  the Schedule either in the United States of America or Canada;
           And

2.    Does not have a listing of any of its *securities* on any exchange in the United States of America or Canada.

If a newly acquired or created *subsidiary* fails to meet conditions (i) and (ii) above the *policyholder* may request an extension of this policy for such *subsidiary* provided that the *policyholder* shall give the *insurer* sufficient details to permit the *insurer* to assess and evaluate the *insurer's* potential increase in exposure. The *insurer* shall be entitled to amend the policy terms and conditions, during the *policy period,* including by the charging of a reasonable additional premium.

Unless otherwise agreed, cover as is afforded to the *directors* or *officers* of any *subsidiary* by virtue of this extension shall only apply for *wrongful act(s)* committed while such company is or was a *subsidiary* of the *policyholder.*

### 4.3    *Outside Directorships*

Cover includes *loss* arising from any *claim* made against any *insured* who was, is or may become, at the specific request of the *company,* a director or officer of any *outside entity* for any *wrongful act* in the *insured's* capacity as a director or officer of the *outside entity.*

This cover shall be specifically excess of any insurance in force in respect of the *outside entity* as well as any indemnification provided by the *outside entity.* If the other insurance is provided by the *insurer* or any member company of American International Group (or would be provided except for the application of the retention amount or the exhaustion of the limit of liability), then the total aggregate limit of liability for all *loss* covered by virtue of this extension shall be reduced by the limit of liability specified in the schedule of the other American International Group insurance provided to the *outside entity.*

The cover provided by this clause shall not apply in connection with any *claim* made against any *insured* by the *outside entity,* any of its directors or officers or any shareholder of the *outside entity* holding more than 20 per cent of the issued and outstanding voting share capital of the *outside entity.*

### 4.4    *Discovery Period*

If the *policyholder* refuses to renew this policy, then the *policyholder* shall have the right, upon payment of an additional premium of 25 per cent of the *full annual premium* to a *discovery period* of 12 months following the effective date of non-renewal.

If the *insurer* refuses to offer any terms or conditions to renew this policy, then the *policyholder* shall have the right upon payment of an additional premium of 25 percent of the *full annual premium* to a *discovery period* of 12 months following the effective date of non-renewal.

INSURANCE CO. LTD.

The *insured* shall be entitled to a 30 day *discovery period* at no additional premium if this policy is not renewed by either the *policyholder* or the *insurer*. If the *policyholder* elects to purchase a *discovery period*, this 30 day *discovery period* shall be part of and not in addition to the purchased *discovery period*.

To purchase the *discovery period*, the *policyholder* must request its purchase in writing within 15 days of the termination date of the policy and must tender the additional premium within 30 days of the termination date. The additional premium is not refundable and the *discovery period* is not cancelable.

If a *transaction* takes place, then the *policyholder* shall not have the right to purchase a *discovery period* as set out above. However, the *policyholder* shall have the right within 30 days of the end of the *policy period* to request an offer from the *insurer* of a *discovery period* for up to 72 months. The *insurer* shall offer a *discovery period* with terms, conditions and premium as the *insurer* may reasonably decide.

### 4.5 *Heirs, Estates and Legal Representatives*

If an *insured* dies, becomes incompetent, insolvent or bankrupt, this policy shall cover *loss* arising from any *claim* made against the estate, heirs, or legal representatives of the *insured* for any *wrongful act* of such *insured*.

### 4.6 *Joint Property Liability*

This policy shall cover *loss* arising from any *claim* made against the lawful spouse (whether that status is derived by reason of the statutory law, common law or otherwise of any applicable jurisdiction in the world) of an *insured* for any *claim* arising out of his or her status as the spouse of an *insured* including any *claim* that seeks damages recoverable from marital community property or property jointly held by the *insured* and the spouse; provided, however, that this extension shall not afford cover for any *claim* for any *wrongful act* of the spouse and that this policy shall apply only to *wrongful act(s)* of an *insured*.

## 5. General provisions

### 5.1 *Representation*

In granting cover to any one *insured,* the *insurer* has relied upon the material statements and particulars in the proposal together with its attachments and other information supplied. These statements, attachments and information are the basis of cover and shall be considered incorporated and constituting part of this policy.

### 5.2 Changes in Risk During Policy Period

(i) If during the *policy period* a *transaction* takes place, then the cover provided under this policy is amended to apply only to *wrongful act(s)* committed prior to the effective date of the *transaction*.

**MIGDAL**
INSURANCE CO. LTD.



(ii) If during the *policy period*, the *company* decides to make an initial offering of its *securities* in any jurisdiction, whether its *securities* are already traded or not, by any means, public or private, then as soon as the information is publicly available, the *company* shall provide the *insurer* with any prospectus or offering statement for the *insurer's* evaluation and assessment of the increased exposure of the *insured* and the *insurer* shall be entitled to amend the terms and conditions of this policy and/or charge a reasonable additional premium reflecting the increase in exposure.

At the *policyholder's* request, prior to the public announcement of such *securities* offering, the *insurer* shall evaluate and assess the increased exposure and advise of all necessary amendments to the terms and conditions of this policy and additional premium.
In this event and at the request of the *policyholder*, the *insurer* will enter into a confidentiality agreement with the *policyholder* relating to any information provided regarding the proposed *securities* offering.

### 5.3    *Limit of Liability*
The limit of liability specified in Item 3 of the Schedule is the total aggregate limit of the *insurer's* liability for all *loss*, arising out of all *claims* made against all *insureds* under all insurance covers under this policy combined. The limit of liability for the *discovery period* shall be part of and not in addition to the total aggregate limit of liability for the *policy period*. *Loss* arising from any *claim* which is made subsequent to the *policy period* or *discovery period* which pursuant to General provision 5.5 is considered made during the *policy period* or *discovery period* shall also be subject to the same total aggregate limit of liability. *Defence costs* are not payable by the *insurer* in addition to the total aggregate limit of liability. *Defence costs* are part of *loss* and are subject to the total aggregate limit of liability for *loss*.
Notwithstanding the above, and solely in respect of a *claim* filed against an *insured* within the jurisdiction of the courts of Israel, it is agreed that in the event of a *loss*, including *defence costs*, exceeding the total aggregate limit of liability for *loss*, then this policy shall cover *defence costs* up to an amount not exceeding 20 per cent of the total aggregate limit of liability for *loss*, it being expressly agreed that this amount represents « reasonable legal costs » for the purpose of article 66 of the Insurance Contract Law, 5741-1981.

### 5.4    *Retention*
The *insurer* shall only be liable for the amount of *loss* arising from a *claim* which is in excess of the retention amount specified in Item 4 of the Schedule with regard to all *loss* under all insurance covers under this policy for which the *company* has indemnified or is permitted or required to indemnify the *insured*. The retention amount is to be borne by the *company* and shall remain uninsured. A single retention amount shall apply to *loss* arising from all *claims* alleging a *single wrongful act*.

INSURANCE CO. LTD.

Provided, however, that no retention shall apply and the *insurer* shall thereupon reimburse any *defence costs* paid by the *company*, in the event

(i)    A determination of *no liability* of all *insureds*, or

(ii)    A dismissal or a stipulation to dismiss the *claim* without prejudice and without the payment of any consideration by any *insured*. Provided, however, that in the case of (ii) above, such reimbursement shall occur 90 days after the date of dismissal or stipulation as long as the *claim* is not re-brought (or any other *claim* which is subject to the same single retention by virtue of this General provision 5.4 is not brought) within that time, and further subject to an undertaking by the *company* in a form acceptable to the *insurer* that such reimbursement shall be paid back by the *company* to the *insurer* in the event the *claim* (or any other *claim* which is subject to the same single retention by virtue of this General provision 5.4) is brought after such 90 day period.

5.5    *How to Give Notice and Report a Claim*

(i)    Notice of a *claim* or of circumstances which may result in a *claim* shall be given in writing to Financial Lines Claims, Migdal Insurance Company Ltd., 26 Sa'adia Ga'on St. Tel-Aviv, 20310, If posted the date of posting shall constitute the date that notice was given, and proof of posting shall be sufficient proof of notice.

(ii)    The *company* or the *insured* shall, as a condition precedent to the obligations of the *insurer* under this policy, give written notice to the *insurer* of any *claim* made against an *insured* as soon as practicable and either:

(a) Any time during the *policy period* or during the *discovery period;* Or

(b) Within 30 days after the end of the *policy period* or the *discovery period*, as long as such *claim(s)* is reported no later than 30 days after the date such *claim* was first made against an *insured*.

(iii)    If, during the *policy period* or during the *discovery period* written notice of a *claim* against an *insured* has been given to the *insurer* pursuant to the terms and conditions of this policy, then any *claim* arising out of, based upon or attributable to the facts alleged in the *claim* previously notified to the *insurer* or alleging a *single wrongful act* which is the same as or related to any *wrongful act* alleged in the previously notified *claim*, shall be considered made against the *insured* and reported to the *insurer* at the time the first notice was given.

(iv)    If during the *policy period* or during the *discovery period*, the *company* or the *insured* shall become aware of any circumstances which may reasonably be expected to give rise to a *claim* being made against an *insured* and shall give written notice to the *insurer* of the circumstances and the reasons for anticipating a *claim*, with full particulars as to dates and persons involved, then any *claim* which is subsequently made against an *insured* and reported to the *insurer* arising out of, based upon or attributable to the circumstances or alleging any *wrongful act* which is the same as or related to any *wrongful act* alleged or contained in those circumstances, shall be considered made against the *insured* and reported to the *insurer* at the time the notice of the circumstances was first given.

INSURANCE CO. LTD.

**5.6**    *Advancement of Costs*

The *insurer* shall advance to the *insured* or the *company defence costs* under all insurance covers under this policy before the final disposition of the *claim*.

The advance payments by the *insurer* shall be repaid to the *insurer* by the *company* or the *insured,* severally according to their respective interests, in the event and to the extent that the *company* or the *insured* shall not be entitled to payment of the *loss* under the terms and conditions of this policy. In the event and to the extent that the *company* is permitted or required to indemnify the *insured* but for whatever reason fails to do so, the *insurer* will advance all *defence costs* to the *insured* on behalf of the *company*. In this case, however, the retention amount specified in Item 4 of the Schedule shall be repaid by the *company* to the *insurer,* unless the *company* is insolvent.

**5.7**    *How Defence Will Be Conducted*

The *insured* shall have the right and duty to defend and contest any *claim*. The *insurer* shall have the right to effectively associate with the *insured* and the *company* in the defence and settlement of any *claim* that appears reasonably likely to involve the *insurer,* including but not limited to effectively associating in the negotiation of any settlement.

The *insured* shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment or incur any *defence costs* without the prior written consent of the *insurer* as a condition precedent to the *insurer's* liability for *loss* arising out of the *claim*.

Only those settlements, stipulated judgments and *defence costs*, which have been consented to by the *insurer,* shall be recoverable as *loss* under the terms of this policy. The *insurer's* consent shall not be unreasonably withheld, provided that the *insurer* shall be entitled to effectively associate in the defence and the negotiation of any settlement of any *claim* in order to reach a decision as to reasonableness.

The *company* and the *insured* shall give the *insurer* full co-operation and all information as it may reasonably require as a condition precedent to the *insurer's* liability for *loss* arising out of the *claim*. In the event that a dispute arises between the *insurer* and the *insured* regarding whether or not to contest any legal proceedings, neither the *insured* nor the *company* shall be required to contest any legal proceedings unless a Queen's Counsel or equivalent (to be mutually agreed by the *policyholder* and the *insurer*) shall advise that the proceedings should be contested. The cost of the Queen's Counsel shall be borne by the *insurer*.

**5.8**    *Allocation*

(i)    The *insurer* has no obligation under this policy for *defence costs* incurred by the *company*, or any judgments rendered against or settlements by the *company*, or any obligation to pay *loss* arising out of any legal liability that the *company* has to the third party claimant. Accordingly, with respect to:

(a) *defence* costs jointly incurred by;

(b) Any joint settlement made by; and/or

(c) Any adjudicated judgment of joint and several liabilities rendered against

INSURANCE CO. LTD.



The *company* and any *insured*, the *company* and the *insured* and the *insurer* agree to use their best efforts to determine a fair and proper allocation of the amounts as between the *company* and the *insured* and the *insurer*, taking into account the relative legal and financial exposures of and the relative benefits obtained by the *insured* and the *company*.

(ii) In the event that any *claim* involves both covered matters and matters not covered under this policy, a fair and proper allocation of any *defence costs*, judgments and/or settlements shall be made between the *company*, the *insured* and the *insurer* taking into account the relative legal and financial exposures attributable to covered matters and matters not covered under this policy.

(iii) In the event that a determination as to the amount of *defence costs* to be advanced to the *insured* under this policy cannot be agreed to, then the *insurer* shall advance *defence costs which* the *insurer* states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law.

### 5.9 *Cancellation Clause*

This policy may be cancelled by the *policyholder* at any time only by mailing written prior notice to the *insurer* or by surrender of this policy to the *insurer* or to its authorised agent. This policy may also be cancelled by or on behalf of the *insurer* by delivering to the *policyholder*, or by mailing to the *policyholder*, by registered, certified, or other first class mail, at the *policyholder's* address as shown in Item 1 of the Schedule, written notice stating when, not less than sixty (60) days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The *policy period* terminates at the date and hour specified in such notice or at the date and time of surrender.

If this policy shall be cancelled by the *policyholder*, the *insurer* shall retain the customary short rate proportion of the premium hereon.

If the insurer shall cancel this policy, the *insurer* shall retain the pro rata proportion of the premium hereon.

Payment or tender of any unearned premium by the *insurer* shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made as soon as practicable.

### 5.10 *Subrogation*

In the event of any payment under this policy, the *insurer* shall be subrogated to the extent of such payment to all of the *company's* and the *insured's* rights of recovery in respect of the payment, and the *company* and the *insured* shall execute all papers required and shall do everything that may be necessary to secure any rights including the execution of any documents necessary to enable the *insurer* effectively to bring suit in the name of the *company* and/or the *insured*.

INSURANCE CO. LTD.

### 5.11    *Other Insurance*

Any insurance as is provided under this policy shall apply only as excess over any other valid and collectible insurance.

### 5.12    *Notice and Authority*

It is agreed that the *policyholder* shall act on behalf of its *subsidiaries* and all *insureds* with respect to the giving and receiving of notice under this policy, including the giving of notice of *claim,* the payment of premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining to exercise any right to a *discovery period.*

### 5.13    *Assignment*

This policy and any rights hereunder cannot be assigned without written consent of the *insurer.*

### 5.14    *Jurisdiction and Governing Law*

Any interpretation of this policy relating to its construction, validity or operation shall be made in accordance with the laws of the State of Israel. The parties agree to submit to the exclusive jurisdiction of the courts in the State of Israel (Tel Aviv or Jerusalem).

### 5.15    *Plurals and Titles*

The titles of these paragraphs are for convenience only and do not lend any meaning to this contract. In this policy words in Italics have special meaning and are defined.

**MIGDAL**
INSURANCE CO. LTD.

This endorsement effective 28.9.2006 is a part of policy number 2520000687/06

issued to:  Elbit Systems Ltd.

by:  **Migdal Insurance Company**.



# *Authorised Endorsement CorporateGuard / 005*

### MAJOR SHAREHOLDER EXCLUSION

It is hereby understood and agreed that the *insurer* shall not be liable to make any payment for *loss* in connection with any *claim* made against the *insured* which is brought by or on behalf of whether directly or derivatively any individual or entity that owns or controls (whether beneficially, directly or indirectly) 20%  or more of the issued and outstanding voting share capital of the *company*.

4 Efal St., Kiryat-Aryeh, Petach Tikva, Israel 49511 P.O.B. 3063 Petach Tikva,
Israel 49130  Tel: 972-3-916-8888, Fax: 972-3-9168887 www.migdal.co.il

This endorsement effective 28.9.2006 is a part of policy number
2520000687/06

issued to: Elbit Systems Ltd.

by: **Migdal Insurance Company**.

# *Authorised Endorsement*
# *CorporateGuard /011a*

### PROSPECTUS EXCLUSION – SHARE CAPITAL

It is hereby understood and agreed that the *insurer* shall not be liable to make any payment for *loss* in connection with any *claim* made against the *insured* based upon or attributable to the actual or intended private placement or public offering of any share capital of the *company*.

However, in the event of any private placement or public offering the *insurer* may consider removal of this exclusion but consideration of such removal is subject to receipt from the *company* of:

(i)    a written declaration signed and dated by the Chairman or Chief Executive Officer stating that the offering is not in contravention of the Articles of Association, Constitution, laws or bye-laws of the *company* and that after enquiry to the best of his knowledge and belief he is not aware of any circumstance which could give rise to a *claim* against any *insured* or the *company*; and

(ii)   a copy of all filings and/or documents which have been or are presented to any relevant authority and/or the existing and/or prospective shareholders or stockholders of the *company*; and

(iii)  such additional premium together with agreement to any revised terms, conditions and/or exclusions as may be required by the *insurer*.

CORPORATEGUARD Endorsements/011a

This endorsement effective 28.9.2006 is a part of policy number 2520000687/06

issued to:  Elbit Systems Ltd.

by: **Migdal  Insurance Company.**



# *Authorised Endorsement*
# *CorporateGuard /093*

TOTAL WAR & ALL TERRORISM EXCLUSION – (NO TRIA COVER)

It is hereby understood and agreed that this policy does not cover *loss* or damage which arises directly or indirectly out of war, invasion, act of foreign enemy, hostilities or warlike operations (whether war has been declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportion of or amounting to a popular uprising, military or usurped power, martial law, riot or the act of any lawfully constituted authority.

It is further understood and agreed that this policy does not cover loss, injury, damage, claim or suit, arising directly or indirectly as a result of any *terrorist act* or the intentional use of military force to intercept, prevent, or mitigate any known or suspected *terrorist act*.  For purposes of this endorsement *terrorist act* shall mean:

(1)     any actual or threatened use of force or violence directed at or causing damage, injury, harm or disruption, or commission of an act of force or violence dangerous to human life or property, against any individual, property or government, with the stated or unstated objective of pursuing economic, ethnic, nationalistic, political, racial or religious interests, whether such interests are declared or not. Thefts or other criminal acts, primarily committed for personal gain and acts arising primarily from prior personal relationships between perpetrator(s) and victim(s) shall not be considered *terrorist acts.*

OR

(2)     any act which is verified or recognised by the Israeli Government, or the Government of the country in which the *claim* is made against the *insured*, as a *terrorist act*.

OR

(3)     any act that is defined by Section 102. Definitions, of the United States Terrorism Risk Insurance Act of 2002 and any revisions or amendments as

INSURANCE CO. LTD.

an "act of terrorism", namely, an act certified by the Secretary of the Treasury of the United States, in concurrence with the Secretary of State, and the Attorney General of the United States:

**MIGDAL**

(א)    to be an act of terrorism,

(ב)    to be a violent act or an act that is dangerous to

        (i)    human life;

        (ii)   property or

        (iii)  infrastructure,

(ג)    to have resulted in damage within the United States, or outside of the United States in case of an air carrier or vessel or the premises of a U.S. mission and

(ד)    to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other terms and conditions of the policy remain the same.

CORPORATEGUARD Endorsements/093

INSURANCE CO. LTD.



This endorsement effective 28.9.2006 is a part of policy number 2520000687/06

issued to:  Elbit Systems  Ltd.

by:  **Migdal  Insurance Company**.

# *Authorised Endorsement CorporateGuard /025*

### NUCLEAR FACILITY EXCLUSION

It is hereby understood and agreed that the *insurer* shall not be liable to make any payment for *loss* in connection with any *claim* made against the *insured* arising out of, based upon or attributable to the ownership management maintenance or control of any nuclear facility including but not limited to the insolvency or bankruptcy of the *company*.

4 Efal St., Kiryat-Aryeh, Petach Tikva, Israel 49511 P.O.B. 3063 Petach, Tikva, Israel 49130  Tel: 972-3-916-8888. Fax: 972-3-9168887 www.migdal.co.il



This endorsement effective 28.9.2006 is a part of policy number
2520000687/06

issued to: Elbit Systems Ltd.

by: **Migdal Insurance Company.**

# *Authorised Endorsement*
# *CorporateGuard /085*

### DISCOVERY – UNILATERAL – 12 MONTHS [12 MONTHS RETIRED DIRECTORS]

It is hereby understood and agreed that 4. Extensions 4.4 and 4.5 are
deleted in their entirety and replaced by the following:

**4.4    *Discovery Period***

If the *insurer* refuses to offer any terms or conditions to renew this
policy, then the *policyholder* shall have the right to a *discovery period* of
12 months following the effective date of non-renewal:

> (i)    provided the *policyholder* cannot renew or replace
> this policy with or cannot purchase, effect or
> otherwise acquire, any other policy affording
> directors and officers liability or similar liability
> cover; and
> (ii)   upon payment of an additional premium of 100% of
> the *full annual premium.*

The *insured* shall be entitled to a 30-day *discovery period* at no
additional premium if this policy is not renewed by the *insurer*. If the
*policyholder* elects to purchase a *discovery period*, this 30-day *discovery
period* shall be part of and not in addition to the purchased *discovery
period.*

To purchase the *discovery period*, the *policyholder* must request its
purchase in writing within 15 days of the termination date of the
policy and must tender the additional premium within 30 days of the
termination date. The additional premium is not refundable and the
*discovery period* is not cancelable.



If a *transaction* takes place, then the *policyholder* shall not have the right to purchase a *discovery period* as set out above. However, the *policyholder* shall have the right within 30 days of the end of the *policy period* to request an offer from the *insurer* of a *discovery* period of up to 72 months. The *insurer* shall have the right but not the duty to offer a *discovery period* with terms, conditions and premium as the *insurer* may reasonably decide.

No *discovery period* of any length is available in the event of this policy being cancelled due to the non payment of premium.

### 4.5    *Retired Directors, Officers and Employees*
If the *policyholder* cannot renew or replace this policy with any other policy affording directors and officers liability or similar liability cover and a *discovery period* is not elected under Extension 4.4 above, a *discovery period* of 12 months after the date of such non-renewal will be provided under this policy during which time written notice may be given to the *insurer* of any *claim* first made against any *director*, *officer* or employee of the *company* who retired before the date of non-renewal and which *claim* is otherwise covered by this policy. This extension is not available in the event of a *transaction*.


Subject otherwise to all of the terms, conditions and exclusions of this policy

**MIGDAL**
INSURANCE CO. LTD.

This endorsement effective 28.9.2006 is a part of policy number
2520000687/06

**MIGDAL**

issued to: Elbit Systems Ltd.

by: **Migdal Insurance Company.**

# *Authorised Endorsement*
# *CorporateGuard /077*

### "NO LIABILITY" PROVISION DELETED AND

### SECURITIES CLAIM RETENTION APPLIES TO ALL LOSS

In consideration of the premium charged, it is hereby understood and agreed that
the policy is hereby amended as follows:

The Definition of and all provisions referring to "*no liability*" are hereby deleted in
their entirety.

General provision 5.4 *Retention* is deleted in its entirety and replaced by the
following:

**5.4**      Retention

The *insurer* shall only be liable for the amount of *loss* arising from a *claim* which
is in excess of the retention amount specified in Item 4 of the Schedule with regard
to all *loss* under all insurance covers under this policy for which the *company* has
indemnified or is permitted or required to indemnify the *insured*. It is agreed that
the *company* will be conclusively deemed to have indemnified the *insured* to the
maximum extent that the *company* is permitted or required to grant such
indemnification pursuant to law, common or statutory, or contract, or by the
charter or by-laws or the Articles of Association of the *company*, which are hereby
deemed to incorporate, for the purposes of this policy, the broadest provisions of
the law which determines or defines such rights of indemnity.

The retention amount is to be borne by the *company* and shall remain uninsured. A
single retention amount shall apply to *loss* arising from all *claims* alleging a *single
wrongful act.*

Subject otherwise to all of the terms, conditions and exclusions of this policy

CORPORATEGUARD Endorsements/077

This endorsement effective 28.9.2006 is a part of policy number 2520000687/06

issued to: Elbit Systems Ltd.

by: **Migdal Insurance Company**.



# *Authorised Endorsement CorporateGuard /046*

## PATENT / INTELLECTUAL PROPERTY EXCLUSION

It is hereby understood and agreed that the *insurer* shall not be liable to make any payment for *loss* in connection with any *claim* made against the *insured* alleging arising out of, based upon or attributable to any actual or alleged plagiarism or infringement of Intellectual Property or patent.

4 Efal St., Kiryat Aryeh, Petach Tikva, Israel 49511 P.O.B. 3063 Petach Tikva,
Israel 49130 Tel: 972-3-916-8888, Fax: 972-3-9168887 www.migdal.co.il

**MIGDAL**
INSURANCE CO. LTD.

This endorsement effective 28.9.2006 is a part of policy number
2520000687/06

issued to: Elbit Systems Ltd.

by: **Migdal Insurance Company**.



**MIGDAL**

# *Authorised Endorsement*
# *CorporateGuard /088*

## EXTENSION 4.2 NEW SUBSIDIARIES AMENDED

It is hereby understood and agreed that **4. Extensions** 4.2 **New Subsidiaries** is
deleted in its entirety and replaced by the following:

*4.2*    New Subsidiaries

Cover under this policy is extended to any *subsidiary* which the *policyholder*
acquires or creates after the inception date of this policy provided that the
*subsidiary:*

(i) has total gross assets which are less than the amount specified in Item 7 of the
Schedule;

   and

(ii ) does not have a listing of any of its *securities* on any exchange or market in
the United States of America or Canada; and

If a newly acquired or created *subsidiary* fails to meet conditions (i), (ii) and (iii)
above the *policyholder* may request an extension of this policy for such *subsidiary*
provided that the *policyholder* shall give the *insurer* sufficient details to permit the
*insurer* to assess and evaluate the *insurer's* potential increase in exposure. The
*insurer* shall be entitled to amend the policy terms and conditions, during the
*policy period,* including by the charging of a reasonable additional premium to
reflect the increase in exposure.

Unless otherwise agreed, cover as is afforded to the *directors, officers* or
employees of any *subsidiary* by virtue of this extension shall only apply for
*wrongful act(s)* committed while such company is or was a *subsidiary* of the
*policyholder.*

. Subject to all of the terms, conditions and exclusions of the policy

INSURANCE CO. LTD.



This endorsement effective 28.9.2006 is a part of policy number **MIGDAL** 2520000687/06

issued to:  Elbit Systems Ltd.

by:  **Migdal Insurance Company.**

# *Authorised Endorsement CorporateGuard /007a*

### PROFESSIONAL INDEMNITY EXCLUSION - GENERAL WITH COVER FOR FAILURE TO SUPERVISE

It is hereby understood and agreed that the *insurer* shall not be liable to make any payment for *loss* in connection with any *claim* made against the *insured* alleging, arising out of, based upon or attributable to the *company*'s or an *insured*'s performance of or failure to perform professional services for others for a fee, or any act, error, or omission relating thereto. Provided however, that the foregoing exclusion shall not be applicable to any derivative or shareholder derivative action *claim* against the *insured* alleging a failure to supervise those who performed or failed to perform such professional services.

4 Efal St., Kiryat-Aryeh, Petach Tikva, Israel 49511 P.O.B. 3063 Petach Tikva, Israel 49130  Tel: 972-3-916-8888. Fax: 972-3-9168887 www.migdal.co.il

This endorsement effective 28.9.2006 is a part of policy number 2520000687/06

issued to: Elbit Systems Ltd.

by: **Migdal Insurance Company**.



# Authorised Endorsement
# CorporateGuard /087

## 4.1 REPRESENATIONS AT INVESTIGATIONS – AMENDED WORLDWIDE

It is hereby understood and agreed that:

**1.**With respect to any:

(i ) administrative or regulatory proceeding; or

(ii) official investigation, examination, inquiry or other similar proceeding into the affairs of the *company* or other attendance required of an *insured* by virtue of his position as a *director, officer* or employee of the *company*.

which is initiated and/or pursued and/or required in respect of <u>Worldwide</u>, Extension 4.1 is deleted in its entirety, and Definition 2.2 (iv) is deleted in its entirety and replaced by the following:

2.2 (iv) any civil, criminal, administrative or regulatory investigation of an *insured*:

(a) once such *insured* is identified in writing by such investigating authority as a person against whom a:

civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges

may be commenced; or

(b) in the case of an investigation by the SEC or a similar state government authority, after the service of a subpoena upon such *insured*.

With respect to any other official investigation, examination, inquiry or other similar proceeding into the affairs of the *company* or other attendance required of an *insured* by virtue of his position as a *director, officer* or employee of the *company*, Worldwide , Extension 4.1 is deleted in its entirety and replaced by the following:

4 Efal St., Kiryat-Aryeh, Petach Tikva, Israel 49511 P.O.B. 3063 Petach Tikva,
Israel 49130 Tel: 972-3-916-8888, Fax: 972-3-9168887 www.migdal.co.il

Subject to all of the terms, Definitions, Exclusions, General Provisions and Endorsements of this policy, cover is extended as outlined in 4.1 below. For the avoidance of doubt, the *insurer* shall only pay for that amount of reasonable fees, costs and expenses which is in excess of the Retention specified in Item 4 of the Schedule. Item 4 of the Schedule and any reference to Retention in this policy (including but not limited to General provision 5.4) is deemed to apply also to fees, costs and expenses which are the subject of this endorsement.

### 4.1    *Representation at Investigations and Examinations*

This policy shall provide cover for any reasonable and necessary fees, costs and expenses incurred with the prior written consent of the *insurer* (but not including wages, salaries or other remuneration of any *director, officer* or employee) attributable to any required attendance by any *director, officer* or employee of the *company* at any official investigation, examination, inquiry or other similar proceeding in relation to the affairs of the *company* or any other attendance required of the *director, officer* or employee by virtue of his position as *director, officer* or employee of the *company* which does not qualify as *a claim* under definition 2.2 (iv) of this policy, provided that the notice requiring the *director, officer* or employee's attendance at any such official investigation, examination or inquiry is received by the *director, officer* or employee during the *policy period.*

Notwithstanding, the cover provided by virtue of this Extension 4.1 shall not include fees, costs or expenses attributable to any official investigation, examination, inquiry or other similar proceeding arising from an event that affects the industry in which the *policyholder* conducts its business activities, as opposed to affecting primarily the *policyholder* itself.

If the *director, officer* or employee of the *company* believes that as a result of any such official investigation, examination, inquiry or other similar proceeding, circumstances exist which may reasonably be expected to give rise to a *claim*, notice must be given to the *insurer* of the circumstances and the reasons for anticipating a *claim*, with full particulars as to dates and persons involved in accordance with General Provision 5.5.

It is further agreed that the total aggregate limit of liability for fees, costs and expenses that the *insurer* shall be liable to pay pursuant to the cover provided by this extension is specifically sub-limited to $ 2,500,000 (the "Sub-Limit Of Liability"). This Sub-Limit Of Liability is part of and not in addition to the total aggregate limit of liability specified in Item 3 of the Schedule and will in no way serve to increase the *insurer's* limit of liability as specified therein.

Subject to all of the terms, conditions and exclusions of this policy

CORPORATEGUARD Endorsements/087

INSURANCE CO. LTD.

This endorsement effective 28.9.2006 is a part of policy number 2520000687/06



issued to: Elbit Systems Ltd.

by: **Migdal Insurance Company.**

# *Authorised Endorsement*
# *CorporateGuard /082*

### EXTENSION 4.3 OUTSIDE DIRECTORSHIPS AMENDED

It is hereby understood and agreed that **2. Definitions 2.1 Associated Company** is deleted in its entirety and replaced by the following:

2.1    *Associated Company* means any company:

(i)    of which the *policyholder* owns at the inception of the *policy period* more than 10 per cent but less than or equal to 50 per cent of the issued and outstanding voting shares either directly or indirectly through one or more of its *subsidiaries*; or as per schedule attachment "A" attached and

(b)    does not have a listing of any of its *securities* on any exchange in the United States of America or Canada; and

(c)    is not incorporated in the United States of America or Canada.

It is further agreed that **4. Extensions 4.3 Outside Directorships** is deleted in its entirety and replaced by the following:

### 4.3    *Outside Directorships*

Cover includes *loss* arising from any *claim* made against any *insured* who was, is or may become, at the specific written request of the *company*, a director, officer, trustee, governor or equivalent position, in any *outside entity* for any *wrongful act* in such *insured's* capacity as a director, officer, trustee, governor or equivalent position, in the *outside entity*.

This cover shall be specifically excess of any insurance in force in respect of the *outside entity* as well as any indemnification provided by the *outside entity*. If the other insurance is provided by the *insurer* or any member company of American International Group (or would be provided except for the application of the retention amount or the exhaustion of the limit of liability), then the total aggregate limit of liability for all *loss* covered by virtue of this extension shall be reduced by the limit of liability specified in the schedule of the other

American International Group insurance provided to the private entity.



INSURANCE CO. LTD.

The cover provided by this clause shall not apply in connection with any *claim* made against any *insured* by the *outside entity*, any of its directors, officers, trustees, governors or equivalent or any shareholder of the *outside entity* holding more than 20% of the issued and outstanding voting share capital of the *outside entity*; provided, however, that the restrictions of cover contained in this paragraph shall not apply to:

(i)      any *employment practice claim* brought by any director, officer, trustee, governor or equivalent, of the *outside entity*;

(ii)     any *claim* for contribution or indemnity, if the *claim* directly results from another *claim* otherwise covered by this extension;

(iii)    any shareholder derivative action brought or maintained on behalf of the *outside entity* without the solicitation or participation of any *insured* or any director, officer, trustee, governor or equivalent, of the *outside entity*;

(iv)    any *claim* brought or maintained by a liquidator, receiver or administrative receiver derivatively on behalf of the *outside entity* without the solicitation or participation of any *insured* or any director, officer, trustee, governor or equivalent, of the *outside entity*.

Cover under this extension 4.3 shall not apply in connection with any *claim* made against an *insured* arising out of a *wrongful act* committed by the *insured* prior to the *continuity date* specified in Item 6(i) of the Schedule, if on or before that date the *insured* knew or ought reasonably to have foreseen that such *wrongful act* would or could lead to a *claim* being made against them.

Subject otherwise to all of the terms, conditions and exclusions of this policy.

**MIGDAL**
INSURANCE CO. LTD.



This endorsement effective 28.9.2006 is a part of policy number 2520060006
issued to: Elbit Systems Ltd.
by: **Migdal Insurance Company.**

# *Authorised Endorsement*
# *CorporateGuard /013*

**MIGDAL**

### POLLUTION DEFENCE COSTS, INSURANCE COVER A, UK ONLY WITH SHAREHOLDER COVER FULL LIMITS

It is hereby understood and agreed that **3. Exclusions** 3.5 is deleted in its entirety and replaced by the following:

3.5   arising out of, based upon or attributable to or in any way involving, directly or indirectly:
the actual, alleged or threatened discharge, dispersal, release or escape of *pollutants*; or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralise *pollutants*, nuclear material or nuclear waste (hereinafter: "Pollution Condition").
Provided, however, that this exclusion shall not apply to:

  (i)   any *claim* made against the *insured* by any shareholder of the *company* either directly or derivatively, or

  (ii)   **1. Insurance Cover A:  DIRECTORS AND OFFICERS LIABILITY** in respect of *defence* costs only, incurred by the *insured*,

unless on or before the pollution *continuity date* specified in Item 6 of the Schedule, the *company*, the *insured* or any employee of the *company* with managerial responsibility over environmental affairs, control or compliance, knew or could have reasonably foreseen that there existed any situation, circumstance or *wrongful act* which could have given rise to a *claim* against the *company*, or the *insured*.
It is further understood and agreed that with respect to (ii) above the total aggregate limit of liability for all *loss* that the *insurer* shall be liable to pay in respect of any *claim* or developments thereof for which this policy may provide cover pursuant to the extension of cover provided in this endorsement is specifically sub-limited to _____ GBP 250,000. This Sub-Limit Of Liability is part of and not in addition to the total aggregate limit of liability specified in Item 3 of the Schedule and will in no way serve to increase the *insurer's* limit of liability as specified therein.
The extension of cover provided by (ii) above only applies to *claim(s)* brought in the United Kingdom or *claim(s)* arising solely from a Pollution Condition occurring or existing in the United Kingdom and alleging a violation of the law of any part of the United Kingdom, common or statutory, including breaches of fiduciary duty.

CORPORATEGUARD Endorsements/013b

4 Efal St., Kiryat-Aryeh, Petach Tikva, Israel 49511 P.O.B. 3063 Petach Tikva,
Israel 49130  Tel: 972-3-916-8888. Fax: 972-3-9168887 www.migdal.co.il

*Years*

**MIGDAL**

# *Authorised Endorsement CorporateGuard /076 amended*

This endorsement effective 28.9.2006 is a part of policy number 2520000687/06

issued to: Elbit Systems Ltd.

by: **Migdal Insurance Company.**

# *Entity Cover Endorsement*

*(Securities Claims - Worldwide) - Coinsurance*

In consideration of the premium charged, it is hereby understood and agreed that subject to all of the terms, Definitions, Exclusions and General Provisions of this policy, cover is extended under the Entity Cover Endorsement as outlined below. The total of all payments made under the Entity Cover Endorsement shall be a part of and not in addition to the total aggregate limit of liability specified in Item 3 of the Schedule:

## 1. Extension of Cover

**COMPANY INSURANCE FOR** *SECURITIES CLAIMS*

The cover provided under this policy is extended to pay the *loss* of the *company* arising from any *securities claim* first made against the *company* during the *policy period* for any *wrongful act* of the *company*.

## 2. Definitions

1.  For the purposes of this endorsement only, definitions 2.4 and 2.13 are replaced by the following:

    2.4  *Continuity date for securities claims* shall mean the earlier of:
    (i)  the effective date of this endorsement, or
    (ii)  the effective date of the first Entity Cover Endorsement (*Securities Claims* - Worldwide) issued by the *insurer* to the *policyholder* and continuously maintained in effect until the effective date of this endorsement.

    2.13  *Loss* means damages, judgments, settlements and *defence costs*; however, *loss* shall not include civil or criminal fines or penalties imposed by law, non-compensatory damages including punitive or exemplary damages (other than damages awarded for libel and slander), taxes, any amount for which the *insured* is not legally liable or matters which are

INSURANCE CO. LTD.

uninsurable under the law applicable to this p... Dam...,
judgments, settlements and *defence costs* incurred in more...
one *claim* against the *insured* but resulting from a *single* wrongful
act shall constitute a single *loss*.

In the event of a *claim* alleging that the price or consideration
paid or proposed to be paid for the acquisition or completion
of the acquisition of all or substantially all the ownership
interest in or assets of an entity is inadequate, *loss* with respect
to such *claim* shall not include any amount of any judgment or
settlement representing the amount by which such price or
consideration is effectively increased (including any plaintiff's
legal fees associated therewith); provided, however, that this
paragraph shall not apply to *defence costs*.

Notwithstanding the foregoing, with respect to the Company
Insurance for *Securities Claims* extension provided herein only
and subject to the other terms, conditions and exclusions of
this policy, *loss* shall include punitive or exemplary damages
(if insurable by law) imposed upon the *company*.

2.    For the purposes of this endorsement only, the following
definitions are hereby amended by the addition of the following:

2.11  *Insured* with respect to the Company Insurance for *Securities
Claims* extension provided herein shall also mean the *company*
but only for *securities claims*.

2.25  *Wrongful act(s) also* means with respect to the *company*, any
actual or alleged breach of duty, breach of trust, neglect, error,
misstatement, misleading statement, omission, breach of
warranty of authority or other act by the *company*, but solely as
respects a *securities claim*.

3.    For the purposes of this endorsement only, the following definition is
hereby added:

*Securities Claim* means any *claim* (other than an administrative or
regulatory proceeding against or investigation of the *company*)
made against an *insured* alleging a violation of any country's laws
(including, in the United States of America, the common law or
any federal or state regulation, rule or statute) regulating *securities*
(including, but not limited to, the purchase or sale or offer or
solicitation of an offer to purchase or sell *securities*) which is:

(i)    brought by any person or entity alleging, arising out of,
based upon or attributable to, in part or in whole, the
purchase or sale, or offer or solicitation of an offer to
purchase or sell any *securities* of the *company*; or

(ii)   brought by a *security* holder of the *company* with respect to
such *security* holder's interest in *securities* issued by such
company; or

(iii)  brought derivatively on behalf of the *company* by a *security*
holder of such *company*.

INSURANCE CO. LTD.

The foregoing definition of *securities claim* shall not include any *employment practice claim* alleging, or arising out of, the loss of, or failure to receive or obtain, the benefit of stock or stock options.

## 3. Exclusions

A.   For the purposes of this endorsement only, the following exclusions are added to the exclusions of the policy:

   (i)   alleging, arising out of, based upon or attributable to any written demand made, or any suit or other pending proceeding, order, decree or judgment entered, against any *insured* on or prior to the *continuity date for securities claims* defined herein, or alleging or derived from the same or essentially the same facts, circumstances or situation underlying or alleged therein;

   (ii)   alleging, arising out of, based upon or attributable to a criminal, administrative or other disciplinary proceeding against the *company*.

B.   For the purposes of this endorsement only **3. Exclusions** 3.1(i) and the final paragraph of **3. Exclusions** 3.1 are deleted in their entirety and replaced by the following:

   (i) the gaining in fact of any profit or advantage to which the *insured* was not legally entitled.

      For the purposes of determining the applicability of exclusions 3.1 (i) to (iii), the *wrongful act* of any *director, officer* or employee shall not be imputed to any other *director, officer* or employee. For the avoidance of doubt, only facts pertaining to and knowledge possessed by any past, present or future chairman of the board, president, chief executive officer, chief operating officer, chief financial officer or General Counsel (or equivalent position) of the *company* shall be imputed to the *company*. These exclusions shall only apply if it is established through a judgment, or any other final adjudication adverse to the *insured*, or any admission by an *insured* that the relevant conduct did in fact occur;

## 4. General Provisions

For the purposes of this endorsement only, the following general provisions apply:

   (i)   **Representation and Severability**

   General Provision 5.1 is amended by deleting the second paragraph in its entirety and replacing it with the following:

   The proposal shall be construed as a separate proposal by each *insured*. With respect to statements and particulars in the proposal, no statements made or knowledge possessed by any *director, officer* or

**MIGDAL**

INSURANCE CO. LTD.

employee shall be imputed to any other *director, officer* or employee to determine whether cover is available for any *claim* made against such other *director, officer* or employee. For the avoidance of doubt, statements made or knowledge possessed by any past, present or future chairman of the board, president, chief executive officer, chief operating officer, chief financial officer or General Counsel (or equivalent position) of the *company* shall be imputed to the *company*.

(ii) **Limit of Liability:**

General Provision 5.3 Limit of Liability, is amended by deleting the first sentence of such clause in its entirety and replacing it with the following:

The limit of liability specified in Item 3 of the Schedule is the total aggregate limit of the *insurer*'s liability for all *loss*, arising out of all *claims* made against all *insureds* under all insurance covers under this policy and the Company Insurance for *Securities Claims* provided herein combined.

(ii) **Retention:**

General Provision 5.4 is deleted in its entirety and replaced by the following:

5.4 **Retention**

The *insurer* shall only be liable for the amount of *loss* arising from a *claim* which is in excess of the retention amount specified in Item 4 of the Schedule with regard to i) all *loss* of the *company*; and ii) all *loss* for which the *company* has indemnified or is permitted or required to indemnify the *director, officer* or employee. It is agreed that the *company* will be conclusively deemed to have indemnified a *director*, officer or employee to the maximum extent that the *company* is permitted or required to grant such indemnification pursuant to law, common or statutory, or contract, or by the charter or by-laws or the Articles of Association of the *company*, which are hereby deemed to incorporate, for purposes of this policy, the broadest provisions of the law which determines or defines such rights of indemnity.

The retention amount is to be borne by the *company* and shall remain uninsured. A single retention amount shall apply to *loss* arising from all *claims* alleging a *single wrongful act*.

(iii)     Subsection (i) of General Provision 5.8 is deleted in its entirety.

(iv) **Coinsurance:**

Solely with respect to all *loss* arising out of a *securities claim* and excess of the applicable retention amount specified in Item 4 of the Schedule, the *director, officer* or employee and the *company* shall be

INSURANCE CO. LTD.

liable to pay at their own uninsured risk the percentage of i) all *loss* of the *company*; and *ii*) all *loss* for which the *company* has indemnified or is permitted or required to indemnify the *director, officer* or employee as specified in Item 8 of the Schedule. The *insurer's liability* hereunder shall only apply to the remaining percentage of such *loss*.

In all events, the limit of liability specified in Item 3 of the Schedule is the total aggregate limit of the *insurer's* liability for all *loss*, arising out of all *claims* made against all *insureds* under all insurance covers under this policy and the Company Insurance for *Securities Claims* provided herein combined.

## Schedule

The following section is hereby added to Item 4 of the Schedule:

> *Securities Claim(s)* Only:

| | |
|---|---|
| *Judgments, Settlements and Defence costs* (non-indemnifiable *loss*) : | None |
| *Judgments, Settlements and Defence costs* (Company Insurance for *Securities Claims* & indemnifiable *loss*) : | $ 250,000 each and every claim World Wide Excluding USA/CANADA $ 350,000 each and every claim in USA/CANADA |

The following section is hereby added to Item 6 of the Schedule:

> *Continuity date for securities claim(s)* :   28/8/1994

The following Item 8 is hereby added to the Schedule:

| Item 8. | Coinsurance: *Securities Claim(s)* only | *Insurer:* [100 ]%  *Company:* [NIL ] % |
|---|---|---|

Subject to all of the terms, conditions and exclusions of this policy.

**MIGDAL**

INSURANCE CO. LTD.



This endorsement effective 28.9.2006 is a part of policy number 2520000687/06

issued to:  Elbit Systems  Ltd.

by:  **Migdal  Insurance Company**

**Wording Amendments**

**Preamble:**

1. After the words: "in consideration of the payment" the words: "or agreement to pay" will be added.

**Definitions:**

2. <u>Section 2.1 - Associated company</u> -- after the words: "owns on or before the inception of the policy period" the words: "or shall own during the policy period" will be added.

<u>Section 2.2 - Claim</u> --

3. <u>Section (iii)</u> -- after the word: "prosecution" the words: "or proceedings" will be added.

4. <u>Section 2.5 -- Defence costs</u> -- after the words: "with a written consent of the insurer" the words: "not to be unreasonably withheld" will be added. In addition, the following paragraph will be added: "For the avoidance of any doubt it is agreed that should a conflict of interests exist between any of the insured, then at their request separate counsel may be appointed to protect their respective interests"

**MIGDAL**

INSURANCE CO. LTD.



5.   Section 2.6 - Director or officer – means any natural person duly
     appointed or elected as a director and/or officer of the company
     within the meaning of any applicable statures, by laws, memorandum
     and articles of association or other law or regulation governing such
     matters within the jurisdiction of the domicile of the company,
     including but not limited to general manager, managing director,
     deputy general manager, or vice general manager of the *company*,
     any employee in managerial and/or supervisory capacity and any
     other manager who is directly subject to the authority of the general
     manager, and any other natural person who fulfils a function
     mentioned above, even if his title differs therefrom. *Director or
     officer* also means any member of the Safety Committee who has a
     managerial of supervisory role.

     It is further understood and agreed that without derogating
     the generality of the above , the definition shall be extended
     to include any natural person duly appointed as company
     secretary or internal auditor but solely to the extent they are
     salaried employee of the company

6.   Section 2.21 - Subsidiary – after the words: "while such company is"
     the words: "and/or was" will be added. In addition, the section will
     be amended by adding the following: "the term subsidiary will also
     include any subsidiary of a subsidiary as described in the above sub-
     section".

7.   Section 2.23 - Wrongful act – at the end of the paragraph , the
     following will be added:
     "Without derogating from the generality of the foregoing , a
     wrongful act shall also include and act performed by an insured in
     his capacity as a director or officer of the company ,giving rise to a
     liability which the company may enter into a contract to insure ,
     pursuant to Article 261 of the Israeli Companies Law 5759-
     1999,including sub-paragraphs 1-3 thereof".

### Exclusions

8.   Section 3.5 - will be amended by adding the following:
     "notwithstanding the above the policy is extended to cover costs,
     charges and expenses incurred in the defence of pollution related
     claims up to $ 500,000 any one claim and in the aggregate for all
     claims".

**MIGDAL**

INSURANCE CO. LTD.



## General provisions

9. Section 5.1 – Representation and Severability - will be amended by adding the following: "With respect to statements and particulars in the proposal, no statement made or knowledge possessed by any director, officer or employee of the company (other then knowledge or information possessed by the person(s) executing the application) shall be imputed to any other director, officer or employee to determine whether cover is available for any claim made against such other director, officer, or employee".

10. Section 5.6 - Advancements of costs – after the words "the insurer will advance to the insured or the company" the following words will be added: "on a current basis".

11. Section 5.9 - Cancellation clause – the following paragraph will be added: "not withstanding the above mentioned, it is understood and agreed, that the insurer right of cancellation, will be strictly limited for the reasons of non payment of the premium as detailed in the insurance contract law, 5741-1981. If this policy shall be canceled by the policyholder or the insurer, the insurer shall retain the prorate proportion of the premium hereon".

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

**MIGDAL**
INSURANCE CO. LTD.



## Appendix A

### Corporate Guard 9/97 הרחבות ושינויים לפוליסת

1. Section 2.6 - Director or officer – the definition of Director or
   Officer will be extended to include Company's legal advisor,
   observer, controller and comptroller.

2. Section 2.10 – Insured –

   2.1 it is hereby understood and agreed that the definition of
   *insured* is amended to include company acting as a director of
   the *company*.

   2.2 In addition, the following paragraph will be added:

   "The definition of insured is extended to include any natural
   person in his capacity as a none salaried Director and/or
   Officer of the Comapny, in accordance with management
   agreement between the company and the entity on behalf of
   the natural person who receives the payment for the services
   of the natural person under an invoice. It is hereby declared
   and agreed that the insurer waives right of subrogation
   against that entity and its employees.

   With respect to an Employment Practice Claim only, insured
   shall also include any past, present or future employee of the
   company".

4 Elal St., Kiryat-Aryeh, Petach Tikva, Israel 49511 P.O.B. 3063 Petach Tikva,
Israel 49130  Tel: 972-3-916-8888, Fax: 972-3-9168887 www.migdal.co.il

INSURANCE CO. LTD.

**Exclusions:**

Section 3.4 _____



**MIGDAL**

> Sub section (iv) – after the words: "administrative receiver" the following words will be added: "trustee, special manager, or any similar manager or official appointed by any public authority or by court of law".

General provisions:

3.    Section 5.5 – How to give notice and report a claim – Section ii (b) – the words: "30 days" in the first and the second line will be replaced by the words: "45 days".

4.    Section 5.10 - Subrogation – the following shall be added:"the insurer waives rights of subrogation against any of the company employees or directors and officers provided however that this waiver shall not inure to the benefit of any person having acted with criminal or malicious intent".

The following clauses will be added as an additional endorsements to the policy wording:

- ▪ The Wrongful Act of any of the Insured shall not be imputed to any other Insured for the purpose of determining the applicability of the Exclusion Clause. The exclusions shall only apply, if it is established through a judgment or any other final adjudication adverse to the Insured, or any admission by an Insured that the relevant conduct did occur.

INSURANCE CO. LTD.

- **<u>Public relation advice cover</u>**
  If the company reasonably considers that urgent action is
  needed in order to avert or mitigate a loss for which coverage
  would apply, the company shall be entitled to employ the
  service of a public relation consultancy for that purpose
  provided that notification has been given to the insurer and that
  the insurer have given their written agreement that coverage
  applies and this shall be deemed to be sufficient notice to
  insurer provided that written notice to the claim or
  circumstances which may give raise to a claim together with
  any details of any action taken or to be taken by or in
  conjunction with the public relation consultancy is given to the
  insurer as soon as is reasonably practicable and in any event
  within 30 days of the company first becoming aware of the
  matter. Any fees or costs reasonably incurred by the company
  for the employment of the public relations consultancy will be
  reimbursed by the insurer subject to a maximum limit of
  liability of $ 50,000 any one claim and in the aggregate for all
  claims. This extension shall not be subject to any deductible.



## Appendix B

**MIGDAL**

The policy endorsements will be amended as follows:

1. <u>Prospectus Exclusion – Share capital (011a)</u> - the words "private placement or" in the lines 4 and 6 will be replaced with the word: "future".

2. <u>Outside Directorship amended (082)</u> -

    2.1 The words: "specific written" in the second paragraph will be deleted.

    2.2 <u>Sub section 4.3 (iv)</u> – after the words: "or administrative receiver" the following words will be added: "or any manager appointed by any public authority or by court of law".

    2.3 The following sub-sections will be added to section 4.3:

    "Sub-section (v) – *any claim* brought or maintained by any former director or officer, trustee, governor or equivalent of the outside entity.

4. <u>Pollution defence costs, insurance cover A, UK only with shareholder cover full limits (013)</u> – will be deleted in its entirety.

מגדל
70 שנה

חברה לביטוח בע"מ

דף-1 | עותק למבוטח | 999 | אלביט מערכות בע"מ 51661-06
תעודת חידוש לפוליסת "חבות דירקטורים ונושאי משרה"
בכפיפה לכל הרשום בפוליסה המקורית ובתוספותיה.

| דולר ארה"ב | | |
| 80,000.00 | פרמיה נטו | ענף: 652 פוליסה: מ/2520000736/06 תוספת: 0 |
| .00 | דמי רישום | |
| .00 | דמי פוליסה | שם בעל הפוליסה: אלביט מערכות בע"מ |
| .00 | הטסלה | |
| .00 | דמי בולים | כתובת : מרכז תעשיות מדע 1 |
| | | חיפה מיקוד: 31053 |
| 80,000.00 | לתשלום במזומן | מס' מזהה : ח/520043027  מס' מבוטח: 520043027 |
| | | תקופת הביטוח: מ-28/09/06  שעה: 00:01 |
| 80,000.00 | סה"כ לתשלום | עד-27/09/07  שעה: 24:00 |

כל הסכומים בדולר ארה"ב

| פרמיה שנתית | שעור הפרמיה | סכום הביטוח | תאור הכסוי |
| | | | גבולות אחריות |
| 80,000.00 | | 10000,000 | |

לכל מספר תובעים בקשר למקרה אחד או לסדרת
מקרים הנובעים ממקרה אחד ולכל הפיצויים
שיש לשלם במשך תקופת הביטוח.

הוצאות משפטיות:
עד 20% מעבר לגבולות האחריות בישראל בלבד

****************************************
* מצהר ומוסכם בזה כי הפוליסה היא פוליסת אקסס מעל 20,000,000 $ *
* לפוליסה מס' 2520000687/06 בכפוף לסעיף DROP DOWN על פי הנוסח *
* המצ"ב . *
****************************************

השתתפות עצמית

| | | |
| לדירקטור ונושא משרה - למקרה | 1 |
| לכל הדירקטורים ונושאי משרה - לתקופה | 1 |
| לחברה | 1 |

570100004

מטה החברה - רח' אפעל 4 קרית-אריה, פתח-תקוה 49511 ת.ד. 3063. פתח-תקוה 49130. טל. 03-9168888 פקס. 03-9168887
מרכז רפואי ושירותי לקוחות
טל. 03-920-1010
פקס. 03-920-1020
www.migdal.co.il

מגדל

חברה לביטוח בע"מ

| | | | |
|---|---|---|---|
| דף-2 | עותק למבוטח | | |

06-51661 אלביט מערכות בע"מ          999
ענף:652    פוליסה:06/2520000736/מ    תוספת: 0
שם בעל הפוליסה: אלביט מערכות בע"מ

- - - - - - - - - - - - - - - - - - - - -

| פרמיה שנתית | שעור הפרמיה | סכום הביטוח | | תאור הכיסוי |
|---|---|---|---|---|

תאריך רטרואקטיבי                    00/00/01
מוצהר ומוסכם כי למרות האמור לעיל
התאריך הרטרואקטיבי הינו - בלתי מוגבל.
- - - - - - - - - - - - - - - - - - - - - - - - -

תאריך המשכיות: 28/8/1994
- - - - - - - - - - - - תאריך המשכיות לזיהום: 28/8/1994

מוסכם ומוצהר בזה שטופס ההצעה שמולא ונחתם ע"י המבוטח
ושהעתקו מצורף בזה מהודה חלק בלתי נפרד מפוליסה זו.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

סה"כ פרמיה שנתית 80,000.00


ה ר ח ב י ם   ו ת ו ס פ ו ת

ג)1 ביטוח בדולרים
- - - - - - - - - - - - -
מוצהר ומוסכם בזה כי:
א. "דולר" משמעו : דולר של ארצות הברית.
ב. הואיל וגבולות האחריות בפוליסה זו נקובים בדולרים לא יחול עליהם סעיף הצמדת
   גבולות האחריות שבתנאי חפוליסה.
ג. המבוטח ישלם לחברה את דמי הביטוח בשקלים שסכומם ייקבע לפי שער המטבע ביום
   הקובע כהגדרתם להלן.
ד. תגמולי ביטוח בגין תביעות שנתבעכו בדולרים ישולמו ע"י החברה בשקלים אשר
   יחושבו לפי שער המטבע ביום הקובע כהגדרתם להלן.
ה. "שער המטבע" : שער היצגיו של הדולר, האחרון שפורסם ע"י בנק ישראל סמוך לפני
   היום הקובע.
ו. "היום הקובע" : 1) לצורך תשלום דמי הביטוח לחברה - היום בו שולמו דמי הביטוח
   בפועל לחברה.
   2) לצורך תשלום תגמולי הבטוח ע"י החברה - היום בו הוצא השיק
   ע"י החברה לפקודת המבוטח או המוטב.
ז. גבולות האחריות של החברה לכל תקופת הבטוח,וחרשומים בפוליסה ביום הוצאתה או
   ביום הוצאת תוספת הגדלת גבולות אחריות, יופחתו - בחל מיום תשלום תשלום ביום תשלום
   בסכום התביעה ששולם בשקלים כשהוא מומר לדולרים לפי שער המטבע ביום
   התביעה.

ג)2 תנאי תשלום דמי הביטוח.
- - - - - - - - - - - - - - - -
1. "תשלום במזומן" -  דמי הביטוח יסולקו במלואם תוך  28  יום מיום תחילת הביטוח.

2. "גביה רגילה" -  לא חתם המבוטח על טופס "שרות שיקים"  לשם גבית דמי הביטוח

מטה החברה רח' אפעל 4 קרית-אריה, פתח-תקוה 49511 ת.ד. 3063, פתח-תקוה 49130. טל. 03-9168888 פקס. 03-9168887
מערך עסקי - מטה רח' האחוצה 7, קרית-אריה, פתח-תקוה 49512 ת.ד. 3063, פתח-תקוה 49130. טל. 03-9295050 פקס. 03-9295060
מרחב טכניות - רח' היצהרה 7, קרית-אריה, פתח-תקוה 49512 ת.ד. 3063, פתח-תקוה 49130. טל. 03-9276540 פקס. 03-9276540
מרחב מרכז - רח' היצהרה 7, קרית-אריה, פתח-תקוה 49512 ת.ד. 3063, פתח-תקוה 49130. טל. 03-9276111 פקס. 03-9276200
מרחב צפון - רח' שד' בן-גוריון 6, חיפה 35414. ת.ד. 9191 חיפה 31091. טל. 04-8352626 פקס. 04-8554455
מרחב ירושלים - רח' בן-יהודה 34, ירושלים 94230. ת.ד. 659 ירושלים 91006. טל. 02-6291291 פקס. 02-6244933

מגדל לשירותך
מרכז מידע ושירות לקוחות
טל. 03-920-1010
פקס. 03-920-1020
www.migdal.co.il

מגדל

חברה לביטוח בע"מ

דף-3                    עותק למבוטח                    06-51661 אלבוס מערכות בע"מ    999
תוספת: 0                    ענף: 652    פוליסה: 06/2520000736/מ
שם בעל הפוליסה: אלבוס מערכות בע"מ

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

6 - על ידי חיוב חשבוננו בבנק, ישולמו דמי הביטוח לחברה ב-
תשלומים חודשדלים רצופים.
מועד תשלום הראשון יחול תוך 21 יום מיום תחילת הביטוח או מיום
הוצאת הפוליסה - המאוחר ביניהם. בכל מקרה לא יחול תשלום
כלשהו לאחר תום תקופת הביטוח .

3. גבייה ב"שרות שיקים" - חתם המבוטח על טופס "שרות שיקים" לשם גבית דמי הביטוח
על ידי חיוב חשבוננו בבנק ישולמו דמי הביטוח בתשלומים
לשיעורין בהתאם לרשום בפרוט "פירוט התשלומים " .

4. כל תשלום, לרבות "תשלום במזומן", תשלום ע"י "גבייה רגילה" או תשלום ע"י גבייה
ב-"שרות שיקים", ישולם לחברה בשקלים לפי "שער המטבע" ביום התשלום.

ג) 3 פיגור בתשלום דמי הביטוח
- - - - - - - - - - - - - - -
א. במקרה שהמבוטח לא ישלם את דמי הביטוח בשיעורים ובמועדים הנקובים בפוליסה,
תהיה על המבוטח לשלם לחברה בגין כל סכום שלא שולם במועדו, הפרשי שער בהתאם
לשינודדים שירחלו בשער הדציגג של הדולר בתקופת הפיגור, בצירוף ריבית פיגורים
על פי השיעור המתפרסם על-ידי בנק לאומי לישראל לגבי הלוואות נקובות בדולרים
ארה"ב לתושבי ישראל, ביום פרעון הסכום שבפיגור.
ב. תקופת הפיגור תחושב החל מהדין בו היה על המבוטח לשלם את דמי הביטוח כנקוב
בפסקת תנאי "תשלום דמי הביטוח" ובפסקת "פרוט התשלומים" שברשימה, ועד למועד
תשלום דמי הביטוח בפועל.

ג) 4 שיפוט ישראלי.
- - - - - - - -
מוצהר ומוסכם בזה כי למרות כל דבר אחר הכתוב בפוליסה, החברה לא תהא חייבת לפצות
את המבוטח בעד כל סכום/ים שהמבוטח יהיה מחוייב לשלם לפי פסק דין שיינתן נגדו
ע"י בית משפט כלשהו שמושבו מחוץ לתחום שיפוטם של בתי משפט ישראלים (להלן "פסק
דין זר") או בעד כל סכום/ים שהמבוטח יהיה מחוייב לשלם לפי פסק דין של בית משפט
ישראלי הנותן תוקף לפסק דין זר או או סמכוסס במישרין או בעקיפין על פסק דין זר
שניתן בקשר לתביעה נגד המבוטח.

ג) 5)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -
אם ישולם כל סכום הפרמיה הנקוב תוך 28 יום מיום תחילת
הביטוח ינוכו מהתשלום דמי האשראי.

בשם החברה
מגדל חברה לביטוח בע"מ
זהוד לקוח: 520043027/ת

תאריך הדפסה: 24/10/06 (הדפסה חוזרת ב-15/02/07)
זהוד משנד: 520043027
בוררדורו: 10/06    מקדש: 008 מאשר: 8

מטה החברה: רח' אפעל 4 קרית-אריה, פתח-תקוה 49511 ת.ד. 3063. פתח-תקוה 49130. טל. 03-9168888 פקס. 03-9168887
משרד עסקים - מנהל אגף התביעות: רח' קרית-אריה, פתח-תקוה 49130. ת.ד. 3063 פתח-תקוה 49130. טל. 03-9295050 פקס. 03-9295060
מרחב סוכנויות - רח' היצירה 1, קרית-אריה, פתח-תקוה 49512. ת.ד. 3063 פתח-תקוה 49130. טל. 03-9276868 פקס. 03-9276540
מרחב מרכז - רח' היצירה 1, קרית-אריה, פתח-תקוה 49512. ת.ד. 3063 פתח-תקוה 49130. טל. 03-9276111 פקס. 03-9276200
מרחב צפון - שד' בן-גוריון 6, חיפה 35414. ת.ד. 9191 חיפה 31091. טל. 04-8352626 פקס. 04-8554455
מרחב ירושלים - רח' בן-יהודה 34, ירושלים 94230. ת.ד. 659 ירושלים 91006. טל. 02-6291291 פקס. 02-6244933
www.migdal.co.il

INSURANCE CO. LTD.

## Directors and Officers Liability
## And
## Company Reimbursement Liability Insurance



### (Excess: Aggregate Costs Inclusive)

**MIGDAL**

#### ATTACHING to and forming part of Policy No: 2520000736/06

To indemnify the Assured for claim or claims first made against the Assured during the period of insurance hereon up to this Policy's amount of liability (as hereinafter specified) in the aggregate, the excess of the Underlying Policy/ies limits (as hereinafter specified) in the aggregate, the latter amount being the subject of Indemnity Policy/ies (as hereinafter specified) or any Policy/ies issued in substitution or renewal thereof for the same amount effected by the Assured and hereinafter referred to as "the Underlying Policy/ies".

This Policy's amount of liability:    $ 10,000,000 any one claim and in the Aggregate plus additional limits of 20% for Costs and Expenses incurred in Israel only.

Underlying Policy/ies limits:    $ 20,000,000 any one claim and in the Aggregate plus additional limits of 20% for Costs and Expenses incurred in Israel only

Underlying Policy/ies Number/s:
Primary Policy – 2520000687/06
First Excess – 2520000736/06

1.    Liability to pay under this Policy shall not attach unless and until the Underwriters of the Underlying Policy/ies shall have paid or have admitted liability or have been held liable to pay, the full amount of their indemnity inclusive of costs and expenses.

2.    It is a condition of this Policy that the Underlying Policy/ies shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limits contained therein solely by payment of claims or of legal costs and expenses incurred in defence or settlement of such claims.

3.    If by reason of the payment of any claim or claims or legal costs and expenses by the Underwriters of the Underlying Policy/ies during the period of this Insurance, the amount of indemnity provided by such Underlying Policy/ies is:-

    (a)    Partially reduced, then this Policy shall apply in excess of the reduced amount of the Underlying Policy/ies for the remainder of the period of insurance;

    (b)    Totally exhausted, then this Policy shall continue in force as Underlying Policy until expiry hereof.

4.    In the event of a claim arising to which the Insurers hereon may be liable to contribute, no costs shall be incurred on their behalf without their consent being first obtained (such consent not to be unreasonably withheld). No settlement of a claim shall be effected by the Assured for such a sum as will involve this Policy without the consent of the Insurers hereon.

5.   Any claim(s) made against the Assured or the discovery by the Assured of any loss(es) or any circumstances of which the Assured becomes aware during the subsistence hereof which are likely to give rise to such a claim or loss, shall, if it appears likely that such claim(s) plus costs and expenses incurred in the defence or settlement of such claim(s) or loss(es) may exceed the indemnity available under the Policy/ies of the Primary and Underlying Excess Insurers, be notified immediately by the Assured in writing to the Insurers hereon.

6.   All recoveries or payments recovered or received subsequent to a loss settlement under this Policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Insurers provided always that nothing in this Policy shall be construed to mean that loss settlements under this Policy are not payable until the Assured's ultimate net loss has been finally ascertained.

7.   Except as otherwise provided herein this Policy is subject to the same terms, exclusions, conditions and definitions as the Policy of the Primary Insurers.  No amendment to the Policy of the Primary Insurers during the period of this Policy in respect of which the Primary Insurers require an additional premium or a deductible shall be effective in extending the scope of this Policy until agreed in writing by the Insurers.

8.   If the Assured shall prefer any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claims hereunder shall be forfeited.

LSW 055

**מגדל**

חברה לביטוח בע"מ

דף-1                אלביט מערכות בע"מ    999        עותק למבוטח    51661-06

תעודת חידוש לפוליסת "חבות דירקטורים ונושאי משרה"
בכפיפות לכל הרשום בפוליסה המקורית ובתוספותיה.

| דולר ארה"ב | | | |
|---|---|---|---|
| 73,000.00 | פרמיה נטו | מ/2520000777/06 :תוספת 0 | ענף: 652 פוליסה |
| .00 | דמי רישום | | |
| .00 | דמי פוליסה | שם בעל הפוליסה: אלביט מערכות בע"מ | |
| .00 | הטלים | | |
| .00 | דמי בולים | כתובת : מרכז תעשיות מדע 1 | |
| 73,000.00 | לתשלום במזומן | חיפה    מיקוד: 31053 | |
| | | מס. מזהה : ח/520043027    מס. מבוטח: 520043027 | |
| 73,000.00 | סה"כ לתשלום | תקופת הביטוח : מ-28/09/06 שעה: 00:01 | |
| | | עד- 27/09/07 שעה: 24:00 | |

כל הסכומים בדולר ארה"ב

| פרמיה שנתית | שעור הפרמיה | סכום הביטוח | תאור הכסוי |
|---|---|---|---|
| 73,000.00 | | 10000,000 | גבולות אחריות |

לכל מספר תובעים בקשר למקרה אחד או לסדרת
מקרים הנובעים ממקרה אחד ולכל הפיצויים
שיש לשלם במשך תקופת הביטוח.

הוצאות משפטיות:
עד 20% מעבר לגבולות האחריות בישראל בלבד
(א) 4

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*  מוצהר ומוסכם בזה כי הפוליסה היא פוליסת אקסס מעל $30,000,000  \*
\*  לפוליסת מס' 2520000736/06 ומס'2520000678/06 ובכפוף לסעיף  \*
\*  DROP DOWN על פי הנוסח הצפ"ב  \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

השתתפות עצמית

1        לדירקטור ונושא משרה    - למקרה

1        לכל הדירקטורים ונושאי משרה - לתקופה

1        לחברה

00/00/01        תאריך רטרואקטיבי
מוצהר ומוסכם כי בניגוד לרשום לעיל
תאריך רטרואקטיבי הינו - בלתי מוגבל
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

5701000004

www.migdal.co.il

מגדל
חברה לביטוח בע"מ

51661-06  אלביט מערכות בע"מ  999  עותק למבוטח  דף-2
ענף:652  פוליסה:06/2520000777/מ  תוספת: 0
שם בעל הפוליסה: אלביט מערכות בע"מ

| תאור הכסוי | סכום הביטוח | שעור הפרמיה | פרמיה שנתית |
|---|---|---|---|

תאריך המשכדות - 27/10/2004 -לגבולות אחריות של - $5,000,000 למקרה ולתקופה
ו- 6/11/2005 לגבולות אחריות של - $5,000,000
למקרה ולתקופה מעל $5,000,000 למקרה ולתקופה

תאריך המשכדות לזיהום - 27/10/2004 - לגבולות אחריות של $5,000,000 למקרה
ולתקופה  ו- 6/11/2005 - לגבולות אחריות
של $5,000,000 למקרה ולתקופה מעל
$5,000,000 למקרה ולתקופה .

מוסכם ומוצהר בזה שטופס ההצעה שמולא ונחתם ע"י המבוטח
ושהעתקו מצורף בזה מהווה חלק בלתי נפרד מפוליסה זו.

סה"כ פרמיה שנתית 73,000.00

ה ר ח ב י ם   ו ת ו ס פ ו ת
ג)1 ביטוח בדולרים
-----------
מוצהר ומוסכם בזה כי:
א. "דולר" משמעו : דולר של ארצות הברית.
ב. הואיל וגבולות האחריות בפוליסה זו נקובים בדולרים לא יחול עליהם סעיף הצמדת
    גבולות האחריות שבתנאי הפוליסה.
ג. המבוטח ישלם לחברה את דמי הביטוח בשקלים שסכומם ייקבע לפי שער המטבע ביום
    הקובע כהגדרתו להלן.
ד. תגמולי בטוח בגין תביעות שהוערכו בדולרים ישולמו ע"י החברה בשקלים אשר
    יחושבו לפי שער המטבע ביום הקובע כהגדרתו להלן.
ה. "שער המטבע" : השער היציג של הדולר, האחרון שפורסם ע"י בנק ישראל סמוך לפני
    היום הקובע.
ו. "היום הקובע" : (1) לצורך תשלום דמי הביטוח לחברה - היום בו שולמו דמי הביטוח
    בפועל לחברה.
    (2) לצורך תשלום תגמולי הביטוח ע"י החברה - היום בו הוצא השיק
    ע"י החברה לפקודת המבוטח או המוטב.
ז. גבולות האחריות של החברה לכל תקופת הביטוח,הרשומים בפוליסה ביום הוצאתה או
    ביום הוצאת תוספת הגדלת גבולות אחריות,דיפאינו - החל מיום תשלום הפרמיה
    בסכום התביעה ששולם בשקלים כשהוא מומר לדולרים לפי שער המטבע ביום תשלום
    התביעה.
ג)2 תנאי תשלום דמי הביטוח.
    -----------------

1."תשלום במזומן" - דמי הביטוח יסולקו במלואם תוך 28 יום מיום תחילת הביטוח.

2."גביה רגילה" - לא חתם המבוטח על טופס "שרות שיקים" לשם גבית דמי הביטוח

570100004

מטה החברה: רח' אפעל 4 קרית-אריה, פתח-תקוה 49511 ת.ד. 3063, פתח-תקוה 49130. טל. 03-9168888 פקס. 03-9168887
מערך עסקים - מטה האשכול: רח' הצורה 1, קרית-אריה, פתח-תקוה 49512 ת.ד. 3063 פתח-תקוה 49130.טל.03-9295060 פקס. 03-9295050
מרחב סוכנויות - רח' הצורה 1, קרית-אריה, פתח-תקוה 49512 ת.ד. 3063, פתח-תקוה 49130. טל. 03-9276540 פקס. 03-9276540
מרחב מרכז - רח' הצורה 1, קרית-אריה, פתח-תקוה 49512 ת.ד. 3063 פתח-תקוה 49130.טל.03-9276111 פקס. 03-9276200
מרחב צפון - שד' בן-גוריון 6, חיפה 35414 ת.ד. 9191 חיפה 31091. טל. 04-8352626 פקס. 04-8554455
מרחב ירושלים - רח' בן-יהודה 34, ירושלים 94230. ת.ד 659 ירושלים 91006. טל. 02-6291291 פקס. 02-6244933

מגדל לשירותך
מרכז מידע ושירות לקוחות
טל. 03-920-1010
פקס. 03-920-1020
www.migdal.co.il

**מגדל**

חברה לביטוח בע"מ

51661-06 אלבים מערכות בע"מ          999          עותק למבוטח          דף-3

פוליסה: 06/2520000777/מ          תוספת: 0          652 :

שם בעל הפוליסה: אלבים מערכות בע"מ

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

על ידי חיוב חשבונו בבנק, ישולמו דמי הביטוח לחברה ב- 6
תשלומים חודשיים רצופים.
מועד התשלום הראשון תוך 21 יום מיום תחילת הביטוח או מיום
הוצאת הפוליסה - המאוחר ביניהם. בכל מקרה לא יחול תשלום
כלשהו לאחר תום תקופת הביטוח .

3. גביה ב"שרות שיקים" - חתם המבוטח על טופס "שרות שיקים" לשם גבית דמי הביטוח
על ידי חיוב חשבונו בבנק ישולמו דמי הביטוח בתשלומים
לשיעורין כהתאם לרשום בפיסקת "פירוט התשלומים ."

4. כל תשלום, לרבות "תשלום במזומן", תשלום ע"י "גביה רגילה" או תשלום ע"י גביה
ב-"שרות שיקים", ישולם לחברה בשקלים לפי "שער המטבע" בידום התשלום.
ג) 3 פיגור בתשלום דמי הביסוח

- - - - - - - - - - - - - - - - - - - - -

א. במקרה שהמבוטח לא ישלם את דמי הביטוח בשיעורים ובמועדים הנקובים בפוליסה,
יהיה על המבוטח לשלם לחברה בגין כל סכום שלא שולם במועדו, הפרשי שער בהתאם
לשינויים שיחולו בשער היצג של הדולר בתקופת הפיגור, בצירוף ריבית פיגורים
על פי השיעור המתפרסם על-ידי בנק לאומי לישראל לגבי הלואות נקובות בדולרים
ארה"ב לתושבי ישראל, ביום פרעון הסכום שבפיגור.

ב. תקופת הפיגור תחושב החל מהיום בו היה על המבוטח לשלם את דמי הביטוח כנקוב
בפיסקת תנאי "תשלום דמי הביטוח" ובפיסקת "פרוט התשלומים" שברשימה, ועד למועד
תשלום דמי הביטוח בפועל.

ג) 4 שיפוט ישראלי
- - - - - - - - - -

מוצהר ומוסכם בזה כי למרות כל דבר אחר הכתוב בפוליסה, החברה לא תהא חייבת לפצות
את המבוטח בעד כל סכום/ים שהמבוטח יהיה מחוייב לשלם לפי פסק דין שינתנו נגדו
ע"י בית משפט כלשהו שמושבו מחוץ לתחום שיפוטם של בתי משפט ישראליים (להלן "פסק
דין זר") או בעד כל סכום/ים שהמבוטח יהיה מחוייב לשלם לפי פסק דין של בית משפט
ישראלי הנותן תוקף לפסק דין זר או שמבוסס במישרין או בעקיפין על פסק דין זר
שניתן בקשר לתביעה נגד המבוטח.

ג) 5

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

אם שולם כל סכום הפרמיה הנקוב תוך 28 יום מיום תחילת
הביטוח ינוכו מהתשלום דמי האשראי.

בשם
מגדל חברה לבטוח בע"מ

זהוי לקוח/520043027

תאריך הדפסה: 24/10/06 (הדפסה חוזרת ב-15/02/07)
זהוי משנה: 520043027

בורדרו: 10/06   מקיש: 008 מאושר: 8

מטה החברה: רח' אפעל 4 קרית-אריה, פתח-תקוה 49511. ת.ד. 3063. פתח-תקוה 49130. טל. 03-9168888 פקס. 03-9168887
מרכז סוכנויות - רח' היצירה 1, קרית-אריה, פתח-תקוה 49512. ת.ד. 3063 פתח-תקוה 49130. טל. 03-9276868 פקס. 03-9276540
מרחב מרכז - רח' היצירה 1, קרית-אריה, פתח-תקוה 49512. ת.ד. 3063 פתח-תקוה 49130. טל. 03-9276200 פקס. 03-9276111
מרחב צפון - שד' בן-גוריון 6, חיפה 35414. ת.ד. חיפה 31091. טל. 04-8352626 פקס. 04-8554455
מרכז ירושלים - רח' בן-יהודה 34, ירושלים 94230. ת.ד. 659 ירושלים 91006. טל. 02-6291291 פקס. 02-6244933
www.migdal.co.il

INSURANCE CO. LTD.

### Directors and Officers Liability
### And
### Company Reimbursement Liability Insurance

### (Excess: Aggregate Costs Inclusive)

<u>ATTACHING to and forming part of Policy No: 2520000777/06</u>

To indemnify the Assured for claim or claims first made against the Assured during the period of insurance hereon up to this Policy's amount of liability (as hereinafter specified) in the aggregate, the excess of the Underlying Policy/ies limits (as hereinafter specified) in the aggregate, the latter amount being the subject of Indemnity Policy/ies (as hereinafter specified) or any Policy/ies issued in substitution or renewal thereof for the same amount effected by the Assured and hereinafter referred to as "the Underlying Policy/ies".

<u>This Policy's amount of liability:</u>   <u>$ 10,000,000 any one claim and in the Aggregate plus additional limits of 20% for Costs and Expenses incurred in Israel only.</u>

<u>Underlying Policy/ies limits:</u>   <u>$ 30,000,000 any one claim and in the Aggregate plus additional limits of 20% for Costs and Expenses incurred in Israel only</u>

<u>Underlying Policy/ies Number/s:</u>
<u>Primary Policy – 2520000687/06</u>
<u>First Excess – 2520000736/06</u>
<u>Second Excess – 2520000777/06</u>

1.    Liability to pay under this Policy shall not attach unless and until the Underwriters of the Underlying Policy/ies shall have paid or have admitted liability or have been held liable to pay, the full amount of their indemnity inclusive of costs and expenses.

2.    It is a condition of this Policy that the Underlying Policy/ies shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limits contained therein solely by payment of claims or of legal costs and expenses incurred in defence or settlement of such claims.

3.    If by reason of the payment of any claim or claims or legal costs and expenses by the Underwriters of the Underlying Policy/ies during the period of this Insurance, the amount of indemnity provided by such Underlying Policy/ies is:-

    (a)    Partially reduced, then this Policy shall apply in excess of the reduced amount of the Underlying Policy/ies for the remainder of the period of insurance;

    (b)    Totally exhausted, then this Policy shall continue in force as Underlying Policy until expiry hereof.

4.    In the event of a claim arising to which the Insurers hereon may be liable to contribute, no costs shall be incurred on their behalf without their consent being first obtained (such consent not to be unreasonably withheld). No settlement of a claim shall be effected by the Assured for such a sum as will involve this Policy without the consent of the Insurers hereon.

# MIGDAL
INSURANCE CO. LTD.

5.  Any claim(s) made against the Assured or the discovery by the Assured of any loss(es) or any circumstances of which the Assured becomes aware during the subsistence hereof which are likely to give rise to such a claim or loss, shall, if it appears likely that such claim(s) plus costs and expenses incurred in the defence or settlement of such claim(s) or loss(es) may exceed the indemnity available under the Policy/ies of the Primary and Underlying Excess Insurers, be notified immediately by the Assured in writing to the Insurers hereon.

6.  All recoveries or payments recovered or received subsequent to a loss settlement under this Policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Insurers provided always that nothing in this Policy shall be construed to mean that loss settlements under this Policy are not payable until the Assured's ultimate net loss has been finally ascertained.

7.  Except as otherwise provided herein this Policy is subject to the same terms, exclusions, conditions and definitions as the Policy of the Primary Insurers.  No amendment to the Policy of the Primary Insurers during the period of this Policy in respect of which the Primary Insurers require an additional premium or a deductible shall be effective in extending the scope of this Policy until agreed in writing by the Insurers.

8.  If the Assured shall prefer any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claims hereunder shall be forfeited.

LSW 055