UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

STEPHEN M. WILSON, *et al.*,                          :

               Plaintiffs,                          :

        -against-                          :     07 Civ. 6176 (LTS)

IMAGESAT INTERNATIONAL N.V., *et al.*,                          :

              Defendants.                          :


-----------------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT JAMES DEPALMA'S MOTION TO DISMISS


Robert F. Carangelo
Stacy Nettleton
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Attorneys for Defendant James DePalma*


October 15, 2007

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ......................................................................... 1

BACKGROUND ................................................................................................ 2

ARGUMENT ...................................................................................................... 3

I.    THE COMPLAINT DOES NOT COMPLY WITH RULE 8 ................... 3

II.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST DEPALMA ................... 4

    A.    Plaintiffs' Insufficient Breach of Fiduciary Duties Allegations ............... 6

    B.    Plaintiffs' Remaining Claims Must be Dismissed ................................... 12

III.    THE COMPLAINT FAILS TO SATISFY THE STRINGENT PLEADING REQUIREMENTS OF RULE 9(B) ................................................ 13

    A.    Plaintiffs' RICO Claims Must Be Dismissed Under Rule 9(b) ............... 14

    B.    Plaintiffs' Common-Law Fraud Claim Must Be Dismissed Under Rule 9(b) ................................................................................................ 18

CONCLUSION.................................................................................................... 19

## TABLE OF AUTHORITIES

**CASES**                                                     **Page(s)**

Bell Atl. Corp. v. Twombly,
    127 S. Ct. 1955 (2007)..................................................................................3

In re Caremark Int'l Inc. Derivative. Litig.,
    698 A.2d 959 (Del. Ch. 1996)........................................................................5

Coddington v. Adelphi Univ.,
    45 F. Supp. 2d 211 (E.D.N.Y. 1999) .............................................................4

Com-Tech Assocs. v. Computer Assocs. Int'l Inc.,
    753 F. Supp. 1078 (E.D.N.Y. 1990) ...........................................................17

Conley v. Gibson,
    355 U.S. 41 (1957)..........................................................................................4

Ferre v. McGrath,
    2007 U.S. Dist. LEXIS 29490 (S.D.N.Y. Feb. 16, 2007)..........................5, 7

Figueroa Ruiz v. Alegria,
    896 F.2d 645 (1st Cir. 1990) ........................................................................15

Gebhardt v. Allspect, Inc.,
    96 F. Supp. 2d 331 (S.D.N.Y. 2000)...........................................................4, 7

Guttman v. Huang,
    823 A.2d 492 (Del. Ch. 2003).......................................................................6

Jerome M. Sobel & Co. v. Fleck,
    2003 U.S. Dist. LEXIS 21362 (S.D.N.Y. Dec. 1, 2003) ........................14, 15

Levitt v. Bear Stearns & Co.,
    340 F.3d 94 (2d Cir. 2003)............................................................................4

Malpiede v. Townson,
    780 A.2d 1075, 1096 (Del. 2001) .................................................................6

McCarthy v. Dun & Bradstreet Corp.,
    482 F.3d 184 (2d Cir. 2007)..........................................................................4

McLaughlin v. Anderson,
    962 F.2d 187 (2d Cir. 1992).........................................................................15

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young,
    1994 WL 88129 (S.D.N.Y. Mar. 15, 1999) ................................................16

Mills v. Polar Molecular Corp.,
    12 F.3d 1170 (2d Cir. 1993).........................................................................15

Moss v. Morgan Stanley Inc.,
    719 F.2d 5 (2d Cir. 1983).............................................................................14

O'Brien v. Nat'l Prop. Analysts Partners,
    936 F.2d 674 (2d Cir. 1991)..................................................................13, 14

Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.,
    85 F. Supp. 2d 282 (S.D.N.Y. 2000).......................................................16, 17

Plount v. Am. Home Assurance Co.,
    668 F. Supp. 204 (S.D.N.Y. 1987) ..........................................................13, 14

Rombach v. Chang,
    355 F.3d 164 (2d Cir. 2004)..........................................................................13

Salahuddin v. Cuomo,
    861 F.2d 40 (2d Cir. 1988)............................................................................3, 4

Sokol Holdings, Inc. v. BMB Munai, Inc.,
    2007 U.S. Dist. LEXIS 43817 (S.D.N.Y. June 14, 2007)...................................6

Stone v. Ritter,
    911 A.2d 362 (Del. 2006) ...............................................................................5

In re Tamoxifen Citrate Antitrust Litig.,
    429 F.3d 370 (2d Cir. 2005)............................................................................4

In re The Walt Disney Co. Derivative Litig.,
    2004 Del. Ch. LEXIS 132 (Del. Ch. Sept. 10, 2004)......................................7

Tribune Co. v. Purcigliotti,
    869 F. Supp. 1076 (S.D.N.Y. 1994), aff'd, 66 F.3d 12 (2d Cir. 1995) .............15

Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. De-Con Mech. Contractors, Inc.,
    896 F. Supp. 342 (S.D.N.Y. 1995) ...............................................................18

United States v. Persico,
    832 F.2d 705 (2d Cir. 1987)..........................................................................15

Weizmann Inst. of Sci. v. Neschis,
    229 F. Supp. 2d 234 (S.D.N.Y. 2002)...........................................................17

## STATUTES & RULES

18 U.S.C. § 1962.................................................................................14, 15, 17

Fed. R. Civ. P. 8......................................................................................1, 3, 4

Fed. R. Civ. P. 9......................................................................................ｐassim

## OTHER AUTHORITIES

5 Charles Alan Wright & Arthur R. Miller, Fed. Practice and P.: Civ. § 1296 (1969) .................14

Defendant James DePalma respectfully submits this memorandum of law in support of his motion to dismiss plaintiffs' Complaint (the "Complaint" or "Compl.") pursuant to Rules 12(b)(6), 9(b), and 8(a) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Like the plaintiffs in this action, James DePalma is also a minority shareholder of ImageSat International N.V. ("ImageSat" or the "Company"), through Core Software Technology's ("Core") security holding in ImageSat. Despite this similitude, plaintiffs attempt to link Mr. DePalma to a purported long-running fraudulent scheme to misuse ImageSat to serve the independent business interests of ImageSat's controlling shareholders, Israel Aerospace Industries Ltd. ("IAI") and Elbit Systems Ltd. ("Elbit"), while further enhancing IAI's and Elbit's controlling influence over the Company to the detriment of the Company's minority shareholders. Plaintiffs' theory defies law and logic. Mr. DePalma joined ImageSat's Board of Directors as a designee of minority shareholder Core in 2003. Many of the alleged on-going wrongful activities pre-date his joining the ImageSat Board. Plaintiffs do not -- and cannot -- allege that Mr. DePalma is or ever was affiliated with IAI or Elbit -- much less have any motive to conspire to do their bidding to the detriment of his own minority interest in ImageSat. Indeed, it is nearly impossible to decipher what Mr. DePalma is alleged to have done in reading plaintiffs' prolix Complaint. In this respect, the unwieldy Complaint runs afoul of Fed. R. Civ. P. 8's fundamental requirement that a pleading set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." See infra Point I. Moreover, not surprisingly given these fundamental failings, the Complaint does not contain any allegations against Mr. DePalma sufficient to state any of the claims against him (see infra Point II) -- let alone the particularized allegations required to satisfy the heightened pleading requirements for plaintiffs'

fraud claims (see infra Point III).  Consequently, the claims against Mr. DePalma must therefore be dismissed.

## BACKGROUND

The relevant facts for the purposes of this motion are few, not disputed and easily summarized.  ImageSat is incorporated in the Netherlands Antilles with its principal place of business in Israel.  Compl. ¶ 1.  ImageSat is engaged in a satellite business.  Id.  Like the plaintiffs in this case, James DePalma is a minority security holder of ImageSat through Core. Id. at ¶¶ 60, 62, 86, 169.[1]  In 2003, Mr. DePalma became a member of ImageSat's Board of Directors as a designee of Core and he is a member the Board's Audit Committee.  Id. at ¶ 52. IAI and Elbit are ImageSat's largest shareholders.  Id. at ¶ 4.

The Complaint's allegations lump Mr. DePalma, an independent outside director of ImageSat, with IAI, Elbit, their former and current Board designees and officers of ImageSat as having perpetrated an ongoing course of conduct that allegedly caused ImageSat financial harm. Specifically, the Complaint alleges that "IAI and Elbit have consistently misused their Israeli government connections to enhance their controlling influence over the Company . . . and by wrongfully exercising that control to obtain inequitable concessions."  Id. at ¶ 6.  In this respect, all defendants are alleged to have "planned and executed" a "series of events . . . that reflect a new and malicious intent to unwind the once highly promising independent business of the Company and to misappropriate its financial satellite, and launch assets to serve the business purposes of IAI and Elbit. . . ."  Id. at ¶ 9.  Mr. DePalma, however, is not alleged to have any affiliation with IAI or Elbit, and plaintiffs do not allege any discernable motive for Mr. DePalma

_____

[1] Core's ownership interest in ImageSat is approximately 2% fully diluted.  Mr. DePalma's ownership interest in Core is approximately 28% fully diluted.

to participate or acquiesce in an alleged wrongdoing that by definition would have the same negative impact on him through his ownership in Core.

The Counts against Mr. DePalma are: Breaches of Fiduciary Duties (Counts II, III, IV, V, and VI); Corporate Waste (Counts VII and VIII); Company's Failure to Enforce its Exclusivity, First Right, and Royalty Rights (Count IX); Self-Dealing (Count X); RICO (Count XI); Conspiracy to Violate RICO (Count XII); Common Law Fraud (Count XIII); Disgorgement of Compensation (XX); Conversion and Misappropriation of Corporate Assets (XXI); and Unjust Enrichment and Restitution (XXII).

As demonstrated below, many of the allegations forming the basis for the alleged claims do not involve Mr. DePalma or ImageSat Board actions and/or involve events and occurrences pre-dating Mr. DePalma's joining the Board.  None of these allegations state a claim against Mr. DePalma and the claims must therefore be dismissed.

## ARGUMENT

## I.    THE COMPLAINT DOES NOT COMPLY WITH RULE 8

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  "The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988).  While the complaint does not need detailed factual allegations, it "requires more than labels and conclusions, and a formalistic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007)).  As a result, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id.

The Complaint here is anything but "short and plain." It is nearly impossible to decipher what particular actions DePalma is alleged to have taken -- let alone what wrongs he is accused of committing. The Complaint is replete with allegations against all "defendants," even though many of the events and acts either pre-date Mr. DePalma's membership on the Board or do not involve Board actions. Separating the wheat from the chaff is a monumental task that neither this Court nor Mr. DePalma should have to undertake to determine what he is actually alleged to have done. For this reason alone, all the claims against Mr. DePalma should be dismissed under Rule 8(a). See Coddington v. Adelphi Univ., 45 F. Supp. 2d 211, 219 (E.D.N.Y. 1999) (dismissing plaintiff's amended complaint in part for failing to put the defendants on notice of the grounds for which plaintiff sought relief and making it "impossible for defendants to prepare to defend themselves against his claim").[2]

## II.  PLAINTIFFS FAIL TO STATE A CLAIM AGAINST DEPALMA

A motion to dismiss under Rule 12(b)(6) must be granted where, as here, "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Levitt v. Bear Stearns & Co., 340 F.3d 94, 101 (2d Cir. 2003). When considering a motion to dismiss under Rule 12(b)(6), a court must "accept as true all factual allegations in the complaint, and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007) (citing In re Tamoxifen Citrate Antitrust Litig., 429 F.3d 370, 384 (2d Cir. 2005)). However, "'[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" Gebhardt v. Allspect, Inc.,

---

[2] As discussed infra at 11, plaintiffs' allegations at times contradict each other. Dismissal is appropriate under Rule 8(a) where "the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Salahuddin, 861 F.2d at 42.

96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000) (internal citation omitted).

Plaintiffs have simply engaged in an "everything-but-the-kitchen-sink" pleading tactic, and to the extent decipherable, it is clear they cannot make out a claim against Mr. DePalma. Demonstrating the absurdity of the claims against Mr. DePalma, plaintiffs do not suggest any discernable reason why Mr. DePalma would participate in the alleged ongoing fraudulent scheme where according to plaintiffs, it would be to his detriment as a minority shareholder. Stripped of hyperbole, conclusions and pure conjecture, most of the allegations pertain to management decisions, negotiations or discussions in which Mr. DePalma is not alleged to have had any involvement. Mr. DePalma, as a independent outside director, cannot be held liable for actions not involving the Board. See Ferre v. McGrath, 2007 U.S. Dist. LEXIS 29490, at *20-21 (S.D.N.Y. Feb. 16, 2007) (finding under Delaware corporate law "as to[] three outside directors, the possibility of personal liability . . . [was] remote or nonexistent" for breaches of fiduciary duty because "[t]he complaint contain[ed] not a single allegation suggesting that [the defendants] participated in the alleged wrongdoing at Interboro --admissions and financial aid are clearly management matters, not Board matters . . . [e]ven drawing every inference in favor of plaintiff, nothing in the complaint admit[ed] of the inference that these three defendants acted in bad faith or that they derived any personal benefit from actions taken or not taken in their capacity as EVCI directors").[3] Likewise, many of plaintiffs' sweeping allegations forming the basis of their

---

[3] Plaintiffs allege no duty of oversight with respect to these non-Board related activities. And, even if plaintiffs had alleged such a duty, establishing director liability for a failure to monitor corporate affairs is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." In re Caremark Int'l Inc. Derivative Litig., 698 A.2d 959, 967 (Del. Ch. 1996); Stone v. Ritter, 911 A.2d 362, 372 (Del. 2006). Director oversight failure claims generally require factual allegations showing that (1) "directors *utterly failed to implement any reporting or information system or controls*" or (2) directors, "having implemented such a system or controls, *consciously failed to monitor or oversee its operations* thus disabling themselves from being informed of risks or problems requiring their attention." Stone, 911 A.2d at 370 (emphasis added). "In either case, imposition of liability requires a

claims involve events and actions that pre-date Mr. DePalma's Board membership. See, e.g., Compl. ¶¶ 92-101, 132, 133, 135. These allegations also cannot form the basis of a claim against Mr. DePalma because Mr. DePalma cannot be held liable for any wrongdoing that occurred before he joined the Board. See Sokol Holdings, Inc. v. BMB Munai, Inc., 2007 U.S. Dist. LEXIS 43817, at *17 (S.D.N.Y. June 14, 2007) (holding under Delaware law, breach of fiduciary duty claim "'must be based on an actual, existing fiduciary relationship between the plaintiff and the defendants at the time of the alleged breach.") (quoting Malpiede v. Townson, 780 A.2d 1075, 1096 (Del. 2001)).

A.    **Plaintiffs' Insufficient Breach of Fiduciary Duties Allegations**

Mr. DePalma is specifically alleged to have breached his fiduciary duties as a member of ImageSat's Board concerning "the EROS B Satellite Fraud." (Count II). However, there are no allegations that Mr. DePalma was involved in negotiating any of the allegedly sham contracts related to the construction of the EROS B satellites or involved with the manufacturing of the satellites that plaintiffs allege was improperly delayed. Compl. ¶¶ 92, 94. There are no allegations that he was involved in the financing of the EROS B satellites or renegotiation of the alleged sham EROS B satellite design and contracts (¶¶ 93-100). Plaintiffs do not allege that Mr. DePalma was involved with the Satellite Operating Partner ("SOP") contracts that were allegedly breached as a result of delays in construction of the satellites (¶¶ 104, 109); nor do plaintiffs contend he was involved in the allegedly inflated or unearned payments under the contracts at

_____

showing that the directors *knew* that they were not discharging their fiduciary obligations." Id. Liability requires "a showing that the directors were *conscious of the fact that they were not doing their jobs.*" Guttman v. Huang, 823 A.2d 492, 506 (Del. Ch. 2003). Plaintiffs make no allegations against Mr. DePalma that he had the duty to oversee the non-Board actions discussed in the Complaint and plaintiffs certainly have not alleged any facts demonstrating that Mr. DePalma intentionally failed to monitor or oversee the Company's operations.

issue (¶ 105). And generally these allegations do not involve any specified Board actions and thus, do not implicate Mr. DePalma -- an outside director of ImageSat. See Ferre, 2007 U.S. Dis. LEXIS 29490, at *20-21. Moreover, though he is impermissibly grouped with the other defendants and alleged to have breached his fiduciary duties "[i]n connection with the purchase and manufacture of the 2001 EROS satellite" -- many of the allegations in connection with this claim relate to events occurring before Mr. DePalma joined the ImageSat Board in 2003 for which he cannot be found liable. See, e.g., Compl. ¶¶ 92-101; see also In re The Walt Disney Co. Derivative Litig., 2004 Del. Ch. LEXIS 132, at *17 (Del. Ch. Sept. 10, 2004) (finding that there is no "reason to impose a fiduciary duty upon [the defendant] before he obtained fiduciary authority.").

Likewise, though plaintiffs make the conclusory assertion that the Board decided to write-off the EROS B (renamed EROS C) investment in excess of $33 million on May 19, 2006, "without any recourse to ImageSat" (Compl. ¶ 106), plaintiffs conflictingly highlight the alleged years worth of problems and difficulties involving this investment. See, e.g., ¶¶ 97-103. The conclusory contention that such an action constituted a breach of fiduciary duty cannot survive a motion to dismiss. Gebhardt, 96 F. Supp. 2d at 333 (S.D.N.Y. 2000) ( "'[c]onclusory allegations or legal conclusions . . . will not suffice to prevent a motion to dismiss'") (citation omitted).

Mr. DePalma is also alleged to have breached his fiduciary duties "Concerning the Destruction of the Company's International Operations." (Count III). Again, however, Mr. DePalma is not implicated in many, if not any, of the allegations forming the basis for this claim. There are no facts alleged that Mr. DePalma was involved in: "the decision to deemphasize the entire Acquisition, Archiving and Distribution or 'AAD' elements of the Company's combined SOP/AAD business plan" which was allegedly "taken for the purpose of concealing IAI's

inability to stabilize and deliver the hardware DAS component of the ground reception segment"

(¶ 115); the many alleged breaches "of [the Company's] contractual commitments to its AAD's

based on decisions and directives of Weiss and his successor, Broder" (¶ 119); the alleged failed

negotiations with Russia regarding a SOP program (¶ 120); the alleged performance issues under

the AAD agreement with South Korea (¶121); the alleged failure to "properly and professionally

serve the Company's SOP customers and to exploit SOP contract opportunities" (¶ 122); the

alleged performance issues under the Taiwan SOP contract and termination thereof (¶ 123); the

alleged wasteful order of a third EROS B satellite from IAI (¶ 125); the alleged failure to

perform under the SOP contract with Angola (¶¶ 127, 128); or any of the alleged problematic

payments under the SOP or other contracts (¶ 129).  Plaintiffs plead no facts establishing that

Mr. DePalma had a duty to oversee these day-to-day managerial activities as an outside director

and plaintiffs' conclusory assertions that the Board failed to exploit business opportunities are

insufficient to state a claim where plaintiffs fail to plead any facts regarding an actual duty to

oversee these dealings or even a particular Board action. See, e.g., Compl. ¶ 126 ("the failure of

the ImageSat board . . . to pursue [a potential business opportunity in Taiwan] is [sic] at the

instance of IAI, Elbit and the IMOD, is a direct reflection of their inappropriate redirection of the

Company's business to serve their own conflicted interests. . ."); see also note 3, supra.

    Further, Mr. DePalma is alleged to have breached his fiduciary duties "in Connection

with the Company's SOP and Investment Opportunity in Venezuela." (Count IV).  Yet Mr.

DePalma is not alleged to have had any involvement in negotiating the proposed Venezuelan

SOP agreement or to have had any discussions regarding the alleged Venezuelan opportunity --

much of which allegedly occurred prior to Mr. DePalma joining the Board.  Compl. ¶¶ 132-35.

There are no facts pled that Mr. DePalma was involved in the reallocation of funds that were

allegedly budgeted for the Venezuelan SOP program (Id. at ¶ 136); or involved in IAI's alleged "intervention" in Venezuela (Id. at ¶ 137); or involved in the alleged delay in finalizing the Company's 2004 audited financial statements that resulted in ImageSat's failure to meet Venezuela's annual budget deadline (Id. at ¶ 139); or involved in the alleged delay in delivering documentation to Venezuela (Id. at ¶ 140). Nor have plaintiffs demonstrated a duty that was breached by virtue of the various alleged timing and technical issues that plaintiffs contend prevented ImageSat from pursuing the purported Venezuelan opportunity. Id. at ¶¶ 143-46.[4]

Mr. DePalma is also alleged to have breached his fiduciary duties "Concerning ImageSat's Recent Financial Affairs." (Count V). Again, the allegations forming the basis of this claim either do not involve Mr. DePalma or are merely impermissible conclusions and conjecture. For example, Mr. DePalma is not alleged to have been involved in preparing the proposed (and ultimately uninitiated) IPO and the preparations allegedly began well before Mr. DePalma joined the Board. Id. at ¶ 152. Mr. DePalma is not alleged to have been involved with the purported problems with the Angola SOP or the alleged problems with the 2001 EROS B satellite procurement and manufacturing process which in turn, allegedly delayed the IPO. Id. at ¶ 153. Nor is Mr. DePalma alleged to have been involved in the delays in finalizing the 2004 audit which also purportedly delayed the IPO. Id. at ¶ 158.

Further, plaintiffs make the unsupported assumption that financing transactions in March 2006, undertaken after the IPO failed, were the result of the defendants self-dealing to allegedly

---

[4] Plaintiffs merely plead conclusions that defendants did not pursue the purported Venezuelan opportunity for "self-interested" reasons. See, e.g., Compl. ¶ 149 (failure to take advantage of the Venezuela opportunity allegedly "motivated by geopolitical and strategic concerns of the IMOD and senior IMOD personnel...."). These assertions may arise from plaintiff Wilson's personal or professional disappointment, as it appears from the Complaint that he spearheaded (perhaps unilaterally) the Venezuelan project. But no facts are alleged to suggest a duty on Mr. DePalma's part to pursue the Venezuelan opportunity.

"cement[] complete control of the Company by IAI and Elbit." See id. at ¶¶ 164-65. Plaintiffs allege that the Company's given reason for not initiating the IPO (as they understand it) -- alleged payment problems under the Angola SOP (Id. at ¶ 162) -- was not valid, and thus the need for the financing was fraudulently created. Id. at ¶ 163 ("The genuine reasons for the Company's aborting of the IPO process included concerns that continuing the IPO process might reveal the Company's excessive, inappropriate, and in some cases outright fraudulent 'commission' and other payments to agents in connection with the negotiation and/or termination of the Company's SOP programs in Angola and possibly elsewhere"). However, plaintiffs acknowledge that there were problems relating to the Angola SOP. See, e.g., Compl. ¶ 162. Likewise, plaintiffs acknowledge the Company was suffering financial difficulties, including that the Company received a notice of default on its senior debt. Id. at ¶ 165. Plaintiffs' bare conclusion that the March transactions were the result of Mr. DePalma's self-dealing and concomitant breach of fiduciary duties cannot survive a motion to dismiss.[5]

Mr. DePalma is also alleged to have breached fiduciary duties "Concerning the Failure to Enforce ImageSat's Exclusivity, First Right, and Royalty Rights." (Count VI, IX). But Mr. DePalma is not alleged to have had any involvement in IAI's or Elbit's businesses, nor is he alleged to have been involved in their performance under the Master Agreement between IAI and ImageSat or the Stock Purchase Agreement between Elbit and ImageSat. He also is not alleged to have been involved in IAI's and Elbit's purported "reinterpretation" of their "'exclusive commercialization' commitments to the Company" under those agreements. Id. at ¶ 175. Plaintiffs do not allege that Mr. DePalma had any involvement in the transaction between IAI

---

[5] Likewise, there are no facts alleged that Mr. DePalma was involved in the allegedly "false" information provided to Morgan Joseph, Inc. in connection with Morgan's fairness opinion relating to the March 2006 transactions. Id. at ¶ 170, 171.

and Northrop Grumman Corp., which allegedly prompted IAI to "reinterpret" the Master Agreement's exclusivity provision. Id. at ¶ 181. Plaintiffs only make the conclusory assertion that the Board acquiesced in IAI and Elbit's "reinterpretation" of their contracts at the February 22, 2007 Board meeting where a majority of the Board (not alleged to include DePalma), purportedly approved the termination of IAI's exclusive rights under the Master Agreement -- supposedly in exchange for IAI not pursuing contractual remedies as a result of ImageSat's default under the EROS C contract. Id. at ¶ 184. Indeed, plaintiffs do not allege that ImageSat had not defaulted on the EROS C contract. Although plaintiffs assert that defendants generally have failed to "pursue" contractual redress under the contracts, there are no allegations regarding a particular duty, or particular Board action or inaction involving Mr. DePalma. Id. at ¶ 183-84.

That plaintiffs' allegations contradict themselves, further evinces the inadequacy of the allegations against Mr. DePalma. For example, plaintiffs allege that defendants, including Mr. DePalma, "[f]ail[ed] to adequately inform the designees of the minority shareholders to the Board, shareholders, investors, and the Company's own auditors of the highly significant link between the Master Agreement as amended and the satellite supply contracts." Id. at ¶ 211(n). Mr. DePalma is a minority Board designee. Put simply, plaintiffs alleged that Mr. DePalma failed to inform himself. Moreover, plaintiffs conflictingly allege, both that the ImageSat Board improperly refused to pursue the Venezuelan SOP opportunity (Id. at ¶ 148) and that there was "no substantive discussion of either the SOP opportunity with Venezuela or the investment proposal by the President of Venezuela to the Company at [the November 22, 2006 Board] meeting and certainly no formal resolution or action taken or recommended." Id. at 147 (emphasis added). Thus, according to plaintiffs, there was no Board involvement for which DePalma, as an outside director, can be held liable. Plaintiffs confused allegations cannot state a

claim against DePalma.

Plaintiffs' remaining allegations against Mr. DePalma in connection with these claims are merely conclusions, masquerading as facts and are insufficient to survive a motion to dismiss. See, e.g., Compl. ¶ 115 ("Defendants knew or should have known, the Company's international character was an essential part of its operating plans from both a marketing and a regulatory perspective"); Id. at ¶ 132 ("ImageSat's current Board members and management have continued to spurn lucrative SOP opportunities in order to devalue the Company"); Id. at ¶ 230(a) (defendants "[m]anipulate[ed] ImageSat's SOP program to enhance the attractiveness of IAI's own sales initiatives in Venezuela, and in doing so putting IAI's and the other Defendants' own interests ahead of and in direct competition with ImageSat's SOP program for limited budget allocations"); Id. at ¶ 165 ("the 'problems' the Company was experiencing, i.e., its persistent undercapitalization and the general inability to adequately capitalize the business . . . were a direct reflection of the self-dealing, corruption, and ineptitude of the Defendants").

Having failed to allege facts demonstrating that Mr. DePalma was involved in any of the alleged wrongdoing, plaintiffs' breach of fiduciary duties claims outlined above must fail.

**B.    Plaintiffs' Remaining Claims Must be Dismissed**

Plaintiffs have failed to state claims for corporate waste against Mr. DePalma (Counts VII and VIII), as these counts arise from the same insufficient allegations discussed above. See, e.g., Compl. ¶¶ 255-68. Because plaintiffs do not and cannot state a claim against Mr. DePalma, it follows that their claim against him for disgorgement of compensation (Count XX) in connection with the alleged breaches of fiduciary duties must also be dismissed.

Moreover, as plaintiffs have failed to set forth any allegations that Mr. DePalma received

any benefit from the alleged wrongdoing -- and in fact, Mr. DePalma as a fellow minority

shareholder would have suffered the same alleged harm as plaintiffs under plaintiffs' theory of

the case -- plaintiffs' conclusory claims against all defendants for self-dealing (Count X),[6]

conversion and misappropriation of corporate assets (Count XXI),[7] and unjust enrichment and

restitution (Count XXII)[8] must also be dismissed.

Plaintiffs have likewise failed to set forth any facts supporting their claims for common-

law fraud, RICO and conspiracy to commit RICO violations.  These claims, sounding in fraud,

are also subject to a heightened pleading standard, which is discussed below.

## III.    THE COMPLAINT FAILS TO SATISFY THE STRINGENT PLEADING REQUIREMENTS OF RULE 9(B)

Given the glaring deficiencies of plaintiffs' Complaint on Rule 12(b)(6) grounds, they

have necessarily failed to meet the heightened pleading requirements for plaintiffs' fraud claims

(common-law fraud, RICO violations) under Federal Rule of Civil Procedure 9(b).  O'Brien v.

Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991).  All allegations concerning

fraudulent conduct is subject to the requirements of Rule 9, even if the allegations are not styled

or denominated as fraud.  Rombach v. Chang, 355 F. 3d 163, 171 (2d Cir. 2004).  Thus, Rule

9(b) also applies to plaintiffs' RICO claims that are predicated on alleged fraudulent acts.  Plount

v. Am. Home Assurance Co., 668 F. Supp. 204, 206-07 (S.D.N.Y. 1987) ("all of the concerns

---

[6] "In connection with each of the transactions and acts described above, each of the Defendants wrongfully placed his or its own personal interests ahead of the interests of the Company's shareholders, including Plaintiffs, and the Company."  Compl. ¶ 278.

[7] "In connection with each of the transactions and acts described above, each of the Defendants wrongfully caused assets, property, funds, and other things of value belonging to ImageSat to be diverted to themselves or their own use."  Id. at 381.

[8] "By reason of all the acts and omissions set forth above, each of the Defendants has been unjustly enriched at the expense of the Plaintiffs and has received money, ownership interests in the Company, and/or other things of value that should be [sic] right belong to Plaintiffs."  Id. at 387.

that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions, and the Second Circuit has adopted a method of analyzing RICO complaints that presupposes -- and requires -- a specifically pled complaint."). Rule 9(b) requires that in "all averments of fraud or mistake, the circumstances constituting fraud . . . shall be stated with particularity." O'Brien, 936 F.2d at 676.

### A. Plaintiffs' RICO Claims Must Be Dismissed Under Rule 9(b)

Count XI of the Complaint alleges a civil cause of action under RICO pursuant to 18 U.S.C. § 1962(c). See Compl. ¶ 284-303. In order to survive a motion to dismiss a RICO claim, a plaintiff must show that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962, by alleging "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." Jerome M. Sobel & Co. v. Fleck, 2003 U.S. Dist. LEXIS 21362, at *9 (S.D.N.Y. Dec. 1, 2003) (quoting Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983)).

Since plaintiffs' RICO claim is based on predicate acts of mail and wire fraud, the Complaint must satisfy Rule 9(b). Rule 9(b) has generally been recognized as "necessary to safeguard potential defendants from lightly made claims charging commission of acts that involve some degree of moral turpitude." Plount, 668 F. Supp. at 206 (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1296 (1969)). "If this sensitivity toward a defendant's reputation is called for in every garden variety fraud, then surely equal solicitude for defendants' good names is necessary in an action which goes much further

and labels them 'racketeers.'" Id.; Jerome, 2003 U.S. Dist. LEXIS 21362 , at *7-8 ("Given the

potential breadth of claims and trebling of damages available under RICO, particular scrutiny is

warranted in considering civil RICO claims. Because the mere assertion of a civil RICO claim

'has an almost inevitable stigmatizing effect on those named as defendants[,] . . . courts should

strive to flush out frivolous RICO allegations at an early stage of the litigation.'")(quoting

Figueroa Ruiz v. Alegria, 896 F.2d 645, 650 (1st Cir. 1990)). "Thus, courts must attempt to

distinguish between claims consistent with Congress' intentions in passing RICO – 'protecting

legitimate businesses from infiltration by organized crime,' . . .  – and traditional state court

actions 'cast in terms of RICO violations' simply to 'gain access to treble damages and attorneys

fees in federal court.'" Jerome, 2003 U.S. Dist. LEXIS 21362 , at *8 (citation omitted).

　　　"To state a mail and wire fraud claim under RICO, a plaintiff must allege that the

defendant made two predicate communications, via interstate commerce, that constitute a pattern

of racketeering activity.  Like allegations of securities fraud, allegations of predicate mail and

wire fraud acts should state the contents of the communications, who was involved, where and

when they took place, and explain why they were fraudulent." Mills v. Polar Molecular Corp.,

12 F.3d 1170, 1176 (2d Cir. 1993) (citation omitted).  The RICO claim must be plead with

particularity as to each individual defendant.  United States v. Persico, 832 F.2d 705, 714 (2d

Cir. 1987) ("The focus of section 1962(c) is on the individual patterns of racketeering engaged in

by a defendant, rather than the collective activities of the members of the enterprise . . . .").  This

includes pleading the predicate acts of mail and wire fraud with 9(b) particularity.  "[W]here the

predicate acts alleged are mail fraud, the alleged fraudulent mailings must be linked to particular

defendants . . . .'" Tribune Co. v. Purcigliotti, 869 F. Supp. 1076, 1088 (S.D.N.Y. 1994), aff'd

66 F.3d 12 (2d Cir. 1995).  Plaintiffs must also "identify the purpose of the mailing within the

defendant's fraudulent scheme." <u>McLaughlin</u> v. <u>Anderson</u>, 962 F.2d 187, 191 (2d Cir. 1992).

In addition, plaintiffs must "allege facts that give rise to a strong inference of fraudulent intent." <u>Merrill Lynch, Pierce, Fenner & Smith, Inc.</u> v. <u>Young</u>, 1994 WL 88129, at *7 (S.D.N.Y. March 15, 1999). In this respect, "[a] complaint may adequately identify the statements alleged to be misrepresentations and properly indicate when, where and by whom they were made, yet still fail Rule 9(b) scrutiny if the complaint does not allege circumstances giving rise to a strong inference that defendant knew the statements to be false . . . and intended to defraud plaintiff." <u>Merrill Lynch</u>, 1994 WL 88129, at *7. "A complaint may give rise to a sufficient inference of fraudulent intent in two ways, either: (1) by identifying circumstances indicating conscious behavior by the defendant through 'correspondingly' strong allegations; or (2) by alleging a motive for committing fraud and a clear opportunity for doing so." <u>Odyssey Re (London) Ltd.</u> v. <u>Stirling Cooke Brown Holdings</u>, 85 F. Supp. 2d 282, 295 (S.D.N.Y. 2000). "The Second Circuit has stated that an inference of intent must entail allegations of 'concrete benefits that could be realized by one or more of the ... nondisclosures alleged.'" <u>Id.</u> Likewise, "where a particular defendant's motive to defraud is not apparent," and a complaint seeks to set forth "circumstances indicating 'conscious behavior' by the defendant from which an intent to defraud may fairly be inferred," "the strength of the circumstantial allegations must be correspondingly greater." <u>Merrill Lynch</u>, 1994 WL 88129, at *7.

As noted above, plaintiffs have not alleged particularized facts giving rise to a strong inference of fraudulent intent on the part of Mr. DePalma. There are <u>no</u> allegations evincing a concrete benefit that inured to Mr. DePalma as a result of the fraud. In fact, as a fellow minority shareholder, Mr. DePalma had no reason to participate in the purported fraud -- it was to his own detriment to do so. There are simply no facts alleged to demonstrate an intent to defraud.

Likewise, most of plaintiffs' allegations with respect to the mailings that purportedly constitute the alleged mail and wire fraud are not specifically linked to Mr. DePalma and thus, do not satisfy Rule 9(b)'s requirements. See, e.g., Compl. ¶¶ 284-303; Odyssey, 85 F. Supp. 2d at 296 ("Rule 9(b) is 'not satisfied by a complaint in which defendants are clumped together in vague allegations.'")(internal citation omitted). Three email messages from Mr. DePalma listed in Exhibit F to the Complaint are alleged to have been sent in connection with the fraudulent scheme. Compl. ¶ 298(a). However, plaintiffs plead no facts to demonstrate that these emails were knowingly false when made such that they were fraudulent. Rather, plaintiffs merely make conclusory assertions that the statements therein were false and misleading. In the absence of any allegations against Mr. DePalma giving rise to a strong inference of fraudulent intent, plaintiffs' RICO claim must fail. Plaintiffs have pled no facts to demonstrate that Mr. DePalma "knowing[ly] or intentional[ly] participat[ed] in the [alleged] scheme." Odyssey, 85 F. Supp. 2d at 301.

Moreover, because plaintiffs' substantive RICO claim fails, plaintiffs' RICO conspiracy claim must also fail. See Weizmann Inst. of Sci. v. Neschis, 229 F. Supp. 2d 234, 257 (S.D.N.Y. 2002); Odyssey, 85 F. Supp. 2d at 303 ("Where a RICO conspiracy claim is based on predicate acts that have been dismissed by the court, the conspiracy claim "must be dismissed as well."). Nevertheless, plaintiffs have pled no facts demonstrating that Mr. DePalma "by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of the RICO enterprise" -- a necessary element of a RICO conspiracy claim. Com-Tech Assocs. v. Computer Assocs. Int'l, Inc., 753 F. Supp. 1078, 1092 (E.D.N.Y. 1990). "Bare or conclusory allegations of participation in a conspiracy under 1962(d) will not avail on a motion to dismiss, and the plaintiff must plead allegations that each defendant knowingly agreed to participate in

the conspiracy, particularly when the predicate acts alleged are fraud." Id.  Plaintiffs conclusory

allegations that Mr. DePalma conspired to violate RICO must be dismissed.

**B.      Plaintiffs' Common-Law Fraud Claim Must Be Dismissed
          Under Rule 9(b)**

In support of their common-law fraud claim, plaintiffs allege that defendants intentionally

made false and misleading statements concerning the transactions and events set forth in the

Complaint. See, e.g., Compl. ¶¶ 310(b)-(e).  Under, Rule 9(b), plaintiffs are required "to connect

the allegations of fraud to each individual defendant." Trs. of Plumbers & Pipefitters Nat'l

Pension Fund v. De-Con Mechanical Contractors, Inc., 896 F. Supp. 342, 347 (S.D.N.Y. 1995).

"A complaint sounding in fraud may not rely on sweeping references to acts by all or some of the

defendants because each named defendant is entitled to be apprised of the facts surrounding the

alleged fraud." Id.  Moreover, plaintiffs "must demonstrate that each Defendant had a specific

intent to defraud either by devising, participating in, or aiding and abetting the scheme." Id.

"Fraudulent intent is commonly pled by alleging facts showing a motive for committing fraud

and a clear opportunity for doing so." Id.  Plaintiffs have alleged no motive (or any indicia of

intent) on Mr. DePalma's part to participate or aid in the alleged fraudulent activities.  To the

contrary, if, assuming arguendo, that plaintiffs' allegations are accepted as true, Mr. DePalma, as

a minority shareholder, would be harmed by the very fraud he is alleged to have committed.  Mr.

DePalma is not alleged to have any affiliation with IAI and Elbit, for whose benefit the alleged

fraud was perpetrated.  We are not aware of any case law supporting the notion that acting

against your own interests can be a motive for fraud.

Moreover, there are no particularized allegations that Mr. DePalma made any false or

misleading statements.  The allegations in the Complaint itself specifically attribute only three

statements to Mr. DePalma -- the remaining allegations impermissibly sweep Mr. DePalma in

with the other defendants and thus, cannot satisfy the particularity requirements of Rule 9(b).[9]

Mr. DePalma is alleged to have informed investors that "the target IPO price per share was set at

$56…" Compl. ¶ 156.  No where is this statement alleged to be false and, even if plaintiffs had

alleged the statement was false, Mr. DePalma is not alleged to have had knowledge of its falsity.

Mr. DePalma also allegedly indicated that "the IPO was still on track until at least November 14,

2005" and that "the first rumors of a postponement occurred on November 17." Id. at ¶ 162(n).

Again, plaintiffs do not allege these statements to be false or knowingly false when made.

Having failed to allege any particularized facts against Mr. DePalma, plaintiffs' common-law

fraud claim must be dismissed.

## CONCLUSION

For the foregoing reasons, Mr. DePalma respectfully requests that the Court

dismiss the claims against him in their entirety and with prejudice.

Dated:  October 15, 2007

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone: (212) 310-8000

By: /s/ Robert F. Carangelo
     Robert F. Carangelo (RC-3162)
     Stacy Nettleton (SN-1028)

*Attorneys for Defendant*
*James DePalma*

---

[9] Email messages between Mr. DePalma and plaintiff Wilson referenced in Exhibit F of the Complaint are discussed above in connection with plaintiffs' insufficient RICO claim allegations.

**<u>CERTIFICATE OF SERVICE</u>**

I, Stacy Nettleton, an attorney admitted to this Court, do hereby certify, under penalty of perjury, that I have today caused a copy of the annexed documents to be served via the Court's ECF system upon all counsel as reflected on the attached service list.

New York, New York
Dated:  October 15, 2007

_____
Stacy Nettleton

*Stephen M. Wilson, et al. v. ImageSat Int'l N.V., et al.,*
**Case No. 07-Civ.-6176 – Service List**

| | |
|---|---|
| Ira Brad Matesky, Esq.<br>Matthew Russell Maron, Esq.<br>Matthew Norman Tobias, Esq.<br>William A. Jaskola, Esq.<br>GANFER & SHORE, LLP<br>360 Lexington Avenue<br>14th Floor<br>New York, NY 10017<br><br>*Counsel for Plaintiffs Stephen M. Wilson, BRW Engineering Ltd., Wis Partners Ltd., Moshe Bar-Lev, Patrick Rosenbaum, Michael Morris, Haim Yifrah, Top Down Partners, LLC, Joel Levine, Morris Talansky, Abraham Moshel, Magma Int'l Servs., Ltd., Albert Reichmann, Hexagram & Co., Polybutes Company* | Sander Bak, Esq.<br>Deborah Elman, Esq.<br>MILBANK, TWEED, HADLEY & McCLOY, LLP.<br>1 Chase Manhattan Plaza<br>New York, NY 10005<br><br>*Counsel for Defendants ImageSat Int'l N.V., Moshe Keret, Izhak Nissan, Jacob Weiss, Shimon Eckhaus, Gino Piperno-Beer, David Arzi, and Yoav Chelouche* |
| Stephen Wagner, Esq.<br>Sari E. Kolatch. Esq.<br>COHEN TAUBER SPIEVACK & WAGNER LLP<br>420 Lexington Ave. Suite 2400,<br>New York, NY 10170<br><br>*Counsel for Defendants Israel Aerospace Industries Ltd. and Yehoshua Eldar* | Eric S. Goldstein, Esq.<br>Jonathan Hillel Hurwitz, Esq.<br>Peggy Senyie Chen, Esq.<br>PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP<br>1285 Avenue of the Americas<br>New York, NY 10019-6064<br><br>*Counsel for Defendants Israel Aerospace Industries Ltd. and Yehoshua Eldar* |
| Simon J. K. Miller, Esq.<br>GREENBERG TRAURIG LLP<br>200 Park Avenue<br>New York, NY 10166<br><br>Elizabeth Prickett-Morgan, Esq.<br>GREENBERG TRAURIG LLP<br>2540 Colorado Avenue, Suite 400 East<br>Santa Monica, CA 90404<br><br>*Counsel for Defendants Elbit Systems Ltd., Michael Federman, Estate of Jacob Toren, Joseph Ackerman, Joseph Gaspar* | Shira Yael Rosenfeld, Esq.<br>MANUEL & ROSENFELD, LLP<br>One Penn Plaza, Suite 2527<br>New York, NY 10119<br><br>*Counsel for Intervenor Plaintiff Harbinger International Holdings S.A.* |