# Nasdaq National Market® Listing Agreement

413
ESJF

(This form is to be filed by issuers seeking initial inclusion or by current Nasdaq National Market issuers who have changed their name.)

_____ Elbit Systems Ltd. _____ (the "Company") in consideration of the designation of its securities as Nasdaq National Market® securities hereby agrees with The Nasdaq Stock Market, Inc. that:

1. The Company certifies that it understands and agrees to abide by the eligibility criteria for Nasdaq National Market issuers contained in the NASD By-Laws as they may be amended from time to time.

2. The Company agrees that it shall notify Nasdaq in writing of any corporate action or other event which shall cause the Company to cease to be in compliance with the Nasdaq National Market eligibility requirements within thirty (30) days of such act or event.

3. The Company shall comply with such laws, statutes, rules, regulations, policies, and procedures applicable to Nasdaq National Market issuers, including but not limited to, those set forth in Paragraph 1 above, as they are now in effect and as they may be amended from time to time.

4. The Company understands that Nasdaq may remove its securities from the Nasdaq National Market, pursuant to applicable procedures, if it fails to meet one or more requirements of Paragraphs 1-3, of this agreement.

5. The Company understands that if an exception to any of the provisions of this agreement has been granted by a committee of either the NASD® or of The Nasdaq Stock Market, Inc., such exception shall, during the time it is in effect, supersede any conflicting provision of this agreement.

6. In order to publicize the Company's listing on the Nasdaq National Market, the Company authorizes Nasdaq to use the Company's corporate logos, trade names, and trade/service marks in order to convey quotation information, transactional reporting information, and other information regarding the Company in connection with the Nasdaq National Market and The Nasdaq Stock Market. In order to ensure the accuracy of the information, the Company agrees to provide Nasdaq with the Company's current corporate logos, trade names, and trade/service marks and with any subsequent changes.

By signing, the Company indicates that the use granted is indemnified and held harmless from any third party rights and/or claims. The parties would, of course, cooperate with each other in the event of any such claim, without waiver of any legal privileges.

Other than the rights granted here, Nasdaq acknowledges that it has no other rights in the Company's corporate logos, trade names, and trade/service marks.

As an officer of the Company, I am authorized to execute this agreement on the Company's behalf.

SIGNATURE _____

NAME    Joseph Ackerman

TITLE   President and Chief Executive Officer

DATE    October 14, 1996

CORPORATE SEAL
(Optional)

Accepted at Washington, DC, The Nasdaq Stock Market, Inc.

SIGNATURE _____

NAME    Penny Peney

TITLE   Vice President

DATE    2/27/97

A countersigned copy of the Nasdaq National Market Listing Agreement is available to the issuer or the issuer's counsel upon written request to The Nasdaq Stock Market, Inc., Business Development, 1735 K Street, NW, Washington, DC 20006-1500.

Nasdaq Warranties; Disclaimers of Warranties. For any goods or services provided to Company, Nasdaq shall endeavor to provide them in a good and workmanlike manner. BEYOND THE WARRANTIES STATED IN THIS SECTION, THERE ARE NO OTHER WARRANTIES OF ANY KIND, EXPRESS, IMPLIED OR STATUTORY (INCLUDING, THE IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE OR PURPOSE).

LIMITATION OF LIABILITY. (1) IN NO EVENT WILL NASDAQ OR ANY AFFILIATE ("CORPORATIONS") BE LIABLE FOR TRADING LOSSES, LOSS OF PROFITS, INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL, OR INCIDENTAL LOSS OR DAMAGE, EVEN IF THE CORPORATIONS HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.
  (2) IF THE CORPORATIONS ARE HELD LIABLE, THE LIABILITY OF THE CORPORATIONS IS LIMITED,:
    (A) FOR GOODS AND SERVICES FOR WHICH THE COMPANY IS SPECIFICALLY CHARGED, TO THE AMOUNT PAID BY COMPANY FOR THOSE GOODS OR SERVICES DURING THE TWELVE MONTHS PRECEDING THE ACCRUAL OF THE CLAIM; AND
    (B) IN ALL OTHER INSTANCES, TO THE AMOUNT OF THE ANNUAL LISTING FEE PAID BY COMPANY DURING THE TWELVE MONTHS PRECEDING THE ACCRUAL OF THE CLAIM.
  (3) FOR GOODS AND SERVICES PROVIDED UNDER A SEPARATE WRITTEN AGREEMENT, THE LIMITATION OF LIABILITY PROVISIONS IN THAT AGREEMENT SHALL GOVERN ANY CLAIMS RELATING TO OR ARISING FROM THE PROVISION OF THOSE GOODS AND SERVICES.
  (4) THIS SUBSECTION SHALL NOT RELIEVE THE CORPORATIONS FROM LIABILITY FOR DAMAGES THAT RESULT FROM THEIR OWN GROSS NEGLIGENCE OR WILLFUL TORTIOUS MISCONDUCT, OR FROM PERSONAL INJURY OR WRONGFUL DEATH CLAIMS.
  (5) THE CORPORATIONS SHALL NOT BE LIABLE FOR ANY THIRD PARTIES' GOODS OR SERVICES.
  (6) THE COMPANY AGREES THAT THESE TERMS REFLECT A REASONABLE ALLOCATION OF RISK AND LIMITATION OF LIABILITY.

© July 1995, The Nasdaq Stock Market, Inc.
All rights reserved. Nasdaq and Nasdaq National Market are registered service marks of The Nasdaq Stock Market, Inc. The Nasdaq Stock Market and The Nasdaq SmallCap Market are service marks of The Nasdaq Stock Market, Inc.

NASD is a registered service mark of the National Association of Securities Dealers, Inc.