UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN M. WILSON, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>IMAGESAT INTERNATIONAL N.V., *et al.*,<br><br>    Defendants. | Case No. 07 Civ 6176(LTS)(DFE) |

## MEMORANDUM OF LAW IN SUPPORT OF
## ISRAEL AEROSPACE INDUSTRIES LTD. AND YEHOSHUA ELDAR'S
## MOTION TO DISMISS THE COMPLAINT

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York  10019-6064
(212) 373-3000

-and-

COHEN TAUBER SPIEVACK &
WAGNER LLP
420 Lexington Avenue
Suite 2400
New York, NY 10170
(212) 586-5800

Attorneys for Defendants Israel Aerospace
Industries Ltd. and Yehoshua Eldar

October 15, 2007

**Table of Contents**

**Page**

TABLE OF AUTHORITIES ..................................................................................II

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ...................................................................................................... 2

I.      THIS COURT DOES NOT HAVE PERSONAL JURISDICTION
        OVER YEHOSHUA ELDAR. ................................................................... 2

II.     PLAINTIFFS' RICO AND FRAUD CLAIMS FAIL BECAUSE THEY
        HAVE NOT PLEADED THE CLAIMS WITH THE PARTICULARITY
        REQUIRED BY RULE 9(B). ................................................................... 5

        A.      Plaintiffs Have Not Pleaded When and Where Any Allegedly False
                Statements Were Made and By Whom. ....................................... 6

        B.      Plaintiffs Have Not Pleaded Facts That Give Rise to a Strong
                Inference of Fraudulent Intent. ................................................... 9

        C.      Mere Allegations of Breach of Contract Do Not Justify Claims of
                Fraud in the Making of a Contract. ........................................... 10

        D.      Plaintiffs' Fraud-Based Claims Fail Because Plaintiffs Have Not
                Adequately Pleaded Reliance to Their Detriment. .................... 11

        E.      The Complaint Does Not Plead Mail and Wire Fraud With
                Particularity. .............................................................................. 12

III.    BASED ON THE ALLEGATIONS IN THE COMPLAINT, IAI AND
        ELDAR ARE IMMUNE FROM SUIT IN THE UNITED STATES
        UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT. ........................... 14

        A.      Based on the Allegations in the Complaint, IAI and Eldar
                Presumptively Qualify for Immunity Under FSIA. .................... 14

        B.      Based on the Allegations in the Complaint, the Claims Here Do
                Not Meet the Requirements of the Commercial Activity Exception
                to FSIA. ...................................................................................... 15

IV.     THE COURT SHOULD DISMISS THE CASE AGAINST IAI AND
        ELDAR BASED ON THE DOCTRINE OF INTERNATIONAL
        COMITY. ............................................................................................ 18

CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

CASES

*236 Cannon Realty, LLC* v. *Ziss,*
No. 02 Civ. 6683(WHP), 2005 WL 289752 (S.D.N.Y. Feb. 8, 2005) .......................13

*Am. High-Income Trust* v. *Alliedsignal,*
329 F. Supp. 2d 534 (S.D.N.Y. 2004)................................................................ 9-10

*Bensusan Rest. Corp.* v. *King,*
126 F.3d 25 (2d Cir. 1997)...........................................................................................3

*Castro* v. *Saudi Arabia,*
510 F. Supp. 309 (W.D. Tex. 1980)..........................................................................17

*Center Cadillac, Inc.* v. *Bank Leumi Trust Co. of New York,*
808 F. Supp. 213 (S.D.N.Y. 1992), *aff'd* 99 F.3d 401 (2d Cir. 1995).........................12

*Craig* v. *First Web Bill, Inc.,*
No. Civ. A.04-CV-1012 DGT, 2004 WL 2700128 (E.D.N.Y. Nov. 29, 2004).............4

*CutCo Indus., Inc.* v. *Naughten,*
806 F.2d 361 (2d Cir. 1986).........................................................................................2

*Daventree Ltd.* v. *Republic of Azerbaijan,*
349 F. Supp. 2d 736 (S.D.N.Y. 2004),
*clarified* 2005 WL 2585227 (Oct. 13, 2005) .............................................................15

*DiVittorio* v. *Equidyne Extractive Indus., Inc.,*
822 F.2d 1242 (2d Cir. 1987).......................................................................................8

*Eastchester Rehab. & Health Care Ctr.* v. *Eastchester Health Care Ctr.,*
No. 03 Civ. 7786(LTS)(FM), 2005 WL 887154 (S.D.N.Y. Apr. 15, 2005)...............13

*El-Fadl* v. *Central Bank of Jordan,*
75 F.3d 668 (D.C. Cir. 1996) .....................................................................................15

*Ellison* v. *Am. Image Motor Co., Inc.,*
36 F. Supp. 2d 628 (S.D.N.Y. 1999).............................................................................9

*Eternity Global Master Fund Ltd.* v. *Morgan Guar. Trust Co.,*
375 F.3d 168 (2d Cir. 2004)........................................................................................11

*First Capital Asset Mgmt., Inc.* v. *Brickellbush, Inc.,*
218 F. Supp. 2d 369 (S.D.N.Y. 2002)...........................................................................2

*Forrest* v. *Unifund Fin. Group, Inc.*,
  No. 04 Civ. 5151(LTS), 2005 WL 1087490 (S.D.N.Y. May 5, 2005) ........................6

*Fraiberg* v. *Taplin*,
  No. 88 CIV. 6540 RPP, 1990 WL 64673 (S.D.N.Y May 8, 1990)........................... 5-6

*Friedar* v. *Government of Israel*,
  614 F. Supp. 395 (S.D.N.Y. 1985) ..................................................................... 16-17

*Giro* v. *Banco Espanol de Credito, S.A.*,
  No. 98 CIV. 6195(WHP), 1999 WL 440462 (S.D.N.Y. June 28, 1999),
  *aff'd* 208 F.3d 203 (2d Cir. 2000) .........................................................................19

*Heaney* v. *Gov't of Spain*,
  445 F.2d 501 (2d Cir. 1971)......................................................................................17

*In re GeoPharma, Inc. Sec. Litig.*,
  411 F. Supp. 2d 434 (S.D.N.Y. 2006)........................................................................9

*Int'l Assn. of Machinists & Aerospace Workers* v. *OPEC*,
  477 F. Supp. 553 (C.D. Cal. 1979), *aff'd* 649 F.2d 1354 (9th Cir. 1981)....................17

*J.P. Morgan Chase Secs. Litig.*,
  363 F. Supp. 2d 595 (S.D.N.Y. 2005)........................................................................9

*Jazini* v. *Nissan Motor Co.*,
  148 F.3d 181 (2d Cir. 1998)........................................................................................3

*Jota* v. *Texaco Inc.*,
  157 F.3d 153 (2d Cir. 1998)......................................................................................19

*Kalnit* v. *Eichler*,
  264 F.3d 131 (2d Cir. 2001)................................................................................. 9-10

*Kregos* v. *Associated Press*,
  3 F.3d 656 (2d Cir. 1993).........................................................................................12

*McGowan* v. *Smith*,
  419 N.E.2d 321, 52 N.Y.2d 268 (1981).......................................................................3

*Miller* v. *City of New York*,
  No. 05 CV 6024(SJ)(RML), 2007 WL 1062505 (E.D.N.Y. March 30, 2007)...... 12-13

*Mol, Inc.* v. *Peoples Republic of Bangladesh*,
  572 F. Supp. 79 (D. Or. 1983), *aff'd* 736 F.2d 1326 (9th Cir. 1984).................... 17-18

*Moore* v. *PaineWebber, Inc.*,
  189 F.3d 165 (2d Cir.1999)........................................................................................5

*Novak* v. *Kasaks*,
  216 F.3d 300 (2d Cir. 2000)..................................................................6

*O'Brien* v. *Nat'l Prop. Analyst Partners*,
  719 F. Supp. 222 (S.D.N.Y. 1989) ...................................................11

*O'Malley* v. *New York City Transit Auth.*,
  896 F.2d 704 (2d Cir. 1990)................................................................13

*Olsen* v. *Pratt & Whitney Aircraft, Div. of United Tech. Corp.*,
  136 F.3d 273 (2d Cir. 1998)..................................................................7

*Pravin Banker Assocs., Ltd.* v. *Banco Popular Del Peru*,
  109 F.3d 850 (2d Cir. 1997)................................................................18

*Roeder* v. *Islamic Republic of Iran*,
  333 F.3d 228 (D.C. Cir. 2003).............................................................16

*Saudi Arabia* v. *Nelson*,
  507 U.S. 349 (1993)................................................................14, 16

*Shields* v. *Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994).................................................................9

*Sole Resort, S.A. de C.V.* v. *Allure Resorts Mgmt., LLC*,
  450 F.3d 100 (2d Cir. 2006)..................................................................3

*Sudul* v. *Computer Outsourcing Servs.*,
  868 F. Supp. 59 (S.D.N.Y. 1994) .......................................................11

*Three Crown Ltd. P'ship.* v. *Caxton Corp.*,
  817 F. Supp. 1033 (S.D.N.Y. 1993).......................................................8

*Torres* v. *S. Peru Copper Corp.*,
  965 F. Supp. 899 (S.D. Tex. 1996), *aff'd* 113 F.3d 540 (5th Cir. 1997) ...................19

*Tuosto* v. *Philip Morris USA Inc.*,
  No. 05 Civ. 9384(PKL), 2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007)......................5

*U.S. ex rel. Fowler* v. *Caremark RX, Inc.*,
  No. Civ. A.03 C 8714, 2006 WL 3469537 (N.D. Ill. Nov. 30, 2006),
  *aff'd* 496 F.3d 730 (7th Cir. 2007) ...............................................................6

**STATUTES, RULES & REGULATIONS**

18 U.S.C. §§ 1961, *et. seq.*...................................................................1

28 U.S.C. §§ 1602, *et seq.*.............................................................2, 14-16

Fed. R. of Civ. P. Rule 9(b) ...................................................................................... *passim*

CPLR 301.................................................................................................................2

CPLR 302............................................................................................................. 2-3

**OTHER AUTHORITIES**

H.R. Rep. No. 94-1487 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604 ...........................15

## Preliminary Statement

Plaintiffs' claims against Israel Aerospace Industries Ltd. ("IAI") and Yehoshua Eldar should be dismissed for the reasons given in Defendants' Joint Memorandum of Law in Support of Their Motions to Dismiss, including *forum non conveniens*, lack of standing to bring claims relating to the internal affairs of ImageSat, failure to plead a RICO claim,[1] and other grounds.[2] We set forth in this memorandum additional reasons that plaintiffs' claims against IAI and Eldar should be dismissed – namely, lack of personal jurisdiction over Eldar; failure to plead the fraud with particularity; and immunity from suit based on the Foreign Sovereign Immunities Act and the doctrine of comity.

Plaintiffs' complaint fails to plead even the most basic allegations of fraud as to IAI and Eldar – *who* made the allegedly fraudulent misstatements, *when* and *where* were they made, and *why* the statements were fraudulent – and thus fails to comply with the particularity required by Federal Rule of Civil Procedure 9(b), and for that reason plaintiffs' fraud and RICO claims should be dismissed. Plaintiffs also fail to plead facts showing scienter and reliance, and as to their RICO claims, predicate acts of mail and wire fraud. Plaintiffs attempt to overcome the patent lack of specificity in the complaint by verbosity, filling 151 pages and 389 paragraphs, but the repetition and irrelevant details included in the complaint cannot mask the many deficiencies in their pleading.

In addition, all the claims against IAI and Eldar should be dismissed because IAI, alleged to be wholly owned by the Israeli government, is immune from suit

---

[1]   Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et. seq.*

[2]   To assist the court IAI and Eldar have attached a chart stating the basis for dismissal as to each claim asserted against them. (*See* Appendix.)

in the United States under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C.

§§ 1602, *et seq.* As plaintiffs allege that IAI's and Eldar's conduct with respect to

ImageSat was inherently governmental, they are not subject to suit under the commercial

activity exception to immunity under FSIA.

Plaintiffs' claims against IAI should also be dismissed for reasons of

comity. Under this doctrine, a court may decline to hear actions which would require it

to review the actions of a foreign government. Adjudication of this case (assuming the

truth of the allegations of the complaint) will require the court to examine the strategic

decisions of the Israeli government made in furtherance of Israel's national security

interests and to determine the validity of those decisions. This court should decline to

adjudicate the claims against IAI and Eldar in deference to Israel's interests and to

promote international relations between Israel and the United States.

**Argument**

## I.    THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER YEHOSHUA ELDAR.

Personal jurisdiction in this action is governed by the law of the forum

state – specifically, CPLR 302, New York's long-arm statute.[3] *See CutCo Indus., Inc.* v.

*Naughten,* 806 F.2d 361, 365 (2d Cir. 1986) (state law claims); *First Capital Asset*

*Mgmt., Inc.* v. *Brickellbush, Inc.,* 218 F. Supp. 2d 369, 392 (S.D.N.Y. 2002) (RICO

claims where, as here, the complaint is not served in the United States).

Mr. Eldar is a citizen of, and resides in, Israel. (Declaration of Yehoshua

Eldar, dated October 15, 2007 ("Eldar Decl.") ¶ 2.) Plaintiffs allege incorrectly that he

---

[3]    Plaintiffs assert nothing to suggest that a CPLR 301 analysis is relevant.

served on ImageSat's Board of Directors in 2000 and 2001.[4] (*Id.*)

CPLR 302(a)(1) permits jurisdiction over non-domiciliaries when the cause of action arises from a defendant's "transaction of business within the state," meaning that there is an "articulable nexus between the business transacted and the cause of action sued upon." *Sole Resort, S.A. de C.V.* v. *Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (quoting *McGowan* v. *Smith*, 419 N.E.2d 321, 323, 52 N.Y.2d 268, 272 (1981)). CPLR 302(a)(2), which provides for jurisdiction over a non-domiciliary who "in person or through an agent commits a tortious act within the state," requires the defendant's physical presence within New York at the time of the alleged tortious act. *See, e.g., Bensusan Rest. Corp.* v. *King*, 126 F.3d 25, 28-29 (2d Cir. 1997).[5]

Plaintiff must plead a prima facie case of personal jurisdiction over each defendant for each cause of action. *See generally Jazini* v. *Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998). Here, the complaint fails to allege sufficient facts which, if true, would confer jurisdiction over Eldar for any of the claims. Indeed, Eldar is barely mentioned in the complaint at all, and to the extent he is cryptically referenced as being present in New York, it is in his capacity as IAI's corporate representative "as the signatory to the Master Agreement and other relevant agreements *on behalf of IAI/MBT*," and not in his alleged capacity as ImageSat director. (Compl. ¶¶ 55, 76 (emphasis added).)

---

[4] This allegation is demonstrably untrue. Counsel for Eldar has informed plaintiffs' counsel that Eldar was not, in fact, a member of ImageSat's board, but to date plaintiffs have refused to withdraw their claims against him.

[5] CPLR 302(a)(3), which provides for jurisdiction over a non-domiciliary who commits a tortious act without the state that has an effect within the state provided other conditions are met, is not applicable as the complaint alleges no facts to satisfy the requirements of this provision.

Plaintiffs' sole substantive allegation against Eldar is that senior executives and directors of ImageSat, IAI, and ElOp, including Eldar and five others, "agreed not to disclose the serious design flaws in the new 2001 EROS B satellite and instead agreed to proceed with the note redemption and the satellite purchase order." (*Id.* ¶ 96.) The complaint does not allege where this purported agreement took place. Thus, even accepting for the purposes of this motion only that Eldar was a director of ImageSat in 2000 and 2001 (he was not), the complaint does not allege a single transaction of business in *New York* or tortious act in *New York* attributable to Eldar in his alleged capacity of an ImageSat director.

While the complaint alleges that the ImageSat Board met "frequently" in New York, it does not allege that Eldar attended any of those meetings, much less that Eldar did something at those meetings that gives rise to any of plaintiffs' claims. (*Id.* ¶ 39.) The only allegation in the complaint regarding Eldar's attendance at Board meetings is the broad assertion that "each of the individual Defendants . . . has attended such meetings in New York in connection with the conduct at issue in this Complaint." (*Id.*) This single allegation is insufficient to establish that Eldar transacted business in New York and that such transaction gave rise to any of the plaintiffs' claims. *Craig* v. *First Web Bill, Inc.,* No. Civ. A.04-CV-1012 DGT, 2004 WL 2700128, at * 7 (E.D.N.Y. Nov. 29, 2004) (dismissing complaint for lack of personal jurisdiction even though defendant attended three meetings in New York, including a board meeting).

As no basis for jurisdiction over Eldar exists, the complaint against him must be dismissed.

## II.    PLAINTIFFS' RICO AND FRAUD CLAIMS FAIL BECAUSE THEY HAVE NOT PLEADED THE CLAIMS WITH THE PARTICULARITY REQUIRED BY RULE 9(B).

Federal Rule of Civil Procedure Rule 9(b), which requires that fraud-based claims be pled with particularity, applies to plaintiffs' claims for common-law fraud (Claim 13), fraud relating to options and bridge warrants (Claim 18), RICO (Claim 11), and conspiracy to violate RICO (Claim 12). *See Moore* v. *PaineWebber, Inc.*, 189 F.3d 165, 172 (2d Cir.1999) (Rule 9(b) "applies to [civil] RICO claims for which fraud is the predicate illegal act."). To satisfy the rule, a plaintiff must plead the elements of fraud – falsity, scienter, and reliance – with the particularity required by Rule 9(b).[6] *See generally Tuosto* v. *Philip Morris USA Inc.*, No. 05 Civ. 9384(PKL), 2007 WL 2398507, at *4 (S.D.N.Y. Aug. 21, 2007).

The length of the complaint alone is no substitute for pleading with particularity. Although it spans 151 pages, the complaint is filled with repetitive paragraphs and details irrelevant to the claims. This does not satisfy Rule 9(b)'s particularity requirements. *See Fraiberg* v. *Taplin*, No. 88 CIV. 6540 RPP, 1990 WL 64673, at *2 (S.D.N.Y May 8, 1990) ("While Rule 9(b) may originally have been intended to promote greater clarity in fraud complaints, today many counsel cram much irrelevant detail into their securities fraud complaints. The resulting muddled and unwieldy documents are so adorned with unnecessary surplusage and background that often neither the defendants nor the Court can identify the crux of the fraud claim. Such

---

[6]    Although they do not explicitly allege so, plaintiffs appear to allege their common law fraud claims under New York law. The complaint provides no details to permit a meaningful choice of law analysis for the fraud claims, and we therefore assume for purposes of this argument that the elements of fraud are those applicable under New York law. IAI and Eldar reserve the right to revisit this issue if plaintiffs allege that another jurisdiction's law applies.

complaints are equally violative of Rule 9(b) as those that contain no detail at all."); *U.S. ex rel. Fowler* v. *Caremark RX, Inc.*, No. Civ. A.03 C 8714, 2006 WL 3469537, at *9 (N.D. Ill. Nov. 30, 2006), *aff'd* 496 F.3d 730 (7th Cir. 2007) (dismissing complaint for failure to plead fraud with sufficient detail even though complaint had 514 paragraphs with over 1000 pages of exhibits).

The complaint does not adequately plead any false statements allegedly made by IAI or Eldar, any particular facts from which scienter could be inferred, or any facts showing reliance on any alleged falsehoods. The failure to adequately plead these elements requires dismissal with prejudice of all the fraud and RICO claims.

### A.   Plaintiffs Have Not Pleaded When and Where Any Allegedly False Statements Were Made and By Whom.

"In order to comply with the heightened pleading requirements [of Rule 9(b)], the complaint 'must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Forrest* v. *Unifund Fin. Group, Inc.*, No. 04 Civ. 5151(LTS), 2005 WL 1087490, at *4 (S.D.N.Y. May 5, 2005) (Swain, J.) (quoting *Novak* v. *Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000)). Plaintiffs' complaint is completely devoid of this information.

Plaintiffs summarily allege that IAI made "false and misleading statements"; (a) "in connection with the Pegasus investment and Master Agreement of July 2000;" (b) concerning the "originally contracted EROS B satellite['s]" status; (c) concerning "ImageSat's financial affairs;" (d) "concerning ImageSat's SOP and investment opportunity in Venezuela;" (e) "concerning ImageSat's recent financial affairs;" and (f) "concerning ImageSat's rights under the Master Agreement." (Compl.

¶ 310(a)-(f).)  Plaintiffs also allege that it was represented to them that the terms of the warrants and options issued in the July 2000 transaction would be 10 years, but was changed to 5 years in the final documents.  (*Id.* ¶ 355.)  But none of these allegations actually identifies a single misrepresentation allegedly made by IAI or Eldar.

Most of the complaint's allegations as to the allegedly fraudulent statements are constructed in the passive voice, giving no information as to who made the statement.  For example, plaintiffs allege that "*it was represented to Plaintiffs* that the terms of all the classes of warrants and options issued in the July 2000 transaction would be identical, . . . ."  (*Id.* (emphasis added); *see also* ¶ 98 ("[T]he explanation was contrived that the Company had asked for a delay in beginning the manufacturing process . . . . ); ¶ 162 ("the stated justification was a willful deception"); ¶ 162 ("[T]he reason most often given for termination of the IPO has been that the Angola SOP customer was withholding payment of SOP service fees . . . .  This explanation provided to the minority shareholders was false and misleading.").)  But what is conspicuously absent is any allegation of *who* made this statement, or *when* or *where* the statement was made.  Such allegations are insufficient.  *See Olsen* v. *Pratt & Whitney Aircraft, Div. of United Tech. Corp.*, 136 F.3d 273, 275-76 (2d Cir. 1998) (dismissing fraud claim because complaint failed to allege the who, what, where, when and why of the alleged misrepresentations).

Moreover, many of the alleged fraudulent statements are attributed indiscriminately to "Defendants," without specifying *which* defendant allegedly made the statement.  (*E.g.*, Compl. ¶¶ 112, 119, 129, 132, 136, 165, 171, 172, 298.)  "Such wide-scale clumping is unacceptable."  *Three Crown Ltd. P'ship.* v. *Caxton Corp.*, 817 F. Supp. 1033, 1040 (S.D.N.Y. 1993).  "[W]here multiple defendants are charged with

fraud, the complaint must be specific as to the nature of each defendant's alleged participation in the fraud." *Id.*; *see also DiVittorio* v. *Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). Here, the Complaint lumps three corporations and fourteen individuals together throughout, failing to explain what each one of them did. The complaint nowhere attributes any alleged false statements to IAI or Eldar, as distinct from anyone else.

The absence of specificity is particularly glaring as to Eldar, who is barely even mentioned in the substantive paragraphs of the complaint. Plaintiffs include Eldar in the list of ten defendants who allegedly made "false and misleading statements" (Compl. ¶¶ 310(a)-(c))), but such cursory, non-specific allegations, which do not attribute any specific allegedly false statements to him, do not satisfy Rule 9(b)'s requirement of particularity.

Eldar is mentioned elsewhere in the complaint only in conclusory allegations that "senior executives and directors of ImageSat, IAI, and EIOp, including . . . . Eldar . . . agreed not to disclose" information about the 2001 EROS B satellite (*see id.* ¶ 96) and that Eldar agreed with others to delete the technical specifications from the 2001 EROS B satellite supply contract. (*Id.* ¶ 97.) These latter two allegations do not allege any misstatements by Eldar to anyone, or explain why the alleged agreements not to disclose or to delete technical specifications was in any way fraudulent.

Eldar appears to have been named as a defendant solely based upon plaintiffs' (incorrect) allegation that he is a director of ImageSat. (*Id.* ¶ 55, 75, 111, 130.) But the mere allegation of a defendant's *status* as a member of the board does not fulfill plaintiffs' pleading requirements. To satisfy Rule 9(b), plaintiffs must instead allege

fraudulent *conduct* by each defendant. *See Ellison* v. *Am. Image Motor Co., Inc.*, 36 F.

Supp. 2d 628, 640 (S.D.N.Y. 1999). They have not done so here.[7]

**B.     Plaintiffs Have Not Pleaded Facts That Give Rise to a Strong Inference of Fraudulent Intent.**

Plaintiffs have also failed to plead particular facts that "give rise to a

strong inference of fraudulent intent." *Am. High-Income Trust* v. *Alliedsignal,* 329 F.

Supp. 2d 534, 545 (S.D.N.Y. 2004) (Swain, J.) (citing *Shields* v. *Citytrust Bancorp, Inc.*,

25 F.3d 1124, 1128 (2d Cir. 1994). To create a "strong inference" of fraudulent intent, a

plaintiff may allege facts showing a motive, or "[w]here motive is not apparent,. . . by

identifying circumstances indicating conscious behavior by the defendant, though the

strength of the circumstantial allegations must be correspondingly greater." *Kalnit* v.

*Eichler*, 264 F.3d 131, 142 (2d Cir. 2001). A purported motive must be "concrete and

personal"; "[m]otives that are generally possessed by most corporate directors and

officers" do not suffice. *In re GeoPharma, Inc. Sec. Litig.*, 411 F. Supp. 2d 434, 441

(S.D.N.Y. 2006); *Shields*, 25 F.3d at 1130. Allegations of conscious misbehavior, in

turn, must either exclude inferences other than conscious misbehavior or at least render

fraud "highly likely." *See J.P. Morgan Chase Secs. Litig.*, 363 F. Supp. 2d 595

(S.D.N.Y. 2005).

Plaintiffs have not pleaded a motive on behalf of either IAI or Eldar.

Allegations that IAI and Eldar were motivated by their desire to profit IAI and thus

breached the Master Agreement and other agreements so that they could "commercialize

---

[7]     Although the heading for plaintiffs' RICO claim states that it is to apply to "All Defendants," plaintiffs have failed to plead that that Eldar was a member of the RICO enterprise, as he is absent from the list of members of the RICO enterprise. (Compl. ¶ 301.) As plaintiffs have failed to plead that Eldar participated in the conduct of the RICO enterprise, the RICO claims against Eldar should be dismissed for this reason as well.

earth observation satellite technology on terms and with partners and clients of their own

choosing" or that plaintiffs later acted in other ways to benefit IAI are insufficient to

allege scienter.  (Compl. ¶ 178.)  *See Am. High-Income Trust*, 329 F. Supp. 2d at 545

("[a]llegations that NationsBanc desired to earn professional fees or to maintain its

relationship . . . do not support a strong inference of scienter"); *Kalnit*, 254 F.3d at 140

("a generalized motive, one which could be imputed to any publicly-owned, for-profit

endeavor, is not sufficiently concrete for purposes of inferring scienter.").

### C.    Mere Allegations of Breach of Contract Do Not Justify Claims of Fraud in the Making of a Contract.

To the extent that plaintiffs rely on alleged breaches of contract to support

their claim for fraud (together with conclusory allegations that defendants never intended

to comply with their contractual obligations), their claims are particularly deficient,

because they allege no facts creating an inference of such fraudulent intent.[8]  For

example, the Complaint states that the alleged decision by IAI to change "the

fundamental purpose of ImageSat . . . to serve . . . the commercial interests of IAI and

Elbit" in violation of the Master Agreement (executed in 2000) was not made until "late

2005 and early 2006 ."  (Compl. ¶ 148.)  And plaintiffs' allegations concerning the 2007

changes in exclusivity do not state that when IAI originally entered into the Master

Agreement it intended not to fulfill it.  (*Id*. ¶¶ 178-81.)  Indeed, the complaint alleges that

IAI's negotiations with Northrop Grumman Corporation only started in 2005.  (*Id*.

¶ 181.)  Such allegations do not allege that IAI had a fraudulent intent in 2000, when the

---

[8]    Plaintiffs also assert claims for breach of the satellite supply contracts (Claim 14), breach of the Master Agreement (Claim 15), and fraudulent conveyance in connection with the 2001 EROS B satellite contract (Claim 19).  We adopt the arguments made in Elbit System Ltd.'s Memorandum of Law that plaintiffs do not have standing for these claims.  *See* Elbit Br. Section III.

allegedly false statements were made. *See Eternity Global Master Fund Ltd.* v. *Morgan Guar. Trust Co.*, 375 F.3d 168, 187 (2d Cir. 2004) (dismissing fraud claim where plaintiffs alleged that Morgan made false representations about the existence of a market on the ground that the later failure to access the market "does not support an inference that Morgan knew or believed that no such market existed eight months earlier. We have repeatedly held that such conclusory allegations do not satisfy Rule 9(b)."); *O'Brien* v. *Nat'l Prop. Analyst Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) (dismissing complaint on the grounds that "nowhere in the Complaint is it alleged that [the defendant] knew at the time that these appraisals were made that they were inflated.")

As the courts have repeatedly held, "where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and the plaintiff's sole remedy is for breach of contract." *Sudul* v. *Computer Outsourcing Servs.*, 868 F. Supp. 59, 62 (S.D.N.Y. 1994). Because plaintiffs have not properly pleaded scienter as to fraud relating to the breach of the contracts or any other alleged fraud, plaintiffs' fraud based claims against IAI and Eldar should be dismissed.

### D.    Plaintiffs' Fraud-Based Claims Fail Because Plaintiffs Have Not Adequately Pleaded Reliance to Their Detriment.

Plaintiffs allege that each of them relied on the alleged misstatements by "[continuing] to invest his productive working time and efforts into ImageSat and/or by forbearing from bringing litigation against defendants that would have been commenced at a substantially earlier time had truthful and accurate disclosure of the relevant facts been made to them." (Compl. ¶ 311.)  This conclusory statement does not plead reliance

with particularity.[9]  Plaintiffs do not say which among them continued to invest their

work time and efforts in ImageSat.  How did they do so? How did that injure them?  If

plaintiffs were employees, how were they injured (as there is no allegation that they were

unpaid for their time and effort)?  Likewise, the complaint makes no effort to explain

how their alleged "forbearance" in bringing litigation injured them.  Such allegations are

too remote and speculative to suffice.  *See Kregos* v. *Associated Press*, 3 F.3d 656, 665

(2d Cir. 1993) (holding, under New York law, that plaintiff's claims that that they were

prevented from filing fraud suit earlier were "too remote").

    **E.    The Complaint Does Not Plead Mail and Wire Fraud With
            Particularity.**

            In addition to adequately pleading the elements of the underlying fraud, in

order to establish mail and wire fraud as predicate acts for their RICO claim, plaintiffs

must also allege with particularity that the defendants "(1) participated in a scheme to

defraud; (2) knowingly used the mails to further the scheme; and (3) had the specific

intent to defraud."  *Miller* v. *City of New York*, No. 05 CV 6024(SJ)(RML), 2007 WL

1062505, at *3 (E.D.N.Y. March 30, 2007).  Where plaintiffs allege that there was an

overall scheme to defraud, defendants "must show that each defendant committed two

predicate acts [of mail and wire fraud]."  *See generally 236 Cannon Realty, LLC* v. *Ziss*,

No. 02 Civ. 6683(WHP), 2005 WL 289752, at *5 (S.D.N.Y. Feb. 8, 2005).

---

[9]    Although reliance is not an element of either mail or wire fraud, for RICO purposes,
       "[p]laintiffs must also specifically allege the manner in which they relied on the [underlying]
       fraud to their detriment."  *Center Cadillac, Inc.* v. *Bank Leumi Trust Co. of New York*, 808 F.
       Supp. 213, 229 (S.D.N.Y. 1992), *aff'd* 99 F.3d 401 (2d Cir. 1995).  This is so because "RICO
       liability based on these predicate acts requires that Plaintiffs suffered injuries resulting from
       their reliance on the fraud."  *Id.*

As to any mailings or wire transmissions that plaintiffs allege are themselves fraudulent, plaintiffs must plead with 9(b) particularity. And, even where the allegations concern "non-fraudulent mailings used merely to establish the jurisdictional element of the predicate acts" the defendants must be able to infer from the complaint "their purpose in light of the fraudulent scheme that is pleaded with particularity." *Eastchester Rehab. & Health Care Ctr.* v. *Eastchester Health Care Ctr.*, No. 03 Civ. 7786(LTS)(FM), 2005 WL 887154, at *3 n.2 (S.D.N.Y. Apr. 15, 2005) (Swain, J.). Allegations that point to actions that are "routine . . . do not give rise to the inference of fraud." *Miller*, 2007 WL 1062505 at *3; *see also O'Malley* v. *New York City Transit Auth.*, 896 F.2d 704, 707 (2d Cir. 1990).

Plaintiffs have not adequately alleged that either IAI or Eldar committed two predicate acts. First, although plaintiffs attach an exhibit with 75 different allegations of mail and wire fraud, not a single of the predicate acts is attributed to Eldar. (Compl. Ex. F.) Second, IAI only appears once, in number 73, and even then, plaintiffs do not attribute such statements to IAI. The allegation merely states that there were "[e]-mail messages and other communications concerning IAI's announced transaction with Northrop-Grumman, more specific information as to which is not within Plaintiffs' possession at this time." (Compl. Ex. F.) Moreover, the complaint fails to identify any communication by IAI that would be considered more than a routine business communication. As plaintiffs have failed to plead predicate acts of mail and wire fraud as to IAI and Eldar with particularity, the RICO claims as to them should be dismissed.

III.    **BASED ON THE ALLEGATIONS IN THE COMPLAINT, IAI AND ELDAR ARE IMMUNE FROM SUIT IN THE UNITED STATES UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT.**

The Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. §§ 1602, *et seq.,* is "the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Saudi Arabia* v. *Nelson*, 507 U.S. 349, 355 (1993) (quotations omitted).  A foreign sovereign is "presumptively immune" from suit in United States courts unless one of the narrow exceptions in FSIA applies. *Id.* at 355.  Here, the FSIA bars plaintiffs' claims against IAI and Eldar to the extent that they are based upon conduct by IAI allegedly intended to further the sovereign interests of the Israeli government.

A.    **Based on the Allegations in the Complaint, IAI and Eldar Presumptively Qualify for Immunity Under FSIA.**

Based on the allegations in the Complaint, IAI readily qualifies as a foreign state under the purview of FSIA.  A "foreign state" as defined in Section 1603(a) includes "an agency or instrumentality of a foreign state," which means any entity:

> (1) which is a separate legal person, corporate or otherwise,
>
> (2) which is an organ of a foreign state or political subdivision thereof, or *a majority of whose shares or other ownership interest is owned by a foreign state* or political subdivision thereof, and
>
> (3) which is neither a citizen of a state of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

(emphasis added).  IAI is alleged to be wholly-owned by the Israeli government (Compl. ¶ 40), and thus readily satisfies the mechanical "majority ownership" prong of 1603(a)(2).  *See* H.R. Rep. No. 94-1487, at 15 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6614 ("If such entities are entirely owned by a foreign state, they would of course

14

be included within the definition"). Eldar also qualifies for immunity as he is an officer

of IAI. *See El-Fadl* v. *Central Bank of Jordan*, 75 F.3d 668, 671 (D.C. Cir. 1996).

Thus, based on the allegations of the complaint, IAI and Eldar are entitled

to a presumption of immunity as "[agencies] or [instrumentalities] of a foreign state."[10]

Plaintiffs now bear the burden of demonstrating that IAI and Eldar are not entitled to

immunity or that each of their claims falls under one of FSIA's exceptions to immunity.

*See* H.R. Rep. No. 94-1487 at 17, *reprinted in* 6616 (once the defendant presents a prima

facie case that it is a foreign state, the burden shifts to plaintiffs to produce evidence that

one of the limited exceptions applies); *see also Daventree Ltd.* v. *Republic of Azerbaijan*,

349 F. Supp. 2d 736, 747-48 (S.D.N.Y. 2004) , *clarified* 2005 WL 2585227 (Oct. 13,

2005) (plaintiffs must demonstrate that each claim independently falls under an exception

to immunity because there is no supplemental jurisdiction under FSIA).

**B.      Based on the Allegations in the Complaint, the Claims Here Do Not
         Meet the Requirements of the Commercial Activity Exception to
         FSIA.**

The only exception under FSIA that might even arguably apply here is the

"commercial activity" exception to FSIA immunity, which permits jurisdiction where:

> the action is based upon (i) a commercial activity carried on
> in the United States by the foreign state; (ii) an act
> performed in the United States in connection with a
> commercial activity of the foreign state elsewhere; or (iii) an
> act outside the territory of the United States in connection
> with a commercial activity of the foreign state elsewhere
> and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). The statute requires the Court to look to the "nature" of the

challenged act, rather than its purpose, in determining whether the act is "commercial."

---

[10]    Plaintiffs are undoubtedly aware of the sovereign immunity issues in their complaint, as the
Israeli Ministry of Defense ("IMOD") is conspicuously absent as a defendant in this action.

28 U.S.C. § 1603(d).  "Where [a] claim rests entirely upon activity sovereign in character, jurisdiction will not exist under provision of Foreign Sovereign Immunities Act permitting exercise of federal jurisdiction in actions based upon commercial activity carried on in United States by foreign state, regardless of any connection sovereign acts may have with commercial activity."  *See Saudi Arabia*, 507 U.S. at 358 n.4.  Here, to the extent that plaintiffs' claims are based upon alleged activity of IAI and Eldar intended to further the governmental interests of Israel, the commercial activity exception to immunity does not apply.  *See Roeder* v. *Islamic Republic of Iran,* 333 F.3d 228, 234-35 (D.C. Cir. 2003) ("The conduct of foreign affairs is an important and indispensable governmental function" (internal quotations omitted)).

Courts have held that activities which involve issues of a country's national security and international relations are governmental issues and do not fall within the commercial activity exception to immunity.  In *Friedar* v. *Government of Israel*, 614 F. Supp. 395 (S.D.N.Y. 1985), plaintiff argued that Israel's conduct concerning the breach of an employment contract was the breach of a contract for services, a commercial activity, and the purpose of the contract – to serve in the military – was irrelevant under the FSIA.  The court disagreed, explaining:

> Under the broadest characterization, whereby only the contracted form of the initial transaction is considered, the alleged activity conceivably might be labeled commercial. However, when the nature of the activities is analyzed – recruiting an army, no matter from what source, and determining eligibility for veterans' benefits – the acts clearly involve sovereign functions.

*Id.* at 399.  *See also Castro* v. *Saudi Arabia*, 510 F. Supp. 309, 312 (W.D. Tex. 1980) (agreement to train Saudi soldiers in the United States was not commercial because it

involved a sovereign function of training its military); *cf. Heaney* v. *Gov't of Spain*, 445

F.2d 501, 503 (2d Cir. 1971) (a country's management of its armed forces was

governmental, over which it would be improper for U.S. courts to sit in judgment).

   Plaintiffs here allege that IAI's and Eldar's conduct with respect to

ImageSat was inherently governmental rather than commercial – indeed, that allegation is

the crux of their complaint.[11]  Plaintiffs allege that their claims are based on the Israeli

Ministry of Defense's ("IMOD") interference with the business operations of ImageSat,

which they characterize as an "'eminent domain'-style seizure of their assets."  (*Id.* ¶ 19.)

For example, the complaint alleges that the IMOD informed ImageSat that its license to

serve Taiwan would not be renewed because of Israel's national security interests (*id.* ¶

125) and that the IMOD has directed IAI to use its alleged control over ImageSat to

further Israel's national security and foreign relations interests.  (*Id.* ¶ 128.)  These

alleged acts do not fall within the commercial activities exception of the FSIA.  *Cf.  Int'l

Assn. of Machinists & Aerospace Workers*  v. *OPEC,* 477 F. Supp. 553, 568 (C.D. Cal.

1979), *aff'd* 649 F.2d 1354 (9th Cir. 1981) (concerning an alleged price-fixing conspiracy

entered into by the OPEC nations, finding that "establishing the terms and conditions for

removal of natural resources from its territory…. is a governmental activity"); *Mol, Inc.*

v. *Peoples Republic of Bangladesh,* 572 F. Supp. 79, 84-85 (D. Or. 1983), *aff'd* 736 F.2d

1326 (9th Cir. 1984) (entering a license agreement to export monkeys involved

sovereign, not commercial, activity because only the sovereign had the power to regulate

this resource).

---

[11] While we necessarily accept the allegations for purposes of this motion, we emphasize that, should this litigation go forward, IAI and Eldar will demonstrate that these allegations are untrue.

In short, if plaintiffs' allegations are true (as we must assume for purposes of this motion), then IAI and Eldar are entitled to immunity under the FSIA. Accordingly, to the extent plaintiffs allege that they acted improperly to further the sovereign interests of the Israeli government, the claims against them should be dismissed.

## IV.    THE COURT SHOULD DISMISS THE CASE AGAINST IAI AND ELDAR BASED ON THE DOCTRINE OF INTERNATIONAL COMITY.

Plaintiffs' claims challenge the acts of an agency of a foreign sovereign made in the interests of its national security (including international relations), and are not appropriately heard in a United States court. Under principles of comity, United States courts ordinarily refuse to review acts of foreign governments and dismiss lawsuits concerning such claims in favor of proceedings elsewhere, such as the foreign state's own courts. *See Pravin Banker Assocs., Ltd.* v. *Banco Popular Del Peru*, 109 F.3d 850, 854 (2d Cir. 1997).

This Court should dismiss the case against IAI and Eldar because this case will require the court to examine the strategic decisions of the IMOD made in furtherance of Israel's national security interests and to determine the validity of those decisions, which will entangle the court in issues regarding Israel's international relations (including national security interests). Furthermore, as the complaint contains allegations disclosing high-level information regarding the purported strategy of the IMOD and the development and availability of military technology, this litigation could risk disclosure of Israel's classified military intelligence which, in turn, could affect Israel's national security interests. This sort of entanglement in issues of international relations and a foreign country's national security should be avoided. *See Jota* v. *Texaco Inc.*, 157 F.3d

153, 160 (2d Cir. 1998). This Court should therefore decline to adjudicate this case under principles of international comity. *See Torres* v. *S. Peru Copper Corp.,* 965 F. Supp. 899, 908 (S.D. Tex. 1996), *aff'd* 113 F.3d 540 (5th Cir. 1997) (dismissing case alleging environmental harm by mining activity on comity grounds where the challenged conduct was regulated by Peru and exercise of jurisdiction by the court would interfere with Peru's sovereign right to control its own environment and resources); *Giro* v. *Banco Espanol de Credito, S.A.*, No. 98 CIV. 6195(WHP), 1999 WL 440462, at *4 (S.D.N.Y. June 28, 1999), *aff'd* 208 F.3d 203 (2d Cir. 2000)(unpublished).

## Conclusion

For the foregoing reasons and those set forth in Defendants' Joint Memorandum of Law, IAI and Yehoshua Eldar respectfully submit that their motion to dismiss be granted, and all claims against them in the Complaint be dismissed with prejudice.

Dated: New York, New York
October 15, 2007

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:    /s/ Eric S. Goldstein_____
      Eric S. Goldstein
      Jonathan Hurwitz
      Peggy Chen
      Aliza Balog
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000

-and-

COHEN TAUBER SPIEVACK & WAGNER LLP
      Stephen Wagner
      Sari Kolatch
420 Lexington Avenue
Suite 2400
New York, NY 10170
(212) 586-5800

*Attorneys for Israel Aerospace Industries Ltd. and Yehoshua Eldar*

# APPENDIX

## Grounds for Dismissal as to Defendants IAI and Eldar

| Claim | Basis for Dismissal as to IAI | Basis for Dismissal as to Eldar |
|---|---|---|
| **General Grounds for Dismissal** | | |
| Forum Non Conveniens | Defs. Joint Br. § I. | Same |
| Subject Matter Jurisdiction | Defs. Joint Br. § II. | Same |
| Personal Jurisdiction | | IAI Br. § I. |
| Foreign Sovereign Immunity | IAI Br. § III. | Same |
| Comity | IAI Br. § IV. | Same. |
| **Grounds for Dismissal as to Each Claim** | | |
| First Claim: Breach of Fiduciary Duty in the 2000 Transactions | Plaintiffs do not have standing to bring this claim. (Defs. Joint Br. §§ III, IV.) Claim is time barred. (Defs. Joint Br. § VIII.) | Same |
| Second Claim: Breach of Fiduciary Duty concerning the EROS B Satellite Fraud | Plaintiffs do not have standing to bring this claim. (Defs. Joint Br. §§ III, IV.) | Same |
| Third Claim: Breach of Fiduciary Duty concerning the destruction of ImageSat's International Operations | Plaintiffs do not have standing to bring this claim. (Defs. Joint Br. §§ III, IV.) | Same |
| Fourth Claim: Breach of Fiduciary Duty in connection with ImageSat's SOP and Investment Opportunity in Venezuela | Plaintiffs do not have standing to bring this claim. (Defs. Joint Br. §§ III, IV.) | Claim Not Asserted As to Eldar |
| Fifth Claim: Breach of Fiduciary Duty Concerning ImageSat's Recent Financial Affairs | Plaintiffs do not have standing to bring this claim. (Defs. Joint Br. §§ III, IV.) | Claim Not Asserted as to Eldar |
| Sixth Claim: Breach of Fiduciary Duty concerning the failure to enforce ImageSat's Exclusivity, First Right, and Royalty Rights | Plaintiffs do not have standing to bring this claim. (Defs. Joint Br. §§ III, IV.) | Claim Not Asserted as to Eldar |
| Seventh Claim: Corporate Waste in connection with the 2001 EROS B Satellite Contract | Plaintiffs do not have standing to bring this claim. (Defs. Joint Br. §§ III, IV.) | Same |

| Claim | Basis for Dismissal as to IAI | Basis for Dismissal as to Eldar |
|---|---|---|
| **Eighth Claim**: Corporate Waste in connection with ImageSat's squandering of SOP Opportunities & Related Matters | Plaintiffs do not have standing to bring this claim. (Defs. Joint Br. §§ III, IV.) | Claim Not Asserted as to Eldar |
| **Ninth Claim**: Failure of ImageSat to enforce its exclusivity, first right, and royalty rights | Plaintiffs do not have standing to bring this claim. (Defs. Joint Br. §§ III, IV.) | Claim Not Asserted as to Eldar |
| **Tenth Claim**: Self Dealing | Plaintiffs do not have standing to bring this claim. (Defs. Joint Br. §§ III, IV.) | Same |
| **Eleventh Claim**: RICO | Plaintiffs have not been injured and therefore do not have RICO standing. (Defs. Joint Br. § VII.) Plaintiffs have failed to plead a pattern of racketeering. (Defs. Joint Br. § VII.) Plaintiffs have failed to plead with 9(b) particularity. (IAI Br. § II.) Plaintiffs have not pleaded mail and wire fraud with particularity. (IAI Br. § II(E).) | Plaintiffs have not been injured and therefore do not have RICO standing. (Defs. Joint Br. § VII.) Plaintiffs have failed to plead a pattern of racketeering. (Defs. Joint Br. § VII.) Plaintiffs have failed to plead that Eldar was a member of the enterprise. (IAI Br. § II.) Plaintiffs have failed to plead with 9(b) particularity. (IAI Br. § II.) Plaintiffs have not pleaded mail and wire fraud with particularity. (IAI Br. § II(E).) |
| **Twelfth Claim**: Conspiracy to Violate RICO | Plaintiffs have not pleaded a substantive RICO claim. (Defs. Joint Br. § VII.) | Same |
| **Thirteenth Claim**: Common Law Fraud | Plaintiffs do not have standing to bring this claim. (Defs. Joint Br. §§ III, IV.) Plaintiffs have failed to plead with 9(b) particularity. (IAI Br. § II.) Plaintiffs have failed to attribute any false statements to IAI. (IAI Br. § II(A).) Plaintiffs have failed to plead scienter. (IAI Br. § II(B).) Plaintiffs have failed to plead reliance. (IAI Br. § II(D).) Plaintiffs' fraud claims are duplicative of their breach of contract claims. (IAI Br. § II(C).) | Plaintiffs do not have standing to bring this claim. (Defs. Joint Br. §§ III, IV.) Plaintiffs have failed to plead with 9(b) particularity. (IAI Br. § II.) Plaintiffs have failed to attribute any false statements to Eldar. (IAI Br. § II(A).) Plaintiffs have failed to plead scienter. (IAI Br. § II(B).) Plaintiffs have failed to plead reliance. (IAI Br. § II(D).) Plaintiffs' fraud claims are duplicative of their breach of contract claims. (IAI Br. § II(C).) |

| Claim | Basis for Dismissal as to IAI | Basis for Dismissal as to Eldar |
|---|---|---|
| Fourteenth Claim: Breach of Satellite Supply Contracts | Neither shareholders nor warrant or option holders have standing to sue for breach of contract. (IAI Br. § II(C); Elbit Br. § III.) Plaintiffs are not intended third party beneficiaries and therefore do not have standing to sue. (IAI Br. § II(C); Elbit Br. § III.) | Claim Not Asserted as to Eldar |
| Fifteenth Claim: Breach of Master Agreement | Neither shareholders nor warrant or option holders have standing to sue for breach of contract. (IAI Br. § II(C); Elbit Br. § III.) Plaintiffs are not intended third party beneficiaries and therefore do not have standing to sue. (IAI Br. § II(C); Elbit Br. § III.) | Claim Not Asserted as to Eldar |
| Eighteenth Claim: Fraud relating to Options and Bridge Warrants | Plaintiffs have failed to plead with 9(b) particularity. (IAI Br. § II.) Plaintiffs have failed to attribute any false statements to IAI. (IAI Br. § II(A).) Plaintiffs have failed to plead scienter. (IAI Br. § II(B).) Plaintiffs have failed to plead reliance. (Defs. Joint Br. § IX.; IAI Br. § II(D).) This claim is time barred. (Defs. Joint Br. § VIII.) | Claim Not Asserted as to Eldar |
| Nineteenth Claim: Fraudulent Conveyance in connection with the 2001 EROS B Satellite Contract | Plaintiffs do not have standing. (IAI Br. § II(C); Elbit Br. § III.) | Claim Not Asserted as to Eldar |
| Twentieth Claim: Disgorgement of Compensation | Claim Not Asserted as to IAI | Plaintiffs do not have standing to bring this claim. (Defs. Joint Br. § X.) |
| Twenty-First Claim: Conversion and Misappropriation of Corporate Assets | Plaintiffs do not have standing. (Defs. Joint Br. § V.) Plaintiffs have failed to allege necessary facts. (Defs. Joint Br. § V.) | Same |

| Claim | Basis for Dismissal as to IAI | Basis for Dismissal as to Eldar |
|---|---|---|
| <u>Twenty-Second Claim</u>: Unjust Enrichment and Restitution | It is precluded by the existence of contracts and duplicative of Plaintiffs' other claims. (Defs. Joint Br. § VI.) | Same |