# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X
                                                    :
STEPHEN M. WILSON, BRW ENGINEERING LTD.,            :
WIS PARTNERS LTD., MOSHE BAR-LEV, PATRICK           :
ROSENBAUM, MICHAEL MORRIS, HAIM YIFRAH,             :
TOP DOWN PARTNERS, LLC, JOEL LEVINE,                :
MORRIS TALANSKY, ABRAHAM MOSHEL,                    :
MAGMA INTERNATIONAL SERVICES, LTD.,                 :
ALBERT REICHMANN, HEXAGRAM & CO., and               :        **Filed Electronically**
POLYBUTES COMPANY,                                  :
                                                    :
               Plaintiffs,                          :
                                                    :        07 Civ. 6176 (LTS)
        -against-                                   :
                                                    :
IMAGESAT INTERNATIONAL N.V., ISRAEL                 :
AEROSPACE INDUSTRIES LTD., ELBIT SYSTEMS            :
LTD., MOSHE KERET, IZHAK NISSAN, JACOB              :
WEISS, MENASHE BRODER, SHIMON ECKHAUS,              :
MICHAEL FEDERMAN, ESTATE OF JACOB TOREN,            :
JOSEPH ACKERMAN, JOSEPH GASPAR, GINO                :
PIPERNO-BEER, JAMES DEPALMA, DAVID ARZI,            :
YOAV CHELOUCHE, and YEHOSHUA ELDAR,                 :
                                                    :
               Defendants.                          :
                                                    :
-------------------------------------------------------------------- X

# IMAGESAT INTERNATIONAL N.V.'S MEMORANDUM OF LAW
# IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT .................................................................................. 1

I.    IMAGESAT IS NOT SUBJECT TO PERSONAL JURISDICTION IN NEW YORK ............................................................................................................. 2

    A.    ImageSat is Not Subject to General Jurisdiction in New York ........................... 3

    B.    ImageSat is Not Subject to Specific Jurisdiction in New York .......................... 6

        1.    Plaintiffs Fail to Allege a Prima Facie Case of Personal Jurisdiction Under Section 302(a)(1) ....................................................... 6

        2.    Plaintiffs Fail to Allege a Prima Facie Case of Jurisdiction Under Section 302(a)(2) ....................................................................... 11

        3.    Plaintiffs Fail to Allege a Prima Facie Case of Jurisdiction Under Section 302(a)(3) ....................................................................... 11

    C.    The Exercise of Personal Jurisdiction Over ImageSat Would Be Unreasonable and Would Violate Due Process .................................................. 12

II.    PLAINTIFFS' CLAIMS AGAINST THE COMPANY ARE ILLOGICAL AND FAIL TO STATE A CLAIM ........................................................................... 14

    A.    The Claims Against ImageSat for Breach of Fiduciary Duty (Claims 1 – 6) Fail ............................................................................................... 14

    B.    The Claims against ImageSat for Corporate Waste (Claims 7 – 9) and Self-Dealing (Claim 10) Fail ............................................................................ 16

    C.    The RICO Claims Against ImageSat (Claims 11 and 12) Fail ........................... 17

    D.    The Claims Against ImageSat Relating to the Options and Bridge Warrants (Claims 17 and 18) Fail ...................................................................... 19

    E.    The Claim Against ImageSat for Conversion/Misappropriation (Claim 21) Makes No Logical Sense ................................................................... 19

    F.    The Claim Against ImageSat for Unjust Enrichment/Restitution (Claim 22) Makes No Logical Sense ................................................................... 20

CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
98 F.3d 25 (2d Cir. 1996) ............................................................................ 6

*Am. High-Income Trust v. AlliedSignal*,
329 F. Supp. 2d 534 (S.D.N.Y. 2004) ....................................................... 19

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
171 F.3d 779 (2d Cir. 1999) ........................................................... 2, 11, 13

*Bensusan Rest. Corp. v. King*,
126 F.3d 25 (2d Cir. 1997) ....................................................................... 11

*Bush v. Stern Bros. & Co.*,
524 F. Supp. 12 (S.D.N.Y. 1981) ............................................................ 8, 9

*Cardone v. Jiminy Peak, Inc.*,
667 N.Y.S.2d 82, 83 (App. Div. 1997) ....................................................... 5

*Clark v. Nevis Capital Mgmt., LLC*,
No. 04 Civ. 2702, 2005 WL 488641 (S.D.N.Y. Mar. 2, 2005) ................. 16

*Clarke v. Fonix Corp.*,
No. 98 CIV. 6116 (RPP), 1999 WL 105031
(S.D.N.Y. Mar. 1, 1999) ............................................................................ 5

*ComJet Aviation Mgmt. LLC v. Aviation Investors Hldgs Ltd.*,
303 A.D.2d 272 (N.Y. App. Div. 2003) ...................................................... 9

*Cortland Line Co. v. Vincent*,
No. 98-CV-259, 1999 U.S. Dist. LEXIS 7190 ......................................... 12

*CutCo Indus., Inc. v. Naughton*,
806 F.2d 361 (2d Cir. 1986) ....................................................................... 8

*Daniel v. Am. Bd. of Emergency Med.*,
988 F. Supp. 127 (W.D.N.Y. 1997) ............................................................ 9

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
822 F.2d 1242 (2d Cir. 1987) ................................................................... 18

*F.D.I.C. v. Milken*,
781 F. Supp. 226 (S.D.N.Y. 1991) .............................................................. 5

*Family Internet, Inc. v. Cybernex, Inc.*,
No. 98 Civ. 0637 (RWS), 1999 U.S. Dist. LEXIS 15549 ........................ 12

*Feldman v. Silverleaf Resorts, Inc.*,
No. 98 Civ. 4566, 2000 U.S. Dist. LEXIS 1005 (E.D.N.Y. Jan. 31, 2000) ........ 10

*Fesseha v. TD Waterhouse Investor Servs., Inc.*,
747 N.Y.S.2d 676 (Sup. Ct. 2002) ........................................................... 19

*First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*,
218 F. Supp. 2d 369 (S.D.N.Y. 2002) ...................................................... 14

*Garson v. Richmond, Frederocksburgh & Potomac R.R.*,
   82 N.Y.S. 637 (Sup. Ct. 1948).....................................................................................5

*Hoffritz for Cutlery, Inc., v. Amajac, Ltd.*,
   763 F.2d 55 (2d Cir. 1985)........................................................................................6

*In re Litzinger*,
   322 B.R. 108 (B.A.P. 8th Cir. 2005).........................................................................19

*Jacobs v. Felix Bloch Erben Verlag Fur Buhne Film Und Funk KG*,
   160 F. Supp. 2d 722 (S.D.N.Y. 2001)..................................................................3, 4

*Joseph Walker & Sons v. Lehigh Coal & NAV. Co.*,
   8 Misc.2d 1005, 167 N.Y.S.2d 632 (N.Y. Sup. 1957).............................................5

*Krause v. Forex Exch. Mkt., Inc.*,
   356 F. Supp. 2d 332, 338 n. 49 (S.D.N.Y. 2005)....................................................16

*Madison Models, Inc. v. Casta*,
   No. 01 Civ. 9323 (LTS) (THK), 2003 WL 21978628 (S.D.N.Y. Aug. 20,
   2003) ...............................................................................................................2, 3, 9

*Maranga v. Vira*,
   386 F. Supp. 2d 299 (S.D.N.Y. 2005).....................................................................11

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996)................................................................................13, 14

*Miller v. City of New York*,
   2007 WL 1062505 (E.D.N.Y. March 30, 2007) .....................................................17

*Norben Imp. Corp. v. Metro. Plant & Flower Corp.*,
   No. 03 Civ. 8660 (WHP), 2004 WL 2378295 (S.D.N.Y. Oct. 25, 2004)................8

*Olsen v. Pratt & Whitney Aircraft*,
   136 F.3d 273, 275 (2d Cir. 1998).............................................................................18

*PaineWebber Inc. v. Westgate Group, Inc.*,
   748 F. Supp. 115 (S.D.N.Y. 1990).............................................................................8

*PDK Labs., Inc. v. Friedlander*,
   103 F. 3d 1105 (2d Cir. 1997)..................................................................................13

*Peters Griffin Woodward, Inc. v. WCSC, Inc.*,
   452 N.Y.S.2d 599 (App. Div. 1982.)........................................................................19

*Phillips v. AudioActive Ltd.*,
   494 F.3d 378 (2d Cir. 2007).......................................................................................8

*Reers v. Deutsche Bahn AG*,
   320 F. Supp. 2d 140 (S.D.N.Y. 2004).....................................................................10

*Rivera v. Golden Nat'l Mtg. Banking Corp.*,
   04 Civ. 4545, 2005 WL 1514043 (S.D.N.Y. 2005).................................................18

*Ruffolo v. Oppenheimer & Co.*,
   987 F.2d 129 (2d Cir. 1993).....................................................................................20

*Ryan v. Allen*,
   1997 WL 567717 (S.D.N.Y. Sept. 11, 1997 ............................................................5

*In re SkiTrainFire in Kaprun, Austria*,
   230 F. Supp. 2d 403 (S.D.N.Y. 2002)........................................................................3

*Stutts v. De Dietrich Group,*
    465 F. Supp. 2d 156 (E.D.N.Y. 2006) ................................................................. 5

*Sunrise Lumber Co. v. Homer D. Biery Lumber Co.,*
    195 A.D. 170, 185 N.Y.S. 711 (1921) ................................................................ 10

*USA Certified Merchs., LLC v. Koebel,*
    262 F. Supp. 2d 319 (S.D.N.Y. 2003) ................................................................ 17

*Wade v. Olympus Indus., Inc.,*
    695 F. Supp. 730 (S.D.N.Y. 1988) ...................................................................... 5

*Wiwa v. Royal Dutch Petroleum Co.,*
    226 F.3d 88 (2d Cir. 2000) ........................................................................... 3, 10

*Yurman Designs, Inc. v. A.R. Morris Jewelers, L.L.C.,*
    41 F. Supp. 2d 453 (S.D.N.Y. 1999) .................................................................... 5

## STATUTES

N.Y. C.P.L.R. § 301 .............................................................................. 2, 3, 5, 15

N.Y. C.P.L.R. § 302 ...................................................................................... passim

## OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ....................................................................... 18, 20, 22

Fed. R. Civ. P. 12(b) ........................................................................................ 1

*Restatement (Second) of Torts:*
    *Conversion* § 222A .................................................................................. 23

Defendant ImageSat International N.V. ("ImageSat" or the "Company"), by its attorneys Milbank, Tweed, Hadley & McCloy LLP, respectfully submits this memorandum of law in support of its motion to dismiss the Complaint pursuant to Fed. R. Civ. P 9(b), 12(b)(2) and 12(b)(6).

## PRELIMINARY STATEMENT

Together with its co-defendants, ImageSat is concurrently filing a separate memorandum detailing ten reasons common to all Defendants why Plaintiffs' claims should be dismissed.[1]  This memorandum addresses additional threshold reasons why the Complaint should be dismissed against ImageSat.

First, ImageSat is not subject to personal jurisdiction in New York.  As discussed below and in the accompanying declaration of Hagai Goren, the Company conducts almost no business in New York or, for that matter, anywhere in the United States.  Plaintiffs themselves allege that the Company has deliberately avoided business in the United States so as not to become subject to U.S. licensing regulations (Compl. ¶ 5.) and that the Company is now "based entirely" in Israel.  (*Id*. ¶ 17.)  Moreover, there is no nexus between this lawsuit and New York to subject ImageSat to specific jurisdiction.

The other reason why ImageSat should be dismissed from the lawsuit is that most of the claims against the Company make no logical sense.  In Plaintiffs' own words, the wrongful acts alleged in the lawsuit "were perpetrated by the Company's controlling shareholders and their representatives, including IAI and ElOp (later Elbit)."  (*Id*. ¶ 20.) Plaintiffs allege that these actors "strip[ped] hundreds of millions of shareholder value from

ImageSat."  (*Id.* ¶ 3.)  These allegations are flawed in many respects, but even if they are

accepted as true for purposes of this motion, they do not provide a basis for ImageSat to be a

defendant to this lawsuit.  Whether or not there is merit to Plaintiffs' allegations that they have

been harmed by the acts of Israel Aerospace Industries Ltd. ("IAI") and Elbit Systems Ltd.

("Elbit"), there is no logical basis for the Company to be a defendant to this action.

## ARGUMENT

## I.    IMAGESAT IS NOT SUBJECT TO PERSONAL JURISDICTION IN NEW YORK

When a defendant moves to dismiss a complaint for lack of personal jurisdiction,

plaintiffs bear the "burden of establishing that the court has personal jurisdiction over the

defendant."  *Madison Models, Inc. v. Casta*, No. 01 Civ. 9323 (LTS) (THK), 2003 WL

21978628, at *2 (S.D.N.Y. Aug. 20, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez &*

*Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)))).  Personal jurisdiction over a non-resident

defendant is determined under the law of the forum state.  *Id.*  ImageSat is incorporated in the

Netherlands Antilles with its place of business in Israel, so whether it is subject to jurisdiction

here is governed by New York's personal jurisdiction statutes, N.Y. C.P.L.R. §§ 301, 302.  *Id.*

ImageSat is not subject to general jurisdiction pursuant to § 301 because it

conducts virtually no business in this State, and certainly not a continuous and substantial level

of activity in this State as the statute requires.  ImageSat is not subject to specific jurisdiction

pursuant to § 302 because there is no significant nexus between the allegations in this lawsuit

and any activity that took place within this State.  Moreover, the exercise of jurisdiction over

ImageSat would be unreasonable and would violate due process.

---

[1] *See* Joint Memorandum of Law in Support of Motion to Dismiss on behalf of Defendants ImageSat International, N.V., Israel Aerospace Industries Ltd., Elbit Systems Ltd., Moshe Keret, Izhak Nissan, Jacob Weiss, Shimon

### A.      ImageSat is Not Subject to General Jurisdiction in New York

Casual or occasional activity does not constitute "doing business;" rather § 301 requires a showing of "continuous, permanent, and substantial activity in New York." *In re Ski Train Fire in Kaprun, Austria*, 230 F. Supp. 2d 403, 407 (S.D.N.Y. 2002) (internal citations omitted). As the Second Circuit explained, a court may exercise general jurisdiction over a foreign corporation only "if it does business in New York not occasionally or casually, but with a fair measure of permanence and continuity." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) (internal citations omitted); *see also Madison Models, Inc.*, 2003 WL 21978628, at *3 ("The doing business standard is a stringent one because a corporation which is amenable to the Court's general jurisdiction may be sued in New York on causes of action wholly unrelated to acts done in New York." (quoting *Jacobs v. Felix Bloch Erben Verlag Fur Buhne Film Und Funk KG*, 160 F. Supp. 2d 722, 731 (S.D.N.Y. 2001))).

To determine whether a foreign corporation does business in New York, courts focus on: "(1) whether the company has an office in the state; (2) whether it has any bank accounts or other property in the state; (3) whether it has a phone listing in the state; (4) whether it does public relations work there; and (5) whether it has individuals permanently located in the state to promote its interests." *In re Ski Train Fire*, 230 F. Supp. 2d at 407 (citing *Wiwa*, 226 F.3d). ImageSat does not satisfy those factors.

ImageSat does not own or lease office space in New York or anywhere else in the United States. (*See* Declaration of Hagai Goren in Support of Defendants' Motion to Dismiss the Complaint ("Goren Decl.") ¶¶ 7-8.)[2] It does not have a subsidiary in the State of New York

---

Eckhaus, Gino Piperno-Beer, David Arzi, Yoav Chelouche, Michael Federmann, Estate of Jacob Toren, Joseph Ackerman, Joseph Gaspar, and Yehoshua Eldar (the "Joint Mem.").

[2]  Plaintiffs' allegation that the Company in the past had a Connecticut office (Compl. ¶ 114) is not only factually inaccurate, it is also irrelevant to whether the Company is subject to jurisdiction in *New York*. A further reason that

or elsewhere in the United Sates.  (*Id.* ¶ 9.)  It has no customers based in the State of New York.

(*Id.* ¶ 18.)  It does not have a bank account or own any property in New York or anywhere in the

United States.  (*Id.* ¶¶ 7, 8, 16.)  The Company does not maintain a telephone, telex, or telefax

listing in New York or anywhere in the United States.[3]  (*Id.* ¶ 11.)  It does no public relations

work in New York.  (*Id.* ¶ 12.)  It has no officers, employees, or consultants in New York.[4]  (*Id.*

¶ 17.)  The Company maintains its corporate books or records in Israel.  (*Id.* ¶ 13.)  The

Company is not registered with the Secretary of State of New York for service of process.  (*Id.* ¶

10.)  Prior to this action, ImageSat was never a party to a U.S. lawsuit.  (*Id.* ¶ 16.)

In fact, the Company has deliberately limited its business involvement in the

United States.  (*Id.* ¶ 6.)  As Plaintiffs themselves allege,

> ImageSat's principal competitive advantage … was its profile as
> an independent and robustly international company … free from
> the unwanted influence of a politically motivated regulatory and
> licensing regime, such as that of the United States.  *It was
> understood that the Company could not project the required
> profile as a U.S. company.*

(Compl. ¶ 5 (emphasis added).)[5]  Plaintiffs further allege that, ImageSat is an "Israeli company

based entirely in, and primarily serving constituencies in, Israel."  (Compl. ¶ 17.)[6]  In short,

ImageSat is not "doing business" in New York and this Court does not have general jurisdiction

---

the allegation is irrelevant to the jurisdictional issue is that "[f]or the purposes of the jurisdictional analysis under New York State law, the Court focuses specifically on the Defendants' amenability to suit at the time the lawsuit was filed, not when the claim arose."  *Jacobs*, 160 F. Supp. 2d at  726 n.5.

[3] ImageSat used to maintain two mobile phones with United States phone numbers but those are no longer active. (Goren Decl. ¶ 11.)

[4] One member of ImageSat's Board of Directors resides in New York.  Another Board member resides in Connecticut.  The remaining five Board members reside in Israel.  (Goren Decl. ¶ 17.)

[5] Indeed, "[i]t has been a policy of ImageSat, since its formation, to avoid satellite and ground control operational activities in the United States so that it would not be required to apply for and comply with U.S. governmental approvals applicable to satellite operating companies incorporated in the United States or operating satellites from the United States."  (Goren Decl. ¶ 6.)

[6] *See also* Compl. ¶ 114 (alleging that during Mr. Weiss's tenure as CEO of ImageSat, "[m]any of the Company's operations outside of Israel were abruptly terminated, as were virtually all non-Israeli personnel.").

over the company pursuant to § 301. *See Yurman Designs, Inc. v. A.R. Morris Jewelers, L.L.C.*, 41 F. Supp. 2d 453, 458 (S.D.N.Y. 1999) (company was not "doing business" in New York where it had no offices, owned no real estate, maintained no bank accounts, and its only connection to the state was that one or more of its employees attended business events approximately twice a year).[7]

    Plaintiffs' allegation that the Company's board meetings in recent years have often been held in New York does not subject ImageSat to general jurisdiction here. (Compl. ¶ 151.) Courts in this Circuit have made clear that "board meetings held in New York, or the presence of a board member in New York, is not evidence of doing business here." *Clarke v. Fonix Corp.*, No. 98 CIV. 6116 (RPP), 1999 WL 105031, at *5 (S.D.N.Y. Mar. 1, 1999) (citing *Garson v. Richmond, Frederocksburgh & Potomac R.R.*, 82 N.Y.S.2d 637, 637-38 (Sup. Ct. 1948)); *see also Ryan v. Allen*, No. 97 CIV. 0055(HB), 1997 WL 567717, at *2 (S.D.N.Y. Sept. 11, 1997) (citing *F.D.I.C. v. Milken*, 781 F. Supp. 226, 229 (S.D.N.Y. 1991) (correspondence and attendance at board meetings insufficient to confer jurisdiction)); *Joseph Walker & Sons v. Lehigh Coal & Nav. Co.*, 1006 167 N.Y.S.2d 632, 633-34 (Sup. Ct. 1957) (three board meetings in New York "assuredly falls far short of a showing of such conduct which could be construed to be of such permanence or continuity as to constitute a course of doing business here.").[8]

---

[7] *See also Stutts v. De Dietrich Group*, 465 F. Supp. 2d 156, 161 (E.D.N.Y. 2006) (Swiss company was not "doing business" in New York where it did not have an office, a plant, or other center of business, a registered agent for service of process, a bank account, a post office box, a phone listing, or property in New York; never paid New York state taxes or franchise fees; never commenced a law suit in New York; and did not have persons in New York that controlled its activities); *Cardone v. Jiminy Peak, Inc.*, 667 N.Y.S.2d 82, 83 (App. Div. 1997) (corporation was not "doing business" in New York where it had no bank account, mailing address, or employees in the State).

[8] *See also Wade v. Olympus Indus., Inc.*, 695 F. Supp. 730, 733 (S.D.N.Y. 1988) (corporation did not reside or do business in New York for venue purposes, even though it occasionally held board meetings in New York where it did not maintain offices, bank accounts or telephone listings or employ any personnel or solicit business in New York and that it was "doubtful that these alone would even constitute sufficient minimum contacts to satisfy due process requirements."); *Tyco Int'l, Ltd*, 2003 U.S. Dist. LEXIS 2670, at *7 ("regular attendance" at board meetings in New York did not provide general jurisdictional hook over a defendant). And New York law explicitly states that holding board meetings within the state is not a sufficient basis to require a foreign corporation to register as a

### B.  ImageSat is Not Subject to Specific Jurisdiction in New York

New York's "long-arm" statute, N.Y. C.P.L.R. § 302, provides for personal jurisdiction of non-domiciliaries "[a]s to a cause of action arising from any of the acts enumerated in this section."  N.Y. C.P.L.R. § 302(a).  The "acts enumerated" in § 302(a) are: (1) the transaction of "any business within the state or contracts anywhere to supply goods or services in the state;" (2) committing "a tortious act within the state;" (3) committing a tortious act without the state causing injury to person or property within the state;" or (4) "own[ing], us[ing] or possess[ing] any real property situated within the state."  N.Y. C.P.L.R. § 302(a).

### 1.  Plaintiffs Fail to Allege a Prima Facie Case of Personal Jurisdiction Under Section 302(a)(1)

Section 302(a)(1) confers jurisdiction over a non-domiciliary defendant who "in person or through an agent ... transacts any business within the state" so long as the cause of action arises out of defendant's New York transactions.  "A nondomiciliary 'transacts business' … [in New York] when he 'purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws.'"  *Cutco Indus., Inc.*, 806 F.2d 361, 365 (internal citation omitted).  A cause of action arises out of a defendant's New York transactions when it is "sufficiently related to the business transacted that it would not be unfair to deem it to arise out of the transacted business," *Hoffritz for Cutlery, Inc., v. Amajac, Ltd.*, 763 F.2d 55, 59 (2d Cir. 1985), or, put differently, that a "substantial nexus," *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 31 (2d Cir. 1996), exists between the cause of action and defendant's contacts.  Plaintiffs cannot meet this standard because there is almost no connection between the allegations and New York.

---

company doing business in New York.  *See* N.Y. Bus. Corp. Law § 1301(b)(2); *Johnson v. Helicopter & Airplane Servs. Corp.*, 404 F. Supp. 726, 737 (D. Md. 1975) (holding foreign corporation not doing business in New York so as to require a certificate of authority merely for holding New York meetings of directors or shareholders).

Plaintiffs erroneously contend that ImageSat is subject to jurisdiction in New York because (i) the Company frequently held Board meetings in New York (Compl. ¶¶ 1, 39); (ii) certain documents were prepared and signed in New York and contain New York choice-of-law and/or jurisdictional clauses (*Id*. ¶¶ 76, 87, 191); (iii) E&Y's New York affiliate prepared ImageSat's financial statements and restatements in connection with the 2001 EROS B/C satellite procurement (*Id*. ¶ 112); (iv) certain documents in connection with the aborted attempt to issue an IPO were prepared in New York (*Id*. ¶ 131); and (v) Wilson met with directors and other shareholders of the Company in New York.  (*Id*. ¶ 151.)  Each of the allegations fails to support a showing of personal jurisdiction in New York.

### a. Holding Directors' Meetings in New York Does Not Give Rise to Jurisdiction Under Section 302(a)(1)

As set forth above, courts in the Circuit consistently have held that holding directors' meetings in New York is insufficient to establish general jurisdiction over a non-domiciliary.  And the allegation is irrelevant to specific jurisdiction, particularly where, as here, Plaintiffs say nothing about what took place at the Board meetings in New York nor do they assert any connection between the New York meetings and the claims alleged.[9]

### b. Negotiating and Signing Agreements in New York Does Not Give Rise to Jurisdiction Under CPLR § 302(a)(1)

Plaintiffs' allegation that certain agreements were negotiated and/or signed in New York is irrelevant.  Even if this allegation were accurate, it simply means that ImageSat

---

[9] Plaintiffs have not even troubled to be consistent about their allegations.  For example, Plaintiffs allege that Defendants' alleged "spurning" of an investment opportunity in Venezuela "had numerous contacts with … New York, such as the holding in New York of Board meetings (including but not limited to the November 22, 2006 meeting …).  (Compl. ¶ 151.)  But a mere four paragraphs earlier, Plaintiffs complain that "although a meeting of the ImageSat Board was held in New York, New York on November 22, 2006 … there was no substantive discussion of either the SOP opportunity with Venezuela or the investment proposal by the President of Venezuela to the Company at that meeting and certainly no formal resolution or action taken or recommended … ."  (*Id*. ¶ 147.)  Obviously, then, the November 22, 2006 Board meeting cannot form the basis for the assertion of personal jurisdiction over ImageSat in connection with the Venezuela claim.

hired a New York law firm to negotiate certain corporate documents on its behalf.  Hiring a law

firm does not constitute activity in New York for jurisdictional purposes.  *See PaineWebber Inc.*

*v. Westgate Group, Inc.*, 748 F. Supp. 115, 120 (S.D.N.Y. 1990) (defendant's "desire to get a big

'New York' [i]nvestment house is not a purposeful availment of New York as a forum just as

'Get me a New York lawyer,' without more, is not an invocation of in personam jurisdiction in

the forum state of the lawyer's practice"); *Bush v. Stern Bros. & Co.*, 524 F. Supp. 12, 14

(S.D.N.Y. 1981) (fact that defendant uses New York law firms, accountants and investment

banks to perform services does not represent activity in New York for jurisdictional purposes).

### (i)     The Relevant Agreements do Not Contain Consent to Jurisdiction Clauses

Contrary to Plaintiffs' assertions, none of the relevant agreements contains a New

York jurisdiction clause.  The Master Agreement contains only a New York choice of law

clause.  (Compl. Exh. A § 15(e).)  "[A] choice of law provision in a contract does not constitute a

voluntary submission to personal jurisdiction [in New York]."  *CutCo Indus., Inc. v. Naughton*,

806 F.2d 361, 366 (2d Cir. 1986); *see also Norben Imp. Corp. v. Metro. Plant & Flower Corp.*,

No. 03 Civ. 8660 (WHP), 2004 WL 2378295, at *3 (S.D.N.Y. Oct. 25, 2004) ("[a]lthough the

contract provides that New York law shall govern, such a provision is legally insufficient for

personal jurisdiction.").  The other document that Plaintiffs reference, the Pegasus Note Purchase

Agreement ("NPA"), provides for jurisdiction in New York only "for any action, suit or

proceeding *arising in connection with this agreement*."  Pegasus Note Purchase Agreement

§ 14.10.  Pegasus is not a party to this action and the action does not involve Pegasus, so the

NPA is irrelevant to the question of jurisdiction.  *See Phillips v. Audio Active Ltd.*, 494 F.3d 378,

389-92 (2d Cir. 2007) (finding forum selection clause in contract did not govern claims that did

not arise out of that contract); *ComJet Aviation Mgmt. LLC v. Aviation Investors Hldgs Ltd.*, 758

N.Y.S.2d 607 (App. Div. 2003) (dismissing complaint for lack of jurisdiction where plaintiff was not a party or beneficiary to any agreement where New York was the chosen forum); *Madison Models, Inc.*, 2003 WL 21978628, at *3 (finding personal jurisdiction allegations against defendant who was not a party to contract at issue insufficient).[10]

### c.    Hiring a New York Accounting Firm Does Not Give Rise to Jurisdiction Under Section 302(a)(1)

The allegation that a New York affiliate of Ernst & Young prepared financial statements for the Company is inaccurate. (Compl. ¶ 112.) ImageSat's financial statements are audited principally by accounting firms based in Israel, the Netherlands Antilles, and Cyprus – not New York. (Goren Decl. ¶ 15.) Even if the Company used a New York accounting firm, this is insufficient to bring the Company within this Court's jurisdiction. *See Daniel v. Am. Bd. of Emergency Med.*, 988 F. Supp. 127, 223 (W.D.N.Y. 1997) ("the location in New York of service organizations, such as law firms or investment banking companies, which perform financial and related legal services for the [Defendants] in connection with … offerings, does not represent activity in New York by the [Defendants] for jurisdictional purposes) (citation omitted); *Bush*, 524 F. Supp. at 14.

### d.    A Failed Initial Public Offering Attempt Does Not Give Rise to Jurisdiction Under Section 302(a)(1)

There is similarly no merit to Plaintiffs' allegation that an IPO that never happened provides a basis for New York jurisdiction.[11] The listing of securities for trading on a

---

[10] Although the July 25, 2000 Securityholders' Agreement contains a consent to New York jurisdiction clause, the only named Plaintiff that is a party to the Agreement is WIS Partners and the only allegation in the Complaint arising thereunder is the lack of independent directors.

[11] Indeed, Plaintiffs' attempts to tie the failures and improprieties alleged throughout the Complaint are spurious at best, as for example, Section D, styled "Destruction of ImageSat's International Profile and Spurning of SOP Opportunities." (Compl. ¶ 49.) Plaintiffs spend the next eight pages asserting the importance of the Company's global profile to commercial relationships with countries such as Russia, Taiwan, Korea and Angola (Compl. ¶¶ 113-129.) Plaintiffs then make a conclusory assertion that these "international, multinational, global" activities and relationships had "numerous contacts" with New York because at this same time the Company was involved in

stock exchange, and activities ancillary to such listing, are insufficient to subject a corporation to jurisdiction.[12]  This line of cases is "particularly sensible" because, "if participation in New York's international financial markets alone could constitute 'doing business,' personal jurisdiction would be almost limitless and would no doubt raise considerable constitutional concerns."  *Feldman v. Silverleaf Resorts, Inc*., No. 98-CV-4566, 2000 U.S. Dist. LEXIS 1005, at *13 (E.D.N.Y. Jan. 31, 2000).  *See also Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 97 (2d Cir. 2000) ("the prevailing caselaw accords foreign corporations substantial latitude to list their securities on New York-based stock exchanges and to take the steps necessary to facilitate those listings (such as making SEC filings and designating a depository for their shares) without thereby subjecting themselves to New York jurisdiction for unrelated occurrences").

>           **e.      Wilson's Failed Attempts To Meet With Directors And**
>                    **Other Shareholders Of The Company In New York**
>                    **Does Not Give Rise To Jurisdiction Under CPLR**
>                    **§302(a)(1)**

Plaintiffs allege that a New York "contact" is "Wilson's unsuccessful efforts to meet with Defendant Eckhaus."  (Compl. ¶ 151.)  But the fact that a Plaintiff wanted to have a meeting – which meeting *never* took place – cannot logically support jurisdiction in New York. Even if such a meeting had taken place, the relevant issue is where the underlying events took place, not where a potential plaintiff attempted to meet with a potential defendant.

---

financing activities including the failed Initial Public Offering of its shares on the NASDAQ stock exchange.  This is an attempt to create jurisdiction where none can lie.  The allegations of Section D are unrelated to the Company's failed IPO attempt, and simply tacking on such an irrelevant allegation at the end does not magically create a New York jurisdictional nexus.

[12] *See Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140 (S.D.N.Y. 2004) (holding availability of French company's stock to be purchased in New York and retention of New York-based market makers to assist in sales of stock was insufficient to confer jurisdiction); *Sunrise Lumber Co. v. Homer D. Biery Lumber Co.*, 195 A.D. 170, 185 N.Y.S. 711, 713 (App. Div. 1921) ("There is scarcely a considerable corporation anywhere in the United States which does not attempt to sell its stock and bonds through Wall Street houses. Such selling is not a doing of business by the corporation.").

### 2.    Plaintiffs Fail to Allege a Prima Facie Case of Jurisdiction Under Section 302(a)(2)

Section 302(a)(2) gives this court "personal jurisdiction over any non-domiciliary … who in person or through an agent … commits a tortious act within the state …." C.P.L.R. § 302. At a minimum, to qualify for jurisdiction under Section 302(a)(2), "a defendant's act or omission [must have] occur[ed] within the State." *Bank Brussels Lambert*, 171 F.3d at 789-90 (quotation omitted), *vacated*, 305 F.3d 120 (2d Cir. 2002); *see also Maranga v. Vira*, 386 F. Supp. 2d 299, 310 (S.D.N.Y. 2005) ("CPLR 302(a)(2) reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act") (*quoting Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28-29 (2d Cir. 1997)). With the exception of the conclusory allegation that "many of the acts forming an integral part of Defendants' wrongful acts took place in New York, New York" (Compl. ¶ 20), Plaintiffs fail to identify a single tort that occurred in New York, much less a tort committed by ImageSat in New York. Section 302(a)(2) is therefore inapplicable because Plaintiffs do not allege that the Company committed a tortious act *within New York*.

### 3.    Plaintiffs Fail to Allege a Prima Facie Case of Jurisdiction Under Section 302(a)(3)

Nor is there a basis for personal jurisdiction under § 302(a)(3), which permits a court, under certain conditions, to exercise jurisdiction over a defendant that commits a tortious act outside the state that results in injury in New York. To establish a basis for jurisdiction under Section 302(a)(3), a plaintiff must allege specific facts showing that the defendant, either (i) regularly does or solicits business or engages in any other persistent course of conduct in the state, or (ii) derives substantial revenue from interstate or international commerce and should have expected the tortious act to have consequences in the state.

Plaintiffs are unable to allege that ImageSat earns substantial revenue from rendering services in the State.  The Complaint's failure to allege such facts is fatal to the exercise of jurisdiction over ImageSat under § 302(a)(3).  *See Family Internet, Inc. v. Cybernex, Inc.*, No. 98 Civ. 0637 (RWS), 1999 U.S. Dist. LEXIS 15549, at *21-22 (S.D.N.Y Oct. 1, 1999) (refusing to exercise jurisdiction where plaintiff "has not even ventured to prove" that defendant "derived substantial revenue from interstate or international commerce"); *Cortland Line Co. v. Vincent*, No. 98-CV-259, 1999 U.S. Dist. LEXIS 7190, at *16 (no jurisdiction under Section 302(a)(3) because although plaintiff made general allegations, it did not make a *prima face* showing that defendants earned substantial revenue from rendering services in the state); *Flamel Tech. v. Soula*, No. 650276/06, 2007 N.Y. Slip Op. 51638 (U), 2007 WL 2415850, at *2 (Sup. Ct. Aug. 27, 2007) ("New York courts generally hold that the situs of the injury for a tort is where the events giving rise to the injury occurred, and is not based upon the fact that a party who happens to incur an indirect financial loss is domiciled in New York.").

As the requirements of CPLR § 301 and § 302 have not been satisfied to establish personal jurisdiction over ImageSat, the Complaint should be dismissed.

**C.    The Exercise of Personal Jurisdiction Over ImageSat Would Be Unreasonable and Would Violate Due Process**

Even if Plaintiffs could satisfy the statutory requirements for personal jurisdiction, the exercise of jurisdiction must also satisfy due process.  Determining whether due process permits an exercise of jurisdiction requires "an analysis consisting of two components:  the 'minimum contacts' test and the 'reasonableness' inquiry." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriquez*, 305 F.3d 120, 124 (2d Cir. 2002) (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)).  The former looks to "whether the defendant has certain minimum contacts [with the forum] ... such that the maintenance of the suit

does not offend traditional notions of fair play and substantial justice." *Id.* at 127 (citations omitted). The latter asks "whether it is reasonable under the circumstances of the particular case" to assert personal jurisdiction. *Id.* at 129 (citations omitted). Due process is satisfied if the defendant "purposely and sufficiently availed [itself] of the privileges of conducting business in New York, so as to reasonably expect to be subject to suit [in New York.]" *PDK Labs., Inc. v. Friedlander*, 103 F.3d 1105, 1110-11 (2d Cir. 1997) (citation omitted).

As demonstrated above, Plaintiffs do not meet the first prong of that test. An additional reason for dismissal is that Plaintiffs cannot satisfy the second prong. The Supreme Court has held that the court must evaluate the following factors as part of this "reasonableness" analysis: (1) the burden that the exercise of jurisdiction will impose; (2) the interests of the forum state in adjudicating the case; (3) plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. "While the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts … it may be defeated where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Metro. Life Ins. Co.*, 84 F.3d at 568 (citations omitted). *See id.* at 572-75 (applying factors and concluding it would be unreasonable for court to exercise personal jurisdiction over foreign individual).

The five factors demonstrate the unreasonableness of exercising jurisdiction here because (1) the burden on ImageSat to defend suit in New York is significant, given that it has no employees or agents in the State, owns no property in the State, and almost all of the relevant witnesses and documents are located half a world away; (2) New York's interest in adjudicating this suit is slight because the underlying dispute involves corporations and defendants based in

Israel and the issues have almost no connection to New York; and (3) with regard to the last three factors, Israel would present an alternative forum that would provide for the most efficient judicial resolution of this controversy, as discussed in the Joint Memorandum, § I.  *See First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.,* 218 F. Supp. 2d 369, 403 n.179 (S.D.N.Y. 2002) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.") (internal citations omitted).

## II.    PLAINTIFFS' CLAIMS AGAINST THE COMPANY ARE ILLOGICAL AND FAIL TO STATE A CLAIM

### A.    The Claims Against ImageSat for Breach of Fiduciary Duty (Claims 1 – 6) Fail

As discussed in the Joint Memorandum, the claims against the Company for breach of fiduciary duty fail because they are governed by Netherlands Antilles law and Plaintiffs do not satisfy the limited circumstances under which a shareholder in an Antilles corporation may sue the company.  (Joint Mem., § III.)

These claims against the Company fail for the additional reason that they are illogical.  In support of each of their six claims for breach of fiduciary duty, Plaintiffs allege:

- Count One (Breach of Fiduciary Duty) alleges that the Defendants unfairly modified the Master Agreement "thus disserving the best interests of *the Company and its shareholders*".  (Compl. ¶ 198 (emphasis added).)

- Count Two (Breach of Fiduciary Duty) alleges that "[t]hroughout the history of the 2001 Eros B satellite, Defendants consistently placed their self-interests ahead of those of *ImageSat and its stockholders*".  (*Id*. ¶ 208 (emphasis added).)

- Count Three (Breach of Fiduciary Duty) alleges that the Defendants took numerous acts to destroy the Company's international operations, all of which had the effect of "damage[ing] the *Company's* credibility, its corresponding sales performance*, its overall valuation*, and the interests of the minority shareholders by hundreds of millions of dollars.  (*Id*. ¶ 220 (emphasis added).)

- 14-

- Count Four (Breach of Fiduciary Duty) alleges that the Defendants took numerous actions "[f]ailing to take advantage of the Venezuelan opportunity for reasons unrelated to the best interests of the *Company and its shareholders*," in the process "[l]osing million of dollars of revenue *for the Company*". (*Id*. ¶ 230.)

- Count Five (Breach of Fiduciary Duty) alleges that the Defendants caused financial harm *to the Company* in recent years and restructured the Company's senior debt and equity in a way that benefited IAI and Elbit "to the detriment of the *Company's other shareholders*". (*Id*. ¶ 239.)

- Count Six (Breach of Fiduciary Duty) alleges that Defendants devalued "ImageSat's most valuable legal and commercial rights" under the Master Agreement and otherwise, such as by "[f]ailing to negotiate and collect royalties to which *ImageSat* is entitled" and failing to "vindicat[e] the rights of *ImageSat and its shareholders* through legal means". (*Id*. ¶¶ 249-50.) Plaintiffs allege that these actions "had the effect of "costing *ImageSat and its shareholders* hundreds of millions of dollars." (*Id*. ¶ 250 (emphasis added).)

It makes no sense for Plaintiffs to allege that "Defendants" caused ImageSat to lose value and simultaneously allege that ImageSat should compensate Plaintiffs for this injury *to the Company*.

The claim also fails to satisfy Rule 9(b). ImageSat respectfully refers the Court to the Memorandum of Law in Support of Motion to Dismiss submitted on behalf of Moshe Keret, Izhak Nissan, Jacob Weiss, Shimon Eckhaus, Gino Piperno-Beer, David Arzi and Yoav Chelouche (the "ImageSat D&O Mem."), submitted herewith, for a discussion of the standards Plaintiffs are required to satisfy to state a claim for fraud with particularity pursuant to Rule 9(b). Pursuant to that heightened pleading standard, the breach of fiduciary duty claims against ImageSat fail because Plaintiffs have not adequately pled any false statements made by the Company, any particular facts from which deceitful intent (*i.e*., scienter) could be inferred, or reliance on any alleged falsehoods.[13] Although Plaintiffs allege in vague and conclusory fashion

---

[13] *See*, *e.g.*, *Krause v. Forex Exch. Mkt., Inc.*, 356 F. Supp. 2d 332, 338 n. 49 (S.D.N.Y. 2005) (dismissing breach of fiduciary duty claim for failure to comport with Rule 9(b)). Plaintiffs' fraud-based claims against the Company must be dismissed for the additional reason that Plaintiffs fail to plead facts demonstrating that specific losses

that the Company breached its fiduciary duties, they allege that the Company breached its

fiduciary duties *to itself.*  How, for example, could the Company misappropriate funds from

itself (Compl. ¶¶ 198, 207, 220, 230) -- willfully or otherwise?

> **B.**    **The Claims against ImageSat for Corporate Waste (Claims 7 – 9) and Self-Dealing (Claim 10) Fail**

As discussed in the Joint Memorandum, the claims against the Company for

corporate waste and self-dealing fail because they are governed by Netherlands Antilles law and

Plaintiffs do not satisfy the limited circumstances under which a shareholders in an Antilles

corporation may sue the company.  (Joint Mem., § III.)

The corporate waste and self-dealing claims against the Company fail for the

additional reason that they are illogical.  Plaintiffs allege:

- Count Seven (Corporate Waste) alleges that the Defendants negotiated the terms of the EROS B satellite contract in a way that was "grossly disproportionate and unfair to *ImageSat and its shareholders*".  (*Id.* ¶ 258 (emphasis added).)

- Count Eight (Corporate Waste) alleges that Defendants caused the company to engage in transactions that were "grossly disproportionate and unfair to *ImageSat and its shareholders*".  (*Id.* ¶ 265  (emphasis added).)

- Count Nine (Corporate Waste) alleges that "Defendants have effectively given or attempted to give away *ImageSat's* valuable contractual rights for little or no consideration in a transaction or bargain whose terms were so grossly disproportionate and unfair to *ImageSat and its shareholders* that no reasonable corporate director or officer would have believed that the relinquishment of such rights was fair and in the best interests of the *shareholders*." (*Id.* ¶ 273  (emphasis added).)

 It is illogical for Plaintiffs to allege that "Defendants" committed acts that were

"disproportionate and unfair" to ImageSat and then bring a lawsuit against ImageSat demanding

that the Company pay compensation for acts that allegedly caused injury *to ImageSat*.

---

directly resulted from "reasonable or justifiable reliance" on the purported misrepresentations.  *Clark v. Nevis Capital Mgmt., LLC*, No. 04 Civ. 2702, 2005 WL 488641, at *18 (S.D.N.Y. Mar. 2, 2005).

In support of the self-dealing claim, Plaintiffs allege that Defendants took certain actions that "wrongfully placed his or its personal interests ahead of the interests of the *Company's shareholders*, including Plaintiffs, and the *Company*." (*Id*. ¶ 278  (emphasis added).) If ImageSat is intended to be included among the Defendants on this count (as has been pleaded), this claim, read literally, says that ImageSat took actions that placed its own interests ahead of the interests of ImageSat.  This claim is illogical and should be dismissed.

### C.      The RICO Claims Against ImageSat (Claims 11 and 12) Fail

As discussed in the Joint Memorandum, the RICO claim against the Company should be dismissed because Plaintiffs do not satisfy that statute's pleading requirements.  (Joint Mem., § VII.)  In addition, the RICO claims against the Company fail to comply with Rule 9(b). "[W]here more than one defendant is charged with fraud, it is necessary for a plaintiff to particularize and prove each defendant's participation in the fraud and each defendant's enactment of the two necessary predicate acts."  *USA Certified Merchs., LLC v. Koebel*, 262 F. Supp. 2d 319, 332 (S.D.N.Y. 2003).  Plaintiffs have not adequately alleged that the Company committed two predicate acts.  Moreover, they have failed to provide a plain statement of each scheme they allege the Company participated in.  *See Miller v. City of New York*, 2007 WL 1062505, at *3 (E.D.N.Y. March 30, 2007) (dismissing claim where the complaint described "so many diverse and overlapping schemes and activities of the various defendants that it is often impossible to identify which of these activities are attributed to whom, and which are alleged to constitute the scheme or schemes to defraud in furtherance of which the mails are alleged to have been used").  General allegations that Defendants benefited from racketeering activity are insufficient to state a claim.  *Rivera v. Golden Nat'l Mtg. Banking Corp.*, 04 Civ. 4545, 2005 WL 1514043, at *3 (S.D.N.Y. 2005) (holding plaintiff's general allegations of mail fraud were insufficient to establish a predicate act under RICO).

### D.    The Fraud Claim Against ImageSat (Claim 13) Fails

As discussed in the Joint Memorandum (§ VII), the fraud claim fails because it is governed by Netherlands Antilles law and Plaintiffs do not satisfy the limited circumstances under which a shareholder in an Antilles corporation may sue the company.

In addition, the fraud claim against the Company fails to comply with Rule 9(b). Although Plaintiffs allege that the Company made "false and misleading statements," the Complaint is devoid of information regarding who made the statements, when and where they were made, and how they were false. *See Olsen v. Pratt & Whitney Aircraft*, 136 F.3d 273, 275 (2d Cir. 1998) (dismissing fraud claim as "conclusory and lacking in particulars" because complaint failed to allege "what was said;" "who said it;" "where and when" the statements were made; "and why these predictions of future events were fraudulent … .").  Accordingly, Plaintiffs' fraud claim against the Company fails as a matter or law.[14]  Perhaps most glaringly, Plaintiffs fail to allege that the Company was acting with fraudulent intent as required by Rule 9(b).  Indeed, such an allegation would defy logic as the theme of the Complaint is that ImageSat has "lost hundreds of millions of dollars of shareholder value".  (Compl. ¶ 3).  "Where [Plaintiffs'] view of the facts defies economic reason … it does not yield a reasonable inference of fraudulent intent."  *Am. High-Income Trust v. AlliedSignal,* 329 F. Supp. 2d 534, 546 (S.D.N.Y. 2004) (citing *Kalnit v. Eichler*, 264 F.3d 131, 140-41 (2d Cir. 2001)).

---

[14]    Moreover, many of the alleged fraudulent statements are attributed indiscriminately to "Defendants," without specifying *which* defendant allegedly made the statement.  (*See, e.g.*, Compl. ¶¶ 112, 115, 119, 128-129, 132, 136, 141, 165, 171-172, 298.)  Such wide-scale lumping together of several defendants in vague allegations without informing them of the specific wrongdoing they are alleged to have committed is unacceptable.  *See DiVittorio v. Equidyne Extractive Indus. Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation.").

### D. The Claims Against ImageSat Relating to the Options and Bridge Warrants (Claims 17 and 18) Fail

As discussed in the Joint Memorandum, the claims against the Company for reformation of the options and bridge warrants (claim 17) and for fraud relating to the options and bridge warrants (claim 18) are time-barred. (Joint Mem., § VIII.) The fraud claim fails for the additional reason that Plaintiffs cannot have reasonably relied on alleged oral representations that are contradicted by the express terms of the options and warrants. (*Id*. at § IX.)

### E. The Claim Against ImageSat for Conversion/Misappropriation (Claim 21) Makes No Logical Sense

The claim for conversion alleges that that "each of the Defendants wrongfully caused assets, property, funds, and other things of value *belonging to ImageSat* to be diverted to themselves for their own use." (*Id*. ¶ 381 (emphasis added).) Read literally, Plaintiffs are alleging that ImageSat caused things of value belonging to ImageSat to be diverted to ImageSat. This claim is illogical and should be dismissed.

The basic element of conversion and misappropriation is the intentional and wrongful exercise of control over *someone else's* property. *See Restatement (Second) of Torts: Conversion § 222A* ; *Fesseha v. TD Waterhouse Inv. Servs., Inc.*, 747 N.Y.S.2d 676 (Sup. Ct. 2002) (citing *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 452 N.Y.S.2d 599 (App. Div. 1982.)). Because ImageSat cannot wrongfully take or misappropriate its own property (*i.e.*, steal from itself) it is impossible for ImageSat to have caused injury to Plaintiffs. *See, e.g., In re Litzinger*, 322 B.R. 108 (B.A.P. 8th Cir. 2005) (noting that in order to allege a claim for conversion "the property alleged to have been converted [must be] owned by someone other than the alleged converter because you cannot steal from yourself.").

F.    **The Claim Against ImageSat for Unjust Enrichment/Restitution (Claim 22) Makes No Logical Sense**

Plaintiffs allege that "each of the Defendants has been unjustly enriched at the expense of the Plaintiffs and has received money, ownership interests in the Company, and/or other things of value that should be [sic.] right belong to the Plaintiffs."  (Compl. ¶ 387.)  If it were true that ImageSat has been "unjustly enriched," it is unlikely that Plaintiffs as shareholders of the Company would have filed a lawsuit complaining about this fact.  To the contrary, the central theme of Plaintiffs' lawsuit is that the Company has been stripped of "hundreds of millions of dollars of shareholder value".  (Id. ¶ 3.)  The claim that ImageSat has been unjustly enriched is contradicted by the rest of the Complaint, is illogical, and should be dismissed.

## CONCLUSION

For the foregoing reasons, as well as those discussed in the accompanying Joint Memorandum, the Complaint should be dismissed with prejudice.  Any amendment of the claims would not change the fact that, among other things, ImageSat is not subject to jurisdiction in New York, the claims against ImageSat are illogical, this Court is not the appropriate forum for the litigation and Plaintiffs do not have standing to assert their claims.  *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (granting leave to amend is not required if it is "unlikely to be productive").

Dated: October 15, 2007
New York, New York

MILBANK, TWEED, HADLEY & McCLOY LLP

By: ___/s/ Sander Bak_____

Sander Bak (SB 2263)
Deborah Elman (DE 2310)
1 Chase Manhattan Plaza
New York, New York 10005
(212) 530-5000

*Counsel for Defendants ImageSat International N.V., Moshe Keret, Izhak Nissan, Jacob Weiss, Shimon Eckhaus, Gino Piperno-Beer, David Arzi, and Yoav Chelouche*

- 20-