UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

STEPHEN M. WILSON, *et al.*,                    Case No: 07-Civ-6176 (LTS)

                Plaintiffs,

-v.-

IMAGESAT INTERNATIONAL N.V., *et al.*,

                Defendants.
------------------------------------------------------------------X

## DECLARATION OF PETER VAN SCHILFGAARDE

      PETER VAN SCHILFGAARDE hereby declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury:

      1.     I submit this declaration on behalf of ImageSat International, N.V. ("ImageSat"), Israel Aerospace Industries Ltd. ("IAI"), Elbit Systems Ltd. ("Elbit"), David Arzi, Yoav Chelouche, Shimon Eckhaus, Moshe Keret, Izhak Nissan, Gino Piperno-Beer, Jacob Weiss, Joseph Gaspar, Joseph Ackerman, Michael Federmann, the Estate of Jacob Toren, and Yehoshua Eldar (collectively, the "Defendants") who have retained me to provide an expert opinion in connection with the action captioned *Wilson, et al. v. ImageSat Int'l N.V.*, 07 Civ. 6176 (LTS) filed in the United States District Court for the Southern District of New York (the "Wilson Action"). I understand that Messrs. Arzi, Chelouche, Eckhaus, Keret, Nissan, Piperno-Beer, Weiss, Gaspar, Ackerman, Federman, Toren, and Eldar are alleged to be current or former directors of ImageSat and have been sued in that capacity. I refer to them herein collectively as the ImageSat D&Os.

**I.**    **Background**

10/15/07

2. I have been a full time professor of corporate and commercial law at the University of Groningen (Netherlands) from 1970 until 1989. From 1989 until 2001, I had the same position (but only part time) at the University of Utrecht (Netherlands). In 1989, I became an attorney of law at the Supreme Court of the Netherlands, the Hague, as a partner of the law firm De Brauw Blackstone Westbroek, where I practiced corporate law and litigation (including Supreme Court litigation). I retired from De Brauw as of January 1, 2006, when I moved to my own practice.

3. Since 1996, I have been actively involved in the reform of the Netherlands Antilles Company law. I drafted the Netherlands Antilles law on a new close company (BV), which was enacted in 1999. Thereafter, I participated in a Government-established Committee of Commissioners for the introduction of a new Book 2 of the Civil Code (*Rechtspersonen*) of the Netherlands Antilles. I have personally prepared the first and later drafts of this new Book 2. This new Book 2, which came into force March 1, 2004, covers legal persons in general (including the NV and BV) and introduces new rules for corporate governance and directors' liability.

4. Since completing the drafting of Book 2, I have continued to work on various projects to evaluate and reform the new legislation on corporate law in the Netherlands Antilles. I am also a member of the permanent Committee on Company Law Reform in the Netherlands and a member of a bilateral Committee for the Concordance of Netherlands' and Netherlands Antilles' corporate law.

5. I have been asked by the Defendants to review the complaint filed in the Wilson Action (the "Complaint") and to render an opinion on the circumstances under which the causes of action alleged in the Complaint could be asserted against an Antilles corporation, against the

directors of an Antilles corporation, or against the shareholders of an Antilles corporation under the laws of the Netherlands Antilles.

6. In preparing this declaration, I reviewed the Complaint, ImageSat's Articles of Association, and ImageSat's ByLaws.

## II. The Netherlands Antilles Government and Judicial System

7. The Netherlands Antilles is comprised of five islands located in the Caribbean including: Curacao, Bonaire, St. Maarten, St. Eustatius and Saba – which, since 1954, exist as an autonomous country within the Kingdom of Netherlands – with foreign affairs and defense remaining the responsibility of the Netherlands. The islands are otherwise responsible for their own political affairs and administration. The island of Aruba used to be part of the Netherlands Antilles but has gained a separate status within the Kingdom of The Netherlands on January 1, 1986.

8. The Netherlands Antilles government is divided into three independent branches: executive, legislative, and judiciary.

9. The Netherlands Antilles government functions under a democratic system that is derived from the Netherlands' parliamentary system. Approximately 12,000 offshore companies are domiciled in the Netherlands Antilles.

10. The judicial system is based on that of the Netherlands civil law system and operates independently of the legislature and the executive.

11. Company law in the Antilles has always had the same structure as company law the Netherlands. Although there have been some recent amendments to Antilles corporate law that are not identical to Netherlands law, these are mostly reflected in the rules regarding capital protection, voting rights, annual accounts, and formal corporate governance structure. In the

field of directors and officers liability, the laws of the Antilles and Netherlands are nearly identical.

12.     The courts of the Netherlands Antilles justice system are divided into the following three tiered structure:

i) The Courts of First Instance of the Netherlands Antilles, which have their seat/location on each of the islands of the Netherlands Antilles ( the Court of First Instance of Aruba has its seat in Aruba);

ii) The Joint Court of Justice of the Netherlands Antilles and Aruba (Communal Court of Appeals) located in Willemstad, Curacao, is the appeals court of Netherlands Antilles and Aruba and the highest court based in these countries;

iii) The Final Instance for any appeal is the Supreme Court of the Netherlands (the Hague) which is the highest court in the Kingdom of the Netherlands.

13.     One judge, who is also a part of the Communal Court of Appeals, forms the Court of First Instance. In the Communal Court of Appeals, three judges adjudicate a case. In the Supreme Court, adjudication is done by five judges. The Netherlands Antilles legal system does not have a jury-system and only judges can issue verdict and rulings.

### III. Structure of a Netherlands Antilles Company and Corporate Governance with Regard to the N.V.

14.     The principal corporate legislation with regard to the *naamloze vennootschap* -- a public company with limited liability (known as an "N.V.") -- is found in the Articles 1-37 and 100-144 of Book 2 of the Civil Code of the Netherlands Antilles ("NACC"), which came into force on March 15, 2004. The new law simplifies some aspects of the formation and operation of most corporate forms and introduced new rules covering corporate governance including stricter liabilities for company directors and supervisors.

15.     The N.V. law of the Netherlands Antilles permits an N.V. incorporated in the Netherlands Antilles to govern itself by a two-tiered governance structure comprised of a

Managing Board and a Supervisory Board. Every N.V. incorporated in the Netherlands Antilles has a Managing Board. A Supervisory Board is optional. The Managing Board is basically responsible for the strategy of the company and responsible for the management of the companies operations and business affairs, including representing the company in its dealings with third parties.

16.     Under the law of the Netherlands Antilles, the N.V. is an independent judicial entity whose legitimate interest are seen to be distinct, and at times even divergent, from the interests of the company's shareholders. The Managing Board is required to protect the interests of the company (which must be determined by weighing the interests of all parties concerned against each other, including the interests of employees, suppliers, customers, etc. ), and the law of the Netherlands Antilles recognizes that, in certain circumstances, decisions properly made by a Managing Board may conflict with shareholders' preferences and interests.

17.     Other than their voting rights, the law of the Netherlands Antilles does not view a company's shareholders as the supreme authority within the corporate structure, and the Managing Board's authority is not subordinated to that of a company's shareholders. Shareholders in principle may pursue their own interests and so exercise their voting rights in their sole discretion, limited only by the principle of reasonableness and fairness as embodied in Article 2: 7 NACC as mentioned in par. 20 next.

18.     According to Article 14, par. 1, Book 2 Antilles Civil Code (NACC) members of a company's Managing Board have a duty to "properly perform" management tasks. This duty requires a Managing Board member to perform his or her function with the degree of care and skill that would be expected of a reasonable Managing Board member. The members of a Managing Board are not expected to guarantee the success of their executive actions and

management decisions. The duty to properly perform management tasks in the sense of Article 2:14 NACC is owed to the company and not to shareholders. Accordingly, as discussed in more detail below, a breach of duty may give rise to a cause of action for mismanagement by the company.

19. With regard to the performance of these duties it is expected that each director possess the insight and care of a director who is equipped to perform his task properly and with diligence. HR 10 January 1997, NJ 1997, 360, Staleman/Van de Ven.

20. In addition to the duty to properly perform managing tasks, members of the Managing Board, together with the shareholders and the company itself, have the obligation to behave reasonably and equitably toward one another (Article 2:7 NACC). The remedy for a violation of this obligation can in certain circumstances be a court order avoiding a resolution of the General Meeting of Shareholders or of the Managing Board. In other cases Article 2:7 may be invoked to strengthen a tort based claim for damages.

21. Fiduciary duty is not a concept commonly relied upon in Netherlands Antilles law. Directors are not regarded as having any fiduciary duty outside the duties mentioned in par. 18-20 and shareholders are not regarded as having any fiduciary duty or other special duty to other shareholders or the corporation outside the duties mentioned in par. 20 (other than their financial duties).

### IV. The Law of the Netherlands Antilles Does Not Recognize Derivative Suits

22. As a *naamloze vennootschap*, or N.V., ImageSat is subject to the rules set forth in Articles 2:1-37 and 2:100-144 NACC. The laws of the Netherlands Antilles do not recognize the derivative form of legal action whereby a shareholder or group of shareholders commence legal proceedings against a company's current or former directors or officers seeking

compensation for alleged misconduct on behalf of the company

23. Under Article 2:14 NACC, an N.V.'s Managing Board manages the company's operations and business affairs, and has – in connection with Article 2:10 NACC - the legal authority to initiate legal proceedings by and for the company. This authority permits the Managing Board to bring a court action in the name of the company against a present or former member of the company's Managing Board for mismanagement, provided that the rules on conflict of interest do not provide otherwise. As I discuss in paragraph 44 below, in the situation where a conflict of interest exists, the General Meeting of Shareholders can appoint by majority vote a special representative to initiate these proceedings on behalf of the company.

24. In Article 20 of ImageSat's Articles of Association, the authority to represent the company is conferred upon the Board of Directors with the provision that"[e]ach member of the Board of Directors shall be authorized to represent the Company. The Board of Directors may appoint one or more directors and/or one or more attorneys-in-fact with general or limited power to represent the Company." Article 20(3) allows for the General Meeting of Shareholders to designate a person for this purpose in case of a conflict of interest between one of the members of the Board of Directors and the Company. It is my understanding that plaintiffs are not currently members of the board and were not appointed as directors or attorney-in-fact with power to represent ImageSat, or designated as such by the General Meeting of Shareholders on the basis of Article 20(3) of the Articles of Association. They therefore do not have the authority to commence a cause of action that belongs to ImageSat or to represent ImageSat in any proceeding to which ImageSat is party.

V. **The Claims Against the ImageSat D&Os under Netherlands Antilles Law**

25. Under Netherlands Antilles law, the general rule is that claims against the

directors of a company for mismanagement may be brought by the company or, in the case of bankruptcy, by the trustee. Claims against directors for mismanagement may be asserted by shareholders only in the limited circumstance where two requirements are met. These requirements are discussed in HR 2 December 1994, NJ 1995, 288 , Poot/ABP, a landmark decision under Netherlands law, which is also applicable in the Netherlands Antilles I attach hereto a copy of this court decision in original Dutch and in English translation.

26. First, it must be shown by the shareholders that the alleged misconduct by the directors involved violation of a *specific norm of care* as applicable in their relation towards the complaining shareholders. If the alleged misconduct merely involved an act that damaged the company as a whole, no action by the shareholders is permitted.

27. Although there is limited case law on the subject, in my view this limitation means, for example, that Netherlands Antilles law would not permit a shareholder to assert a claim for mismanagement against directors where the alleged misconduct is that the directors failed to act upon a corporate opportunity that may have lead to financial benefit for the corporation as a whole. Similarly, this limitation means in my view that Antilles law would not permit an action by a shareholder against directors based on a claim that the board entered into a transaction that caused a financial loss for the company.

28. The second requirement imposed by Antilles law before shareholders may assert an action against directors is that the shareholders must claim damages in principle in the form of something other than a devaluation of their shares. This requirement means that a shareholder may assert an action against directors based on alleged misconduct only if the damages claimed are suffered in his own business or in his private financial situation, in principle not counting the value of his shares in the company. In this connection damage to the

shares owned is in later decisions called "*afgeleide schade*" (derived damage) by the Supreme Court.

29.   As can be seen from a recent decision of the Supreme Court (HR 16 February 2007, RvdW 2007, 203, JOR 2007, 112, Tuin Beheer B.V./Houthoff Buruma), the second requirement is implicitly included in the first one. In that case it was alleged that an (interim) Managing Director had consciously and unnecessarily elicited the bankruptcy of the company, which ran a hotel, with the intent to acquire possession of the hotel at the lowest possible price. The Supreme Court remarked that, if a Managing Director acts in such a way, this leads to "*afgeleide schade*". It then ruled that, unless further circumstances are alleged, such as the intent to injure the shareholder financially, it cannot be said that the Director in doing so also violated a specific norm of care towards the shareholder. The implication is that the first condition severely restricts the possibility of a claim against the (former) Directors and that the second condition is not absolute.

30.   Claims one through six as set forth in the Complaint are claims against the ImageSat D&Os (and others) for breach of fiduciary duty. Fiduciary duty is not a term typically used in Netherlands Antilles law. In fact, the concept of fiduciary duty is hardly ever used by the courts and is not a part of Netherlands Antilles statutory law.

31.   According to Article 2:14 NACC every director has in relation to the company the obligation or "duty" to "properly perform" his task. A claim under this Article is considered a contractual claim. It may be brought only by the company (the contractual party) and in the case of bankruptcy by the trustee. Claims under this Article may not be asserted by the shareholders.

32.   Under Netherlands Antilles law a claim for breach of fiduciary duty brought against a director would be interpreted as (a) a claim for mismanagement in the sense of Article

2:14 NACC or (b) a claim based on the general concept of tort (unlawful act).  If the claim is treated by the Antilles court as a claim under Article 2:14 NACC then, as discussed above, it could not be asserted by shareholders.  If the claim is treated by the Antilles court as a claim based on the general concept of tort then it is can be asserted by shareholders only if the claim satisfies the two requirements described above in ¶¶ 26-29.

33. The claims against the ImageSat D&Os (and others) for corporate waste (claims 7 and 8), failure to enforce a right of the company (claim 9), self dealing (claim 10), common law fraud (claim 13), disgorgement of compensation (claim 20), and conversion (claim 21) would be treated by Antilles law in the same manner as described above in the context of a claim for breach of fiduciary duty.  The claim for unjust enrichment (claim 22) would also be treated in the same manner, except that in Netherlands Antilles law unjust enrichment is a concept that only comes into play after all other options are exhausted.

34. Each of the claims in the preceding paragraph would be interpreted by an Antilles court in one of two ways: either as (a) a claim for mismanagement in the sense of Article 2:14 NACC or (b) a claim based on the general concept of tort (unlawful act).  If the claim is treated by the Antilles court as a claim under Article 2:14 NACC then, as discussed above, it could not be asserted by shareholders.  If the claim is treated by the Antilles court as a claim based on the general concept of tort then it is can be asserted by shareholders only if the claim satisfies the two requirements described above in ¶¶ 26-29.

35. Antilles law does not recognize claims under the Racketeer Influenced and Corrupt Organizations Act nor does it recognize any comparable cause of action.

36. The statute of limitations under Netherlands Antilles law for tort claims is five years beginning to run the day on which the injured person becomes aware of the damage and

the identity of the person who is liable for that damage.

## VI. The Claims Against ImageSat under Netherlands Antilles Law

37. Claims by shareholders against a company as mentioned in the Complaint are treated under Netherlands Antilles law under the general law of torts, which is the same as in the Netherlands. An action by shareholders for tort against the company would be possible if a tortious act were committed by the board or certain board members, which can be imputed to the company. However, the right of a shareholder to assert a claim against the company under Antilles law is again limited by two requirements. First, it must be shown by the shareholders that the alleged misconduct by the company involved an act that is unlawful towards the claiming shareholders. Second, the norm that has allegedly been violated must be a norm which has the purpose to protect against the damage suffered. In my interpretation, the combination of these two requirements means that if the alleged misconduct merely involved an act that damaged the company as a whole no action by the shareholders would be permitted.

38. Although there is limited case law on the subject with regard to the relation between a company and its shareholders, in my view this limitation means, for example, that Netherlands Antilles law would not permit a shareholder to assert a claim against the company where the alleged misconduct is that the directors acting on behalf of the company failed to act upon a corporate opportunity that may have lead to financial benefit for the corporation as a whole. Similarly, this limitation means in my view that Antilles law would not permit an action by a shareholder against the company based on a claim that the board acting on behalf of the company entered into a transaction that caused a financial loss for the company.

### VII. The Claims against the Shareholders IAI and Elbit

39. As noted above, shareholders of Netherlands Antilles companies may, in general, exercise their rights as shareholders in their self interest. Apart from the duty to behave reasonably and equitably toward one another (Article 2:7 NACC), shareholders do not have special duties towards other shareholders. Shareholders of Netherlands Antilles company have no duty to manage the company; rather, responsibility for management rests with the Managing Board and the company's officers. Under Netherlands Antilles law claims for damage by shareholders against fellow shareholders would be interpreted as a claim based on the general concept of tort (unlawful act). However, to proceed with a claim for general tort, in my opinion, a shareholder would most probably, at a minimum, have to overcome the same restrictions as are described above with respect to asserting a general tort against a company director. See supra, ¶¶ 26-29.

40. As follows from the Supreme Court's decision mentioned in paragraph 29, this means that in order to conclude that a specific norm of care toward the minority shareholders has been violated by IAI or Elbit, exceptional circumstances, such as the intention to injure the minority shareholders, must be alleged.

### VIII. Other Remedies Available to Shareholders

41. The law of the Netherlands Antilles offers several mechanisms by which shareholders may remove board members who are alleged to have breached their duties and/or require a company's Managing Board to commence a legal action against an alleged wrongdoer.

42. First, shareholders who are dissatisfied with any particular board member or the policies of the board have the power to seek the replacement of the board member or even the entire board. Article 17 of ImageSat's Articles of Association allow for dismissal of

suspension of any director, whether with or without cause, by the General Meeting of shareholders.

43. A resolution to remove any member of the Managing Board may be placed on the agenda of a General Meeting of Shareholders and a meeting for that purpose may be convened by one or more shareholders collectively holding at least 10% of the company's issued share capital, provided that the Managing Board has not done so upon request (Article 129 NACC, Article 26(2) of the Articles of Association).

44. Second, leading Dutch legal scholars support the view that a simple majority resolution by the General Meeting of Shareholders that the company should initiate legal proceedings against one or more members of the Managing Board is valid and has to be followed by the company in principle. The company will act as plaintiff in these proceedings. Because a conflict of interest could arise in this situation between the company and members of the Managing Board, the General Meeting of Shareholders can, according to Article 11 NACC and Article 20(3) of the Articles of Association, appoint by majority vote a special representative to initiate these proceedings on behalf of the company.

45. Third, a shareholder objecting to the adoption of a resolution by (a) the Managing Board or (b) the general meeting of shareholders may bring suit, by regular proceedings or by seeking injunctive relief, to nullify or have declared void or avoidable any such resolution, within the limits of article 21 NACC and the statute of limitations.

46. Apart from the possibilities mentioned above, there is in Netherlands Antilles law an exit possibility for shareholders. If a shareholder's rights or interests are found to be prejudiced to such an extent by the conduct of the company or of one or more co-shareholders that a continuation of his shareholding cannot reasonably be required of him, under Netherlands

Antilles law, he may institute a claim against the company for withdrawal demanding that his shares be acquired against payment in cash (Article 251 Book 2 NACC). Should a shareholder choose to proceed with such action, he will receive a sum in exchange for his shares determined by the court on the basis of an expert opinion.

47. The statute of limitations under Netherlands Antilles law for an action seeking to nullify a corporate resolution is six months from the date on which the notice of the resolution was given (Article 2: 21, sub 4 NACC).

I declare under penalty of perjury under the laws of the Unites States of America that the foregoing is true and correct.

Executed on October 15, 2007

_____
Peter van Schilfgaarde