## NJ 1995/288

**HOGE RAAD**

2 december 1994, nr. 15511

(Mrs. Martens, Roelvink, Korthals Altes, Nieuwenhuis, Swens-Donner; A-G Hartkamp; m.nt. Ma)

RvdW 1994, 265

**BW art. 2:3, 5, 64, 175, 6:162, 163**

[Essentie] Waardevermindering aandelen als gevolg van onrechtmatige daad c.q. wanprestatie jegens vennootschap; vraag of individuele aandeelhouders schadevergoeding kunnen vorderen. Vraag of onrechtmatige daad jegens vennootschap tevens onrechtmatige daad jegens enig aandeelhouder-directeur oplevert. Stelplicht

Indien aan een vennootschap door een derde vermogensschade wordt toegebracht door het niet behoorlijk nakomen van contractuele verplichtingen jegens de vennootschap of door gedragingen die tegenover de vennootschap onrechtmatig zijn, heeft alleen de vennootschap het recht uit dien hoofde van de derde vergoeding van deze aan haar toegebrachte schade te vorderen. Die vermogensschade van de vennootschap zal, zolang zij niet is vergoed, een vermindering van de waarde van de aandelen in de vennootschap meebrengen. In beginsel kunnen de aandeelhouders echter op grond van dit (aanvankelijk) voor hen ontstane nadeel niet een eigen vordering tot schadevergoeding tegen de bedoelde derde geldend maken. Er is geen grond om op dit punt onderscheid te maken tussen het geval van een vennootschap met een aantal aandeelhouders en dat van een vennootschap waarvan de aandelen in één hand zijn. Ook is in dit verband niet van belang in hoeverre bij een vennootschap met slechts één aandeelhouder deze laatste tevens (enig) directeur het doen en laten van de vennootschap beheerst.

Het "waardeloos maken" van de aandelen door het veroorzaken van het faillissement kan niet worden aangemerkt als een inbreuk op een subjectief recht van de enig aandeelhouder-directeur, welke inbreuk onrechtmatig zou zijn ook zonder dat een zorgvuldigheidsplicht jegens laatstgenoemde is geschonden..

De regel dat onrechtmatig is een doen of nalaten in strijd met hetgeen volgens ongeschreven recht in het maatschappelijk verkeer betaamt, heeft betrekking op de zorgvuldigheid die in een bepaalde verhouding tegenover een of meer bepaalde anderen behoort te worden betracht en is dus naar haar aard niet een norm die strekt tot bescherming van de belangen van allen die schade lijden als gevolg van het feit dat de vereiste zorgvuldigheid tegenover die bepaalde anderen niet in acht is genomen. Het Hof is dan ook terecht ervan uitgegaan dat de enig aandeelhouder-directeur als eisende partij diende te stellen welke specifieke zorgvuldigheidsnorm jegens hem in privé in acht had moeten worden genomen, en dat hij niet kon volstaan met het stellen van wanprestatie of onzorgvuldig handelen jegens het concern.

[Tekst] Arnoldus Franciscus Poot, te Nuenen, eiser tot cassatie, adv. mr. R.V. Kist, tegen

De rechtspersoon krachtens art. L 1 lid 1 van de Algemene Burgerlijke Pensioenwet het Algemeen Burgerlijk Pensioenfonds, te Heerlen, verweerder in cassatie, adv. mr. R.S. Meijer.

Hof:

(...)

6.2. Aansprakelijkheid van het ABP jegens Poot privé?

6.2.1. Het hof stelt voorop - en stelt voor zover nodig nader vast - dat de samenwerking heeft bestaan tussen het ABP en het Poot-concern en niet tussen het ABP en Poot in privé. Onder het Poot-concern verstaat het hof een of meer direct of indirect door Poot beheerste vennootschappen. Wat deze vennootschappen betreft verwijst het hof naar het rapport van 15 juni 1984 van L.A.B.M. Schelbergen, uitgebracht aan de rechter-commissaris belast met de behandeling van strafzaken in het arrondissement Maastricht, welk rapport in het geding is gebracht en waarin Schelbergen (op blz. 4-6) een - door partijen niet betwist - overzicht geeft van de diverse vennootschappen van waaruit en waarmee Poot zijn litigieuze activiteiten ontplooide. Ook uit de correspondentie tussen het ABP en "Poot" blijkt dat Poot steeds vanuit en via deze

vennootschappen met het ABP heeft gehandeld.

In eerste aanleg stelde Poot zich op het standpunt dat het ABP in de eerste plaats met hem, Poot privé, in een contractuele relatie stond. Daarnaast zou het ABP ook gehandeld hebben in strijd met zijn contractuele verplichtingen met de verschillende tot het Poot-concern behorende vennootschappen. Het ABP daarentegen stelde zich op het standpunt dat er alleen sprake was van een samenwerkingsverband met het Poot-concern en niet met Poot in privé. De rechtbank memoreert dit geschilpunt tussen partijen in rechtsoverweging 22, eerste alinea, van het vonnis waarvan beroep, doch is met haar oordeel (in rechtsoverweging 23) dat tussen Poot en het ABP een samenwerkingsverband bestond naar het oordeel van het hof ontoelaatbaar onduidelijk, omdat de rechtbank blijkens de eerste rechtsoverweging onder "Poot" verstaat "partij Poot en/of een of meer geheel of ten dele door hem beheerste vennootschappen". In hoger beroep heeft Poot zijn eerste vordering uit eerste aanleg, te weten dat de rechtbank voor recht zal verklaren dat het ABP jegens Poot in privé wanprestatie dan wel een onrechtmatige daad heeft gepleegd, aan welke vordering een primair karakter was gegeven, niet gehandhaafd. Het hof leidt daaruit af dat ook Poot thans in hoger beroep zich op het standpunt stelt dat het samenwerkingsverband bestond tussen het ABP en het Poot-concern, zodat dit thans tussen partijen in confesso is.

6.2.2. Poot vordert in de eerste plaats dat het hof voor recht zal verklaren dat het ABP jegens het Poot-concern wanprestatie dan wel een onrechtmatige daad heeft gepleegd en in de tweede plaats dat bedoelde wanprestatie dan wel onrechtmatige daad tevens een onrechtmatige daad oplevert jegens Poot in privé. De rechtbank is niet toegekomen aan een beoordeling van de grondslag van deze tweede vordering, hetgeen mede haar oorzaak vindt in het feit dat beide voornoemde vorderingen in eerste aanleg een subsidiair karakter hadden. In hoger beroep - nu de primaire vordering uit eerste aanleg niet langer is gehandhaafd - ligt dit anders. Naar het oordeel van het hof brengt immers een eventueel oordeel dat - ook al zou het ABP jegens het Poot-concern wanprestatie dan wel een onrechtmatige daad hebben gepleegd - bedoelde wanprestatie dan wel onrechtmatige daad niet tevens een onrechtmatige daad oplevert jegens Poot in privé, mee dat de vorderingen van Poot aanstonds voor afwijzing gereed liggen en het hof niet behoeft te gaan op alle door Poot gestelde feiten en omstandigheden die volgens hem wanprestatie dan wel een onrechtmatige daad van het ABP jegens het Poot-concern zouden opleveren. Anders gezegd, komt aan de beoordeling van de tweede vordering als van verderstrekkende betekenis dan de eerste vordering een prealabel karakter toe.

6.2.3. Poot verwijt het ABP wanprestatie gepleegd te hebben en onrechtmatig gehandeld te hebben jegens het Poot-concern en wel 1) door het twijfelachtig maken dan wel het staken van de afname van projecten, 2) door het vasthouden van depotgelden en 3) door het achterhouden van het CBR-besluit van 7 december 1979. Hierdoor werd - aldus Poot - het faillissement van zijn concern veroorzaakt. De verweten gedragingen hebben dus betrekking op gedragingen van het ABP jegens het Poot-concern. Volgens Poot leveren die gedragingen tevens een onrechtmatige daad jegens hem persoonlijk op, omdat voorzienbaar was dat daardoor zijn aandelen waardeloos werden.

In het bijzonder voert Poot aan dat het ABP wist
- dat Poot in privé enig directeur/aandeelhouder was van het Poot-concern,
- dat het Poot-concern niet kapitaalkrachtig was en financieel afhankelijk van het ABP,
- dat de verweten gedragingen van het ABP onherroepelijk zouden leiden tot een faillissement van het concern en daarmee tot het waardeloos worden van de aandelen van Poot in privé.

6.2.4. Afgezien van het feit dat hierna ten aanzien van de Albaca-transacties wordt overwogen dat het Poot-concern geen aanspraken toekomen uit hoofde van de verweten wanprestatie(s) en onrechtmatige daad, is het hof van oordeel dat het enkele - overigens betwiste - feit dat het ABP wist of behoorde te weten dan wel kon voorzien dat de aandelen van Poot waardeloos zouden worden, onvoldoende is om het handelen van het ABP jegens het Poot-concern tevens te bestempelen tot een onrechtmatige daad jegens de enig aandeelhouder van het concern. Voor dit laatste is nodig dat het ABP zich bij zijn handelen niet alleen zou moeten laten leiden door zijn rechtsplicht(en) dan wel zorgplicht jegens het Poot-concern, maar daarenboven ook nog door zorgplicht ten opzichte van bij het concern betrokken personen, zoals bijvoorbeeld de enig aandeelhouder. Door Poot is niet gesteld welke (extra) zorgplicht het ABP - behalve de jegens het concern in acht te nemen zorgplicht - in dit geval nog jegens hem in persoon als enig aandeelhouder zou hebben moeten in acht nemen. Poot heeft volstaan met verwijten dat het

ABP in zijn rechtsplichten en zorgplicht ten aanzien van het concern is tekortgeschoten. Daardoor heeft Poot niet voldaan aan zijn stelplicht waarom de aan het ABP verweten gedragingen tevens een onrechtmatige daad jegens hem in privé opleveren. De wel door Poot gestelde omstandigheden kunnen niet leiden tot het oordeel dat het ABP jegens hem persoonlijk aansprakelijk is, terwijl de door Poot gestelde schade - materieel - volledig samenvalt met de schade die volgens hem de betrokken vennootschappen zouden hebben geleden.

De conclusie moet zijn dat Poot in privé geen rechtsvordering tegen het ABP toekomt.

6.3. Albaca-transacties aanspraakvervallend?

6.3.1. In de periode vanaf 10 september 1980 zijn tussen het ABP, het Poot-concern en de NMB als huisbankier van het Poot-concern diverse gesprekken gevoerd. Tijdens deze gesprekken heeft het ABP zich op het standpunt gesteld dat het Poot-concern in feite failliet was. Bij pleidooi in hoger beroep heeft Poot dit standpunt als juist erkend. Tijdens deze gesprekken was het voor Poot duidelijk dat het ABP de door het Poot-concern bij brief van 17 juli 1980 aangeboden zeven nieuwe projecten niet zou afnemen. Tevens werd toen duidelijk dat de NMB niet langer bereid was het Poot-concern te financieren. In deze situatie - Poot spreekt van een "sterfhuisfase" - is door genoemde betrokkenen gezocht naar een modus om zoveel mogelijk ongeschonden uit de ontstane situatie te komen. Uiteindelijk heeft dit overleg - op voorstel van de NMB - geleid tot de zogenoemde Albaca-transacties van 21 november 1980.

6.3.2. De belangrijkste elementen met betrekking tot deze Albaca-transacties van 21 november 1980 zijn de volgende.

a. De NMB was op 12 november 1980 enig aandeelhouder van Beleggingsmaatschappij Albaca BV te Amsterdam. Het geplaatste aandelenkapitaal in Albaca BV bestond toen uit 250 aandelen van elk ƒ 100 nominaal. Op 12 november 1980 bereikten de NMB en het ABP overeenstemming met betrekking tot de overdracht van 238 aandelen in Albaca BV van de NMB aan het ABP. Deze aandelenoverdracht is op 20 november 1980 geëffectueerd.

b. Tot 12 november 1980 was de NMB de enige directeur van Albaca BV. Op 12 november 1980 is een buitengewone algemene vergadering van aandeelhouders van Albaca BV gehouden te Amsterdam. Tijdens deze vergadering van aandeelhouders is met algemene stemmen de NMB ontslagen als directeur van Albaca BV en is het ABP als directeur van deze vennootschap benoemd. Na deze benoeming heeft het ABP besloten het kantoor van Albaca BV te vestigen in Heerlen.

c. Op 21 november 1980 heeft Poot, handelende als directeur van Sport en Spel Aalsmeer BV, aan Albaca BV verkocht en overgedragen het recht van erfpacht van een perceel grond en de daarop gestichte opstallen, staande en gelegen te Aalsmeer, in het Sportpark Hornmeer. Op dezelfde datum volgden tussen dezelfde partijen gelijke transacties betreffende Sport en Spel Bergen op Zoom BV, Sport en Spel Dordrecht BV en Sport en Spel Etten-Leur BV.

d. Aan Albaca BV zijn overgedragen de inventaris en de voorraden van de sporthallen te Aalsmeer, Bergen op Zoom, Dordrecht, Etten-Leur, Deurne en Waalwijk. De sporthallen te Deurne en Waalwijk zijn door het ABP aan Albaca BV verhuurd.

e. Albaca BV heeft het saldo (per 10 november 1980) van de lopende financiële verplichtingen van de vennootschappen betreffende de zes genoemde sporthallen overgenomen.

f. Na verrekening van de vorderingen van het ABP op de zes genoemde vennootschappen met hetgeen Albaca BV uit hoofde van de overdrachten aan deze vennootschappen verschuldigd werd, is per saldo door het ABP betaald een bedrag van ƒ 2 880 028,04, van welk bedrag een bedrag van ƒ 2 303 319,59 is overgemaakt naar de door Poot opgegeven rekening van Systar BV bij de NMB te Eindhoven. Het verschil tussen beide genoemde bedragen is voldaan aan de fiscus en het kadaster.

6.3.3. Het hof zal thans eerst grief X in het incidenteel appel behandelen, omdat deze grief betrekking heeft op het (eerste) prealabele verweer van het ABP.

6.3.4. Dit verweer houdt in dat de Albaca-transacties van 21 november 1980 de uitvoering waren van een door partijen in de periode van 10 september tot 21 november 1980 getroffen regeling welke een finaal en dechargerend karakter had. Hoewel dit laatste nergens met zoveel woorden tot uitdrukking is gebracht, volgt dit - aldus het ABP - uit de omstandigheden van het geval, te weten:

a) partijen alsmede de NMB als bank van het Poot-concern hebben, toen op 10 september 1980 bleek van de financiële problemen van het Poot-concern, in goed overleg en met bespreking van

alles wat door wie dan ook noodzakelijk gevonden werd, gezocht naar een gezamenlijke oplossing en hebben die ook bereikt;

b) het Poot-concern heeft in die periode in het geheel niet aangedrongen op afname door het ABP van de zeven op 17 juli 1980 aangeboden projecten, ondanks het feit dat volgens Poot het ABP de ondergang van zijn concern had kunnen redden door die projecten af te nemen, terwijl het Poot-concern het ABP toen evenmin in dit opzicht aansprakelijk heeft gesteld;

c) het ABP heeft welbewust geen gebruik gemaakt van zijn rechten als eerste hypotheekhouder op de hallen in Aalsmeer, Bergen op Zoom, Dordrecht en Etten-Leur, doch heeft die hallen ver boven de destijds geldende execuite-waarde overgenomen;

d) het ABP heeft welbewust afgezien van de contractuele boetes bij wanbetaling.

Onder die omstandigheden - zo vervolgt het ABP - had het op de weg van het Poot-concern gelegen om bij de afwikkeling een voorbehoud te maken wegens gepretendeerde aansprakelijkheid van het ABP. Door dit niet te doen wordt het finale en dechargerende karakter van de regeling onderstreept, althans heeft het Poot-concern het recht verwerkt om het ABP alsnog aan te spreken.

6.3.5. De rechtbank heeft dit verweer verworpen, oordelende dat de door het ABP aangevoerde feiten en omstandigheden niet de gevolgtrekking rechtvaardigen dat het ABP mocht begrijpen dat partij Poot van elke verdere aanspraak, ook van de thans in dit geding geldende gemaakte aanspraak afstand deed.

6.3.6. In de toelichting op de grief wordt in de eerste plaats terecht aangevoerd dat deze beslissing van de rechtbank niet, althans niet voldoende, is gemotiveerd. Immers, de overweging van de rechtbank maakt niet duidelijk waarom de door het ABP aangevoerde feiten en omstandigheden niet doeltreffend zijn.

6.3.7. Anders dan de rechtbank acht het hof dit prealabele verweer van het ABP wèl doeltreffend. In de periode vanaf 10 september 1980 hebben partijen intensief overleg gevoerd en uiteindelijk een regeling getroffen die op 21 november 1980 in de vorm van de Albaca-transacties is afgewikkeld. Uitgangspunt daarbij is geweest een oplossing te zoeken in verband met de financiële problemen van het Poot-concern. Die oplossing is - met volledige en vrije instemming van Poot, daarbij optredend namens het Poot-concern - niet gevonden in de afname door het ABP van (een deel van) de bij brief van 17 juli 1980 aangeboden projecten en evenmin in een vrijgave door het ABP van de vastgehouden depotgelden en ook niet in een vergoeding van door het Poot-concern vergeefs aangewende projectontwikkelingskosten. Het hof acht dit van doorslaggevend belang omdat het hier gaat om punten die alle, afzonderlijk dan wel gezamenlijk, volgens de stellingen van Poot in de onderhavige procedure het faillissement van zijn concern zouden hebben voorkomen. Die oplossing is - zonder enig voorbehoud van de zijde van Poot dan wel zijn concern - wèl gevonden in de vorm van afstoting van de zes reeds gerealiseerde projecten aan Beleggingsmaatschappij Albaca BV, waarin het ABP de (overgrote) meerderheid van de aandelen heeft en van welke vennootschap het ABP directeur is. Na verrekening van alle schulden ter zake van hypotheekrente, erfpachtscanon en huur, waarbij het ABP heeft afgezien van eventuele contractuele boetes, heeft het ABP aan het Poot-concern voor deze transacties een bedrag van ƒ 2 303 319,59 betaald, welk bedrag gebaseerd is op de stichtingskosten van de hallen en dus niet gebaseerd is op de (veel lagere) executiewaarde daarvan. Niet betwist is, en derhalve staat tussen partijen vast, dat de regeling inhield dat de samenwerkingsrelatie tussen het Poot-concern en het ABP, waarbij eerstgenoemde projecten ontwikkelde welke, na acceptatie, door laatstgenoemde werden gefinancierd, werd beëindigd.

Voornoemde feiten en omstandigheden brengen naar het oordeel van het hof mee dat het ABP de Albaca-transacties redelijkerwijs mocht opvatten als een tot het ABP gerichte verklaring van het Poot-concern welke ertoe strekte dat het Poot-concern afzag van alle aanspraken uit de bestaand hebbende samenwerkingsrelatie. Immers, de tussen partijen getroffen regeling had de strekking de bestaande rechtsverhouding tussen partijen op te heffen. Daarbij heeft een financiële afwikkeling plaatsgevonden, in het kader waarvan beide partijen, teneinde een oplossing voor de financiële problemen van het Poot-concern te bereiken, (financiële) aanspraken hebben prijsgegeven. Zo heeft het ABP geen gebruik gemaakt van zijn rechten als eerste hypotheekhouder en geen contractuele boetes geclaimd, terwijl het Poot-concern geen aanspraken op tafel heeft gelegd met betrekking tot de niet-afname van aangeboden projecten, het vasthouden van depotgelden en het niet vergoeden van (vergeefs) gemaakte

projectontwikkelingskosten, hoewel dit vanuit de positie van het Poot-concern juist zeer voor de hand zou hebben gelegen.

Van belang is voorts dat het Poot-concern ook na de Albaca-transacties niet daartegen heeft geprotesteerd of (tijdig) de nietigheid ervan heeft ingeroepen wegens een wilsgebrek, zoals bijvoorbeeld het verkeren in een dwangpositie waarvan het ABP op ongeoorloofde wijze gebruik zou hebben gemaakt.

6.3.8. Voor zover Poot aanvoert (pleitnota in hoger beroep pagina 10) dat, wanneer het hof het ABP onverhoopt niet aansprakelijk acht wegens wanprestatie (het twijfelachtig maken dan wel het staken van de projectacceptatie en het vasthouden van depotgelden), het ABP onverminderd aansprakelijk blijft op grond van het evident onrechtmatig onthouden van het CBR-besluit van 7 december 1979, ten gevolge waarvan het Poot-concern voor tenminste 4 à 5 miljoen gulden aan vergeefse projectontwikkelingskosten heeft gemaakt, verwerpt het hof ook deze stelling.

In de eerste plaats is het hof van oordeel dat, zoals in het voorgaande al is overwogen, ook deze aanspraak is vervallen door de Albaca-transacties. Deze projectontwikkelingskosten zijn gemaakt ten behoeve van door het ABP af te nemen projecten. Als in de periode september-november 1980 partijen onderhandelen en een regeling treffen die meebrengt dat het ABP geen projecten meer zal afnemen, ook niet de reeds ontwikkelde en bij brief van 17 juli 1980 aangeboden projecten waarvoor dus al kosten zijn gemaakt, welke regeling de strekking heeft om de samenwerkingsrelatie te beëindigen en waarbij een financiële afwikkeling plaatsvindt in het kader waarvan het Poot-concern aanspraken ter zake van vergeefs gemaakte projectontwikkelingskosten niet naar voren brengt, mag het ABP redelijkerwijs begrijpen dat het Poot-concern dergelijke aanspraken prijsgeeft.

In de tweede plaats - dit overweegt het hof ten overvloede - is door het ABP gemotiveerd betwist dat het CBR-besluit zou inhouden dat het ABP voorlopig geen projecten meer zou afnemen. Volgens het ABP stond dit besluit er niet aan in de weg dat het ABP zou volstaan met jaarlijks niet meer dan vier projecten af te nemen. Dit laatste, te weten dat het ABP jaarlijks ten hoogste vier projecten zou afnemen, heeft het ABP begin 1980 aan Poot meegedeeld, zoals door Poot bij gelegenheid van het pleidooi in hoger beroep is erkend. Alsdan is er geen sprake van dat het ABP het CBR-besluit heeft achtergehouden en daardoor het Poot-concern op het verkeerde been heeft gezet.

6.3.9. De slotsom luidt dat aan de Albaca-transacties van 21 november 1980 een aanspraakvervallende werking dient te worden toegekend wat betreft de aanspraken van het Poot-concern jegens het ABP uit hoofde van wanprestatie(s) en onrechtmatige daad. Nu het Poot-concern te dier zake geen aanspraken heeft, kan er ook geen sprake van zijn dat bedoelde gedragingen van het ABP een onrechtmatige daad jegens Poot in privé hebben opgeleverd.

De grief is derhalve terecht voorgedragen. Het slagen van voormeld verweer brengt eveneens mee dat de vorderingen van Poot moeten worden afgewezen.

(enz.)

Cassatiemiddel:

Schending van recht en/of verzuim van vormen, waarvan de inachtneming met nietigheid is bedreigd, doordat het Gerechtshof te Arnhem in het bestreden arrest van 29 juni 1993, waarvan de inhoud als hier herhaald en ingelast beschouwd moet worden, heeft overwogen en geoordeeld als daarin is weergegeven, zulks ten onrechte om de navolgende redenen:

I 1 Wanprestatie of onrechtmatig handelen van het ABP jegens het Poot-concern, waarvan Poot enig aandeelhouder/direkteur was, waardoor het faillissement van dat concern werd veroorzaakt en waardoor de aandelen van Poot in dat concern waardeloos werden, kan een onrechtmatige daad jegens Poot opleveren ook al bestaat er voor het ABP geen bijzondere rechts- of zorgplicht ten opzichte van de enig aandeelhouder. Het waardeloos maken van de aandelen van Poot is immers een inbreuk op het subjektieve recht van Poot, althans kan dat zijn, hetgeen zonder meer een onrechtmatige daad oplevert.

De enig aandeelhouder dient, althans kan, beschouwd te worden als een postkonkurrente schuldeiser van en/of medegerechtigde in en/of belanghebbende bij de vennootschap of het concern, zodat ook in zoverre diens rechten worden aangetast door die wanprestatie of onrechtmatig handelen van het ABP.

Althans rust op Poot niet de verplichting om uiteen te zetten waarom de aan het ABP verweten gedragingen jegens hem in privé, te weten enig aandeelhouder, ook een onrechtmatige daad

opleveren, aangezien een wettelijke norm in beginsel strekt ter bescherming van allen, die als gevolg van overtreding ervan schade kunnen lijden, en wel ter bescherming tegen alle schade die aan het ABP als een gevolg van de overtreding kan worden toegerekend, zodat het op de weg van het ABP ligt om te stellen en zonodig te bewijzen, dat de overtreden norm niet tevens strekt tot bescherming van de enig aandeelhouder, wiens aandelen door die verweten gedragingen waardeloos geworden zijn.

2 Althans is zonder nadere motivering het oordeel van het Hof dat Poot niet aan zijn stelplicht heeft voldaan en dat de wel gestelde en/of ten processe gebleken omstandigheden niet kunnen leiden tot het oordeel dat het ABP jegens Poot persoonlijk wel aansprakelijk is, niet genoegzaam naar de eisen van de wet met redenen omkleed, temeer waar wel gesteld is - en ook wel vast staat - dat de aandelen van Poot in het concern waardeloos geworden zijn als gevolg van die gedragingen van ABP jegens het concern en het waardeloos geworden zijn van de aandelen gezien moet, althans kan worden, als een vorm van inbreuk maken op de de al dan niet subjektieve rechten van Poot.

II 1 De door het Hof in overweging 6.3.4 vermelde feiten en omstandigheden, te weten kort weergegeven:

a. er is gezocht naar een gezamenlijke oplossing door alle betrokkenen en gevonden;

b. het Poot-concern heeft niet geprotesteerd en op nakoming door ABP aangedrongen en het ABP ook niet aansprakelijk gesteld;

c. het ABP heeft rechten als hypotheekhouder niet uitgeoefend en de hallen voor meer dan de executiewaarde overgenomen;

d. het ABP heeft afgezien van kontraktuele boetes,

zijn onvoldoende gronden voor het aannemen van een overeenkomst met de strekking om de bestaande samenwerking en/of rechtsverhouding op te heffen, welke tevens de strekking had, dat het Poot-concern afzag van alle aanspraken uit die bestaand hebbende samenwerkingsrelatie.

2 Indien het Hof bedoeld mocht hebben, dat er sprake is van afstand van rechten, zijnde een rechtshandeling, dan heeft het Hof miskend, dat daarvoor vereist zijn handelingen en/of verklaringen zijdens het Poot-concern, welke redelijkerwijs mochten worden opgevat als een tot het ABP gerichte verklaring, dat het Poot-concern zijn rechten uit de bestaand hebbende samenwerkingsrelatie prijs gaf. Van enige verklaring is geen sprake, zodat de enige handeling kan zijn, dat aan de overdracht van de hallen met betaling aan NMB is meegewerkt. Handelingen van het ABP kunnen bezwaarlijk tot een verklaring van het Poot-concern leiden. Het oordeel van het Hof is ook in zoverre niet naar de eisen van de wet met redenen omkleed, immers maakt het arrest niet duidelijk welke andere handelingen en/of verklaringen van het Poot-concern voor het ABP voldoende redenen waren om in redelijkheid te kunnen en mogen menen, dat alle aanspraken werden prijsgegeven.

En indien het Hof bedoeld mocht hebben, dat het Poot-concern het recht om ABP aan te spreken verwerkt mocht hebben dan heeft het Hof miskend, dat daarvan slechts sprake kan zijn indien het aanspraak maken op schadevergoeding naar maatstaven van redelijkheid en billijkheid onaanvaardbaar is gezien de daarmede onverenigbare eerdere gedragingen.

3 Althans is het oordeel van het Hof, dat de voornoemde feiten en omstandigheden redelijkerwijs door het ABP opgevat mochten worden als een tot het ABP gerichte verklaring van het Poot-concern welke er toe strekte, dat het afzag van alle aanspraken uit de bestaand hebbende rechtsverhouding, niet zonder meer begrijpelijk waar Poot had gesteld, dat niet met volledige en vrije toestemming tot het aangaan van de Albaca-transakties is overgegaan, maar juist daarentegen dat hij en het concern in een door het ABP in het leven geroepen dwang- of noodsituatie verkeerden, in welk geval het ABP de bedoelde feiten en omstandigheden juist niet redelijkerwijs mocht opvatten als een verklaring dat het Poot-concern afzag van alle aanspraken, uit de bestaand hebbende rechtsverhouding. En waar het Hof niet heeft onderzocht of Poot en het concern in een dwang- of noodsituatie verkeerden als gevolg van aan het ABP toe te rekenen handelingen en/of nalatigheden, in welk geval het ABP de feiten en omstandigheden niet redelijkerwijs mochten opvatten als een verklaring van afstand van rechten, althans bestaat die mogelijkheid, heeft het Hof zijn oordeel niet - voldoende - naar de eisen van de wet gemotiveerd. Althans is niet zonder meer begrijpelijk, dat het ABP de feiten en omstandigheden redelijkerwijs mocht opvatten als een verklaring van afstand van rechten wanneer zijn eigen gedragingen en/of

nalatigheden veroorzaakt hebben, dat Poot en/of het concern in een dwang- of noodsituatie verkeerden, zodat het Hof zijn beslissing niet naar de eisen van de wet gemotiveerd heeft.

4 Voor wat betreft de door Poot gestelde dwang- of noodsituatie wordt hier thans verwezen naar:
- repliek blz. 53 t/m 59
- akte d.d. 7 maart 1990 blz. 10 t/m 12
- pleitnota eerste instantie blz. 18 t/m 26
- memorie van grieven Hoofdstuk VIII
- pleitnota in appèl Hoofdstuk I.

Bij schriftelijke toelichting zal dit voorzover noodzakelijk nader worden toegelicht.

5 Het Poot-concern is kort na de Albaca-transakties failliet verklaard en zoals is gesteld heeft de kurator wel geprotesteerd. Verwezen wordt naar de konklusie van antwoord in konventie bladzijden 25 en 26 en naar de daar overgelegde brief d.d. 5 mei 1982 (produktie 29). Het ABP had ten processe niet het verweer gevoerd, dat de kurator niet geprotesteerd had, zodat in zoverre sprake is van verboden aanvulling van feitelijke weren. Het Poot-concern was dan ook niet in staat om terzake enig aktie tegen het ABP te ondernemen. Het oordeel van het Hof, dat voorts van belang is dat het Poot-concern niet tegen de transakties heeft geprotesteerd of daarvan de nietigheid heeft ingeroepen is derhalve rechtens onjuist en niet zonder nadere motivering te begrijpen en mitsdien niet naar de eisen van de wet gemotiveerd.

6 De gegrondheid van deze klachten heeft tot gevolg, dat het oordeel van het Hof in overweging 6.3.8 ook niet in stand kan blijven. Het oordeel van het Hof, dat en waarom het ABP het CBR-besluit niet heeft achtergehouden en het Poot-concern niet op het verkeerde been heeft gezet is een overweging ten overvloede en draagt de beslissing bedoeld in die overweging derhalve niet.

Hoge Raad:

1. Het geding in feitelijke instanties

Eiser tot cassatie - verder te noemen: Poot - heeft bij exploit van 18 februari 1988 verweerder in cassatie - verder te noemen: het ABP - gedagvaard voor de Rechtbank te Zwolle en gevorderd hetgeen hierna in 3.2 is omschreven.

Tegen deze vorderingen heeft het ABP verweer gevoerd, waarbij het ABP vorderingen in reconventie heeft ingesteld.

Bij vonnis van 19 december 1990 heeft de Rechtbank de vorderingen in conventie en in reconventie afgewezen.

Tegen dit vonnis heeft Poot hoger beroep ingesteld bij het Gerechtshof te Arnhem, waarna het ABP incidenteel hoger beroep heeft ingesteld.

Bij arrest van 29 juni 1993 heeft het Hof in het principale en incidentele hoger beroep het vonnis van de Rechtbank bekrachtigd.

(...)

3. Beoordeling van het middel

3.1 In cassatie kan van het volgende worden uitgegaan.

(i) Tussen het Poot-concern en het ABP bestond in de jaren 1978-1980 een samenwerkingsverband met betrekking tot het ontwikkelen en exploiteren van tennishallen. Het ABP kocht door het Poot-concern ontwikkelde tennishallen aan en verhuurde deze vervolgens aan tot het Poot-concern behorende vennootschappen. Het Poot-concern werkte in dit verband ook samen met Sportfondsen Nederland NV.

(ii) Medio 1979 heeft laatstgenoemde vennootschap zich uit de samenwerking met het Poot-concern teruggetrokken. Naar aanleiding hiervan is de wijze van samenwerking tussen het Poot-concern en het ABP op voorstel van het ABP gewijzigd.

(iii) Op 7 december 1979 ging de Centrale Beleggingsraad van het ABP akkoord met de gewijzigde opzet van de transacties met betrekking tot vier tennishallen.

(iv) De ter zake van twee projecten hypothecair aan het Poot-concern geleende gelden werden bij het ABP gedeponeerd ten einde te worden opgenomen ten behoeve van de bouw van de opstallen. De hypotheeksom ter zake van een ander project werd onder de notaris gedeponeerd, eveneens om ten behoeve van de opstallen te worden opgenomen.

(v) Op 17 juli 1980 werden door het Poot-concern zeven nieuwe projecten aangeboden aan het ABP, dat op 6 augustus mededeelde dat het in verband met een interne beleidsheroriëntering eerst ultimo augustus nader over die aanbiedingen zou kunnen berichten. Op 28 augustus 1980 schreef het ABP dat het na de heroriëntatie nog geen beslissing kon nemen en meer informatie

wilde hebben.

(vi) Tijdens de daarop volgende gesprekken op en na 10 september 1980 - waarbij de NMB als huisbankier van het Poot-concern betrokken is geweest - heeft het ABP zich op het standpunt gesteld dat het Poot-concern in feite failliet was. Het ABP heeft de bij brief van 17 juli 1980 aangeboden projecten niet afgenomen.

(vii) Vervolgens hebben het Poot-concern en het ABP onderhandeld over de afwikkeling. Ook hierbij is de NMB betrokken geweest. Deze onderhandelingen hebben geleid tot een volledige overname door de door het ABP voor dit doel verworven Beleggingsmaatschappij Albaca BV van de activa van het Poot-concern ter zake van de door het ABP reeds verworven projecten. Deze overname is geëffectueerd op 21 november 1980.

(viii) De verschillende tot het Poot-concern behorende vennootschappen zijn in de periode van 19 december 1980 tot en met 21 april 1981 in staat van faillissement verklaard.

(ix) Poot verwijt aan het ABP de volgende gedragingen

(a) het vanaf 6 augustus 1980 twijfelachtig maken dan wel het staken van de afname van projecten;

(b) het vasthouden van onder de notaris en bij het ABP berustende depotgelden;

(c) het voor Poot achterhouden van een volgens Poot op 7 december 1979 door de Centrale Beleggingsraad van het ABP genomen besluit, inhoudende dat voorlopig door het ABP geen hallen meer van het Poot-concern zouden worden afgenomen en dat eerst zou worden bezien hoe de tot dan toe geëntameerde projecten zich zouden ontwikkelen, welk achterhouden volgens Poot tot gevolg had dat het Poot-concern tevergeefs verder ging met het ontwikkelen van projecten ten behoeve van het ABP en met het daarin investeren van miljoenen.

(x) Poot stelt zich op het standpunt dat het faillissement van zijn concern door de aan het ABP verweten gedragingen is veroorzaakt en dat hij in privé schade heeft geleden doordat hij enig aandeelhouder was en al zijn aandelen als gevolg van het faillissement waardeloos zijn geworden.

3.2 Poot heeft in eerste aanleg primair gevorderd dat voor recht zal worden verklaard dat het ABP jegens Poot in privé wanprestatie c.q. een onrechtmatige daad heeft gepleegd. Subsidiair vorderde hij dat voor recht zal worden verklaard (1) dat het ABP jegens het Poot-concern wanprestatie c.q. een onrechtmatige daad heeft gepleegd, en (2) dat die wanprestatie c.q. onrechtmatige daad tevens een onrechtmatige daad jegens Poot in privé oplevert. Aan deze vorderingen verbond hij de vordering tot vergoeding door het ABP van de door hem geleden schade, begroot op een bedrag van ƒ 24 000 000, althans een door de Rechtbank in goede justitie te bepalen bedrag.

De Rechtbank heeft de vorderingen afgewezen op grond van haar oordeel, kort samengevat, dat geen oorzakelijk verband bestond tussen een eventuele wanprestatie of onrechtmatige daad van het ABP en de déconfiture van het Poot-concern.

In hoger beroep heeft Poot, zoals het Hof in rov. 6.2.2 van zijn arrest heeft overwogen en in cassatie niet wordt bestreden, zijn primaire vordering niet gehandhaafd. Het Hof heeft de subsidiaire vordering afgewezen op twee verschillende gronden, die ieder de afwijzing zelfstandig dragen. Het middel kan dus slechts tot cassatie leiden indien het die beide gronden met succes bestrijdt.

3.3.1 Het Hof heeft vooreerst - in cassatie niet bestreden - overwogen (rov. 6.2.1) dat de samenwerking heeft bestaan tussen het ABP en het Poot-concern en niet tussen het ABP en Poot in privé, voorts dat het Hof onder het Poot-concern verstaat een of meer direct of indirect door Poot beheerste vennootschappen, en dat ook uit de correspondentie tussen het ABP en "Poot" blijkt dat Poot steeds vanuit en via deze vennootschappen met het ABP heeft gehandeld.

3.3.2 In rov. 6.2.2 heeft het Hof vervolgens vooropgesteld dat de vorderingen van Poot aanstonds voor afwijzing gereed liggen indien moet worden geoordeeld dat - ook al zou hij ABP jegens het Poot-concern wanprestatie dan wel een onrechtmatige daad hebben gepleegd - die wanprestatie of onrechtmatige daad niet tevens een onrechtmatige daad jegens Poot in privé oplevert.

3.3.3 In het kader van zijn beoordeling van de vraag of dat laatste het geval is, heeft het Hof nader vastgesteld (rov. 6.2.3) dat de door Poot aan het ABP verweten gedragingen betrekking hebben op gedragingen jegens het Poot-concern, welke volgens Poot tevens een onrechtmatige daad jegens hem persoonlijk opleveren omdat voorzienbaar was dat daardoor zijn aandelen waardeloos werden, en voorts dat Poot in het bijzonder aanvoert dat het ABP wist:

- dat Poot in privé enig aandeelhouder en directeur was van het Poot-concern;
- dat het Poot-concern niet kapitaalkrachtig was en financieel afhankelijk was van het ABP;
- dat de verweten gedragingen van het ABP onherroepelijk zouden leiden tot een faillissement van hen concern en daarmee tot het waardeloos worden van de aandelen van Poot in privé.
3.3.4 In rov. 6.2.4 is het Hof tot het oordeel gekomen dat aan Poot in privé geen rechtsvordering tegen het ABP toekomt. Het heeft dit oordeel gegrond op de volgende overwegingen:
(i) Het enkele - overigens betwiste - feit dat het ABP wist of behoorde te weten dan wel kon voorzien dat de aandelen van Poot waardeloos zouden worden, is onvoldoende om het handelen van het ABP jegens het Poot-concern tevens te bestempelen tot een onrechtmatige daad jegens de enig aandeelhouder van het concern.
(ii) Voor dit laatste is nodig dat het ABP zich bij zijn handelen niet alleen zou hebben moeten laten leiden door zijn rechtsplicht(en) dan wel zorgplicht jegens het Poot-concern, maar daarenboven ook nog door een zorgplicht ten opzichte van bij het concern betrokken personen, zoals bijvoorbeeld de enige aandeelhouder.
(iii) Poot heeft volstaan met het ABP te verwijten dat het in zijn rechtsplichten en zorgplicht ten aanzien van het concern is tekortgeschoten; daardoor heeft Poot niet voldaan aan zijn stelplicht ten aanzien van de door hem beweerde onrechtmatigheid van de aan het ABP verweten gedragingen jegens hem in privé.
(iv) De wel door Poot gestelde omstandigheden kunnen niet leiden tot het oordeel dat het ABP jegens hem persoonlijk aansprakelijk is, terwijl de door Poot gestelde schade - materieel - volledig samenvalt met de schade die volgens de betrokken vennootschappen zouden hebben geleden.
3.4.1 Onderdeel I van het middel is gericht tegen rov. 6.2.4 van 's Hofs arrest.
Onder 1 voert het onderdeel enige rechtsklachten aan. Bij de beoordeling daarvan dient het volgende tot uitgangspunt te worden genomen.
Naamloze vennootschappen en besloten vennootschappen met beperkte aansprakelijkheid zijn rechtspersonen die zelfstandig, als dragers van eigen rechten en verplichtingen, aan het rechtsverkeer deelnemen, ook indien zij, zoals hier het geval is, door één persoon (enig directeur en enig aandeelhouder) worden beheerst. Het vermogen van een vennootschap is afgescheiden van dat van zijn aandeelhouders. Indien aan een vennootschap door een derde vermogensschade wordt toegebracht door het niet behoorlijk nakomen van contractuele verplichtingen jegens de vennootschap of door gedragingen die tegenover de vennootschap onrechtmatig zijn, heeft alleen de vennootschap het recht uit dien hoofde van de derde vergoeding van deze aan haar toegebrachte schade te vorderen.
Die vermogensschade van de vennootschap zal, zolang zij niet is vergoed, een vermindering van de waarde van de aandelen in de vennootschap meebrengen. In beginsel kunnen de aandeelhouders echter op grond van dit (aanvankelijk) voor hen ontstane nadeel niet een eigen vordering tot schadevergoeding tegen de bedoelde derde geldend maken. Het ligt op de weg van de vennootschap om ter bescherming van de belangen van allen die bij het in stand houden van haar vermogen belang hebben, van de derde schadevergoeding te vorderen; slaagt zij daarin, dan moet ook de met die schade corresponderende waardevermindering van de aandelen geacht worden ongedaan te zijn gemaakt. Zou de vennootschap het vorderen van schadevergoeding nalaten, dan behoeven de belanghebbenden daarin niet te berusten; het Nederlandse rechtsstelsel biedt dan voldoende mogelijkheden om het bestuur van de vennootschap tot het alsnog instellen van de vordering te nopen.
Er is geen grond om op dit punt onderscheid te maken tussen het geval van een vennootschap met een aantal aandeelhouders en dat van een vennootschap waarvan de aandelen in één hand zijn. Ook is in dit verband niet van belang in hoeverre bij een vennootschap met slechts één aandeelhouder deze laatste tevens als (enig) directeur het doen en laten van de vennootschap beheerst.
3.4.2 Poot heeft gesteld dat de aan het ABP verweten gedragingen hebben geleid tot het faillissement van het concern en daarmee tot het waardeloos worden van zijn aandelen. Voorts heeft hij gesteld dat het ABP heeft geweten dat die gedragingen deze gevolgen zouden hebben. De vraag rijst derhalve of, indien deze stellingen juist zouden zijn, het onderhavige geval geheel op één lijn kan worden gesteld met het normale type van gevallen als hiervoor in 3.4.1 omschreven.

Het antwoord op deze vraag kan evenwel in het midden blijven, nu het Hof de bestreden beslissing heeft gebaseerd op zijn oordeel dat Poot geen feiten en omstandigheden heeft gesteld waaruit zou kunnen volgen dat het ABP niet alleen onrechtmatig tegenover het Poot-concern, maar ook in strijd met de jegens Poot in privé vereiste zorgvuldigheid heeft gehandeld, welk oordeel, zoals hierna zal blijken, tevergeefs wordt bestreden.

3.4.3 Anders dan in onderdeel I onder 1 wordt betoogd, kan het "waardeloos maken" van de aandelen door het gestelde veroorzaken van het faillissement, niet worden aangemerkt als een inbreuk op een subjectief recht van Poot, welke inbreuk onrechtmatig zou zijn ook zonder dat een zorgvuldigheidsplicht jegens Poot is geschonden. Een aandeel in een vennootschap is weliswaar een vermogensrecht, doch het toebrengen van schade aan de vennootschap kan, hoezeer het ook een inbreuk op de rechten van de vennootschap oplevert, mede in het licht van het in 3.4.1 overwogene niet tevens worden gezien als een inbreuk op dit - door de aandeelhouder jegens de vennootschap uit te oefenen - vermogensrecht.

Het onderdeel betoogt onder 1 voorts dat een wettelijke norm in beginsel strekt ter bescherming van allen die als gevolg van overtreding ervan schade kunnen lijden, zodat het op de weg van het ABP ligt om te stellen en zo nodig te bewijzen dat de te dezen overtreden norm niet strekt tot bescherming van de enige aandeelhouder. Dit betoog faalt reeds omdat het hier volgens de eigen stellingen van Poot niet gaat om overtreding van een specifiek wettelijk voorschrift, maar om de thans in art. 6:162 lid 2 neergelegde en ook vóór 1 januari 1992 geldende regel dat onrechtmatig is een doen of nalaten in strijd met hetgeen volgens ongeschreven recht in het maatschappelijk verkeer betaamt. Deze norm heeft betrekking op de zorgvuldigheid die in een bepaalde verhouding tegenover een of meer bepaalde anderen behoort te worden betracht en is dus naar haar aard niet een norm die strekt tot bescherming van de belangen van allen die schade lijden als gevolg van het feit dat de vereiste zorgvuldigheid tegenover die bepaalde anderen niet in acht is genomen. Het Hof is dan ook terecht ervan uitgegaan dat Poot als eisende partij diende te stellen welke specifieke zorgvuldigheidsnorm door het ABP jegens Poot in privé in acht had moeten worden genomen, en dat hij niet kon volstaan met het stellen van wanprestatie of onzorgvuldig handelen van het ABP jegens het concern.

3.4.4 Uit het vorenoverwogene volgt dat de in het onderdeel onder 1 aangevoerde rechtsklachten falen.

Ook de in het onderdeel onder 2 opgeworpen motiveringsklacht is tevergeefs voorgedragen. Het Hof heeft in rov. 6.2.4 van zijn arrest, gelezen in samenhang met het in rov. 6.2.3 overwogene, naar behoren gemotiveerd waarom het oordeelde dat het door Poot gestelde niet voldoende is om eruit te kunnen afleiden dat het ABP jegens Poot in privé aansprakelijk is.

3.5 Nu het in onderdeel I tevergeefs bestreden oordeel 's Hofs beslissing zelfstandig draagt, kan onderdeel II van het middel onbesproken blijven.

4. Beslissing

De Hoge Raad:

verwerpt het beroep;

veroordeelt Poot in de kosten van het geding in cassatie, tot op deze uitspraak aan de zijde van het ABP begroot op ƒ 7057,20 aan verschotten en ƒ 3000 voor salaris.

[Mening] Conclusie A-G mr. Hartkamp:

Feiten en procesverloop

1) Voor de vaststaande feiten verwijs ik naar de r.o. 4.2-4.8 van 's hofs in cassatie bestreden arrest. Tussen het concern van eiser tot cassatie, Poot, en de verweerder in cassatie, het ABP, bestond in de jaren 1978-1980 een samenwerkingsverband met betrekking tot het ontwikkelen en exploiteren van tennishallen. Poot heeft gesteld dat het ABP wanprestatie c.q. een onrechtmatige daad jegens het concern heeft gepleegd, daarmee het faillissement van het (geheel van het ABP afhankelijke) concern veroorzakend, en dat zulks tevens inhield een onrechtmatige daad jegens hem, Poot, in privé, daar het faillissement leidde tot het waardeloos worden van zijn aandelen en het ABP wist dat hij directeur/enig aandeelhouder was.

2) De door Poot aan het ABP verweten gedragingen komen kort gezegd op het volgende neer (vgl. ook r.o. 6.2.3 van het arrest van het hof, in cassatie niet bestreden en de inleidende dagvaarding, p. S-2):

1) het twijfelachtig maken dan wel het staken van de afname van projecten, te beginnen met de

brieven van 6 augustus 1980 en 28 augustus 1980 en voorts in de gesprekken op en na 10 september 1980;

2) het vasthouden van onder de notaris en bij het ABP berustende depotgelden (zie de inleidende dagvaarding p. III-3 t/m III-17);

3) het voor Poot achterhouden van een op 7 december 1979 door de Centrale Beleggingsraad (CBR) van het ABP genomen besluit, dat inhield dat voorlopig door het ABP geen hallen meer van Poot zouden worden afgenomen en dat eerst zou worden bezien hoe de zes tot dan toe geëntameerde projecten zich zouden ontwikkelen, waardoor Poot tevergeefs is verder gegaan met de ontwikkeling en de investering van miljoenen in projecten ten behoeve van het ABP.

3) Zoals gezegd leverden deze gedragingen volgens Poot wanprestatie c.q. een onrechtmatige daad op jegens het Poot-concern en tevens jegens Poot in privé. Poot stelde in privé schade te hebben geleden doordat hij enig-aandeelhouder was van het Poot-concern en doordat al zijn aandelen als gevolg van het door ABP veroorzaakte faillissement van het concern in één klap waardeloos waren geworden. De onrechtmatigheid jegens hem in privé berustte volgens Poot op de wanprestatie c.q. onrechtmatige daad jegens het Poot-concern in combinatie met de volgende omstandigheden (vgl. inl. dagv. p. VI-10):

- Het ABP wist dat Poot in privé enig directeur/aandeelhouder was van het Poot-concern;

- het ABP wist dat het Poot-concern niet kapitaalkrachtig was en financieel afhankelijk van het ABP;

- het ABP wist dat de verweten gedragingen van het ABP onherroepelijk zouden leiden tot een faillissement van het concern en daarmee tot het waardeloos worden van de aandelen van Poot in privé.

4) Het ABP heeft tegen de vorderingen van Poot een aantal (inhoudelijke en prealabele) verweren gevoerd. Voorts heeft het ABP een vordering in reconventie ingesteld, die voor het cassatieberoep echter niet meer relevant is.

Het inhoudelijke verweer van het ABP komt er op neer dat aan het ABP geen wanprestatie of onrechtmatig handelen verweten kan worden; Poot zelf heeft zijn concern te gronde gericht door onverantwoord veel verplichtingen aan te gaan terwijl het concern over een veel te klein eigen vermogen beschikte.

In cassatie zijn nog slechts van belang twee prealabele verweren van het ABP:

A) (zie antwoord nadere conclusie in conventie in eerste aanleg p. 20/21:) Nu Poot zijn vordering baseert op de schade die hij als aandeelhouder lijdt, is niet voldaan aan het Schutznormvereiste, aangezien de beweerdelijk door het ABP overtreden norm, te weten de verplichting tot nakoming van een overeenkomst, c.q. tot honorering van gewekte verwachtingen tot het aangaan van een overeenkomst, alleen geldt ter bescherming van de belangen van degene met wie de afspraak is gemaakt, c.q. bij wie de verwachtingen zijn gewekt - in casu het Poot-concern - en niet ter bescherming van derden zoals in casu Poot, die niet als crediteur, maar slechts als aandeelhouder bij de vennootschappen betrokken was.

B) (zie conclusie van antwoord in conventie tevens van eis in reconventie p. 23/24:) De transacties van 21 november 1980, waarbij Albaca BV de activa van het Poot-concern terzake van de zes reeds door het ABP afgenomen projecten overnam (zie r.o. 4.7 van 's hofs arrest), waren de uitvoering van een door partijen in de periode van 10 september tot 21 november 1980 getroffen regeling welke een finaal en déchargerend karakter had. Dat is nergens met zoveel woorden tot uitdrukking gebracht, maar volgt volgens het ABP uit de omstandigheden van het geval, te weten:

- dat partijen in die periode in goed overleg en met bespreking van alles wat door wie dan ook noodzakelijk gevonden werd, naar een gezamenlijke oplossing hebben gezocht en die ook bereikt hebben;

- dat Poot in die periode in het geheel niet heeft aangedrongen op afname door het ABP van de zeven op 17 juli 1980 aangeboden projecten;

- dat het ABP welbewust geen gebruik heeft gemaakt van zijn rechten als eerste hypotheekhouder op de hallen te Dordrecht, Bergen op Zoom, Etten-Leur en Aalsmeer, doch die hallen ver boven de destijds geldende executiewaarde heeft overgenomen;

- dat het ABP heeft afgezien van de contractuele boetes bij wanbetaling.

Onder deze omstandigheden moet aan de getroffen regeling, nu Poot niet een voorbehoud heeft gemaakt voor de thans door hem gepretendeerde aanspraken, een finaal en déchargerend

karakter worden toegekend, althans heeft partij Poot zijn recht die aanspraken te doen gelden verwerkt, zo stelde het ABP.

5) De rechtbank heeft de vorderingen van Poot afgewezen. De rechtbank oordeelde - kort gezegd - dat geen causaal verband bestond tussen een eventuele wanprestatie of onrechtmatig handelen van het ABP en de déconfiture van het Poot-concern. Weliswaar was de rechtbank van oordeel dat het inhouden van de depotgelden (in de stukken aangeduid als de "WIR-knevelarij") door het ABP wanprestatie opleverde althans onrechtmatig was, evenals het niet aan Poot mededelen van het CBR-besluit van december 1979, maar deze gedragingen van het ABP hebben volgens de rechtbank niet geleid tot de déconfiture van het Poot-concern. Op grond van de financiële cijfers van de verschillende tot het Poot-concern behorende vennootschappen concludeerde de rechtbank dat het faillissement van het concern reeds vóórdat de aan het ABP verweten gedragingen plaatsvonden onvermijdelijk was, omdat het concern een deplorabele financiële structuur vertoonde (de rechtbank spreekt o.a. (r.o. 28, tweede alinea) van een "ernstig scheefgegroeide situatie in die zin dat een gedeelte van de vaste activa en voorts aanloopverliezen met korte termijn-schulden zijn gefinancierd"). De rechtbank is van mening dat de NMB hoe dan ook zou zijn afgehaakt, of het ABP de zeven in juli 1980 aangeboden nieuwe projecten nu zou hebben afgenomen of niet. Onder die omstandigheid behoefde het ABP de zeven projecten niet af te nemen, aldus de rechtbank, zodat dit staken van de projectafname geen wanprestatie opleverde jegens het Poot-concern.

6) Het hof heeft het vonnis van de rechtbank, zij het op andere gronden, bekrachtigd. Het hof heeft de twee prealabele verweren van het ABP, vermeld onder 4, onderzocht en gegrond bevonden. De honorering van elk van beide verweren kan 's hofs afwijzing van de vorderingen van Poot zelfstandig dragen.

A. Onrechtmatige daad jegens Poot in privé? Het hof heeft overwogen dat het enkele feit dat het ABP wist of behoorde te weten dan wel kon voorzien dat de aandelen van Poot waardeloos zouden worden, onvoldoende is om het handelen van het ABP jegens het Poot-concern tevens te bestempelen als een onrechtmatige daad jegens de enig aandeelhouder van het concern. Het hof overweegt dat daarvoor nodig is dat het ABP zich bij zijn handelen zou moeten laten leiden door een zorgplicht ten opzichte van bij het concern betrokken personen, zoals bijvoorbeeld de enig aandeelhouder. Door Poot is niet gesteld welke (extra) zorgplicht het ABP - behalve de jegens het concern in acht te nemen zorgplicht - in dit geval nog jegens hem in persoon als enig aandeelhouder in acht zou hebben moeten nemen, aldus het hof.

B. Albaca-transacties: aanspraakvervallende werking? Het hof heeft overwogen dat het ABP de Albaca-transacties redelijkerwijs mocht opvatten als een tot het ABP gerichte verklaring van het Poot-concern die ertoe strekte dat het Poot-concern afzag van alle aanspraken uit de bestaan hebbende samenwerkingsrelatie. De tussen partijen getroffen regeling had immers de strekking de bestaande rechtsverhouding tussen partijen op te heffen, aldus het hof. Daarbij heeft een financiële afwikkeling plaatsgevonden, in het kader waarvan beide partijen, teneinde een oplossing voor de financiële problemen van het Poot-concern te bereiken, (financiële) aanspraken hebben prijsgegeven.

7) Het tijdig voorgestelde cassatiemiddel bevat twee, met Romeinse cijfers genummerde onderdelen. Onderdeel I, dat bestaat uit twee subonderdelen, is gericht tegen de hierboven sub A weergegeven grond; onderdeel II, bestaande uit zes subonderdelen, vecht de sub B vermelde grond aan. Partijen hebben de zaak schriftelijk toegelicht en van re- en dupliek gediend. Bij de beoordeling van het cassatieberoep moet veronderstellenderwijs ervan uitgegaan worden dat het ABP onrechtmatig heeft gehandeld en/of wanprestatie heeft gepleegd jegens het Poot-concern en dat deze onrechtmatige daad en/of wanprestatie heeft geleid tot het faillissement van het Poot-concern. Het hof heeft dit een en ander immers in het midden gelaten (zij het dat het hof de klacht met betrekking tot de hierboven, nr. 2 sub 3 genoemde gedraging van het ABP in r.o. 6.3.8 i.f. ongegrond heeft verklaard).

Bespreking van het cassatiemiddel

8) Onderdeel I valt r.o. 6.2.4 van het arrest van het hof aan, waarin het hof oordeelt dat aan Poot in privé geen rechtsvordering tegen het ABP toekomt.

In subonderdeel I.1 is een rechtsklacht opgenomen, inhoudende dat het hof heeft miskend dat wanprestatie of onrechtmatig handelen van het ABP jegens het Poot-concern, waarvan Poot enig aandeelhouder/directeur was, waardoor het faillissement van dat concern werd veroorzaakt en

waardoor de aandelen van Poot in dat concern waardeloos werden, een onrechtmatige daad jegens Poot kan opleveren ook al bestaat er voor het ABP geen bijzondere rechts- of zorgplicht ten opzichte van de enig aandeelhouder. Betoogd wordt dat het waardeloos maken van de aandelen van Poot een inbreuk op het subjectieve recht van Poot is, althans kan zijn. Volgens het subonderdeel rust op Poot niet de verplichting om uiteen te zetten waarom de aan het ABP verweten gedragingen jegens hem in privé, te weten enig aandeelhouder, ook een onrechtmatige daad opleveren, aangezien een wettelijke norm in beginsel strekt ter bescherming van allen, die als gevolg van overtreding ervan schade kunnen lijden. Het ligt dus op de weg van het ABP om te stellen en zonodig te bewijzen, dat de overtreden norm niet tevens strekt tot bescherming van de enig aandeelhouder, wiens aandelen door die verweten gedragingen waardeloos zijn geworden, aldus het subonderdeel.

In onderdeel I.1 wordt hieraan een motiveringsklacht toegevoegd, inhoudende dat 's hofs oordeel dat Poot onvoldoende heeft gesteld om te kunnen concluderen tot een onrechtmatige daad jegens hem in privé, onbegrijpelijk is.

9) Ik bespreek de klacht eerst tegen de achtergrond van het karakter van de rechtspersoon en van het systeem van het vennootschapsrecht.

Het hof heeft het enkele onrechtmatig handelen jegens het concern waarvan Poot enig directeur en enig aandeelhouder was, als gevolg waarvan hij in privé schade heeft geleden wegens het waardeloos worden van zijn aandelen, onvoldoende geacht om aan te nemen dat het ABP ook jegens Poot in privé onrechtmatig heeft gehandeld. Dit oordeel is naar mijn mening juist. Een besloten of naamloze vennootschap is een rechtspersoon (art. 2:3 BW), die als zelfstandig drager van rechten en plichten aan het rechtsverkeer deelneemt (art. 2:5 BW) en waarvan het vermogen is afgescheiden van de privé-vermogens van de aandeelhouders. Een aandeelhouder is niet persoonlijk aansprakelijk voor schulden van de vennootschap (art. 2:64 en 2:175 BW). Uit het systeem van het vennootschapsrecht vloeit voort dat de vennootschap niet slechts een bundeling van aandeelhoudersbelangen is (zie bijv. P. van Schilfgaarde, Van de BV en NV (1992), p. 26 e.v. en Mohr, De dubbelrol aandeelhouder-bestuurder, in: De dubbelrol in het vennootschapsrecht (1993), p. 81), maar dat zij een aparte, zelfstandige en in zekere mate van de aandeelhouders onafhankelijke rechtspersoon is (institutionele opvatting). Zie Van der Heijden/Van der Grinten, Handboek voor de naamloze en besloten vennootschap (1992), nrs. 48 en 52 en Cahen, De invloed van de belangenverbreding op het handelen van de aandeelhouder, in: Honderd jaar rechtsleven, NJV 1870-1970 (1970), p. 71 e.v. Vergelijk over de verschuiving van de contractuele naar de institutionele opvatting van de naamloze en besloten vennootschap Van Schilfgaarde, a.w. p. 19 en in Tot vermaak van Slagter (1988), p. 253 e.v. Weliswaar is Löwenstein, De naamloze vennootschap als raakpunt van contraire belangen, in: Honderd jaar rechtsleven, NJV 1870-1970 (1970), p. 85 e.v. van mening dat het belang van de vennootschap niets anders is dan het winstbelang van de aandeelhouders, maar hij verbindt daaraan niet de conclusie dat vennootschap en aandeelhouder(s) vereenzelvigd mogen worden.

De consequentie hiervan moet m.i. zijn dat een aandeelhouder in beginsel niet in privé kan ageren om zijn belang in de vennootschap te beschermen. De aandeelhouder geniet de lusten van het instituut van de vennootschap als rechtspersoon (beperkte aansprakelijkheid); dan moet hij ook de lasten daarvan dragen en de behartiging van de belangen van de vennootschap overlaten aan de vennootschap, of in geval van faillissement aan de curator. Vgl. Bloembergen, Schadevergoeding bij onrechtmatige daad (diss. 1965), p. 310: uit het karakter van de rechtspersoon vloeit voort dat de aandeelhouder niet kan ageren en dat de rechtspersoon wiens rechten of belangen worden aangetast, zelf behoort op te treden; laat de rechtspersoon dit na, dan zullen degenen die recht of belang bij zijn vermogen hebben, hem intern tot een optreden moeten trachten te bewegen. Evenzo voor het Belgische recht Dirix, Het begrip schade (1984), p. 100, die opmerkt dat de schade van de leden van een rechtspersoon, veroorzaakt doordat de rechtspersoon in zijn belangen wordt aangetast, enkel voortvloeit uit hun hoedanigheid van lid. Een andere opvatting zou, zeker in het geval van meer dan één aandeelhouder, bovendien leiden tot chaotische toestanden: individuele aandeelhouders zouden naar rato van hun aandelenbezit schadevergoeding kunnen vorderen, hetgeen tot vele naast elkaar lopende procedures op basis van hetzelfde feitencomplex zou leiden met alle complicaties van dien. Zo ook Bloembergen t.a.p. De enige rechtspraak waarin bij mijn weten de hier aan de orde zijnde rechtsvraag is beantwoord, wordt gevormd door drie oude uitspraken van lagere rechters: Rb. 's-Gravenhage 1 december

1927, NJ 1928, p. 208 e.v.; Rb. Utrecht 28 januari 1953, NJ 1954, 97 en Rb. Utrecht 17 maart 1954, NJ 1955, 89. In al deze uitspraken wordt de vordering van de aandeelhouder in privé afgewezen; in de uitspraken uit 1927 en 1953 op grond van het rechtspersoonlijke karakter van de vennootschap en in de uitspraak uit 1954 via de leer van de adequate veroorzaking: waardevermindering van de aandelen valt niet te beschouwen als een schade-element dat een voorzienbaar, adequaat gevolg is van de onrechtmatige daad jegens de n.v. Naar mijn mening ligt deze laatste constructie niet zeer voor de hand: wordt door een onrechtmatige daad aan een vennootschap schade toegebracht, dan is waardevermindering van de aandelen in die vennootschap juist een heel adequaat gevolg van de onrechtmatige daad.

Zie nog voor een ontkennende beantwoording van de vraag of wanprestatie tegenover een vennootschap een onrechtmatige daad oplevert jegens degene die als directeur-aandeelhouder-borg bij de vennootschap is betrokken Rb. Zutphen 9 maart 1989, NJ 1990, 207, waarin wordt overwogen dat de overtreden norm, te weten de verplichting tot nakoming van een gemaakte, rechtens bindende afspraak, in ons rechtsbestel als regel alleen geldt ter bescherming van de belangen van degene met wie de afspraak is gemaakt - in casu de vennootschap - en niet ter bescherming van derden, zoals degene die als directeur-aandeelhouder-borg bij de vennootschap is betrokken. Zie ook Hof Amsterdam 21 juni 1934, NJ 1935, p. 595: "dat toch in het algemeen geenszins op dengeen, die op zich nam aan een ander voorschotten te verstrekken, een langs gerechtelijken weg te handhaven plicht van betamelijkheid om aan die toezegging gevolg te geven, rust tegenover de personen, die als schuldeischer of aandeelhouder of ambtenaar van dien ander een rechtstreeksch belang er bij hebben, dat inderdaad het verstrekken van die voorschotten plaats vinde; (...)".

10) Ik besteed thans aandacht aan enkele meer specifiek op het leerstuk van de onrechtmatige daad betrekking hebbende aspecten.

a) Vertaalt men het hiervóór ten aanzien van het rechtspersonen- en vennootschapsrecht opgemerkte naar het onrechtmatige daads-recht, dan volgt daaruit dat elk onrechtmatig handelen van een derde jegens de vennootschap met als (voor die derde voorzienbaar) gevolg waardevermindering dan wel waardeloos worden van de aandelen in die vennootschap, zonder meer een onrechtmatige daad oplevert jegens de aandeelhouder(s). Men zou dit zowel kunnen baseren op de overweging dat hier niet voldaan is aan het relativiteitsvereiste (de geschonden norm strekt niet tot bescherming van het belang dat de aandeelhouder heeft bij een florerende vennootschap en dus niet tot bescherming tegen schade bestaande in waardevermindering van aandelen), als op de overweging dat niet maatschappelijk onzorgvuldig is gehandeld tegenover de aandeelhouder, dus niet is voldaan aan het vereiste van onrechtmatigheid. De laatste benadering heeft het hof blijkbaar gevolgd, gezien zijn overweging (r.o. 6.2.4, zie ook reeds hiervóór) dat door Poot niet is gesteld welke zorgplicht het ABP ten opzichte van Poot in persoon als enig-aandeelhouder in acht zou hebben moeten nemen. Het hof zoekt dus direct naar een zorgvuldigheidsplicht in de relatie ABP-Poot in privé en constateert vervolgens dat die ontbreekt, nu Poot geen feiten en omstandigheden heeft gesteld die tot het aannemen van zo'n plicht kunnen leiden. Zie over de vraag of de relativiteitsleer betekenis mist bij schending van een maatschappelijke zorgvuldigheidsnorm, omdat de relativiteit reeds in de norm ligt besloten Schut, diss. (1963), p. 136/137 en dezelfde schrijver in Onrechtmatige daad volgens BW en NBW (1990), p. 44 en Asser-Hartkamp III (1994), nr. 99.

b) Het schijnt mij toe dat het leerstuk van het causaal verband minder geschikt is om het bepleite resultaat: geen actie o.g.v. onrechtmatige daad voor de aandeelhouder in privé, te bereiken (vgl. de hierboven vermelde uitspraak van de rechtbank Utrecht van 17 maart 1954, NJ 1955, 89). Dat de toerekening naar redelijkheid de adequatieleer inmiddels heeft vervangen, maakt dit naar mijn mening niet anders. Bij de toerekening naar redelijkheid zal het van de omstandigheden van het geval (bijv. de soort norm die overtreden is, de aard van de aansprakelijkheid, de voorzienbaarheid van de schade) afhankelijk zijn of de waardevermindering van aandelen in causaal verband staat tot een onrechtmatige daad jegens de vennootschap. Mijns inziens behoort degene die onrechtmatig handelt tegenover een vennootschap echter in beginsel niet om die enkele reden aansprakelijk te zijn tegenover de aandeelhouder(s), ongeacht de aard van de overtreden norm en ongeacht de aard van de aansprakelijkheid. Stel een derde overtreedt een ongeschreven verkeers- of veiligheidsnorm waardoor brand ontstaat in de fabriek van een vennootschap zodat de vennootschap schade lijdt. De omstandigheid dat sprake is van

schending van een verkeers- of veiligheidsnorm brengt mee dat ruim dient te worden toegerekend. Gesteld dat sprake is van zware schuld bij de laedens, dan wijst ook die omstandigheid in de richting van aansprakelijkheid, ook voor gevolgen die verder van de daad verwijderd liggen. De schade die de vennootschap lijdt doordat haar fabrieksgebouw is afgebrand, is een typisch en voorzienbaar gevolg van de overtreding van de ongeschreven zorgvuldigheidsnorm, bijv. dat men in een fabriek geen brandende sigaret mag weggooien. De schade die aandeelhouders lijden als gevolg van een schade van de vennootschap, is m.i. eveneens een typisch en dus voorzienbaar gevolg van de daad. In dit voorbeeld zou het m.i. wat geforceerd aandoen om aansprakelijkheid af te wijzen omdat niet gezegd kan worden dat de schade van de aandeelhouder(s) naar redelijkheid niet als gevolg van de onrechtmatige daad aan de dader kan worden toegerekend. Alle relevante gezichtspunten wijzen immers in de richting van toerekening. Dat de laedens niet aansprakelijk behoort te zijn tegenover de aandeelhouder, zit hem er - ook gevoelsmatig - niet zozeer in dat de schade van de aandeelhouder niet een (voldoende rechtstreeks) gevolg is van zijn daad, maar dat de richting van de onrechtmatigheid een andere was, nl. onrechtmatig jegens de vennootschap, die eigenaresse is van het fabrieksgebouw en niet onrechtmatig jegens de aandeelhouders van de vennootschap. Men kan dus beter aannemen dat de geschonden zorgvuldigheidsnorm niet de strekking heeft aandeelhouders van de vennootschap die eigenaresse is van het pand te beschermen. Overigens kan waarschijnlijk in de meeste gevallen via beide leerstukken hetzelfde resultaat worden bereikt. Vgl. over de verhouding tussen beperking van aansprakelijkheid door toerekening naar redelijkheid en door toepassing van het relativiteitsvereiste G. Lankhorst, De relativiteit van de onrechtmatige daad, (diss. 1992), p. 145 e.v. en Asser-Hartkamp III (1994), nr. 108.

c) De stelling van Poot dat door het waardeloos maken van zijn aandelen inbreuk is gemaakt op zijn subjectieve recht, moet m.i. eveneens worden verworpen. Een aandeel in een vennootschap kan m.i. niet beschouwd worden als een recht in die zin van het onrechtmatige daads-criterium "inbreuk op een recht" (thans gecodificeerd in art. 6:162 BW). Zie voor de vraag welke rechten als "subjectieve rechten" in aanmerking komen Losbladige Onrechtmatige Daad I (Jansen), nr. 37 e.v. Hieruit blijkt dat het in beginsel moet gaan om een absoluut vermogensrecht of om een persoonlijkheidsrecht. Een aandeel is een relatief vermogensrecht, namelijk een recht dat kan worden uitgeoefend jegens de vennootschap. Vgl. Van der Heijden/Van der Grinten, Handboek nrs. 161, 173 en 201, Van Schilfgaarde, Van de BV en de NV (1992), p. 97 e.v. Zo zou de levering van een aandeel op naam, indien Boek 2 geen afwijkende bepalingen zou bevatten (art. 2:86, 86c en 196), worden beheerst door art. 3:94 BW, betreffende de levering van "tegen een of meer bepaalde personen uit te oefenen rechten". En ook al zou men dit anders zien omdat men meer de nadruk wenst te leggen op het karakter van het aandeel als vermogensbestanddeel van de aandeelhouder, dan zou toch het voormelde relatieve aspect van het recht zo belangrijk blijven dat het plegen van een daad waardoor iemands aandelen waardeloos worden, m.i. een geval is waarin de vraag of zich een inbreuk voordoet, uiteindelijk wordt bepaald door de vraag of sprake is van schending van een zorgvuldigheidsnorm. Ook deze weg leidt dus tot het resultaat dat er slechts sprake kan zijn van een actie uit onrechtmatige daad van een aandeelhouder, indien er jegens hem onzorgvuldig is gehandeld; aan het criterium "inbreuk op een recht" komt in een geval als het onderhavige m.i. geen zelfstandige betekenis toe. Vgl. hierover Asser-Hartkamp III (1994), nr. 41 en nr. 54.

11) Thans enige opmerkingen over de schade die in casu gevorderd wordt.

Het hof heeft - in cassatie onbestreden - vastgesteld dat de door Poot gestelde schade materieel volledig samenvalt met de schade die volgens hem de betrokken vennootschappen zouden hebben geleden (r.o. 6.2.4, slot). Deze formulering roept de opmerking van Bloembergen in herinnering (a.w. p. 309) dat in de meeste gevallen de individuele aandeelhouder niet zal kunnen ageren omdat hij in privé geen schade heeft geleden, aangezien het vermogen van de vennootschap niet is achteruit gegaan wanneer deze zelf een onrechtmatige daads-actie heeft. Zie ook Dirix, die t.a.p. opmerkt dat de schade van de leden van de rechtspersoon samenvalt met de schade door de rechtspersoon geleden, in die zin dat het herstel van de schade van de rechtspersoon ook meteen iedere schade van de leden doet ophouden.

Anders dan mr. Meijer namens het ABP betoogt in zijn schriftelijke toelichting (p. 12 e.v.), zou ik echter niet willen aannemen dat de vermelde overweging 's hofs oordeel reeds zelfstandig kan

dragen en dat daarom onderdeel I van het middel belang mist. Dat de schade van Poot materieel volledig samenvalt met de schade van de vennootschappen betekent m.i. niet noodzakelijkerwijs dat Poot in privé geen schade heeft geleden. Dit laatste heeft het hof dan ook niet vastgesteld. Aanvankelijk heeft de curator om hem moverende redenen (waarschijnlijk omdat de boedel slechts passiva bevatte; zie die feitenvermelding in de conclusie voorafgaande aan HR 5 juni 1992, NJ 1992, 601 en in het arrest zelf) afgezien van een procedure. In zo'n geval wordt de privé-schade van de aandeelhouder geenszins verminderd door het feit dat de boedel een vordering uit onrechtmatige daad heeft. Later heeft de curator kennelijk (zo blijkt uit de stellingen van het ABP in feitelijke instanties, niet weersproken door Poot) de vordering van de boedel gecedeerd aan Poot in privé. Ook dan kan echter niet zonder meer gezegd worden dat Poot dan maar op die wijze zijn schade vergoed moet zien te krijgen. Indien moet worden aangenomen dat tevens een onrechtmatige daad jegens Poot in privé is gepleegd, dan staat het Poot m.i. vrij vergoeding van zijn eigen schade te vorderen; van een omzeiling van het faillissement is geen sprake, nu Poot in privé immers niet failliet is.

Vergelijk in dit verband de noot van Van Schilfgaarde in Ars Aequi onder HR 14 januari 1983 (NJ 1983, 597, Peeters/Gatzen), AA 1984, p. 222. Hij bespreekt het in dat arrest aan de orde zijnde geval dat de curator ten behoeve van de gezamenlijke crediteuren van een gefailleerde vennootschap een vordering uit onrechtmatige daad instelt tegen een derde. De rechten van de individuele crediteuren om uit art. 1401 te ageren worden volgens Van Schilfgaarde niet zonder meer door het faillissement opgeschort; wel kan een goede procesorde zich ertegen verzetten dat een crediteur een procedure aanspant of voortzet wanneer de curator op dezelfde gronden een vordering namens de boedel instelt. Vervolgens vraagt Van Schilfgaarde zich af (p 223) of de curator hier een exclusieve bevoegdheid heeft, zodat de vordering van de individuele crediteuren door betaling aan de curator tenietgaat. Deze vraag beantwoordt Van Schilfgaarde ontkennend, waarvoor hij als argument aanvoert dat door het faillissement wel het vermogen van de gefailleerde maar niet de rechten van zijn crediteuren tegen een derde onder bewind worden gesteld. Waaraan zou de curator het recht kunnen ontlenen om over de vordering van individuele crediteuren jegens een derde te beschikken? aldus Van Schilfgaarde. Wel merkt hij op dat door de betaling aan de curator de individuele crediteur over het algemeen geen schade als gevolg van de onrechtmatige daad meer zal hebben:

"Indien in een dergelijk geval de derde zijn daaruit voortvloeiende schuld aan de curator betaalt, en dit bedrag vervolgens als deel van het batig saldo volgens de faillissementsregels wordt verdeeld, hebben individuele crediteuren een bedrag ontvangen dat in beginsel gelijk is aan het bedrag waarop zij persoonlijk bij wijze van schadevergoeding tegen de derde aanspraak zouden kunnen maken, (...)"

Zie over de samenloop van een onrechtmatige daadsactie van de curator en een individuele crediteur tegen een derde ook de noot van Wachter in de NJ onder dit arrest (NJ 1983, 597, p. 1881 rechterkolom en p. 1882 linkerkolom). Hij vermeldt dat in het Franse recht alleen de curator kan ageren maar dat de vorderingen van de individuele schuldeisers herleven als de curator geen actie onderneemt.

12) Uitzonderingen op de regel. Mijns inziens is het niet uitgesloten dat zich in bepaalde gevallen bijzondere omstandigheden voordoen, die meebrengen dat een onrechtmatige daad of wanprestatie jegens de vennootschap tevens een onrechtmatige daad jegens de aandeelhouder(s) in privé oplevert.

a) Onder omstandigheden is het mogelijk, dat iemand die deel uitmaakt van een orgaan van een vennootschap in privé wordt aangesproken door een derde op grond van onrechtmatige daad, hoewel zijn handelen in hoedanigheid geschiedde en dus primair als onrechtmatige daad dan wel wanprestatie van de vennootschap zelf jegens die derde moet worden beschouwd (bestuurdersaansprakelijkheid, doorbraak van aansprakelijkheid). Zie voor de persoonlijke aansprakelijkheid van een bestuurder op grond van onrechtmatige daad bv. recentelijk HR 10 juni 1994, RvdW 1994, 130 (NJ 1994, 766 m.nt. Ma; red.). Ook een aandeelhouder (die zelf ook weer een rechtspersoon kan zijn) kan onder omstandigheden onrechtmatig handelen jegens een derde, waarvoor hij "in privé" aansprakelijk wordt gehouden. Men denke aan de door de Hoge Raad in het bekende Osby-arrest (HR 25 september 1981, NJ 1982, 443 m.nt. Ma.), herhaald in HR 19 februari 1988, NJ 1988, 487 m.nt. G (Albada Jelgersma) aangenomen "doorbraak van aansprakelijkheid" in concernverhoudingen. Vgl. voorts HR 8 november 1991, NJ 1992, 174 m.nt.

Ma. Gevallen waarin de aangesprokene bestuurder én enig aandeelhouder was: HR 2 november 1984, NJ 1985, 446 m.nt. Ma en HR 3 april 1992, NJ 1992, 411 m.nt. Ma. Aansprakelijkheid van een bestuurder-enig aandeelhouder in privé op grond van vereenzelviging is uitzondering; zij dient te worden gerechtvaardigd door bijzondere omstandigheden (zie naar aanleiding van laatstgenoemd arrest Mohr, De dubbelrol aandeelhouder-bestuurder, in: De dubbelrol in het vennootschapsrecht (1984), p. 84 alsmede het zojuist genoemde HR 2 november 1984, NJ 1985, 446 en de conclusie van A-G Franx vóór en de noot van Maeijer onder dat arrest). Zie verder over vereenzelvigingsvraagstukken Roelvink, Door rechtspersonen heenkijken, Preadvies NJV 1977.

Waar in omgekeerde richting, d.w.z. ten laste van personen die behoren tot een orgaan van de vennootschap, onder bijzondere omstandigheden sprake kan zijn van "lifting/piercing the corporate veil", moet dit m.i. onder bijzondere omstandigheden ook mogelijk zijn ten gunste van die personen. In deze zin waarschijnlijk ook Roelvink, a.w. p. 138/139.

b) Voor het aannemen van zulke bijzondere omstandigheden is m.i. niet voldoende dat één natuurlijke persoon (direct of indirect) enig aandeelhouder is van een concern, ook niet indien het aan de wederpartij bekend is dat de verweten gedragingen zullen leiden tot het faillissement van het concern en daarmee tot het waardeloos worden van de aandelen. Mijns inziens bestaat er geen principieel verschil tussen het geval waarin er een enig-aandeelhouder of groot-aandeelhouder is en het geval waarin de aandelen zich bevinden in handen van duizenden anonieme aandeelhouders. Evenzo Bloembergen, a.w. p. 308, noot 3. In al deze gevallen geldt gelijkelijk het hierboven vermelde, uit het systeem van het vennootschapsrecht en het karakter van de rechtspersoon afgeleide argument tegen het aannemen van onrechtmatigheid jegens de aandeelhouder(s) in privé.

Dat de aandeelhouder tevens enig directeur is, levert m.i. evenmin een bijzondere omstandigheid op die tot aansprakelijkheid jegens de aandeelhouder in privé leidt; het lijkt mij ongerijmd dat het voor de aansprakelijkheid jegens de aandeelhouder in privé verschil zou uitmaken of de derde de aandeelhouder persoonlijk kent, omdat deze toevallig ook enig directeur is van de vennootschap en in die hoedanigheid namens de vennootschap naar buiten toe optreedt.

Ook de omstandigheid dat de wederpartij kennis draagt van het waardeloos worden van de aandelen levert m.i. geen bijzondere omstandigheid op die afwijking van het geformuleerde beginsel rechtvaardigt, aangezien dit inherent is aan het instituut van de (besloten of naamloze) vennootschap. Steeds immers wanneer iemand een onrechtmatige daad pleegt jegens een b.v. of n.v. waardoor die vennootschap schade lijdt, zal hij (behoren te) begrijpen dat die schade, voor zover zij niet wordt vergoed, haar uitdrukking vindt in een waardevermindering dan wel waardeloos worden van de aandelen. Dit is anders in het omgekeerde geval dat een derde een onrechtmatige daad pleegt tegen een natuurlijke persoon terwijl die derde niet weet dat tevens een vennootschap in het spel is die schade lijdt als gevolg van die onrechtmatige daad; vgl. Hof 's-Hertogenbosch 14 mei 1980, NJ 1981, 652.

Zelfs indien de onrechtmatige daad opzettelijk is gepleegd en in de wetenschap dat de vennootschap daardoor ernstige schade zal lijden, c.q. zal failleren, staat de aard van de vennootschappelijke verhoudingen dan wel de strekking van de overtreden norm er m.i. aan in de weg aansprakelijkheid jegens aandeelhouder(s) in privé te aanvaarden.

Overigens: dat er aan de kant van het ABP boos opzet in het spel is geweest, althans dat het handelen van het ABP grof onrechtmatig was, is door Poot in feitelijke instanties wel aangevoerd (zie bv. inleidende dagvaarding p. I-8, laatste alinea; p. VI-3, laatste alinea; p. VI-7, laatste alinea; p. VI-8, laatste alinea; concl. v. repl. in conv. tevens antw. in reconv. p. 64 ad 5.23, laatste zin; p. 70, ad 5.42; pleitnotities zijdens Poot in eerste aanleg p. 33, laatste alinea en p. 34; memorie van grieven p. 27 onderaan; pleidooi in appel p. 17 eerste alinea; p. 31 laatste alinea), maar door het ABP ontkend (concl. v. dupl. in conv. en van repl. in reconv. p. 191, p. 205; pleidooi in appel p. 28). Het feit is door het hof niet genoemd bij zijn weergave van de omstandigheden waarop Poot zich beroept ter ondersteuning van zijn stelling dat het ABP jegens Poot in privé aansprakelijk is. In cassatie wordt deze weergave van de stellingen van Poot niet als onvolledig aangevochten, vgl. ook hierna bij de behandeling van subonderdeel I.2. In cassatie beroept Poot zich dan ook niet meer op de ernst van de onrechtmatigheid dan wel de mate van schuld/opzet aan de kant van het ABP als bijzondere omstandigheid. Deze omstandigheid kan in cassatie dus niet als (veronderstellenderwijs) vaststaand gelden, zodat de vraag of de pleger van de daad ook niet

aansprakelijk is tegenover de aandeelhouder in het geval dat de onrechtmatige daad is gepleegd met de opzet om de vennootschap te schaden, in deze zaak m.i. in het midden kan blijven. Een principieel verschil tussen het geheel waardeloos worden van de aandelen als gevolg van het faillissement van de vennootschap en een waardevermindering van de aandelen doordat slechts schade aan de vennootschap is toegebracht die niet tot een faillissement heeft geleid (op welk verschil Poot zich beroept) zie ik evenmin.

c) Een bijzondere omstandigheid die maakt dat een wanprestatie of een onrechtmatige daad jegens een vennootschap tegelijkertijd een onrechtmatige daad oplevert jegens de aandeelhouder(s) in privé, doet zich naar mijn mening bijvoorbeeld voor in het geval dat de onrechtmatige daad dan wel wanprestatie jegens de vennootschap wordt gepleegd met het vooropgezette doel om de aandeelhouder(s) in privé te treffen, dus waarbij de vennootschap als het ware gebruikt wordt om de perso(o)n(en) "achter de schermen" te treffen. Vergelijk het reeds genoemde vonnis van de Rb. Zutphen 9 maart 1989, NJ 1990, 207: omstandigheden die aanleiding kunnen zijn tot afwijking van de regel dat wanprestatie tegenover de vennootschap niet een onrechtmatige daad oplevert tegenover de directeur/aandeelhouder en borg, zijn volgens de rechtbank Zutphen bijvoorbeeld opzet tot en wetenschap van benadeling van de directeur/aandeelhouder/borg. Zoals gezegd is de enkele wetenschap van benadeling naar mijn mening niet voldoende. De aanwezigheid van opzet tot benadeling van Poot in privé is gesteld noch gebleken.

d) Zoals uit het zojuist gezegde blijkt, ben ik van mening dat voor het slagen van een actie uit onrechtmatige daad van een aandeelhouder in privé strengere eisen dienen te worden gesteld dan voor een geslaagde o.d.-actie van een "gewone" crediteur van de vennootschap. In HR 28 juni 1957, NJ 1957, 514 m.nt. L.E.H.R. (Erba) heeft de Hoge Raad beslist dat een crediteur van een vennootschap onder omstandigheden met succes een actie uit onrechtmatige daad kan instellen tegen een bank die aan een vennootschap een omvangrijk krediet heeft verleend waartegenover de vennootschap al haar activa in zekerheid aan de bank heeft moeten overdragen of anderszins tot zekerheid verbinden:

"Dat het toch in strijd is met hetgeen in het maatschappelijk verkeer ten aanzien van eens anders goed betaamt, dat een bank, die crediet verleent tegen beding van zekerheidstelling in den omvang als hierboven verondersteld, hetzij willens en wetens, hetzij door gebrek aan zorg voor de belangen van anderen (curs. ASH) - die alleen tengevolge van de instandhouding van diens bedrijf door het bankcrediet den schuldenaar nog als afnemer tegenover zich vinden en vertrouwend op diens uiterlijke credietwaardigheid aan hem leveren -, ten koste van nieuwe leveranciers wordt voldaan (...)"

De Hoge Raad eist geen opzet om de crediteur(en) te benadelen. Het enkele gebrek aan zorg voor de belangen van crediteuren kan volgens de Hoge Raad reeds onrechtmatig zijn. Dat dit bij aandeelhouders anders ligt, is te rechtvaardigen doordat een aandeelhouder geen crediteur is van de vennootschap, althans een bijzondere positie inneemt ten opzichte van de andere crediteuren, welke positie voortvloeit uit de bijzondere verhouding tussen aandeelhouder en vennootschap (de aandeelhouder wordt in de literatuur wel getypeerd als "post-concurrente crediteur").

13) Voor de volledigheid vermeld ik nog de volgende gevallen uit de rechtspraak en literatuur waarin een aandeelhouder in privé schadevergoeding kan vorderen.

In de eerste plaats kan belediging van een b.v./n.v. tevens belediging van de bestuurder en/of enig- c.q. groot-aandeelhouder in privé zijn: Van der Heijden/Van der Grinten, Handboek nr. 61 en Bloembergen, diss. p. 310 noot 3. Hierbij is echter niet slechts sprake van schade die bestaat in waardebepaling van de aandelen, maar ook van schade bestaande in een aantasting van de goede naam (in privé), zodat dit geval niet vergelijkbaar is met het onderhavige.

Vergelijk voorts de door Roelvink, a.w. p. 116/117 genoemde arresten over onteigening, waarin het telkens ging om de vraag of een NV en haar enig aandeelhouder mogen worden vereenzelvigd wanneer de eerste schade lijdt en de laatste de onteigende is, of vice versa. Ook hier bestaat de schade die de enig aandeelhouder in privé lijdt, niet (alleen) in een waardedaling van diens aandelen.

Ten slotte HR 6 december 1957, NJ 1958, 40. In de casus die leidde tot dat arrest was sprake van wanprestatie m.b.t. de aanbouw van een schip tegenover een zekere Goekoop, die het schip vervolgens inbracht in een NV waarvan hij enig-aandeelhouder was. Goekoop vorderde in privé

schadevergoeding, stellende dat hij op grond van de nauwe betrekkingen tussen hem en de NV geacht moest worden de schade die het gevolg was van de wanprestatie, persoonlijk en rechtstreeks te hebben geleden. Volgens de Hoge Raad had het hof terecht de vordering van Goekoop afgewezen, omdat de schade niet als eigen persoonlijke schade van Goekoop kon worden beschouwd. De Hoge Raad overwoog echter expliciet dat door Goekoop niet was gevorderd vergoeding van schade bestaande in waardevermindering van zijn aandelenbezit als gevolg van de schade geleden door de naamloze vennootschap. Het verschil met de onderhavige zaak is uiteraard gelegen in het feit dat Goekoop zelf partij was bij de overeenkomst bij de uitvoering waarvan wanprestatie werd gepleegd.

14) Subonderdeel I.2 voert aan dat 's hofs oordeel dat Poot onvoldoende heeft gesteld om te kunnen concluderen tot een onrechtmatige daad jegens hem in privé, onbegrijpelijk is. Het hof heeft in r.o. 6.2.3 - in cassatie niet bestreden - weergegeven welke omstandigheden Poot in het bijzonder heeft aangevoerd ter ondersteuning van zijn stelling dat het ABP een onrechtmatige daad jegens hem in privé heeft gepleegd. Deze omstandigheden zijn (vgl. inl. dagv. p. V I-10 en hierboven, nr. 3):
- het ABP wist dat Poot in privé enig directeur/aandeelhouder was van het Poot-concern;
- het ABP wist dat het Poot-concern niet kapitaalkrachtig was en financieel afhankelijk van het ABP;
- het ABP wist dat de verweten gedragingen van het ABP onherroepelijk zouden leiden tot een faillissement van het concern en daarmee tot het waardeloos worden van de aandelen van Poot in privé.

Uit hetgeen is opgemerkt bij de behandeling van subonderdeel I.1 volgt dat de motiveringsklacht van subonderdeel I.2 geen doel treft, omdat 's hofs oordeel dat de door Poot gestelde bijzondere omstandigheden onvoldoende zijn om het door hem gewenste rechtsgevolg aan te nemen, geen blijk geeft van een onjuiste rechtsopvatting en niet onbegrijpelijk is.

15) Nu de door onderdeel I bestreden overwegingen de beslissing van het hof tot afwijzing van Poots vordering zelfstandig dragen, behoeft in mijn gedachtengang onderdeel II geen behandeling. Voor het geval Uw Raad over het voorgaande anders denkt, zal ik het onderdeel niettemin behandelen. Het is gericht tegen r.o. 6.3.4 t/m 6.3.7 van het arrest van het hof, waarin het hof oordeelt dat Poot door mee te werken aan de Albaca-transacties eventuele financiële aanspraken jegens het ABP heeft prijsgegeven.

16) Subonderdeel II.1 bevat de klacht dat de door het hof in r.o. 6.3.4 vermelde feiten en omstandigheden (in het subonderdeel kort weergegeven) onvoldoende grond opleveren voor het aannemen van een overeenkomst met de strekking dat a) de bestaande samenwerking en/of rechtsverhouding zou worden opgeheven en b) het Poot-concern afzag van alle aanspraken uit die bestaan hebbende samenwerkingsrelatie.

Vooropgesteld zij dat het hof als vaststaand heeft aangenomen (r.o. 6.3.7) dat de Albaca-transacties inhielden dat de samenwerkingsrelatie tussen het Poot-concern en het ABP, waarbij de eerstgenoemde projecten ontwikkelde die, na acceptatie, door laatstgenoemde werden gefinancierd, werd beëindigd. Het hof heeft dit bij gebrek aan betwisting als vaststaand aangenomen, tegen welke beslissing noch in dit subonderdeel, noch elders in het middel een motiveringsklacht is gericht. In de schriftelijke toelichting op middelonderdeel II is wel een desbetreffende klacht opgenomen (p. 13/14), maar zeker bij een zo omvangrijke zaak als deze dient m.i. met het oog op het belang van de wederpartij dat deze weet waartegen hij zich heeft te verweren, geen rekening te worden gehouden met nieuwe klachten in de schriftelijke toelichting. Om deze reden zal ik ook niet ingaan op de in de toelichting, p. 9-15, te vinden klachten tegen de feitelijke vaststellingen van het hof.

Ik ga er dus vanuit dat de klachten van onderdeel II, subonderdelen 1-4, slechts gericht zijn tegen de toekenning door het hof van de zojuist sub b genoemde strekking aan de Albaca-transacties, te weten dat het Poot-concern afzag van alle aanspraken uit de samenwerkingsrelatie die tussen partijen heeft bestaan. Voorts ga ik ervan uit dat subonderdeel 1, dat zelf geen uitwerking bevat, terzake hiervan slechts een inleidend karakter heeft.

17) De eerste klacht van subonderdeel II.2 houdt in dat het hof heeft miskend dat voor afstand van recht door het Poot-concern vereist zijn handelingen en/of verklaringen zijdens het Poot-concern welke redelijkerwijs mochten worden opgevat als een tot het ABP gerichte verklaring, dat het ABP zijn rechten uit de bestaan hebbende samenwerkingsrelatie prijsgaf. Blijkens r.o. 6.3.7,

waarin het hof (zoals gezegd) overweegt dat het ABP de Albaca-transacties redelijkerwijs mocht opvatten als een tot het ABP gerichte verklaring van het Poot-concern welke ertoe strekte dat het Poot-concern afzag van alle aanspraken uit de bestaan hebbende samenwerkingsrelatie, heeft het hof dit geenszins miskend, zodat deze klacht faalt. Ook de overige klachten van het subonderdeel missen m.i. feitelijke grondslag.

18) Subonderdeel II.3 valt met een motiveringsklacht opnieuw het reeds vaker vermelde oordeel aan, dat het ABP de Albaca-transacties redelijkerwijs mocht opvatten als een tot haar gerichte verklaring van het Poot-concern welke ertoe strekte dat het Poot-concern afzag van alle aanspraken uit de bestaan hebbende rechtsverhouding. In het subonderdeel wordt aangevoerd dat Poot heeft gesteld dat hij niet volledige en vrije toestemming tot het aangaan van de Albaca-transacties is overgegaan, maar dat daarentegen hij en het concern in een door het ABP in het leven geroepen dwang- of noodsituatie verkeerden, in welk geval het ABP de bedoelde feiten en omstandigheden juist niet mocht opvatten als een verklaring van afstand als voormeld. Deze stelling - dat het Poot-concern door toedoen van het ABP in dwang- of noodsituatie verkeerde - zou het hof niet hebben onderzocht; althans zou onbegrijpelijk zijn 's hofs oordeel dat het ABP op afstand mocht vertrouwen indien het het concern in die toestand had gebracht.

In subonderdeel II.4 wordt een aantal vindplaatsen in het (monster)dossier genoemd waaruit blijkt dat Poot heeft gesteld dat bij de Albaca-transacties sprake was van een dwang- of noodsituatie.

19) Ik meen dat de subonderdelen tevergeefs worden voorgesteld. Het hof heeft beslist dat de oplossing in de vorm van de Albaca-transacties met volledige en vrije instemming van Poot (optredend namens het Poot-concern) is gevonden, en dat ABP daarop een bepaald vertrouwen mocht bouwen. Deze beslissingen zijn van feitelijke aard; zij zijn m.i. niet onbegrijpelijk wanneer men let op de stellingnamen van partijen over en weer. Ik hecht ten gerieve van uw Raad een bijlage 1 aan deze conclusie bevattende de m.i. relevante uitlatingen uit het dossier.

Daaruit blijkt weliswaar dat Poot heeft aangevoerd dat hij in een noodsituatie verkeerde, maar dat is op zichzelf inherent aan de situatie van een feitelijk in faillissementstoestand verkerend concern dat met zijn voornaamste crediteuren onderhandelt. Uit 's hofs arrest blijkt dat het hof dit feit niet heeft miskend. Tegen deze achtergrond moet de beslissing worden gezien. Het hof heeft klaarblijkelijk uit die stellingen over en weer afgeleid dat Poot onvoldoende had gesteld om aan te nemen dat het ABP - vanwege hem te maken verwijten met betrekking tot de toestand waarin Poots concern zich bevindt, of om andere redenen - niet de voormelde overeenkomst had mogen aangaan (vgl. art. 3:44 lid 4) of niet het voormelde vertrouwen mocht koesteren. Ik vind die beslissing zoals opgemerkt niet onbegrijpelijk.

20) Subonderdeel II.5 is gericht tegen de overweging van het hof in de laatste alinea van r.o. 6.3.7, dat het Poot-concern ook na de Albaca-transacties niet daartegen heeft geprotesteerd of (tijdig) de nietigheid ervan heeft ingeroepen wegens een wilsgebrek, zoals bijvoorbeeld het verkeren in een dwangpositie waarvan het ABP op ongeoorloofde wijze gebruik zou hebben gemaakt. Volgens het subonderdeel heeft Poot in feitelijke instanties gesteld dat de curator, nadat het Poot-concern kort na de Albaca-transacties was gefailleerd, wel heeft geprotesteerd. Bovendien heeft het ABP ten processe in feitelijke instanties niet het verweer gevoerd dat de curator niet heeft geprotesteerd, zodat in zoverre sprake is van verboden aanvulling van feitelijke weren, aldus het subonderdeel.

De eerste klacht faalt naar mijn mening, omdat de bezwaren van de curator met betrekking tot de Albaca-transacties waarvan in de processtukken in feitelijke instanties sprake was, het eventuele paulianeuze karakter van die transacties betroffen en niet inhielden dat die transacties vanuit een dwang- of noodsituatie zouden zijn aangegaan en vernietigbaar zouden zijn wegens misbruik van omstandigheden. Ook is in feitelijke instanties sprake geweest van een actie door de curator in te stellen namens de boedel wegens wanprestatie c.q. onrechtmatige daad, maar dit is iets anders dan dat de curator zich op het standpunt heeft gesteld dat de Albaca-transacties vernietigbaar zijn wegens misbruik van omstandigheden. Zie de passages uit de processtukken, opgenomen in de aan deze conclusie gehechte bijlage 2.

De tweede klacht stuit af op het feit dat het het hof vrijstond deze gevolgtrekking te verbinden aan hetgeen partijen hebben gesteld over de door Poot danwel de coördinerend curator overwogen of ondernomen juridische stappen, waartoe niet behoorde het beroep op een wilsgebrek.

21) Subonderdeel II.6 heeft geen zelfstandige betekenis.

Conclusie

De conclusie strekt tot verwerping van het beroep.

Noot:

1. Bekend in ons recht is het leerstuk van de doorbraak van aansprakelijkheid waarbij onder bijzondere omstandigheden sprake is van piercing the corporate veil ten behoeve van crediteuren van de vennootschap en ten laste van met die vennootschap verbonden andere rechtspersonen of natuurlijke personen die dan op grond van onrechtmatige daad aansprakelijk worden gehouden voor schulden van die vennootschap. Men spreekt van doorbraak van aansprakelijkheid naar in het bijzonder bestuurders of aandeelhouders. In deze zaak was aan de orde een geval van omgekeerde doorbraak van aansprakelijkheid ten gunste van een aandeelhouder en ten laste van een debiteur van de vennootschap. Brengt aansprakelijkheid jegens de vennootschap op grond van wanprestatie of onrechtmatige daad tegelijkertijd aansprakelijkheid jegens de aandeelhouder mee uit onrechtmatige daad?

De HR beantwoordt deze vraag in r.o. 3.4.1, na een kort college over het karakter van de NV en BV, ontkennend. Lijdt de aandeelhouder dan ook niet zelf schade omdat door de vermogensschade van de vennootschap de waarde van zijn aandelen wordt verminderd? De HR volgt niet de zienswijze van Bloembergen, Schadevergoeding bij onrechtmatige daad (diss. 1965) p. 309: dat als de vennootschap een vordering kan instellen, haar vermogen niet achteruit is gegaan en de aandeelhouder dus geen schade lijdt. De HR volgt een andere redenering. Zolang de vermogensschade van de vennootschap niet (daadwerkelijk) is vergoed, is er wel een vermindering van de waarde van de aandelen. Het is echter aan de vennootschap om schadevergoeding te vorderen. Zou de vennootschap dit nalaten, dan biedt het Nederlandse rechtsstelsel voldoende mogelijkheden om het bestuur van de vennootschap tot het alsnog instellen van de vordering te nopen.

Wat bedoelt de HR met dit laatste? M.i. niet alleen een (puur) intern (zie Bloembergen a.w. p. 310) nopen tot optreden bijv. via een ontslag van de onwillige bestuurder(s) dat immers bij gewone vennootschappen is voorbehouden aan een (soms gekwalificeerde) meerderheid van de algemene vergadering van aandeelhouders en bij structuurvennootschappen aan de raad van commissarissen. Er kan zijn gedacht aan het uitlokken van een enquête omdat er dan gegronde redenen zijn om aan een juist beleid te twijfelen, waarbij krachtens het sinds 1 januari 1994 geldend art. 2:349a lid 2 BW om een onmiddellijke voorziening kan worden verzocht. Zie hierover Asser-Maeijer nr. 2, III nr. 518. Die onmiddellijke voorziening bestaande in een gebod tot het instellen van een vordering kan gerechtvaardigd zijn in verband met "de toestand der vennootschap" (zie de aanhef van art. 349a lid 2).

Ook deze weg biedt echter onvoldoende soelaas indien een kleine minderheidsaandeelhouder niet voldoende kapitaal vertegenwoordigt om een enquête volgens art. 2:346 BW te kunnen instellen, en de grootaandeelhouder-bestuurder nalaat namens de vennootschap schadevergoeding te vorderen. Terwijl de HR in de laatste alinea van r.o. 3.4.1 zegt dat er geen grond is om onderscheid te maken tussen van elkaar in dit opzicht verschillende vennootschappen. Daarom zal het in zulk geen geval en trouwens in het algemeen, dunkt mij, mogelijk zijn om in kort geding bij de president en de rechtbank een gebod of bevel uit te lokken tot het instellen van de vordering. Zulks niet alleen bij wege van ordemaatregel, maar ook omdat de rechtsverhouding tussen vennootschap en aandeelhouder dit verlangt. Hier bestaat immers, zoals de HR overweegt, een zorgplicht ten behoeve van de belangen van allen die bij het instandhouden van het vermogen van de vennootschap belang hebben.

2. Uit het vervolg van het onderhavige arrest in r.o. 3.4.3 blijkt dat een aandeelhouder wel een derde op grond van onrechtmatige daad aansprakelijk kan stellen indien jegens hem door die derde een specifieke zorgvuldigheidsnorm niet in acht is genomen, waarbij hij niet kan volstaan met het stellen van wanprestatie of onzorgvuldig handelen van die derde jegens de vennootschap. Daarbij verdienen twee nadere overwegingen van de HR aandacht. In het cassatiemiddel werd gesteld dat het waardeloos maken van de aandelen door de gedragingen van de derde jegens de vennootschap die zouden hebben geleid tot het faillissement, inbreuk maakt op het subjectieve recht van de aandeelhouder hetgeen zonder meer een onrechtmatige daad oplevert. De achterliggende gedachte is: dat bij het bestaan van zulk een subjectief recht de belangen van de gerechtigde in beginsel zijn verheven boven en onttrokken aan een belangenafweging door de rechter die eigen is aan de toepassing van de zorgvuldigheidsnorm.

Een subjectief recht in deze zin moet worden gerespecteerd door de ander en heeft in zoverre absolute werking. De HR zegt dat het aandeel een vermogensrecht is. Van eigen aard, zou ik eraan willen toevoegen; het is geen zakelijk recht en ook geen gewoon vorderingsrecht: zie Asser-Maeijer 2, III nr. 180. De HR benadrukt het relatieve karakter van dit vermogensrecht: door de aandeelhouder jegens de vennootschap uit te oefenen. Daaruit volgt dan vanzelf dat bij het toebrengen van schade aan de vennootschap het handelen tegenover de houder van het aandeel getoetst moet worden aan de zorgvuldigheidsnorm, en wel een specifieke zorgvuldigheidsnorm.

Die laatste uitdrukking houdt verband met een tweede overweging van de HR die op het eerste gezicht doet denken aan het relativiteitsvereiste. De maatschappelijke betamelijkheidsnorm heeft betrekking op de zorgvuldigheid die in een bepaalde verhouding tegenover een of meer bepaalde anderen behoort te worden betracht, en is dus naar haar aard niet een norm die strekt tot bescherming van de belangen van allen die schade lijden als gevolg van het feit dat die vereiste zorgvuldigheid tegenover die bepaalde anderen niet in acht is genomen. Zie ik het goed, dan is bij deze benadering de betamelijkheidsnorm echter sowieso een relatieve, gebonden aan een bepaalde verhouding tot een of meer bepaalde anderen. Slechts bij schending van de op die verhouding te betrekken en aldus te specificeren zorgvuldigheidsnorm, kan er sprake zijn van onrechtmatigheid. Het relativiteitsvereiste lijkt mij in zoverre door die in acht te nemen specifieke zorgvuldigheidsnorm te worden geabsorbeerd.

Ik breng in dit verband de milieu-arresten van de HR van 30 september 1994, RvdW 1994, 185 e.v. (NJ 1996 196 t/m 199. Red.) in herinnering, waarin kortgezegd, werd overwogen (r.o. 3.8.4) dat ongeschreven zorgvuldigheidsnormen uitsluitend strekken ter bescherming van belangen van anderen waarop de derde bedacht moest zijn. Is dit niet het geval dan is niet voldaan aan het relativiteitsvereiste; men kan dan volgens de HR evengoed, zo niet beter zeggen dat de derde (in zoverre) niet onrechtmatig heeft gehandeld.

3. Is het volstrekt uitgesloten dat een wanprestatie of onrechtmatige daad jegens de vennootschap tegelijkertijd een onrechtmatige daad oplevert tegenover de aandeelhouder? De HR zegt dat dit in het "normale type" van gevallen (vgl. r.o. 3.4.2 eind eerste alinea) als door hem aangeduid, niet kan. Zie hierboven sub 1. R.o. 3.4.1 tweede alinea, tweede zin luidt: in beginsel kunnen aandeelhouders niet een eigen vordering tot schadevergoeding tegen de derde geldend maken.

Wanneer, in welk abnormaal geval kan het wel? AG-Hartkamp noemt in zijn conclusie onder 12 sub c het geval van wanprestatie of onrechtmatige daad jegens de vennootschap met het voorop gezette doel de aandeelhouder in privé te treffen. Hij spreekt in dit verband van opzet tot of wetenschap van benadeling. Ook in zulk een geval zal de aandeelhouder echter moeten stellen dat met de wanprestatie of onrechtmatige handeling jegens de vennootschap tegelijkertijd een door hem aan te duiden, specifieke, jegens hem geldende zorgvuldigheidsnorm is geschonden. Zie over dit arrest ook Timmerman in TVVS 1995, p. 18.

Ma

## Redactionele verwijzingen

(T) BNB 1998/158 c*
(T) DJ 1997/2511
(T) DJ 1997/2512
(T) DJ 1997/2693
(T) DJ 1997/3400
(T) DJ 1998/2008
(T) DJ 1998/2333
(T) FED 1998/279
(T) NJ 1996/215
(T) NJ 1996/375
(T) NJ 1997/178
(T) NJ 1997/662
(T) NJ 1998/348

(T) NJ 1999/194
(T) NJ 1999/598
(T) NJ 1999/69
(T) RVDW 1994/265 c
(T) RVDW 1996/239 c
(T) RVDW 1997/118 c
(T) RVDW 1997/255 c
(T) SES 1997/74
(T) VR 1997/73
(T) VR 1998/136