de (niet contractspartij) financiële schade kan oplopen, rechtvaardigt niet de conclusie dat de bank onrechtmatig jegens die derde handelt door voor dat risico niet te waarschuwen. Temeer niet als dan nog onzeker is of een bepaalde gebeurtenis zich in de toekomst voor zal doen. Dit oordeel is mede ingegeven door de op de bank rustende geheimhoudingsplicht, die zij in een dergelijke situatie (naast de zorgplicht) ook in acht behoort te nemen. Ware de situatie anders, dan zou op een bank de algemene verplichting rusten om (1) alle aan haar beschikbaar gestelde stukken op mogelijke borgstellingen en andere mogelijke financiële risico's voor derden te onderzoeken en (2) indien uit dat onderzoek deze risico's zouden blijken hen daarvoor te waarschuwen, ook al is geenszins zeker dat de geconstateerde risico's zich zullen verwezenlijken. Een zodanige en vergaande waarschuwingsplicht rust niet op een bank. Het is dan ook niet maatschappelijk onbetamelijk te achten dat ING na kennisneming van de jaarstukken over 1999, indien en voor zover zij toen op pagina 13 van de borgstelling kennis heeft genomen, heeft nagelaten om de Gemeente over de bankgarantie en de contragarantie te informeren. De vordering van de Gemeente van € 10.120.078,54 zal dan ook worden afgewezen.

*Proceskostenveroordeling*
4.24. ING zal als de grotendeels in het ongelijk gestelde partij in de proceskosten worden veroordeeld (...; red.)

5. *De beslissing*
De rechtbank
5.1. veroordeelt ING om aan de Gemeente te betalen een bedrag van USD 9.426.267,52 (negen miljoen vierhonderd zesentwintig duizend tweehonderd zevenenzestig USD en tweeënvijftig dollarcent), omgerekend naar de tegenwaarde daarvan in Euro's per 17 mei 2002 en vermeerderd met de wettelijke rente als bedoeld in art. 6: 119 BW over het toegewezen bedrag vanaf 17 mei 2002 tot de dag van volledige betaling,
5.2. veroordeelt ING in de proceskosten (...; red.),
5.3. verklaart dit vonnis tot zover uitvoerbaar bij voorraad,
5.4. wijst het meer of anders gevorderde af.

## 112

Hoge Raad
16 februari 2007, nr. C05/173HR, LJN AZ0419
(mrs. Fleers, Van Buchem-Spapens, Numann, Hammerstein, Bakels)
(concl. A-G Timmerman)
Noot mrs. W.J.M. van Veen en T.H.M. van Wechem

**Afgeleide schade. Beroepsaansprakelijkheid advocaat wegens laten verstrijken appeltermijn. Voor schadeberekening moeten proceskansen in geval van tijdig instellen hoger beroep worden ingeschat. Daartoe dient te worden beoordeeld of aandeelhoudster (cliënte) een vorderingsrecht toekomt jegens de voormalig bestuurder wegens bewerkstelligen faillissement vennootschap. Waardevermindering aandelen door onrechtmatige daad jegens aandeelhouder of door wanprestatie bestuurder jegens vennootschap? Crediteur heeft geen afgeleide schade, maar rechtstreekse schade. Verwijzing naar HR 2 december 1994, NJ 1995, 288, m.nt. Ma (Poot/ABP) en HR 29 november 1996, «JOR» 1997/26, m.nt. SCJJK (Dohmen c.s./Amersfoortse).**

[BW art. 6:162]

*Het gaat in dit geding erom of, en zo ja in welke mate, de cliënt van een advocaat schade heeft geleden als gevolg van het feit dat deze laatste heeft verzuimd hoger beroep in te stellen tegen een vonnis waarbij die cliënt in het ongelijk was gesteld. Voor het antwoord op die vraag moet in beginsel worden beoordeeld hoe de appelrechter had behoren te beslissen, althans moet het te dier zake toewijsbare bedrag worden ingeschat aan de hand van de goede en kwade kansen die de appellant in hoger beroep, zo dit ware ingesteld, zou hebben gehad.*
*De door Tuin Beheer (de aandeelhouder) in het geding tegen Verheij (de bestuurder) ingestelde vordering berustte op onrechtmatige daad. De grondslag van deze vordering was dat Verheij als (interim)bestuurder van Tuin Recreatie (de vennootschap) bewust en onnodig eerst de surséance en vervolgens het faillissement van laatstgenoemde vennootschap heeft uitgelokt, met als bedoeling (de exploitatie van) het hotel voor een zo*

ig mogelijke prijs in handen te krijgen.
zijn arrest van 2 december 1994, NJ 1995, 288, eft de Hoge Raad in de eerste plaats geoordeeld t, indien aan een NV of BV door een derde rmogensschade wordt toegebracht door het niet hoorlijk nakomen van contractuele verplichtin- n jegens de vennootschap of door gedragingen ? tegenover de vennootschap onrechtmatig zijn, een de vennootschap het recht heeft uit dien ofde van de derde vergoeding van deze aan haar ?gebrachte schade te vorderen. Die vermogens- hade van de vennootschap zal, zolang zij niet is rgoed, een vermindering van de waarde van de ndelen in de vennootschap (kunnen) meebren- n. In beginsel kunnen de aandeelhouders echter  grond van voor hen ontstaan nadeel niet een ]en vordering tot schadevergoeding tegen de be- elde derde geldend maken. Voorts heeft de Hoge ad geoordeeld dat schade als deze schade het  volg is van schending van een jegens hem gel- nde specifieke zorgvuldigheidsverplichting. In ? 29 november 1996, «JOR» 1997/26, m.nt. JJK is de schade die de aandeelhouder lijdt als  volg van de vermindering van de waarde van n aandelen in de vennootschap, afgeleide schade noemd.

' hiervoor vermelde regel betreft een geval arin een derde onrechtmatig heeft gehandeld of  tekortgeschoten tegenover een vennootschap arvan eiser aandeelhouder was. Deze regel is eneens van toepassing in gevallen als het onder- vige, waarin de bestuurder van een vennoot- hap is tekortgeschoten in de nakoming van de uit n aanstelling/opdracht voortvloeiende verplich- gen tegenover die vennootschap.

! enkele omstandigheid dat een voorzienbaar volg was van de handelwijze van Verheij dat in Beheer als aandeelhouder van Tuin Recreatie ?rd benadeeld, brengt niet mee dat Verheij jens Tuin Beheer in haar hoedanigheid van aan- elhouder een specifieke zorgvuldigheidsnorm eft geschonden. Dit laatste geldt ook indien Ver- ij onnodig en desbewust het faillissement van in Recreatie heeft veroorzaakt voor haar eigen win. Indien de bestuurder van een vennootschap h aldus gedraagt, leidt dit tot vermindering van waarde van de aandelen in de vennootschap, of lfs tot waardeloosheid daarvan, en dus tot afge- de schade van de aandeelhouder(s) van die ven- otschap. Indien geen bijkomende omstandig- den zijn gesteld, zoals het opzet om die ndeelhouder aldus te benadelen, kan echter niet rden gesteld dat de bestuurder dusdoende tevens een specifieke zorgvuldigheidsnorm heeft geschonden tegenover die aandeelhouder.

De in het arrest van 2 december 1994, NJ 1995, 288 gestelde norm is niet (mede) van toepassing indien door de aandeelhouder vergoeding wordt gevorderd van schade als gevolg van het onvoldaan blijven van een vordering.

Het hof waarnaar de zaak wordt verwezen zal moeten beoordelen of de door Tuin Beheer aan Verheij verweten handelwijze, indien bewezen, jegens Tuin Beheer in strijd is met hetgeen volgens ongeschreven recht in het maatschappelijk verkeer betaamt. Bij deze beoordeling dient mede te worden betrokken dat de (interim)bestuurder van een vennootschap en aandeelhouder(s) daarvan zich als zodanig jegens elkaar moeten gedragen naar hetgeen door redelijkheid en billijkheid wordt gevorderd.

*Gebroeders Tuin Beheer BV* te Zijpe,
eiseres tot cassatie,
advocaat: mr. G. Snijders,
tegen
1. de *maatschap Houthoff Buruma* te Amsterdam,
2. *mr. A.G.J. van Wassenaer* te Abcoude,
verweerders in cassatie,
advocaat: (voorheen mr. P. van Schilfgaarde, thans) mrs. H.J.A. Knijff en P.N. Ploeger.

**Conclusie Advocaat-Generaal**
(mr. Timmerman)

*Opmerking vooraf*
Houthoff c.s. zijn aansprakelijk gesteld voor het abusievelijk niet tijdig instellen van hoger beroep. Voor het berekenen van de schade is vereist dat de proceskansen worden ingeschat, zou het hoger beroep wel tijdig zijn ingesteld. Daartoe dient in het onderhavige geval te worden beoordeeld of de betrokken aandeelhouder een vorderingsrecht toekomt jegens de voormalig bestuurder van de vennootschap wegens het willens en wetens veroorzaken van het faillissement van de vennootschap.

*1. Feiten*
1.1. In cassatie kan van de volgende feiten worden uitgegaan.[1]

---

1. De feiten zijn ontleend aan rov. 4.1.1 tot en met 4.2.2 van het bestreden arrest.

1.2. Tuin Beheer was enig aandeelhoudster van Gebr. Tuin Recreatie B.V. (hierna: Tuin Recreatie). Tuin Recreatie heeft vanaf 3 april 1985 een hotel te Callantsoog geëxploiteerd, genaamd "Sportshotel Callantsoog".

1.3. Tuin Recreatie heeft ten behoeve van de bouw en exploitatie van het hotel leningen ontvangen van onder andere Tuin Beheer en Nationale Investeringsbank N.V. te Den Haag (hierna: NIB).

1.4. Op verzoek van NIB heeft Verheij Multiprojekt B.V. (hierna: Verheij) onderzoek gedaan naar de continuïteit en haalbaarheid van het hotel en daarvan op 7 juni 1988 rapport uitgebracht.

1.5. Tuin Recreatie en NIB zijn vervolgens een betalingsregeling overeengekomen onder de voorwaarde dat Verheij voor de daaropvolgende drie maanden bestuurder van Tuin Recreatie zou worden in plaats van P. Tuin, die toen ook bestuurder van Tuin Beheer was. Die regeling is bevestigd bij brief van NIB van 29 juni 1988.

1.6. Tuin Beheer heeft Verheij met ingang van 1 juli 1988 tot bestuurder van Tuin Recreatie benoemd en P. Tuin als zodanig ontslagen.

1.7. Op 12 augustus 1988 zijn Verheij en NIB in overleg tot de conclusie gekomen dat Tuin Recreatie feitelijk in een toestand van faillissement verkeerde. Verheij heeft namens Tuin Recreatie op 14 september 1988 bij de rechtbank te Alkmaar voorlopige surséance van betaling aangevraagd. Zij heeft op die dag daarover gesproken met P. Tuin. De rechtbank heeft de gevraagde surséance op 15 september 1988 verleend, met benoeming van mr. H.J. Knuwer, advocaat te Den Helder, tot bewindvoerder.

1.8. Bij brief van 20 september 1988 heeft NIB de aan Tuin Recreatie verstrekte kredieten – uit hoofde waarvan Tuin Recreatie op dat moment in totaal ƒ 3.094.242,85 aan NIB was verschuldigd – opgezegd. Op de activa van Tuin Recreatie, met name het hotel, heeft Verheij namens een nader te noemen derde verschillende biedingen gedaan, die Tuin Beheer niet aanvaardbaar vond. Teneinde te voorkomen dat Verheij die biedingen namens Tuin Recreatie zou aanvaarden, heeft Tuin Beheer Verheij op 7 oktober 1988 ontslagen als bestuurder en zichzelf in haar plaats tot bestuurder benoemd.

1.9. Op 27 oktober 1988 heeft de rechtbank te Alkmaar het faillissement van Tuin Recreatie uitgesproken, met benoeming van mr. Knuwer voornoemd tot curator. Het hotel is op die dag verkocht aan D. Hiemstra te Alkmaar voor ƒ 1.800.000,= exclusief omzetbelasting en de inventaris van het hotel voor ƒ 100.000,= exclusief omzetbelasting. De overdracht heeft op 9 november 1988 plaatsgevonden. Uiteindelijk heeft Verheij Horeca B.V. – een met Verheij verbonden vennootschap – via een aantal tussenliggende transacties het sporthotel op 9 februari 1989 in handen gekregen.

1.10. Tuin Beheer heeft Verheij (en enige met deze verbonden vennootschappen) op 10 augustus 1989 gedagvaard voor de rechtbank te Den Haag en gevorderd, kort gezegd, dat voor recht zal worden verklaard dat Verheij onrechtmatig jegens haar heeft gehandeld en dat Verheij zal worden veroordeeld tot schadevergoeding, deels op te maken bij staat. Tuin Beheer heeft Verheij met name verweten dat deze bestuurder van Tuin Recreatie is geworden om het sporthotel te verwerven en zij in dat verband onnodig namens Tuin Recreatie de voorlopige surséance van betaling heeft aangevraagd.

1.11. Bij tussenvonnis van 27 maart 1991 heeft de rechtbank Verheij toegelaten te bewijzen dat zij in redelijkheid heeft kunnen besluiten de voorlopige surséance aan te vragen. Bij eindvonnis van 24 maart 1993 heeft de rechtbank geoordeeld dat dit het geval is geweest en heeft zij de vorderingen van Tuin Beheer afgewezen, evenals de reconventionele vorderingen van Verheij.

1.12. Van Wassenaer heeft Tuin Beheer in deze procedure als advocaat bijgestaan. Van Wassenaer heeft bij faxbericht van 27 april 1993 Tuin Beheer abusievelijk medegedeeld dat de beroepstermijn zou verstrijken op 24 juli 1993. De beroepstermijn van drie maanden is verstreken op 24 juni 1993 zonder dat hoger beroep is gesteld.

1.13. Bij brief van 29 juli 1993 heeft Tuin Beheer Van Wassenaer aansprakelijk gesteld voor zijn schade ten gevolge van de onjuiste vermelding van de beroepstermijn.

2. Procesverloop

2.1. Tuin Beheer heeft Houthoff en Van Wassenaer gedagvaard voor de rechtbank en gevorderd, samengevat, dat voor recht zal worden verklaard dat Houthoff en Van Wassenaer een beroepsfout hebben gemaakt door een verkeer-

de beroepstermijn te noemen en niet tijdig hoger beroep in te stellen en zij uit dien hoofde jegens haar aansprakelijk zijn voor haar schade en dat zij zullen worden veroordeeld tot vergoeding van schade, deels op te maken bij staat.

2.2. Bij het tussenvonnis van 23 januari 2002 heeft de rechtbank die beroepsfout aangenomen. Zij is vervolgens nagegaan wat de kans van slagen was van het hoger beroep, indien dat zou zijn ingesteld. In dat verband heeft de rechtbank overwogen dat het aan Verheij verweten handelen geen tekortkoming jegens Tuin Beheer oplevert bij gebreke van een contractuele verhouding tussen Verheij en Tuin Beheer. De rechtbank heeft verder onderzocht of dat handelen onrechtmatig jegens Tuin Beheer was. Daarbij heeft de rechtbank tot uitgangspunt genomen, samengevat, dat in beginsel enkel Tuin Recreatie het recht had om vergoeding van de haar toegebrachte schade te vorderen en dat Tuin Beheer als aandeelhoudster alleen een vordering – tot vergoeding van niet-afgeleide schade – toekomt indien Verheij jegens haar in privé niet met de vereiste zorgvuldigheid heeft gehandeld.

2.3. De rechtbank heeft vervolgens voorshands aangenomen dat daarvan sprake is omdat Verheij in strijd met hetgeen deze in haar brief van 5 juli 1988 heeft meegedeeld, P. Tuin niet actief van de ontwikkelingen bij Tuin Recreatie op de hoogte heeft gehouden. De rechtbank heeft daarna de diverse door Tuin Beheer opgevoerde schadeposten behandeld. Een deel daarvan heeft de rechtbank om uiteenlopende redenen niet toewijsbaar geoordeeld en voor het restant heeft zij om nadere inlichtingen verzocht.

2.4. Bij eindvonnis van 19 februari 2003 heeft de rechtbank overwogen dat ook de resterende schadeposten niet voor toewijzing in aanmerking komen en heeft zij de vorderingen van Tuin Beheer afgewezen.

2.5. Bij dagvaarding van 3 april 2003 is Tuin Beheer in hoger beroep gekomen. Van Wassenaer en Houthoff hebben gemotiveerd verweer gevoerd. Bij arrest van 7 april 2005 heeft het hof Amsterdam het bestreden vonnis bekrachtigd.

2.6. Tuin Beheer heeft tijdig[2] cassatieberoep ingesteld. Van Wassenaar en Houthoff hebben gezamenlijk het cassatieberoep weersproken. Partijen hebben hun standpunt schriftelijk laten toelichten.

3. *Inleiding op het cassatiemiddel*

3.1. Het cassatiemiddel – met name onderdeel 3 – stelt aan de orde de vraag of door het willens en wetens waardeloos maken van aandelen van een vennootschap door een bestuurder een zorgvuldigheidsnorm is geschonden jegens de aandeelhouder. Het hof heeft deze vraag ontkennend beantwoord. Alleen de vennootschap komt een vorderingsrecht toe. De aandeelhouder komt geen recht op schadevergoeding toe nu de vermogensschade van aandeelhouder afgeleide schade betreft.

3.2. Het leerstuk van de afgeleide schade is in HR 2 december 1994, NJ 1995, 288 m.nt. Ma (Poot/ABP) als volgt verwoord:

"3.4.1. (...) Naamloze vennootschappen en besloten vennootschappen met beperkte aansprakelijkheid zijn rechtspersonen die zelfstandig, als dragers van eigen rechten en verplichtingen, aan het rechtsverkeer deelnemen, ook indien zij, zoals hier het geval is, door één persoon (enig directeur en enig aandeelhouder) worden beheerst. Het vermogen van een vennootschap is afgescheiden van dat van zijn aandeelhouders. Indien aan een vennootschap door een derde vermogensschade wordt toegebracht door het niet behoorlijk nakomen van contractuele verplichtingen jegens de vennootschap of door gedragingen die tegenover de vennootschap onrechtmatig zijn, heeft alleen de vennootschap het recht uit dien hoofde van de derde vergoeding van deze aan haar toegebrachte schade te vorderen.

Die vermogensschade van de vennootschap zal, zolang zij niet is vergoed, een vermindering van de waarde van de aandelen in de vennootschap meebrengen. In beginsel kunnen de aandeelhouders echter op grond van dit (aanvankelijk) voor hen ontstane nadeel niet een eigen vordering tot schadevergoeding tegen de bedoelde derde geldend maken. Het ligt op de weg van de vennootschap om ter bescherming van de belangen van allen die bij het in stand houden van haar vermogen belang hebben, van de derde schadevergoeding te vorderen; slaagt zij daarin, dan moet ook de met die schade corresponderende waardevermindering van de aandelen geacht worden ongedaan te zijn gemaakt.

---

2. De cassatiedagvaarding is uitgebracht bij exploot van 4 juli 2005.

Zou de vennootschap het vorderen van schadevergoeding nalaten, dan behoeven de belanghebbenden daarin niet te berusten; het Nederlandse rechtsstelsel biedt dan voldoende mogelijkheden om het bestuur van de vennootschap tot het alsnog instellen van de vordering te nopen".

3.3. Indien een derde de vennootschap schade berokkent komt een aandeelhouder alleen een recht op schadevergoeding toe indien hij kan aantonen dat de derde ook jegens hem een specifieke zorgvuldigheidsnorm heeft geschonden. Het enkele stellen van een wanprestatie of een onrechtmatige gedraging jegens de vennootschap is daarbij niet voldoende.[3]

3.4. De in Poot/ABP geformuleerde regel dat een aandeelhouder geen recht heeft op vergoeding van wat afgeleide schade wordt genoemd, wordt strikt gehanteerd. Zo heeft de Hoge Raad geen uitzondering toegelaten (i) voor het geval er sprake is van een directeur/enig aandeelhouder situatie[4] (ii) indien de vordering door de vennootschap niet meer geldend kan worden gemaakt wegens faillissement van de vennootschap,[5] (iii) indien de vennootschap buiten staat is of zichzelf buiten staat heeft gesteld (bijv. door het sluiten van een overeenkomst) vergoeding van de schade te vorderen van de aansprakelijke derde, zodat de aandeelhouders de schade definitief hebben geleden,[6] (iv) in geval een directeur (niet zijnde een statutair bestuurder) door wanbeleid de leden van de coöperatie benadeelt.[7] In al deze gevallen liep de schadevergoedingactie vast op het gegeven dat er geen zorgvuldigheidsnorm aanwijsbaar was die de aangesproken derde had geschonden jegens de aandeelhouder(s)/leden, naast de onrechtmatige gedraging/wanprestatie van de aangesproken derde jegens de rechtspersoon.

3.5. In HR 2 mei 1997, NJ 1997, 662 (Kip/Rabobank) was wel sprake van schending van een zorgvuldigheidsnorm jegens de aandeelhouders. De Rabobank werd geacht onrechtmatig jegens de aandeelhouders (Kip en Sloetjes) te hebben gehandeld nu (i) onzorgvuldig kredietbeleid van de Rabobank hun vennootschap in een ongunstige financiële positie had gebracht, (ii) de Rabobank vervolgens druk had uitgeoefend op Kip en Sloetjes om op dat ongunstige tijdstip hun aandelen te verkopen, hetgeen de vermogensschade definitief ten laste van het vermogen van Kip en Sloetjes bracht.

3.6. Ik verwijs naar de fraaie analyse van de jurisprudentie over afgeleide schade in de conclusie van A-G Hartkamp vóór HR 13 oktober 2000, NJ 2000, 699 m.nt. Ma (Heino Krause).[8]

3.7. Tegen deze achtergrond kom ik tot bespreking van het middel.

*4. Bespreking van het cassatiemiddel*

4.1. Het cassatiemiddel valt uiteen in 7 onderdelen. Aangezien het derde onderdeel het cruciale onderdeel is, bespreek ik dit als eerste.

4.2. Onderdeel 3 keert zich tegen rov. 4.7 van 's hofs arrest:

"4.7. Verheij was bestuurster van Tuin Recreatie. Indien juist is dat Verheij heeft gehandeld in strijd met haar opdracht en het bestuur niet naar behoren heeft gevoerd, zoals Tuin Beheer stelt, dan kan sprake zijn van een tekortkoming of onrechtmatig handelen van Verheij jegens Tuin Recreatie. Daarmee is dan echter nog niet gegeven dat Verheij onrechtmatig jegens Tuin Beheer heeft gehandeld. Daartoe had Tuin Beheer – bijzondere – feiten of omstandigheden moeten stellen waaruit volgt dat in het aan Verheij verweten handelen tevens een gedraging is gelegen die specifiek onzorgvuldig was jegens haar als aandeelhoudster. Dat heeft Tuin Beheer naar het oordeel van het hof niet of niet voldoende gedaan. De verwijten die Tuin Beheer in dit verband aan Verheij maakt, blijven binnen de verhouding tussen Tuin Recreatie als vennootschap en Verheij als haar bestuurster, zonder dat voldoende is aangegeven in welk opzicht daarmee een norm is geschonden die Verheij specifiek jegens Tuin Beheer in acht had te nemen. Dat betekent dat deze verwijten geen grondslag voor aansprakelijkheid van Verheij jegens Tuin Beheer kunnen opleveren. De verwijten behoeven daarom in dit geding niet te worden besproken."

---

3. HR 2 december 1994, NJ 1995, 288 m.nt. Ma (Poot/ABP), rov. 3.4.3.
4. HR 2 december 1994, NJ 1995, 288 m.nt. Ma (Poot/ABP), rov. 3.4.1.
5. HR 14 juli 2000, NJ 2001, 685 m.nt. Kortmann (Mosselaar/Lagero), rov. 3.6.4.
6. HR 15 juni 2001, NJ 2001, 573 m.nt. Ma (Chipshol), rov. 3.4.4.
7. HR 13 oktober 2000, NJ 2000, 699 m.nt. Ma (Heino Krause), rov. 3.3.
8. Zie 4) tot en met 8) van deze conclusie.

4.3. Onderdeel 3 klaagt er kort gezegd over dat – anders dan het hof heeft overwogen – Tuin Beheer wel voldoende specifiek heeft aangegeven in welk opzicht Verheij jegens haar een zorgvuldigheidsnorm heeft geschonden. Tuin Beheer heeft immers primair ten grondslag aan haar vordering gelegd dat Verheij onrechtmatig jegens Tuin Beheer heeft gehandeld door het bewust onnodig veroorzaken van een faillissement teneinde zelf gunstig het sporthotel te kunnen verwerven. Het bewust onnodig veroorzaken van een faillissement heeft als voorzienbaar gevolg dat ook de aandeelhouder(s) worden benadeeld. Daarmee is deze gedraging ook jegens de aandeelhouder(s) onrechtmatig te achten. 's Hofs overweging is niet begrijpelijk dan wel getuigt van een onjuiste rechtsopvatting, aldus het onderdeel.

4.4. De vraag die voorligt is of het opzettelijk bewerkstelligen van een faillissement en het dientengevolge waardeloos worden van de aandelen niet alleen onrechtmatig is jegens de vennootschap, maar afzonderlijk daarvan ook valt aan te merken als een schending van een zorgvuldigheidsnorm jegens de aandeelhouder(s) van de vennootschap. In het Poot/ABP-arrest is overwogen dat op zichzelf beschouwd het "waardeloos maken van aandelen van de vennootschap" nog geen schending van een subjectief recht is van een aandeelhouder:

"3.4.3. Anders dan in onderdeel I onder 1 wordt betoogd, kan het 'waardeloos maken' van de aandelen door het gestelde veroorzaken van het faillissement, niet worden aangemerkt als een inbreuk op een subjectief recht van Poot, welke inbreuk onrechtmatig zou zijn ook zonder dat een zorgvuldigheidsplicht jegens Poot is geschonden. Een aandeel in een vennootschap is weliswaar een vermogensrecht, doch het toebrengen van schade aan de vennootschap kan, hoezeer het ook een inbreuk op de rechten van vennootschap oplevert, mede in het licht van het in 3.4.1 overwogene niet tevens worden gezien als een inbreuk op dit – door de aandeelhouder jegens de vennootschap uit te oefenen – vermogensrecht".

Ik merk op dat in het geval van Poot/ABP, opzet op benadeling van de vennootschap gesteld noch gebleken was (althans dit was in cassatie niet aan de orde).[9] Volgens A-G Hartkamp zou dat oordeel niet hebben veranderd. In zijn conclusie voor dit arrest schreef Hartkamp:

"Zelfs indien de onrechtmatige daad opzettelijk is gepleegd en in de wetenschap dat vennootschap daardoor ernstige schade zal lijden c.q. zal failleren, staat de aard van de vennootschappelijke verhoudingen dan wel de strekking van de overtreden norm er m.i. aan in de weg aansprakelijkheid jegens aandeelhouder(s) in privé te aanvaarden."[10]

Dit wordt volgens Hartkamp anders indien er sprake is van opzet op de benadeling van de aandeelhouder:

"Een bijzondere omstandigheid die maakt dat een wanprestatie of een onrechtmatige daad jegens een vennootschap tegelijkertijd een onrechtmatige daad oplevert jegens de aandeelhouder(s) in privé, doet zich naar mijn mening bijvoorbeeld voor in het geval dat de onrechtmatige daad dan wel wanprestatie jegens de vennootschap wordt gepleegd met het voorop gezette doel om de aandeelhouder(s) in privé te treffen, dus waarbij de vennootschap als het ware gebruikt wordt om de persoo(o)n(en) achter de vennootschap te treffen."

4.5. Dat opzet op benadeling van de vennootschap, nog geen schending van een zorgvuldigheidsnorm jegens de aandeelhouder(s) met zich brengt, is bevestigd in HR 12 december 1997, NJ 1998, 348 m.nt. Ma, JOR 1998, 29 (Ventaz). Daarin vorderde een aandeelhouder schadevergoeding voor een onrechtmatige staking van de FNV met als oogmerk, althans met als voorzienbaar gevolg het waardeloos worden van de aandelen. De Hoge Raad overwoog ten aanzien van deze vordering als volgt:

"3.4. Onderdeel 2 is gericht tegen 's Hofs oordeel (rov. 4.22) dat de enkele omstandigheid dat ook anderen dan de vennootschap, zoals Vriesinga en Ventaz, door het optreden van de Industriebond FNV jegens de vennootschap benadeeld zijn, niet betekent dat die anderen een eigen recht op schadevergoeding jegens de Industriebond FNV hebben, en dat dit niet anders wordt nu het instellen van een vordering van de vennootschap tegen de bond achterwege is gebleven.

Het onderdeel strekt ten betoge dat de regel,

---

9. Zie hierover de conclusie van A-G Hartkamp, onder 12) vóór dit arrest.
10. Zie hierover de conclusie van A-G Hartkamp, onder 12) vóór dit arrest.

geformuleerd in rov. 3.4.1 van voormeld arrest van de Hoge Raad van 2 december 1994, uitzondering behoort te lijden in een geval als het onderhavige, waarin is gesteld:
a. dat de aan de Industriebond FNV verweten gedragingen hebben geleid tot het faillissement van de vennootschap en daarmee tot het waardeloos worden van de aandelen van Ventaz in de vennootschap;
b. dat de bond heeft geweten, althans had behoren te weten, dat haar gedragingen deze gevolgen zouden hebben;
c. dat de bond het personeel heeft aangezet tot het aanvragen van het faillissement en de pogingen van Ventaz om eigen vermogen aan te trekken dan wel tot samenwerking met derden te komen, heeft geblokkeerd, waaruit kan volgen dat de bond ook jegens Ventaz onrechtmatig heeft gehandeld.
Het onderdeel kan bij gebrek aan belang niet tot cassatie leiden. Weliswaar blijkt uit de stukken van het geding dat stellingen als hiervoor met (a), (b) en (c) aangeduid door Ventaz zijn aangevoerd, doch in hetgeen het Hof in zijn rov. 4.25-4.28, gelezen in verband met rov. 4.10 en 4.11, heeft overwogen, ligt besloten dat het Hof in ieder geval de met (c) aangeduide stelling niet als juist heeft aanvaard."
4.6. Resumerend: de opzettelijke benadeling van de vennootschap dient te worden onderscheiden van opzettelijke benadeling van een aandeelhouder. In het eerste geval staat de aandeelhouder met lege handen. In het tweede geval – dat zich naar verwacht mag worden niet snel zal voordoen – lijkt er in beginsel wel enige ruimte te bestaan voor een zelfstandige actie van de aandeelhouder.
4.7. Ik kan in hetgeen Tuin Beheer heeft aangevoerd in feitelijke instanties – er wordt een breed samenstel van feiten aangeduid; kort gezegd komt dit erop neer dat Verheij willens en wetens op het faillissement van Tuin Recreatie heeft aangestuurd – alleen opzet op de benadeling van Tuin Recreatie lezen. Niet op benadeling van Tuin Beheer. Wel wil ik aannemen dat benadeling van Tuin Beheer een voorzienbaar gevolg is van het beweerdelijk opzettelijk aansturen op het faillissement van Tuin Recreatie door Verheij. Dit brengt echter nog niet met zich dat de benadeling van Tuin Beheer ook primair is beoogd door Verheij. Voorzienbare benadeling op zichzelf is onvoldoende voor het

digheidsnorm specifiek jegens Tuin Beheer. Anders gezegd: Mij is uit de in feitelijke instanties door Tuin Beheer gepresenteerde feiten niet duidelijk geworden welke specifieke zorgvuldigheidsnorm Verheij jegens Tuin Beheer zou hebben geschonden. Wanprestatie of onrechtmatige gedraging jegens de vennootschap heeft doorgaans (afgeleide) schade voor de aandeelhouders als voorzienbaar gevolg zolang de schade niet is vergoed aan de vennootschap. Indien een aandeelhouder ook in een dergelijk geval een vorderingsrecht zou toekomen, zou dit ook tot gevolg hebben dat de aandeelhouder zich bij voorrang boven de concurrente crediteuren in het faillissement zouden kunnen verhalen op de schadeveroorzakende derde. Dit zou mijns inziens een onwenselijke doorkruising van het wettelijk systeem betekenen.
4.8. Ik acht het oordeel van het hof niet getuigen van een onjuiste rechtsopvatting, noch onbegrijpelijk. Daarop faalt het onderdeel.
4.9. Onderdeel 1 keert zich met een rechts- en motiveringsklacht tegen (de eerste zin) van rov. 4.5 van 's hofs arrest. Rov. 4.5 dient in samenhang met rov. 4.4 te worden gelezen. Beide rechtsoverwegingen zien op de grief die Tuin Beheer zou hebben geformuleerd – indien wel tijdig hoger beroep zou zijn ingesteld – dat de rechtbank heeft miskend dat tussen Tuin Beheer en Verheij een contractuele verhouding zou hebben bestaan.
4.10. In rov 4.4 verwerpt het hof dit betoog. Nu er daarmee geen grondslag was voor een vordering uit wanprestatie overweegt het hof in rov. 4.5 dat in dat geval een grondslag zal dienen te worden gevonden in onrechtmatig handelen van Verheij. In de rechtsoverwegingen 4.6 tot 4.11 komt het hof tot de slotsom dat Verheij zich niet specifiek onzorgvuldig jegens Tuin Beheer heeft gedragen.
4.11. Het onderdeel voert aan dat het hof blijkens hetgeen is overwogen in rov. 4.5 heeft miskend dat Tuin Beheer in de onderhavige procedure uitdrukkelijk óók een beroep op schending van art. 2:8 lid 1 BW aan haar vordering ten grondslag heeft gelegd.
4.12. Het onderdeel mist feitelijke grondslag. Tuin Beheer heeft alleen in eerste aanleg – in de procedure tegen Houthoff c.s. – betoogd dat zij in hoger beroep schending van art. 2:8 BW als zelfstandige grondslag voor haar vordering

ders dan Tuin Beheer dit kennelijk heeft bedoeld, heeft de rechtbank de gestelde schending van art. 2:8 BW vervolgens betrokken bij de beoordeling of sprake was van een onrechtmatige daad.[12] Tuin Beheer heeft in hoger beroep geen grief gericht tegen het feit dat de rechtbank niet heeft onderzocht of schending van art. 2:8 BW zelfstandig een grondslag biedt voor een vordering van Tuin Beheer jegens Verheij. Nu Tuin Beheer (i) geen grieven heeft gericht die zien op het door de rechtbank ten onrechte voorbij gaan aan haar stelling dat art. 2:8 lid 1 BW haar vordering kan dragen en (ii) rov. 4.5. ziet op de grief dat de rechtbank ten onrechte tot de conclusie is gekomen dat er geen contractuele verhouding zou hebben bestaan tussen Tuin Beheer en Verheij, faalt het onderdeel.

4.13. Overigens heeft de rechtbank naar mijn mening terecht de vraag of sprake was van een schending van art. 2:8 lid 1 BW betrokken bij de vraag of sprake is geweest van een onrechtmatig daad van Verheij jegens Tuin Beheer. Van Schilfgaarde heeft zich in het verleden over deze kwestie uitgelaten. Ik citeer:
"Onder omstandigheden zal men wel een beroep kunnen doen op art. 2: 8 BW. In deze bepaling wordt gereflecteerd de iets nauwere band tussen bestuurder en aandeelhouder, vergeleken bij die tussen de aandeelhouder en een willekeurige wederpartij van de vennootschap. Art. 2:8 levert echter, op zich genomen, niet een erg specifieke norm op. In een voorkomend geval zal men dus concrete omstandigheden moeten stellen die, tegen de achtergrond van art. 2:8 BW op schending van een specifieke zorgvuldigheidsnorm duiden. Maar ook dan zijn we er nog niet. Poot-ABP leert ons immers dat ook indien schending van een specifieke zorgvuldigheidsnorm mag worden aangenomen, zodat er sprake is van een onrechtmatige daad jegens de aandeelhouder, daarmee nog niet is gezegd dat de schade door de waardevermindering van de aandelen voor vergoeding in aanmerking komt. Ik zie tenminste geen reden om voor de verhouding aandeelhouder-bestuurder een algemene uitzondering op de

Ik ben het eens met deze opvatting van Van Schilfgaarde. Daar komt bij dat art. 2:8 BW mijn inziens geen zelfstandige grondslag biedt voor een wettelijke verbintenis tot schadevergoeding, naast art. 6:162 BW.[14] Ik citeer wederom, maar nu Maeijer:
"Het handelen in strijd met art. 8, lid 1 kan als schending van een wettelijke plicht eveneens een onrechtmatige daad opleveren met de daaraan verbonden gevolgen indien aan de vereisten van art. 6:162 e.v. BW is voldaan".[15]
Het onderdeel dient daarmee ook op inhoudelijke gronden te falen.

4.14. Onderdeel 2 keert zich tegen rov. 4.6:
"4.6. Het verwijt dat Tuin Beheer Verheij maakt, is naar de kern genomen tweeledig, te weten enerzijds dat Verheij de toezegging in de brief van 5 juli 1988, om haar te informeren, niet is nagekomen en anderzijds dat Verheij in strijd met haar opdracht Tuin Recreatie niet beter heeft laten functioneren maar heeft aangestuurd op surséance van betaling – waarna een faillissement onafwendbaar was – en dat Verheij ernstige fouten heeft gemaakt bij de uitoefening van het bestuur van Tuin Recreatie."

4.15. Het onderdeel voert aan dat niet begrijpelijk is de uitleg die het hof geeft aan het verwijt dat Tuin Beheer aan Verheij maakt. Het hof heeft blijkens rov. 4.6 niet voldoende onderkend dat Tuin Beheer ook ten grondslag aan zijn vordering heeft gelegd dat Verheij willens en wetens, onnodig het faillissement van Tuin Recreatie heeft veroorzaakt, zulks teneinde, zo goedkoop mogelijk, zelf de exploitatie van het Sporthotel Callantsoog van Tuin Recreatie te kunnen overnemen.

4.16. Zoals reeds uiteengezet bij de bespreking van onderdeel 3, is in het geval van het willens en wetens, onnodig het faillissement veroorzaken (als bestuurder) van een vennootschap in zijn algemeenheid geen sprake van een schen-

---

11. Conclusie van repliek tevens houdende akte wijziging van eis 4 november 1998, onder 74.
12. Rov. 4.8 van het tussenvonnis d.d. 23 januari 2002.
13. Van Schilfgaarde, Acties van aandeelhouders in verband met onrechtmatige gedragingen tegenover de vennootschap in Rechtspleging in het ondernemingsrecht, 1997, p. 8.
14. In de literatuur wordt hierover verschillend gedacht, zie Huizink, Rechtspersonen (losbl.), art. 2:8 BW, aant. 8.
15. Asser-Van der Grinten-Maeijer, 2-II, nr. 46 (achtste druk).

ding van een specifieke zorgvuldigheidsnorm jegens de aandeelhouder(s) van die vennootschap. Zoals het hof terecht heeft overwogen is voor het slagen van de vordering van Tuin Beheer dan ook vereist dat Verheij zich specifiek onzorgvuldig jegens Tuin Beheer heeft gedragen.[16] Opzet op het faillissement van Tuin Recreatie is daartoe niet voldoende.[17] Opzet op benadeling van Tuin Beheer acht ik gesteld noch gebleken. Het onderdeel faalt.

4.17. Ook onderdeel 4 keert zich tegen rov. 4.7. Het betoogt dat het hof heeft miskend dat een onjuiste taakvervulling door een bestuurder van een vennootschap wel degelijk in beginsel ook onrechtmatig kan zijn jegens de aandeelhouders van de vennootschap.

4.18. Het onderdeel mist feitelijke grondslag. Het hof heeft niet overwogen dat een onjuiste taakvervulling door een bestuurder niet onrechtmatig kan zijn jegens de aandeelhouders. Het hof heeft overwogen dat Tuin Beheer heeft verzuimd een specifieke zorgvuldigheidsnorm te stellen op grond waarvan het bestuur ook onrechtmatig geacht zou kunnen worden jegens de aandeelhouders, welk onderdeel niet met succes is bestreden.

4.19. Onderdeel 5 voert aan dat het hof heeft miskend dat Tuin Beheer niet alleen ageert als aandeelhoudster van Tuin Recreatie maar ook in hoedanigheid als schuldeiseres van de vennootschap.

4.20. Dat het hof Tuin Beheer in rov. 4.7 slechts aanduidt als aandeelhouder van Tuin Recreatie, terwijl Tuin Beheer ook schadevergoeding vordert als schuldeiser van Tuin Recreatie, lijkt mij niet een tekortkoming waaraan enige betekenis toekomt. In beide hoedanigheden zal Tuin Beheer Verheij slechts met succes hebben kunnen aanspreken indien een specifieke zorgvuldigheidsnorm jegens haar zou zijn geschonden. Nu het hof in deze rechtsoverweging tot uitdrukking brengt dat daar geen sprake van is, faalt het onderdeel.

4.21. Onderdeel 6 veronderstelt ten onrechte de juistheid van de "in de vooraf genoemde onderdelen van dit middel genoemde redenen" en mist daarmee feitelijke grondslag. De additionele klacht – dat het hof onvoldoende heeft gemotiveerd waarom Verheij niet jegens Tuin Beheer als schuldeiseres van Tuin Recreatie schadeplichtig zou kunnen zijn – betoogt hetzelfde als het onjuist bevonden onderdeel 5 en deelt diens lot.

4.22. Onderdeel 7 keert zich tegen rov. 4.18 en voert aan dat het hof ten onrechte het bewijsaanbod van Tuin Beheer in hoger beroep heeft gepasseerd. Deze klacht faalt. Tuin Beheer heeft weliswaar aangeboden al haar stellingen te bewijzen – in het bijzonder door middel van het horen van getuigen – maar nu het hof – niet met succes bestreden – heeft overwogen dat in deze stellingen geen grondslag voor aansprakelijkheid van Verheij jegens Tuin Beheer kan worden gevonden, heeft het hof dit bewijsaanbod als niet terzake doende mogen passeren.

5. *Conclusie*
Deze strekt tot verwerping van het beroep.

**Hoge Raad**

(...; *red.*)

3. *Beoordeling van het middel*
3.1. In cassatie kan van het volgende worden uitgegaan.
i. Tuin Beheer was enig aandeelhoudster van Gebr. Tuin Recreatie B.V. (hierna: Tuin Recreatie). Tuin Recreatie heeft vanaf 3 april 1985 een hotel te Callantsoog geëxploiteerd, genaamd "Sporthotel Callantsoog" (hierna: het hotel).
ii. Tuin Recreatie heeft ten behoeve van de bouw en exploitatie van het hotel leningen ontvangen van onder andere Tuin Beheer en Nationale Investeringsbank N.V. te Den Haag (hierna: NIB).
iii. Op verzoek van NIB heeft Verheij Multiprojekt B.V. (hierna: Verheij) onderzoek gedaan naar de continuïteit en haalbaarheid van het hotel en daarvan op 7 juni 1988 rapport uitgebracht.
iv. Tuin Recreatie en NIB zijn vervolgens een betalingsregeling overeengekomen onder de voorwaarde dat Verheij voor de daaropvolgende drie maanden bestuurder van Tuin Recreatie zou worden in plaats van P. Tuin, die toen ook bestuurder van Tuin Beheer was. Die regeling is bevestigd bij brief van NIB van 29 juni 1988.

---

16. Rov. 4.5 van het bestreden arrest.
17. In gelijke zin: A-G Hartkamp vóór 2 december 1994,

1 juli 1988 tot bestuurder van Tuin Recreatie benoemd en P. Tuin als zodanig ontslagen.

vi. Op 12 augustus 1988 zijn Verheij en NIB in overleg tot de conclusie gekomen dat Tuin Recreatie feitelijk in een toestand van faillissement verkeerde. Verheij heeft namens Tuin Recreatie op 14 september 1988 bij de rechtbank te Alkmaar voorlopige surséance van betaling aangevraagd. Zij heeft op die dag daarover gesproken met P. Tuin. De rechtbank heeft de gevraagde surséance op 15 september 1988 verleend, met benoeming van mr. H.J. Knuwer, advocaat te Den Helder, tot bewindvoerder.

vii. Bij brief van 20 september 1988 heeft NIB de aan Tuin Recreatie verstrekte kredieten opgezegd, uit hoofde waarvan Tuin Recreatie op dat moment in totaal $f$ 3.094.242,85 aan NIB was verschuldigd. Op de activa van Tuin Recreatie, met name het hotel, heeft Verheij namens een nader te noemen derde verschillende biedingen gedaan, die Tuin Beheer niet aanvaardbaar vond. Teneinde te voorkomen dat Verheij die biedingen namens Tuin Recreatie zou aanvaarden, heeft Tuin Beheer op 7 oktober 1988 Verheij ontslagen als bestuurder en zichzelf in haar plaats tot bestuurder benoemd.

viii. Op 27 oktober 1988 heeft de rechtbank te Alkmaar het faillissement van Tuin Recreatie uitgesproken, met benoeming van mr. Knuwer voornoemd tot curator. Het hotel is op die dag verkocht aan D. Hiemstra te Alkmaar voor $f$ 1.800.000,= exclusief omzetbelasting, en de inventaris van het hotel voor $f$ 100.000,= exclusief omzetbelasting. De overdracht heeft op 9 november 1988 plaatsgevonden. Uiteindelijk heeft Verheij Horeca B.V. – een met Verheij verbonden vennootschap – via een aantal tussenliggende transacties het hotel op 9 februari 1989 in handen gekregen.

ix. Tuin Beheer heeft Verheij (en enige met deze verbonden vennootschappen) gedagvaard voor de rechtbank te Den Haag en gevorderd, kort gezegd, dat voor recht zal worden verklaard dat Verheij onrechtmatig jegens haar heeft gehandeld en dat Verheij zal worden veroordeeld tot schadevergoeding, deels op te maken bij staat. Tuin Beheer heeft Verheij met name verweten dat deze bestuurder van Tuin Recreatie is geworden om het hotel te verwerven en dat zij in dat verband onnodig namens Tuin Recreatie de voorlopige surséance van betaling heeft aangevraagd.

x. Bij tussenvonnis van 27 maart 1991 heeft de rechtbank Verheij toegelaten te bewijzen dat zij in redelijkheid heeft kunnen besluiten de voorlopige surséance aan te vragen. Bij eindvonnis van 24 maart 1993 heeft de rechtbank geoordeeld dat dit het geval is geweest en heeft zij de vorderingen van Tuin Beheer afgewezen, evenals de reconventionele vorderingen van Verheij.

xi. Van Wassenaer heeft Tuin Beheer in deze procedure als advocaat bijgestaan. Van Wassenaer heeft bij faxbericht van 27 april 1993 Tuin Beheer abusievelijk medegedeeld dat de beroepstermijn zou verstrijken op 24 juli 1993 (hierna: de beroepsfout). De beroepstermijn van drie maanden is verstreken op 24 juni 1993 zonder dat hoger beroep is gesteld.

3.2. In dit geding heeft Tuin Beheer Van Wassenaer en Houthoff (de maatschap waarvan Van Wassenaer toentertijd lid was) aansprakelijk gesteld voor de door eerstgenoemde gemaakte beroepsfout. De rechtbank heeft geoordeeld, kort samengevat, dat Van Wassenaer door zijn hiervoor in 3.1 onder (xi) bedoelde handelwijze en nalatigheid inderdaad een beroepsfout heeft gemaakt. Zij heeft voorts geoordeeld dat Verheij jegens Tuin Beheer onrechtmatig heeft gehandeld doordat zij P. Tuin niet actief van de ontwikkelingen bij Tuin Recreatie op de hoogte heeft gehouden. Zij heeft de door Tuin Beheer gevorderde schadeposten echter om diverse redenen niet toewijsbaar geacht en daarom de vorderingen afgewezen.

Het hof heeft dit vonnis bekrachtigd. Zeer verkort samengevat heeft het hof daartoe als volgt overwogen. Het hof heeft in het midden gelaten of Verheij inderdaad jegens Tuin Recreatie heeft gehandeld in strijd met haar opdracht en het opgedragen bestuur niet naar behoren heeft gevoerd. Ook als dit niet zo zou zijn, staat daarmee immers niet vast dat Verheij onrechtmatig heeft gehandeld tegenover Tuin Beheer. Daarvoor is noodzakelijk dat het haar verweten handelen specifiek onzorgvuldig was jegens Tuin Beheer als aandeelhouder. Daartoe heeft Tuin Beheer onvoldoende feiten gesteld.

3.3. Bij de beoordeling van het door Tuin Beheer voorgestelde middel dient het volgende tot uitgangspunt.

a. Het gaat in dit geding erom of, en zo ja in welke mate, de cliënt van een advocaat schade heeft geleden als gevolg van het feit dat deze laatste heeft verzuimd hoger beroep in te stellen tegen een vonnis waarbij die cliënt in het

ongelijk was gesteld. Voor het antwoord op deze vraag moet in beginsel worden beoordeeld hoe de appelrechter had behoren te beslissen, althans moet het te dier zake toewijsbare bedrag worden geschat aan de hand van de goede en kwade kansen die de appellant in hoger beroep, zo dit ware ingesteld, zou hebben gehad (HR 24 oktober 1997, nr. 16384, NJ 1998, 257).
b. De door Tuin Beheer in het hiervoor in 3.1 onder (ix) bedoelde geding tegen Verheij ingestelde vordering berustte op onrechtmatige daad. De grondslag van deze vordering was, kort samengevat, dat Verheij als (interim)bestuurder van Tuin Recreatie bewust en onnodig eerst de surséance en vervolgens het faillissement van laatstgenoemde vennootschap heeft uitgelokt, met als bedoeling (de exploitatie van) het hotel voor een zo laag mogelijke prijs in handen te krijgen. Het hof heeft de juistheid van deze stelling in het midden gelaten, zodat deze in cassatie mede tot uitgangspunt dient.
c. In zijn arrest van 2 december 1994, nr. 15511, NJ 1995, 288, heeft de Hoge Raad in de eerste plaats geoordeeld dat, indien aan een naamloze of besloten vennootschap door een derde vermogensschade wordt toegebracht door het niet behoorlijk nakomen van contractuele verplichtingen jegens de vennootschap of door gedragingen die tegenover de vennootschap onrechtmatig zijn, alleen de vennootschap het recht heeft uit dien hoofde van de derde vergoeding van deze aan haar toegebrachte schade te vorderen. Die vermogensschade van de vennootschap zal, zolang zij niet is vergoed, een vermindering van de waarde van de aandelen in de vennootschap (kunnen) meebrengen. In beginsel kunnen de aandeelhouders echter op grond van voor hen ontstaan nadeel niet een eigen vordering tot schadevergoeding tegen de bedoelde derde geldend maken. Voorts heeft de Hoge Raad geoordeeld dat de aandeelhouder slechts recht heeft op vergoeding van door hem in deze hoedanigheid geleden schade als deze schade het gevolg is van schending van een jegens hem geldende specifieke zorgvuldigheidsverplichting. In HR 29 november 1996, nr. 16136, «JOR» 1997/26, m.nt. SCJJK, NJ 1997, 178 is de schade die de aandeelhouder lijdt als gevolg van de vermindering van de waarde van zijn aandelen in de vennootschap, afgeleide schade genoemd.

geval waarin een derde onrechtmatig heeft gehandeld of is tekortgeschoten tegenover een vennootschap waarvan eiser aandeelhouder was. Deze regel is eveneens van toepassing in gevallen als het onderhavige, waarin de bestuurder van een vennootschap – naar in cassatie veronderstellenderwijs moet worden aangenomen – is tekortgeschoten in de nakoming van de uit zijn aanstelling/opdracht voortvloeiende verplichtingen tegenover die vennootschap.
3.4. Onderdeel 3, dat de Hoge Raad als eerste zal behandelen, is gericht tegen rov. 4.7 van het bestreden arrest, waarin het hof als volgt heeft overwogen:
"Verheij was bestuurster van Tuin Recreatie. Indien juist is dat Verheij heeft gehandeld in strijd met haar opdracht en het bestuur niet naar behoren heeft gevoerd, zoals Tuin Beheer stelt, dan kan sprake zijn van een tekortkoming of onrechtmatig handelen van Verheij jegens Tuin Recreatie. Daarmee is dan echter nog niet gegeven dat Verheij onrechtmatig jegens Tuin Beheer heeft gehandeld. Daartoe had Tuin Beheer – bijzondere – feiten of omstandigheden moeten stellen waaruit volgt dat in het aan Verheij verweten handelen tevens een gedraging is gelegen die specifiek onzorgvuldig was jegens haar als aandeelhoudster. Dat heeft Tuin Beheer naar het oordeel van het hof niet of niet voldoende gedaan. De verwijten die Tuin Beheer in dit verband aan Verheij maakt, blijven binnen de verhouding tussen Tuin Recreatie als vennootschap en Verheij als haar bestuurster, zonder dat voldoende is aangegeven in welk opzicht daarmee een norm is geschonden die Verheij specifiek jegens Tuin Beheer in acht had te nemen. Dat betekent dat deze verwijten geen grondslag voor aansprakelijkheid van Verheij jegens Tuin Beheer kunnen opleveren. De verwijten behoeven daarom in dit geding niet te worden besproken."
Volgens het onderdeel, dat zowel een rechtsklacht als een motiveringsklacht bevat, heeft Tuin Beheer wel degelijk voldoende specifiek gesteld in welk opzicht Verheij jegens haar een zorgvuldigheidsnorm heeft geschonden. Zij heeft immers primair aan haar vordering ten grondslag gelegd dat Verheij onrechtmatig jegens haar heeft gehandeld door onnodig en desbewust het faillissement van Tuin Recreatie te veroorzaken voor haar eigen gewin. Daar-

Tuin Recreatie benadeeld, hetgeen een voorzienbaar gevolg was van de handelwijze van Verheij.

3.5. Anders dan het onderdeel betoogt, brengt de enkele omstandigheid dat een voorzienbaar gevolg was van de handelwijze van Verheij dat Tuin Beheer als aandeelhouder van Tuin Recreatie werd benadeeld, niet mee dat Verheij jegens Tuin Beheer in haar hoedanigheid van aandeelhouder een specifieke zorgvuldigheidsnorm heeft geschonden. Dit laatste geldt ook indien Verheij onnodig en desbewust het faillissement van Tuin Recreatie heeft veroorzaakt voor haar eigen gewin. Indien de bestuurder van een vennootschap zich aldus gedraagt, leidt dit tot vermindering van de waarde van de aandelen in de vennootschap, of zelfs tot waardeloosheid daarvan, en dus tot afgeleide schade van de aandeelhouder(s) van die vennootschap. Indien geen bijkomende omstandigheden zijn gesteld, zoals het opzet om die aandeelhouder aldus te benadelen, kan echter niet worden gesteld dat de bestuurder dusdoende tevens een specifieke zorgvuldigheidsnorm heeft geschonden tegenover die aandeelhouder. De rechtsklacht van het onderdeel kan daarom geen doel treffen. Ook de motiveringsklacht faalt omdat de overweging van het hof dat de verwijten die Tuin Beheer aan Verheij maakt, blijven binnen de verhouding tussen Tuin Recreatie als vennootschap en Verheij als haar bestuurder, zonder dat voldoende is aangegeven in welk opzicht daarmee een norm is geschonden die Verheij specifiek jegens Tuin Beheer als aandeelhouder in acht had te nemen, gezien het vorenoverwogene alleszins begrijpelijk is.

3.6. Onderdeel 1 houdt in de kern in dat het hof de vordering van Tuin Beheer ten onrechte alleen op basis van onrechtmatige daad heeft beoordeeld, hoewel Tuin Beheer zich in dit verband mede heeft beroepen op art. 2:8 lid 1 BW. Het onderdeel kan niet tot cassatie leiden omdat het feitelijke grondslag mist. Blijkens rov. 4.9 heeft het hof immers kennelijk op het voetspoor van de rechtbank – en in zoverre in hoger beroep onbestreden – de in art. 2:8 lid 1 BW geformuleerde norm en de bijzondere zorgplicht die daaruit voortvloeit, (terecht) betrokken bij zijn beantwoording van de vraag of Verheij in haar hoedanigheid van (interim)bestuurder van Tuin Recreatie, onrechtmatig heeft gehandeld tegenover Tuin Beheer als aandeelhouder van die vennootschap.

3.7. Onderdeel 2 is gericht tegen rov. 4.6, waarin het hof het volgende heeft overwogen:
"Het verwijt dat Tuin Beheer Verheij maakt, is naar de kern genomen tweeledig, te weten enerzijds dat Verheij de toezegging in de brief van 5 juli 1988, om haar te informeren, niet is nagekomen en anderzijds dat Verheij in strijd met haar opdracht Tuin Recreatie niet beter heeft laten functioneren maar heeft aangestuurd op surséance van betaling – waarna een faillissement onafwendbaar was – en dat Verheij ernstige fouten heeft gemaakt bij de uitoefening van het bestuur van Tuin Recreatie."
Volgens het onderdeel heeft het hof in deze overweging een onbegrijpelijke uitleg gegeven aan het verwijt dat Tuin Beheer aan Verheij maakt. Tuin Beheer heeft aan haar vordering immers mede ten grondslag gelegd dat Verheij willens en wetens onnodig het faillissement van Tuin Recreatie heeft veroorzaakt, zulks teneinde zo goedkoop mogelijk zelf de exploitatie van het hotel te kunnen overnemen.
Het onderdeel mist feitelijke grondslag. Het oordeel van het hof in rov. 4.7 dat de verwijten van Tuin Beheer die erop neerkomen dat Verheij in strijd met haar opdracht het bestuur niet naar behoren heeft uitgevoerd, blijven binnen de verhouding tussen Tuin Recreatie als vennootschap en Verheij als haar bestuurster, betreft immers mede het verwijt dat het faillissement van Tuin Recreatie onnodig zou zijn veroorzaakt.

3.8. Onderdeel 4 is gericht tegen rov. 4.7 en betoogt in de kern dat het hof heeft miskend dat een onjuiste taakvervulling door een bestuurder van een vennootschap wel degelijk onrechtmatig kan zijn jegens aandeelhouders van de vennootschap.
Ook dit onderdeel mist feitelijke grondslag. Het hof heeft dit immers niet miskend, doch slechts geoordeeld dat in het onderhavige geval Verheij niet onrechtmatig heeft gehandeld tegenover Tuin Beheer.

3.9. Onderdeel 5 strekt ten betoge dat het hof heeft miskend dat de vordering van Tuin Beheer niet alleen is gebaseerd op haar hoedanigheid van aandeelhouder van Tuin Recreatie, maar ook op haar hoedanigheid van schuldeiser. Zij heeft immers mede aangevoerd dat zij schade heeft geleden door het onvoldaan blijven van de rekening-courantschuld van ƒ 1.784.036,= die Tuin Recreatie aan haar had. Het onderdeel treft doel. Reeds uit de formule-

ring van het hiervoor in 3.3 onder (c) aangehaalde arrest van 2 december 1994 volgt dat de daarin gestelde norm niet (mede) van toepassing is indien door de aandeelhouder vergoeding wordt gevorderd van schade die hij op andere wijze lijdt dan door vermindering van de waarde van zijn aandelen in de vennootschap. Het als gevolg van het faillissement van Tuin Recreatie onvoldaan blijven van de – op zichzelf onbestreden – vordering van Tuin Beheer in rekening-courant, waaraan kort voor het faillissement van Tuin Recreatie op verzoek van NIB het karakter van een achtergestelde lening was gegeven, is voor Tuin Beheer immers geen afgeleide schade. Zij bestaat namelijk niet in vermindering van de waarde van de aandelen die Tuin Beheer had in Tuin Recreatie, maar in vermindering van de waarde van de vordering die Tuin Beheer had op Tuin Recreatie.

3.10. In verband met het verdere verloop van het geschil na verwijzing wordt nog als volgt overwogen. De enkele omstandigheid dat de vordering van Tuin Beheer op Tuin Recreatie door toedoen van Verheij waardeloos is geworden, brengt nog niet mee dat laatstgenoemde onrechtmatig heeft gehandeld tegenover Tuin Beheer. Het hof waarnaar de zaak wordt verwezen zal moeten beoordelen of de door Tuin Beheer aan Verheij verweten handelwijze, indien bewezen, jegens Tuin Beheer in strijd is met hetgeen volgens ongeschreven recht in het maatschappelijk verkeer betaamt. Daarbij dient tot uitgangspunt dat, indien de belangen van een derde – zoals in dit geval Tuin Beheer – zo nauw zijn betrokken bij de behoorlijke uitvoering van een overeenkomst – zoals in dit geval de overeenkomst van opdracht die is gesloten tussen Verheij en Tuin Recreatie – dat hij schade of ander nadeel kan lijden als een contractant in die uitvoering tekortschiet, de normen van hetgeen volgens ongeschreven recht in het maatschappelijk verkeer betaamt, kunnen meebrengen dat die contractant deze belangen dient te ontzien door zijn gedrag mede door die belangen te laten bepalen (HR 24 september 2004, nr. C03/101, RvdW 2004, 108). Bij deze beoordeling dient de rechter naar wie de zaak wordt verwezen mede te betrekken dat de (interim)bestuurder van een vennootschap en aandeelhouder(s) daarvan zich als zodanig jegens elkaar moeten gedragen naar hetgeen door redelijkheid en billijkheid wordt gevorderd (art. 2:8 lid 1 BW).

3.11. Het slagen van onderdeel 5 brengt mee dat onderdeel 6 geen behandeling behoeft maar dat onderdeel 7, waarin wordt geklaagd over het passeren van het bewijsaanbod dat Tuin Beheer in hoger beroep heeft gedaan, doel treft, dit laatste mede gezien de mate waarin dit bewijsaanbod is gepreciseerd.

4. Beslissing
De Hoge Raad:
vernietigt het arrest van het gerechtshof te Amsterdam van 7 april 2005;
verwijst het geding naar het gerechtshof te 's-Gravenhage ter verdere behandeling en beslissing;
veroordeelt Van Wassenaer en Houthoff in de kosten van het geding in cassatie (...; red.).

**NOOT**

1. In de kern gaat deze uitspraak over de aansprakelijkheid van een bestuurder van een vennootschap jegens een aandeelhouder op grond van onrechtmatige daad. De kwestie speelt in het kader van een vordering tot schadevergoeding jegens degenen die de aandeelhouder in het kader van die vordering in eerste aanleg hadden bijgestaan, maar tekort waren geschoten in het tijdig instellen van hoger beroep tegen het vonnis waarbij de aandeelhouder in het ongelijk was gesteld. De grondslag van de vordering jegens de bestuurder was, verkort weergegeven, dat zij bewust en onnodig eerst de surséance en vervolgens het faillissement van de vennootschap heeft uitgelokt, met als bedoeling een van de "assets" van de vennootschap, te weten het Sporthotel Callantsoog, voor een zo laag mogelijke prijs in handen te krijgen. Het arrest is interessant omdat in het onderhavige geval de eiser naast aandeelhouder tevens crediteur was van de vennootschap. Dit maakte in de beslissing het verschil.

2. Als uitgangspunt bij de beoordeling wordt genomen dat in het geval een bestuurder verwijtbaar tekort is geschoten in de op hem rustende verplichtingen jegens de vennootschap, in beginsel uitsluitend de vennootschap schadevergoeding kan vorderen. De Hoge Raad overweegt op dit punt dat het geen verschil maakt of een derde of een bestuurder de vennootschap schade heeft berokkend. Vergelijk in deze context tevens HR 13 oktober

2000, «JOR» 2000/239, NJ 2000, 699, m.nt. Ma (*Heino Krause*) waarin de vraag aan de orde was of een directeur (niet tevens bestuurder) van een coöperatie aansprakelijk kon worden gesteld voor schade die leden van de coöperatie hadden geleden als gevolg van de schade die hij door zijn wanbeheer aan de coöperatie had toegebracht.

Zolang de vermogensschade die is geleden door de vennootschap niet op de derde, of zoals in het onderhavige geval de bestuurder, wordt verhaald, kan dit tot uitdrukking komen in een waardedaling van de aandelen. Deze zogenoemde afgeleide schade, zal de aandeelhouder slechts op de veroorzaker daarvan kunnen verhalen als laatstgenoemde een jegens de aandeelhouder specifiek geldende zorgvuldigheidsverplichting heeft geschonden, aldus HR 2 december 1994, NJ 1995, 288, m.nt. Ma (*Poot/ABP*). In latere arresten die worden genoemd in de conclusie van de A-G, heeft de Hoge Raad deze lijn bestendigd. Voor een poging om op grond van een contractuele relatie tussen de aandeelhouder en de schadeveroorzaker een bijzondere zorgplicht te construeren zie men HR 15 juni 2001, «JOR» 2001/172, m.nt. Kroeze, NJ 2001, 573, m.nt. Ma. In die zaak faalde overigens het desbetreffende middel omdat er onvoldoende feitelijke invulling aan was gegeven alsmede op technische gronden (r.o. 3.4.6).

Het enkele stellen van een wanprestatie of een onrechtmatige gedraging jegens de *vennootschap* is derhalve niet voldoende om tot aansprakelijkheid jegens de aandeelhouder te kunnen concluderen. In het onderhavige arrest overweegt de Hoge Raad op dit punt dat indien geen bijkomende omstandigheden zijn gesteld, zoals het opzet om die aandeelhouder aldus te benadelen, niet kan worden gesteld dat de bestuurder dusdoende tevens een specifieke zorgvuldigheidsnorm heeft geschonden tegenover die aandeelhouder.

Wat hierbij opvalt is de woordkeuze van de Hoge Raad "*zoals het opzet* om die aandeelhouder aldus te benadelen". Heeft de Hoge Raad hiermee bedoeld dat een vergoedingsplicht voor afgeleide schade bestaat bij opzet maar dat hiervan ook sprake kan zijn in andere gevallen? Of brengt de Hoge Raad hiermee tot uitdrukking dat voor vergoeding van afgeleide schade in beginsel opzet is vereist en dat dit slechts in zeer uitzonderlijke situaties ook zonder opzet het geval kan zijn. Wij neigen naar het laatste.

3. Het arrest neemt echter voor eiser een positieve wending. Eiser had in hoger beroep namelijk ook gesteld dat de bestuurder jegens hem in de hoedanigheid van schuldeiser van de vennootschap onrechtmatig heeft gehandeld door te handelen als hiervoor beschreven. In zijn conclusie voor het arrest had de A-G aangegeven dat de hoedanigheid waarin schadevergoeding wordt geëist geen verschil maakt. Indien jegens eiser in hoedanigheid van aandeelhouder is geoordeeld dat jegens hem geen specifieke zorgvuldigheidsnorm is geschonden, impliceert dit dat jegens eiser ook in andere hoedanigheid van een dergelijke schending geen sprake is. De Hoge Raad volgt de A-G op dit punt niet.

In het arrest Poot/ABP had de Hoge Raad al overwogen dat de in art. 6:162 BW geformuleerde zorgvuldigheidsnorm betrekking heeft op "de zorgvuldigheid die in een bepaalde rechtsverhouding tegenover een of meer bepaalde anderen behoort te worden betracht (...).". In lijn hiermee overweegt de Hoge Raad in het onderhavige arrest dat het gegeven dat in verhouding tot de eiser in hoedanigheid van aandeelhouder geen sprake is van schending van een zorgplicht, niet impliceert dat ook geen sprake is van een normschending jegens eiser in hoedanigheid van schuldeiser. De aard van de rechtsverhouding en daarmee de aard van de geleden schade geeft derhalve – terecht – de doorslag.

Het lijkt er op dat de Hoge Raad hier refereert aan het relativiteitsbeginsel van art. 6:163 BW. De normschending die wellicht voldoende is om de aandeelhouder tegen zijn schade geleden in zijn hoedanigheid als crediteur van de vennootschap te beschermen, is niet zwaar genoeg (of hoeft niet zwaar genoeg te zijn) om dezelfde aandeelhouder tegen zijn afgeleide schade te beschermen.

Het valt op dat de Hoge Raad niet refereert aan zijn arresten inzake de klassieke externe bestuurdersaansprakelijkheid op grond van onrechtmatige daad. In r.o. 3.10 verwijst de Hoge Raad in dit verband namelijk naar zijn arrest HR 24 september 2004, «JOR» 2004/341. Hierin is overwogen dat sprake kan zijn van onrechtmatig handelen indien de belangen van de schadelijder zo nauw zijn betrokken bij de

behoorlijke uitvoering van een overeenkomst dat hij schade of ander nadeel kan lijden als een contractant in die uitvoering tekortschiet. In dat geval kunnen de normen van hetgeen volgens ongeschreven recht in het maatschappelijk verkeer betaamt, meebrengen dat die contractant deze belangen dient te ontzien door zijn gedrag mede door die belangen te laten bepalen. De Hoge Raad voegt hieraan in dezelfde rechtsoverweging nog toe dat de rechter naar wie zaak wordt verwezen, bij zijn oordeel mede moet betrekken dat de bestuurder van een vennootschap en aandeelhouder(s) daarvan zich zodanig jegens elkaar moeten gedragen als door redelijkheid en billijkheid op grond van art. 2:8 BW wordt gevergd. Vgl. over de verhouding tussen de vennootschappelijke redelijkheid en billijkheid en 6:162 BW ook HR 17 mei 1991, NJ 1991, 645, m.nt. Ma (*Lampe/Tonnema*). Net zo goed als een contractuele verhouding de redelijkheid en billijkheid kan inkleuren die op grond van art. 2:8 BW in acht moeten worden genomen, kan deze redelijkheid en billijkheid derhalve niet-vennootschappelijke rechtsverhoudingen inkleuren tussen degenen die bij de rechtspersoon zijn betrokken. De crediteur die tevens behoort tot degenen waarop art. 2:8 BW doelt, heeft in dit opzicht een streepje voor op een crediteur die daartoe niet behoort.

Wellicht heeft de Hoge Raad aldus in r.o. 3.10 een signaal willen geven dat de vordering in beginsel voor toewijzing vatbaar is. Hiervoor biedt de casus voldoende aanknopingspunten. De eiser had een substantieel bedrag als achtergestelde lening aan de vennootschap ter beschikking gesteld en de bestuurder was op basis van een rapportage van haar hand over de levensvatbaarheid van de vennootschap, door de eiser (in hoedanigheid van enig aandeelhouder) aangesteld als (interim) bestuurder met als doel de vennootschap financieel gezond te maken. Het hiermee in de bestuurder gestelde vertrouwen behoort bij het oordeel of sprake is van een specifieke normschending jegens de eiser in hoedanigheid van crediteur in de afweging te worden betrokken.

W.J.M van Veen
universitair hoofddocent VU en wetenschappelijk adviseur notarieel ondernemingsrecht

T.H.M. van Wechem
verbonden aan Bakers & McKenzie Amsterdam en directeur van Law@Work BV

## 113

Rechtbank Amsterdam
21 maart 2007, rolnr. HA ZA 05-2582
(mr. Marcus)

**Bestuurdersaansprakelijkheid in faillissement. Onderfinanciering. Aangaan van verplichtingen terwijl omtrent financiering nog geen zekerheid bestaat. Onbehoorlijke taakvervulling belangrijke oorzaak faillissement.**

[BW art. 2:248]

*Het primaire verwijt dat de curator in wezen aan Osborne maakt is dat hij de onderneming is gestart, althans heeft voortgezet en jegens derden verplichtingen heeft aan laten gaan, terwijl de benodigde financiering niet was geregeld, zodat Osborne wist, althans behoorde te weten dat Vonos zijn verplichtingen niet zou kunnen nakomen.*
*In de onderhavige omstandigheden had een redelijk handelende bestuurder niet, in het vertrouwen dat het met de financiering wel goed zou komen, langer lopende verplichtingen mogen aangaan in de vorm van met name arbeidsovereenkomsten, van een omvang als in casu zijn aangegaan. Door aldus te handelen heeft Osborne immers een onaanvaardbaar groot risico genomen dat de onderneming de aangegane verplichtingen niet zou kunnen nakomen. Het gaat hier om een geval waarbij zeker is dat de onderneming voorshands onvoldoende eigen opbrengsten zal genereren om de verplichtingen te voldoen. De nakoming van die verplichtingen is dan geheel afhankelijk van de extern te verkrijgen financiering. In die omstandigheden moet als onbehoorlijk bestuur worden aangemerkt het aangaan van verplichtingen, terwijl omtrent die financiering nog geen behoorlijke zekerheid bestaat.*
*Dat de oorzaak van het faillissement in belangrijke mate gelegen is in de omstandigheid dat tegenover de aangegane verplichtingen geen voldoende financiering stond kan in redelijkheid niet worden betwijfeld.*