| | |
|---|---|
| Issue: | JOR 2007/5 |
| Source: | JOR 2007/112 |
| Heading: | Company law |
| Instance: | Supreme Court |
| Date: | 16 February 2007 |
| Cause list no. | CO5/173HR, LJN AZ0419 |
| Bench: | Mr Fleers |
| | Mr Van Buchem-Spapens |
| | Mr Numann |
| | Mr Hammerstein |
| | Mr Bakels |
| Pleadings: | Attorney General Timmerman |
| Author's note: | Messrs W.J.M. van Veen and T.H.M. van Wechem |
| Parties: | The brothers Tuin Beheer BV, Appellants in cassation, |
| | Of counsel: Mr G. Snijders |
| | *v* |
| | 1. The company Houthoff Buruma of Amsterdam, |
| | 2. Mr A.G.J. van Wassenaer of Abcoude, |
| | respondents in cassation, |
| | of counsel: (previously Mr P. van Schilfgaarde, now) Messrs H.J.A. Knijff and P.N. Ploeger |
| Subject matter: | Derivative loss |
| | Lawyer's professional liability for allowing appeal period to expire. |
| | The opportunities in proceedings in the event of higher appeal being lodged must be estimated to calculate damages. |
| | It must then be considered whether the shareholder (client) is entitled to claim against the former director on account of effecting company's bankruptcy |
| | Loss in the value of shares through unlawful act against the shareholder or failure of performance by director towards company? |
| | Creditor has no derivative loss but direct loss. |
| | Reference to Supreme Court 2 December 1994, NJ 1995, 288, with notes by Ma (Poot/ABP) and Supreme Court 29 November 1996, "JOR" 1997/26, with notes by SCIJK (Dohmen c.s./Amersfoortse) |
| Articles: | Civil Code vo. 6, art. 162 |

**Summary**

This case concerns whether, and if so, to what extent, a lawyer's client sustains loss as a result of the fact that the latter has neglected to lodge a higher appeal against the judgement that put the client in the wrong. To answer this question, we must consider in principle how the appeal court should have decided, or at least the sum to be allowed in this connection must be estimated on the basis of the favourable and unfavourable opportunities that the appellant would have had in higher appeal, had it been lodged.
The claim lodged by Tuin Beheer (the shareholder) in proceedings against Verheij (the director) was based on unlawful act. The basis of this claim was that Verheij as director or acting director of Tuin Recreatie (the company) deliberately and unnecessarily first of all engineered a suspension of payments and subsequently bankruptcy of the latter company, with the intention of obtaining the hotel (or its operation) at the lowest possible price.
In its judgement of 2 December, NJ 1995, 288, the Supreme Court held first of all that, if a third party causes financial loss to a public or private company by failing properly to discharge its contractual obligations towards the company or through conduct unlawful towards the company, only the company is entitled to claim satisfaction for the loss caused to it from the third party in this connection. The company's financial loss will or may result in a reduction in the value of the company's shares. However, the shareholders cannot in principle lodge their own claim in damages against the third party concerned on the basis of the prejudice sustained by them. The Supreme Court further held that loss such as this is the result of breach of a specific duty of care required of him. In Supreme Court 29 November 1996, "JOR" 1997/26, with notes by SCIJK, the loss that the shareholder sustains as a result of the reduction in the value of these shares in the company is referred to as derivative loss.

The rule mentioned in this connection concerns a case where a third party acted unlawfully or failed towards a company of which the claimant was a shareholder. This rule similarly applies in cases such as the present, where the company director failed in the discharge of the obligations towards that company resulting from his appointment/remit.

The simple fact that a foreseeable consequence of Verheij's actions was that Tuin Beheer was adversely affected as shareholder of Tuin Recreatie does not imply that Verheij was in breach of a specific duty of care towards Tuin Beheer in its capacity as shareholder. The latter also applies if Verheij unnecessarily and wilfully engineered the bankruptcy of Tuin Recreatie for her own benefit. If a company's director acts in this way, this reduces the value of the company's shares or even makes them worthless, and therefore results in derivative loss for the shareholder(s) of that company. However, if no additional circumstances are asserted, such as wilful intent therefore to disadvantage such shareholder, it cannot be said that the director in so acting has also infringed a specific duty of care towards that shareholder.

The rule stated in the appeal judgement of 2 December 1994, NJ 1995, 288 does not apply (as well) if payment is demanded by the shareholder for loss resulting from failure to discharge a claim.

The appeal court to which the case is referred will have to consider whether the actions of which Tuin Beheer accuses Verheij, if proved, towards Tuin Beheer conflict with what is expected in social dealings under unwritten law. When making this assessment, it should also be remembered that the director or acting director of a company and its shareholder(s) must behave towards each other according to the requirements for reasonableness and equity.

**Decision**

**Conclusions of the advocate-general**
(Mr Timmerman)

**Preliminary comment**
Houthoff et al. have been held liable for the wrongful failure to lodge higher appeal in time. To calculate the loss, the procedural opportunities must be estimated, had higher appeal been lodged in time. In this connection, it must be considered in the present case whether an entitlement is vested in the shareholder against the former director of the company on account of his deliberately and knowingly causing the company's bankruptcy.

**1. Facts**
1.1  The following facts may be assumed in cassation. (1)
1.2  Tuin Beheer was the sole shareholder of Gebr. Tuin Recreatie B.V. (hereinafter called "Tuin Recreatie). Tuin Recreatie ran a hotel in Callantsoog, called "Sportshotel Callantshoog", from 3 April 1985.
1.3  Tuin Recreatie received loans from, amongst others, Tuin Beheer and Nationale Investeringsbank N.V. in The Hague (hereinafter called "NIB) for the construction and operation of the hotel.
1.4  At NIB's request, Verheij Multiprojekt B.V. (hereinafter called "Verheij") investigated the continuity and viability of the hotel and reported thereon on 7 June 1988.
1.5  Tuin Recreatie and NIB subsequently agreed on a scheme of payments provided that Verheij would for the next three months become a director of Tuin Recreatie in place of P. Tuin, who was then also a director of Tuin Beheer. This arrangement was confirmed by letter from NIB of 29 June 1988.
1.6  Tuin Beheer appointed Verheij as director of Tuin Recreatie with effect from 1 July 1988 and dismissed P. Tuin as such.
1.7  On 12 August 1988, Verheij and NIB came to the conclusion in consultation that Tuin Recreatie was actually in a state of bankruptcy. Verheij requested provisional suspension of payments from the court at Alkmaar on 14 September 1988 on behalf of Tuin Recreatie. She spoke to P. Tuin about this on that day. The court granted the suspension of payments requested on 15 September 1988, appointing Mr H.J. Knuwer, lawyer at Den Helder, as administrator.
1.8  By letter of 20 September 1988, NIB cancelled the loans granted to Tuin Recreatie – in respect of which Tuin Recreatie owed NIB a total of DFls 3,094,242.85 at that point. Verheij made various offers for Tuin Recreatie's assets, namely the hotel, that Tuin Beheer found unacceptable, on behalf of a third party not further named. In order to prevent Verheij from accepting these offers on Tuin Recreatie's behalf, Tuin Beheer dismissed Verheij as director on 7 October 1988 and appointed itself as director in his place.
1.9  On 27 October 1988, the court at Alkmaar confirmed the bankruptcy of Tuin Recreatie, appointing Mr Knuwer aforesaid as receiver. The hotel was sold on that day to D. Hiemstra of Alkmaar for DFls 1,800,000.-, excluding VAT, and the contents of the hotel for DFls 100,000.- excluding VAT. The transfer was made on 9 November 1988. Verheij Horeca B.V. – a company associated with Verheij –

obtained possession of the Sporthotel on 9 February 1989 through a number of intermediate transactions.
1.10  Tuin Beheer summoned Verheij (and several companies associated with her) before the court of The Hague on 10 August 1989 and moved, in brief, that the court hold that Verheij had acted unlawfully towards it and that Verheij be ordered to pay damages, partly to be taxed by the court.  Tuin Beheer in particular accused Verheij of taking on the directorship of Tuin Recreatie in order to acquire the Sporthotel and unnecessarily seeking provisional suspension of payments on Tuin Recreatie's behalf in this connection.
1.11  By interim judgement of 27 March 1991, the court permitted Verheij to prove that she was reasonably able to decide to request temporary suspension of payments.  By final judgement of 25 March 1993, the court held that this was the case and rejected Tuin Beheer's claims, together with Verheij's claims in the cross-action.
1.12  Van Wassenaer assisted Tuin Beheer in these proceedings as lawyer.  Van Wassenaer wrongly advised Tuin Beheer by fax on 27 April 1993 that the period for appeals had expired on 24 July 1993.  The three-month appeal period expired on 24 June 1993 without higher appeal being lodged.
1.13  By letter of 29 July 1993, Tuin Beheer held Van Wassenaer liable for its loss as a result of the incorrect indication of the appeal period.

**2. Proceedings**
2.1  Tuin Beheer summoned Houthoff and Van Wassenaer before the court and asked the court, in brief, to hold that Houthoff and Van Wassenaer were guilty of professional error by indicating a wrong period for appeal and not lodging higher appeal in time, and that they were therefore liable towards it for its loss and that they be ordered to make good the loss, partly to be taxed by the court.
2.2  By interim judgement of 23 January 2002, the court upheld this professional error.  It then considered what the chances of success in higher appeal would have been had it been lodged.  In this connection, the court considered that the action of which Verheij was accused was not a failure of duty towards Tuin Beheer in the absence of a contractual relationship between Verheij and Tuin Beheer.  The court further considered whether such action was unlawful towards Tuin Beheer.  The court then came to the conclusion, summarising, that in principle only Tuin Recreatie was entitled to claim reparation for the damage done to it and that Tuin Beheer as shareholder had only a claim – to make good non-derivative loss – if Verheij had not acted with the necessary care in private dealings towards it.
2.3  The court then accepted for the time being that this was the case because Verheij, in conflict with what she had stated in her letter of 5 July 1988, did not keep P. Tuin actively informed of developments at Tuin Recreatie.  The court then considered the various loss items claimed by Tuin Beheer.  Part of this the court considered not proven for various reasons and for the remainder it requested further information.
2.4  In a final judgement of 19 February 2003, the court considered that the remaining loss items could also not be upheld and it rejected Tuin Beheer's claims.
2.5  By writ of 3 April 2003, Tuin Beheer lodged higher appeal.  Van Wassenaer and Houthoff put up a reasoned defence.  By judgement of 7 April 2005, the appeal court of Amsterdam upheld the disputed judgement.
2.6  Tuin Beheer lodged an appeal in cassation in time (2).  Van Wassenaar and Houthoff jointly rejected the appeal in cassation.  The parties had their views put in writing.

**3. Introduction to the remedy in cassation**
3.1  The remedy in cassation – especially point 3 – concerns whether a director's deliberately and knowingly rendering the shares of a company valueless conflicts with a duty of care towards the shareholder.  The appeal court answered this question in the negative.  Only the company is entitled to make a claim.  No right in damages is vested in the shareholder since the shareholder's financial loss is a derived loss.
3.2  The tenet of derived loss was described as follows in Supreme Court 2 December 1994, NJ 1995, 288 with notes by Ma (Pout/ABP).
"3.4.1 (…) Public limited companies and private companies and private limited companies are legal entities that participate independently in legal transactions vested with their own rights and obligations, even if, as is the case here, they are controlled by one person (sole director and sole shareholder).  A company's assets are separate from those of its shareholders.  If a third party causes a company financial loss by not properly discharging contractual obligations towards the company or through conduct that is unlawful towards the company, only the company is entitled to seek damages from such third party for the harm done to it in this connection.

The company's financial loss, if not made good, will result in a reduction in the value of the company's shares. However, in principle, the shareholders may not enforce a claim in damages of their own against the third party concerned by virtue of this disadvantage affecting them (initially). One might expect the company to claim damages against the third party to protect the interests of all those who have an interest in maintaining its assets; if it succeeds in doing so, the loss in value of the shares corresponding to such harm must also be considered made good. If the company were to fail to seek damages, those concerned need not accept this position; the Dutch legal system then offers sufficient opportunities for compelling the company's management nonetheless to make a claim".

3.3  If a third party causes harm to the company, a shareholder is entitled in damages only if he can demonstrate that the third party is also in breach of a specific duty of care towards himself. The simple assertion of non-performance or unlawful conduct towards the company does not suffice here. (3)

3.4  The rule laid down in Poot/ABP that a shareholder is not entitled to compensation for what is called derivative loss is strictly applied. The Supreme Court consequently left no exception (i) in the case where a director/sole shareholder situation arises (4) (ii) if the company can no longer validly enforce the claim on account of the company's bankruptcy, (5), (iii) if the company is or has made itself unable (e.g. by concluding an agreement) to seek compensation for its loss from the third party responsible, so it is the shareholders who ultimately sustain the loss (6) or (iv) if a manager (other than a duly elected director) damages the members of a cooperative through mismanagement. (7)  In all these cases the action in damages came to grief against the fact that no duty of care could be demonstrated that the third party claimed against had injured vis-à-vis the shareholder(s)/members, apart from the unlawful conduct/non-performance of the third party claimed against towards the legal entity.

3.5  The duty of care towards shareholders was in fact injured in Supreme Court 2 May 1997, NJ 1977, 662 (Kip.Rabobank). Rabobank was considered to have acted unlawfully towards shareholders (Kip and Sloetjes) since (i) Rabobank's careless credit policy had placed their company in an unfavourable financial position, (ii) Rabobank had subsequently pressured Kip and Sloeties to sell their shares at that unfavourable point, which ultimately led to financial loss for Kip and Sloetjes' assets.

3.6  I refer to the fine analysis of precedent regarding derivative loss in the conclusions by Attorney General Hartkamp before the Supreme Court, 13 October 2000, NJ 2000, 699 with notes by Ma (Heino Krause). (8)

3.7  I shall discuss the remedy against this background.

**4. Discussion of the remedy in cassation**

4.1  The remedy in cassation breaks down into 7 parts. Since the third part is the crucial part, I shall discuss this first of all.

4.2  Part 3 is directed against consideration 4.7 in the Appeal Court's judgement:

4.3  "4.7 Verheij was director of Tuin Recreatie. If it is true that Verheij acted in conflict with her remit and did not properly undertake management, as Tuin Beheer argues, there may be failure of performance or unlawful act by Verheij towards Tuin Recreatie. However, this does not as such mean that Verheij acted unlawfully towards Tuin Beheer. For this, Tuin Beheer should have put forward facts or circumstances indicating that the actions of which Verheij is accused also included conduct that was specifically careless towards it as shareholder. In the appeal court's opinion, Tuin Beheer has not done so or done so sufficiently. The accusations that Tuin Beheer is making against Verheij in this connection remain within the relationship between Tuin Recreatie as company and Verheij as its director, without any sufficient indication in what respect a duty is thereby infringed that Verheij should specifically have observed towards Tuin Beheer. This means that these accusations cannot form a basis for liability on Verheij's part towards Tuin Beheer. The accusations need not therefore be discussed in these proceedings."

4.3  Part 3 is aimed, in brief, at Tuin Beheer's having – contrary to what the appeal court felt – in fact specifically indicated in what respect Verheij was in breach of a duty of care towards it. After all, Tuin Beheer primarily based its claim on Verheij having acted unlawfully towards Tuin Beheer by deliberately and unnecessarily engineering a bankruptcy in order to be able to acquire the sports hotel on favourable terms herself. The deliberately unnecessary causing of the bankruptcy has the foreseeable consequence that the shareholder(s) is/are also adversely affected. In addition, this conduct must also be regarded as unlawful towards the shareholder(s). The Appeal Court's consideration is incomprehensible or betrays an incorrect view of the law, says this part.

4.4  The question that arises is whether the deliberate engineering of a bankruptcy and the shares consequently becoming valueless is not only unlawful towards the company but, this apart, must also be regarded as breach of a duty of care towards the company's shareholder(s). It was held in the

Poot/ABP judgement that taken on its merits, "making a company's shares valueless" does not amount to breach of a shareholder's subjective rights:

"3.4.3 Contrary to what was stated in part I (1), "making valueless" of shares by the alleged engineering of the bankruptcy cannot be regarded as breach of Poot's subjective rights, namely a breach that would be unlawful even if a duty of care towards Poot was not infringed. A share in a company is certainly a financial right but causing harm to the company cannot also be regarded as breach of such a financial right – to be exercised by the shareholder against the company – however much it may encroach on the company's rights, also having regard to the consideration under 3.4.1". I note that in the case of Poot/ABP, wilful act to the company's detriment was neither alleged nor proved (or at least, this was not raised in cassation). (9) According to A-G Hartkamp, this would not have altered the situation, either. In his conclusions regarding this appeal judgement, Hartkamp wrote:

"Even if the unlawful act was committed wilfully and in the awareness that the company would thereby sustain serious damage or become insolvent, the nature of the corporate relations and the purport of the infringed duty in my view prevent liability towards the shareholder(s) privately from being accepted." (10)

According to Hartkamp, the position is different in the case of wilful act detrimental to the shareholder: "A special circumstance that renders non-performance or an unlawful act towards the company an unlawful act against the shareholder(s) privately at the same time arises, in my view, e.g. in the case where the unlawful act or non-performance towards the company is committed with the deliberate aim of hitting the shareholder(s) privately, i.e. where the company is used, as it were, to hit the person(s) behind the company."

4.5 That wilful act to disadvantage the company does not as such amount to breach of a duty of care towards the shareholder(s) is confirmed in Supreme Court 12 December 1997, NJ 1998, 348 with note by Ma, JOR 1998, 29 (Ventaz). Here, a shareholder sought damages for an unlawful FNV union strike with the aim or at least the foreseeable consequence of the shares becoming valueless. The Supreme Court considered follows with regard to this claim:

"3.4 part 2 is directed against the Appeal Court's opinion (consideration 4.22) that the simple circumstance that others and the company, such as Vriesinga and Ventaz, were disadvantaged through the actions of the FNV Industrial Union against the company does not mean that such others have their own entitlement in damages against the FNV Union, and that this does not change now that the company has failed to lodge a claim against the union.

The part seeks to demonstrate that the rule formulated in consideration 3.4.1 of the said judgement of the Supreme Court of 2 December 1994 should not apply in a case such as the present, where it is argued that:
a.   The conduct of which the FNV Industrial Union is accused resulted in the company's bankruptcy and consequently in Ventaz's shares in the company becoming valueless;
b.   The union knew, or at least should have known, that its conduct will have these consequences;
c.   The union incited personnel to apply for bankruptcy of the company and blocked attempts by Ventaz to attract net worth or to cooperate with third parties, which may be taken to infer that the union also acted unlawfully against Ventaz.

This part cannot result in cassation through lack of interest. It is true that the documents before the court indicate that assertions were made by Ventaz as indicated under (a), (b) and (c) above, but it is evident in what the Court held in its considerations 4.25-4.28, taken in conjunction with considerations 4.10 and 4.11, that the Court in any event did not consider the assertion made under (c) as justified."

4.6 Summarising: the wilful disadvantaging of the company must be distinguished from wilful disadvantaging of a shareholder. In the former case, the shareholder stands there with empty hands. In the latter case – which one would not expect to occur all that frequently – some room does appear to exist in principle for independent action by the shareholder.

4.7 I can take what Tuin Beheer has argued in actual hearings – a broad basket of facts as referred to; in brief, this comes down to Verheij having willingly and knowingly engineered the bankruptcy of Tuin Recreatie – only to mean disadvantaging of Tuin Recreatie. Not disadvantaging of Tuin Beheer. I am willing to accept that disadvantaging of Tuin Beheer is a foreseeable consequence of Verheij's alleged wilful engineering of Tuin Recreatie's bankruptcy. However, this does not as yet mean that disadvantaging of Tuin Beheer is also Verheij's primary aim. Forceable disadvantaging in itself is insufficient for assuming breach of a duty of care specifically towards Tuin Beheer. In other words, the facts as presented by Tuin Beheer from the actual events do not indicate clearly to me what specific duties of care Verheij may have infringed towards Tuin Beheer. Non-performance or unlawful conduct towards the company usually means loss or derived loss for shareholders as the foreseeable consequence as long as the damage is not made good to the company. If a shareholder should also acquire an entitlement to claim in such a case, this would also result in the shareholder being able to

recover from the third party causing the loss preferentially above competing creditors in the bankruptcy. In my opinion, this would be an undesirable short-circuiting of the legal system.

4.8 I do not feel that the appeal court's judgement shows an incorrect view of the law nor incomprehension. The part fails on this point.

4.9 Part 1 is directed with a legal and substantiation claim against consideration 4.5 of the appeal court's judgement, especially the first sentence. Consideration 4.5 should be read in conjunction with consideration 4.4. Both considerations concern the argument as it would be formulated by Tuin Beheer – if it had been submitted in time for higher appeal – that the court failed to see that a contractual relationship existed between Tuin Beheer and Verheij.

4.10 In consideration 4.4, the appeal court rejects this argument. Since this provided no basis for a claim for non-performance, the appeal court in consideration 4.5 holds that a basis must in that case be found in Verheij's unlawful actions. In considerations 4.6 to 4.11, the appeal court comes to the conclusion that Verheij did not act carelessly specifically against Tuin Beheer.

4.11 The part states that the appeal court failed to see according to what it stated in consideration 4.5 that Tuin Beheer also in the present proceedings based its claim on recourse to breach of art. 2:8 (1) Civil Code.

4.12 The part lacks a factual basis. Tuin Beheer asserted at first instance only – in the proceedings against Houthoff et al. – that it would have put forward breach of art. 2:8 Civil Code as an independent basis for its claim against Verheij in higher appeal. (11) Contrary to what Tuin Beheer evidently intended, the court then took account of the alleged breach of art. 2:8 Civil Code when considering whether an unlawful act had occurred (12). Tuin Beheer directed no remedy in higher appeal against the fact that the court did not consider whether breach of art. 2:8 Civil Code independently offers the basis for a claim by Tuin Beheer against Verheij. Since Tuin Beheer (i) put forward no remedies directed at the court's incorrectly disregarding its assertion that Art. 2:8 (1) Civil Code may form a basis for its claim and (ii) consideration 4.5 concerns the argument that the court wrongly came to the conclusion that no contractual relationship existed between Tuin Beheer and Verheij, this part fails

4.13 Besides, the court in my view correctly took account of whether art. 2:8 (1) Civil Code was infringed on the question of whether Verheij committed an unlawful act towards Tuin Beheer. Van Schilfgaarde has commented on this question in the past. I quote "in certain circumstances, recourse may be possible to art 2:8 Civil Code. This provision refers to the somewhat tighter link between a director and a shareholder compared with that between the shareholder and an arbitrary counterpart of the company. However, art. 2:8 taken in itself does not lay down any very specific duty. In the present case, concrete circumstances will therefore have to be put forward that against the background of art. 2:8 Civil Code indicate breach of a specific duty of care. But even then, we are not yet out of the wood. After all, we learn from Poot-ABP that even if breach of a specific duty of care may be assumed, so that an unlawful act has occurred towards the shareholder, this does not as yet mean that loss through the reduction in the value of shares is eligible for compensation. At least, I can see no reason for allowing any general exception to the "damage rule" with regard to the shareholder-director relationship". (13)

I agree with this view of Van Schilfgaarde. An added fact is that art. 2:8 Civil Code, in my opinion, does not offer an independent basis for a statutory commitment in damages, in addition to art. 6:162 Civil Code. (14) I again quote, but now from Maeijer:

"Acting in conflict with art. 8 (1) may similarly amount to an unlawful act as breach of a statutory obligation with the associated consequences if the requirements of art. 6:162 et seq. Civil Code are met". (15)

The part must also therefore fail on substantial grounds.

4.14 Part 2 is directed against consideration 4.6:

4.6. The complaint that Tuin Beheer makes against Verheij is essentially of two parts, namely on the one hand that Verheij failed to keep to the promise in the letter of 5 July 1988 to keep it informed and, on the other, that Verheij contrary to her instructions did not ensure that Tuin Recreatie functioned better but engineered a suspension of payments – whereupon bankruptcy was unavoidable – and that Verheij committed serious errors in undertaking the administration of Tuin Recreatie."

4.15 The part stated that the explanation that the appeal court gives of the complaint that Tuin Beheer makes against Verheij is incomprehensible. According to consideration 4.6, the appeal court did not adequately recognise that Tuin Beheer also based its claim on the fact that Verheij willingly and knowingly unnecessarily caused the bankruptcy of Tuin Recreatie, doing so in order to be able to take on the operations of Sporthotel Callantsoog from Tuin Recreatie as cheaply as possible.

4.16 As already explained when discussing part 3, in the case of willingly and knowingly but unnecessarily causing bankruptcy (as director) of a company there is generally no question of a specific duty of care being infringed towards the shareholder(s) of that company. As the appeal court correctly

considered for Tuin Beheer's claim to be successful, it is also necessary for Verheij to have acted carelessly specifically towards Tuin Beheer. (16)  Wilful act towards the bankruptcy of Tuin Recreatie is not sufficient for this  (17).  Wilful act to Tuin Beheer's detriment I feel has neither been argued nor demonstrated.  The part fails.

4.17  Part 4 is also directed against consideration 4.7.  It states that the appeal court failed to see that an incorrect discharge of duty by a company director can undoubtedly also be unlawful in principle toward the shareholders of the company.

4.18  The part lacks factual basis.  The appeal court did not feel that an incorrect discharge of duty by a director cannot be unlawful towards shareholders.  The appeal court felt that Tuin Beheer neglected to argue a specific duty of care on the basis of which the management could also be considered unlawful towards the shareholders, a part that has not been successfully disputed.

4.19  Part 5 indicates that the appeal court failed to see that Tuin Beheer acts not only as shareholder of Tuin Recreatie but also in its capacity as creditor of the company.

4.20  That the appeal court refers to Tuin Beheer in consideration 4.7 only as shareholder of Tuin Recreatie, while Tuin Beheer is also claiming damages as creditor of Tuin Recreatie, does not seem to me a shortcoming of any importance.  In both capacities Tuin Beheer will be able to proceed against Verheij successfully only if a specific duty of care towards it has been breached.  Since the appeal court indicates in this consideration that there is no question of this, the part fails.

4.21  Part 6 incorrectly assumes that the "reasons mentioned in the parts referred to above of this remedy" are accurate and therefore lacks factual basis.  The additional complaint – that the appeal court insufficiently explained its reasons why Verheij cannot be liable towards Tuin Beheer in damages as creditor of Tuin Recreatie – states the same as part 5, which was found to be incorrect and shares its fate.

4.22  Part 7 is directed against consideration 4.18 and states that the appeal court wrongly neglected Tuin Beheer's offer to provide evidence in higher appeal.  This complaint fails.  Tuin Beheer certainly offered to show proof of all its assertions – especially by examining witnesses – but since the appeal court considered – not successfully impugned – that these assertions cannot provide a basis for Verheij's liability towards Tuin Beheer, the appeal court was permitted to disregard this offer of evidence as immaterial.

**5  Conclusion**
This is that the appeal must be rejected.

**Supreme Court**

**(…; ed.)**

**3. Assessment of the remedy**
3.1 The following may be assumed in cassation.
i.  Tuin Beheer was the sole shareholder of Gebr. Tuin Recreatie B.V. (hereinafter called "Tuin Recreatie).  Tuin Recreatie operated a hotel at Callantsoog, called "Sporthotel Callantsoog" (hereinafter called "The Hotel"), as from 3 April 1985.
ii.  Tuin Recreatie received loans for the construction and operation of the hotel from, amongst others, Tuin Beheer and Nationale Investeringsbank NV. in The Hague (hereinafter called "NIB).
iii.  At NIB's request, Verheij Multiprojekt B.V. (hereinafter called "Verheij") investigated the continuity and viability of the hotel and reported thereon on 7 June 1988.
iv.  Tuin Recreatie and NIB subsequently concluded a payment arrangement on condition that Verheij would become a director of Tuin Recreatie for the three months following instead of P. Tuin, who was then also director of Tuin Beheer.  This arrangement was confirmed by letter from NIB of 29 June 1988.
v.  Tuin Beheer appointed Verheij as director of Tuin Recreatie with effect from 1 July 1988 and dismissed P. Tuin as such.
vi.  On 12 August 1988, Verheij and NIB came to the conclusion in consultation that Tuin Recreatie was actually constructively bankrupt.  Verheij requested provisional suspension of payments from the court in Alkmaar on 14 September 1988.  She discussed this with P. Tuin on that day.  The court granted the suspension of payments as requested on 15 September 1988, appointing Mr H.J. Knuwer, lawyer at Den Helder, as administrator.
vii.  By letter of 20 September 1988, NIB cancelled the credits granted to Tuin Recreatie, by virtue of which Tuin Recreatie owed NIB DFls 3,094,242.85 at that point.  Verheij made various bids for the assets of Tuin Recreatie, in particular the hotel, on behalf of a third party to be named in due course,

whom Tuin Beheer did not consider acceptable. To avoid Verheij accepting the bids on Tuin Recreatie's behalf, Tuin Beheer dismissed Verheij as director on 7 October 1998 and appointed itself as director in her place.

viii. On 27 October 1988, the court at Alkmaar confirmed the bankruptcy of Tuin Recreatie, appointing Mr M. Knuwer aforesaid as receiver. The hotel was sold on that day to D. Hiemstra of Alkmaar for DFls 1,800,000.- excluding VAT, and the contents of the hotel for DFls 100,000.- excluding VAT. The transfer was made on 9 November 1988. Verheij Horeca B.V. – a company associated with Verheij – ultimately obtained possession of the hotel on 9 February 1989 through a number of intervening transactions.

ix. Tuin Beheer summoned Verheij (and several of the companies associated with her) before the court in The Hague and claimed (in brief, that judgement should be obtained that Verheij had acted unlawfully towards it and that it be awarded damages against Verheij, partly to be taxed by the court. Tuin Beheer in particular accused Verheij of becoming a director of Tuin Beheer in order to acquire the hotel and that, in this connection, she unnecessarily requested the provisional suspension of payments on Tuin Recreatie's behalf.

x. By intermediate judgement of 27 March 1991, the court permitted Verheij to demonstrate that she was able to decide reasonably to obtain provisional suspension. By final judgement of 24 March 1993, the court held that this was the case and rejected Tuin Beheer's claims, and the claims by Verheij in a cross action.

xi. Van Wassenaer assisted Tuin Beheer in these proceedings as attorney. Van Wassenaer wrongly advised Tuin Beheer in a fax of 27 April 1993 that the appeal period had expired on 24 July 1993 (hereinafter called the "professional error"). The appeal period of 3 months expired on 24 June 1993 without higher appeal being lodged.

3.2 In these proceedings, Tuin Beheer held Van Wassenaer and Houthoff liable (the partnership to which Van Wassenaer belonged at that time) for the professional error incurred by the former. The court held, in brief, that Van Wassenaer was in deed guilty of professional error through his act and omission referred to in 3.1 (xi). It further held that Verheij had acted unlawfully towards Tuin Beheer in that P. Tuin had not been kept actively informed of developments at Tuin Recreatie. However, it considered the claims made by Tuin Beheer as ineligible for various reasons and consequently rejected the applications.

The appeal court consequently confirmed this judgement. Summarised very briefly, the appeal court considered as follows in this connection. The appeal court left it undecided whether Verheij had in fact acted towards Tuin Recreatie in conflict with its remit and had not properly undertaken the administration entrusted. Even if this had not been the case, it is still not of course established that Verheij acted unlawfully towards Tuin Beheer. This requires the actions of which she is accused to have been specifically careless vis-à-vis Tuin Beheer as shareholder. Tuin Beheer has put forward insufficient facts for this purpose.

3.3 In considering the remedy raised by Tuin Beheer, the following must serve as criterion.

a. This action is concerned with whether, and if so, to what extent, a lawyer's clients sustain loss as a result of the fact that the latter neglected to make submissions in higher appeal against a judgement that had put that client in the wrong. To answer this question, we must consider in principle how the appeal court would have decided, or at least the sum to be awarded in this connection must be estimated on the basis of the chances of success and loss the appellant would have had on higher appeal, had it been lodged (Supreme Court 24 October 1997, no. 16384, NJ 1998, 257).

b. The claim lodged by Tuin Beheer in proceedings against Verheij referred to under 3.1 (ix) above was based on unlawful act. The basis of this claim was, in brief, that Verheij deliberately and unnecessarily as Tuin Recreatie's director/provisional director engineered firstly a suspension of payments and secondly the latter's bankruptcy, with the intention of obtaining possession of the hotel or its operation at the lowest possible price. The appeal court left the accuracy of this assertion undecided, so that it also serves as a criterion in cassation.

c. In its judgement of 2 December 1994, no. 155155, NJ 1995, 288, the Supreme Court held firstly that, if a third party causes a public or private company financial loss through not properly discharging contractual obligations towards the company or through conduct that is unlawful towards the company, only the company is entitled in this respect to claim compensation from the third party for such loss caused to it. The company's financial loss will, or may, if not made good, result in a reduction in the value of the company's shares. However, in principle, the shareholders cannot by virtue of the disadvantage arising for them being claims of their own in damages against the said third party. In addition, the Supreme Court has held that a shareholder is entitled to have loss sustained by him in that capacity made good only if such damage is the result of breach of a specific duty of care towards him. In Supreme Court 29 November 1996, no. 16136, "JOR" 1997/26, with notes by SCIJK, NJ 1997, 178,

the loss that the shareholder sustains as a result of the reduction in the value of his shares in the company is referred to as derived loss.

d. The rule referred to in (c) above concerns a case where a third party acted unlawfully or failed towards a company of which the claimant was the shareholder. This rule similarly applies in cases such as the present, where the director of a company – as must be assumed as a presumption in cassation – failed in the discharge of obligations towards that company resulting from his appointment/remit.

3.4 Part 3, which the Supreme Court will discuss first, is directed against consideration 4.7 of the impugned judgement, where the appeal court held as follows.

"Verheij was director of Tuin Recreatie. If it is true that Verheij acted in conflict with her remit and did not undertake the management properly, as Tuin Beheer asserts, there may be failure or unlawful action by Verheij towards Tuin Recreatie. However, this does not mean as yet that Verheij acted unlawfully towards Tuin Beheer. For this, Tuin Beheer would have had to put forward facts or circumstances – special – from which it follows that the acts of which Verheij is accused also amount to conduct that was specifically careless towards it as shareholder. In the opinion of the appeal court Tuin Beheer did not do so or do so sufficiently. The accusations that Tuin Beheer is making against Verheij in this connection remain within the relationship between Tuin Recreatie as company and Verheij as its director, without it being sufficiently indicated in what respect a duty is thereby infringed that Verheij should specifically have observed towards Tuin Beheer. This means that these accusations cannot form a basis for Verheij's liability towards Tuin Beheer. The accusations need not therefore be discussed in these proceedings."

According to the part, which contains both a legal complaint and one of motivation, Tuin Beheer did sufficiently specifically assert in what respect Verheij is in breach of a duty of care towards it. After all it primarily based its claim on Verheij having acted unlawfully towards it through unnecessarily and wilfully bringing about the bankruptcy of Tuin Recreatie for her own benefit. Tuin Beheer is consequently disadvantaged also as shareholder of Tuin Recreatie, which was a foreseeable consequence of Verheij's actions.

3.5 Contrary to what is argued in the part, the simple fact that a foreseeable consequence of Verheij's method of acting was that Tuin Beheer was disadvantaged as a shareholder of Tuin Recreatie does not imply that Verheij is in breach of a specific duty of care towards Tuin Beheer in its capacity as shareholder. The latter also applies if Verheij unnecessarily and wilfully caused the bankruptcy of Tuin Recreatie for her own benefit. If a company director behaves in this way, this will result in a reduction in the value of the shares in the company, or even render them worthless, and therefore in derivative loss for the shareholder(s) of that company. However, if no additional circumstances are put forward, such as wilful intent to disadvantage the shareholder in this way, it cannot be said that the director in so acting was also in breach of a specific duty of care towards such shareholder. The legal complaint in this part cannot therefore meet any purpose. The motivation complaint also fails because the appeal court's finding that the accusation that Tuin Beheer has made against Verheij remains within the relationship between Tuin Recreatie as a company and Verheij as its director, without it being sufficiently indicated in what respect a duty is thereby infringed that Verheij should specifically have observed towards Tuin Beheer as shareholder, since the above considerations are in every respect comprehensible.

3.6 The core of part 1 implies that the appeal court wrongly considered Tuin Beheer's claim on the basis of unlawful act, although Tuin Beheer also relied in this connection on art. 2:8 (1) Civil Code.

The part cannot result in cassation because it lacks factual basis. After all, according to consideration 4.9, the appeal court, evidently following in the tracks of the lower court, and to that extent undisputed on higher appeal, included (rightly) the provision formulated in art. 2:8 (1) Civil Code and the special duty of care following from it when answering the question whether Verheij acted unlawfully towards Tuin Beheer as shareholder of the company in her capacity as director or temporary director of Tuin Recreatie.

3.7 Part 2 is directed against consideration 4.6, where the appeal court held as follows:

"The complaint that Tuin Beheer makes against Verheij essentially falls into two parts, namely on the one hand that Verheij failed to comply with the promise in the letter of 5 July 1988 to keep it informed and, on the other, that Verheij did not ensure that Tuin Recreatie operated more effectively, in conflict with her remit, but engineered a suspension of payments – after which bankruptcy was unavoidable – and that Verheij made serious errors in conducting the management of Tuin Recreatie."

According to the part, the appeal court gave an incomprehensible explanation in this consideration of the accusation that Tuin Beheer is making against Verheij. After all, Tuin Beheer based its claim also on Verheij having willingly and knowingly unnecessarily caused the bankruptcy of Tuin Recreatie, doing so in order to take over operation of the hotel as cheaply as possible.

This part lacks factual basis. The appeal court's decision in consideration 4.7 that Tuin Beheer's accusations, which come down to Verheij not having properly undertaken the management in conflict with her instructions, remain within the relationship between Tuin Recreatie as company and Verheij as its director, extend after all also to the accusation that Tuin Recreatie's bankruptcy was unnecessarily brought about.

3.8 Part 4 is directed against consideration 4.7 and essentially argues that the appeal court failed to see that improper discharge of duty by a company director can certainly be unlawful towards shareholders of the company.

This part also lacks factual basis. After all, the appeal court did not fail to see this but simply held that in the present case Verheij did not act unlawfully towards Tuin Beheer.

3,9 Part 5 serves to indicate that the appeal court failed to see that Tuin Beheer's claim is based not only on its capacity as a shareholder of Tuin Recreatie but also on its capacity as creditor. After all, it also stated that it sustained loss through the debt on current account of DFls 1,7894,036.- that Tuin Recreatie held against it remaining unsettled.

This part is on the mark. It already follows from the working of the appeal judgement of 2 December 1994 quoted in 3.3 (c) above that the duty referred to therein does not or not also apply if the shareholder seeks compensation for loss that he sustains in another capacity through a reduction in the value of his shares in the company. The claim by Tuin Beheer – in itself undisputed - on current account, which had been converted to a deferred loan at NIB's request shortly before Tuin Recreatie's bankruptcy, remaining unsettled as a result of Tuin Recreatie's bankruptcy is, after all, not derivative loss to Tuin Beheer. It in fact does not comprise a reduction in the value of the shares that Tuin Beheer held in Tuin Recreatie, but a reduction in the value of the claim that Tuin Beheer had against Tuin Recreatie.

3.10 The following is further held in connection with the further progress of the dispute following referral. The simple fact that Tuin Beheer's claim against Tuin Recreatie became valueless through Verheij's actions does not as yet imply that the latter acted unlawfully towards Tuin Beheer. The appeal court, to whom the matter will be referred, will have to consider whether the conduct of which Tuin Beheer accuses Verheij, if proved, against Tuin Beheer conflicts with what is proper in social dealings in unwritten law. The criterion then applies that, if the interests of a third party – such as Tuin Beheer in this case – are so closely involved in the actual discharge of an agreement – such as the remit agreement concluded in this case between Verheij and Tuin Recreatie – that he may sustain loss or other disadvantage if a contracting party falls short of execution, the rules that apply to what may be expected in social dealings in unwritten law may indicate that such contracting party must take account of these interests by ensuring that his conduct is also guided by such interests (Supreme Court 24 September 2004, no. C03/101, RvdW 2004, 108). In making this assessment, the court to which the matter is referred will also have to consider that the director or temporary director of a company and its shareholder(s) must behave towards each other in the way required through reasonableness and equity (art. 2:8 (1) Civil Code).

3.11 The success of part 5 implies that part 6 need not be discussed but that part 7, where a complaint is made that the offer of proof that Tuin Beheer made in higher appeal was overlooked, is on the mark, the latter having regard also to the degree to which this offer to produce evidence was detailed.

**4. Decision**
The Supreme Court:
Quashes the judgement of the appeal court of Amsterdam of 7 April 2005;
refers the matter to the appeal court of The Hague for further consideration and decision;
with costs in cassation against Van Wassenaer and Houthoff (…).

**Note:**
1. This decision is essentially concerned with the liability of a company director towards a shareholder based on unlawful act. The question arises within the framework of a claim in damages against those who assisted the shareholder in connection with this claim at first instance but failed in lodging higher appeal in time against the judgement whereby the shareholder was placed in the wrong.
The basis of the claim against the director was, briefly stated, that she deliberately and unnecessarily first engineered the suspension of payments and subsequently the bankruptcy of the company, with the intention of obtaining possession of one of the company's assets, namely the Sporthotel Callantsoog, for the lowest possible price. The appeal judgement is of interest because, in the present case, the claimant was not only shareholder but also creditor of the company. This made the difference in the decision.

2. A criterion in consideration is that where a director falls culpably short of the obligations imposed on him towards the company, the company can in principle claim damages. The Supreme Court considers in this connection that it makes no difference whether a third party or a director has caused damage to the company. Compare in this context also Supreme Court 13 October 2000, "JOR" 2000/239, NJ 2000, 699, with further note by MA (Heino Krause) where the question arose whether a director (not also the manager) of a cooperative could be held liable for loss sustained by members of the Cooperative as a result of damage that he caused to the cooperative through his mismanagement.

Unless the financial loss sustained by the company can be recovered from the third party or, as in the present case, the manager, this can be expressed in a reduction in the value of the shares. The shareholder will be able to recover this so-called derivative loss from the perpetrator only if the latter is in breach of a duty of care specifically applying towards the shareholder, according to Supreme Court 2 December 1994, NJ 1995, 288, with note by MA (Poot/ABP). The Supreme Court confirmed this line in subsequent judgements, mentioned in the Attorney- General's conclusions. For an attempt to devise a special duty of care by virtue of a contractual relationship between the shareholder and the perpetrator of a loss, see Supreme Court 15 June 2001, "JOR" 2001/172, with note by Koreze, NJ 2001, 573, with note by Ma. In this matter, the remedy concerned further failed because the technical grounds, also, had been adequately complied with (consideration 3.4.6). The simple assertion of non-performance or unlawful conduct towards the company is not therefore sufficient to be able to establish liability to the shareholder. In the present judgement, the Supreme Court finds on this point that if no additional circumstances are asserted, such as a deliberate attempt to disadvantage this shareholder thus, it cannot be said that the director in so acting was also in breach of a specific duty of care towards this shareholder.

What is noteworthy in this case is the Supreme Court's choice of words "such as the deliberate intent to disadvantage the shareholder thus". Did the Supreme Court mean by this that there is a duty to make good derivative loss on wilful act but that this may also exist in other cases? Or is the Supreme Court indicating here that wilful act is required in principle for derivative damage to be made good and that this may also be the case without wilful act but only in very exceptional situations. We tend towards the latter.

3. However, the appeal judgment is taking a positive course for the claimant. The claimant had also in fact asserted on higher appeal that the director acted unlawfully towards him in his capacity as the company's creditor by behaving in the way described above. In his conclusions regarding the appeal judgement, the Attorney-General indicated that the capacity in which damages are demanded makes no difference. If it is held against the claimant in his capacity as shareholder that no specific duty of care towards him is infringed, this implies that there was no question of such infringement against the claimant in another capacity as well. The Supreme Court does not follow the Attorney-General on this point.

In the Poot/ABP appeal judgement, the Supreme Court already held that the duty of care formulated in art. 6:162 Civil Code concerns "the care that must be observed in a particular legal relationship towards one or more specified others (…)." In line with this the Supreme Court holds in the present judgement that the fact that there is no question of a duty of care being infringed in the relationship with the claimant in his capacity as shareholder does not imply that there is also no question of a duty being infringed towards the claimant in his capacity as creditor. The nature of the legal relationship and consequently that of the loss sustained is therefore – quite rightly – decisive.

It would seem that the Supreme Court is referring here to the principle of relativity under art. 6:163 Civil Code. The infringement of the duty which is probably sufficient to protect the shareholder from his loss sustained in his capacity as the company's creditor, is not substantial enough (or need not be substantial enough) to protect the same shareholder from his derivative loss. It is noteworthy that the Supreme Court does not refer to its judgements on traditional external director's liability based on unlawful act. In consideration 3.10, the Supreme Court in fact points in this connection to its judgement in Supreme Court 24 September 2004, "JOR" 2004/341. It held here that an unlawful act may exist if the victim's interests are so closely involved in proper execution of an agreement that he may sustain loss or other prejudice if a contracting party fails in such execution. In that case, the duties expected in social dealings according to unwritten law may imply that such contracting party must take account of these interests in his behaviour, partly by bringing these interests to bear. The Supreme Court adds to this in the same legal consideration that the court to which the case is referred must also include in its judgement that the director of a company and its shareholder(s) must act towards each other in the way required in reasonableness and equity by virtue of art. 2:8 Civil Code. For the relationship between corporate reasonableness and equity and 6:162 Civil Code, see also Supreme Court 17 May 1991, NJ 1991, 645, with note by Ma (Lampa/Tonnema). Just as easily as a contractual relationship can colour the reasonableness and equity that must be observed by virtue of art. 2:8 Civil

Code, such reasonableness and equity may consequently colour non-corporate legal relations between those concerned in a legal entity. A creditor who also belongs amongst those at whom art. 2:8 Civil Code is directed is a step ahead in this respect of a creditor who does not belong amongst them.

The Supreme Court may therefore probably have wanted to give a signal in consideration 3.10 that the claim is in principle eligible to be upheld. The cause offers sufficient footholds for this. The claimant had provided the company with a substantial sum as a deferred loan and the director was appointed, on the basis of a report from her own hand on the company's viability, by the claimant (in his capacity as sole shareholder) as manager (or temporary manager) with the aim of rendering the company financially healthy. The trust hereby placed in the director must be weighed up when considering whether a duty of care specifically towards the claimant in his capacity as creditor was infringed.

W.J.M. van Veen, senior lecturer at the Free University and scientific advisor on notarial company law, Baker & McKenzie, Amsterdam

T.H.M. van Wechem, associated with Bakers & McKenzie, Amsterdam, and director of Law@Work BV

**Footnotes**

[1] The facts are derived from considerations 4.1.1 to 4.2.2 of the impugned judgement (*source*: the court)

[2] The summons in cassation was served by writ dated 4 July 2005 (*source:* the court)

[3] Supreme Court 2 December 1994, NJ 1995, 288 with note by Ma (Poot/ABP), Consideration 3.4.3 (*source*: the court)

[4] Supreme Court 2 December 1994, NJ 1995, 288 with note by Ma (Poot/ABP), Consideration 3.4.3 (*source*: the court)

[5] Supreme Court 14 July 2000, NJ 2001, 685 with note by Kortmann (Mosselaar/Lagero), Consideration 3.6.4 (*source*: the court)

[6] Supreme Court 15 June 2001, NJ 2001, 573 with note by Ma (Chipsol), Consideration 3.4.3 (*source*: the court)

[7] Supreme Court 13 October 2000, NJ 2000, 699 with note by Ma (Heino Krause), Consideration 3.3 (*source*: the court)

[8] See 4 to 8 of these conclusions (*source*: the court)

[9] For this see the Conclusions by Attorney-General Hartkamp, item 12, before this judgement (*source*: the court)

[10] For this see the conclusions by Attorney-General Hartkamp, item 12 before this judgement (*source*: the court)

[11] Statement of reply also including amendment of the claim, 4 November 1998, item 74 (*source*: the court)

[12] Consideration 4.8 of the interim judgement of 23 January 2002 (*source*: the court)

[13] Van Schilfgaarde, Actions by shareholders in connection with unlawful conduct towards the company in *Rechtpleging in het ondernemingsrecht*, 1997, p. 8 (*source*: the court)

[14] Views on this differ in the literature, see Huizink, *Rechtspersonen* (loose leaf) art. 2:8, Civil Code, note 8  (*source*: the court)

[15] Asser-Van der Grinten-Maeijer, 2-II, item 46 (eighth edition) (*source*: the court)

[16] Consideration 4.5 of the impugned judgement (*source*: the court)

[17] In the same terms: Attorney-General Hartkamp before 2 December 1994, NK 1995, 288 with note by Ma (Poot/ABP), item 12 (*source*: the court)