# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X

STEPHEN M. WILSON, BRW ENGINEERING LTD.,
WIS PARTNERS LTD., MOSHE BAR-LEV, PATRICK
ROSENBAUM, MICHAEL MORRIS, HAIM YIFRAH,
TOP DOWN PARTNERS, LLC, JOEL LEVINE,
MORRIS TALANSKY, ABRAHAM MOSHEL,
MAGMA INTERNATIONAL SERVICES, LTD.,
ALBERT REICHMANN, HEXAGRAM & CO., and
POLYBUTES COMPANY,

                Plaintiffs,

         -against-

IMAGESAT INTERNATIONAL N.V., ISRAEL
AEROSPACE INDUSTRIES LTD., ELBIT SYSTEMS
LTD., MOSHE KERET, IZHAK NISSAN, JACOB
WEISS, MENASHE BRODER, SHIMON ECKHAUS,
MICHAEL FEDERMAN, ESTATE OF JACOB TOREN,
JOSEPH ACKERMAN, JOSEPH GASPAR, GINO
PIPERNO-BEER, JAMES DEPALMA, DAVID ARZI,
YOAV CHELOUCHE, and YEHOSHUA ELDAR,

              Defendants.

----------------------------------------------------------------- X

:
:
:        **Filed Electronically**
:
:
:        07 Civ. 6176 (LTS)
:

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS ON BEHALF OF DEFENDANTS IMAGESAT INTERNATIONAL N.V., ISRAEL AEROSPACE INDUSTRIES LTD., ELBIT SYSTEMS LTD., MOSHE KERET, IZHAK NISSAN, JACOB WEISS, SHIMON ECKHAUS, GINO PIPERNO-BEER, DAVID ARZI, YOAV CHELOUCHE, MICHAEL FEDERMANN, ESTATE OF JACOB TOREN, JOSEPH ACKERMAN, JOSEPH GASPAR AND YEHOSHUA ELDAR**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................ iii

PRELIMINARY STATEMENT ....................................................................... 1

I.   THE COMPLAINT SHOULD BE DISMISSED ON GROUNDS OF *FORUM NON CONVENIENS* ................................................................................ 2

    A.   Plaintiffs' Decision to Litigate Their Claims in New York Rather than in Israel is Entitled to Little Deference ...................................................... 3

        1.   Plaintiffs are Primarily International Investors ............................... 4

        2.   The Allegations Relate Almost Exclusively to Israel ...................... 6

    B.   Israel is an Available and Adequate Alternative Forum ........................... 9

    C.   Balance of Factors Weighs in Favor of Litigation in Israel ..................... 10

        1.   The Private Interest Factors Favor Litigation in Israel ..................... 10

        2.   The Public Interest Factors Favor Litigation in Israel ..................... 12

            i.    Administrative Burden ................................................... 13

            ii.   Jury Considerations ....................................................... 13

            iii.  Local Interest in the Dispute ............................................ 14

            iv.   Relationship of Governing Law to the Forum ..................... 14

II.  THIS ACTION SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION ..................................................................... 15

    A.   There is No Diversity Jurisdiction in this Action ................................ 15

    B.   The Court Should Decline to Exercise Supplemental Jurisdiction Over the State Law Claims After Dismissing the RICO Claim ............................ 16

III. PLAINTIFFS DO NOT HAVE STANDING TO ASSERT THE CLAIMS FOR BREACH OF FIDUCIARY DUTY (CLAIMS 1-6), CORPORATE WASTE (CLAIMS 7-9), SELF-DEALING (CLAIM 10), AND FRAUD (CLAIM 13) ................ 18

    A.   Plaintiffs' Right To Bring Claims Relating to the Internal Affairs of ImageSat Must Be Determined By The Law of the Netherlands Antilles .............. 18

    B.   Plaintiffs' Claims Do Not Satisfy the Limited Circumstances Under Which Shareholders of a Netherlands Antilles Corporation May Sue the Corporation or its Directors .......................................................... 21

    C.   Plaintiffs' Claims Do Not Satisfy the Limited Circumstances Under Which Shareholders of a Netherlands Antilles Corporation May Sue Another Shareholder ........................................................................... 26

    D.   Applying Netherlands Antilles Law to Determine Whether Plaintiffs Have Standing is Consistent with Public Policy ........................................ 26

IV.  THE PLAINTIFFS WHO HOLD ONLY OPTIONS OR BRIDGE WARRANTS
LACK STANDING TO SUE ............................................................................... 27

V.  PLAINTIFFS' CAUSE OF ACTION FOR CONVERSION AND
MISAPPROPRIATION (CLAIM 21) MUST BE DISMISSED FOR LACK OF
STANDING AND FAILURE TO ALLEGE NECESSARY FACTS .............................. 29

VI.  THE CLAIM FOR UNJUST ENRICHMENT (CLAIM 22) SHOULD BE
DISMISSED AS PRECLUDED BY THE EXISTENCE OF DUPLICATIVE
CONTRACTS AND AS DUPLICATIVE OF OTHER CLAIMS ................................... 32

    A.  Insofar As Plaintiffs' Claims for Unjust Enrichment Relate To An Explicit
    Contract, The Claims Are Precluded By The Contract ............................................. 33

    B.  To The Extent Plaintiffs' Claims For Unjust Enrichment Arise From Some
    Non-Contractual Right Arising Out of Their Ownership Interest In the
    Company, They Are Duplicative of the Remainder of Plaintiffs' Claims................ 34

VII.  THE RICO CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFFS
HAVE NOT BEEN INJURED AND THEY HAVE NOT ADEQUATELY
ALLEGED A PATTERN OF RACKETEERING ............................................................. 34

    A.  Plaintiffs Do Not Have Standing to Bring a RICO Claim Because Their
    Injuries Are Derivative of Injuries to ImageSat......................................................... 36

    B.  Plaintiffs Have Not Pleaded a Pattern of Racketeering ............................................. 38

VIII. CLAIMS ONE, SEVENTEEN, AND EIGHTEEN ARE TIME-BARRED .................... 42

    A.  Claim 1 (Breach of Fiduciary Duty in the 2000 Transactions) is Time-
    Barred......................................................................................................................... 42

    B.  Claim 17 (Reformation of Options and Bridge Warrants) is Time-Barred .............. 44

    C.  Claim 18 (Fraud Relating to Options and Bridge Warrants) is Time-Barred.......... 45

IX.  THE FRAUD CLAIM BASED ON ALLEGED ORAL REPRESENTATIONS
REGARDING THE OPTIONS AND WARRANTS (CLAIM 18) FAILS
BECAUSE PLAINTIFFS CANNOT ALLEGE REASONABLE RELIANCE................ 45

X.  PLAINTIFFS LACK STANDING ON THE CLAIM FOR DISGORGEMENT
OF COMPENSATION (CLAIM 20)................................................................................ 49

CONCLUSION............................................................................................................................. 50

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>Cases</u>

*1414 APF, LLC. v. Deer Stags, Inc.*,
   834 N.Y.S.2d 133 (App. Div. 2007) ...................................................................... 44

*Aboushanab v. Janay*,
   No. 06 Civ. 13472 (AKH), 2007 WL 2789511 (S.D.N.Y. Sep. 26, 2007) ............................ 21

*Action S.A. v. Marc Rich & Co., Inc.*,
   951 F.2d 504 (2d Cir. 1991) .................................................................................. 16

*Albany-Plattsburg United Corp. v. Bell*,
   763 N.Y.S.2d 119 (App. Div. 2003) .................................................................. 30, 31

*Alcoa Steamship Co. v. M/V Nordic Regent*,
   654 F.2d 147 (2d Cir. 1978) ...................................................................................... 4

*Allstate Life Ins. Co. v. Linter Group Ltd.*,
   994 F.2d 996 (2d Cir. 1993) .................................................................................... 11

*Am. Home Mortg. Corp. v. UM Sec. Corp.*,
   No. 05 Civ. 2279 (RCC), 2007 WL 1074837 (S.D.N.Y. Apr. 9, 2007) ................................ 18

*AroChem Int'l, Inc. v. Buirkle*,
   968 F.2d 266 (2d Cir. 1992) .................................................................................... 19

*At The Airport v. ISATA, LLC*,
   438 F. Supp. 2d 55 (E.D.N.Y. 2006) ...................................................................... 38

*Aymes v. Gateway Demolition Inc.*,
   817 N.Y.S.2d 233 (App. Div. 2006) ........................................................................ 50

*Bango v. Naughton*,
   584 N.Y.S.2d 942 (App. Div. 1992) ........................................................................ 46

*Batsidis v. Batsidis*,
   778 N.Y.S.2d 913 (App. Div. 2004) ........................................................................ 30

*BBS Norwalk One, Inc. v. Raccolta, Inc.*,
   60 F. Supp. 2d 123 (S.D.N.Y. 1999) ...................................................................... 20

*Beattie and Osborn LLP v. Patriot Scientific Corp.*,
   431 F. Supp. 2d 367 (S.D.N.Y. 2006) .................................................................... 32

*Bell v. Leakas*,
   No. 90 Civ. 7981 (LMM), 1993 WL 77320 (S.D.N.Y. March 13, 1993) ............................ 28

*Berger v. Spring Partners, L.L.C.*,
   No. 600935-2005, 2005 N.Y. slip op. 51752(U), 2005 WL 2807415 (Sup. Ct. 2005) ............. 7

*Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*,
   448 F.3d 573 (2d Cir. 2006) .................................................................................... 33

*BFI Group Divino Corp. v. JSC Russian Aluminum*,
 481 F. Supp. 2d 274 (S.D.N.Y. 2007) ................................................................. 13

*BHC Interim Funding, L.P. v. Finatra Capital, Inc.*,
 283 F. Supp. 2d 968 (S.D.N.Y. 2003) ............................................................ 6, 28

*Bona v. Barasch*,
 No. 01 Civ. 2289 (MBM), 2003 WL 1395932 (S.D.N.Y. March 20, 2003) ........... 36

*Borden, Inc. v. Meiji Milk Prods. Co.*,
 No. 90 Civ. 5611, 1990 WL 151118 (S.D.N.Y. Oct. 3, 1990), *aff'd*, 919 F.2d 822 (2d Cir.
 1990) ....................................................................................................................... 7

*Carey v. Bayerische Hypo-Und Verinsbank AG*,
 370 F.3d 234 (2d Cir. 2004) .................................................................................. 2

*Carnegie-Mellon Univ. v. Cohill*,
 484 U.S. 343 (1988) .............................................................................................. 17

*Cator v. Bauman*,
 833 N.Y.S.2d 811 (App. Div. 2007) ..................................................................... 43

*CCS Int'l v. ECI Telesystems, Ltd.*,
 No. 97 Civ. 4646 (LAP), 1998 WL 512951 (S.D.N.Y. Aug. 18, 1998) ................... 5

*Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York*,
 808 F. Supp. 213 (S.D.N.Y. 1992) ....................................................................... 39

*Chandradat v. Navillus Tile*,
 No. 03 Civ. 10093 (RJH), 2004 WL 2186562 (S.D.N.Y. Sept. 28, 2004) ............. 36

*Colida v. Panasonic Corp.*,
 No. 05 Civ. 5971 (JSR) (JC), 2005 WL 3046298 (S.D.N.Y. Nov. 10, 2005) ......... 13

*Collins v. Telcoa Int'l Corp.*,
 726 N.Y.S.2d 679 (App. Div. 2001) ..................................................................... 30

*Cooper v. Parsky*,
 140 F.3d 433 (2d Cir. 1998) ................................................................................. 43

*Corporacion Tim, S.A. v. Schumacher*,
 418 F. Supp. 2d 529 (S.D.N.Y. 2006) .................................................................. 13

*CPF Acquisition Co. v. CPF Acquisition Co.*,
 682 N.Y.S.2d 3 (App. Div. 1998) ......................................................................... 19

*Cresswell v. Sullivan & Cromwell*,
 922 F.2d 60 (2d Cir. 1990) ................................................................................... 16

*CTS Corp. v. Dynamics Corp. of America*,
 481 U.S. 69 (1987) ................................................................................................ 18

*Cummings v. Sony Music*,
 2003 WL 22889496 (S.D.N.Y. Aug. 28, 2003) ..................................................... 42

*Diversified Group, Inc. v. Daugerdas*,
 139 F. Supp. 2d 445 (S.D.N.Y. 2001) .................................................................. 32

*Duberstein v. Nat'l Med. Health Card Sys. Inc.*,
   829 N.Y.S.2d 95 (App. Div. 2007) ....................................................... 43

*Dunkin' Donuts v. Liberatore*,
   526 N.Y.S.2d 141 (App. Div. 1988) ..................................................... 48

*Edgar v. MITE Corp.*,
   457 U.S. 624 (1982) ............................................................................ 20

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*,
   165 F. Supp. 2d 615 (S.D.N.Y. 2001) ................................................. 47

*Eur. & Overseas Commodity Traders, S.A. v. Banque Paribas London*,
   940 F. Supp. 528 (S.D.N.Y. 1996) ...................................................... 11

*F.D.I.C. v. Five Star Mgmt. Inc.*,
   692 N.Y.S.2d 69 (App. Div. 1999) ...................................................... 44

*Feigen v. Advance Capital Mgmt. Corp.*,
   541 N.Y.S.2d 797 (App. Div. 1989) ..................................................... 33

*Feiner Family Trust v. VBI Corp.*,
   07 Civ. 1914 (S.D.N.Y. Sep. 10, 2007) ................................................ 19

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
   462 U.S. 611 (1983) ............................................................................ 26

*First Union Nat'l Bank v. Paribas*,
   135 F. Supp. 2d 443 (S.D.N.Y. 2001) ......................................... 2, 3, 12

*Foster v. Litton Indus.*,
   431 F. Supp. 86 (S.D.N.Y. 1977) .......................................................... 6

*Franklin v. Winard*,
   606 N.Y.S.2d 162 (App. Div. 1993) ..................................................... 31

*Galef v. Alexander*,
   615 F.2d 51 (2d Cir. 1980) .................................................................. 19

*Geren v. Quantum Chem. Corp.*,
   832 F. Supp. 728 (S.D.N.Y. 1993) ...................................................... 43

*Ghose v. CNA Reins. Co.*,
   2007 N.Y. slip op. 06572 (App. Div. 2007) ............................................ 7

*Gilstrap v. Radianz Ltd.*,
   443 F. Supp. 2d 474 (S.D.N.Y. 2006) ......................................... 6, 9, 28

*Globalvest Mgmt. Co. v. Citibank, N.A.*,
   801 N.Y.S.2d 234 (Sup. Ct. 2005) ...................................................... 14

*Grumman Allied Indus. v. Rohr Indus., Inc.*,
   748 F.2d 729 (2d Cir. 1984) ............................................................... 48

*Guidi v. Inter-Continental Hotels Corp.*,
   224 F.3d 142 (2d Cir. 2000) ................................................................. 5

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947) ..................................................................................... 13

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989) ..................................................................................... 39

*Hausman v. Buckley*,
  299 F.2d 696 (2d Cir. 1962) .................................................................. 19, 20

*Hughes v. LaSalle Bank, N.A.*,
  419 F. Supp. 2d 605 (S.D.N.Y. 2006) ......................................................... 32

*ICC Indus. Inc. v. Isr. Disc. Bank, Ltd.*,
  170 Fed. Appx. 766 (2d Cir. 2006)................................................................. 9

*In re BP P.L.C. Derivative Litig.*,
  No. 06 Civ. 6168 (HB), 2007 WL 2078752 (S.D.N.Y. July 23, 2007) ................... 20

*In re Integrated Res. Real Estate Ltd. P'Ships Secs. Litig.*,
  850 F. Supp. 1105 (S.D.N.Y. 1994) ............................................................ 35

*In re Luxottica Group Securities Lit.*,
  293 F. Supp. 2d 224 (E.D.N.Y. 2003) ......................................................... 20

*In re Ski Train Fire in Kaprun Austria*,
  499 F. Supp. 2d 437 (S.D.N.Y. 2007) ........................................................... 3

*In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India*,
  634 F. Supp. 842 (S.D.N.Y. 1986) .............................................................. 11

*Int'l Audiotext Network, Inc. v. Am. Telephone and Telegraph Co.*,
  62 F.3d 69 (2d Cir. 1995) ............................................................................ 47

*Int'l Customs Assocs., Inc. v. Ford Motor Co.*,
  893 F. Supp. 1251 (S.D.N.Y. 1995) ............................................................ 33

*Ionescu v. E.F. Hutton & Co.*,
  465 F. Supp. 139 (S.D.N.Y. 1979) ................................................................ 2

*Iragorri v. United Techs. Corp.*,
  274 F.3d 65 (2d Cir. 2001) ...................................................................... 3, 10

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*,
  140 F.3d 442 (2d. Cir. 1998) ...................................................................... 17

*J.D. Marshall Int'l v. Redstart, Inc.*,
  935 F.2d 815 (7th Cir. 1991) ...................................................................... 40

*Jarmuth v. Jarmuth*,
  No. 99 Civ. 3073 (LBS), 1999 WL 349626 (S.D.N.Y. May 28, 1999)................... 16

*Kaufman v. Cohen*,
  760 N.Y.S.2d 157 (App. Div. 2003) ............................................................. 43

*Kaye v. Grossman*,
  202 F.3d 611 (2d Cir. 2000) ....................................................................... 33

*Kikis v. McRoberts Corp.*,
   639 N.Y.S. 346 (App. Div. 1996) ........................................................................ 19

*Kolari v. New York-Presbyterian Hosp.*,
   455 F.3d 118 (2d Cir. 2006) ................................................................................ 17

*Koster v. Am. Lumbermens Mut. Cas. Co.*,
   330 U.S. 518 (1947) .............................................................................................. 6

*Kostolany v. Davis*,
   Civ. A. No. 13299, 1995 WL 662683 (Del. Ch. Nov. 7, 1995) ........................... 22

*Krock v. Lipsay*,
   97 F.3d 640 (2d Cir. 1996) .................................................................................. 29

*Lakonia Mgmt. Ltd. v. Meriwether*,
   106 F. Supp. 2d 540 (S.D.N.Y. 2000) ...................................................... 36, 37, 38

*LaSala v. Bank of Cyprus Public Co.*,
   No. 06 Civ. 6673 (CSH), 2007 WL 2331049 (S.D.N.Y. Aug. 15, 2007) .......... 12, 14

*Lasala v. Lloyds TSB Bank PLC*,
   No. 06 Civ. 4335 (CSH), 2007 WL 2758759 (S.D.N.Y. Aug. 15, 2007) ........... 3, 14

*LaSala v. UBS, AG*,
   No. 06 Civ. 1736 (CSH), 2007 WL 2331054 (S.D.N.Y. Aug. 15, 2007) .............. 11

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
   108 F.3d 1531 (2d Cir. 1997) .............................................................................. 49

*Lee v. Bankers Trust Co.*,
   166 F.3d 540 (2d Cir. 1999) ................................................................................ 29

*Lehman Gov't Sec. v. Pickholz*,
   No. 95 CIV. 7744 LMM, 1996 WL 447995 (S.D.N.Y. Aug. 8, 1996) .................. 16

*Lerner v. Fleet Bank, N.A.*,
   318 F.3d 113 (2d Cir. 2003) ................................................................................ 35

*Leung v. Law*,
   387 F. Supp. 2d 105 (E.D.N.Y. 2005) ................................................................. 41

*Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*,
   87 F.3d 44 (2d Cir. 1996) .................................................................................... 15

*Manson v. Stacescu*,
   11 F.3d 1127 (2d Cir. 1993) ................................................................................ 36

*Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukraine*,
   158 F. Supp. 2d 377 (S.D.N.Y. 2001) ................................................................. 13

*Morby v. Di Siena Assocs. LPA*,
   737 N.Y.S.2d 678 (App. Div. 2002) ..................................................................... 48

*Morrison Law Firm v. Clarion Co.*,
   158 F.R.D. 285 (S.D.N.Y. 1994) ........................................................................... 5

*Moss v. Morgan Stanley Inc.*,
  719 F.2d 5 (2d Cir. 1983) ................................................................ 34

*New York City Econ. Dev. Corp. v. T.C. Foods Import and Export Co., Inc.*,
  No. 5856/00, 2006 N.Y. slip op. 50754(U), 2006 WL 1132350 (Sup. Ct. April 17, 2006) ..... 49

*Newman-Green, Inc. v. Alfonzo-Larrain*,
  490 U.S. 826 (1989) ....................................................................... 16

*Nieves v. Am. Airlines*,
  700 F. Supp. 769 (S.D.N.Y. 1988) ...................................................... 6

*Nippon Fire & Marine Ins. Co. v. M.V. Egasco Star*,
  899 F. Supp. 164 (S.D.N.Y. 1995), *aff'd*, 104 F.3d 351 (2d Cir. 1996) ................... 12

*Nundy v. Prudential-Bache Secs., Inc.*,
  762 F. Supp. 40 (W.D.N.Y. 1991) ...................................................... 39

*O'Connor & Assocs. v. Dean Witter Reynolds, Inc.*,
  529 F. Supp. 1179 (S.D.N.Y. 1981) ..................................................... 28

*Overseas Media, Inc. v. Skvortsov*,
  441 F. Supp. 2d 610 (S.D.N.Y. 2006) ............................................... 4, 13

*Padula v. Lilarn Props. Corp.*,
  644 N.E.2d 1001 (N.Y. 1994) ........................................................... 29

*Panama Processes, S.A. v. Cities Serv. Co.*,
  500 F. Supp. 787 (S.D.N.Y. 1980) ...................................................... 4

*Paradiso & DiMenna, Inc. v. DiMenna*,
  649 N.Y.S.2d 126 (App. Div. 1996) ..................................................... 30

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) ................................................................ 10, 14

*Polar Int'l Brokerage Corp. v. Reeve*,
  187 F.R.D. 108 (S.D.N.Y. 1999) ........................................................ 20

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
  329 F.3d 64 (2d Cir. 2003) .............................................................. 9

*Potomac Capital Inv. Corp. v. KLM*,
  No. 97 Civ. 8141 (AJP) (RLC), 1998 WL 92416 (S.D.N.Y. Mar. 4, 1998) .................... 12

*Qantel Corp. v. Niemuller*,
  771 F. Supp. 1361 (S.D.N.Y. 1991) ................................................ 38, 39

*Realuyo v. Villa Abrille*,
  No. 01 Civ. 10158 (JGK), 2003 WL 21537754 (S.D.N.Y. July 8, 2003) ..................... 4

*Red Rock Hldgs., Ltd. v. Union Bank Trust Co.*,
  181 F.3d 83 (2d Cir. 1999) .............................................................. 9

*Republic Nat'l Bank v. Hales*,
  75 F. Supp. 2d 300 (S.D.N.Y 1999) ..................................................... 46

*Richter v. Sudman*,
  634 F. Supp. 234 (S.D.N.Y. 1986) ........................................................ 40

*Rodas v. Manitaras*,
  552 N.Y.S.2d 618 (App. Div. 1990)........................................................ 48

*Royal York Owners Corp. v. Royal York Assocs., L.P.*,
  No. 600269/04, 2005 WL 1389350 (N.Y. Sup. Ct. June 9, 2005) ........................................ 44

*Rubin Squared, Inc. v. Cambrex Corp.*,
  No. 03 Civ. 10138 (PAC), 2007 WL 2428485 (S.D.N.Y. Aug. 24, 2007)............................ 47

*Rudolph v. Turecek*,
  658 N.Y.S.2d 769 (App. Div. 1997)........................................................ 48

*Ruffolo v. Oppenheimer & Co.*,
  987 F.2d 129 (2d Cir. 1993) ........................................................ 50

*Schlaifer Nance & Co. v. Estate of Warhol*,
  119 F.3d 91 (2d Cir. 1997) ........................................................ 40, 41, 46

*Schnell v. Conseco, Inc.*,
  43 F. Supp. 2d 438 (S.D.N.Y. 1999) ........................................................ 40, 41

*Scottish Air Int'l, v. British Caledonian Group, PLC*,
  81 F.3d 1224 (2d Cir. 1996) ........................................................ 12, 19

*Sedima, S.P.R.L. v. Imrex Co.*,
  473 U.S. 479 (1985)........................................................ 35

*Seghers v. Thompson*,
  No. 06 Civ. 308 (RMB), 2006 WL 2807203 (S.D.N.Y. Sept. 27, 2006) ................................ 20

*Serdarevic v. Advanced Med. Optics, Inc.*,
  No. 06 CIV 7107(DLC), 2007 WL 2774177 (S.D.N.Y. Sep. 25, 2007) ................................ 45

*Seybold v. Groenink*,
  No. 06 Civ. 772 (DLC), 2007 WL 737502 (S.D.N.Y. March 12, 2007)............................ 20, 21

*Siemens Solar Indus. v. Atlantic Richfiled Co.*,
  673 N.Y.S.2d 674 (App. Div. 1998)........................................................ 48

*Siemens Westinghouse Power Corp. v. Dick Corp.*,
  299 F. Supp. 2d 242 (S.D.N.Y. 2004) ........................................................ 47

*Smallwood ex rel. Hills v. Lupoli*,
  No. 04-CV-0686 (JFB) (MDG), 2007 WL 2713841 (E.D.N.Y. Sept. 14, 2007) .................... 18

*Spanierman Gallery, PSP v. Love*,
  No. 03 Civ. 3188 VM, 2003 WL 22480055 (S.D.N.Y. 2003)............................ 32, 34

*Starkman v. Warner Communic'ns, Inc.*,
  671 F. Supp. 297 (S.D.N.Y. 1987) ........................................................ 28

*Strategic Value Master Fund, Ltd. v. Cargill Fin. Serv., Corp.*,
  421 F. Supp. 2d 741 (S.D.N.Y. 2006) ........................................................ 5, 12

*Sussman v. Bank of Isr.*,
   801 F. Supp. 1068 (S.D.N.Y. 1992) ................................................................. 5, 9

*Tele. Sys. Int'l v. Network Telecom PLC*,
   303 F. Supp. 2d 377 (S.D.N.Y. 2003) ................................................................ 4

*Terra Resources I v. Burgin*,
   664 F. Supp. 82 (S.D.N.Y. 1987) ..................................................................... 35

*Three Crown Ltd. P'ship v. Caxton Corp.*,
   817 F. Supp. 1033 (S.D.N.Y. 1993) ................................................................. 41

*Tribune Co. v. Purcigliotti*,
   869 F. Supp. 1076 (S.D.N.Y. 1994), *aff'd*, 66 F.3d 12 (2d Cir. 1995) .................. 35

*Turturro v. Cont'l Airlines*,
   334 F. Supp. 2d 383 (S.D.N.Y. 2004) ............................................................... 17

*United Mine Workers v. Gibbs*,
   383 U.S. 715 (1966) ........................................................................................ 17

*United States v. Persico*,
   832 F.2d 705 (2d Cir. 1987) ............................................................................ 35

*Universal City Studios, Inc. v. Nintendo Co.*,
   797 F.2d 70 (2d Cir. 1986) .............................................................................. 49

*Waksman v. Cohen*,
   2002 WL 31466417 (S.D.N.Y. Nov. 4, 2002) ................................................... 46

*Wallace v. 600 Partners Co.*,
   658 N.E.2d 715 (N.Y. App. Div. 1995) ............................................................. 44

*Washington Capital Ventures LLC v. Dynamicsoft, Inc.*,
   373 F. Supp. 2d 360 (S.D.N.Y. 2005) ............................................................... 47

*Weizmann Inst. of Sci. v. Neschis*,
   229 F. Supp. 2d 234 (S.D.N.Y. 2002) ....................................................... passim

*Wilshire Credit Corp. v. Ghostlaw*,
   753 N.Y.S.2d 537 (App. Div. 2002) .................................................................. 44

*Winn v. Schafer*,
   499 F. Supp. 2d 390 (S.D.N.Y. 2007) ............................................................... 20

*Wolf v. Rand*,
   685 N.Y.S.2d 708 (App. Div. 1999) .................................................................. 30

*Zion v. Kurtz*,
   428 N.Y.S.2d 199 (App. Div. 1980) .................................................................. 19

*Zweig v. Nat'l Mortgage Bank of Greece*,
   No. 91 Civ. 5482, 1993 WL 227663 (S.D.N.Y. June 21, 1993) ............................ 6

## **Statutes**

28 U.S.C. § 1331 .............................................................................................. 20

28 U.S.C. § 1332(a)(1)-(4)........................................................................................ 19

28 U.S.C. § 1332(a)(3)............................................................................................. 23

28 U.S.C. § 1367...................................................................................................... 20

28 U.S.C. § 1367(c)(3)........................................................................................ 21, 22

## Rules

Fed. R. Civ. P. 12(b)(6)........................................................................................... 57

Fed. R. Civ. P. 44.1................................................................................................. 27

Fed. R. Civ. P. 9(b)................................................................................................. 43

N.Y. C.P.L.R. § 213(6)............................................................................................ 53

## PRELIMINARY STATEMENT

The Complaint ("Compl.") is brought by investors and founding executives of ImageSat International N.V. ("ImageSat" or "the Company"), a satellite company incorporated in the Netherlands Antilles with its principal place of business in Israel, alleging that certain business setbacks the Company has encountered in recent years can be attributed to misconduct on the part of entities alleged to be the Company's two largest shareholders, Israel Aerospace Industries ("IAI") and Elbit Systems Ltd. ("Elbit"), and to fourteen individuals who currently or formerly served as directors and officers of the Company. This memorandum of law is filed on behalf of ImageSat, IAI, Elbit, and twelve of the current or former directors and officers named in the Complaint (collectively, the "Defendants").[1] If this lawsuit proceeds beyond the pleadings, Defendants will demonstrate based on a full evidentiary record that they acted consistent with their duties as shareholders and directors and that each of the board decisions that the Plaintiffs attempt to second-guess was a legitimate exercise of the directors' business judgment. This lawsuit should not be permitted to proceed, however, because it suffers from numerous pleading deficiencies of both a jurisdictional and substantive nature. In sum, this Complaint, which is essentially a shareholder derivative action, has been brought in the wrong forum and by the wrong plaintiffs.

The Defendants are simultaneously filing separate memoranda of law that raise certain defenses particular to each Defendant. This memorandum addresses ten reasons common to all Defendants why some or all of the claims should be dismissed.

---

[1]  The twelve individuals on whose behalf this memorandum is filed are Moshe Keret, Izhak Nissan, Jacob Weiss, Shimon Eckhaus, Gino Piperno-Beer, David Arzi, Yoav Chelouche, Michael Federmann, Estate of Jacob Toren, Joseph Ackerman, Joseph Gaspar, and Yehoshua Eldar. Mr. Eldar is alleged to be a former director of ImageSat (Compl. ¶ 55), but that allegation is factually incorrect.

# I.    THE COMPLAINT SHOULD BE DISMISSED ON GROUNDS OF *FORUM NON CONVENIENS*

Even if this Court had jurisdiction over the Defendants, the action should be dismissed on grounds of *forum non conveniens* in favor of Israel.[2]  This is a lawsuit by a group of Plaintiffs, most of whom are based outside the United States, against thirteen individual Defendants who reside in and are citizens of Israel[3] and three corporate Defendants based in Israel – including one that is 100% owned by the Israeli government[4] – relating to Plaintiffs' investment in Defendant ImageSat, a corporation based in Israel.  As Judge Pollack has stated, "parties who choose to engage in international transactions should know that when their foreign operations lead to litigation they cannot expect always to bring their foreign opponents into a United States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere."  *Ionescu v. E.F. Hutton & Co.*, 465 F. Supp. 139, 146 (S.D.N.Y. 1979).  Judge Kaplan made the same point more recently when he stated that "there is little sense to allowing a U.S. citizen to haul a group of foreign defendants into a U.S. court on transactions having little or nothing to do with this country where there is an available foreign forum significantly better suited to handling the litigation in a prompt, efficient and effective manner."  *First Union Nat'l Bank v. Paribas*, 135 F. Supp. 2d 443, 448 (S.D.N.Y. 2001).  Judge Pollack dismissed *Ionescu* even though the sole plaintiff there was an American citizen residing in New York (465 F. Supp. at 140) and Judge Kaplan dismissed *First Union National Bank* even though the lone plaintiff in that case was a bank headquartered in the United States.  (135 F.

---

[2]    The doctrine of *forum non conveniens* permits a court to dismiss an action "even if the court is a permissible venue with proper jurisdiction over the claim."  *Carey v. Bayerische Hypo-Und Verinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004) (citation omitted).

[3]    A fourteenth individual Defendant, James DePalma, is a U.S. citizen.  (Compl. ¶ 52.)

[4]    (*See* Compl. ¶ 4 ("IAI is a 100% Israeli-government-owned corporation and is the principal Israeli defense and aerospace company").)

Supp. 2d at 445.)  Here, where most of the Plaintiffs are *not* U.S. citizens and all but one of the

Defendants are based in Israel, the facts present an even more compelling case for application of

the *forum non conveniens* doctrine.

In deciding whether to dismiss a lawsuit on grounds of *forum non conveniens*,

courts in this Circuit[5] apply a three-step analysis:  (1) determining the degree of deference due to

the plaintiff's choice of forum; (2) determining whether there exists an adequate alternative

forum; and (3) balancing the competing private interests of the parties in the choice of forum and

the public interests of the alternative forum under consideration.  *See In re Ski Train Fire in*

*Kaprun Austria,* 499 F. Supp. 2d 437, 438 (S.D.N.Y. 2007) (applying three-step analysis and

dismissing action).[6]  Each of these factors here weighs heavily in favor of dismissal.

**A.      Plaintiffs' Decision to Litigate Their Claims in New York Rather than in**
**         Israel is Entitled to Little Deference**

The degree of deference to be afforded a plaintiff's choice of forum "moves on a

sliding scale depending on several relevant considerations."  *Iragorri v. United Techs. Corp.*, 274

F.3d 65, 71 (2d Cir. 2001).  Those considerations include "the plaintiff's or the lawsuit's bona

fide connection to the United States and to the forum of choice, which encompasses convenience

of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or

evidence to the forum district."  *Lasala v. Lloyds TSB Bank PLC*, No. 06 Civ. 4335(CSH), 2007

WL 2758759, at *8 (S.D.N.Y. Aug. 15, 2007) (internal citations omitted) (dismissing securities

claims by an American plaintiff).  Plaintiffs' choice of forum is entitled to minimal deference

---

[5]    It is unnecessary to address whether the analysis should proceed under federal or state law because "the New York law of *forum non conveniens* is virtually identical to the federal law."  *First Union Nat'l Bank*, 135 F. Supp. 2d at 447, n.13.

[6]    Other courts express the *forum non conveniens* analysis as a two-step process of (1) determining whether an adequate alternative forum exists and (2) balancing the private and public interest factors.  *See, e.g.*, *First Union Nat'l Bank*, 135 F. Supp. 2d at 446 (applying a two-step analysis and dismissing action).  It appears, however, that most recent cases apply a three-step analysis and this memorandum proceeds under that approach.

because most of the parties are foreign, the majority of potential witnesses are beyond this Court's jurisdictional reach and this lawsuit has no bona fide connection to the United States.

### 1.    Plaintiffs are Primarily International Investors

As an initial matter, even where a lawsuit is filed on behalf of only U.S. citizens, numerous courts have dismissed lawsuits in favor of a foreign jurisdiction.[7] That is because the doctrine "by definition of course, contemplates the dismissal of lawsuits brought by plaintiffs in their favored forum." *Overseas Media, Inc. v. Skvortsov*, 441 F. Supp. 2d 610, 615 (S.D.N.Y. 2006) (granting *forum non conveniens* dismissal). Here, the majority of the Plaintiffs are not U.S. citizens and do not have their place of business in the United States.[8] Only two of the 15 Plaintiffs are alleged to be residents of New York.[9] Indeed, more of the Plaintiffs are citizens of Israel than are citizens of New York.[10] As a result, Plaintiffs' choice to litigate in this forum should not be accorded substantial deference.

---

[7]    *See, e.g., Alcoa Steamship Co. v. M/V Nordic Regent*, 654 F.2d 147 (2d Cir. 1978) (in suit by American corporation, Trinidad held to be more appropriate forum); *Tele. Sys. Int'l v. Network Telecom PLC*, 303 F. Supp. 2d 377, 385 (S.D.N.Y. 2003) ("[t]hat presumption in favor of a plaintiff's convenience is not absolute and may be outweighed"); *Realuyo v. Villa Abrille*, No. 01 Civ. 10158 (JGK), 2003 WL 21537754, at *4 (S.D.N.Y. July 8, 2003) (concluding that Philippines would be more appropriate jurisdiction and finding that "[a]lthough [American plaintiffs'] forum choice warrants great deference, it is in this case outweighed by every other consideration."); *Panama Processes, S.A. v. Cities Serv. Co.*, 500 F. Supp. 787, 792 (S.D.N.Y. 1980) (American citizenship has "no particular effect" where other factors favor dismissal).

[8]    Nine of the 15 Plaintiffs are based outside the United States. Namely, Plaintiffs BRW Engineering Ltd., WIS Partners Ltd., Moshe Bar-Lev, Patrick Rosenbaum, Haim Yifrah, Magma International Services, Ltd., Albert Reichmann, Hexagram & Co., and Polybutes Company are alleged to be non-U.S. citizens and/or have their principal place of business outside the U.S. (*See* Compl. ¶¶ 25-28, 30, 35-38.)

[9]    *See* Compl. ¶¶ 33-34 (alleging that Plaintiffs Morris Talansky and Abraham Moshel are "citizen[s] of the United States of the State of New York"). The Complaint also alleges that plaintiff WIS Partners Ltd. "maintain[s] an office in New York," although that entity is alleged to be a Bermuda limited partnership with its principal place of business in Bermuda. (*Id.* ¶ 26.)

[10]    *See* Compl. ¶¶ 27-28, 30 (alleging that Plaintiffs Moshe Bar-Lev, Patrick Rosenbaum, and Haim Yifrah are citizens of Israel).

Even for those Plaintiffs alleged to be U.S. citizens, their choice of forum should not be given significant weight because this lawsuit stems from their investment in a foreign company.[11]  As one court explained:

> Where an American plaintiff chooses to invest in a foreign country and then complains of fraudulent acts occurring primarily in that country, the plaintiff's ability to rely upon citizenship as a talisman against *forum non conveniens* dismissal is diminished.

*Sussman v. Bank of Isr.*, 801 F. Supp. 1068, 1073 (S.D.N.Y. 1992) (dismissing claims by California resident against Israeli entities).  "[W]here a plaintiff voluntarily reaches out to a foreign business entity in order to engage it in a business transaction . . . it is reasonable to expect that a dispute resulting from the transaction will be adjudicated in the forum in which the adversary resides."  *Strategic Value Master Fund, Ltd. v. Cargill Fin. Serv., Corp.*, 421 F. Supp. 2d 741, 773 (S.D.N.Y. 2006).  Numerous courts are in accord.[12]

Indeed, even the two Plaintiffs alleged to be residents of New York should not factor significantly in the deference analysis because they are not shareholders.  They hold only expired warrants.[13]  As discussed in more detail in § IV *infra*, as holders of warrants only, these two Plaintiffs do not have standing to assert most of the claims alleged in this lawsuit.  *See BHC*

---

[11]  *See* Compl. ¶ 2 ("among the Plaintiffs are individuals and entities that invested millions of dollars in cash in ImageSat during the Company's highest-risk start-up and development stages").

[12]  *See, e.g., Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 147 (2d Cir. 2000) (noting that the deference accorded to a U.S. plaintiff's choice of forum is diminished when "plaintiff is a corporation doing business abroad and can expect to litigate in foreign courts."); *Morrison Law Firm v. Clarion Co.*, 158 F.R.D. 285, 287 (S.D.N.Y. 1994) ("The private interest of plaintiff[s] in suing in its home location is diluted because it chose to do business with Japanese firms and to seek their custom, making it logical that they be required to litigate there, a result which should not expose plaintiff to surprise."); *CCS Int'l v. ECI Telesystems, Ltd.*, No. 97 Civ. 4646 (LAP), 1998 WL 512951, at *7 (S.D.N.Y. Aug. 18, 1998) (while "it remains defendants' burden to overcome the forum choice made by these American-citizen plaintiffs," for plaintiffs "who are involved in a decidedly international dispute such as this, their American citizenship and residence do not constitute the powerful, near-decisive factors for which they contend") (citations omitted).

[13]  *See* Compl. ¶¶ 33, 34 (alleging that Morris Talansky and Abraham Moshel hold bridge warrants only).

*Interim Funding, L.P. v. Finatra Capital, Inc.,* 283 F. Supp. 2d 968, 989 (S.D.N.Y. 2003) (option and warrants holder's cannot assert claims for breach of fiduciary duty).[14]

### 2.    The Allegations Relate Almost Exclusively to Israel

Not only do the parties have little connection to this forum, the subject matter of this action bears almost no connection to the United States.[15]  The central issue in this litigation is  whether certain minority shareholders of ImageSat, a company incorporated in the Netherlands Antilles with its principal place of business in Israel, were treated unfairly by other entities alleged to be shareholders in the Company, both of which are incorporated in and have their principal place of business in Israel, and by 14 individual Defendants, 13 of whom reside in Israel.  In Plaintiffs' own words, this lawsuit is based on the alleged "misuse and misdirection of the Company as a captive vehicle of IAI, Elbit, and their government sponsors."  (Compl. ¶ 128.) Whether there is merit to the claim that ImageSat – a company not registered to conduct business in the U.S.[16] – has been unfairly "misuse[d] and misdirect[ed]" by two Israeli corporations and by the Government of Israel, it is an issue with no bona fide connection to this forum.

Although Plaintiffs make the conclusory assertion that the lawsuit relates to New York, few substantive details support this allegation.  Plaintiffs allege that some of ImageSat's board meetings have been conducted in New York.  (Compl. ¶ 112.)  Although courts have

---

[14]    A further factor diminishing the weight to be accorded Plaintiffs' choice of this forum – even for those Plaintiffs alleged to be U.S. citizens – is the fact that most of the claims sound in a derivative nature.  Plaintiffs' pleading failure should not rescue them from the cases that state that "[p]laintiffs' choice of forum is also entitled to less deference where, as here, they are suing in a representative capacity."  *Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 479 (S.D.N.Y. 2006).  *See also Foster v. Litton Indus.*, 431 F. Supp. 86, 87 (S.D.N.Y. 1977) ("[T]his factor of plaintiffs' choice of forum is of even less significance in a shareholder's derivative suit."); *Koster v. Am. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 525 (1947) (plaintiffs' choice of forum is entitled to less weight in derivative action).

[15]    *See Nieves v. Am. Airlines*, 700 F. Supp. 769, 772 (S.D.N.Y. 1988) (holding that a plaintiff's choice of forum is "given reduced emphasis where . . . the operative facts upon which the litigation is brought bear little material connection to the chosen forum."); *Zweig v. Nat'l Mortg. Bank of Greece*, No. 91 Civ. 5482, 1993 WL 227663, at *4 (S.D.N.Y. June 21, 1993) (dismissing lawsuit brought by American citizen and resident in favor of Greece because operative facts upon which litigation was based bore little connection to New York).

[16]    *See* Declaration of Hagai Goren, sworn to on October 15, 2007 ("Goren Decl."), ¶ 10.

stated this is a factor to consider in assessing the connection between the litigation and the forum, it is not by itself nearly sufficient to create that nexus.[17]  This is particularly true where the Complaint does not allege what may have taken place at a board meeting in New York that relates to the allegations in the lawsuit.  Plaintiffs also allege that certain corporate agreements were negotiated in New York but this too is insufficient to create a nexus between the litigation and this forum.  *See Ghose v. CNA Reins. Co.*, 2007 N.Y. Slip Op. 06572, 2007 WL 249337 (App. Div. 2007) (negotiation of central agreements in New York is insufficient to justify burdening New York courts).[18]  Plaintiffs allege that several agreements referenced in the Complaint contain New York choice of law provisions, but these do not have the effect of jurisdictional clauses.  *See Borden, Inc. v. Meiji Milk Prods. Co.*, 919 F.2d 822, 827 (2d Cir. 1990) (affirming district court's *forum non* dismissal and noting that "the New York choice of law clause in the parties' agreement is not the equivalent of a choice of forum clause.").  In addition, as discussed *supra*, those agreements will not govern what substantive law applies to the vast majority of the claims in this litigation.[19]

Notwithstanding Plaintiffs' efforts to create a New York nexus, the allegations throughout the Complaint make clear that this lawsuit relates principally to Israel.  Plaintiffs allege that Defendants breached their fiduciary duties by failing to exploit business opportunities

---

[17]  *See*, *e.g.*, *Berger v. Spring Partners, L.L.C.*, No. 600935-2005, 2005 N.Y. Slip Op. 51752(U), 2005 WL 2807415 at *3 (Sup. Ct. 2005) (including stockholders' and directors' meetings in New York as just one of many factors courts look to in determining whether there is a nexus between the lawsuit and the forum).

[18]  Indeed, the Second Circuit has upheld a dismissal on *forum non conveniens* grounds in a breach of contract case even where the central contract was formed in New York.  *See Borden, Inc. v. Meiji Milk Prods. Co.*, No. 90 Civ. 5611, 1990 WL 151118, at *1 (S.D.N.Y. Oct. 3, 1990), *aff'd*, 919 F.2d 822 (2d Cir. 1990).  Here, this action raises numerous counts in addition to breach of contract and the contracts that Plaintiffs allege were negotiated in New York are not the central aspects of the lawsuit.

[19]  The only ImageSat corporate document Defendants are aware of that contains a consent to New York jurisdiction and a waiver of the forum non conveniens defense is a Securityholders Agreement dated July 25, 2000.  However, that agreement is among ImageSat, IAI, Electro-Optics Industries Ltd., and several other parties – only one of the Plaintiffs to this action (WIS Partners) is a party to the agreement.  Furthermore, the Securityholders Agreement is barely even mentioned among the Complaint's hundreds of pages.

"at odds with the national (including the financial) agenda of the State of Israel and the IMOD in particular." (Compl. ¶ 122.) An Israeli court is in the best position to judge what is or is not the "national agenda of the State of Israel" and its Ministry of Defense. Plaintiffs further allege that "Defendants have taken over the assets of ImageSat to serve their own corrupt financial interests and/or the financial and political interests of the IMOD sponsors" (*id.* ¶ 128), that "ImageSat and its Board of Directors were motivated by geopolitical and strategic concerns of the IMOD and senior IMOD personnel" (*id.* ¶ 149), and that "international relations considerations also leave Israel desirous of not displeasing the United States by allowing ImageSat to enter into SOP contracts with potentially controversial customers such as Venezuela." (*Id.* ¶ 177.) Plaintiffs also claim that it was inconsistent with Defendants' fiduciary duties to take into account "Israel's desire to improve and maintain its historically good relations with the United States" when they rejected a proposal by Mr. Wilson to sell 20% to 30% of ImageSat to President Hugo Chavez and the Government of Venezuela. (*Id.* ¶¶ 145, 149.) This Court should not be placed in the position of evaluating Israel's "geopolitical and strategic concerns," the political interests of the Israeli Ministry of Defense, and Israel's "international relations considerations," such as whether a satellite company based in Israel should be sold to Hugo Chavez of Venezuela.

Deference to an Israeli forum is further appropriate in this case given that the Complaint alleges that Defendants' actions were motivated in part by "the national security interests of Israel". (*See* Compl. ¶ 125.) These allegations will require this Court to assess whether these national security concerns were legitimate. (*See, e.g.*, *id.* (alleging that "[i]t is obvious that Taiwan poses no threat to the 'national security interests' of the State of Israel").) Plaintiffs allege elsewhere in the Complaint that they are the victims of an "'eminent-domain'-style seizure of their assets" because ImageSat "now exists for the principal benefit of the Israeli

industrial shareholders, IAI and Elbit, and more specifically to support and advance the regional

national security interests and global geopolitical agenda of their 'anchor' customer, the IMOD."

(*Id.* ¶ 19.)  Again, this is simply not the most appropriate forum to assess allegations that require

evaluation of Israeli national political interests.

###    B.    Israel is an Available and Adequate Alternative Forum

An alternative forum is considered adequate "if the defendants are amenable to

service of process there, and if it permits litigation of the subject matter of the dispute."  *Pollux*

*Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003).[20]  Each of the corporate

Defendants and thirteen of the fourteen individual Defendants are amenable to service of process

in Israel because they are either incorporated in Israel, have their principal place of business in

Israel, or are citizens of Israel.  (*See* Compl. ¶¶ 39-55; Vigdor Decl. ¶¶ 18-21.)  Moreover, as

described more fully in the accompanying Declaration of Dror Vigdor, sworn to on October 9,

2007 ("Vigdor Decl." ¶ 24), Israel has an established, impartial, civil judicial system that has

extensive experience handling litigation of claims such as those raised in this lawsuit.

Courts in this Circuit have consistently deemed Israel to be an adequate forum.

*See, e.g., ICC Indus. Inc. v. Isr. Disc. Bank, Ltd.*, 170 Fed. Appx. 766, 768 (2d Cir. 2006)

(holding that "[t]he district court ... correctly identified Israel as providing an adequate forum");

*Red Rock Hldgs., Ltd. v. Union Bank Trust Co.*, No. 98-9220, 1999 WL 310482, at *1 (2d Cir.

May 6, 1999) (affirming dismissal in favor of Israel and holding that Israel will be deemed

"inadequate" only upon a motion for reinstatement demonstrating that plaintiff was unable to

adjudicate under Israel law); *Sussman v. Bank of Isr.*, 990 F.2d 71, 71-72 (2d Cir. 1993) (*per*

---

[20]    *See also Gilstrap*, 443 F. Supp. 2d at 481 ("For a foreign forum to be considered adequate, generally all that is
required is that the defendants are amenable to suit in that forum, and that the forum permits suits involving the
subject matter of the dispute.")

*curiam*) (affirming *forum non conveniens* dismissal in favor of Israel); *Diatronics v. Elbit Computers, Ltd.*, 649 F. Supp. 122 (S.D.N.Y. 1986) (dismissing action in favor of Israel).

    **C.**    **Balance of Factors Weighs in Favor of Litigation in Israel**

        **1.**    **The Private Interest Factors Favor Litigation in Israel**

        To determine whether the balance of convenience favors the alternative forum, the Court must weigh private factors such as "access to sources of proof availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses" in the context of the precise issues likely to be tried. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 247, 241 n.6 (1981) (internal citations omitted); *Iragorri*, 274 F.3d at 74. These factors strongly favor dismissal of this lawsuit.

        The sources of evidence that will be relevant to this action are almost entirely based in Israel. The primary documentary evidence will come from the three corporate Defendants. Each have their principal place of business in Israel and that is where they maintain their corporate books and records.[21] With regard to evidence in the form of testimony, every one of the individual parties to this action will be a witness and 16 of these 23 individuals reside in Israel.[22] On Plaintiffs' side of the caption, some of the most critical witnesses will be the three Plaintiffs who are alleged to be Israeli citizens – Messrs. Bar-Lev, Rosenbaum, and Yifrah, as each was involved in the formation of ImageSat.[23] The parties will also need to call additional

---

[21]   *See* Goren Decl. ¶¶ 10, 13; Declaration of Yair Ramati, sworn to on October 15, 2007 ¶ 4; Declaration of David Block Temin, sworn to on October 11, 2007 ¶ 7.

[22]   There are nine natural persons on the Plaintiffs' side of the caption and 14 Defendants.

[23]   *See* Compl. ¶ 27 (alleging that Bar-Lev "is widely regarded as the 'driving force' behind the initiation and realization of the Israeli national space program and was the Founding Director of IAI's Space Technologies Directorate. Bar-Lev was the founding chief technical officer (CTO) of ImageSat and President of ImageSat's Israeli subsidiaries from inception and was the senior technical executive of the Company until 2004."); *id.* ¶ 28 (alleging that Rosenbaum "was the founding chief operating officer (COO) of ImageSat and served in that position from inception to 2002."); *id.* ¶ 30 (alleging that Yifrah, a retired Brigadier General of the Israeli Defense Forces, "was responsible for integration of the Israeli Ofeq surveillance satellite program" and "joined ImageSat as its founding Vice President for Defense Systems and served in that position until 2006.") In

witnesses based in Israel who are executives or employees of the three corporate Defendants. The allegations in the Complaint also impute actions by the Israeli Ministry of Defense, which means that Israeli government officials will likely be necessary witnesses.  (*See*, *e.g.*, Compl. ¶¶ 64, 128, 134.)  As non-party witnesses, however, these individuals may not be subject to this Court's subpoena power, a factor further weighing in favor of litigation in Israel.  *In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India*, 634 F. Supp. 842, 859 (S.D.N.Y. 1986) (dismissing the action on *forum non conveniens* grounds and noting that "[t]he presence of the Indian Government in this action is also of critical importance on this motion" because certain government officials may be unavailable as witnesses unless the action proceeded in India). Even assuming that evidence could be obtained from these and other third parties by means of the Hague Convention, this method has been held to be a poor substitute for live trial testimony. *See Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 1001 (2d Cir. 1993) (affirming *forum non conveniens* dismissal and noting that "live testimony of key witnesses is necessary").

Even assuming that this Court were to find that it had jurisdiction over all of the individual and corporate Defendants, obtaining the testimony of the Defendants will require costly transatlantic travel from Israel.  On the other side of the caption as well, 12 of the 15 Plaintiffs have their residences or places of business outside New York – most of them based overseas – which means they will also have to travel to New York to testify.  These facts further weigh in favor of dismissal.  *See LaSala v. UBS, AG*, No. 06 Civ. 1736 (CSH), 2007 WL 2331054, at *12 (S.D.N.Y. Aug. 15, 2007) ("the vast majority of witnesses in one forum weighs in favor of that forum, even if the witnesses could be transported") (*citing Eur. & Overseas Commodity Traders, S.A. v. Banque Paribas London*, 940 F. Supp. 528, 538 (S.D.N.Y. 1996)

---

contrast, the allegations regarding every other Plaintiff except Messrs. Wilson and Morris allege simply that he or it holds ImageSat shares or bridge warrants, making them much less relevant witnesses.

(where nearly all witnesses reside overseas, "transporting witnesses from England to the United

States – even if they were within this Court's subpoena power or would appear voluntarily –

would be extremely inconvenient and would impose a prohibitive cost on defendants")).[24]

In *First Union National Bank*, 135 F. Supp. 2d at 449, the court dismissed the

action in favor of litigation in England because "substantially all of the likely willing witnesses

reside either in England or in the Middle East."  Here, where almost all of the likely witnesses

reside in the Middle East (all in Israel), few witnesses reside in this forum, and where almost all

of the relevant events took place in Israel, dismissing the action in favor of litigation in Israel is

the logical conclusion.  *See Nippon Fire & Marine Ins. Co. v. M.V. Egasco Star*, 899 F. Supp.

164, 169 (S.D.N.Y. 1995) ("when the greater number and more relevant witnesses are located in

a foreign forum, common sense suggests that the litigation proceed in that forum"), *aff'd,* 104

F.3d 351 (2d Cir. 1996); *Potomac Capital Inv. Corp. v. KLM,* No. 97 Civ. 8141 (AJP) (RLC),

1998 WL 92416, at *7 (S.D.N.Y. Mar. 4, 1998) ("If the location of witnesses and sources of

proof are strongly in favor of one forum, the matter likely should be adjudicated there.").[25]

### 2.    The Public Interest Factors Favor Litigation in Israel

In analyzing the public factors, the court looks at the administrative difficulties

associated with court congestion, the unfairness of imposing jury duty on a community with no

relation to the litigation, the interest in having localized controversies decided at home, and

---

[24]    *See also Scottish Air Int'l, v. British Caledonian Group, PLC*, 81 F.3d 1224, 1232-33 (2d Cir. 1996) (affirming *forum non conveniens* dismissal and noting that since majority of potential witnesses lived in Great Britain "the difficulty, cost, and disruption of requiring the attendance of such witnesses in New York – whether they were willing to appear or not – would be considerable" and weighed in favor of dismissal).

[25]    *See also LaSala v. Bank of Cyprus Public Co.*, No. 06 Civ. 6673 (CSH), 2007 WL 2331049, at *12 (S.D.N.Y. Aug. 15, 2007) (concluding that private interest factors favor dismissal where documents and relevant witnesses were in alternative forum); *Strategic Value Master Fund*, 421 F. Supp. 2d at 766 ("Where most of the witnesses and documentary evidence reside in a foreign country, conducting trial in the U.S. could impose such significant burdens on the parties that dismissal is favored.") (citations omitted).

avoiding difficult problems in conflict of laws and the application of foreign law. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947). These factors favor dismissal.

### i.     Administrative Burden

To assess this factor, courts look to whether the alternative forum is equally or more congested than the forum in which the action was filed. *See Corporacion Tim, S.A. v. Schumacher*, 418 F. Supp. 2d 529, 535 (S.D.N.Y. 2006) (dismissing lawsuit and noting that "there is no indication that courts in the Dominican Republic are any more congested than the busy courts in this District.").[26] The Southern District of New York is one of the busiest courts in the nation. *See Red Rock Hldgs., Ltd.*, 1998 WL 34089038, at *46 (dismissing in favor of Israel to avoid burdening "one of the busiest litigation centers in this country."); *Colida v. Panasonic Corp.,* No. 05 Civ. 5971 (JSR) (JC), 2005 WL 3046298, at *4 (S.D.N.Y. Nov. 10, 2005) (transferring to the District of New Jersey because retaining the case would delay adjudication). Israeli courts have far less congestion. The average duration of a lawsuit in the Israel district court from the filing of the complaint until the conclusion of the lawsuit (including cases that are resolved at an early stage) is 11-12 months. (*See* Vigdor Decl. ¶ 14.)

### ii.     Jury Considerations

Plaintiffs have indicated that they may make a jury demand. A New York jury has little interest adjudicating a dispute between Plaintiffs who are mostly non-U.S. citizen shareholders in an Israel-based corporation alleging that the Israeli entities alleged to be shareholders unfairly acted based on interests of the Israeli government. *See BFI Group Divino Corp. v. JSC Russian Aluminum*, 481 F. Supp. 2d 274, 287 (S.D.N.Y. 2007) ("The action

---

[26]     *See also Overseas Media*, 441 F. Supp. 2d at 619 (dismissing lawsuit and noting that there is no indication that courts in Russia are any more congested than courts in the Southern District of New York); *Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 158 F. Supp. 2d 377, 387 (S.D.N.Y. 2001) (dismissing lawsuit and noting that "Ukrainian courts appear no more congested than the busy courts in this District")

essentially amounts to a dispute between California and Russian companies over their interactions with the Nigerian government concerning the purchase of Nigerian government property.  A New York jury therefore has little interest in adjudicating it.  This factor thus militates in favor of dismissal.")

### iii.    Local Interest in the Dispute

This lawsuit alleges wrongdoing on the part of three Israeli-based companies and numerous corporate officers and directors based almost entirely in Israel.  Israel has a strong interest in regulating companies operating within its borders.  *See LaSala*, 2007 WL 2331049, at *14 (dismissing in favor of Cyprus, which had a strong interest in regulating a national bank).  As the Supreme Court noted, there is a "strong interest ... in having localized controversies decided at home."  *Piper*, 454 U.S. at 260.  New York has no corresponding interest here.

### iv.    Relationship of Governing Law to the Forum

Since New York law will provide the rule of decision for few of the claims in the Complaint, this factor weighs heavily in favor of dismissal.  Several of Plaintiffs' claims, such as those for conversion and unjust enrichment, may be governed by Israeli substantive law because that is where most of the relevant events took place.  The majority of the remaining causes of action, including the claims for breach of fiduciary duty, corporate waste, fraud, and self-dealing, arise out of or related to the internal affairs of ImageSat, a Netherlands Antilles corporation, and therefore will be governed by Netherlands Antilles law pursuant to New York's internal affairs doctrine.  *See infra* § III.   The fact that almost all of the claims will be governed by foreign law weighs in favor of a *forum non conveniens* dismissal.  *See, e.g., Lasala*, 2007 WL 2758759, at *15 ("The mere likelihood of the application of foreign law weighs in favor of dismissal.");  *Globalvest Mgmt. Co. v. Citibank, N.A.*, 801 N.Y.S.2d 234 (Sup. Ct. 2005) (noting that "New

York courts commonly dismiss actions that may require interpretation of foreign law" and

dismissing on *forum non conveniens* grounds).[27]

## II.     THIS ACTION SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

### A.     There is No Diversity Jurisdiction in this Action

Plaintiffs have failed to meet their burden of pleading subject matter jurisdiction

based on the diversity of the parties. *See Leveraged Leasing Admin. Corp. v. PacifiCorp*

*Capital, Inc*., 87 F.3d 44, 47 (2d Cir. 1996) (holding that "diversity of citizenship should be

distinctly and positively averred in the pleadings or should appear with equal distinctness in

other parts of the record") (internal citations omitted). Plaintiffs assert diversity jurisdiction

pursuant to 28 U.S.C. §1332(a)(3) – a civil action between "citizens of different States and in

which citizens or subjects of a foreign state are additional parties" (Compl. ¶ 22) – but have

brought the action against Jacob Weiss, who is alleged to be a citizen of Israel and the United

States, but not of any state. (*Id.* ¶ 44.) His presence defeats diversity jurisdiction.

Although the other parties in the case are diverse from one another, there can be

no diversity jurisdiction in any case to which Mr. Weiss is a party. As a citizen of the United

States who is not a citizen of any state, he does not fit into any of the categories of parties for

which diversity jurisdiction exists – citizens of states and "citizens or subjects of a foreign state"

or "foreign states". *See* 28 U.S.C. § 1332(a)(1)-(4). The fact that Mr. Weiss is also a citizen of

Israel does not change the analysis, because only the American citizenship of a dual citizen is

---

[27] The fact that ImageSat is incorporated in the Netherlands Antilles and the laws of that jurisdiction will govern most of the claims means that the Netherlands Antilles is also a more convenient forum for this lawsuit than New York. And as shown by the Declaration of Professor Peter van Schilfgaarde, sworn to on October 15, 2007 ("van Schilfgaarde Decl."), the Netherlands Antilles is an adequate alternative forum. (van Schilfgaarde Decl. ¶¶ 7-13.) However, in light of the fact that so many of the parties, witnesses, and documentary evidence to the lawsuit are located in Israel and that the allegations in the lawsuit relate centrally to Israel, Defendants submit that Israel is the most appropriate alternative forum.

recognized for purposes of diversity jurisdiction.  *See Action S.A. v. Marc Rich & Co., Inc.*, 951

F.2d 504, 507 (2d Cir. 1991).  Because § 1332 makes no provision for diversity jurisdiction in an

action by or against such a person, courts have consistently held that the presence of a citizen of

the United States who is not the citizen of a state, such as Mr. Weiss, automatically defeats

diversity jurisdiction in any action.  *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826,

828 (1989); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990) ("Though we are

unclear as to Congress's rationale for not granting United States citizens domiciled abroad rights

parallel to those it accords to foreign nationals, the language of § 1332(a) is specific and requires

the conclusion that a suit by or against United States citizens domiciled abroad may not be

premised on diversity"); *Lehman Gov't Sec. v. Pickholz*, No. 95 CIV. 7744 (LMM), 1996 WL

447995, at *1-2 (S.D.N.Y. Aug. 8, 1996) (diversity jurisdiction was not possible against

defendant who was a citizen of Israel and the United States and a resident of Israel).

        As alleged in the Complaint, Mr. Weiss is not a citizen of any state, and his

presence in the suit thus defeats diversity jurisdiction.  Thus, Plaintiffs have failed to establish

diversity jurisdiction and the lawsuit should accordingly be dismissed.  *See Jarmuth v. Jarmuth*,

No. 99 Civ. 3073 (LBS), 1999 WL 349626, at *1 (S.D.N.Y. May 28, 1999) (dismissing case for

failure to allege diversity jurisdiction when plaintiff merely alleged that defendants were citizens

of the United States, but did not allege that they were citizens of any state).

        **B.**        **The Court Should Decline to Exercise Supplemental Jurisdiction Over the State Law Claims After Dismissing the RICO Claim**

        Plaintiffs also assert federal question jurisdiction pursuant to 28 U.S.C. § 1331

(Compl. ¶ 21) and supplemental jurisdiction over the state law claims pursuant 28 U.S.C. § 1367.

Courts in this Circuit apply a two-step analysis to determine whether it has supplemental

jurisdiction.  First, the court must "identif[y] one of the factual predicates which corresponds to

one of the § 1367(c) categories [of circumstances in which a court may decline supplemental jurisdiction.]" *Itar-Tass Russian News Agemcy v. Russian Kurier, Inc.*, 140 F.3d 442, 446 (2d. Cir. 1998). Then it must determine whether to decline supplemental jurisdiction based on considerations of judicial economy, convenience, fairness, and comity set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). *See also Itar-Tass*, 140 F.3d at 445-46.

28 U.S.C. § 1367(c)(3) provides that a district court may decline supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction". And when federal claims are dismissed early in the action, the balance of the factors identified in *Gibbs* "will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 130 (2d Cir. 2003) (a court should decline supplemental jurisdiction if all federal claims have been dismissed at the pleading stage).

As demonstrated in § VII, *supra*, the RICO claim – Plaintiffs' only federal claim – should be dismissed. Dismissal of the RICO claim would remove this Court's only source of original, federal question jurisdiction and would leave pending only Plaintiffs' state law claims. Here, because this action is still at the pleading stage, judicial resources are not wasted if the case is re-filed in state court, nor is there any inconvenience or prejudice to the parties. In addition, the court should avoid "[n]eedless decisions of state law ... both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Turturro v. Cont'l Airlines*, 334 F. Supp. 2d 383, 398 (S.D.N.Y. 2004). Therefore this Court should decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3), and dismiss the Complaint for lack of subject matter jurisdiction. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 123-24 (2d Cir. 2006)

(finding that district court abused its discretion in exercising supplemental jurisdiction over state law claims where "[p]laintiffs' federal-law claims were eliminated on a motion to dismiss, prior to the investment of significant judicial resources, and [the Court discerned] no extraordinary inconvenience or inequity occasioned by permitting the claims to be refiled in state court where they will be afforded a surer-footed reading of applicable law.") (citation omitted); *Am. Home Mortg. Corp. v. UM Sec. Corp.,* No. 05 Civ. 2279 (RCC), 2007 WL 1074837, at *5 (S.D.N.Y. Apr. 9, 2007) (declining to exercise supplemental jurisdiction over state law claims after dismissing RICO claim, the only federal claim); *Smallwood ex rel. Hills v. Lupoli*, No. 04-CV-0686 (JFB)(MDG), 2007 WL 2713841, at *11 (E.D.N.Y. Sept. 14, 2007) (same).

## III.    PLAINTIFFS DO NOT HAVE STANDING TO ASSERT THE CLAIMS FOR BREACH OF FIDUCIARY DUTY (CLAIMS 1-6), CORPORATE WASTE (CLAIMS 7-9), SELF-DEALING (CLAIM 10), AND FRAUD (CLAIM 13)

The principal claims asserted in the Complaint allege various acts of corporate mismanagement and self dealing on the part of ImageSat, its officers and directors, and its shareholders.  Pursuant to well-settled choice of law rules, such claims are governed by the laws of the country in which ImageSat is incorporated, the Netherland Antilles.[28]  Because, as discussed below, Netherland Antilles law does not recognize the right of a shareholder to bring what are in essence derivative claims, Plaintiffs lack standing to bring such claims.

### A.    Plaintiffs' Right To Bring Claims Relating to the Internal Affairs of ImageSat Must Be Determined By The Law of the Netherlands Antilles

Because this case is brought in federal court purportedly on the basis of diversity of citizenship,[29] New York State conflicts of law principles apply to this matter.  *See AroChem*

---

[28]    As the Supreme Court recognized in *CTS Corp. v. Dynamics Corp. of America*, "except in the rarest situations," a corporation "is organized under, and governed by, the law of a single jurisdiction, traditionally the corporate law of the State of its incorporation."  *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 90 (1987).

[29]    *See* Compl. ¶ 22 (alleging jurisdiction pursuant to 28 U.S.C. § 1332(a)(3)).

*Int'l, Inc. v. Buirkle*, 968 F.2d 266, 269-70 (2d Cir. 1992) ("A federal court, sitting in diversity, must look to the choice-of-law rules of the state in which it sits – here New York – to resolve conflict-of-law questions.").

New York adheres to the "internal affairs" doctrine, according to which "[t]he right of a shareholder to object to conduct occurring in the operation of the corporate enterprise is determined by the law of the state of incorporation." *Hausman v. Buckley*, 299 F.2d 696, 706 (2d Cir. 1962) (dismissing a derivative suit because, under Venezuelan law, derivative suit would not be permitted); *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996) ("Under the generally-recognized choice-of-law rule, questions relating to the internal affairs of corporations are decided in accordance with the law of the place of incorporation."); *Galef v. Alexander*, 615 F.2d 51, 58 (2d Cir. 1980) ("New York courts ... look to the law of the state of incorporation in adjudicating a corporation's 'internal affairs,'" including "the substantive question of the stockholder's right to sue.").  New York courts have consistently affirmed the principle that the rights of a shareholder in a foreign company are determined by the law of the place where the company is incorporated.[30]

In the past year alone, numerous courts in this Circuit have applied the internal affairs doctrine to dismiss derivative actions by shareholders.  *See Feiner Family Trust v. VBI Corp.*, No. 07 Civ. 1914 (RPP), 2007 WL 2615448 (S.D.N.Y. Sept. 10, 2007) (dismissing a derivative suit for lack of standing because under the law of the Cayman Islands a shareholder may not bring a suit on behalf of the corporation); *In re BP P.L.C. Derivative Litig.*, No. 06 Civ.

---

[30]     *See CPF Acquisition Co. v. CPF Acquisition Co.*, 682 N.Y.S.2d 3, 4 (App. Div. 1998) ("Plaintiff's standing to sue is governed by Delaware law, that being the State of the subject corporation's incorporation."); *Kikis v. McRoberts Corp.*, 639 N.Y.S. 346 (App. Div. 1996) ("[I]ssues of corporate governance are determined by the State in which the corporation is chartered."); *Zion v. Kurtz*, 428 N.Y.S.2d 199, 203 (App. Div. 1980) (referring to "internal affairs" doctrine as "the generally accepted choice-of-law rule ... with respect to ... the relationship between shareholders and directors.").

6168 (HB), 2007 WL 2078752 (S.D.N.Y. July 23, 2007) (dismissing a derivative suit for lack of standing because under English law a shareholder may not bring a suit on behalf of the corporation); *Winn v. Schafer*, 499 F. Supp. 2d 390, 396 (S.D.N.Y. 2007) (same); *Seghers v. Thompson*, No. 06 Civ. 308 (RMB), 2006 WL 2807203, at *1 (S.D.N.Y. Sept. 27, 2006) (same); *Seybold v. Groenink*, No. 06 Civ. 772 (DLC), 2007 WL 737502 (S.D.N.Y. March 12, 2007) (dismissing a derivative suit because under Dutch law a shareholder may not sue on behalf of the corporation).

The Supreme Court explained the rationale for the internal affairs doctrine as promoting important judicial goals of consistency and predictability in the application of laws governing a corporation's affairs:

> [O]nly one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders – because otherwise a corporation could be faced with conflicting demands.

*Edgar v. MITE Corp*., 457 U.S. 624, 645 (1982).

The internal affairs doctrine applies to the claims for breach of fiduciary duty[31] (counts one - six), corporate waste[32] (counts seven - nine[33]), self-dealing[34] (count ten), and fraud

---

[31] *See, e.g., Seybold*, 2007 WL 737502, at *1 (shareholders' claims of breach of fiduciary duty governed by Dutch law pursuant to internal affairs doctrine); *BBS Norwalk One, Inc. v. Raccolta, Inc*., 60 F. Supp. 2d 123, 129 (S.D.N.Y. 1999) (under New York law, "a claim of breach of fiduciary duty owed to a corporation is governed by the law of the state of incorporation."); *Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 116 (S.D.N.Y. 1999) (holding that plaintiff's fiduciary duty obligations would be governed by law of Great Britain).

[32] *See, e.g., Hausman, v. Buckley*, 299 F.2d at 698 (shareholders' claims of corporate waste governed by Venezuelan law pursuant to internal affairs doctrine).

[33] Plaintiffs clarified in the Preliminary Pre-Trial Statement filed with the Court on October 5, 2007 (at page 9) that Count 9 in the Complaint is a claim for corporate waste.

[34] *See In re Luxottica Group Securities Lit*., 293 F. Supp. 2d 224, 237 (E.D.N.Y. 2003) (analyzing claim of self-dealing under Florida law as the place of incorporation).

(count thirteen).[35]  Each of these claims is premised on the allegation that Defendants exceeded

their corporate powers in matters relating to ImageSat's business affairs.[36]

> **B.    Plaintiffs' Claims Do Not Satisfy the Limited Circumstances Under Which Shareholders of a Netherlands Antilles Corporation May Sue the Corporation or its Directors**

ImageSat is a limited liability company incorporated under the law of the

Netherlands Antilles.  (Compl. ¶ 1.)  Accordingly, under New York's choice of law principles,

the law of the Netherlands Antilles governs whether the Complaint states a proper claim.

Corporate law in the Netherlands Antilles is nearly identical to the law of the

Netherlands.  (van Schilfgaarde Decl. at ¶ 11).  Neither jurisdiction recognizes a "fiduciary duty"

as such.  (*Id*. ¶ 21.)  Moreover, neither jurisdiction recognizes the right of shareholders to bring

claims derivatively on behalf of the corporation.  (*Id*. ¶ 22.)  The prohibition against derivative

suits under Netherlands law was confirmed recently by a court in this Circuit that dismissed a

derivative suit brought by shareholders of ABN Amro, a bank incorporated in the Netherlands,

against the company and its directors.  *See Seybold v. Groenink*, No. 06 Civ. 772 (DLC), 2007

WL 737502 (S.D.N.Y. March 12, 2007).  Judge Cote dismissed that action on the ground that

plaintiffs lacked standing because the law of the Netherlands does not recognize derivative suits.

*Id*. at *7.  This same result was reached earlier by the Delaware Court of Chancery when it

dismissed a derivative suit against a Dutch corporation after determining that "Dutch law does

---

[35]    *See Aboushanab v. Janay*, No. 06 Civ. 13472 (AKH), 2007 WL 2789511, at *6 (S.D.N.Y. Sept. 26, 2007) (applying law of place of incorporation to determine whether plaintiffs have standing to assert fraud claim).

[36]    Regarding the claim for self-dealing (count ten), Plaintiffs allege that "each of the Defendants owed ImageSat the highest fiduciary duties of care, loyalty, candor, and good faith" (Compl. ¶ 280) and that "each of the Defendants wrongfully placed his or its own personal interests ahead of the interests of the Company's shareholders including Plaintiffs, and the Company."  (*Id*. ¶ 278.)  In support of the claim for fraud (count thirteen), Plaintiffs allege that "ImageSat has been operated in a fashion designed to serve the best interests of its controlling shareholders, including IAI and Elbit, and the IMOD, rather than those of all its shareholders."  (*Id*. ¶ 309).  These causes of action thus relate to the internal affairs of ImageSat.

not recognize a stockholder's right to pursue a derivative action on behalf of a corporation."
*Kostolany v. Davis*, Civ. A. No. 13299, 1995 WL 662683, at *4 (Del. Ch. Nov. 7, 1995).

Plaintiffs try to navigate around the fact that Netherlands Antilles law does not recognize derivative suits by pleading this action in a direct capacity rather than as a derivative action. But their claims for breach of fiduciary duty, corporate waste, self-dealing, and fraud fail because they are unquestionably derivative in nature in that they allege damage to the Company as a whole, not just to a particular shareholder or group of shareholders. *See infra*, at 23-25.[37]

Even as direct actions these claims fail because the law of the Netherlands Antilles does not permit shareholders to bring a direct action against the company or its directors, except in limited circumstances that are not satisfied here. As set forth in the van Schilfgaarde Declaration,[38] under Netherlands Antilles law the right of a shareholder to assert a claim against ImageSat is limited by two requirements. First, it must be shown by the shareholders that the alleged misconduct by the company involved an act that is unlawful towards the claiming shareholders. (van Schilfgaarde Decl. ¶ 37.) Second, the damage allegedly suffered must be tied to the purpose for which the duty allegedly violated was created. (*Id.*) Professor van Schilfgaarde further explains that the combination of these two requirements means that if the alleged misconduct merely involved an act that damaged the company as a whole no action by the shareholders would be permitted. *Id.*

---

[37] *See, e.g., Lakonia Mgmt. Ltd. v. Meriwether*, 106 F. Supp. 2d 540, 551 (S.D.N.Y. 2000) ("It is a well-settled principle of corporate law that an action to redress injuries to a corporation cannot be maintained by a shareholder in his [or her] name but must be brought in the name of the corporation through a derivative action."). Israel law is to the same effect. *See* Vigdor Decl. at ¶¶ 25-26 (explaining that under Israeli law a shareholder cannot bring a claim based on corporate mismanagement unless there was a breach of a duty owed directly to him rather than to the company).

[38] Fed. R. Civ. P. 44.1 permits "[t]he court, in determining foreign law, [to] consider any relevant material or source," and "[t]he court's determination shall be treated as a ruling on a question of law."

Similarly, shareholders in a Netherlands Antilles corporation may not bring a claim against the *directors* unless they can satisfy two requirements. First, it must be shown by the shareholders that the alleged misconduct by the directors involved an act that is unlawful towards the claiming shareholders. (*Id.* ¶ 26.) Second, the shareholders must claim damages in the form of something other than a devaluation of their shares. This requirement means that a shareholder may assert an action against directors only if the damages claimed are suffered in his own business or in his private financial situation, not counting the value of his shares in the company. (*Id.* ¶ 28.)

Plaintiffs' claims against ImageSat and its directors and officers do not satisfy these requirements. Accepting Plaintiffs' allegations as true just for purposes of this motion, the conduct on which they rest their claims for breach of fiduciary duty, corporate waste, self-dealing, and fraud would have damaged all of the Company's shareholders, not just a select minority. Indeed, Plaintiffs' own allegations acknowledge that their claims rest on conduct alleged to have damaged all of the shareholders:

- Count One (Breach of Fiduciary Duty) alleges that the Defendants unfairly modified the Master Agreement "thus disserving the best interests of *the Company and its shareholders.*" (Compl. ¶ 198.) (emphasis added).

- Count Two (Breach of Fiduciary Duty) alleges that "[t]hroughout the history of the 2001 Eros B satellite, Defendants consistently placed their self-interests ahead of those of *ImageSat and its stockholders.*" (*Id.* ¶ 208.) (emphasis added).

- Count Three (Breach of Fiduciary Duty) alleges that the Defendants took numerous acts to destroy the Company's international operations, all of which had the effect of "damage[ing] the *Company's* credibility, its corresponding sales performance*, its overall valuation*, and the interests of the minority shareholders by hundreds of millions of dollars." (*Id.* ¶ 220.) (emphasis added).

- Count Four (Breach of Fiduciary Duty) alleges that the Defendants took numerous actions "[f]ailing to take advantage of the Venezuelan opportunity for reasons unrelated to the best interests of the *Company and its shareholders,*" in the process "[l]osing million of dollars of revenue *for*

23

*the Company.*"  (*Id.* ¶ 230.)  Plaintiffs further allege that Defendants took actions "[a]llowing IAI, Elbit, and the IMOD to have the power to decide that the fundamental purpose of ImageSat is now and henceforth to serve the military and strategic interests of Israel, *rather than the interests of all the Company's shareholders*, including Plaintiffs."  (*Id.*)  (emphasis added).

- Count Five (Breach of Fiduciary Duty) alleges that the Defendants caused financial harm to the Company in recent years and restructured the Company's senior debt and equity in a way that benefited IAI and Elbit "to the detriment of the *Company's other shareholders.*"  (*Id.* ¶ 239.)  Plaintiffs further allege that Defendants "act[ed] in some cases for the grossly improper purpose of deliberately seeking to minimize, rather than maximize, the value of the shareholders' investments." (*Id.*)  (emphasis added).

- Count Six (Breach of Fiduciary Duty) alleges that Defendants devalued "ImageSat's most valuable legal and commercial rights" under the Master Agreement and otherwise, such as by "[f]ailing to negotiate and collect royalties to which *ImageSat* is entitled" and failing to "vindicat[e] the rights of *ImageSat and its shareholders* through legal means."  (*Id.* ¶ 249-50.)  Plaintiffs allege that these actions "had the effect of "costing *ImageSat and its shareholders* hundreds of millions of dollars."  (*Id.* ¶ 250.)  (emphasis added).

- Count Seven (Corporate Waste) alleges that "Defendants took no action to attempt to recoup any of more than $33 million that the *Company* expended on a satellite contract for which it never received any form of value."  (*Id.* ¶ 256.)  Plaintiffs further allege that the Defendants negotiated the terms of the EROS B satellite contract in a way that was "grossly disproportionate and unfair to *ImageSat and its shareholders.*"  (*Id.* ¶ 258.)  (emphasis added).

- Count Eight (Corporate Waste) alleges that "Defendants have grossly mismanaged the business and affairs of the *Company*" and endangered the well-being of the Company by causing the company to engage in transactions that were "grossly disproportionate and unfair to *ImageSat and its shareholders.*"  (*Id.* ¶ 265.)  (emphasis added).

- Count Nine (Corporate Waste) alleges that "Defendants have effectively given or attempted to give away *ImageSat's* valuable contractual rights for little or no consideration in a transaction or bargain whose terms were so grossly disproportionate and unfair to *ImageSat and its shareholders* that no reasonable corporate director or officer would have believed that the relinquishment of such rights was fair and in the best interests of the *shareholders.*" (*Id.* ¶ 273.)  (emphasis added).

- Count Ten (Self-Dealing) alleges that Defendants took certain actions that "wrongfully placed his or its personal interests ahead of the interests of the

> *Company's shareholders*, including Plaintiffs, and the *Company*." (*Id.* ¶ 278.) (emphasis added).

- Count Thirteen (Fraud) alleges that as a result of fraudulent acts on the part of the Defendants "ImageSat has been operated in a fashion designed to serve the best interests of its controlling shareholders, including IAI and Elbit, and the IMOD, rather than *all of its shareholders*." (*Id.* ¶ 309.) (emphasis added).

Although Plaintiffs make the conclusory allegation that Defendants' actions caused specific injury to the Company's minority shareholders, it is clear from the allegations that the conduct on which their Complaint rests, if true, would have injured *all* of the Company's shareholders, not just the minority shareholders. Plaintiffs offer no explanation why the conduct they complain of would have injured them alone and not any other shareholder who is not a party to this lawsuit.[39] For that reason, Plaintiffs do not have standing to assert these claims.[40]

Plaintiffs' claims against the directors fail for the additional reason that they do not satisfy the requirement that their alleged damages must be something other than a devaluation of their shares. (van Schilfgaarde Decl. ¶ 28.) Plaintiffs' damages theory rests entirely on their claim that the Defendants' actions have "strip[ped] hundreds of millions of dollars of shareholder value from ImageSat." (Compl. ¶ 3.) There is no allegation by Plaintiffs that the actions alleged in the Complaint caused them to suffer damages in a separate business venture unrelated to ImageSat, as would be required for their claims to proceed under Netherlands Antilles law. (van Schilfgaarde Decl. ¶ 28.)

---

[39] A significant percentage of ImageSat's shareholders are not parties to this action. Plaintiffs allege that as of March 2006 they collectively owned approximately 10.7% of ImageSat's outstanding shares and they now own less than that amount. (Compl. ¶ 2.)

[40] As Professor van Schilfgaarde explains, "Netherlands Antilles law would not permit a shareholder to assert a claim for mismanagement against directors where the alleged misconduct is that the directors failed to act upon a corporate opportunity that may have lead to financial benefit for the corporation as a whole. Similarly, this limitation means in my view that Antilles law would not permit an action by a shareholder against directors based on a claim that the board entered into a transaction that caused a financial loss for the company." (van Schilfgaarde Decl. ¶ 27. )

**C.    Plaintiffs' Claims Do Not Satisfy the Limited Circumstances Under Which Shareholders of a Netherlands Antilles Corporation May Sue Another Shareholder**

As described in the van Schilfgaarde declaration, shareholders in Netherland Antilles corporations may exercise their rights as shareholders in their own self interest and generally have no duties to other shareholders.  (*Id.* ¶ 39.)  Certainly, there are no fiduciary duties among Netherland Antilles shareholders.  (*Id.*)  Accordingly, Claims One through 10 of the Complaint which sound as alleged breaches of fiduciary duty must be dismissed as against Defendants IAI and Elbit, the Israeli corporations alleged to be ImageSat shareholders.

To the extent that, as described in the van Schilfgaarde declaration, there exists under Netherland Antilles law a claim of general "tort" that may be asserted between shareholders, such a claim cannot be sustained on the facts as alleged in the Complaint.  Thus, as demonstrated above with respect to the ImageSat directors and ImageSat itself, the Complaint simply fails to allege (a) any intention by IAI or Elbit to harm any of the Plaintiffs and (b) any damage suffered by Plaintiffs other than the alleged damage to the value of ImageSat and, by extension, an alleged suppression of the value of Plaintiffs' ImageSat shares.  It is clear that under Netherlands Antilles law such allegations are not actionable as against either IAI or Elbit.

**D.    Applying Netherlands Antilles Law to Determine Whether Plaintiffs Have Standing is Consistent with Public Policy**

ImageSat, its officers and directors, and its other shareholders have the right to expect that the law of the Netherlands Antilles will apply to disputes concerning shareholders' rights. *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983) (application of the internal affairs doctrine is necessary to provide "certainty and predictability of result" and to protect the "justified expectations of parties with interests in the corporation.").   The law of the Netherlands Antilles provides several legal mechanisms by

which a shareholder can seek redress for corporate misconduct.  Although minority shareholder

suits are not allowed, the Netherlands Antilles protects minority shareholder rights by, *inter alia*,

authorizing the management board to bring an action on behalf of the company and allowing

shareholders to act in a general meeting to seek the replacement of a director or the entire board

if they disagree with the board's actions or policies.  (van Schilfgaarde Decl. ¶¶ 42-43.)  In

addition, under certain circumstances a shareholder in a Netherlands Antilles corporation may

institute a claim against the company for withdrawal demanding that his shares be acquired

against payment in cash.  (*Id.* ¶ 46.)  Accordingly, the law of the Netherlands Antilles is

consistent with fundamental principles of justice and should not be rejected merely because it

provides remedial mechanisms different from those provided by New York law.[41]

## IV.    THE PLAINTIFFS WHO HOLD ONLY OPTIONS OR BRIDGE WARRANTS LACK STANDING TO SUE

Plaintiffs Michael Morris, Haim Yifrah, Morris Talansky, Abraham Moshel,

Albert Reichmann, Hexagram & Co., and Polybutes Company are alleged only to hold expired

options or bridge warrants, not common stock of ImageSat.  (Compl. ¶¶ 29, 30, 33, 34, 36, 37,

38.)  If their right to bring a suit against ImageSat, its directors, and shareholders is governed by

Netherlands Antilles law, they do not have standing to assert most of their claims for the same

reason that the Plaintiffs who are shareholders lack standing.  *See, supra,* § III.

---

[41]    Even if New York law were to apply to Plaintiffs' claims, the claims against ImageSat and its directors would have to be dismissed because Plaintiffs cannot assert that they were owed a duty separate and distinct from the duty owed to all shareholders of the corporation.  *See Henneberry v. Sumitomo Corp. of America*, No. 04 Civ. 2128 (PKL), 2007 WL 2068346, at *7 (S.D.N.Y. July 12, 2007) ("Generally an individual shareholder lacks standing to bring a claim where 'the duty owed to the shareholder [] is ... indistinguishable from the duty owed to the corporation.'  Absent an independent duty, the shareholder's perceived injury is deemed to be considered the same injury as that to the corporation and, consequently, the shareholder maintains no separate right of action separate and apart from the corporation's.").  Israel law is to the same effect.  (Vigdor Decl. ¶¶ 25-26.)

If their right to bring this action is analyzed under New York law because they are not shareholders of ImageSat, they still lack standing to assert any of the claims in the lawsuit, except claims 17 and 18 that relate to the options and bridge warrants.[42]

An option holder is owed no fiduciary duty by a corporation's officers or insiders. *See Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 490 (S.D.N.Y. 2006) (under New York law plaintiffs as option holders cannot state a claim for breach of fiduciary duty or corporate mismanagement); *Bell v. Leakas*, No. 90 Civ. 7981 (LMM), 1993 WL 77320, at *6 (S.D.N.Y. Mar. 13, 1993) ("corporate officers owe no fiduciary duty to stock optionees"); *Starkman v. Warner Commc'ns, Inc.*, 671 F. Supp. 297, 304 (S.D.N.Y. 1987) (dismissing option holder's claim for securities fraud and holding that an option creates "no fiduciary obligation of the management to the optionholder's interest"); *O'Connor & Assocs. v. Dean Witter Reynolds, Inc.*, 529 F. Supp. 1179, 1185 (S.D.N.Y. 1981) (holding that option holder, unlike shareholder, is owed no fiduciary duties by corporate insiders, while allowing option holder's claim for securities fraud to go forward on ground that option holder was covered purchaser of securities).

Likewise, under New York law, holders of warrants to buy stock in a corporation are owed no fiduciary duty by the corporation or its officers. In *BHC Interim Funding, L.P. v. Finatra Capital, Inc.*, the court rejected a warrant holder's claim for breach of fiduciary duty:

> ... pursuant to the terms of the Loan Agreement, [plaintiff] simply held warrants to purchase [defendant corporation's] stock. The Amended Complaint does not allege that [plaintiff] exercised these warrants. Essentially, [plaintiff] was an option holder. Under either California or New York law, an option holder, unlike a shareholder, is not owed a fiduciary duty by a corporation's officers.

283 F. Supp. 2d 968, 989 (S.D.N.Y. 2003).

---

[42]    As discussed *infra* in Section VIII, claims 17 and 18 are time-barred.  Claim 18 fails for the additional reason that Plaintiffs cannot allege reasonable reliance.

In fact, the bridge warrants specifically provide that "Holder shall have no rights as a shareholder ... until payment of the Exercise Price ... and delivery of such shares."  *See* Ex. B to the Declaration of Deborah Elman in Support of Defendants' Motion to Dismiss the Complaint ("Elman Decl.").  Because the Plaintiffs never exercised their bridge warrants, they are not shareholders of the Company and they lack standing to bring the claims in this lawsuit.

## V.    PLAINTIFFS' CAUSE OF ACTION FOR CONVERSION AND MISAPPROPRIATION (CLAIM 21) MUST BE DISMISSED FOR LACK OF STANDING AND FAILURE TO ALLEGE NECESSARY FACTS

"In tort cases ... New York applies the law of the state with the most significant interest in the litigation."  *Lee v. Bankers Trust Co.,* 166 F.3d 540, 545 (2d Cir. 1999) (citation omitted).  The purpose of this "interest analysis" is "to determine which of two competing jurisdictions has the greater interest in having its law applied in the litigation."  *Padula v. Lilarn Props. Corp.*, 644 N.E.2d 1001, 1002 (N.Y. 1994).  "Two separate inquiries are ... required to determine the greater interest:  (1) what are the significant contacts and in which jurisdiction are they located; and, (2) whether the purpose of the law is to regulate conduct or allocate loss." *Krock v. Lipsay*, 97 F.3d 640, 645-646 (2d Cir. 1996), *quoting Padula*, 644 N.E.2d at 1002. "Where the parties are domiciled in different states, the locus of the tort will almost always be determinative in cases involving conduct-regulating laws."  *Krock*, 97 F.3d at 646.

Plaintiffs' unspecific pleading of this cause of action, in which they allege only that "[i]n connection with each of the transactions and acts described above, each of the Defendants wrongfully caused assets, property, funds, and other things of value belonging to ImageSat to be diverted to themselves or their own use" (Compl. ¶ 381), makes determination of the locus of the tort alleged impossible, as the facts alleged in the Complaint cover a decade's worth of international business transactions, and Plaintiffs have not chosen to draw specific attention to any particular set of facts as a basis for this cause of action.  Possible jurisdictions in

which facts that might be relevant to this cause of action are alleged to have taken place include

Israel, Angola, Venezuela, Netherlands Antilles, and New York. Given the non-specificity of the

pleading, this analysis will focus on the law of New York, where some of the corporate acts

allegedly took place.[43]

        Under New York law, to establish a cause of action for conversion a plaintiff

must prove that it is the legal owner or has an immediate right of possession of tangible personal

property or specific money and that the defendant's actions have interfered with plaintiff's rights

of ownership or possession. *Batsidis v. Batsidis*, 778 N.Y.S.2d 913 (App. Div. 2004). To have

standing to bring such a claim, the plaintiff must demonstrate that the alleged "converter"

breached a duty owed independently to the plaintiffs or allege that the conversion caused a

separate and distinct injury to the plaintiff not shared by the corporation. *See Collins v. Telcoa*

*Int'l Corp.*, 726 N.Y.S.2d 679 (App. Div. 2001) (shareholder plaintiff had standing to sue

majority shareholders where the majority shareholders had absconded with the plaintiffs'

proceeds in sale of corporation assets). Where facts are not alleged that demonstrate an injury to

plaintiff separate and apart from the injury to the corporation, the plaintiff has no standing to sue

for conversion. *See Albany-Plattsburg United Corp. v. Bell*, 763 N.Y.S.2d 119, 123 (App. Div.

2003) (finding that claim of conversion did not arise from an independent duty owed to plaintiff

individually); *Wolf v. Rand*, 685 N.Y.S.2d 708, 710 (App. Div. 1999) (where director diverted

corporate profits and plaintiff sued both individually and derivatively, court found that the claim

belongs to the corporation); *Paradiso & DiMenna, Inc. v. DiMenna*, 649 N.Y.S.2d 126, 127

(App. Div. 1996) (when injury to plaintiff was only derivative, awarding of damages to

individual plaintiff for conversion of corporate funds was error). Likewise, an individual

---

[43]   If Plaintiffs later clarify what factual allegations they depend upon to support this cause of action, it may prove
necessary to revisit this choice of law analysis. Nonetheless, while the Defendants do not concede that New
York law necessarily applies, Plaintiffs rely on New York law, and under its analysis, their claims fail.

shareholder has no standing under New York law to bring a claim for misappropriation of corporate assets. *Albany Plattsburgh United Corp. v. Bell*, 763 N.Y.S.2d 119, 122 (App. Div. 2003) (dismissing shareholder plaintiff's claim for misappropriation of corporate assets and holding that "[i]t is axiomatic that a shareholder has no individual cause of action to recover damages for a wrong against a corporation.")

Plaintiffs allege that Defendants converted and misappropriated *ImageSat's* property (Compl. ¶ 81) (referring to the conversion of "assets, property, funds, and other things of value belonging to ImageSat"). They make no allegation that any specific property of which Plaintiffs were the legal owners, or that Plaintiffs had a legal right to possess, was misappropriated or converted. Further, Plaintiffs allege no facts supporting their conclusory statement that the acts alleged "would cause specific injury directed against [ImageSat's] minority shareholders, including Plaintiffs." Comp. ¶ 388; *Franklin v. Winard*, 606 N.Y.S.2d 162 (App. Div. 1993) (dismissing claim for conversion where it depended on "allegations consisting of bare legal conclusions" rather than credible factual allegations).

In the absence of any claim that Defendants converted or misappropriated any property of which Plaintiffs were the owners or which they had a right to possess, and in the further absence of any factual allegations that Defendants' acts were intended to, or did, cause any "specific injury" separate from the injury alleged to ImageSat, the twenty-first cause of action for conversion must be dismissed in its entirety.[44]

---

[44]    If the conversion/misappropriation cause of action were to be governed by Netherlands Antilles law, Plaintiffs would not have standing to assert the claim, for the reasons described, *supra* in § III.

## VI.    THE CLAIM FOR UNJUST ENRICHMENT (CLAIM 22) SHOULD BE DISMISSED AS PRECLUDED BY THE EXISTENCE OF DUPLICATIVE CONTRACTS AND AS DUPLICATIVE OF OTHER CLAIMS

The twenty-second claim for relief for unjust enrichment and restitution relies on no specific set of the allegations in the 151-page Complaint, referring rather to "all the acts and omissions set forth above" (Compl. ¶ 387), and as such must be dismissed as duplicative of Plaintiffs' other causes of action. *See Spanierman Gallery, PSP v. Love*, No. 03 Civ. 3188 VM, 2003 WL 22480055, at *4 (S.D.N.Y. Oct. 31, 2003) (dismissing claim for unjust enrichment where plaintiffs "failed to allege any distinct harm or actions giving rise to any separate claim of unjust enrichment or constructive trust."); *Diversified Group, Inc. v. Daugerdas*, 139 F. Supp. 2d 445, 460-61 (S.D.N.Y. 2001) (dismissing claim for unjust enrichment as duplicative of claims for attorney's breach of contract and breach of fiduciary duty). More particularly, Plaintiffs' allegations that they have been damaged fall into only two categories – claims relating to one or another of the contracts at issue in this action, or relating to duties purportedly owed to Plaintiffs by reason of their ownership interests in the Company. As Plaintiffs have alleged no facts supporting a claim of unjust enrichment that do not fall into one of those two categories, any claim of unjust enrichment is duplicative of and precluded by their other claims.[45]

---

[45]    As with the conversion claim, analysis of the law applicable to this claim is complicated by Plaintiffs' cavalier pleading. To the extent that the facts Plaintiffs rely on to support this claim relate to one or another of the contracts implicated in this action, the applicable law would be that of the relevant contract. *See Beattie and Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367 (S.D.N.Y. 2006) (applying contract rules where unjust enrichment claim related to a contract with choice of law provision). To the extent that Plaintiffs rely on facts more closely related to a tort claim, applicable law would be that of the jurisdiction with the greatest interest in the specific issue raised, which here is likely Israel. *See Hughes v. LaSalle Bank, N.A.*, 419 F. Supp. 2d 605 (S.D.N.Y. 2006) (employing tort choice of law rules for unjust enrichment claim associated with breach of fiduciary duty). Due to the vagueness of the pleading, the unjust enrichment claim will be analyzed as if New York law applies without conceding that New York law in fact will apply to such claim.

A.     **Insofar As Plaintiffs' Claims for Unjust Enrichment Relate To An Explicit Contract, The Claims Are Precluded By The Contract**

Cases concerning unjust enrichment in New York are uniform in their recognition of three elements of a claim for unjust enrichment:  "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  *Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc*., 448 F.3d 573, 586 (2d Cir. 2006), *quoting Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). "Unjust enrichment is a quasi-contract claim, and the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Feigen v. Advance Capital Mgmt. Corp*., 541 N.Y.S.2d 797, 799 (App. Div. 1989).  Further, "a nonsignatory to a contract cannot be held liable where there is an express contract covering the same subject matter." *Id*.; *see also Int'l Customs Assocs., Inc. v. Ford Motor Co*., 893 F. Supp. 1251, 1255 (S.D.N.Y. 1995) (dismissing causes of action for breach of contract and quasi-contract against defendant where express contract with defendant's subsidiary governed subject matter of action).

Insofar as Plaintiffs rest their claim for unjust enrichment on any act or omission relating to one or another of the explicit contracts at issue in this action, it is precluded by New York law.  A claim arising out of a contract must be enforced under the terms of that contract, rather than through a quasi-contractual remedy such as unjust enrichment.  *Beth Israel Med. Ctr.*, 448 F.3d at 586.  The gravamen of Plaintiffs' claim concerns the performance of the parties under the Master Agreement, Satellite Supply Contracts, and to a lesser extent the Stock

Purchase Agreement.  Therefore, the claim for unjust enrichment and restitution, to the extent it

rests on facts related to one or another of the contracts at issue in this case, must be dismissed.[46]

> **B.    To The Extent Plaintiffs' Claims For Unjust Enrichment Arise From Some Non-Contractual Right Arising Out of Their Ownership Interest In the Company, They Are Duplicative of the Remainder of Plaintiffs' Claims**

As Plaintiffs have not specifically alleged their claims for unjust enrichment, it is

not possible to determine precisely upon which facts it rests.  Plaintiffs do not allege, however,

that Defendants have benefited at Plaintiffs' expense through any means other than Defendants'

participation in contracts with ImageSat on the one hand, and Defendants' participation in the

corporate governance of ImageSat on the other.  To the extent, then, that Plaintiffs' claim does

not relate to some explicit contract, and is not as such precluded by the existence of that contract,

under the facts alleged by Plaintiffs it can only arise out of some fiduciary duty alleged to be

owed to them by virtue of their ownership interests in the company.  Any such claim is therefore

duplicative of Plaintiffs' first through tenth claims, for breach of fiduciary duty in various

regards, and as such must be dismissed.  *See Spanierman Gallery*, 2003 WL 22480055, at *4;

*Diversified Group, Inc.*, 139 F. Supp. 2d at 460-61.

**VII.    THE RICO CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NOT BEEN INJURED AND THEY HAVE NOT ADEQUATELY ALLEGED A PATTERN OF RACKETEERING**

In the Second Circuit, to state a civil claim for damages under RICO "a plaintiff

has two pleading burdens."  *Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 254

(S.D.N.Y. 2002) (citing *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)).  "First, a

plaintiff must establish:  (1) that the defendant (2) through the commission of two or more acts

(3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or

---

[46]    If the unjust enrichment cause of action were to be governed by Netherlands Antilles law, Plaintiffs would not have standing to assert the claim against any of the Defendants, for the reasons described, *supra* in § III.

maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce." *Id*. at 254-55 (internal citations omitted). "Second, a plaintiff must allege causation, *i.e.*, that he or she was 'injured in his [or her] business or property by reason of a violation of the RICO statute, 18 U.S.C. § 1962.'" *Id*. at 255. Plaintiffs that fail adequately to plead injury caused by the alleged predicate acts lack standing to bring a RICO claim. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) ("[T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.").

The Second Circuit has emphasized that "the Racketeer Influenced and Corrupt Organizations Act's ... treble damages provisions are not available to remedy every possible injury that can, with some ingenuity, be attributed to a defendant's injurious conduct." *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 116 (2d Cir. 2003); *see also In re Integrated Res. Real Estate Ltd. P'Ships Secs. Litig*., 850 F. Supp. 1105, 1148 (S.D.N.Y. 1994) (dismissing RICO claim where "Plaintiffs' RICO actions is nothing more than an ordinary fraud case clothed in the Emperor's trendy garb."); *Terra Resources I v. Burgin*, 664 F. Supp. 82, 84 (S.D.N.Y. 1987) ("there is no evidence that it was ever the intent of Congress to flood the federal courts with actions more properly brought under various state and other federal statutes in the name of RICO simply because of the carrot of treble recovery.").

In this case, Plaintiffs have neither adequately pled a RICO injury nor a pattern of racketeering.[47] Their purported RICO claim is simply that ImageSat's directors, officers and

---

[47] In addition, RICO must be pleaded as to each individual defendant. *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987) ("The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise . . . ."). This includes pleading the predicate acts of mail and wire fraud with 9(b) particularity. Moreover, "where the predicate acts alleged are mail fraud, the alleged fraudulent mailings must be linked to particular defendants . . . ." *Tribune Co. v. Purcigliotti*, 869 F. Supp. 1076, 1088 (S.D.N.Y. 1994), *aff'd*, 66 F.3d 12 (2d Cir. 1995). As explained in the briefs of the individual Defendants, Plaintiffs' RICO claim also fails in this regard.

entities alleged to be shareholders took actions that were not in ImageSat's best interests.

Plaintiffs' effort to transmute these routine state law claims into claims for treble damages under

RICO should be rejected, and their RICO claims should be dismissed.

### A.    Plaintiffs Do Not Have Standing to Bring a RICO Claim Because Their Injuries Are Derivative of Injuries to ImageSat

Plaintiffs do not have standing to bring this claim, because, as discussed in § III,

*supra*, their alleged injuries are merely derivative of alleged injuries to ImageSat.  "[C]ourts have

consistently found that shareholders, creditors, and employees of a corporation lack standing to

sue under RICO where their injuries derive from direct injuries to the corporation itself."  *Bona*

*v. Barasch*, No. 01 Civ. 2289 (MBM), 2003 WL 1395932, at *25 (S.D.N.Y. March 20, 2003)

(citing *Manson v. Stacescu*, 11 F.3d 1127 (2d Cir. 1993)); *see also Lakonia Mgmt. Ltd. v.*

*Meriwether*, 106 F. Supp. 2d 540, 551 (S.D.N.Y. 2000) ("A decrease in value of a holder's

shares which 'merely reflects the decrease in value of the firm as a result of the alleged illegal

conduct' is derivative rather than direct in nature and cannot confer individual standing under

RICO."); *see also Chandradat v. Navillus Tile*, No. 03 Civ. 10093 (RJH), 2004 WL 2186562, at

*5 (S.D.N.Y. Sept. 28, 2004) (holding that plaintiff lacked "standing to assert civil RICO claims

on behalf of injuries suffered by the corporations" because "[e]ven assuming, *arguendo*, that

defendant corporations profited from their RICO violations but diverted the proceeds to their

principals, it is well settled that shareholders . . . of a corporation lack standing to sue under

RICO where their injuries derive from direct injuries to the corporation itself.") (internal

citations omitted).

The gist of Plaintiffs' RICO claim is that Defendants have used the mail and wires

in furtherance of the actions that are the basis for the other claims – for example, alleged

breaches of fiduciary duty related to the July 2000 transactions, the 2001 EROS B satellite, the

proposed IPO and the Angola SOP contract, the lost Venezuela opportunity, and an alleged breach of the 2000 Master Agreement.[48]  (*See* Compl. ¶ 298(a)-(j).)  Plaintiffs do not allege, however, that these actions injured them directly.  For example, Plaintiffs allege that "IAI's present, impending, and contemplated breaches of the Master Agreement and its other contractual obligations *threaten to cost the Company* hundreds of millions of dollars" and "*threaten the solvency of ImageSat* as a going concern and subject ImageSat and its shareholders, including the plaintiffs as minority shareholders, to substantial, immediate, and irreparable harm."  (Compl. ¶¶ 326-27 (emphasis added).)  Similarly, Plaintiffs claim that Defendants breached their fiduciary duties by "[i]nappropriately conspiring and agreeing to modify the Master Agreement so as to accord IAI and its subcontractor ElOp (now succeeded by Elbit) the status of 'Exclusive Vendor'" thus "disserving *the best interests of the Company* and its shareholders".  (Compl. ¶ 198(a) (emphasis added).) The Master Agreement was between IAI and ImageSat, and if IAI modified the agreement to provide better terms for itself, the injured party was ImageSat.  These claims thus allege only derivative injury to plaintiff shareholders by the diminution in value of their shares.  *See Lakonia Mgmt. Ltd. v. Meriwether*, 106 F. Supp. 2d 540, 551 (S.D.N.Y. 2000) ("An action is derivative 'if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders.'").

Moreover, although they assert conclusorily that Defendants' "acts would cause specific injury directed against the Company's minority shareholders …. which would not be shared by the controlling shareholders" (*see*, *e.g.*, Compl. ¶¶ 200, 232, 240, 252), Plaintiffs do not and cannot allege that they would be injured in a way distinct from all other shareholders

---

[48]  Plaintiff may contend that their claims concerning the bridge warrants (Compl. ¶¶ 352-359) involve direct injury to them.  But even if that were the case, as discussed in § VII(B) those allegations do not show a "pattern of racketeering."

(including the Defendants).  "[A] shareholder cannot assert individual standing under RICO where all the shareholders of a corporation have experienced the same injury."  *See Lakonia*, 106 F. Supp. 2d at 551-552 (plaintiffs did not have standing, despite conclusorily alleging that they were injured because "those shareholders who were Principals . . . received better treatment than the outside shareholders" because "there is no allegation that plaintiff was treated differently than any other shareholder ….").  Thus, in *At The Airport v. ISATA, LLC*, 438 F. Supp. 2d 55, 62 (E.D.N.Y. 2006), the Eastern District dismissed a RICO complaint based upon the allegation that the defendants improperly diverted funds and resources of ISATA, a joint venture between one of the defendants and plaintiff ATA, for the defendants' own benefit.  The court held that these allegations were insufficient to establish proximate causation, a necessary element of establishing RICO standing, because "ATA was injured by ISATA's loss caused by the defendants' alleged mismanagement and misappropriation.  ISATA [was] the primary injured party."  *Id*. at 63.  Plaintiff's injuries were "its inability to collect revenue and, more broadly, the diminution in the value of its investment in ISATA," which were merely "derivative."  *Id*.

Plaintiffs' claims in this case are similarly derivative.  Plaintiffs' allegations boil down to one premise:  they were injured by the diminution in the value of their investment because Defendants' conduct allegedly injured ImageSat.  (*See* Compl. ¶¶ 110, 128, 136, 183.)  These claims are textbook derivative claims, and, accordingly, Plaintiffs lack standing under RICO to assert them.

### B.    Plaintiffs Have Not Pleaded a Pattern of Racketeering

"A pattern of racketeering activity is a *sine qua non* of any RICO claim, and thus the lack of that element mandates the dismissal of that claim."  *Qantel Corp. v. Niemuller*, 771 F. Supp. 1361, 1371 (S.D.N.Y. 1991) (citations omitted).  "To establish 'pattern,' a plaintiff must allege facts tending to show that 'the racketeering predicates are related, and that they amount to

or pose a threat of continued criminal activity.'" *Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp.

2d 234, 256 (S.D.N.Y. 2002) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).

   The courts have recognized two different types of continuity: open and closed

ended. *Weizmann*, 229 F. Supp. 2d at 256. To demonstrate open-ended continuity Plaintiffs

must show "that there was a threat of continuing criminal activity beyond the period during

which the predicate acts were performed." *Id.* at 257 n.30. "Such a threat may be shown, for

example, where the related predicate acts themselves involve a clear threat of long-term

racketeering activity, or where the predicate acts are part of an ongoing entity's regular method

of doing business." *Qantel Corp.,* 771 F. Supp. at 1371 (dismissing claim where defendant was

no longer officer of corporation where the RICO scheme relied on his position). On the other

hand, "[c]losed-ended continuity is demonstrated by predicate acts that amount to continued

criminal activity by a particular defendant." In order to adequately plead closed-ended

continuity, Plaintiffs must plead "alleged racketeering activity [that] was neither isolated nor

sporadic." *Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York*, 808 F. Supp. 213, 234

(S.D.N.Y. 1992). In determining if Plaintiffs have adequately alleged continuity, "[s]everal

factors may be considered, including, *inter alia:* the length of time over which the alleged

predicate acts took place, the number and variety of acts, the number of participants, the number

of victims, and the presence of separate schemes." *Weizmann Ins. of Sci.*, 229 F. Supp. 2d at 256

(internal citations omitted).

   Courts have consistently found no continuous pattern for RICO purposes where

the predicate acts "were all identical or similar in nature and gave rise to the same type of

injury," even if there are a large number of alleged predicate acts. *Nundy v. Prudential-Bache*

*Secs., Inc.*, 762 F. Supp. 40, 44 n.2 (W.D.N.Y. 1991) (holding that the number of predicate acts

is not "determinative of the pattern requirement" and finding no pattern where Plaintiffs alleged "some 226 acts of racketeering" which were the same) (internal citations omitted). And, where the acts are aimed at the demise of a single company, courts have also failed to find continuity. *See, e.g.*, *Schnell v. Conseco, Inc.*, 43 F. Supp. 2d 438, 445 (S.D.N.Y. 1999) (no continuity where "plaintiff does not allege that [the defendant's] acquisition of other companies came as a result of any illegal, much less racketeering activity" and plaintiff's claim related only to allegations concerning one company).

Courts have also held that even where plaintiffs have alleged that the allegedly fraudulent acts occurred over years, such allegations are not continuous for RICO purposes when such acts are simply subparts of a single alleged scheme. *See Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97-98 (2d Cir. 1997) (dismissing RICO claim that was actually a singular act the plaintiff had broken up into six different schemes); *J.D. Marshall Int'l v. Redstart, Inc.*, 935 F.2d 815, 821 (7th Cir. 1991) (refusing to allow plaintiff to file amended complaint where amended complaint did not plead a pattern based in part that "the fact that Redstart's alleged violations constituted a single scheme – purportedly to recover its money from Marshall – involved a single victim – Marshall – and were predicated upon a single transaction – the Purchase Agreement"); *Richter v. Sudman*, 634 F. Supp. 234, 240 (S.D.N.Y. 1986) ("To hold that this single scheme constitutes a pattern of racketeering activity would be to carve a single fraudulent episode into its component parts."). In *Schlaifer Nance & Co.*, the court found that plaintiffs had not plead a "pattern" where plaintiffs alleged that there were six different schemes related to the "underlying enterprise" to fraudulently manipulate a licensing agreement. 119 F.3d at 94. The court found, in part, that the claims were not continuous because "although they

spanned over three years ... they were acts related to a single contract and single scheme to defraud." *Id*. at 97-98.

So too here. The racketeering activity plead by Plaintiffs involves only a single alleged scheme – namely, a purported effort to obtain control of ImageSat for the benefit of IAI and Elbit. It involves two different types of predicate acts (mail and wire fraud), performed by a discrete group of Defendants (ImageSat's directors and alleged shareholders), all of whom were associated and allegedly acting for the benefit of two Defendants (IAI and Elbit). And the scheme was aimed at a single discrete class of victims. Such claims are not the type envisioned by the drafters of RICO. Where, as here, there is little variety in the predicate acts alleged, a small number of participants, and/or a limited number of schemes, courts have found that plaintiffs have not plead a pattern of racketeering. *See, e.g.*, *Schlaifer Nance & Co.*, 119 F.3d at 96-98 (dismissing RICO claim where court found that allegations of six different "schemes" were actually "subparts of the singular act [the negotiation of an agreement], and not a 'pattern' of separate acts with an underlying purpose."); *Weizmann Inst. of Sci.*, 229 F. Supp. 2d at 256-57 (no pattern of racketeering where the complaint simply alleged "mail fraud, committed by one participant ... against a limited number of victims ... in furtherance of a single fraudulent scheme"); *Three Crown Ltd. P'ship v. Caxton Corp.*, 817 F. Supp. 1033, 1045 (S.D.N.Y. 1993) ("To infer a threat of repeated fraud [merely] from a single alleged scheme would in effect render the pattern requirement meaningless."); *Leung v. Law*, 387 F. Supp. 2d 105, 125 (E.D.N.Y. 2005) ("a fraudulent scheme which targets a single business or person is deemed to be 'inherently terminable,' and thus incapable of presenting an open-ended threat of continuing criminal activity."); *Schnell*, 43 F. Supp. 2d at 445-46 (finding no continuity where "Plaintiff's RICO claim alleges a scheme to defraud by a single defendant ... with the goal of seizing control

of [a company] at the expense of a single class of victims – [the company's] public shareholders"
even though "plaintiff's complaint alleges a number of predicate mail and wire fraud acts in
furtherance of this scheme"). The limited scheme alleged by Plaintiffs does not suffice.[49]

## VIII.   CLAIMS ONE, SEVENTEEN, AND EIGHTEEN ARE TIME-BARRED

Although the substance of many of Plaintiffs' claims will be governed by foreign
law, the question of whether these claims are timely is determined by the statute of limitations
under New York law. *See Cummings v. Sony Music*, No. 01 Civ. 4375, 2003 WL 22889496, at
*3 (S.D.N.Y. Aug. 28, 2003) ("New York courts treat statutes of limitations as part of the
forum's procedure, and therefore apply New York statutes of limitations even if the underlying
claim ultimately will be governed by the substantive law of another jurisdiction.") (internal
citations omitted). Three of Plaintiffs' claims accrued over seven years ago and are time-barred.

### A.    Claim 1 (Breach of Fiduciary Duty in the 2000 Transactions) is Time-Barred

The first claim for relief alleges that ImageSat, IAI, Elbit, and certain of the
individual Defendants committed a breach of fiduciary duty "[i]n connection with the 2000
transactions". (Compl. ¶ 198.) The event underlying this claim is that the Defendants allegedly
"conspire[ed] and agree[d] to modify the 'Master Agreement' so as to accord IAI and its
subcontractor ElOp (now succeeded by Elbit) the status of 'Exclusive Vendor' for ImageSat's
next six satellite orders". (Compl. ¶ 198(a).) IAI and ElOp's "conspiracy" to add language to
the Master Agreement making them the exclusive vendor allegedly took place during the
negotiations that preceded the execution of this document. (*Id.* ¶ 71) (discussing plaintiff
Wilson's objection to the inclusion of the exclusive vendor provision language in the Master

---

[49]    Where, as here, the substantive RICO claim fails, the RICO conspiracy claim (count 12) must also fail. *See Weizmann Inst. of Sci.*, 229 F. Supp. 2d at 257.

Agreement).  The Master Agreement, which contains the exclusivity provision, is dated July 25, 2000.  (Compl. ¶ 67 and Ex. A.)  This claim therefore accrued no later than July 25, 2000.

Under New York law, a claim for breach of fiduciary duty is governed by either a three-year or six-year limitation period, depending on the nature of the relief sought.  Where only monetary relief is sought, the three-year limitations period applies.[50]  If equitable relief is sought, a six-year limitations period applies.  *See Cooper v. Parsky*, 140 F.3d 433, 440-41 (2d Cir. 1998) ("Ordinarily, under New York law, a claim for breach of fiduciary duty would be governed by a three-year limitations period if the action sought monetary relief but by a six-year period if the action sought equitable relief.")  Claim One seeks only monetary damages, not equitable relief (Compl. ¶¶ 201-02) so it is governed by a three-year limitation period.  The claim therefore became time-barred as of July 25, 2003 – three years after the cause of action accrued.  Even if Plaintiffs were to argue that the claim should be governed by a six-year limitations period, it would still have been time-barred as of July 25, 2006 – a year before the Complaint was filed.[51]

---

[50]  *See Geren v. Quantum Chem. Corp.*, 832 F. Supp. 728, 735 (S.D.N.Y. 1993) (applying three-year statute to claim of breach of fiduciary duty asserted by minority shareholders where only monetary damages sought); *Cator v. Bauman*, 833 N.Y.S.2d 811, 812 (App. Div. 2007) (applying three-year limitations period and dismissing breach of fiduciary duty claim as time-barred); *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 164 (App. Div. 2003) ("where suits alleging a breach of fiduciary duty seek only money damages, courts have viewed such actions as alleging 'injury to property,' to which a three-year statute of limitations applies").

[51]  Plaintiffs appear to suggest that the exclusivity provision may have been a last-minute change to the Master Agreement that was not coordinated with plaintiff Wilson.  (*See* Compl. ¶ 74.)  As an initial matter, Mr. Wilson signed the Master Agreement so it makes little sense for him to argue that this claim accrued anytime after he signed the document.  But even if he means to allege that, despite his signature on the Master Agreement, he did not become aware of the exclusivity provision until after the document was executed, the only way Plaintiffs can get benefit of the discovery rule is if they did not know of the exclusivity provision for five years following the execution of the Master Agreement  – *i.e.*, until after July 3, 2005, which is two years prior to the filing of the lawsuit.  *See Duberstein v. Nat'l Med. Health Card Sys. Inc.*, 829 N.Y.S.2d 95, 96 (App. Div. 2007) (breach of fiduciary duty claims subject to two years discovery accrual).  Plaintiffs are precluded from making that argument because in paragraph 99 of the Complaint they acknowledge that WIS Partners and other minority shareholders were specifically informed about the exclusivity arrangement at a board meeting on July 12, 2001.

### B.    Claim 17 (Reformation of Options and Bridge Warrants) is Time-Barred[52]

Plaintiffs' seventeenth cause of action seeks reformation of the terms of certain options and bridge warrants based on an alleged "mistake" or "scrivener's or typographical error".  (Compl. ¶¶ 347, 350.)  Under New York law, an action based upon mistake must be asserted within six years.  N.Y. C.P.L.R. § 213(6); *see also 1414 APF, LLC. v. Deer Stags, Inc*., 834 N.Y.S.2d 133 (App. Div. 2007) ("The statute of limitations on a claim of reformation based upon mistake is six years, accruing on the date of the mistake (CPLR 213[6]) (citation omitted)).  The cause of action for reformation accrues as of the time of the alleged mistake.  *See Royal York Owners Corp. v. Royal York Assocs., L.P.*, No. 600269/04, 2005 WL 1389350, at *4 (Sup. Ct. June 9, 2005) ("The statute of limitations for reformation based on mistake is six years, and the cause of action accrues immediately upon the instrument becoming effective").[53]  Plaintiffs' allege that the stock options and bridge warrants were issued in 1999 and 2000.  (Compl. ¶¶ 342-44.)  The reformation claim was therefore untimely as of 2005 or 2006 – well before the Complaint was filed.[54]

---

[52]    This claim is pleaded against ImageSat only.  (Compl. ¶ 138.)

[53]    *See also Wilshire Credit Corp. v. Ghostlaw*, 753 N.Y.S.2d 537, 539 (App. Div. 2002) ("Reformation based upon a purported mistake is governed by a six-year statute of limitations that is generally measured from the occurrence of the mistake."); *F.D.I.C. v. Five Star Mgmt. Inc*., 692 N.Y.S.2d 69, 72 (App. Div. 1999) (citations omitted).  ("The Statute of Limitations for a claim of reformation based upon mistake is six years, accruing on the date of the mistake."); *Wallace v. 600 Partners Co*., 658 N.E.2d 715 (N.Y. App. Div. 1995) (statute of limitations on claim for reformation of a lease based on mistake begins to run at the time the asserted scrivener's error is alleged to have been committed).

[54]    Defendants are aware of one case suggesting that a claim for reformation is subject to a two-year discovery accrual (*see 1414 APF, LLC*, 834 N.Y.S.2d at 135) but that case does not save Plaintiffs' claim from being time-barred.  First, that court recognized that where, as in this case, the plaintiffs were in possession of the document containing the alleged mistake, no discovery rule applies.  *See id*.  ("Although plaintiff argues that a two-year date of discovery accrual should apply here, we find that argument unpersuasive inasmuch as plaintiff presumably had the document containing the mistake in its possession and thus could not demonstrate the due diligence required pursuant to CPLR 203[g] to toll the statute of limitations.")  Furthermore, even a two-year discovery rule would not help Plaintiffs because they allege in paragraph 84 of the Complaint that they were aware of the alleged mistake no later than 2003 and 2004 – more than two years before they filed this lawsuit.

C.    **Claim 18 (Fraud Relating to Options and Bridge Warrants) is Time-Barred**[55]

Plaintiffs' eighteenth cause of action is a fraud claim relating to the same transactions discussed in the seventeenth claim – options and bridge warrants issued in 1999 and 2000.  (Compl. ¶¶ 353-55.)  Under New York law, a claim for fraud becomes time-barred six years after the alleged fraud or two years from the discovery, whichever is longer.  *See Serdarevic v. Advanced Med. Optics, Inc.*, No. 06 CIV 7107 (DLC), 2007 WL 2774177, at *10 (S.D.N.Y. Sept. 25, 2007) ("New York's statute of limitations for fraud claims is the longer of six years from the date on which the fraud occurred or two years from discovery or the time when the plaintiff should have, with reasonable diligence, discovered the fraud").  Plaintiffs' fraud claim thus became time-barred sometime in 2005 or 2006, six years after the options and warrants were issued.  Even if Plaintiffs try to rely on the two-year discovery rule, their claim is time-barred because they allege in paragraph 84 of the Complaint that they complained about the terms of the bridge warrants in 2003 and 2004 – well over two years before the lawsuit was filed.

IX.    **THE FRAUD CLAIM BASED ON ALLEGED ORAL REPRESENTATIONS REGARDING THE OPTIONS AND WARRANTS (CLAIM 18) FAILS BECAUSE PLAINTIFFS CANNOT ALLEGE REASONABLE RELIANCE**

Plaintiffs' claim for fraud relating to the conversion price of the stock options and bridge warrants and the expiration date of the bridge warrants fails because they do not, and cannot, allege that they reasonably relied on any alleged oral misrepresentations.  The bridge warrants in question contain New York choice of law provisions.[56]  Under New York law, a plaintiff must plead five elements to establish a claim of fraud:  (1) a material misrepresentation

---

[55]    This claim is pleaded against ImageSat, IAI, and Elbit.  It is not pleaded against any of the individual Defendants.  (Compl. ¶ 140.)

[56]    The options contain Netherlands Antilles choice of law provisions.  If Plaintiffs argue that Netherlands Antilles law governs the aspect of their fraud claim that relates to the options, it will have to be determined whether Netherlands Antilles law permits a fraud claim based on alleged oral representations to proceed in the face of a directly contradictory signed agreement.

or omission of fact; (2) made by defendant with knowledge of its falsity; (3) an intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damages. *See Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d. Cir. 1997). The plaintiff must demonstrate not only that it relied on defendant's alleged misrepresentation, but that such reliance was reasonable. *See Waksman v. Cohen*, No. 00 Civ. 9005 (WK), 2002 WL 31466417 (S.D.N.Y. Nov. 4, 2002).

The Complaint alleges that in connection with "July 2000 transactions" various classes of incentive securities, including stock options and bridge warrants, were issued to some of the plaintiffs. (Compl. ¶¶ 77-78.) Plaintiffs allege that the parties orally agreed that the term for the bridge warrants would be 10 years, however, the executed agreements provided that the bridge warrants would expire after five years. (Compl. ¶ 80.) Plaintiffs also claim that the parties orally agreed to an execution price of $23.2737 per share for both the stock options and bridge warrants but the executed agreements provided for an execution price of $24.4573 per share. (Compl. ¶ 81.) Plaintiffs claim that although they signed the agreements they did not notice these allegedly changed terms "because the documents were not completed or even present at the time the signature pages were executed en masse." (Compl. ¶ 80.)

New York courts have routinely held that when "an express provision in the written contract contradicts a prior alleged oral representation in a meaningful fashion" a party cannot claim to have justifiably relied on the prior oral representations. *Republic Nat'l Bank v. Hales*, 75 F. Supp. 2d 300, 315 (S.D.N.Y 1999) (holding that "[any] reliance by [plaintiff], a sophisticated businessman, upon representations contrary to the plain language of the agreements he was signing would therefore be patently unreasonable."); s*ee also Bango v. Naughton*, 584 N.Y.S.2d 942, 944 (App. Div. 1992) (dismissing fraud claim for failure to establish reliance and

46

noting that where express provision in a written contract contradicts an alleged oral representation in a meaningful fashion, conflict negates claim of reliance upon oral representations); *Siemens Westinghouse Power Corp. v. Dick Corp.*, 299 F. Supp. 2d 242, 247 (S.D.N.Y. 2004) (same).  Here, Plaintiffs' alleged reliance on oral representations is unjustified because the terms and provisions of the warrants and options plainly contradict the alleged oral representations.  The bridge warrants specifically provided that the warrants would expire in five years (as opposed to ten years), and both the bridge warrant and stock option agreements provided the per share exercise price would be $24.4574 (as opposed to $23.2737).[57]  (See Elman Decl. Ex. 1 at p. 1, 3 at p. 1).[58]

Plaintiffs cannot save their claim by contending that they did not notice the discrepancies because signature pages of the agreements had to be separated from the body of the documents for execution and the agreements were not available.  (Compl. ¶¶ 78, 80.)  It is well settled under New York law that a plaintiff cannot establish reasonable reliance when he or she simply fails to read a binding document.  *See Washington Capital Ventures LLC v. Dynamicsoft, Inc.*, 373 F. Supp. 2d 360, 365 (S.D.N.Y. 2005) ("[P]laintiff's ability to establish

---

[57]    Moreover, the Stock Option Agreements contain an integration clause that provides that the agreement "supersedes all prior agreements or prior understandings, whether written or oral, between the parties."  (*See* Elman Decl. Ex. A at p. 4.)  Where an agreement contains an integration clause courts have routinely dismissed fraud claims for failure to establish reasonable reliance.  *See e.g., Rubin Squared, Inc. v. Cambrex Corp.*, No. 03 Civ. 10138 (PAC), 2007 WL 2428485, at *4-5 (S.D.N.Y. Aug. 24, 2007) (finding that reliance on alleged oral representation not included in the contract was unreasonable particularly in light of the fact that the contract contained an integration clause); *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 165 F. Supp. 2d 615, 622 (S.D.N.Y. 2001) ("Even if an integration clause is general, a fraud claim will not stand where the clause was included in a multi-million dollar transaction that was executed following negotiations between sophisticated business people and a fraud defense is inconsistent with other specific recitals in the contract.").

[58]    Although Plaintiffs do not attach the warrant and stock option agreements to the Complaint, the fraud and reformation claims are premised on their terms and effects.  Because these agreements are integral to Plaintiffs' allegations, this court may consider these documents on a Rule 12(b)(6) motion.  *See Int'l Audiotext Network, Inc. v. Am. Telephone and Telegraph Co.*, 62 F.3d 69, 72 (2d Cir. 1995) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment.").

reasonable reliance is irreparably impaired when it simply fails to read a binding document prior

to executing the document."); *Morby v. Di Siena Assocs. LPA*, 737 N.Y.S.2d 678, 680 (App.

Div. 2002) ("Having failed to read the release before signing it, plaintiff simply cannot establish

the essential element of justifiable reliance."); *Dunkin' Donuts v. Liberatore*, 526 N.Y.S.2d 141,

143 (App. Div. 1988) (dismissing plaintiffs fraud claim noting "the appellant's failure to read the

clear language of the guarantee precludes a defense of fraudulent inducement.").  Plaintiffs

concede that not only did they not read the documents before they signed them, but they did not

notice the discrepancies until late 2003.  (Compl. ¶¶ 78, 80, 84.)  Plaintiffs cannot now claim

reliance upon an oral representation, when they could have immediately noticed the discrepancy

simply by reading the agreements prior to their execution.  *See Stuart Silver Assocs., Inc. v. Baco*

*Dev. Corp*., 655 N.Y.S.2d 415 (App. Div. 1997) ("Where a party has the means to discover the

true nature of the transaction by the exercise of ordinary intelligence and fails to make use of

those means, he cannot claim justifiable reliance on defendant's misrepresentations.")

　　　　Moreover, Plaintiffs are sophisticated investors with broad financial knowledge

and experience.[59]  "Where sophisticated businessmen engaged in major transactions enjoy access

to critical information but fail to take advantage of that access, New York courts are particularly

disinclined to entertain claims of justifiable reliance."  *Grumman Allied Indus. v. Rohr Indus.,*

*Inc*., 748 F.2d 729, 737 (2d Cir. 1984).[60]  By signing execution pages divorced from the body of

---

[59]　Indeed, the bridge warrants specifically provide that the holder is an "accredited investor" as defined in
Regulation D of the Securities Act of 1993 and that "Holder is, by reason of Holder's business or financial
experience, capable of evaluating the merits and risks of this investment and of protecting the Holder's own
interests in connection with this Warrant."  (*See* Elman Decl. Ex. 2, at p. 2.)

[60]　See *also Rodas v. Manitaras*, 552 N.Y.S.2d 618, 620 (App. Div. 1990) ("[S]uccinctly put, a party will not be
heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible
for his predicament."); *Siemens Solar Indus. v. Atlantic Richfield Co.*, 673 N.Y.S.2d 674, 674 (App. Div. 1998)
("Sophisticated entity's opportunities to obtain knowledge of the matter that are subjects of the alleged
misrepresentations preclude its claim of reasonable reliance."); *Rudolph v. Turecek*, 658 N.Y.S.2d 769, 771
(App. Div. 1997) ("[W]here a party has the means, by the exercise of reasonable diligence, to ascertain the truth
or falsity of material representations, he or she cannot assert justifiable reliance.").

the agreements and failing to read the binding terms of the agreements, Plaintiffs assumed the risk that the conversion price of the warrants and options and the term of the warrants were not as they believe was orally represented.  As the Second Circuit explained, when a party is sophisticated and is "on notice of the existence of material facts which have not been documented and he nevertheless proceeds with a transaction without securing the available documentation or inserting appropriate language in the agreement for his protection, he may truly be said to have willingly assumed the business risk that the facts may not be as represented."  *Lazard Freres & Co. v. Protect. Life Ins. Co.*, 108 F.3d 1531, 1543 (2d Cir. 1997).

## X.    PLAINTIFFS LACK STANDING ON THE CLAIM FOR DISGORGEMENT OF COMPENSATION (CLAIM 20)[61]

As with the vast majority of their claims, Plaintiffs have no standing to bring their claim for disgorgement of compensation paid to the directors and officers of ImageSat.[62] Disgorgement is a restitutionary remedy that is appropriate only where there has been a showing of unjust enrichment.  *See New York City Econ. Dev. Corp. v. T.C. Foods Import and Export Co., Inc*., No. 5856/00, 2006 N.Y. Slip Op. 50754(U), 2006 WL 1132350, at *3 (Sup. Ct. April 17, 2006) (to recover on a theory of unjust enrichment under New York law, a party must establish not only that there was enrichment, but that the enrichment was at the plaintiff's expense, and that in equity and good conscience, the defendant should be required to turn over its money to the plaintiff."); *Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70, 79 (2d Cir. 1986) (upholding verdict for defendant on claim for unjust enrichment that failed to establish that any benefit to defendant flowed from plaintiff).

---

[61]   This claim is pleaded against the individual Defendants only.  (Compl. ¶ 145.)

[62]   As with many of Plaintiffs' claims, critical details, such as what compensation they allege to have been paid to Defendants in what jurisdictions, are not alleged with sufficient specificity to allow for a meaningful choice of law analysis.  For that reason, while this analysis has been conducted under the law of New York, Defendants reserve the right to revisit this issue of choice of law for this claim if at any point Plaintiffs provide a more particularized account of the factual basis on which they rely.

Plaintiffs have no standing to bring this claim because they have not alleged facts sufficient to show that any benefit passed *from Plaintiffs* to the relevant Defendants:  the basis of their claim is an allegation that "upon information and belief, each of such Defendants was compensated *by the Company* for the performance of his duties as a director and/or officer and/or employee."  (Compl. ¶ 375 (emphasis added).)  A plaintiff lacks standing to seek disgorgement of any unjust enrichment if the relevant payment did not come from the plaintiff.  *See Aymes v. Gateway Demolition Inc.*, 817 N.Y.S.2d 233, 234-235 (App. Div. 2006) (dismissing unjust enrichment claim where alleged benefit did not flow from plaintiff to defendant).

Whether or not any excessive compensation flowed to any individual Defendant from ImageSat, Plaintiffs do not and cannot allege that any such compensation flowed from Plaintiffs themselves.   In the absence of any such allegation, Plaintiffs' cause of action for disgorgement of compensation received by the ImageSat directors must be dismissed.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice. Any amendment of the claims would not change the fact that this Court is not the appropriate forum for the litigation, Plaintiffs do not have standing to assert their claims, and many of the causes of action fail to state a claim.  For that reason, Plaintiffs should not be given leave to amend the Complaint.  *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (granting leave to amend is not required if it is "unlikely to be productive").

Dated: October 15, 2007
      New York, New York

MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP

By:    /s/ Sander Bak
     Sander Bak (SB 2263)
     Deborah Elman (DE 2310)
     1 Chase Manhattan Plaza
     New York, New York 10005
     (212) 530-5000

*Counsel for Defendants ImageSat International N.V.,*
*Moshe Keret, Izhak Nissan, Jacob Weiss, Shimon*
*Eckhaus, Gino Piperno-Beer, David Arzi, and Yoav*
*Chelouche*

COHEN TAUBER SPIEVACK & WAGNER LLP

By:    /s/ Stephen Wagner
     Stephen Wagner, Esq. (SW 2500)
     Sari E. Kolatch, Esq.(SK 3026)
     420 Lexington Avenue, Suite 2400,
     New York, NY 10170

PAUL, WEISS, RIFKIND, WHARTON & GARRISON
LLP

By:    /s/ Eric Goldstein
     Eric S. Goldstein, Esq. (ESG 1034)
     Jonathan H. Hurwitz (JHH 8037)
     1285 Avenue of the Americas
     New York, NY 10019-6064
*Counsel for Defendants Israel Aerospace Industries Ltd.*
*and Yehoshua Eldar*

GREENBERG TRAURIG LLP

By:    /s/ Simon Miller
     Simon Miller, Esq. (SM 6278)
     200 Park Avenue
     New York, NY 10166

*Counsel for Defendants Elbit Systems Ltd., Michael*
*Federmann, Estate of Jacob Toren, Joseph Ackerman,*
*and Joseph Gaspar*