# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

STEPHEN M. WILSON, BRW ENGINEERING LTD.,
WIS PARTNERS LTD., MOSHE BAR-LEV, PATRICK
ROSENBAUM, MICHAEL MORRIS, HAIM YIFRAH,
TOP DOWN PARTNERS, LLC, JOEL LEVINE,
MORRIS TALANSKY, ABRAHAM MOSHEL,
MAGMA INTERNATIONAL SERVICES, LTD.,
ALBERT REICHMANN, HEXAGRAM & CO., and
POLYBUTES COMPANY,

             Plaintiffs,

         -against-

IMAGESAT INTERNATIONAL N.V., ISRAEL
AEROSPACE INDUSTRIES LTD., ELBIT SYSTEMS
LTD., MOSHE KERET, IZHAK NISSAN, JACOB
WEISS, MENASHE BRODER, SHIMON ECKHAUS,
MICHAEL FEDERMAN, ESTATE OF JACOB TOREN,
JOSEPH ACKERMAN, JOSEPH GASPAR, GINO
PIPERNO-BEER, JAMES DEPALMA, DAVID ARZI,
YOAV CHELOUCHE, and YEHOSHUA ELDAR,

             Defendants.

-------------------------------------------------------------------- X

**Filed Electronically**

07 Civ. 6176 (LTS)

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
## ON BEHALF OF DAVID ARZI, YOAV CHELOUCHE, SHIMON ECKHAUS, MOSHE KERET, IZHAK NISSAN, GINO-PIPERNO-BEER, AND JACOB WEISS

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................II

PRELIMINARY STATEMENT ............................................................................ 1

I.      ARZI, CHELOUCHE, ECKHAUS, KERET, NISSAN, AND  PIPERNO-BEER
        ARE NOT SUBJECT TO PERSONAL  JURISDICTION IN NEW YORK................... 2

        A.      There is no General Jurisdiction Over the ImageSat D&Os................................ 2

        B.      The Complaint Fails to Allege Specific Jurisdiction Over the Moving
                Defendants ........................................................................................... 5

                1.      Plaintiffs Fail to Allege a Prima Facie Case of Personal
                        Jurisdiction Under Section 302(a)(1)........................................... 5

                2.      Plaintiffs Fail to Allege a Prima Facie Case of Jurisdiction Under
                        Section 302(a)(2) ...................................................................... 6

                3.      Plaintiffs Fail to Allege a Prima Facie Case of Jurisdiction Under
                        Section 302(a)(3) ...................................................................... 7

        C.      The Exercise of Jurisdiction Over the ImageSat D&Os Would be
                Unconstitutional......................................................................................... 8

II.     THE FRAUD, RICO, AND BREACH OF FIDUCIARY DUTY CLAIMS FAIL
        TO SATISFY RULE 9(B)'S PLEADING REQUIREMENTS...................................... 10

        A.      Plaintiffs Fail to Plead When and Where Any Allegedly False Statements
                Were Made and Who Made Them.................................................... 10

        B.      Plaintiffs Fail to Plead that the ImageSat D&Os Acted with Fraudulent
                Intent ...................................................................................................... 14

        C.      Plaintiffs Have Not Adequately Pleaded Reliance to Their Detriment ............... 15

        D.      The Rico Claim Fails for the Additional Reason that the Complaint Does
                Not Plead Mail and Wire Fraud with Particularity ............................... 16

III.    THE COMPLAINT FAILS TO COMPLY WITH RULE 8(A).................................... 18

CONCLUSION.................................................................................................... 20

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**CASES**

*236 Cannon Realty, LLC v. Ziss,*
   No. 02 Civ. 6683(WHP), 2005 WL 289752 (S.D.N.Y. Feb. 8, 2005)................................ 17

*A.I.A. Holdings, S.A. v. Lehman Bros., Inc.,*
   No. 97 Civ. 4978 (LMM), 1999 WL 47223 (S.D.N.Y. Feb. 3, 1999) ................................ 10

*Ahava Food Corp. v. Donnelly,*
   No. 02 Civ. 4344 (RWS), 2002 U.S. Dist. LEXIS 23756 (S.D.N.Y. Dec. 12,
   2002) .................................................................................................................................. 7

*Am. High-Income Trust v. AlliedSignal,*
   329 F. Supp. 2d 534 (S.D.N.Y. 2004).................................................................................. 14

*Atuahene v. City of Hartford,*
   No. 00-7711, 2001 WL 604902  (2d Cir. May 31, 2001) .................................................... 19

*Bayou Hedge Fund Inv. Litig.,*
   472 F. Supp. 2d 534 (S.D.N.Y. 2007)................................................................................... 2

*Bell Atlantic Corp. v. Twonbly,*
   127 S.Ct. 1955 (2007)........................................................................................................ 19

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985)............................................................................................................. 8

*Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.,*
   117 F.3d 655 (2d Cir.1997).................................................................................................. 14

*Caytas v. Maruszak,*
   No. 06 Civ. 985 (LTS) (DCF), 2007 WL 2456956 (S.D.N.Y. Aug. 22, 2007) ..................... 3

*Citigroup, Inc. Sec. Litig.,*
   330 F. Supp. 2d 367 (S.D.N.Y. 2004)................................................................................... 12

*Clark v. Nevis Capital Mgmt, LLC,*
   No. 04 Civ. 2702, 2005 WL 488641 (S.D.N.Y. Mar. 2, 2005) ........................................... 15

*Clarke v. Fonix Corp.,*
   No. 98 Civ. 6116 (RPP),1999 WL 105031 (S.D.N.Y. Mar. 1, 1999).................................... 4

*Cutco Indus., Inc., v. Naughton,*
   806 F.2d 361 (2d Cir. 1986).................................................................................................. 2

*DiVittoria v. Equidyne Extractive Indus., Inc.,*
   822 F.2d 1242 (2d Cir. 1987).............................................................................................. 12

*Eastchester Rehab. & Health Care Ctr. v. Eastchester Health Care Ctr.,*
   No. 03 Civ. 7786 (LTS)(FM), 2005 WL 887154 (S.D.N.Y. Apr. 15, 2005)...................... 17

*E-Z Bowz, L.L.C. v. Prof'l Prod. Research Co.,*
   No. 00 Civ. 8670 (LTS) (GWG), 2003 U.S. Dist. LEXIS 15256 (S.D.N.Y.
   Sept. 5, 2003) ...................................................................................................................... 6

*Falik v. Smith,*
   884 F. Supp. 862 (S.D.N.Y. 1995)........................................................................................ 3

*Family Internet, Inc., v. Cybernex, Inc.*,
   No. 98 Civ. 0637, 1999 U.S. Dist. LEXIS 15549 (S.D.N.Y. Oct. 1, 1999) ..................... 3, 6

*Forrest v. Unifund Fin. Grp., Inc.*,
   No. 04 Civ. 5151(LTS), 2005 WL 1087490 (S.D.N.Y. May 5, 2005) ................................ 10

*Gmurzynska v. Hutton*,
   257 F. Supp. 2d 621 (S.D.N.Y. 2003), *aff'd*, 355 F.3d 206 (2d Cir. 2004) ........................ 9

*JP Morgan Chase Sec. Litig.*,
   363 F. Supp. 2d 595, 619 (S.D.N.Y. 2005)...................................................................... 14

*Kades v. Organic Inc.*,
   No. 00 Civ. 3671 (LTS) (RLE), 2003 WL 470331 (S.D.N.Y. Feb. 24, 2003) ................... 17

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001).............................................................................................. 14

*Kregos v. Associated Press*,
   3 F.3d 656 (2d Cir. 1993) ................................................................................................. 16

*Kreutter v. McFadden Oil Corp.*,
   522 N.E.2d 40 (N.Y. 1988).................................................................................................. 5

*Landoil Res., Corp. v. Alexander & Alexander Servs., Inc.*,
   77 N.Y.2d 28, 563 N.Y.S.2d 739 (1990) ............................................................................ 3

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006)............................................................................................... 10

*Madison Models, Inc. v. Casta*,
   No. 01 Civ. 9323 (LTS) (THK), 2003 WL 21978628 (S.D.N.Y. Aug. 20,
   2003) ................................................................................................................................... 2

*Medina v. Bauer*,
   No. 02 Civ. 8837 (DC), 2004 WL 136636 (S.D.N.Y. Jan. 27, 2004)................................. 19

*Merrill Lynch, Pierce, Fenner & Smith Inc., v. Young*,
   No. 91 2123, 1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) .................................................. 19

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996)............................................................................................... 8, 9

*Miller v. New York*,
   No. 05 CV 6024(SJ)(RML), 2007 WL 1062505 (E.D.N.Y. Mar. 30, 2007)................. 16, 17

*Natowitz v. Mehlman*, 542 F.Supp. 674 (S.D.N.Y. 1982) ........................................................ 12

*O'Malley v. New York City Transit Auth.*,
   896 F.2d 704, (2d Cir. 1990)............................................................................................. 18

*Olsen v. Pratt & Whitney Aircraft*,
   136 F.3d 273 (2d Cir. 1998)............................................................................................... 11

*Pietrangelo v. NUI Corp.*,
   No. 04 cv 3223, 2005 WL 1703200 (D.N.J. July 25, 2005)............................................... 19

*Platt Corp. v. Platt*,
   17 N.Y.2d 234, 270 N.Y.S.2d 408 (1966) ........................................................................... 6

*Rivera v. Golden Nat'l Mtg. Banking Corp.*,
   04 Civ. 4545, 2005 WL 1514043 (S.D.N.Y. 2005) ........................................................... 17

*S.E.C. v. Alexander*,

160 F. Supp. 2d 642 (S.D.N.Y. 2001)............................................................................8

*Salahuddin v. Cuomo,*
861 F.2d 40 (2d Cir. 1988)....................................................................................19

*Shields v. Citytrust Bancorp, Inc.,*
25 F.3d 1124 (2d Cir. 1994)..................................................................................15

*Ski Train Fire in Kaprun, Austria,*
230 F. Supp. 2d 403 (S.D.N.Y. 2002).....................................................................3

*Spier v. Erber,*
No. 89 Civ. 1657 (PKL), 1992 WL 230254 (S.D.N.Y. Sept. 1, 1992)..................18

*Spira v. Curtin,*
No. 97 CIV. 2637 (TPG), 2001 WL 611386 (S.D.N.Y. June 5, 2001) ...............10

*Swiekiewicz v. Sorema N.A.*
534 U.S. 506 (2002)...............................................................................................19

*Terrorist Attacks on September 11, 2001,*
349 F. Supp. 2d 765 (S.D.N.Y. 2005)......................................................................2

*Tuosto v. Philip Morris USA Inc.,*
No. 05 Civ. 9384 (PKL), 2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007) ............11

*Twine v. Levy,*
746 F. Supp. 1202 (E.D.N.Y. 1990) ........................................................................3

*U.S. ex rel Lissack v. Sakura Global Capital Mkts, Inc.,*
No. 95 Civ. 1363 (BSJ), 2003 WL 21998968 (S.D.N.Y. Aug. 21, 2003) ...........18

## STATUTES, RULES AND REGULATIONS

CPLR § 301.......................................................................................................................3

CPLR § 302...................................................................................................................6, 8

Fed. R. Civ. P. 8(a) .........................................................................................................18

Fed. R. Civ. P. 9(b) ....................................................................................................1, 15

Defendants David Arzi, Yoav Chelouche, Shimon Eckhaus, Moshe Keret, Izhak Nissan, Gino Piperno-Beer, and Jacob Weiss (collectively, the "ImageSat D&Os"), by their attorneys Milbank, Tweed, Hadley & McCloy LLP, respectfully submit this memorandum of law in support of their motion to dismiss the Complaint.

## PRELIMINARY STATEMENT

The ImageSat D&Os, each of them current or former directors or officers of ImageSat, are concurrently filing a separate memorandum with the other Defendants detailing ten reasons why all or some of Plaintiffs' claims should be dismissed.[1]  This memorandum addresses three additional threshold reasons why the Complaint should be dismissed against the ImageSat D&Os.

First, six of the ImageSat D&Os (all except Jacob Weiss) are not subject to personal jurisdiction in New York.  As discussed below and in the accompanying declarations, these individuals reside in Israel, where they have lived for most or all of their lives, and that is where they conduct their professional business.  None of them has sufficient contacts with the State of New York to make them subject to the jurisdiction of this Court.

Second, the claims against the ImageSat D&Os sounding in fraud must be dismissed for failure to satisfy Rule 9(b).  In disregard of the specific pleading required by that Rule, the Complaint lumps the ImageSat D&Os together and fails to specify what wrongful acts each is alleged to have committed.

Third, for the same reason that the fraud claims fail under Rule 9(b), the entire Complaint fails to satisfy Rule 8.  It is nearly impossible to decipher from the Complaint what

---

[1]  *See* Joint Memorandum of Law in Support of Motion to Dismiss on Behalf of Defendants ImageSat International, N.V., Israel Aerospace Industries Ltd., Elbit Systems Ltd., Moshe Keret, Izhak Nissan, Jacob Weiss, Shimon Eckhaus, Gino Piperno-Beer, David Arzi, Yoav Chelouche, Michael Federmann, Estate of Jacob Toren, Joseph Ackerman, Joseph Gaspar, and Yehoshua Eldar (the "Joint Memorandum").

actions the ImageSat D&Os are alleged to have taken individually.  The Complaint is replete with allegations against "Defendants," but it provides little in the way of specific information to allow each of the Individual D&Os to respond to the allegations.

## ARGUMENT

I.    **ARZI, CHELOUCHE, ECKHAUS, KERET, NISSAN, AND  PIPERNO-BEER ARE NOT SUBJECT TO PERSONAL JURISDICTION IN NEW YORK**[2]

Plaintiffs bear the burden of establishing that the court has jurisdiction over each defendant for each cause of action.  *See In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 822 (S.D.N.Y. 2005) (granting individuals' motion to dismiss where complaint did not contain factual jurisdictional allegations against them).[3]  Personal jurisdiction over a non-resident defendant is determined under the law of the forum state; the court must also assure itself that jurisdiction accords with federal due process.  *See Madison Models, Inc. v. Casta*, No. 01 Civ. 9323 (LTS) (THK), 2003 WL 21978628, at *2 (S.D.N.Y. Aug. 20, 2003) (citation omitted).  "Vague and conclusory allegations in a pleading are insufficient to establish personal jurisdiction."  *In re Bayou Hedge Fund Inv. Litig.*, 472 F. Supp. 2d 534, 538 (S.D.N.Y. 2007).

### A.    There is no General Jurisdiction Over the ImageSat D&Os

Section 301 of New York's Civil Practice Law and Rules ("CPLR") permits general personal jurisdiction over a foreign defendant that is domiciled in the State of New York, owns property within the state, or "has engaged in such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in th[e] jurisdiction is warranted."  *See Landoil Res., Corp. v. Alexander & Alexander Servs., Inc.*, 565 N.E. 488, 490, 563 N.Y.S.2d

---

[2]  Defendant Jacob Weiss is not contesting personal jurisdiction.

[3]  Indeed considering the defending parties by group and aggregating their forum contacts in determining jurisdiction is unconstitutional.  *Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980).

739, 741 (N.Y. 1990).  Casual or occasional activity does not constitute "doing business;" rather § 301 requires a showing of "continuous, permanent, and substantial activity in New York."  *In re Ski Train Fire in Kaprun, Austria*, 230 F. Supp. 2d 403, 407 (S.D.N.Y. 2002) (internal citation omitted).  The "doing business" standard historically has been associated with corporate defendants, *see*, *e.g.*, *Twine v. Levy*, 746 F. Supp. 1202, 1204 (E.D.N.Y. 1990), and it is highly unlikely that an individual can ever be "doing business" in New York under CPLR 301.[4]

Even if § 301 subjects an individual to jurisdiction under the "doing business" standard, that person's activities must be that of a business.  *See Caytas v. Maruszak*, No. 06 Civ. 985 (LTS) (DCF), 2007 WL 2456956, at *9 (S.D.N.Y. Aug. 22, 2007) ("[i]f an individual is sued in his individual capacity, but only had contact with [the forum] as an officer of a corporation … that individual is not subject to personal jurisdiction") (internal citation omitted).  Otherwise every employee, officer, and director of a corporation with a presence in the United States would be subject to suit in the United States as individuals, and for all purposes, which is "an insupportable proposition."  *See Family Internet, Inc., v. Cybernex, Inc.,* No. 98 Civ. 0637 (RWS), 1999 U.S. Dist. LEXIS 15549, at *10-11 (S.D.N.Y. Oct. 1, 1999).

There is no allegation that the ImageSat D&Os conducted business in New York for their personal benefit, let alone that any of them have "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of [his] 'presence' in this jurisdiction."  *Falik v. Smith*, 884 F. Supp. 862, 865 (S.D.N.Y. 1995) (internal citation omitted).  The Complaint contains no specific reference to Defendants Keret and Nissan having *any* contact with New York.  Regarding Messrs. Arzi, Chelouche, Eckhaus, and Piperno-Beer, the only

---

[4]  *See Family Internet, Inc.*, No. 98 Civ. 0637 (RWS) 1999 U.S. Dist. LEXIS 15549, at *9 (noting that courts have questioned whether the "doing business" theory of jurisdiction applies to individuals).  The New York Court of Appeals has yet to decide whether the "doing business" analysis may be applied to an individual.  *See Tyco Int'l, Ltd. v. Walsh*, 02 CIV. 4633 (DLC), 2003 U.S. Dist. LEXIS 2670, at *7 (S.D.N.Y. Feb. 27, 2003).

jurisdictional allegation is that they attended a board meeting in New York on November 22,

2006, where "there was no substantive discussion of either the SOP opportunity with Venezuela

or the investment proposal by the President of Venezuela to the Company at that meeting and

certainly no formal resolution or action taken or recommended".  (Compl. ¶ 147.)  Attending a

Board meeting in New York does not establish personal jurisdiction over an individual.  *See*,

*e.g.*, *Clarke v. Fonix Corp.*, No. 98 Civ. 6116 (RPP),1999 WL 105031, at *5 (S.D.N.Y. Mar. 1,

1999) ("[B]oard meetings held in New York, or the presence of a board member in New York, is

not evidence of doing business here") (citation omitted).[5]  It certainly cannot suffice where the

allegation is that these individuals attended a Board meeting in New York where nothing

substantive took place.

　　　　　The ImageSat D&Os each live in Israel where they have resided for most or all of

their lives.  None of them lives in or maintains a residence in New York.  (*See* Declaration of

David Arzi ("Arzi Decl.") ¶ 8; Declaration of Yoav Chelouche ("Chelouche Decl.") ¶ 8;

Declaration of Shimon Eckhaus ("Eckhaus Decl.") ¶ 8; Declaration of Moshe Keret ("Keret

Decl.") ¶ 8; Declaration of Gino Piperno-Beer ("Piperno-Beer Decl.") ¶ 7; Declaration of Izhak

Nissan ("Nissan Decl.") ¶ 8.)  None own or rent property in New York.  (Arzi Decl. ¶ 9;

Chelouche Decl. ¶ 9; Eckhaus Decl. ¶ 9; Keret Decl. ¶ 9; Piperno-Beer Decl. ¶ 8; Nissan Decl. ¶

9.)  None has any business, agents or employees in New York, or an office in New York.  (Arzi

Decl. ¶ 15; Chelouche Decl. ¶ 15; Eckhaus Decl. ¶ 14; Keret Decl. ¶ 15; Piperno-Beer Decl. ¶

13; Nissan Decl. ¶ 15.)  None has a bank account in New York or anywhere in the United States.

(Arzi Decl. ¶ 10; Chelouche Decl. ¶ 10; Eckhaus Decl. ¶ 10; Keret Decl. ¶ 10; Piperno-Beer

---

[5]  *See also Tyco Int'l, Ltd*, 2003 U.S. Dist. LEXIS 2670, at *7 ("regular attendance" at board meetings in New York did not provide general jurisdictional hook over an individual defendant).

Decl. ¶ 9; Nissan Decl. ¶ 10.)  None of them maintain a telephone listing, mobile phone, or physical or mailing address in New York or anywhere in the United States except Defendant Chelouche.[6]  (Arzi Decl. ¶¶ 11, 12; Chelouche Decl. ¶¶ 11, 12; Eckhaus Decl. ¶¶ 11, 12; Keret Decl. ¶¶ 11, 12; Piperno-Beer Decl. ¶¶ 10, 11; Nissan Decl. ¶¶ 11, 12.)

B.    **The Complaint Fails to Allege Specific Jurisdiction Over the Moving Defendants**

Section 302, New York's long-arm statute, enables a court to exercise specific jurisdiction over non-domiciliaries only when the cause of action arises: (i) from a defendant's transaction of business or commission of a tort within the state or (ii) from the alleged commission of a tort outside the state resulting in injury within the state.  CPLR § 302(a)(1)-(3). Plaintiffs fail to allege facts sufficient to sustain jurisdiction on any of these grounds.

1.    **Plaintiffs Fail to Allege a Prima Facie Case of Personal Jurisdiction Under Section 302(a)(1)**

Specific jurisdiction exists under § 302(a)(1) if a defendant "transacts business within the state or contracts anywhere to supply goods or services in the state."  CPLR § 302(a). "A nondomiciliary transacts business under CPLR 302(a)(1) when he purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws."  *CutCo Indus. Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986 (internal citations omitted); *see also Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (N.Y. 1988) (requiring a "substantial relationship between the transaction and the claim asserted.").

Courts have generally limited the application of § 302(a)(1) to breach of contract actions; to the extent courts have applied § 302(a)(1) to tort actions, they have limited the scope

---

[6] Mr. Chelouche had a telephone number since 2006 that is owned by Rosetta Genomics Ltd., an Israeli company, and is used for Mr. Chelouche's business with Rosetta, not for his business with ImageSat.  (Chelouche Decl. ¶ 12.).

to those exceptional circumstances where, unlike here, the allegedly tortious conduct arose out of a defendant's contractual relationship with a New York entity.  *See E-Z Bowz, L.L.C. v. Prof'l Prod. Research Co.,* No. 00 Civ. 8670 (LTS) (GWG), 2003 U.S. Dist. LEXIS 15256, at *19 (S.D.N.Y. Sept. 5, 2003) (internal citations omitted).

By its plain language, § 302(a)(1) does not apply here.  None of the ImageSat D&Os are named in the breach of contract claims, and the gravamen of Plaintiffs' Complaint is that the ImageSat D&Os breached their fiduciary duties and committed fraud in their capacities as directors and officers of a Netherlands Antilles corporation located in Israel.  Plaintiffs' allegations have no connection to, and do not arise out of, any transaction of business in New York by the ImageSat D&Os.  *See, e.g., Family Internet, Inc.*, 1999 U.S. Dist. LEXIS 15549, at *17-18 (denying § 302(a)(1) jurisdiction where plaintiff failed to show defendant's business transactions "form the basis for its tort claims against him").  The sole jurisdictional contact of the ImageSat D&Os alleged with specificity in the Complaint is attendance at a Board meeting in New York.  (Compl. ¶¶ 39, 147.)  As discussed above, this allegation is insufficient.

### 2.    Plaintiffs Fail to Allege a Prima Facie Case of Jurisdiction Under Section 302(a)(2)

Section 302(a)(2) permits a court to exercise jurisdiction over a non-domiciliary for tortious conduct that has taken place within New York and is tortious as a matter of law.  A corporate director's omissions while outside the state are not tortious acts committed within the state for purposes of Section 302(a)(2).  In *Platt Corp. v. Platt*, 217 N.E. 2d 134, 135, 270 N.Y.S.2d 408, 410 (N.Y. 1966), the New York Court of Appeals rejected the argument that a New York court could exercise jurisdiction over a corporation's non-domiciliary directors due to their alleged failures to act.  *Id.*  ("The failure of a man to do anything at all when he is physically in one State is not an 'act' done or 'committed' in another State.").  Plaintiffs'

allegations that the ImageSat D&Os failed to pursue business opportunities and to reveal alleged satellite design flaws are therefore insufficient jurisdictional predicates.

### 3.     Plaintiffs Fail to Allege a Prima Facie Case of Jurisdiction Under Section 302(a)(3)

Nor is there a basis for personal jurisdiction under §302(a)(3), which permits a court, under certain conditions, to exercise jurisdiction over a defendant who commits a tortious act outside the state that results in injury to person or property in New York. To establish a basis for jurisdiction under § 302(a)(3), a plaintiff must allege specific facts showing that the defendant, in his or her individual capacity, either (i) regularly does or solicits business or engages in any other persistent course of conduct in the state, or (ii) derives substantial revenue from interstate or international commerce and should have reasonably expected the tortious act to have consequences in the state. *See Ahava Food Corp. v. Donnelly,* No. 02 Civ. 4344 (RWS), 2002 U.S. Dist. LEXIS 23756, at *11 (S.D.N.Y. Dec. 9, 2002) (absent extraordinary circumstances, corporation's revenues should not be attributed to any defendants; only pertinent revenues are those earned by defendants themselves.). The Complaint fails to allege that any of the ImageSat D&Os regularly conducts business in New York or derives substantial revenue from interstate or international commerce. Although the Complaint broadly alleges that Defendants conduct business in the New York (*See*, *e.g.*, Compl. ¶ 39), it does not allege that any of them transacted business in New York in an individual capacity. The Complaint thus fails to establish jurisdiction under § 302(a)(3). *See Family Internet, Inc.,* 1999 U.S. Dist. LEXIS 15549, at *21 (refusing to exercise jurisdiction where plaintiff "has not even ventured to prove" that defendant himself "derives substantial revenue from interstate or international commerce").

- 7 -

C.   **The Exercise of Jurisdiction Over the ImageSat D&Os Would be Unconstitutional**

The exercise of jurisdiction over the ImageSat D&Os would not only violate the CPLR but would also run afoul of the Due Process Clause, which "requires that a defendant have 'minimum contacts' with the forum state such that the maintenance of the action does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation omitted). The requirement that a defendant have purposefully availed itself of the privilege of conducting activities within the forum State "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *S.E.C. v. Alexander*, 160 F. Supp. 2d 642, 656 (S.D.N.Y. 2001) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-75 (1985). Plaintiffs have failed to allege anything approaching the necessary contacts with New York State.

Moreover, even if a defendant purposefully directed his activities at the forum, the concept of "fair play and substantial justice" may defeat the reasonableness of jurisdiction. *See Burger King Corp.*, 471 U.S. at 477-78. In determining the "reasonableness" of the assertion of jurisdiction, the Court considers: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 568 (2d Cir. 1996). These five factors weigh heavily against a finding of reasonableness with respect to jurisdiction over the ImageSat D&Os.

First, the ImageSat D&Os are citizens of Israel who live and work in Israel and travel to New York only infrequently. (*See* Arzi Decl. ¶¶ 3, 13; Chelouche Decl. ¶¶ 3, 13;

Eckhaus Decl. ¶¶ 3, 13; Keret Decl. ¶¶ 3, 13; Piperno-Beer Decl. ¶¶ 3, 12; Nissan Decl. ¶¶ 3, 13.)  Litigating the case in New York will be a substantial burden.  *See Realuyo v. Villa Abrille*, No. 01 Civ. 10158 (JGK), 2003 WL 21537754, at \*8 (S.D.N.Y. July 8, 2003) (the time and money required to travel to New York would impose a great burden on foreign defendants).  Second, the interests of New York in adjudicating this matter are minimal, as discussed more fully in the § I of the Joint Memorandum.

Third, Plaintiffs' interests in obtaining convenient and effective relief will not be substantially prejudiced if compelled to litigate their claims in Israel, as many of them are Israeli residents and, in any event, the majority of them are based outside the U.S.  *See Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 628 (S.D.N.Y. 2003) ("Plaintiff is not significantly prejudiced if it is compelled to litigate its claims in Germany, where [its] main office is located."), *aff'd*, 355 F.3d 206 (2d Cir. 2004).  There are only two New York Plaintiffs (Moshel and Talansky) and they are alleged only to hold bridge warrants and therefore do not have standing as to most of the claims.  *See* Joint Mem. § V.  In addition, the Plaintiffs' interests in obtaining convenient and effective relief must be measured against the other fairness factors, which clearly favor Defendants.  *See Realuyo,* 2003 WL 21537754, at \*9.

Fourth, the interstate and international judicial system's interest in obtaining the most efficient resolution of the controversy does not weigh in favor of New York.  Israel is the most efficient forum, and the vast majority of the potential witnesses and evidence is located in Israel.  (*See* Goren Decl. ¶¶ 13, 17);  *Metro. Life Ins. Co.,* 84 F.3d at 574 (courts generally consider where witnesses and evidence are likely to be located).  *See* Joint Mem., § I.

Finally, no substantive social policies would be furthered by permitting adjudication of this case in New York.  Israel, on the other hand, has a strong interest in a litigation alleging tortious acts committed by and directed at its residents.

## II.   THE FRAUD, RICO, AND BREACH OF FIDUCIARY DUTY CLAIMS FAIL TO SATISFY RULE 9(B)'S PLEADING REQUIREMENTS

Rule 9(b) requires that a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).  Rule 9(b) applies to Plaintiffs' fraud and RICO claims and also to the claims for breach of fiduciary duty.  Although fraud, *per se,* is not an element of a claim for breach of fiduciary duty, the allegations must satisfy Rule 9(b) if the claim is based on fraudulent conduct, as it is here.[7]  *See A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, No. 97 Civ. 4978 (LMM), 1999 WL 47223, at *6 (S.D.N.Y. Feb. 3, 1999) (dismissing breach of fiduciary duty claim for failure to comport with Rule 9(b)).  *See Spira v. Curtin*, No. 97 CIV. 2637 (TPG), 2001 WL 611386, at *3-4 (S.D.N.Y. June 5, 2001) (same).

### A.   Plaintiffs Fail to Plead When and Where Any Allegedly False Statements Were Made and Who Made Them

Rule 9(b) demands a clearly defined level of specificity; it is not "satisfied when the complaint vaguely attributes alleged fraudulent statements" to the defendant.  *Forrest v. Unifund Fin. Group., Inc.*, No. 04 Civ. 5151(LTS), 2005 WL 1087490, at *4 (S.D.N.Y. May 6, 2005) (internal citation omitted).  Plaintiffs summarily allege that the ImageSat D&Os made false and misleading statements concerning:  (a) the Pegasus investment and Master Agreement

---

[7] *See, e.g.*, Compl. ¶¶ 198-200, 207, 220, 230, 238, 247 (alleging that Defendants breached their fiduciary duties by "manipulating pricing" ... "willful[] and fraudulent[] withholding of information" and "paying or knowingly allowing the Company to make excessive, inappropriate, and some cases outright fraudulent 'commission' and other payments," "intentionally providing false, misleading and incomplete information and documentation to

of July 2000; (b) the status of the original EROS B satellite; (c) ImageSat's financial affairs; (d) the SOP and investment opportunity in Venezuela; (e) ImageSat's "recent" financial affairs; and (f) ImageSat's rights under the Master Agreement.  (Compl. ¶ 310(a)-(f).)  But the Complaint includes no allegations that any of the ImageSat D&Os made any false statements, any facts from which deceitful intent can be inferred, or reliance on any alleged falsehoods.

Indeed, most of the allegations regarding allegedly fraudulent statements are in the passive voice, making it difficult to discern the identity of the alleged speaker.  (*See*, *e.g.*, Compl. ¶ 355) ("*it was represented to Plaintiffs* that the terms of all the classes of warrants and options issued in the July 2000 transaction would be identical … .") (emphasis added).  Conspicuously absent is any allegation of *who* made this statement or *when* or *where* the statement was made.  (*See Id.* ¶ 98) ("the explanation was contrived that the Company has asked for a delay in beginning the manufacturing process…This was a knowing and willful falsehood…); (*id.* ¶ 162) ("the stated justification was a willful deception … the reason most often given … has been that the … customer was withholding payment ").  These vague statements do not come close to meeting the particularity requirements of Rule 9(b).  Nowhere do Plaintiffs allege who made the statements, when and where they were made, and how exactly they were false.  *See Olsen v. Pratt & Whitney Aircraft*, 136 F.3d 273, 275 (2d Cir. 1998) (dismissing fraud claim as "conclusory and lacking in particulars" because complaint failed to allege "what was said;" "who said it;" "where and when" the statements were made, "and why these predictions of future events were fraudulent … ."); *Tuosto v. Philip Morris USA Inc.*, No. 05 Civ. 9384 (PKL), 2007 WL 2398507, at *9 (S.D.N.Y. Aug. 21, 2007) (dismissing claim

---

Morgan Joseph," and "misrepresenting the circumstances under which the Board of Directors purportedly took action ...".).

where plaintiffs failed to "specifically identify who made the statements, where and when the statements were made, nor how exactly the statements were fraudulent.").

Moreover, many of the alleged fraudulent statements are attributed indiscriminately to "Defendants," without specifying *which* defendant allegedly made the statement. (*See*, *e.g.*, Compl. ¶¶ 112, 115, 119, 128, 129, 132, 136, 141, 165, 171, 172, 298.) Such lumping together of several defendants in vague allegations without informing them of the specific wrongdoing they are alleged to have committed is insufficient. *See DiVittorio v. Equidyne Extractive Indus. Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation"); *Natowitz v. Mehlman*, 542 F.Supp. 674, 676 (S.D.N.Y. 1982) ("When a plaintiff sues sixteen defendants, he or she has an obligation to allege specifically the fraud perpetrated by each defendant."). The mere allegation of a defendant's *status* as a member of a Board of Directors does not fulfill Plaintiffs' pleading requirements; to satisfy Rule 9(b), Plaintiffs must instead allege fraudulent *conduct* by each defendant. *See In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 381 (S.D.N.Y. 2004) ("In order to satisfy the pleading requirements of Rule 9(b) …, a plaintiff must allege that an officer or director '*personally* knew of, or participated in, the fraud.'").[8] Plaintiffs fail to link the ImageSat D&Os to the allegedly false statements, and fail to allege facts sufficient to show that any of them had knowledge that the statements were false at the time they were made.

---

[8] *See also In re Forest Labs., Inc. Derivative Litig.*, 450 F. Supp. 2d 379, 389-92 (S.D.N.Y. 2006) (dismissing claim against outside directors for failure to make particularized claims against them individually); *Toussaint v. J.J. Weisser & Co.*, No. 04 Civ. 2592 (MBM), 2005 WL 356834, at *10 (S.D.N.Y. Sept. 13, 2005) (dismissing complaint against directors and former directors for failure to specify the nature of each defendant's participation in the alleged fraud).

Most of the references to the ImageSat D&Os specify no fraudulent statements, activities, or other actionable conduct. Instead, references are at the end of boilerplate fraud allegations, stating simply that certain individuals served as ImageSat's directors at that time. (*See*, *e.g.*, Compl. ¶¶ 75, 86, 111.) The absence of specificity is particularly glaring as to Messrs. Arzi and Chelouche who are mentioned by name only three times in the body of the 151-page complaint. (Compl. ¶¶ 111, 147, 150.) The first allegation appears in Paragraph 111, which discusses the July 2001 transactions and the alleged 2001 EROS B satellite fraud – events that predominately occurred five years before Messrs Chelouche and Arzi joined the ImageSat Board.[9] Defendants Chelouche and Arzi are referenced in a single sentence in Paragraph 111 which states that, "throughout this period, the directors of ImageSat included" Chelouche and Arzi, amongst others. (Compl. ¶ 111.) The second and third references to Defendants Arzi and Chelouche consist of no more than a statement alleging that they were among the directors of ImageSat's Board who attended the November 22, 2006 meeting -- a meeting at which Plaintiffs assert the SOP opportunity with Venezuela was *not* discussed. (Compl. ¶¶ 147, 150.) Simply alleging that Defendants Chelouche and Arzi were members of the ImageSat Board when certain events took place and that they attended a Board meeting where an issue was *not* discussed, without a description of any specific actions they took, does not satisfy Rule 9(b).

Similarly, Mr. Piperno-Beer is mentioned only five times in the body of the Complaint. (Compl. ¶¶ 111, 130, 147, 150, 169.) He is mentioned in the same three paragraphs that Messrs. Arzi and Chelouche are mentioned as being members of ImageSat board during the period of allegedly wrongful conduct. (Compl. ¶¶ 111, 147 150.) The fourth reference to Mr. Piperno-Beer is in the context of allegations regarding the destruction of ImageSat's international profile, and consists of a single sentence stating that, "throughout this period the directors of

---

[9]  *See supra*, note 12.

ImageSat included . . . Piperno Beer."  (Compl. ¶ 130.)  The final reference to Mr. Piperno-Beer is an allegation that at the time that he was elected, the minority shareholders were not informed of the vote.  (Compl. ¶ 169.)  These five references to Defendant Piperno-Beer are insufficient to provide him with notice of his allegedly wrongful conduct and are not an adequate basis for him to respond to the Complaint.

### B.    Plaintiffs Fail to Plead that the ImageSat D&Os Acted with Fraudulent Intent

Under Rule 9(b), "[i]n addition to alleging the particular details of a fraud the plaintiffs must allege facts that give rise to a strong inference of fraudulent intent."  *Am. High-Income Trust v. AlliedSignal,* 329 F. Supp. 2d 534, 545 (S.D.N.Y. 2004) (citing *Shields*, 25 F.3d at 1128); *see also Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 663-64 (2d Cir. 1997) (affirming dismissal where "allegations, even taken together, [were] insufficient to raise a strong inference of fraudulent intent").  A party may allege fraudulent intent (1) by "alleging facts to show that the defendants had both the motive and opportunity to commit fraud," or (2) "'alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'"  *Lerner*, 459 F.3d at 291 (citation omitted).  Where plaintiffs attempt to allege "motive or opportunity" to commit fraud, they "must assert a concrete and personal benefit to the individual defendants resulting from the fraud."  *See In re JP Morgan Chase Sec. Litig*., 363 F. Supp. 2d 595, 619 (S.D.N.Y. 2005).  Incentives possessed by most corporate officers, such as sustaining "the appearance of corporate profitability, or of the success of an investment" or "the desire to maintain a high stock price," are insufficient.  *Am. High-Income Trust,* 329 F. Supp. 2d at 545 (citing *Kalnit v. Eichler*, 264 F.3d 131, 140 (2d Cir. 2001)).

Here, Plaintiffs allege no personal benefit to the ImageSat D&Os, instead they allege only benefits to the majority shareholders.  While the Complaint alleges in conclusory

fashion that Defendants "knew" of design flaws in the EROS B satellite (Compl. ¶ 98), that

spurning SOP contracts would reduce the company's profits (*Id.* ¶ 115), and that the fairness

opinion was based on incorrect information and therefore flawed (*Id.* ¶ 170), Plaintiffs fail to

plead any particularized facts demonstrating that Defendants knew their statements were

misleading.  The types of boilerplate allegations, without facts alleged in support, have been

routinely rejected as insufficient to establish fraudulent intent.  *Shields v. Citytrust Bancorp, Inc.*,

25 F.3d 1124, 1129 (2d Cir. 1994) *cert. denied*, 531 U.S. 1012 (2000) (plaintiff's "frequent

conclusory allegations—that Defendants 'knew but concealed' some things, or 'knew or were

reckless in not knowing' other things—do not satisfy the requirements of Rule 9(b)").

## C.    Plaintiffs Have Not Adequately Pleaded Reliance to Their Detriment

Rule 9(b) requires that plaintiffs plead facts demonstrating that specific losses

directly resulted from "reasonable or justifiable reliance" on the purported misrepresentations.

*Clark v. Nevis Capital Mgmt., LLC*, No. 04 Civ. 2702, 2005 WL 488641, at *18 (S.D.N.Y. Mar.

2, 2005).  Reliance requires that the plaintiff does something in response to the alleged

fraudulent activity.  *Id.* ("[T]o plead the reliance element of her fraud claim, [Plaintiff] must have

directly relied upon one or more of the misrepresentations and omissions alleged.").  Moreover,

once plaintiffs are aware of the falsity of any alleged fraud, any reliance thereon is not

reasonable.  Plaintiffs allege that each of them "relied upon the false and misleading statements

and omissions of the defendants by, among other things, continue [sic] to invest his productive

work time and efforts into ImageSat and/or by forbearing from bringing litigation against

defendants that would have been commenced at a substantially earlier time had truthful and

accurate disclosure of the relevant facts been made to them."  (Compl. ¶ 311.)   This conclusory

statement does not plead reliance with the particularity required by Rule 9(b).  Plaintiffs do not

say which among them continued to invest their work time and efforts in ImageSat or how that

injured them.  Likewise, the Complaint makes no effort to explain how their alleged

"forbearance" in bringing litigation injured them.  Such allegations of damages resulting from

reliance on the allegedly fraudulent statements are too remote and speculative to suffice.  *See*

*Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir. 1993) (holding plaintiff's claims that they

were prevented from filing fraud suit earlier were "too remote").  Even if Plaintiffs had plead

actual reliance, they have not – and cannot – allege how they were *injured* by virtue of their

reliance; allegations that they were injured by the diminution in the value of their shares do not

suffice because those injuries are derivative of injury to the Company.  *See* Joint Mem., § III.[10]

### D.    The Rico Claim Fails for the Additional Reason that the Complaint Does Not Plead Mail and Wire Fraud with Particularity

In order to establish mail and wire fraud as predicate acts for their RICO claim,

Plaintiffs must also allege that the defendants "(1) participated in a scheme to defraud; (2)

knowingly used the mails to further the scheme; and (3) had the specific intent to defraud."

*Miller v. New York*, No. 05 CV 6024(SJ)(RML), 2007 WL 1062505, at *3 (E.D.N.Y. Mar. 30,

2007).[11]  Where plaintiffs allege an overall scheme to defraud, defendants "must show that each

defendant committed two predicate acts [of mail and wire fraud]."  *See 236 Cannon Realty, LLC*

*v. Ziss*, No. 02 Civ. 6683(WHP), 2005 WL 289752, at *5 (S.D.N.Y. Feb. 8, 2005).  "Further,

'plaintiffs asserting mail fraud [as a RICO predicate act] must also identify the purpose of the

---

[10]  Although not identified as a separate cause of action, Plaintiffs tack aiding and abetting allegations to the end of their common law fraud claim, summarily alleging that each Defendant "knew of the fraud being perpetrated by the other Defendants . . . ."  (Compl. ¶ 313.)  Regardless of what state or country's law applies, "a claim of aiding and abetting fraud requires a plaintiff to plead pursuant to Rule 9(b)."  *In re WorldCom Secs. Litig.*, 382 F. Supp. 2d 549, 561 (S.D.N.Y. 2005).  Because Plaintiffs have not adequately pleaded the existence of a fraud, Plaintiffs' aiding and abetting allegations should also be dismissed.

[11]  *See also Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998) (stating that because of the stigmatizing effect on those named as defendants in a RICO claim, "courts must always be on the lookout for the putative RICO case that is really 'nothing more than an ordinary fraud case clothed in the Emperor's trendy garb'"); *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 456 (S.D.N.Y. 1998) (recognizing that the "'overwhelming trend' among courts is to apply Rule 9(b) strictly in order to effect dismissal of civil RICO suits").

mailing within the defendant's fraudulent scheme.'" *Kades v. Organic Inc.*, No. 00 Civ. 3671

(LTS) (RLE), 2003 WL 470331, at *9 (S.D.N.Y. Feb. 24, 2003) (citation omitted).

Plaintiffs must "provide a plain statement of each scheme they allege that these

defendants participated in … ." *Miller*, 2007 WL 1062505, at *3. Where such a scheme is not

clearly alleged, courts will dismiss the claims. *See, e.g.*, *Zito v. Leasecomm Corp., et al.*, 02 Civ.

8074, 2003 WL 22251352, at *10 (S.D.N.Y. Sept. 30, 2003) (dismissing claim where the

complaint described "so many diverse and overlapping schemes and activities of the various

defendants that it is often impossible to identify which of these activities are attributed to whom,

and which are alleged to constitute the scheme or schemes to defraud in furtherance of which the

mails are alleged to have been used"). Plaintiffs have not adequately alleged a scheme to

defraud. (*See supra* pp. 10-14).

Allegations that underlying mail or wire transmissions are fraudulent must be

pleaded with 9(b) particularity. And, even where "[p]laintiffs' allegations concern [] non-

fraudulent mailings used merely to establish the jurisdictional element of the predicate acts" the

defendants must be able to "reasonably infer[] from the complaint … their purpose in light of the

fraudulent scheme that is pleaded with particularity." *Eastchester Rehab. & Health Care Ctr. v.*

*Eastchester Health Care Ctr.*, No. 03 Civ. 7786 (LTS)(FM), 2005 WL 887154, at *3 n.2

(S.D.N.Y. Apr. 15, 2005). General allegations that defendants benefited from racketeering

activity are insufficient to state a claim. *Rivera v. Golden Nat'l Mtg. Banking Corp.*, 04 Civ.

4545, 2005 WL 1514043, at *3 (S.D.N.Y. 2005) (holding plaintiff's general allegations of mail

fraud were insufficient to establish a predicate act under RICO). And allegations of actions that

are "routine . . . do not give rise to the inference of fraud." *Miller*, 2007 WL 1062505 at *3; *see*

- 17 -

*also O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 706-07 (2d Cir. 1990) (holding that

normal business communications without more, fail to establish a mail fraud claim).

      Plaintiffs have not adequately alleged that any of the ImageSat D&Os committed

two predicate acts.  Nor does an exhibit list of 74 emails satisfy the particularity requirements of

Rule 9(b).  *See U.S. ex rel Lissack v. Sakura Global Capital Mkts, Inc.*, No. 95 Civ. 1363 (BSJ),

2003 WL 21998968, at *12 (S.D.N.Y. Aug. 21, 2003), *aff'd*, 377 F.3d 145 (2d Cir. 2004)

(rejecting reliance on a "partial, nonexclusive list of transactions affected by [defendant's]

fraudulent practices" because "merely providing a list of transactions without any further detail

is insufficient to satisfy the pleading requirement of Fed. R. Civ. P. 9(b)"); *Spier v. Erber*, No. 89

Civ. 1657 (PKL), 1992 WL 230254, at *16 (S.D.N.Y. Sept. 1, 1992) (holding plaintiff had failed

to satisfy Rule 9(b)'s particularity requirement merely by setting forth a list of dates and places

because plaintiff failed to specify the time, place, speaker, and content of each of the alleged

misrepresentations).  Moreover, the Complaint fails to identify any communication that would be

considered more than a routine business communication.  Plaintiffs' Exhibit F cannot satisfy

Rule 9(b)'s mandate that Plaintiffs' specify the allegedly fraudulent statement, by whom, where

and when the statements were made, and explain why the statements were fraudulent.  As

Plaintiffs have failed to plead predicate acts of mail and wire fraud with particularity, the RICO

claims against the ImageSat D&Os should be dismissed.

## III.    THE COMPLAINT FAILS TO COMPLY WITH RULE 8(A)

      Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a pleading must

contain "a short and plain statement of the claim showing that pleader is entitled to relief."

Although Rule 8(a)(2) expresses a liberal pleading standard, plaintiffs are required to give each

of the defendants fair notice of each of the claims against them in order to enable them to answer

and prepare their case.  *Swiekiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conely v.*

*Gibson*, 355 U.S. 41, 47 (1957)); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). While

the complaint "does not need detailed factual allegations," it "requires more than labels and

conclusion, and a formalistic recitation of the elements of a cause of action will not do." *Bell*

*Atlantic Corp. v. Twonbly*, 127 S.Ct. 1955, 1964-65 (2007). Rather, the "factual allegations must

be enough to raise a right to relief above the speculative level." *Id* at 1965

       Moreover, where an action is brought against multiple defendants, as here, a

complaint cannot "lump all the defendants together and fail to distinguish their conduct" because

such "allegations fail to give adequate notice to the[] defendants as to what they did wrong." *See*

*Atuahene v. City of Hartford*, No. 00-7711, 2001 WL 604902, at *1 (2d Cir. May 31, 2001);

*Medina v. Bauer*, No. 02 Civ. 8837(DC), 2004 WL 136636, *6 (S.D.N.Y. Jan. 27, 2004));

*Merrill Lynch, Pierce, Fenner & Smith Inc., v. Young*, No. 91 Civ. 2123, 1994 WL 88129, at *18

(S.D.N.Y. Mar. 15, 1994) (*citing* C. Wright & A. Miller, Federal Practice and Procedure § 1248

at 266 (1969) ("Rule 8(a) requires that "actions brought against multiple defendants must clearly

specify the claims with which each particular defendant is charged."); *Pietrangelo v. NUI Corp.*,

No. 04 CV 3223, 2005 WL 1703200, at *10 (D.N.J. July 25, 2005) ("the Complaint fails to

satisfy the liberal notice pleading standard of Rule 8(a) because Plaintiff fails to differentiate

between the defendants. Plaintiff's complaint instead lumps all of the defendants together and

accuses every defendant of breaching all of the asserted fiduciary duties.").

       The Complaint fails to satisfy the pleading standard of Rule 8(a)(2) because it

does not provide the ImageSat D&Os with notice of what wrongs each is accused of committing.

The 151-page and 389-paragraph Complaint is replete with allegations against the "Defendants"

collectively, but makes no meaningful attempt to demonstrate which of the ImageSat D&Os are

responsible for the litany of allegedly wrongful acts. In fact, many of the alleged wrongful acts

pre-date some of the ImageSat D&Os' membership on the Board.  For example,  the bulk of the allegations in the Complaint involve allegedly fraudulent acts that took place prior to 2006 and Messrs. Arzi, Chelouche and Piperno-Beer did not become affiliated with ImageSat until 2006.[12] As noted above, Messrs. Chelouche and Arzi are mentioned only three times in the body of the Complaint (Compl. ¶¶ 111, 147, 150) and Mr. Piperno-Beer is mentioned only five times (Compl. ¶¶ 111, 130, 147, 150, 169), with none of these references providing these individuals with any information as to what wrongful acts they are alleged to have committed.

The vast majority of the references to the ImageSat D&Os are made in a conclusory, boilerplate paragraph, that follows a general description of allegedly fraudulent activity, stating that the individuals, along with others, served as ImageSat's directors during the time period.  The ImageSat D&Os should not be expected to ferret through Plaintiffs' mass of allegations to determine what wrongful acts they are alleged to have committed.  *Salahuddin,* 861 F.2d at 42 "[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin,* F.2d at 42 (quoting 5C Wright &Miller, Federal Practice and Proc. § 1281, at 356 (1969) (quoting 5C Wright & Miller, Federal Practice and Proc. § 1281, at 356 (1969)).  Accordingly, the claims against ImageSat D&Os should be dismissed.

## **CONCLUSION**

For the foregoing reasons, as well as those discussed in the accompanying Joint Memorandum, the Complaint should be dismissed with prejudice.

---

[12] *See* Arzi Decl. ¶ 2 (director and Chairman at ImageSat since October 2006); Chelouche Decl. ¶ 2 (director at ImageSat since September 2006); Piperno-Beer Decl. ¶ 2 (director at ImageSat since February 2006).

Dated: October 15, 2007
      New York, New York

                                     MILBANK, TWEED, HADLEY & McCLOY LLP

                              By: _____/s/ Sander Bak_____
                                  Sander Bak (SB 2263)
                                  Deborah Elman (DE 2310)
                                  1 Chase Manhattan Plaza
                                  New York, New York 10005
                                  (212) 530-5000

                                *Attorneys for Defendants ImageSat International N.V.,*
                                  *David Arzi, Yoav Chelouche, Shimon Eckhaus, Moshe*
                                  *Keret, Izhak Nissan, Gino Piperno-Beer, and Jacob*
                                  *Weiss*