WEST INDIAN SPACE N.V.
STOCK OPTION AGREEMENT

pursuant to the

WEST INDIAN SPACE N.V.
STOCK OPTION PLAN

\* \* \* \* \*

Optionee:   STEPHEN M. WILSON

Grant Date:   July 25, 2000

Per Share Exercise Price: $24.4573

Number of Option Shares subject to this Option: 132,077

\* \* \* \* \*

THIS STOCK OPTION AGREEMENT (this "Agreement"), dated as of the Grant Date specified above, is entered into by and between West Indian Space N.V., a Netherlands Antilles company (the "Company"), and the Optionee specified above, pursuant to the West Indian Space N.V. Stock Option Plan, as in effect and as amended from time to time (the "Plan"); and

WHEREAS, it has been determined under the Plan that it would be in the best interests of the Company to grant the stock option provided for herein to the Optionee (i) as an inducement to commence employment with or consultation to, as the case may be, or to remain an employee of, or consultant to, as the case may be, the Company (and/or one of its Subsidiaries), and (ii) as an incentive for increased effort during such service;

NOW, THEREFORE, in consideration of the mutual covenants and promises hereinafter set forth and for other good and valuable consideration, the parties hereto hereby mutually covenant and agree as follows:

1.  **Incorporation By Reference; Plan Document Receipt.** This Agreement is subject in all respects to the terms and provisions of the Plan (including, without limitation, any amendments thereto adopted at any time and from time to time unless such amendments are expressly intended not to apply to the grant of the option hereunder) and the Company's Articles of Association, all of which terms and provisions are made a part of and incorporated in this Agreement as if they were each expressly set forth herein. Any capitalized term not defined in this Agreement shall have the same meaning as is ascribed thereto under the Plan. The Optionee hereby acknowledges receipt of a true copy of the Plan and that the Optionee has read the Plan carefully and fully understands its content. In the event of any conflict between the terms of this Agreement and the terms of the Plan, the terms of the Plan shall control.

2.  **Definitions.** Capitalized Terms shall have the meaning ascribed to them in the Plan. In addition, for purposes of this Agreement, the following terms shall have the meanings set forth below:

    2.1  "**Disability**," if the Optionee is a party to an employment or consulting agreement, shall have the same meaning as in such agreement, otherwise, "Disability" means disability as determined by the Board in accordance with the standards and procedures similar to those under the Company's long-term disability plan, if any. Subject to the first sentence of this Section 2.1, at any time that the Company does not maintain a long-term disability plan, "Disability" shall mean any physical or mental disability which is determined to be total and permanent by a doctor selected in good faith by the Company.

    2.2  "**Fair Market Value**" shall mean on, or with respect to, any given date(s) the per share price, as determined by the Board in good faith using such advisors as the Board may determine are necessary.

3.  **Grant of Option.** The Company hereby grants to the Optionee, as of the Grant Date specified above, a stock option (this "Stock Option") to acquire from the Company at the Per Share Exercise Price specified above, the aggregate number of shares of the Common Stock specified above (the "Option Shares"). This Stock Option is not to be treated as (and is not intended to qualify as) an incentive stock option within the meaning of Section 422 of the United States Code of 1986, as amended from time to time

4.  **No Dividend Equivalents.** The Optionee shall not be entitled to receive a cash payment in respect of the Option Shares underlying this Stock Option on any dividend payment date for the Common Stock.

5. <u>Exercise of this Stock Option</u>.

5.1     The schedule for the exercise of this Stock Option shall be as set forth in Section 3(c) of the Consultancy Agreement between the Company and the Optionee dated as of the Grant Date.

5.2     Notwithstanding anything to the contrary contained in this Section 5, this Stock Option shall become one hundred percent (100%) exercisable as to the aggregate number of shares underlying this Stock Option upon the Optionee's death or Disability or, only if the Optionee is an employee and not a consultant, the termination of the Optionee's employment (i) by the Company without Cause (as defined in the employment agreement between the Company and the Optionee) or (ii) by the Optionee for Good Reason (as defined in the employment agreement between the Company and the Optionee).

5.3     Notwithstanding anything to the contrary contained in this Section 5, this Stock Option shall become one hundred percent (100%) exercisable as to the aggregate number of shares of Common Stock underlying this Stock Option upon the occurrence of a Change of Control of the Company. The Board may, in its sole discretion, accelerate the exercisability of any unexercisable portion of this Stock Option at any time.

5.4     If Optionee is an employee and not a consultant, in the event Optionee's employment with the Company or any Subsidiary is terminated for Cause (as same is defined in the Optionee's Employment Agreement with the Company) or such Employee resigns from the Company without Good Reason (as same is defined in the Optionee's Employment Agreement with the Company), any Options which have not at that time vested shall be canceled by the Company and any vested but unexercised Options at that time shall terminate thirty (30) days after the date of such termination for Cause or resignation without Good Reason.

5.5     Unless earlier terminated in accordance with the terms and provisions of the Plan and/or this Agreement, this Stock Option shall expire and shall no longer be exercisable after the earlier of (i) the expiration of eleven years from the Grant Date or (ii) the fifth anniversary of an Initial Public Offering (the "Option Period"). For purposes of this Agreement, Initial Public Offering shall mean an underwritten public offering of Common Stock registered with the SEC under the Securities Act, or similar foreign regulatory agency under a corresponding statutory scheme, following which the Common Stock is listed on the U.S. based national securities exchange or the Nasdaq National Market.

5.6     In no event shall this Stock Option be exercisable for a fractional share of Common Stock.

5.7     The Stock Options referred to in Section 5.1 are the options referred to in the employment agreement or the consultancy agreement, as the case may be, between the Company and the Optionee, entered into as of the date of this Agreement.

6.     <u>Method of Exercise and Payment</u>. This Stock Option shall be exercised by the Optionee by delivering to the Company or its designated agent on any business day (the "Exercise Date") a written notice, in such manner and form as may be required by the Company,

specifying the number of the Option Shares the Optionee then desires to acquire (the "Exercise Notice"). The Exercise Notice shall be accompanied by payment of the aggregate Per Share Exercise Price for such number of the Option Shares to be acquired upon such exercise. Such payment shall be made in the manner set forth in Section 6.4 of the Plan. The exercise of any portion of this Stock Option shall be contingent upon the Optionee (or his or her estate or designated beneficiary(ies)) becoming a party to the Stockholders' Agreement. To the extent any provision of the Plan or this Agreement is inconsistent with the Shareholders' Agreement, the Shareholders' Agreement shall govern.

7. <u>Non-transferability</u>.

7.1 Except as provided in Section 7.2 or as prohibited by applicable law, (i) this Stock Option, and any rights or interests therein, shall not be sold, exchanged, transferred, assigned or otherwise disposed of in any way at any time by the Optionee (or any beneficiary(ies) of the Optionee), other than by testamentary disposition by the Optionee or the laws of descent and distribution, (ii) this Stock Option shall not be pledged, encumbered or otherwise hypothecated in any way at any time by the Optionee (or any beneficiary(ies) of the Optionee) and, as between the parties to this Agreement, shall not be subject to execution, attachment or similar legal process, and (iii) any attempt to sell, exchange, pledge, transfer, assign, encumber or otherwise dispose of or hypothecate this Stock Option, or the levy of any execution, attachment or similar legal process upon this Stock Option, as between the parties to this Agreement, contrary to the terms of this Agreement and/or the Plan shall, as between the parties to this Agreement, be deemed null and void and without legal force or effect.

7.2 During the Optionee's lifetime, the Optionee may, with the consent of the Committee, transfer without consideration all or any portion of this Option to one or more members of his or her Immediate Family, to a trust established for the exclusive benefit of one or more members of his or her Immediate Family, to a partnership in which all the partners are members of his or her Immediate Family, or to a limited liability company in which all the members are members of his or her Immediate Family. For purposes of this Agreement, "Immediate Family" means the Optionee's children, stepchildren, grandchildren, parents, stepparents, grandparents, spouse, siblings (including half-brothers and half-sisters), in-laws, and all such relationships arising because of legal adoption; <u>provided</u>, <u>however</u>, that any such Immediate Family, and any such trust, partnership and limited liability company, shall agree to be and shall be bound by the terms and provisions of the Plan, and by the terms and provisions of any applicable outstanding Award Agreements or other agreements covering the Options or the shares subject to the options.

8. <u>Shareholder Rights</u>. The Optionee shall not have any shareholder rights with respect to Option Shares until such person shall have exercised the Stock Option, paid the exercise price and become a holder of record of the purchased shares.

9. <u>Entire Agreement; Amendment</u>. This Agreement contains the entire agreement between the parties hereto with respect to the subject matter contained herein, and supersedes all prior agreements or prior understandings, whether written or oral, between the parties relating to such subject matter. The Board or the Committee shall have the right, in its sole discretion, to modify or amend this Agreement from time to time in accordance with and as provided in the Plan; <u>provided</u>, <u>however</u>, that no such modification or amendment shall materially adversely affect the rights of the Optionee under this Stock Option without the consent of the Optionee. This Agreement may also be modified or amended by a writing signed by both the Company and

the Optionee. The Company shall give written notice to the Optionee of any such modification or amendment of this Agreement as soon as practicable after the adoption thereof.

10. Notices. Any Exercise Notice or other notice which may be required or permitted under this Agreement shall be in writing, and shall be delivered in person or via facsimile transmission, overnight courier service or certified mail, return receipt requested, postage prepaid, properly addressed as follows.

10.1 If such notice is to the Company, to the attention of the Secretary of West Indian Space N.V., Kaya WFG Mensing 14, Curaçao, Netherlands Antilles or at such other address as the Company, by notice to the Optionee, shall designate in writing from time to time.

10.2 If such notice is to the Optionee, at his or her address as shown on the Company's records, or at such other address as the Optionee, by notice to the Company, shall designate in writing from time to time.

11. Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the Netherlands Antilles, without reference to the principles of conflict of laws thereof.

12. Compliance with Laws. The issuance of this Stock Option (and the Option Shares upon exercise of this Stock Option) pursuant to this Agreement shall be subject to, and shall comply with, any applicable requirements of any applicable securities laws, rules and regulations and any other law or regulation applicable thereto. The Company shall not be obligated to issue this Stock Option or any of the Option Shares pursuant to this Agreement if any such issuance would violate any such requirements.

13. Binding Agreement; Assignment. This Agreement shall inure to the benefit of, be binding upon, and be enforceable by the Company and its successors and assigns. The Optionee shall not assign any part of this Agreement without the prior express written consent of the Company.

14. Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same instrument.

15. Headings. The titles and headings of the various sections of this Agreement have been inserted for convenience of reference only and shall not be deemed to be a part of this Agreement.

16. Further Assurances. Each party hereto shall do and perform (or shall cause to be done and performed) all such further acts and shall execute and deliver all such other agreements, certificates, instruments and documents as any party hereto reasonably may request in order to carry out the intent and accomplish the purposes of this Agreement and the Plan and the consummation of the transactions contemplated thereunder.

17. Severability. The invalidity or unenforceability of any provisions of this Agreement in any jurisdiction shall not affect the validity, legality or enforceability of the remainder of this Agreement in such jurisdiction or the validity, legality or enforceability of any

provision of this Agreement in any other jurisdiction, it being intended that all rights and obligations of the parties hereunder shall be enforceable to the fullest extent permitted by law.

Case 1:07-cv-06176-DLC    Document 60-2    Filed 10/15/2007    Page 7 of 8

IN WITNESS WHEREOF, the Company has caused this Agreement to be executed by its duly authorized officer, and the Optionee has hereunto set his hand, all as of the Grant Date specified above.

          WEST INDIAN SPACE N.V.

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

_____
Optionee

IN WITNESS WHEREOF, the Company has caused this Agreement to be executed by its duly authorized officer, and the Optionee has hereunto set his hand, all as of the Grant Date specified above.

WEST INDIAN SPACE N.V.

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

STEPHEN WILSON

_____
Optionee