THE SECURITIES REPRESENTED BY THIS INSTRUMENT OR DOCUMENT HAVE BEEN ACQUIRED FOR INVESTMENT AND HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED. WITHOUT SUCH REGISTRATION, SUCH SECURITIES MAY NOT BE SOLD OR OTHERWISE TRANSFERRED AT ANY TIME WHATSOEVER, EXCEPT UPON DELIVERY TO THE COMPANY OF AN OPINION OF COUNSEL SATISFACTORY TO THE COMPANY TO THE EFFECT THAT REGISTRATION IS NOT REQUIRED FOR SUCH TRANSFER OR THAT ANY SUCH TRANSFER WILL NOT BE IN VIOLATION OF THE SECURITIES ACT OF 1933, AS AMENDED, OR APPLICABLE STATE SECURITIES LAWS OR ANY RULE OR REGULATION PROMULGATED THEREUNDER.

## WARRANT TO PURCHASE COMMON SHARES

## OF

## WEST INDIAN SPACE, LTD.

Date of Issuance: July 25, 2000                                    Certificate No. ELW-15

This is to certify that, FOR VALUE RECEIVED, Stephen M. Wilson ("Holder") is entitled to purchase, subject to the provisions of this Warrant, from West Indian Space, Ltd., a Cayman Islands company (the "Company"), 49,156 common shares, par value $0.01 per share, of the Company ("Common Shares") at the Exercise Price (as defined below) in the manner hereinafter provided and effective as of the date hereof. The Common Shares (and, if applicable, other securities and property) deliverable upon the exercise of this Warrant are sometimes referred to herein as "Warrant Shares". The number and character of Warrant Shares deliverable hereunder are subject to adjustment as set forth in Section 4 below.

1. <u>Method of Exercise</u>. Warrant Shares purchased under this Warrant shall, at the time of purchase, be paid for in full, in cash. This Warrant may be exercised in whole or in part at any time, by written notice to the Company stating the number of Warrant Shares with respect to which this Warrant is being exercised and the date of delivery thereof, which shall be at least fifteen (15) days after the giving of such notice, unless an earlier date shall have been mutually agreed upon. At the time specified in such notice, the Company shall, without transfer or issue tax to the Holder, deliver to the Holder by certified mail, a certificate or certificates for such Warrant Shares, against the payment by the Holder of the Exercise Price (as defined below) in full, for the number of Warrant Shares to be delivered, by certified or bank cashier's check, or the equivalent thereof acceptable to the Company.

2. <u>Termination of Warrant</u>. Except as herein otherwise stated, this Warrant, to the extent not theretofore exercised, shall expire at 5:00 p.m. New York City time on July 24, 2005.

3. <u>Representations and Warranties of the Holder</u>. The Holder hereby warrants and represents to the Company, as of the date hereof and as of the date or dates on which any Warrant Shares are purchased hereunder, as follows:

(a) Holder is an Accredited Investor as defined in Regulation D promulgated by the Securities and Exchange Commission under the Act.

(b) Holder is, by reason of Holder's business or financial experience, capable of evaluating the merits and risks of this investment and of protecting the Holder's own interests in connection with this Warrant.

(c) In deciding whether to acquire the Warrant Shares, the Holder has relied, and will rely, exclusively upon consultations with its legal, financial and tax advisors with respect to the nature of this Warrant.

(d) Holder understands that neither the Securities and Exchange Commission, nor any other federal or state governmental agency having jurisdiction over the sale and issuance of the Warrant Shares, will make any finding or determination relating to the appropriateness for investment of the Warrant Shares and that none of them has or will recommend or endorse the Warrant Shares.

(e) The Warrant Shares will be purchased for Holder's own account for investment. Holder acknowledges that this Warrant and the Warrant Shares have not been registered under the Act, and must be held indefinitely unless subsequently registered under the Act or an exemption for such registration is available. The Holder also acknowledges that Holder is fully aware of the restrictions on disposing of the Warrant Shares resulting from the provisions of the Act and the General Rules and Regulations of the Securities and Exchange Commission thereunder. Holder further understands that the Warrant Shares have not been, and will not be, qualified under applicable state securities laws.

(f) Holder recognizes that "stop transfer" instructions will be issued against any stock certificates under this Warrant and that a restrictive legend that addresses acquisition for investment, subject to Rule 144 promulgated under the Act, will be placed on the stock certificates issued for the securities.

4. <u>Adjustments</u>. The Initial Exercise Price is $37.1881 per Common Share ("Initial Exercise Price"). The Initial Exercise Price shall be adjusted as provided for below in this Section 4 (the Initial Exercise Price, and the Initial Exercise Price, as thereafter then adjusted, shall be referred to as the "Exercise Price") and the Exercise Price from time to time shall be further adjusted as provided for below in this Section 4. Upon each adjustment of the Exercise Price specified herein, the Holder shall thereafter be entitled to receive upon exercise of this Warrant, at the Exercise Price resulting from

2

such adjustment, the number of Common Shares obtained by (i) multiplying the Exercise Price in effect immediately prior to such adjustment by the number of Common Shares purchasable hereunder immediately prior to such adjustment, and (ii) dividing the product thereof by the Exercise Price resulting from such adjustment. The Exercise Price shall be adjusted as follows:

>    (i)  In the case of any amendment to the Memorandum of Association of the Company to change the designation of the Common Shares or the rights, privileges, restrictions or conditions in respect to the Common Shares or division of the Common Shares, this Warrant shall be adjusted so as to provide that upon exercise thereof, the Holder shall receive, in lieu of each Common Share theretofore issuable upon such exercise, the kind and amount of shares, other securities, money and property receivable upon such designation, change or division by the Holder issuable upon such exercise had the exercise occurred immediately prior to such designation, change or division. This Warrant shall be deemed thereafter to provide for adjustments which shall be as nearly equivalent as may be practicable to the adjustments provided for in this Section 4. The provisions of this Subsection 4(i) shall apply in the same manner to successive reclassifications, changes, consolidations and mergers.
>
>    (ii)  If the Company shall at any time subdivide its outstanding Common Shares into a greater number of Common Shares, or declare a dividend or make any other distribution upon the Common Shares payable in Common Shares, the Exercise Price in effect immediately prior to such subdivision or dividend or other distribution shall be proportionately reduced, and conversely, in case the outstanding Common Shares shall be combined into a smaller number of Common Shares, the Exercise Price in effect immediately prior to such combination shall be proportionately increased.
>
>    (iii)  In case the Company shall issue or otherwise sell or distribute Common Shares or rights or warrants or other securities convertible into or exchangeable for Common Shares for a consideration per Common Share in cash or property less than the Exercise Price then in effect (other than (1) to vendors that are not affiliates of the Company in exchange for goods or services provided to the Company, (2) upon conversion of the Series A Preferred Stock or Series B Preferred Stock, (3) pursuant to Employee Stock Arrangements providing for an aggregate of not greater than ten percent (10%) of the outstanding Common Shares on a fully-diluted basis, (4) pursuant to the Joint Venture Agreement or the ELOP/West Indian Space Agreement or (5) if the Company determines to issue in the High-Yield Offering (a) warrants to purchase equity securities of the Company or (b) debt securities that are convertible into equity securities of the Company, such warrants or convertible debt securities and any shares of capital stock of the Company issued upon the exercise of such warrants or the conversion of such debt securities but only to the extent that such warrants or debt securities are exercisable for or convertible into not more than ten percent

3

(10%) of the outstanding Common Shares on a fully-diluted basis), the Exercise Price then in effect shall be reduced by multiplying such Exercise Price by a fraction, the numerator of which shall be the number of Common Shares outstanding immediately prior to such issuance, sale or distribution plus the number of Common Shares which the aggregate consideration received by the Company for such issuance, sale or distribution would purchase at the Exercise Price per share and the denominator shall be the number of Common Shares outstanding immediately after giving effect to such issuance, sale or distribution.

(iv)  If any capital reorganization or reclassification of the capital stock of the Company, or any consolidation or merger of the Company with another corporation or entity, or the sale of all or substantially all of the Company's assets to another corporation or other entity shall be effected in such a way that holders of Common Shares shall be entitled to receive stocks, securities, other evidence of equity ownership or assets with respect to or in exchange for Common Shares, then, as a condition of such reorganization, reclassification, consolidation, merger or sale (except as otherwise provided below in this Section 4), lawful and adequate provisions shall be made whereby the Holder shall thereafter have the right to receive upon the basis and upon the terms and conditions specified herein, such shares of stock, securities, other evidence of equity ownership or assets as may be issued or payable with respect to or in exchange for a number of outstanding Common Shares equal to the number of Common Shares immediately theretofore purchasable and receivable upon the exercise of this Warrant under this Section 4 had such reorganization, reclassification, consolidation, merger or sale not taken place, and in any such case appropriate provisions shall be made with respect to the rights and interests of the Holder to the end that the provisions hereof (including, without limitation, provisions for adjustments of the Exercise Price and of the number of Common Shares receivable upon the exercise of this Warrant) shall thereafter be applicable, as nearly as may be, in relation to any shares of stock, securities, other evidence of equity ownership or assets thereafter deliverable upon the exercise hereof (including an immediate adjustment, by reason of such consolidation or merger, of the Exercise Price to the value for the Common Shares reflected by the terms of such consolidation or merger if the value so reflected is less than the Exercise Price in effect immediately prior to such consolidation or merger).  Subject to the terms of this Warrant, in the event of a merger or consolidation of the Company with or into another corporation or other entity as a result of which the number of Common Shares of the surviving corporation or other entity issuable to holders of Common Stock of the Company, is greater or lesser than the number of Common Shares of the Company outstanding immediately prior to such merger or consolidation, then the Exercise Price in effect immediately prior to such merger or consolidation shall be adjusted in the same manner as though there were a subdivision or combination of the outstanding Common Shares of the Company. The Company shall not effect any such

4

consolidation, merger or sale, unless, prior to the consummation thereof, the successor corporation (if other than the Company) resulting from such consolidation or merger or the corporation purchasing such assets shall assume by written instrument executed and mailed or delivered to the Holder, the obligation to deliver to the Holder such shares of stock, securities, other evidence of equity ownership or assets as, in accordance with the foregoing provisions, the Holder may be entitled to receive or otherwise acquire.

(v)     In case at any time or from time to time the holders of the Common Shares (or any other securities at the time receivable upon the exercise of this Warrant) shall have received, or, on or after the record date fixed for the determination of eligible shareholders, shall have become entitled to receive, without payment therefor,

> (a) other or additional stock or other securities or property (other than cash) by way of dividend, or
>
> (b) any cash or other property paid or payable out of any source other than retained earnings (determined in accordance with generally accepted accounting principles),

(other than additional Common Shares adjustments in respect of which shall be covered by the terms of clause (ii) above), then and in each such case Holder, upon the exercise hereof shall be entitled to receive the amount of stock and other securities and property (including cash in the cases referred to in clause (2) above) which such Holder would hold on the date of such exercise if on the date of such dividend Holder had been the holder of record of the number of Common Shares (and/or other securities) then issuable upon exercise of this Warrant, giving effect to all adjustments called for hereunder.

As used herein, the following terms have the meanings provided:

> "ELOP/West Indian Space Agreement" means the Stock Purchase Agreement dated as of 11 November 1998 by and between ELOP and the Company.
>
> "Employee Stock Arrangements" means any employee stock option plan, purchase plan, employee benefit plan, employee contract or any similar benefit or incentive program or agreement.
>
> "High-Yield Offering" means the placement or sale of obligations of the Company evidenced by notes, bonds, debentures or similar instruments (including such instruments that may be convertible to equity securities) of the Company or any of its subsidiaries which yields gross proceeds to the Company (or such subsidiary) of not less than $50,000,000, at an interest

5

rate, at a maturity and on other terms and conditions (including being accompanied by equity securities of the Company to increase the yield to purchasers of such debt securities) agreed to by the Company based on the marketing efforts of Merrill, Lynch, Pierce, Fenner & Smith, Inc. (or any underwriter that may be substituted therefor in connection with the High-Yield Offering).

"Joint Venture Agreement" means the Joint Venture Agreement dated as of 11 November 1998, by and among IAI, CORE and the Company, as amended.

"Series A Preferred Stock" means the Series A Preferred Stock, par value $0.01 per share, of the Company.

"Series B Preferred Stock" means the Series B Preferred Stock, par value $0.01 per share, of the Company.

No fractional Common Shares shall be issued in connection with any exercise of this Warrant, but in lieu of such fractional shares, the Company shall make a cash payment therefor equal in amount to the product of the applicable fraction multiplied by the Exercise Price then in effect.

5. Notices. So long as this Warrant shall be outstanding, (i) if the Company shall pay any dividend or make any distribution upon the Common Shares or (ii) if the Company shall offer to the holders of Common Shares for subscription or purchase by them any share of or class of its capital stock or any other rights or (iii) if any capital reorganization of the Company, reclassification of the capital stock of the Company, consolidation or merger of the Company with or into another entity, sale, lease, or transfer of all or substantially all of the property and assets of the Company to another entity, or voluntary or involuntary dissolution, liquidation or winding up of the Company shall be effected, then in any such case, the Company shall cause to be mailed by certified mail to the Holder, at least fifteen days prior the record date specified in (x) or (y) below, as the case may be, a notice containing a brief description of the proposed action and stating the date on which (x) a record is to be taken for the purpose of such dividend, distribution or offer of rights, or (y) such reclassification, reorganization, consolidation, merger, conveyance, lease, transfer, sale dissolution, liquidation or winding up is to take place and the date, if any is to be fixed, as of which the holders of Common Stock or other securities shall be entitled to receive cash or other property deliverable upon such reclassification, reorganization, consolidation, merger, conveyance, lease, transfer, sale, dissolution, liquidation or winding up.

6. Transferability of Warrant. The transfer of this Warrant and the securities obtainable upon exercise hereof is subject to the conditions on transfer specified in the Shareholders' Agreement, dated as of September 27, 1999, by and among the Company and the shareholders signatory thereto (the "Shareholders' Agreement") and the Company reserves the right to refuse the transfer of such security until such conditions have been satisfied with respect to such transfer. This Warrant may not be sold, assigned, pledged,

6

encumbered or otherwise transferred unless the Ministry of Defense of Israel shall have determined, upon not less than thirty (30) business days' prior written notice, that the proposed sale, assignment, pledge, encumbrance or other transfer does not pose a national security risk to the State of Israel. The Company hereby agrees to use its reasonable efforts to assist Holder in obtaining any approval of the Ministry of Defense of Israel required by this Warrant and the Shareholders' Agreement.

7. No Rights as Shareholder. Holder shall have no rights as a shareholder of Common Shares subject to this Warrant until payment of the Exercise Price pursuant to Section 1 hereof and the delivery of such shares as herein provided. Holder and the Company agree and acknowledge that the Warrant Shares issued upon exercise of this Warrant are subject to the Shareholders' Agreement and the Registration Rights Agreement, dated as of September 27, 1999, by and among the Company and the shareholders of the Company signatory thereto.

8. Binding Effect. This Warrant shall be binding upon the successors of the parties hereto.

WEST INDIAN SPACE, LTD.

By: _____
Name: Michael L. Morris
Title: Chief Financial Officer