UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHEN M. WILSON, et al.,

        Plaintiffs,

  -against-

IMAGESAT INTERNATIONAL N.V., et al.,

        Defendants.

07 Civ. 6176 (LTS)(DME)

ECF CASE

**DECLARATION OF NATALIA HERCOT**

NATALIA STEINER declares as follows:

1. I am the President and Director of WIS Corp., Ltd, which is the General Partner of WIS Partners, L.P. ("WIS Partners"). WIS Partners is one of the Plaintiffs in this action. WIS Partners holds 243,121 shares of the common stock of Defendant ImageSat International, N.V. ("ImageSat") as well as bridge warrants entitling it to acquire another 26,000 shares of ImageSat common stock.

2. I respectfully submit this Declaration on behalf of WIS Partners, in opposition to the motions of various Defendants in this action to dismiss the Complaint for alleged lack of *in personam* jurisdiction, under the doctrine of *forum non conveniens*, and on other grounds. I am authorized to submit this Declaration on WIS Partners' behalf. The facts set forth herein are true based on my personal knowledge, a review of WIS Partners' books and records, and consultation with other WIS Partners personnel who participated in the events described.

3. WIS Partners is a Bermuda limited partnership. The general partner of WIS Partners, and holder of a 78.33% interest in WIS Partners, is WIS LP, Ltd., a



Bermuda limited liability company. WIS LP, Ltd. is wholly owned by Fairchild Technologies IP, Inc. ("Fairchild Technologies"), which is a wholly owned subsidiary of The Fairchild Corporation ("Fairchild"). Fairchild and Fairchild Technologies are Delaware corporations with their principal place of business in McLean, Virginia. Fairchild is a public company listed on the New York Stock Exchange (NYSE:FA). In addition to its principal office in Virginia, Fairchild maintains an office in Manhattan in which business of Fairchild and of its subsidiaries and affiliates, including WIS Partners, is frequently conducted.

4. The limited partners of WIS Partners are Y-ME, LLC, a Delaware limited liability company with its registered address in Delaware; WIS Corp., Ltd, a Bermuda corporation with its registered address in Bermuda; and Judas Azuelos, a citizen of France residing in Paris, France.

5. In 1998, the President and Chief Executive Officer of Fairchild, Jeffrey Steiner, was approached by representatives of a company known as West Indian Space, Ltd. ("West Indian Space"), the corporate predecessor to ImageSat, concerning the possibility of his and/or Fairchild's investing in West Indian Space.

6. In 1998 and 1999, a series of meetings were held in connection with the proposed Fairchild investment in West Indian Space. Various of these meetings were attended on behalf of Fairchild by Jeffrey Steiner, Chief Executive Officer and President; Major General (USAF ret.) H.R. Johnson, a then senior officer; Donald E. Miller, Esq., then Senior Vice President, Secretary, and General Counsel of Fairchild; Colin Cohen, Chief Financial Officer of Fairchild; and Pierre Olivier Benasahel, Chief Financial Officer of Fairchild. Each of these individuals, who are potential witnesses for Fairchild

2

in this action, resides either in New York or in the greater Washington, D.C. area (including northern Virginia and the adjoining Maryland suburbs).

7. These meetings included a series of presentations and due diligence sessions concerning West Indian Space's business plan, financial prospects, and governmental policy issues that needed to be addressed so that the company's plans to market Satellite Operating Partner (SOP) agreements to customer governments could succeed. The meetings took place almost entirely in New York, New York. In addition to the Fairchild representatives, other professionals involved in the transaction on behalf of ImageSat included attorneys from the New York offices of Milbank, Tweed, Hadley & McCloy, West Indian Space/ImageSat's counsel; accountants from the New York office of Arthur Andersen LLP; and investment bankers from Merrill Lynch, which was the investment bank retained by West Indian Space/ImageSat to solicit investments in West Indian Space and plan for an anticipated initial public offering (IPO) of ImageSat common stock.

8. Based on, among other things, the representations made orally and in writing at the meetings held in New York, Fairchild and certain affiliated individuals created WIS Partners as a vehicle for investing in West Indian Space. In September 1999, WIS Partners invested $4,615,932 in ImageSat and received shares of ImageSat common stock in return.

9. The balance of a total of $6,000,000 was invested by a company known as Financier Bagatelle, a wholly owned subsidiary of Euris, which is a French company based in Paris. This portion of the investment, and a combined commitment to assist the company in identifying investors for an additional $20,000,000 in private equity capital,



was fully coordinated among representatives of Fairchild and Euris in New York, New York. Like WIS Partners, Financier Bagatelle also closed its initial ImageSat investment in New York.

10. More than 77% of the funds raised for WIS Partners' investment in ImageSat were obtained from The Fairchild Corporation. Insofar as Fairchild and the other members of WIS Partners were concerned, WIS Partners could have been set up as a United States (Delaware, New York, or Virginia) entity. However, because of the nature of ImageSat's business, the company wished to emphasize the international diversity of its investors and affiliates, and accordingly, Fairchild was requested to make its investment through a non-United States vehicle. It was primarily for this reason that WIS Partners was established as a Bermuda limited partnership. For formal legal purposes, WIS Partners is headquartered in Bermuda, but its sole function as an entity is to hold stock and warrants in ImageSat. Company decisions (such as the decision to participate as a Plaintiff in this action) are made at the Fairchild offices is New York, New York and McLean, Virginia.

11. ImageSat's management promoted the investment opportunity that led to the formation of WIS Partners directly to the investors. Presentations and financial information were supported by senior IAI and ElOp executives as well as Arthur Andersen in New York. Defendants Moshe Keret, Izhak Nissan, Yehoshua Eldar, and Jacob Weiss on behalf of IAI and Jacob Toren and Joseph Ackerman on behalf of ElOp, among others, attested to the accuracy of the representations that were made to WIS Partners during its consideration of our investment decision.

12. It is worthy of note that immediately after the ill-fated investments of WIS

Partners in late 1999, and concurrent with the closing process of the follow-on Pegasus Preferred Series C and Series B investments, Jacob Weiss, then Corporate Vice President and General Counsel of IAI, took over as CEO of ImageSat. Weiss was then succeeded by Menashe Broder, the former Deputy General Counsel and Corporate Vice President for International Marketing of IAI, who served as CEO of ImageSat between 2002 and 2005. IAI sought to discredit Broder before investors because he challenged the independent and competitive commercialization strategies of IAI and ElOp announced at or about the time of the Paris Air Show in 2005, and was fired by the Board thereafter. He was quickly replaced by then ImageSat Director and the Deputy Chief Executive Officer of IAI, Shimon Eckhaus. All three of these former senior executives of IAI were hand-picked by the same senior IAI and ElOp executives that support the misleading investment solicitations made to WIS Partners and that dominated the ImageSat Board of Directors, which was chaired throughout the period of these appointments and replacements by Moshe Keret, the Chief Executive Officer of IAI. Currently, Shimon Eckhaus, Itzhak Nissan, and Joseph Ackerman are the CEOs of ImageSat, IAI, and Elbit Systems respectively, and Yehoshua Eldar ascended with Nissan to become Corporate Vice President of IAI, directly responsible for the relationship between IAI Corporate and ImageSat.

    13.    Although the asset value contributed by IAI and ElOp for their founders' shares was reflected on the books of the new company at $16 million – which was equal to the combined cash investments of Core, WIS Partners, and Financier Bagatelle for an equal number of founders' shares – the company's exclusive right to commercialize Israeli light military satellite technology was the primary inducement for WIS Partners to

invest. Jacob Weiss and Jacob Toren represented the underlying investments in the development of the technology at "hundreds of millions of dollars." However, Weiss explained that IAI was simply not experienced or properly organized to pursue the commercial exploitation of its world-renowned technical achievements, and needed an international vehicle to sell services that IAI was not in a position to sell directly. He emphasized the benefits of creating an international vehicle to sell surveillance satellite products and services, as opposed to direct sales by IAI. He characterized ImageSat as a "model" for the future commercialization of Israeli defense industry technology and even the eventual privatization of the state-owned defense industries.

14. Between September 1999 and July 2000, West Indian Space continued its efforts to locate additional investors. Pegasus Capital Advisors ("Pegasus"), a private equity firm known to Mr. Jeffrey Steiner who was then the CEO and Chairman of Fairchild, with headquarters in New York City and Connecticut, and funded through the creation of two institutional investment funds by Merrill Lynch, was introduced to the Company. Pegasus subsequently agreed to become a substantial investor. Separately, an entity known as Loyd's Aerospace (Invest) Ltd. (which is now known as Harbinger and is the Intervenor Plaintiff in this case), which was introduced to ImageSat by Mr. Steiner, agreed to acquire a portion of the ImageSat shares that WIS Partners had previously acquired and to participate in the follow-on $20,000,000 "Series B" Preferred securities financing. ImageSat agreed to transfer bridge warrants to WIS Partners as compensation for bringing in this additional Series B investment and giving up certain of its common shares. Many more meetings were held in New York at which participation by these and other new investors was discussed.

15. A series of transactions, including the Pegasus investment and the issuance of bridge warrants to WIS Partners, closed simultaneously at the end of July 2000 in the New York, New York offices of Milbank Tweed (counsel for ImageSat) and McDermott, Will & Emery (counsel for Pegasus). WIS Partners representatives Jeffrey Steiner, Donald Miller, Judas Azuelos, and Jean-Mehdi Azuelos attended various negotiations and meetings associated with the closing on behalf of WIS Partners. Also present were certain of the individual Defendants in this action including Jacob Weiss (on behalf of ImageSat but also a senior officer of IAI), Yehoshua Eldar (on behalf of IAI), and Jacob Toren and Joseph Ackerman (on behalf of ElOp/Elbit).

16. At the closing on July 25, 2000, a Securityholders Agreement was entered into among ImageSat, IAI, Electro-Optics Industries Ltd. (a corporate affiliate of or predecessor to defendant Elbit Systems, Inc.), WIS Partners, intervening Plaintiff in this action Loyd's Invest (Aerospace) Ltd. (now known as Harbinger), and several other parties. This Agreement expressly provides:

> Section 4.4 **Governing Law; Jurisdiction.** (a) **This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York without regard to principles of conflicts of law.**
>
> (b) **Each party hereto (other than the Company) hereby irrevocably submits to the exclusive jurisdiction, and the Company hereby submits to the non-exclusive jurisdiction, of the courts of the city of New York, State of New York in any action, suit or proceeding arising in connection with this Agreement, and agrees that any such action, suit or proceeding shall be brought only in such court (and waives any objection based on forum non conveniens or any other objection to venue therein).** Service of process upon any party hereto in any action, suit or proceeding arising in connection with this Agreement may be made anywhere in the world.

(Emphasis added). I understand that the inclusion of New York choice-of-law and

7

choice-of-forum provisions in this agreement was consistent with the earlier Joint Venture Agreements and other contractual documents going back to the origination of the Joint Venture in 1994.

17. Several of the claims that Plaintiffs, including WIS Partners, have asserted in the Complaint "aris[e] in connection with th[e] [Securityholders] Agreement" and are directly governed by ImageSat's, IAI's, and Elbit's consent to the jurisdiction (and in the case of IAI and Elbit, the *exclusive* jurisdiction) of the courts located in New York and the associated waiver of any defense based upon *forum non conveniens*. For example, Section 3.1 of the Securityholders Agreement provides that the Company is to deliver to all of the securityholder parties (including WIS Partners) on a monthly, quarterly, and annual basis, financial statements fairly presenting ImageSat's financial position in accordance with GAAP. As alleged in the Complaint, however, ImageSat's financial statements over the past several years have contained numerous errors and omissions in connection with, among other things, the accounting treatment of the EROS B/C satellite.

18. Additionally, Section 3.6(a)(v) provides that the Board of Directors of ImageSat shall contain two members who shall be "independent of Pegasus, the Company, and its Securityholders." As alleged in the Complaint, ImageSat has failed to designate two independent individuals as directors, despite repeated demands that it do so by WIS Partners and other stakeholders, a fact raised in and relevant to several of the claims for relief asserted in the Complaint. Thus, the Complaint contains allegations arising in connection with the Securityholders Agreement and, even to the extent the Complaint's allegations do not arise under that agreement, the willingness of ImageSat, IAI, and Elbit to enter into such an agreement is, at a minimum, relevant to whether it

would be equitable to dismiss the Complaint that WIS Partners has brought against them because they could not reasonably have anticipated being sued in New York and/or under the doctrine of *forum non conveniens*. Indeed, it was always WIS Partners' understanding that any and all disputes arising out of this matter would be resolved in New York (whether through Board debate, mediation, or litigation should that become necessary).

19. In their joint motion to dismiss the Complaint in this action, Defendants contend that this Court is not a convenient forum for the litigation of this action because most of the Plaintiffs, including WIS Partners, are located outside New York. With respect to WIS Partners, this allegation is misleading and places form over substance. As set forth above, the ultimate beneficial owner of more than 75% of the equity in WIS Partners is Fairchild, an American corporation, listed on the New York Stock Exchange, with offices in Virginia and New York. The witnesses who have relevant facts concerning this matter and might be called to testify regarding WIS Partners' investment are all located in New York, Virginia, or elsewhere in the United States. It will be substantially more convenient to WIS Partners and to each of these individuals, several of whom have left Fairchild's employ and would have to be called as non-party witnesses, for this action to be litigated in the United States and specifically in the Southern District of New York as opposed to Israel, Curacao, or any other location. Under all the circumstances, and as discussed in more detail in the accompanying memorandum of law, this Court represents the appropriate forum for litigation of this action.

20. The facts relating to WIS Partners' investment in ImageSat, set forth above, should make it clear that even apart from the provisions of the Securityholders



Agreement, a New York court represents the appropriate location in which this case should proceed. ImageSat representatives, including several of the individual defendants, came to New York and asked Fairchild, a United States company with an office in New York, to invest millions of dollars in needed funds in the company. Fairchild and certain affiliated persons agreed to do so. Several months later, as additional capital was raised from other investors (most of which was also derived from New York-based financial institutions), a closing took place in New York, and 26,000 bridge warrants were issued to WIS Partners in New York. In short, WIS Partners made a New York-based investment of United States money to an international company that had voluntarily chosen, from all the financial markets in the world, to seek capital from United States and specifically New York financial institutions.

21.  Before and after the closing in July 2000, WIS Partners was advised that the terms of all bridge warrants and options issued to various investors in and employees of ImageSat, including WIS Partners, were the same. The conversion price for the warrants, WIS Partners was told, was the same for all participants and all the warrants would be valid for a period of ten (10) years from the date of the closing, i.e., until July 2010. We later learned that due to an unintended scrivener's error at or around the time of the closing (at which a massive number of different documents were still being negotiated and executed, with many documents being signed on signature pages that were not physically annexed to the underlying documents), and as discussed in further detail in the Complaint, the bridge warrants issued to WIS Partners and certain other Plaintiffs incorrectly recited the term of the bridge warrants as five (5) years rather than ten years. ImageSat has subsequently seized upon this error in typing up the warrants so as to claim

that the warrants are valid for five years only. This is highly inequitable conduct and, at a minimum, the Court should allow discovery to proceed on WIS Partners' and other Plaintiffs' claims for reformation (or, alternatively, fraud) based on the misdating of the warrants.

22. On behalf of WIS Partners, I ask the Court to deny Defendants' motions to dismiss and to allow this action to proceed to full merits discovery and trial.

I declare under penalty of perjury that the foregoing is true and correct. Executed at PARIS, FRANCE this 29TH day of January, 2008.

_____
[NAME OF SIGNER]
NATALIA HORLAT