UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN M. WILSON, *et al.*, | 07 Civ. 6176 (LTS)(DME) |
| Plaintiffs, | ECF CASE |
| -against- | **DECLARATION OF HAIM YIFRAH** |
| IMAGESAT INTERNATIONAL N.V., *et al.*, | |
| Defendants. | |

HAIM YIFRAH declares as follows:

1. I am one of the Plaintiffs in this action. I hold options to acquire 37,500 shares of common stock in Defendant ImageSat International N.V. ("ImageSat"). I respectfully submit this Declaration in opposition to the motions of various Defendants in this action to dismiss the Complaint for alleged lack of *in personam* jurisdiction, under the doctrine of *forum non conveniens*, and on other grounds.

2. I am a citizen of Israel. At present, I travel worldwide as a consultant and spend a substantial part of my time in South America. I also spend significant time in Canada, where my wife was born and where my daughter and her family, as well as my wife's family, still reside.

3. I was the founding Vice President for Defense Systems of ImageSat and its predecessor, West Indian Space Ltd. My ImageSat stock options were conferred upon me as part of my compensation for years of work for ImageSat in this senior executive position. I served in this capacity from 1999, immediately after my retirement as a Brigadier General in the Israeli Defense Forces (IDF), until 2006. In my final active-duty

IDF assignment, I was responsible for the implementation of the military Ofeq satellite program as Chief of the Intelligence Corps.

4.      In 2006, I was informed by Defendant Shimon Eckhaus that the terms of my employment at ImageSat were being unilaterally modified by the company. Because this was a breach of my employment contract, I resigned and requested severance pay as provided under my contract. Mr. Eckhaus refused to pay me and told me that if I did not wish to accept the changes I could sue the company.

5.      At the time of my resignation, I notified ImageSat, through a letter enclosing my personal check, that I wished to exercise an option to purchase one share of ImageSat stock. I did this to ensure that I would continue to be informed with respect to my substantial financial interest in ImageSat.

6.      In 1998, at the request of IAI and with the permission of the Israeli Ministry of Defense (IMOD), I participated in the "due diligence" kick-off meetings in Tel Aviv conducted by a large delegation from Merrill Lynch's office in New York. In addition to myself, all relevant members of the senior managements of Defendants IAI, ElOp (now Elbit), and ImageSat participated in this full week of intensive meetings, including Defendants Keret, Nissan, Eldar, Weiss, Federman, Toren, and Ackerman.

7.      After I became employed as one of the most senior officers of West Indian Space and later of ImageSat, in 1999 and 2000 I made several trips to New York in connection with my job responsibilities. The primary purpose of these trips was to meet with potential investors in the company, to support investor presentations, and to answer due diligence questions from representatives of the investors. The same Merrill Lynch team with whom I met in Tel Aviv in 1998, and a substantial majority of the actual or

proposed investors, were based in New York or elsewhere in the United States. These investors included Plaintiff WIS Partners Ltd., of which The Fairchild Corporation, a United States company listed on the New York State Exchange, was the principal owner, as well as affiliates of Pegasus Capital Advisors, a private equity firm headquartered in New York and Connecticut, among many others.

8. Many of these meetings took place in New York at the offices of Pegasus and at the offices of various New York professional advisors for the company. Among those representing the company at these meetings were Plaintiff Stephen Wilson, the founding President and Chief Executive Officer, and Plaintiff Michael Morris, the founding Chief Financial Officer, both of whom are United States citizens and residents.

9. I understand that in their joint motion to dismiss the Complaint in this action, Defendants contend that this Court is not a convenient forum for the litigation of this action because a majority of the Plaintiffs are located outside New York. The fact is, however, that a majority of my fellow Plaintiffs – the founding members of ImageSat's management team together with a number of financial investors in the company, all of whom have been victimized by Defendants' wrongful actions – have substantial contacts with the United States. As for myself, although I am a citizen of Israel, I spend significant time travelling to North and South America, frequently through New York City, and I am represented in this matter by New York attorneys who have devoted more than one year of time and effort toward learning the background and history of this matter. As detailed in the other Declarations submitted herewith and the accompanying memorandum of law, a substantial portion of the facts and circumstances surrounding this litigation, including but not limited to the solicitation and investment of the funds

invested in ImageSat, took place in New York and is governed by a series of agreements providing for the parties' voluntary choice of New York law to govern any disputes and/or a New York forum in which to adjudicate them.

10. I also understand that Defendants contend that my claims against them should be dismissed for lack of standing, based on a legal argument that an owner of stock options in a company rather than of common stock may not assert claims for breach of fiduciary duty or other claims. I consider it shocking that Defendants would contend that they could effectively steal tens of millions of dollars from ImageSat and that I, as an individual who accepted stock options in good faith as part of my compensation for high-level executive work for the company, would have no redress. In any event, however, Defendants' depiction of me as the holder of options only is inequitable. As described above, at the time I resigned from ImageSat, I wrote to ImageSat to exercise my option to redeem one share of ImageSat common stock and tendered the exercise price, for the express purpose of making myself a stockholder and to enjoy the rights of a stockholder to which I believe I am entitled. After accepting and cashing my check and informing me that the paperwork had been passed on to ImageSat's New York counsel for processing, ImageSat subsequently informed me, without any justification or explanation, that it had decided to refuse to honor my tender or to issue the corresponding share of stock to me. I do not believe that ImageSat and its directors can properly refuse to honor my valid attempt to convert a stock option into stock and then seek to deny me standing in this action because I am not a stockholder.

11. I believe that this action should be litigated in this Court in New York and ask the Court to retain and exercise its jurisdiction over this action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed at Ramat Hasharon, Israel this _22___ day of January, 2008.

_____
HAIM YIFRAH