UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN M. WILSON, *et al.*, <br><br> Plaintiffs, <br><br> -against- <br><br> IMAGESAT INTERNATIONAL N.V., *et al.*, <br><br> Defendants. | 07 Civ. 6176 (LTS)(DME) <br><br> ECF CASE <br><br> **DECLARATION OF <br> ROBERT W. MILLER** |

ROBERT W. MILLER declares as follows:

1. I am the President and sole owner of TopDown Partners, LLC ("TopDown"), one of the Plaintiffs in this action. TopDown is the owner of 4,987 shares of common stock of defendant ImageSat International N.V. ("ImageSat"). I respectfully submit this Declaration in opposition to the motions of various Defendants to dismiss the Complaint.

2. I am a citizen of the United States and of the State of California and have been at all times relevant hereto. I am not a citizen of any other country. TopDown is a Nevada limited liability company of which, as noted above, I am the sole owner.

3. I was one of the founding directors of, and one of the largest early investors in, Core Software Technology ("Core"), a California corporation. In 1994, Core and defendant Israel Aircraft Industries Ltd., now Israel Aerospace Industries Ltd. ("IAI") entered into a joint venture. The joint venture was later incorporated as West Indian Space, Ltd. ("West Indian Space"), the corporate predecessor of ImageSat.

4. Although Core was a relatively small entrepreneurial company itself, as

one of its three directors (together with Plaintiffs Stephen Wilson and Dr. Joel Levine), I supported Core's investment commitment to the Joint Venture that would ultimately become West Indian Space Ltd. and then ImageSat.

5. During the 1990's, I invested approximately $750,000 in Core, both personally and through a California corporation known as Athanor Group, Inc. Much of this money was invested for the express purpose of being immediately re-invested as part of Core's contribution to West Indian Space. All of the meetings at which I discussed these investments and West Indian Space's business plan and financial prospects took place in the United States, some in New York and some in California.

6. My ImageSat shares were distributed to me by plaintiff Stephen Wilson in New York, New York in 2000 in appreciation for my having participated in the earliest and riskiest investments in what became ImageSat during the crucial start-up and development stages when the Company was in urgent need of capital.

7. As the independent directors of Core, Dr. Joel Levine and I insisted that IAI formalize the Joint Venture, first through a series of Joint Venture Agreements and subsequently by incorporation. Because Core was the only investor between 1994 and 1998, eventually investing $10 million in equity and an additional $1.2 million in bridge debt, we insisted that the agreements be subject to and that our investors would be protected by U.S. legal jurisdiction. In the earliest joint venture negotiations during 1994-95, we agreed to accept New York (as opposed to California) law and jurisdiction to govern the agreements as a compromise proposed by IAI.

8. In their joint motion to dismiss the Complaint in this action, Defendants contend that this Court is not a convenient forum for the litigation of this action because,

among other things, a majority of the Plaintiffs are located outside New York. However, although I am located in California rather than New York, I met with Mr. Wilson in New York in connection with the earliest investment by U.S. investors in the Joint Venture that became West Indian Space Ltd. and later ImageSat, and I became one of the earliest significant cash investors in the company based on those meetings. Also, I am a United States citizen and should be entitled to have my claims arising from my American investments in ImageSat heard in a United States court. The Israeli Defendants in this case solicited Core's and my investments in the United States based on explicit commitments to me that such investments would enjoy the protection of U.S. law, commitments that should substantially supersede considerations such as what is easier or more convenient for the Defendants.

9. Moreover, from my perspective, it would be substantially easier for me to litigate this action in a court of the United States rather than in Israel, Curacao, or any other location, and I am represented in this matter by New York attorneys who have devoted more than one year of time and effort toward learning the background and history of this matter.

10. I ask the Court to deny Defendants' motions to dismiss and to allow this action to proceed to full merits discovery and trial.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Pasadena, California this 25 day of January, 2008.

_____
ROBERT W. MILLER

3