UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEPHEN M. WILSON, *et al.*,

               Plaintiffs,

       -against-

IMAGESAT INTERNATIONAL N.V.,
*et al.*,

               Defendants.

07 Civ. 6176 (LTS)(DME)

ECF CASE

**AFFIDAVIT OF**
**YORAM GINACH**

---

COUNTY OF NEW YORK  )
                     )    ss.:
STATE OF NEW YORK    )

       Yoram Ginach makes the following statements under penalty of perjury:

       1.      I am a director of plaintiff Harbinger International Holdings, S.A.. ("Harbinger").[1] I respectfully submit this affidavit on behalf of Harbinger, in opposition to the motions of various Defendants in this action to dismiss the Complaint for alleged lack of *in personam* jurisdiction, under the doctrine of *forum non conveniens*, and on other grounds.

       2.      Harbinger holds 33,682 shares of the common stock of Defendant ImageSat International, N.V. ("ImageSat")[2] as well as 151,043 preferred B shares of ImageSat, which entitles Harbinger to receive 9% interest per annum compounded annually. Both classes of shares are hereinafter referred to as the "Shares."

       3.      Harbinger is incorporated under the laws of the Territories of the British Virgin Islands. It was specifically established for the acquisition of the Shares. It maintains an office at One Penn Plaza, Suite 2527, New York, New York 10119, and its address at the time of the

---

[1] Harbinger International Holdings, S.A. was formerly known as Loyd's Invest (Aerospace) Ltd.
[2] ImageSat International, N.V. was formerly known as West Indian Space.

Closing of the acquisition of the Shares was 99 Park Avenue, Suite 1600, New York, New York 10016. All communications between ImageSat and Harbinger by telephone, mail, email and courier were sent to Harbinger's address in New York, and all meetings in person between representatives of ImageSat and Harbinger were held in Harbinger's office or in other locations in Manhattan.

4.      In early 2000, Jeffrey Steiner of WIS Partners, one of the Plaintiffs in this action, introduced the opportunity to invest in ImageSat to Harbinger. This initial introduction was followed by meetings in the first half of 2000 held in New York between representatives of defendant Israel Aircraft Industries Ltd. ("IAI"), one of ImageSat's two largest investors, including defendant Jacob Weiss, and representatives of Harbinger, including myself. In those meetings the details of the investment by Harbinger into ImageSat were agreed upon.

5.      These meetings in New York included a series of presentations and due diligence sessions concerning ImageSat's business plan, financial prospects, and governmental policy issues that needed to be addressed so that the company could successfully market Satellite Operating Partner (SOP) agreements to governments. ImageSat's management promoted the investment opportunity that led to the formation of Harbinger directly to the investors. Senior IAI executives made presentations and disclosed financial information. In one of those meetings, Jacob Weiss on behalf of IAI attested to the accuracy of the representations that were made to Harbinger during our consideration of our investment decision.

6.      The ImageSat representatives made several representations to us during the time they solicited our investment into ImageSat. Mr. Weiss also represented that ImageSat would have the exclusive right to commercialize Israeli light military satellite technology, which was the primary inducement for us to invest. At one of those meetings held in my office in New

2

York in 2000. Mr. Weiss also represented the underlying investments in the development of the technology at "hundreds of millions of dollars" and explained that IAI was simply not experienced or properly organized to pursue the commercial exploitation of its world-renowned technical achievements.    He characterized ImageSat as a "model" for the future commercialization of Israeli defense industry technology and even the eventual privatization of the state-owned defense industries.

7.    Following the meeting with Jacob Weiss. I spoke with the principals of Harbinger.  Based on the representations made at the meetings held in New York. Harbinger agreed to invest $3,324,683 in ImageSat and received the Shares.

8.    A series of transactions. including the investment by Pegasus Capital Advisors. L.P. ("Pegasus"). ImageSat's main creditor, and the issuance of the Shares to Harbinger, closed simultaneously at the end of July 2000 in the New York, New York offices of Milbank Tweed (counsel for ImageSat) and McDermott. Will & Emery (counsel for Pegasus).  I attended the closing on behalf of Harbinger.  The individual Defendants in this action, including Jacob Weiss (on behalf of ImageSat but also as a senior officer of IAI), Yehoshua Eldar (on behalf of IAI). and Jacob Toren and Joseph Ackerman (on behalf of ElOp/Elbit), all attended the closing in New York as well.

9.    At the closing on July 25, 2000, a Securityholders Agreement was entered into among ImageSat, IAI, El-Op, Harbinger and several other parties.  This Agreement expressly provides:

> **Section 4.4    Governing Law; Jurisdiction.  (a) This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York without regard to principles of conflicts of law.**
>
> **(b) Each party hereto (other than the Company) hereby irrevocably submits to the exclusive jurisdiction, and the Company hereby submits to the**

3

> non-exclusive jurisdiction, of the courts of the city of New York, State of New
> York in any action, suit or proceeding arising in connection with this
> Agreement, and agrees that any such action, suit or proceeding shall be
> brought only in such court (and waives any objection based on <u>forum non
> conveniens</u> or any other objection to venue therein). Service of process upon
> any party hereto in any action, suit or proceeding arising in connection with this
> Agreement may be made anywhere in the world. [Emphasis added.]

(Complaint ¶ 69.) The inclusion of New York choice-of-law and choice-of-forum provisions in

this agreement was consistent with the earlier Joint Venture Agreements and other contractual

documents going back to the origination of the Joint Venture in 1994.

10.    After the closing in July 2000. I met with ImageSat's representatives on several

occasions in New York. I met Mr. Weiss at my office on May 10. 2001 and July 10, 2001. I

also met defendant Shimon Eckhaus, an ImageSat representative. at my office several times.

including on August 28, 2006. and at his hotel once. Mr. Weiss and Mr. Eckhaus and I also met

together for a breakfast meeting at The Brasserie restaurant on 53rd Street in Manhattan on

November 2. 2005. I also met Mr. Eckhaus and ImageSat's in-house counsel in my office in

New York on January 24, 2007.

11.    The facts relating to Harbinger' investment in ImageSat, set forth above. should

make it clear that even apart from the provisions of the Securityholders Agreement. a New York

court represents the appropriate location in which this case should proceed.    ImageSat

representatives. including several of the individual defendants, came to New York and asked

Harbinger, a company with an office in New York, to invest millions of dollars in needed funds

in the company. Harbinger agreed to do so. Several months later a closing took place in New

York, and the Shares were issued to Harbinger in New York.

12.    Several of the claims that Plaintiffs, including Harbinger. have asserted in the

Complaint "aris[e] in connection with th[e] [Securityholders] Agreement." Thus. pursuant to

4

the Securityholders Agreement, ImageSat, IAI and Elbit have consented to the jurisdiction (and in the case of IAI and Elbit, the *exclusive* jurisdiction) of the courts located in New York and the associated waiver of any defense based upon *forum non conveniens*.

13.      For example, Section 3.1 of the Securityholders Agreement provides that the Company is to deliver to all of the securityholder parties (including Harbinger) on a monthly, quarterly, and annual basis, financial statements which fairly present ImageSat's financial position in accordance with GAAP. As alleged in the Complaint, however, ImageSat's financial statements over the past several years have contained numerous errors and omissions in connection with, among other things, the accounting treatment of the EROS B/C satellite. (Complaint ¶¶ 101, 104-07, 112, 142-43, 157-59. 211. 238, 250, 298. 310.)

14.      Additionally, Section 3.6(a)(v) provides that the Board of Directors of ImageSat shall contain two members who shall be "independent of Pegasus, the Company, and its Securityholders."    As alleged in the Complaint, ImageSat has failed to designate two independent individuals as directors, despite repeated demands that it do so, a fact raised in and relevant to several of the claims for relief asserted in the Complaint. (Complaint ¶¶ 75, 169. 211, 220. 230. 238, 279. 312, 382.) Thus. the Complaint contains allegations arising in connection with the Securityholders Agreement. Furthermore. the willingness of ImageSat, IAI, and Elbit to enter into such an agreement demonstrates that they anticipated being sued in New York, and they never questioned that it was a convenient forum for them.

15.      In their joint motion to dismiss the Complaint in this action, Defendants contend that this Court is not a convenient forum for the litigation of this action because most of the Plaintiffs. including Harbinger, are located outside New York. With respect to Harbinger, this allegation is misleading. As set forth above, Harbinger has an office in New York. I am the

witness who has knowledge of the relevant facts concerning this matter and I reside in New York. It is substantially more convenient for Harbinger to litigate its claims here in the Southern District of New York than in Israel, Curacao, or any other location. Under all the circumstances, and as discussed in more detail in the accompanying memorandum of law, this Court represents the appropriate forum for litigation of this action.

16.     Harbinger made a New York-based investment of United States money to an international company that had voluntarily chosen, from all the financial markets in the world, to seek capital from United States and specifically New York financial institutions.

17.     On behalf of Harbinger, I respectfully request the Court to deny Defendants' motions to dismiss and to allow this action to proceed to full merits discovery and trial.

Dated: New York, New York
       January 29, 2008

YORAM GINACH

Sworn to before me
on January 29, 2008

Notary Public

SHIRA YAEL ROSENFELD
Notary Public, State Of New York
No. 02RO6053576
Qualified In New York County
Commission Expires January 16, 20 11

6