UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHEN M. WILSON, *et al.*,

                Plaintiffs,

-against-

IMAGESAT INTERNATIONAL N.V., *et al.*,

                Defendants.

07 Civ. 6176 (LTS)(DME)

ECF CASE

**DECLARATION OF PHILIP SILLER**

PHILIP SILLER declares as follows:

1.    I am an attorney in Toronto, Ontario, Canada. I act as counsel for three Plaintiffs in this action: Hexagram & Co. ("Hexagram"), Mr. Albert Reichmann, and Polybutes Corporation ("Polybutes"). Collectively, Hexagram, Mr. Reichmann, and Polybutes hold bridge warrants entitling them to acquire a total of 30,000 shares of common stock of defendant ImageSat International, N.V.

2.    I respectfully submit this Declaration in opposition to the motions of various Defendants to dismiss the Complaint for alleged lack of *in personam* jurisdiction, under the doctrine of *forum non conveniens*, and on other grounds.

3.    I am a citizen of the United States and Canada. I currently reside in New York, New York.

4.    Hexagram is an Ontario, Canada corporation with its principal place of business in Toronto, Ontario, Canada. Its official corporate name is Hexagram International Limited. The beneficial owners of Hexagram are all citizens of the United States and Canada. The persons who will be witnesses with regard to Hexagram's

investment in ImageSat, are located in New York, New York.

5. Albert Reichmann is a citizen of Canada. He is, and at all times material hereto has been, a resident of Ontario, Canada. He travels to New York City frequently.

6. Polybutes is a British Virgin Islands corporation with its principal place of business in Bermuda. The persons who will be witnesses in this action with regard to Polybutes's investment in ImageSat include Canadian citizens located in Bermuda who travel frequently to Toronto, Canada and occasionally to New York, New York.

7. In 2000, Mr. Reichmann was approached by representatives of Core Software Technology ("Core"), a California corporation, and asked to provide capital to Core for further investment by Core in West Indian Space, Ltd. ("West Indian Space"), the corporate predecessor to ImageSat, in the form of bridge financing. Mr. Reichmann asked me to represent him in meetings concerning this subject. In meetings with representatives and officers of Core, I was informed that Core and Defendant Israel Aerospace Industries Ltd., then known as Israel Aircraft Industries Ltd. ("IAI"), were joint venture partners in West Indian Space. When the representatives and officers of Core learned that Hexagram made investments in private companies, they proposed to Hexagram that it provide capital to Core for the same purpose.

8. Mr. Reichmann agreed to invest $250,000, and Hexagram agreed to invest $500,000, in Core for the purpose of providing the bridge financing to West Indian Space. In connection therewith, presentations were made to me in New York, New York and Toronto, Ontario, Canada as the representative of Mr. Reichmann and Hexagram, regarding West Indian Space's business plan and financial prospects. We understood that the bridge financing that West Indian Space was seeking to raise was essential to its

ability to carry out critical ongoing launch preparations for the company's first "EROS A" satellite while it was attempting to close a substantial financing through a primarily New York-based group of institutional investors. The likelihood of that financing was a material factor in the decision of Mr. Reichmann and Hexagram to invest.

9. In connection with Mr. Reichmann's and Hexagram's investments, Core agreed to issue to Mr. Reichmann, Hexagram, or their designees, bridge warrants that Core was to receive from West Indian Space in connection with the investment, which warrants conferred the right to acquire common stock in West Indian Space. As one of the transactions in pursuance of these rights, in 2002, at my request on behalf of my clients, ImageSat issued bridge warrants in favor of Hexagram providing Hexagram with the right to convert the warrant into a total of 25,000 shares of ImageSat common stock.

10. We had originally been assured that the bridge warrants would be valid for a term of ten (10) years, consistent with the terms of all the other stock options and bridge warrants that were issued in connection with the 2000 transactions by which ImageSat was capitalized. However, the warrants as issued provided for a shorter term. Upon learning that the warrants were going to expire before they had any value, I engaged in discussions with senior personnel at ImageSat, including the CEO and President of ImageSat as well as the company's General Counsel, with whom Mr. Reichmann and I met to obtain satisfaction in connection with this issue. We were led by these ImageSat representatives to believe that the problem was going to be addressed, which it ultimately was not.

11. In their joint motion to dismiss the Complaint in this action, Defendants contend that this Court is not a convenient forum for this litigation because a majority of

the Plaintiffs are located outside New York. As applied to Hexagram, Mr. Reichmann, and Polybutes, this contention is misleading. Although these Plaintiffs are not residents of New York, Core and West Indian Space representatives solicited these investments from my clients in New York. Additionally, the witnesses who would testify in this action with respect to these Plaintiffs' activities and investments are principally located in New York, New York and Toronto, Ontario, Canada. Toronto is located only a short distance by air from New York and these individuals visit New York City frequently. It would clearly be far more convenient for my clients for this case to proceed in the Southern District of New York rather than in a court located in Israel, Curacao, or elsewhere outside North America. Moreover, Plaintiffs are represented by counsel in New York who have been engaged for more than one year in learning the entire history of this matter.

12.   Defendants also contend that as holders of warrants to acquire ImageSat common stock, Hexagram, Mr. Reichmann, and Polybutes lack standing to assert claims against Defendants. However, when these Plaintiffs indirectly invested in ImageSat in return for the issuance of bridge warrants convertible into ImageSat common stock, it was surely understood by all concerned that ImageSat and the other Defendants would not act and neglect to act in such a way as to depress value of ImageSat's common stock, thereby impairing the value of the bridge warrants. In fact, the Complaint alleges in over 100 pages of detail that, among other things, certain Defendants have *intentionally* acted in such a way as to minimize, rather than maximize, the value of ImageSat securities. To hold that warrant holders and optionholders lack standing to assert claims against ImageSat and the other Defendants under this scenario would leave these Plaintiffs with

no viable remedy for Defendants' unwinding and destruction of the company in which Mr. Reichmann and Hexagram were induced to invest.

13.   Hexagram, Mr. Reichmann, and Polybutes ask the Court to deny Defendants' motions to dismiss and to allow this action to proceed to full merits discovery and trial.

I declare under penalty of perjury that the foregoing is true and correct. Executed at New York, New York this 26th day of January, 2008.

_____
PHILIP SILLER