UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

**STEPHEN M. WILSON,** *et al.*,

    Plaintiffs,

-against-

**IMAGESAT INTERNATIONAL N.V.,** *et al.*,

    Defendants.

**DECLARATION OF**

**FRANK KUNNEMAN**

I, FRANK KUNNEMAN, declare as follows:

## I.  Background

  1.  I am a member of the bar of the Netherlands Antilles since 1999 when I joined VanEps Kunneman VanDoorne in Curaçao. I obtained my law degree at the University of Amsterdam in 1979. In 1986 I obtained a doctorate (Ph.D.) in law at the same university and was appointed senior lecturer. I became senior lecturer at the University of the Netherlands Antilles, Curaçao, in 1989 and full professor of Civil Law in 1994. I was Dean of the Law School for several years. I am also an arbitrator. I was a deputy member of the Joint Court of Justice of the Netherlands Antilles and Aruba, until I joined VanEps Kunneman VanDoorne in 1999.



2.      Furthermore, I am a supervisory director at two of the largest Netherlands Antilles entities; Maduro & Curiel's Bank N.V. and Integrated Utility Holding N.V. (Aqualectra). In August 2007 I was sworn in as Deputy Chairman of the Advisory Council of the Netherlands Antilles, which is the highest advisory body of the government in the country, chaired by the Governor of the Netherlands Antilles.

3.      I respectfully submit this Declaration at the request of counsel of Stephen M. Wilson, BRW Engineering Ltd., WIS Partners LTD., Moshe Bar-Lev, Patrick Rosenbaum, Michael Morris, Haim Yifrah, Top Down Partners, LLC, Joel Levine, Morris Talansky, Abraham Moshel, Magma International Services LTD., Albert Reichmann, Hexagram & Co. and Polybutes Company (hereinafter referred to as the **"Minority Shareholders"** or **"Plaintiffs"**). I understand that the Plaintiffs are the Minority Shareholders as well as holders of stock options and warrants in ImageSat International N.V., a Netherlands Antilles corporation (**"ImageSat"**).

4.      The Minority Shareholders filed a complaint with the United States District Court of the Southern District of New York against (*i*) ImageSat, (*ii*) Israel Aerospace Industries Ltd. (**"IAI"**) and Elbit Sytems Ltd. (**"Elbit"**), hereinafter referred to as the **"Majority Shareholders"**, and (*iii*) Moshe Keret, Izhak Nissan, Jacob Weiss, Menashe Broder, Shimon Eckhaus, Michael Federman, the Estate of Jacob Toren, Joseph Ackerman, Joseph Gaspar, Gino Piperino-Beer, James Depalma, David Arzi, Yoav Chelouce and Yehoshua Eldar, each in their capacity of current or former directors and/ or officers in so far as such officers could be considered as being in charge with the management of ImageSat (hereinafter

referred to as the "**Directors and Officers**"). ImageSat, the Majority Shareholders and the Directors and Officers will collectively be referred to as the "**Defendants**".

5.      For the purpose of this Declaration I have reviewed, amongst others, the following documents:

(i)      a copy of the complaint as filed by Plaintiffs (the "**Complaint**");

(ii)      a copy of the memorandum of law in support of the motion to dismiss, which was filed on behalf of Defendants (the "**Motion to Dismiss**");

(iii)      a copy of the declaration of Peter van Schilfgaarde dated 15 October 2007 (the "**Van Schilfgaarde Declaration**").

6.      According to the Minority Shareholders, the Defendants have deprived the Minority Shareholders of their voice in the operation of ImageSat and have engaged in a series of actions and transactions characterized by multiple breaches of fiduciary duty, self dealing and other willfully fraudulent, deceptive and oppressive acts, the net effect of which individually and cumulatively, has been to strip hundreds of millions of dollars of shareholder value from ImageSat and to further and wrongfully dilute and devalue or destroy each of their (the Minority Shareholders') ownership interest in ImageSat.

## II.      Applicable law

7.      I understand that the New York Court would apply its own private international law to determine which law is applicable in the relationship between Plaintiffs and Defendants. In that respect the New York Court would look at its own international private



law to determine *inter alia* the laws of which country should be applied to issues as (i) whether or not any tort (unlawful act) has been committed by Defendants against Plaintiffs and (ii) what the legal consequences are of such tort (unlawful act). It might be helpful if I would nevertheless advise how Netherlands Antilles private international law would be applied when a tortious act (unlawful act) has been committed by Defendants against Plaintiffs.

8.      Firstly, under Netherlands Antilles private international law, when answering the question which law determines whether or not there is any situation of tort, the *lex loci delicti* applies. A general claim of tort asserted by a plaintiff should therefore primarily be determined by the law of the country where the relevant tortious act has been committed. However, some exemptions to this *lex loci delicti* may apply.

9.      Under the scenario that both the plaintiffs and the defendants are located/established in another country than the *locus delicti*, and the consequences of the tortious act would mostly have a bearing in another country than the *locus delicti*, the *lex loci delicti* may not be applied.

10.      Furthermore, according to Netherlands Antilles private international law, when a tortious act relates to another legal relationship, e.g. a contract and/or a legal relationship, it may be that the *lex loci delicti* will not be applied, but such other law governing the legal relationship.

11.      Based on the above, in a situation of alleged tort, it may well be argued that not the law of the incorporation of the company or the laws of its principal place of business of

the company, as discussed by Defendants, is relevant, but primarily the law of the *locus delicti* (the place where the tortious act was committed). The Supreme Court of the Netherlands ("**Supreme Court**") that also has jurisdiction in the Netherlands Antilles confirmed this rule in its decision of 19 November 1993, Netherlands Jurisprudence 1994, 662 and in other decisions.

12.     Secondly, the complaints of Plaintiffs may also be qualified under Netherlands Antilles private international law as a corporate matter, in which case the rule of the so called incorporation theory applies on all matters/ issues between shareholders and/or other bodies of a company. Based on the incorporation rule, Netherlands Antilles (corporate) law would be applicable as being the law of the country in which ImageSat has its seat.

13.     In case the New York Court determines that Netherlands Antilles law would be applicable in the relationship between Plaintiffs and Defendants, either based on private international law with respect to tort or private international law based on the incorporation theory, the following would apply according to Netherlands Antilles law.

## III.     The rights of Minority Shareholders under Netherlands Antilles corporate law

14.     On 1 March 2004, the Netherlands Antilles introduced a new Book 2 of the Civil Code ("**Book 2**") about "Companies and other legal persons". The rules in this Book 2 are inspired by comparable Dutch and European Union rules, but are much less strict; e.g. in the Netherlands Antilles there is no 'declaration of no objection' which has to be obtained prior to incorporating a company and various capital protection rules applicable in the



Netherlands (such as the prohibition of financial assistance), are not applicable in the Netherlands Antilles. However, the only material difference between Netherlands Antilles corporate law and the corporate law in the Netherlands that has a bearing in this matter is the fact that the Netherlands Antilles corporate law is not familiar with the inquiry procedure (*enquête procedure*), as laid down in the Dutch Civil Code. In paragraphs 16 - 19 below, I will further elaborate on this inquiry procedure that is found in the Netherlands but not in the Netherlands Antilles.

15.     In this Declaration I will elaborate on the rights of the Minority Shareholders under Netherlands Antilles corporate law against (*i*) the (present and former) Directors and Officers; (*ii*) ImageSat; and (*iii*) the Majority Shareholders, as generally interpreted and applied by the Netherlands Antilles courts at the date hereof.

16.     I will more in particular elaborate on the following as I believe it may have a bearing in this matter:

(*i*)     Under Dutch corporate law minority shareholders may request the Enterprises Division of the Court of Appeal in Amsterdam to undertake an inquiry into the policy and conduct of business of a legal person ("*enquête procedure*"). Such inquiry procedure, however, does not exist in the Netherlands Antilles.

(*ii*)     In the Netherlands Antilles (minority) shareholders are able to recover derivative loss from a (former) director, if the latter is in breach of a norm of care specifically applicable towards such shareholder in his relation to such (Minority) Shareholder.

6



(*iii*)    According to Netherlands Antilles corporate law, the possibilities for minority shareholders of a Netherlands Antilles company to start legal proceedings against the company in which they hold shares have to be based on:

(*a*) tort (*onrechtmatige daad*). A tortious act may be the case e.g. if a company makes certain promises to the shareholders while the shareholders according to rules of "reasonableness and fairness" could expect a certain attitude from the company and the company does not comply therewith and/or in case there is a breach of contract between the company and/ or its directors and officers, and a third party;

(*b*) the articles of association of the company; or

(*c*) breach of contract assuming there is any specific contract between the minority shareholders and the company.

(*iv*)    In addition to (*ii*) and (*iii*) above, there are under Netherlands Antilles law also alternative claims available for minority shareholders, who are seeking relief for (alleged) wrongful acts by a company, its directors and officers (in so far as such officers could be considered as being in charge with the management), or the majority shareholders, such as contesting the corporate resolutions of a company and requesting the majority shareholders to purchase the stake of the minority shareholders (*uitkoop*). However, these alternative possibilities are very cumbersome and time-consuming. I will further elaborate on these alternative procedures in chapter XIII below.

## IV.    The inquiry-procedure ("*enquête procedure*") is not available under Netherlands Antilles law



17.     Pursuant to corporate laws of the Netherlands (i.e. the Kingdom in Europe), minority shareholders may request the Enterprises Division of the Court of Appeal in Amsterdam to appoint one or more persons to undertake an inquiry into the policy and conduct of business of a company either as a whole or in respect of a part thereof or in respect of a specific period ('*enquête procedure*'). Upon receipt of such request the Court may decide to order such inquiry. Based on the results of the inquiry, the Court may then decide to take actions against the legal person and/or the board of managing directors.

18.     This procedure, which gives an important legal tool to minority shareholders, has not been incorporated in Netherlands Antilles corporate law. Therefore, the possibilities for minority shareholders in the Netherlands Antilles to take legal action in case their rights are prejudiced are more complex.

19.     The Supreme Court never specifically ruled about how to deal with the rights of minority shareholders in a Netherlands Antilles company specifically in view of the fact that these minority shareholders do not have the possibility to file an inquiry with the Enterprise Division of the Court of Appeal in Amsterdam. It may be argued that by not having such possibility, the corporate rules as applicable in the Netherlands should be applied in the Netherlands Antilles in a substantially less rigid manner than in the Netherlands.

## V.     Shareholders' rights to bring claims under Netherlands Antilles law

20.     According to article 8 of Book 2, the board of managing directors, shall be charged with the management and administration of the legal person. The board of managing

directors shall, in the performance of his duties, act in the interest of the company and -to the extent that this is the case- of the business connected with it. Therefore, the board of managing directors is usually the designated body to represent the company and to file a lawsuit on behalf of the company.

21.    Pursuant to article 14 paragraph 1 of Book 2, each director has a duty to 'properly perform' management tasks. Although this duty to perform management tasks properly is owed to the company and a managing director is required to protect the interests of the company, such interest is determined by weighing the interest of all parties concerned against each other, including the interest of the (individual) shareholders. In case a director fails to perform his duties properly, more specifically when he has committed intentional wrongdoing or a serious mistake, the company itself can claim the damages from the (former) director.

22.    However, in a decision of the Supreme Court of 2 May 1997, Netherlands Jurisprudence 1997, 662, "*Kip/Rabo*", the Supreme Court explicitly ruled that any allegation of tortious actions that a director committed against the shareholders, should be taken into consideration when deciding whether any of the shareholders has a derivative claim against such director or former director.

23.    Therefore, the shareholder is able to recover loss from a director or former director or officers in so far as such officers could be considered as being in charge with the management, if the latter is in breach of a norm of care specifically applicable towards such shareholder. I will further elaborate on this norm of care in the next paragraphs.



## VI.    The liability of (former and present) directors and officers of a company towards its shareholders under Netherlands Antilles law

24.    According to the landmark decision of the Supreme Court of 2 December 1994, Netherlands Jurisprudence 1994, Netherlands Jurisprudence 1995, 288, *"ABP/Poot"*, shareholders of a company may in certain circumstances assert claims against parties that have a legal relationship with that company (third parties). In a judgement of the Supreme Court of 2 May 1997, Netherlands Jurisprudence 1997, 662, ("*Kip/Rabo*") the Supreme Court ruled that a director or former director should also be considered a "third party" against whom claims may sometimes be asserted.

25.    The Supreme Court ruled that it must be shown by the shareholder that the alleged misconduct by the director violated a specific norm of care as applicable in its own relation towards the complaining shareholder. In other words: the directors as well as the officers (in so far as such officers could be considered as being in charge with the management of the Company) are required to balance and protect the interests of the company and its stakeholders, which would include the shareholders (prof. dr. J.M.M. Maeijer, '*Asser Serie*' 2 III, "*Vertegenwoordiging en Rechtspersoon*", nr. 293, 2000).

## VII.    The violation of a norm of care

26.    In case a specific standard of due care should have been observed towards such shareholder and has been violated, the directors, former directors and/or the officers (in so far



as such officers could be considered as being in charge with the management of the Company) of the company and/or the company itself, might be held liable towards such shareholder for an unlawful act.

27.    An unlawful act against a company constituting a violation of a norm of care against the company, may at the same time constitute a tortious act against the shareholder(s) in the event that the unlawful act (or breach of contract) against the company is committed with the preconceived (*vooropgesteld*) aim of impacting the shareholder(s) in his private capacity (Supreme Court of 2 December 1994, Netherlands Jurisprudence 1995, 288, "*ABP/Poot*").

28.    In a recent decision of the Supreme Court, 2 November 2007, LJN: BB3671, R06/032, the Supreme Court ruled amongst others that a violation of a specific norm of care can be in existence if the company has amongst others made certain promises to the shareholders and the shareholders, as a consequence thereof, in all reasonableness could expect a certain attitude from the company.

29.    According to the facts leading to this decision of 2 November 2007, the shareholders of two associated companies filed a complaint against a bank stating that the bank committed a tortious act towards the shareholders. The companies had a cumulative debit balance amounting to almost ANG 1.5 million, while the companies were granted a credit facility of ANG 500.000,-. The bank offered to credit ANG 600.000,- to the accounts, if the companies would pay a sum of ANG 580.000,- within the next couple of days. Although the companies paid the sum of ANG 580.000,-, the bank, after receipt of the money, reiterated its offer to write off the sum of ANG 600.000 from the accounts. However, after receipt of the



requested sum, the bank placed conditions that were according to the companies, impossible to meet. Amongst these conditions, the Bank maximized the credit balances of the companies, blocked the debit accounts of the companies, and requested for fiduciary transfer of ownership of the assets of the companies. Finally, the bank attached all assets and monetary values of the companies and terminated the contractual relationship with the companies. Due to the disputes with the bank, the businesses of the companies had to be shut down, with the consequence that the shares of the companies dropped in value.

30.     According to the Supreme Court, blocking a credit facility in favor of the companies, while the bank had advised that it would provide the credit facility, may constitute a tortious act by such bank against the shareholders. The Supreme Court dictated that the case would proceed and that the Court of Appeal of the Netherlands Antilles should evaluate the specific facts of the matter, in order to decide whether or not there is indeed a violation of a norm of care towards the company and the shareholders. Thereby the Supreme Court did in fact allow these claims to be brought as independent claims from the shareholders.

31.     Upon instruction of the Supreme Court in its decision of 15 December 2000, R99/079HR, the Court of Appeal of the Netherlands Antilles and Aruba, in its decision of 24 May 2005, AR 623/95-H-459/98, "*Nebheling vs. Citco*", explicitly ruled that a breach of a contract (between a company and a third party) constitutes a breach of a norm of care against the shareholders. Furthermore the Supreme Court in its decision of 15 December 2000 ruled that the Court of Appeal of the Netherlands Antilles should investigate the specific circumstances of the case to decide whether or not a violation of a norm of care by the company constitutes a tortious act towards the shareholder.



32.     Based on the above, a violation of a specific norm of care towards a shareholder can and may justify a claim of damages brought directly by the shareholders of a company.

## VIII.  The liability of (former) directors and officers of a company towards the company under Netherlands Antilles law

33.     Under Netherlands Antilles law, a managing director can only be held liable against the company if he has committed either intentional wrongdoing or a "serious" mistake. Whether there is a serious mistake, is determined on the basis of all relevant circumstances, such as the competence and due care that is expected from a director who is prepared for his duties and if such director fulfills his or her tasks in accordance with the rules of "reasonableness and fairness".

34.     The phrase "reasonableness and fairness" is laid down in article 12 of Book 3 of the Civil Code of the Netherlands Antilles ("**Civil Code**"). When determining what the rules of "reasonableness and fairness" require, current judicial views in the Netherlands Antilles and the social and personal interests in the given circumstances (*maatschappelijke en persoonlijke belangen*) must be taken into account.

## IX.   The Claims of the Minority Shareholders against the (present and former) Directors and Officers



35.    I have reviewed the claims asserted in the Complaint. Many of such allegations rise to the level of disproportionally impacting Plaintiffs and Minority Shareholders and security holders of the company. For example:

a)    the Directors and Officers *amongst others*, purportedly agreed to modify the Master Agreement (as defined in the Complaint) in order to provide the Majority Shareholders the status of "Exclusive Vendor" for ImageSat's next six satellite orders, thus eliminating an important control mechanism that the (minority) shareholders had previously agreed on as to minimize the inherent conflicts of interests amongst ImageSat's financial and industrial shareholders, and thus disserving the best interests of ImageSat and its shareholders, while only serving the interests of in particular the Majority Shareholders;

b)    certain of the minority shareholders were removed from the distribution list for ImageSat's investor reports and/or ceased altogether to issue such investor reports for the purpose of withholding disclosure certain problems;

c)    the former Directors and Officers failed to inform the Minority Shareholders on certain financial affairs, amongst which intentionally providing of false, misleading and incomplete information with respect to certain financial transactions;

d)    defendants were motivated by their own personal interest including, but not limited to the desire of the Majority Shareholders to maximize their contract revenue on satellite manufacturing and construction, to the point of demanding payments far exceeding the reasonable value of the various satellites manufactured; the desire of the Defendants affiliated with the Majority Shareholders to secure maximum revenue for the Majority Shareholders in a capacity outside the company, to which they gave their primary allegiance, and thereby bonuses, consulting fees, commissions, advancement or other personal benefits, was in fact only to the determination and in the sole interest of the Majority Shareholders;



e)    at least from 2000 to date, Defendants have made numerous false and misleading statements of material facts to Plaintiffs in connection with the business, operations, legal rights, and future prospects for ImageSat, and have failed to disclose material facts necessary for the Minority Shareholders to properly consider these materials.

36.    Reading the allegations and the Complaint as a whole, I take the view that a competent court applying Netherlands Antilles law can allow Plaintiffs to bring the claims as asserted in the Complaint as their own and independent actions against the relevant defendants.

37.    Finally, providing Minority Shareholders with numerous false and misleading material fact's, can and may well constitute under Netherlands Antilles law a liability of the (former) Directors and Officers based on tort and a claim in that respect would then under Netherlands Antilles law be allowed. Furthermore, it can be argued that by intentionally providing the Minority Shareholders with misleading information, the Defendants were aiming to impact on the Minority Shareholders in their private capacity, which may well be considered as a violation of a specific norm of care as stipulated in the landmark decision of the Supreme Court "*ABP/ Poot*".

## X.    Damages

38.    Van Schilfgaarde's Declaration states that based on the landmark decision "*ABP/Poot*", under Netherlands Antilles law, two requirements should be met in order for a shareholder to assert an action against the directors: (i) a norm of care should be violated while



(ii) the shareholder must claim damages in principle in the form of something other than a devaluation of his shares.

39.    Nowhere in the judgement of the Supreme Court ("*ABP/Poot*") is such a second requirement (although some have argued in legal literature that there is such a second requirement namely that the damage suffered by a shareholder must in principle have a different basis than the mere decrease in value of the shares). In other words, as and when it has been established that a specific norm of care towards a shareholder has been violated (e.g. tort), the devaluation of the shares of such shareholder may be considered as damages. The (former) directors and officers (in so far as such officers could be considered as being in charge with the management of the Company) may then be held liable (see decision Supreme Court 2 November 2007, LJN: BB3671, R06/032HR).

## XI.    The liability of a company towards its shareholders under Netherlands Antilles law

40.    Claims by shareholders against a company are generally treated under Netherlands Antilles law under the general law of tort. An action for tort against the company would be possible if a tortious act was committed by the managing board or certain board members which can be imputed to the company.

41.    In the Supreme Court case of 6 April 1979, Netherlands Jurisprudence, 1980, 34, "*Kleuterschool Babbel*", the court ruled that a tortious act of an executive officer can be



imputed to the legal person when these acts where committed when the executive officer was in duty.

42.    Therefore, whether an individual shareholder has a claim against the company, this should be determined by the same criteria as when a claim is directed against the (former) directors and officers (in so far as such officers could be considered as being in charge with the management of the Company) of such company.

## XII.    The liability of the Majority Shareholders towards the Minority Shareholders under Netherlands Antilles law

43.    Shareholders' liability is of a different nature than directors' liability. Unlike managing directors, shareholders of a legal entity do not have a contractual relationship with the company. Except for the obligation to pay up their shares, they do not have any particular duties towards the company. However, after the shareholder has paid up the shares the relationship between the company and the shareholders and the relationship between the shareholder and his fellow shareholders can be qualified as a membership relation. This membership relationship is governed by principles of reasonableness and fairness.

44.    Netherlands Antilles corporate law requires that each shareholder behaves according to rules of "reasonableness and fairness" in all situations towards all parties connected with the company (article 7 Book 2 Civil Code). A shareholder may not take advantage of other shareholders as this may constitute a tortious act. (see Supreme Court HR 19 November 1991, Netherlands Jurisprudence 1991, 645, nr. 14257 and prof. mr. J.M.M.



Maeijer, Asser Serie 2 III, "*Vertegenwoordiging en Rechtspersoon*", Chapter IV. nr. 177, 2000 and *Handboek voor de naamloze en de besloten vennootschap*, Chapter IV. *Kapitaal en aandelen*, 172.1. "*Verplichtingen uit redelijkheid en billijkheid*"). The company and the controlling shareholder(s) have to take into consideration the interests of (minority) shareholders when taking decisions which affect the interests of minority shareholders. (JOR 1999/87, OK 3 March 1999, (*Gucci I*); JOR 2001/3, OK 3 November 2000; JOR 2001/251, OK 16 October 2001, (*Rodamco N.A.*)).

45.    Scholars in the Netherlands and in the Netherlands Antilles are of the opinion that actions by a shareholder based on article 2:7 Civil Code should not succeed easily. The Court can only do a marginal test of reasonableness, all the more because the shareholder can take the pros and cons of acquiring and possessing his shares into account when buying his shares and as a result he is or should be beforehand acquainted with the possibility of an unfair treatment. However, under Netherlands Antilles corporate law, there is little case law indicating how to deal with the rules of "reasonableness and fairness" between shareholders.

46.    In a case of the Supreme Court on 30 October 1964 (Netherlands Jurisprudence 1965, 107), it was ruled that a decision of the general meeting of shareholders regarding an amendment of the articles of association was contrary to the rules of "reasonableness and fairness". This decision of the shareholders had a major influence on the interests of specific shareholders which were not present at the meeting, and the shareholders who were present did not verify whether the absent shareholders were given sufficient opportunity to participate in the meeting. The Supreme Court ruled that even if the law and the articles did not require individual notice to the shareholders, nevertheless the special circumstances in this case required timely notification of the shareholders whose interests were



especially influenced by the decision that needed to be made. Below we will elaborate on a couple of these cases as we believe some of the arguments used herein, might have a bearing in this matter.

47.     On 17 May 1973 the Court of First Instance in Roermond (the Netherlands) (Netherlands Jurisprudence 1974, 57) ruled that a shareholder with a majority interest in a legal entity acted contrary to the principles of reasonableness and fairness with regard to the exercise of the rights and the performance of obligations of shareholders mutually and towards the legal entity. This shareholder voted against the annual reports without specifying which changes needed to be made, as a consequence whereof he prevented the adoption and approval of the annual reports, which is an obligation of the legal entity by law.

48.     The Supreme Court ruled in a case dated 17 May 1991 (Netherlands Jurisprudence 1991, 645) that an amendment of the articles of association by decision of the general meeting of shareholders was not contrary to the principles of reasonableness and fairness. In this case the majority of the shareholders wished to sell their shares to a third party. They had even found an interested buyer who was willing to offer a good price. However, the articles of association contained a provision that if a shareholder wished to sell his shares, he would first have to offer the shares to the other shareholders, before he could sell them to a third party. One of the shareholders in the legal entity was interested in buying some of the shares of the other shareholders, but could not afford all of them. He was against the amendment of this provision in the articles of association. Nevertheless, the Supreme Court ruled that the large majority of the shareholders was free to decide on the amendment of the articles of association. The interests of the large majority of the shareholders and of the legal



entity itself outweigh the interests of one shareholder. The shareholder who did not agree to the sale argued that the amendment of the articles of association was done for the sole purpose of disabling his rights. However, the Supreme Court did not agree with him, though found that although the amendment of the articles of association indeed was to disable the rights of the shareholder, this result was not the main purpose for the amendment, but a means to accomplish the sale of the shares to the third party.

49.    In a case of the Court of First Instance in Amsterdam on 20 December 2001 (JOR 2002, 2) a minority shareholder did not want to cooperate with the decision of the legal entity to issue new shares and sell them to a third party for a lower price than the shares' value at the moment, which would ultimately lead to the shareholder's shares to lose value as well. However, the legal entity would go bankrupt if it did not issue and sell the shares. Because the shareholder was also aware of this, it was suspected that the shareholder's refusal to cooperate was for the purpose of enforcing a better deal for himself than the other shareholders received. They were suffering the same value losses of their shares as the uncooperative shareholder. As a result, the actions of the shareholder were considered contrary to the rules of "reasonableness and fairness" that apply between shareholders.

50.    In this case the Complaint alleges in detail that the controlling shareholders of the company (IAI and Elbit) have failed to act in accordance with the required rules of reasonableness and fairness to the Minority Shareholders. Based on the above it can well be argued that a competent court applying Netherlands Antilles law can allow the Minority Shareholders to bring claims as asserted in the Complaint as their own and independent action against the Majority Shareholders.



**XIII.  Alternative claims available to the Minority Shareholders**

51.    As stated in paragraph 14 above, under Netherlands Antilles law there are alternative claims available to minority shareholders in case the minority shareholders are seeking relief for the (alleged) wrongful acts by a company, its directors and officers (in so far as such officers could be considered as being in charge with the management of the Company) or the majority shareholders. However, these alternative possibilities are unreasonably cumbersome and time-consuming.

52.    It can be argued that the minority shareholders may have the possibility to contest the decisions of the Company. However, this procedure is under Netherlands Antilles law very rare and can take many years due to the fact that the Minority Shareholders are contesting almost the entire corporate actions of the Company over the last 7 to 8 years.

53.    Another possibility the Minority Shareholders may theoretically have under Netherlands Antilles law, is to request (actually: force) the Majority Shareholders to purchase the stake of the Minority Shareholders. This option is cumbersome and highly unsatisfactory to the Minority Shareholders. The Minority Shareholders will be paid the current value of their shares while this value dropped enormously over the last years due to a tortious act committed by the Defendants. Furthermore, the question whether the Minority Shareholders will obtain compensation for the devaluation of their shares due to the tortious acts committed by Defendants, has not yet been answered in legal literature. Moreover, this proceeding before the Court of First Instance normally takes many years or more to be completed.

54.    Based on the information provided to me and the circumstances of this matter, I take the view that a competent court applying Netherlands Antilles law can allow Plaintiffs to bring certain claims against the Directors and Officers, the Majority Shareholders and the Company as their own and independent actions against the relevant Defendants.

55.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Curaçao, Netherlands Antilles, on 30 of January 2008.



FRANK KUNNEMAN

