UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN M. WILSON, *et al.*, | 07 Civ. 6176 (LTS)(DME) |
| Plaintiffs, | ECF CASE |
| -against- | **DECLARATION OF** |
| | **GEERT T.M.J. RAAIJMAKERS** |
| IMAGESAT INTERNATIONAL N.V., | |
| *et al.*, | |
| Defendants. | |

GEERT T.M.J. RAAIJMAKERS declares as follows:

1.      I submit this Declaration on behalf of Stephen M. Wilson, BRW Engineering Ltd., WIS Partners Ltd., Moshe Bar-Lev, Patrick Rosenbaum, Michael Morris, Haim Yifrah, Top Down Partners, LLC, Joel Levine, Morris Talansky, Abraham Moshel, Magma International Services, Ltd., Albert Reichmann, Hexagram & Co., and Polybutes Corporation (together "the Plaintiffs"), who have retained me to provide an expert opinion concerning the laws of the Netherlands and the Netherlands Antilles in connection with the action captioned *Wilson, et al. v.*

1

*ImageSat Int'l N.V. et al.*, 07 Civ. 6176 (LTS) filed in the United States District Court for the Southern District of New York on 2 July 2007 ("the Complaint").

2.    I understand the Complaint to be directed against ImageSat International N.V. ("ImageSat"), Israel Aerospace Industries Ltd ("IAI"), Elbit Systems Ltd. ("Elbit"), and Messrs. Keret, Nissan, Weiss, Eckhaus, Federman, (the Estate of) Toren, Ackerman, Gaspar, Piperno-Beert, DePalma, Arzi, Chelouche and Eldar, whom I will refer to as "the ImageSat Directors and Officers". IAI and Elbit will jointly also be referred to as "the Majority Shareholders". ImageSat, the Majority Shareholders, and the ImageSat Directors and Officers will furthermore also jointly be referred to as "the Defendants".

## I.    Introduction

3.    I am a professor of corporate and securities law at the VU University in Amsterdam, The Netherlands. Before that, starting in 2004, I was a professor of European banking and securities law at Maastricht University, Maastricht, The Netherlands. Furthermore, I am a partner at the Benelux law firm NautaDutilh N.V. I am also a member of the European Advisory Group on Corporate Governance and Company Law, which advises the European Commission on legislative issues in these areas.

4.    I have reviewed the Complaint, the Memorandum of Law in Support of the Motion to Dismiss by the Defendants in the underlying matter (filed 15 October 2007), and the Declaration of Peter Van Schilfgaarde (filed on the same date).

5.    I understand that the Plaintiffs seek to bring an action against the Defendants in their respective capacities of the corporation in which the Plaintiffs hold or have held shares, warrants and options; controlling shareholders of the corporation, and present or former

directors and officers for damages they claim to have incurred as a result of the Defendants' actions and/or failures to act in connection with the affairs of the corporation.

6.    I further understand that the Defendants have argued, amongst other things, that the Plaintiffs' claims do not satisfy the limited circumstances under which shareholders of a Netherlands Antilles corporation may sue the corporation, its directors, officers or another shareholder, and that they have submitted the Declaration from Peter van Schilfgaarde to support that statement.

7.    I have been asked to render my opinion on whether, under the laws of the Netherlands Antilles, a shareholder of a corporation incorporated in the Netherlands Antilles may bring an action such as the one asserted in the Complaint for damages against the corporation, its directors, officers, or other shareholders. In doing so, I discuss herein the law of the Netherlands Antilles but I do not offer any opinion regarding whether the Court should apply the law of the Netherlands Antilles or another law, which is a matter to be determined by the conflict-of-law rules of the forum court.

8.    For the purpose of this Declaration, I have assumed there are no relevant differences between Netherlands Antilles corporate law and Dutch corporate law, apart from the fact that Netherlands Antilles law does not provide for the specific inquiry proceedings (*enquête procedure*) laid down in Articles 344 and further of Book 2 of the Dutch Civil Code. This is however an important difference, because the inquiry proceedings in the Netherlands have developed over the last few decades as the primary means for minority shareholders to challenge misconduct by the directors and majority shareholders of a corporation in court.

## II.    Shareholders' right to bring claims under Netherlands Antilles corporate law

9.    Plaintiffs in this case seek damages from the Defendants arising from their alleged wrongdoing involving ImageSat and alleging damage to ImageSat. The question of whether a

shareholder can claim damages in his own name from a third party (including a director or officer of the corporation or another shareholder) who has caused damage to the corporation as a result of which the value of the shares has decreased, is referred to as the "derivative loss" doctrine (*afgeleide schade*). This doctrine has been developed by the Netherlands Antilles Supreme Court – which is also the Supreme Court for the Netherlands – in various cases. An important landmark case in this respect was the Supreme Court decision of 2 December 1994 in the matter of Poot/ABP.[1] Having said that, the doctrine of derivative loss can be summarized as follows.

10.     If a shareholder has suffered damage, allegedly e.g. as a result of misconduct by the directors or officers of the corporation, the first question is whether his damage should be characterized as direct damage or as derivative loss. Insofar as shareholders suffered out-of-pocket injury to themselves, such as by investing in a corporation in which they would not have invested had they known all the relevant facts, their loss is plainly a direct one, recovery of which is not precluded by the derivate loss doctrine. Damage consisting solely of a decrease in value of the shares in a corporation as a result of damage to the corporation itself is characterized as derivative loss. In that situation, the shareholder's damage would typically disappear if the corporation were to be reimbursed. A typical example of this is when a party to a contract with the corporation breaches its contract. An example of direct damage is when a director of a corporation makes public misrepresentations on the corporation's financial position and thereby induces shareholders to buy shares in the corporation. Those shareholders suffer damage as a result of having bought these shares at too high a price. In this example the shareholders suffer damage directly, and not indirectly through damage to the corporation. The corporation has not suffered damage, as its financial position has not been adversely affected.

11.     Netherlands Antilles law does not embody the concept of a "derivative suit" in which plaintiff shareholders claim damages *on behalf of* the corporation. Instead, under certain circumstances shareholders may claim damages *in their own name*. In the aforementioned Poot/ABP decision, the Supreme Court formulated the general rule, which has been repeated in later case law

---

[1] HR 2 December 1994, NJ 1995, 288 (Poot/ABP).

several times, that as a general rule it is up to the corporation itself, through its board of directors, to claim the relevant damages in its own name on behalf of all shareholders and other stakeholders. In Poot/ABP, the Supreme Court ruled that the corporation had sufficient adequate remedies to seek compensation in that case and dismissed the shareholders' claims for compensation of derivative loss.

12.      However, while this general rule has been applied in several cases, it is not absolute. In this case, as well as in other cases, the Supreme Court has held that, by way of exception, a shareholder is entitled to claim compensation of derivative loss where a party who caused damage to the corporation also breached a specific norm of care towards the shareholder.[2]

13.      There is some debate as to whether a second requirement must also be met in order for an exception to the aforementioned general rule to apply. On the basis of the Heino Krause-decision of the Supreme Court,[3] it has been argued in legal literature that there is indeed a second requirement, namely that the damage suffered by the shareholder must in principle have a different basis than the mere decrease in value of the relevant shares.[4] It has also been argued, however, that the Supreme Court did not intend to introduce a new requirement for a successful derivative loss claim in Heino Krause.[5] The fact that the "second requirement" has not been referred to by the Supreme Court in later cases seems to support this second view.

14.      In several decisions the Supreme Court has ruled that specific additional circumstances are required to accept a specific norm of care towards the shareholders.[6] A full statement of what circumstances qualify as such does not yet exist under Netherlands Antilles corporate law. The Supreme Court - in short - has ruled e.g. that the following circumstances are sufficient: i) if there is

---

[2] HR 13 October 2000, NJ 2000, 599 (Heino Krause); HR 15 juni 2001, NJ 2001, 573 (Chipshol).

[3] HR 13 October 2000, NJ 2000, 599 (Heino Krause).

[4] See for example P. van Schilfgaarde, Afgeleide aansprakelijkheid, lustrumbundel, 2e Lustrum, Stichting Grotius Academie, Kluwer 2001, p. 25-39.

[5] M.J. Kroeze, Afgeleide schade en afgeleide actie, Kluwer 2004, p.57.

[6] HR 16 February 2007, JOR 2007, 112 (Tuin Beheer); HR 2 November 2007, JOR 2007, 302 (Beach Bistro's).

willful intent to damage the relevant shareholder or shareholders,[7] ii) if, the bank, through a careless credit policy, puts the corporation in a difficult financial position and subsequently presses the relevant shareholders to sell their shares at an unfavorable time[8] and iii) if specific promises have been made and expectations raised vis-à-vis the relevant shareholders, and the shareholders have sold their shares for a considerably lower price than they otherwise would have.[9]

15.    Although there is limited case law, in my view the admissibility of a shareholder's claim for compensation of derivative loss against the Netherlands Antilles corporation itself would likely not be treated differently from a claim which is brought against a director, officer or other shareholders. For a claim of derivative loss by a shareholder against the corporation, the general rules of Netherlands Antilles tort law apply. In effect, the test for the admissibility of such a claim is to a large extent similar to the aforementioned test for derivative loss.

**III.    Are there specific additional circumstances in the ImageSat case?**

16.    In light of the foregoing, the question is whether the Complaint contains specific additional circumstances to justify a claim for compensation of derivative loss against ImageSat, the Directors and Officers, and the Majority Shareholders.

17.    The Complaint makes a number of allegations in this respect on the actions and failures to act by ImageSat as a corporation, the Directors and Officers, and the Majority Shareholders. Insofar as relevant for the underlying matter, these allegations can be summarized as follows. The Defendants have, through their actions, used ImageSat as an instrument to serve the interests of the Majority Shareholders, to the detriment of the Plaintiffs as minority shareholders (e.g.

---

[7] HR 16 February 2007, JOR 2007, 112 (Tuin Beheer).

[8] HR 2 May 1997, NJ 1997, 62 (Kip/Rabobank).

[9] HR 2 November 2007, JOR 2007, 302 (Beach Bistro's).

Complaint #94, 128) and the unjustified enrichment of the Majority Shareholders at the same time (e.g. Complaint #103, 175-185), and the Defendants have failed to prevent this as a result of their conflicts of interest, as Directors and Officers, with the Majority Shareholders (e.g. Complaint #106, 249). In this respect, the Plaintiffs' expectations are alleged to have been raised and representations made to them that ImageSat would be run as an autonomous, apolitical commercial entity and that its business would be entirely separate and distinct from the businesses of the Majority Shareholders, instead of a vehicle for the Majority Shareholders' interests and political agenda (Complaint #5, 19, 69-70, 113), thus inducing many of the Plaintiffs to agree to transactions between ImageSat and the Majority Shareholders (Complaint #8). The Plaintiffs have allegedly been misinformed and relevant information has been withheld from them (Complaint #101, 211(c), 166, 172). ImageSat's international network has allegedly been cut back in connection with political developments (Complaint #114). Contracts by ImageSat with third parties have been breached for the same reasons (Complaint #119), as well as important corporate opportunities spurned (Complaint #126, 127, 136-137, 226 et seq., 262). Under these circumstances, there have allegedly been various acts of self-dealing (Complaint #277 et seq.). Finally, according to the Complaint not all Plaintiffs have incurred damage in their capacity as shareholders. Some of them have received stock options and/or bridge warrants which allegedly have lost all value because of Defendants conduct, and in some cases which ImageSat now asserts have expired without the warrant holders having been able to benefit due to Defendants' misconduct (Complaint #79 et seq., 84). Taken as a whole, the facts and circumstances as alleged in the Complaint in my view constitute a severe violation of the minority shareholders' rights.

18.    It should furthermore be noted that the Plaintiffs' alternative remedies under Netherlands Antilles law are limited, if not theoretical. From 2002 onwards the Plaintiffs were allegedly being induced to believe that IPO preparations were proceeding which was finally suspended in November 2005 leaving the minority shareholders with no realistic exit opportunities (Complaint #238). Convening a general meeting of shareholders, if at all possible for the minority shareholders in this case, would likely not lead to any solution for the Plaintiffs, as they do not have the majority of the votes in such meeting. Challenging specific decisions will likely not result or would not have resulted in

decision to challenge. I am furthermore advised that the specific Netherlands Antilles proceedings providing an exit possibility for minority shareholders who cannot reasonably be expected to retain their shareholdings (as laid down in Article 251 Book 2 of the Netherlands Antilles Civil Code (NACC)), are generally held to be extremely cumbersome as it may easily take up to ten years to reach a final decision.[10] Apart from that, as I am also advised, it is unlikely under current Netherlands Antilles law that the alleged damage incurred — resulting in a lower value of the shares in ImageSat — would be taken into account in such proceedings.[11] Finally, the NACC was modeled after the Dutch Civil Code. The specific inquiry proceedings (*enquête procedure*) laid down in Articles 344 and further of Book 2 of the Dutch Civil Code, was not copied however. In the Netherlands, minority shareholders in the underlying case would typically initiate such inquiry proceedings, which is illustrated by the vast amount of Dutch case law on the use of the inquiry proceedings in cases involving the protection of minority shareholders. This procedure is not available in the Netherlands Antilles.

19.    Although the Supreme Court has in a number of cases upheld the general rule that derivative loss cannot be claimed by shareholders, it has not yet been asked to rule on whether an abuse of powers to the detriment of minority shareholders, as alleged in the matter of ImageSat, can constitute specific additional circumstances justifying a claim for such damage. It has been argued in legal literature that the fact that a majority shareholder causes damage to the corporation and effectively has the power to prevent the corporation from claiming damages from him, provides an argument for granting a claim for derivative loss.[12] It should be noted in this respect that in several cases it has been held that there is a specific norm of care towards the minority shareholders in a corporation and that

---

[10] See for critisism on the equivalent, although not entirely similar, Dutch exit proceedings e.g. A.E. Driessen, De geschillenregeling revisited, Ondememigsrecht 2003, p. 581.

[11] Under the equivalent Dutch proceedings this is generally not possible in practice. See M.J. Kroeze, Afgeleide schade en afgeleide actie, Kluwer 2004, p.80 et seq, who also argues that if the derivative loss has indeed not been taken into account in the exit proceedings, the relevant shareholder would be able to subsequently claim his damage as direct loss. This is in practice a very cumbersome route for a minority shareholder, also in light of the complexity and length of the exit proceedings themselves. For this reason the Ministry of Justice has recently submitted a bill in which it is provided that in the future - once this bill will be enacted - the court will be able to take derivative loss suffered by the minority shareholder(s) can be taken into account already in the exit proceedings (Parliament 31058, #2). However, even if adopted this bill would not apply in the Netherlands Antilles.

[12] L.Timmerman in: H.J. van Kooten e.a. (red.) Hartkamp variaties, Kluwer 2006, p. 135. It should be noted in this respect that Prof. Timmerman is an important advisor to the Supreme Court. See however Rb. The Hague, 24 May 2007, JOR 2007, 174 (KPNQwest).

held that there is a specific norm of care towards the minority shareholders in a corporation and that impermissible conflicts of interest should be prevented in this respect.[13] According to the Complaint, there has been a pattern of conflicts, misrepresentations, misinformation, raised expectations, self-dealing and abuses of majority power to the detriment of the interests of the Plaintiffs as minority shareholders and security holders and at the same time the unjustified enrichment of the Majority Shareholders, without there being realistic possibilities for them to act against that. In my opinion based upon the relevant case law and legal literature, the Court should evaluate whether the complete allegations, if proven, would constitute a breach of a specific norm of care towards a shareholder so as to justify a claim of derivative loss, particularly in light of the fact that the Plaintiffs lack the possibility of initiating inquiry proceedings as described above. Finally, the damage the Plaintiffs have suffered in respect of their options and warrant holdings should in my view furthermore not be regarded as derivative loss but as direct damage for which Plaintiffs may assert direct claims, because they have not suffered this damage in their capacity as shareholders.

20.    I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Executed at Amsterdam, The Netherlands, on January 30, 2008

GEERT T.M.J. RAAIJMAKERS

---

Timmerman is an important advisor to the Supreme Court. See however Rb. The Hague, 24 May 2007, JOR 2007, 174 (KPNQwest).

[13] HR 1 March 2002, NJ 2002, 296 (Zwagerman); HR 29 September 2006, NJ 2006, 639 (Mill Resorts & Suites); HR 1 September 2006, JOR 2006, 262, particularly the Advice to the Supreme Court by A-G Timmerman; HR 14 September 2007, JOR 2007, 237-239 (Versatel). See also J.W. Winter, Tunneltjes graven, Ondernemingsrecht 2001, p. 217.