

## STOCK PURCHASE AGREEMENT

STOCK PURCHASE AGREEMENT dated as of this ____ day of December, 1998, by and between Electro Optics Industries, Ltd. ("ELOP"), a company organized and existing under the laws of the State of Israel, and West Indian Space, Ltd. ("Company" or "WIS"), a corporation organized and existing under the laws of the Cayman Islands, both of which are referred to in this Agreement collectively as the "Parties" and individually as a "Party", with reference to the following:

WHEREAS, WIS, initiated as a joint venture of Israel Aircraft Industries, Ltd ("IAI") and Core Software Technology ("CST"), has been formed for the purpose of conducting the "EROS" commercial high resolution satellite imaging program, and

WHEREAS, ELOP has designed and built an electro-optical imaging payload for existing Israeli Satellites; and

WHEREAS, ELOP wishes to purchase and WIS wishes to sell additional equity beyond that granted to ELOP by IAI according to the terms of an agreement between IAI and ELOP, and

WHEREAS, ELOP and WIS have agreed upon the terms and conditions of the additional said stock purchase, and

NOW, THEREFORE, in consideration of the premises and the mutual agreements and covenants herein contained, the Parties hereby agree as follows:

**Article I. Definitions.**

Section 1.1 "Preferred Stock" means the Preferred Stock of WIS, which, inter alia, carries voting rights equivalent to the voting rights of the Common Stock of the Company and as otherwise described in the Joint Venture Agreement between CST and IAI dated November 1998, and attached hereto as **Exhibit 1**.

Section 1.2 "Engineering and Development" or "E&D" means the activities required to meet the engineering, development and design objectives relevant to future ELOP payload systems capable of producing commercially feasible remotely sensed data.

Section 1.3 "EROS" means the commercial Earth Remote Observation Satellite program created by IAI, jointly pursued by IAI and CST since 1994, and to be implemented by WIS.

Section 1.4 "EROS A+ Satellite" shall mean the first Satellite which is to be ordered by WIS from IAI/MBT under the Satellite Supply Contract between IAI and WIS for which ELOP is to be the payload provider under subcontract to IAI, such payload to be based on existing ELOP Technology.

Section 11.3 Absence of Conflicts. The execution and delivery of this Agreement by ELOP and the consummation of the transactions required hereunder do not and will not violate or conflict with (i) any statute, regulation, judgment, order, writ, decree or injunction, currently applicable to ELOP, any of its subsidiaries or any of their respective property or assets, or (ii) any existing mortgage, indenture, contract, licensing agreement, financing statement, or other agreement binding on ELOP or any of its subsidiaries.

Section 11.4. Required Consents & Contractual Restrictions. No consent or approval of the stockholders of ELOP or any third party is required to be obtained by ELOP in connection with the execution and delivery of this Agreement or the performance of the transactions contemplated hereunder except for those already obtained. Except as disclosed in writing prior to the execution of this Agreement, no material contract or agreement to which ELOP is a Party restricts the ability of ELOP to fulfill its obligations and responsibilities under this Agreement or any related agreement or to carry out the activities contemplated herein.

Section 11.5 Acting on its Own Account. ELOP is entering into this Agreement for its own account as a principal and not with a view towards transferring its rights or obligations hereunder to any other person.

Section 11.6 Property Transfers to WIS. Except as disclosed in writing prior to the execution of this Agreement ELOP has, and will have the full right and authority to make all of the transfers to the Company required under this Agreement.

Section 11.7 Disclosure. ELOP has used reasonable efforts to fully disclose to WIS all material rights of third Parties and all material government requirements relating to Technology, Patents and other property to be granted, transferred or conveyed by ELOP and all material facts relevant to the business of WIS pursuant to this Agreement.

Article XII. Entire Agreement, Amendment.

This document, together with the ELOP/IAI Agreement, sets forth the entire understanding between the Parties relating to the subject matter contained herein and merges all prior discussions, understandings and/or agreements of any kind or nature between them on such subject matter. No amendment to this Agreement shall be effective unless it is in writing and executed by the Parties hereto.

Article XIII. Governing Law.

This Agreement and all actions contemplated hereby shall be governed by and construed in accordance with the laws of the State of New York, excluding, however, the principles of conflict of laws thereof.

Article XIV. No Waiver Of Rights.

**Article XVI. Force Majeure.**

Failure on the part of either Party to perform any of its obligations set forth in this Agreement will not give either Party to this Agreement any claim against the other Party or be deemed to be a breach of the Agreement to the extent that such failure arises from force majeure. If through force majeure the fulfillment by either Party of any obligation set forth in this Agreement will be delayed, the period of such delay will not be counted in computing periods prescribed by this Agreement. Any Party failing to perform its obligations under this Agreement because of force majeure shall give notice in writing of such force majeure as soon as possible after the occurrence to the other Party. Force majeure will mean any war, civil commotion, strikes, lockouts, accidents, epidemics, acts of government and any other event of any nature or kind whatsoever beyond the control of the Party that directly or indirectly hinders or prevents the Party from commencing or proceeding with the consummation of the transactions contemplated hereby. Any Party hereto who fails because of force majeure to perform his obligations hereunder will upon the cessation of the force majeure take all reasonable steps within his power to resume with the least possible delay compliance with his obligations.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

West Indian Space, Ltd., Inc          Electro Optics Industries, Ltd

By:                                    By:
Name:                                  Name: HAIM REUSSE
Title:                                 Title: CORPORATE VP E&M F&SP ISRAEL