Appendix No: _____
Date: _____
Signature: _____

# WEST INDIAN SPACE N.V.

## AMENDED AND RESTATED

## NOTE PURCHASE AGREEMENT

Dated as of July 20, 2000

$71,000,000

12% Senior Convertible Secured Notes
Due July 31, 2005

NYK 636723-23.056463.0019

CONFIDENTIAL

ISI_0001

WEST INDIAN SPACE N.V.


AMENDED AND RESTATED

NOTE PURCHASE AGREEMENT

Dated as of July 20, 2000

12% Senior Convertible Secured Notes
Due July 31, 2005


Imaging Holdings I, L.P.
Imaging Holdings II, L.P.
Imaging Holdings Related, L.P.
99 River Road
Cos Cob, Connecticut  06807-2514

Ladies and Gentlemen:

       Reference is hereby made to that certain Note Purchase Agreement (the "Original Agreement"), dated as of May 26, 2000, by and among West Indian Space, Ltd. ("WIS"), a corporation organized under the laws of the Cayman Islands, Imaging Holdings I, LLC, Imaging Holdings II, LLC and Imaging Holdings Related, LLC, each a Delaware limited liability company (collectively the "Imaging LLCs").

       West Indian Space N.V., a company with limited liability validly existing under the laws of the Netherlands Antilles (the "Company"), as successor to WIS, and Imaging Holdings I, L.P., Imaging Holdings II, L.P. and Imaging Holdings Related, L.P, as successors to the Imaging LLCs, desire to amend and restate the Original Agreement in its entirety to read as follows. Nothing in this Agreement shall operate to affect the liabilities of the parties hereto or to the Original Agreement under the Original Agreement arising prior to the date hereof.

       The Company hereby agrees with you (the "Initial Purchasers and, together with all other parties that may be added as purchasers pursuant to Section 14.6 or by execution of a joinder agreement in the form of Exhibit J annexed hereto , the "Purchasers") as follows:

NYK 614295-1.056463.0015

Closing Date or an Optional Advance Closing Date, the Initial Purchasers shall have the right to assign, in whole or in part, their respective rights and obligations with respect to the Notes to be purchased on such date, to one or more other parties, each of whom shall be deemed to be a Purchaser and the Holder of the Notes purchased hereunder and be bound by the provisions hereof, provided that the Initial Purchasers shall be not permitted to make such assignments as would result in the Initial Purchasers, their Affiliates and those parties over whom they have operational control, holding less than 50% of the Notes issued to the date in question (including the Notes to be issued on such date).

Except as provided in the MoD Letter, at all times prior to consummation of a public offering of the Common Stock, the Purchaser shall not assign any of its rights to purchase Notes as set forth in the preceding paragraph and no Holder shall transfer any Notes or shares of Series C Preferred Stock, unless the MoD shall have determined that the proposed sale, assignment, pledge, encumbrance or other transfer does not pose a national security risk to the State of Israel.

14.7.    Survival of Covenants.  All covenants, made by any Person herein and in any certificates delivered pursuant hereto, whether or not in connection with the Initial Advance Closing Date, a Further Advance Closing Date or an Optional Advance Closing Date shall survive the closing and the delivery of this Agreement, the Initial Advance Notes the Further Advance Notes and the Optional Advance Note, as the case may be.

14.8.    Severability.  Should any part of this Agreement for any reason be declared invalid, such decision shall not affect the validity of any remaining portion, which remaining portion shall remain in force and effect as if this Agreement had been executed with the invalid portion thereof eliminated and it is hereby declared the intention of the parties hereto that they would have executed the remaining portion of this Agreement without including therein any such part, parts, or portion which may, for any reason, be hereafter declared invalid.

14.9.    Reproduction of Documents.  This Agreement and all documents relating hereto, including, without limitation, (a) consents, waivers and modifications which may hereafter be executed, (b) documents received by either party hereto at the closing of the purchase of any Notes (except the Notes themselves), and (c) financial statements, certificates and other information previously or hereafter furnished to either party hereto, may be reproduced by either party hereto by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process and either party hereto may, at its option, destroy any original document so reproduced. The parties hereto agree and stipulate that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business) and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

Governing Law: Consent to Jurisdiction and Venue.  In all respects, including all matters of construction, validity and performance, this Agreement and the obligations arising

56

NYK 636723-23.056463.0019

CONFIDENTIAL

ISI_0002

hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York applicable to contracts made and performed in such state, without regard to the principles thereof regarding conflict of laws, and any applicable laws of the United States of America. EACH OF THE COMPANY, THE HOLDERS AND THE PURCHASERS HEREBY IRREVOCABLY SUBMITS TO THE JURISIDCTION OF THE STATE AND FEDERAL COURTS SITTING IN NEW YORK, NEW YORK IN ANY ACTION, SUIT OR PROCEEDING ARISING IN CONNECTION WITH THIS AGREEMENT, AND CONSENTS TO PERSONAL JURISDICTION, WAIVES ANY OBJECTION AS TO JURISDICTION OR VENUE, AND AGREES NOT TO ASSERT ANY DEFENSE BASED ON LACK OF JURISDICTION OR VENUE, IN THE CITY OF NEW YORK, STATE OF NEW YORK. Service of process on the Company, any Purchaser or any Holder in any action arising out of or relating to this Agreement shall be effective if mailed to such party in accordance with the procedures and requirements set forth in Section 14.5. Nothing herein shall preclude any Purchaser, any Holder or the Company from bringing suit or taking other legal action in any other jurisdiction. Without limitation on the ability to serve process as otherwise provided in this Section 14.10, the Company hereby appoints CT Corporation 111 Eighth Avenue, New York, NY 10011, as its non-exclusive agent (the "Agent") for service of process and agrees that service on the Agent shall be deemed to be valid service on the Company for all purposes.

      14.10.  Mutual Waiver of Jury Trial.  BECAUSE DISPUTES ARISING IN CONNECTION WITH COMPLEX FINANCIAL TRANSACTIONS ARE MOST QUICKLY AND ECONOMICALLY RESOLVED BY AN EXPERIENCED AND EXPERT PERSON AND THE PARTIES WISH APPLICABLE STATE AND FEDERAL LAWS TO APPLY (RATHER THAN ARBITRATION RULES), THE PARTIES DESIRE THAT THEIR DISPUTES BE RESOLVED BY A JUDGE APPLYING SUCH APPLICABLE LAWS. THEREFORE, TO ACHIEVE THE BEST COMBINATION OF THE BENEFITS OF THE JUDICIAL SYSTEM AND OF ARBITRATION, EACH OF THE COMPANY, THE HOLDERS AND THE PURCHASER WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT OR PROCEEDING BROUGHT TO ENFORCE OR DEFEND ANY RIGHTS OR REMEDIES UNDER THIS AGREEMENT.

      14.11.  Captions.  The descriptive headings of the various Sections or parts of this Agreement are for convenience only and shall not affect the meaning or construction of any of the provisions hereto

      14.12.  Confession of Judgment.  As additional security for the Company's obligations under the Notes and the Series C Preferred Stock, simultaneously with the execution and delivery of this Agreement, the Company shall provide to the Purchaser Representative for the benefit of the Holders a Confession of Judgment in the amount of $71,000,000 (or, if less, the aggregate amount of the Initial Advance, all Further Advances and all Optional Advances made hereunder, plus accrued and unpaid interest on all outstanding Notes) executed by the Company (the "Confession"), in a form reasonably acceptable to the Company and the Purchaser Representative. The Company acknowledges and agrees that the amount of the Confession is not a penalty, but rather a fair assessment of the minimum damages that the Holders would suffer in the event the Company breaches its obligations under the Notes or the Series C Preferred Stock. The

NYK 636723-23.056463.0019

CONFIDENTIAL

ISI_000:

The execution hereof by the Initial Purchasers shall constitute a contract between us for the uses and purposes hereinabove set forth, and this Note Purchase Agreement may be executed in any number of counterparts, each executed counterpart constituting an original but all together only one agreement.

**WEST INDIAN SPACE N.V.**

By: _____

Name:

Title:


By: _____

Name:

Title:

CONFIDENTIAL

ISI_0002

Accepted as of July __, 2000

**IMAGING HOLDINGS I, L.P.**

By: Imaging Holdings I, LLC,
       its general partner

By:                                
                Jonathan Berger
                President

**IMAGING HOLDINGS II, L.P.**

By: Imaging Holdings II, LLC,
        its general partner

By:                                
                Jonathan Berger
                President

**IMAGING HOLDINGS RELATED, L.P.**

By: Imaging Holdings Related, LLC,
        its general partner

By:                                
                Jonathan Berger
                President

CONFIDENTIAL

ISI_0002

WEST INDIAN SPACE N.V.

CLOSING CERTIFICATE AND INDEMNIFICATION AGREEMENT

The Purchasers (as defined in
    the Note Purchase Agreement)
c/o Pegasus Investors, L.P.
99 River Road
Cos Cob, Connecticut 06897

Gentlemen:

    This Closing Certificate and Indemnification Agreement is delivered, in compliance with the requirements of the separate Amended and Restated Note Purchase Agreement dated as of July 20, 2000 (the "Agreement") entered into by the undersigned, West Indian Space N.V. a company with limited liability validly existing under the laws of the Netherlands Antilles (the "Company"), and you, to each of the Purchasers (as defined in the Agreement) and as an inducement to and as part of the consideration for your purchase of up to an aggregate of $71 million principal amount of the Company's 12% Senior Convertible Secured Notes due July 15, 2005 (the "Notes"), pursuant to and in accordance with the Agreement. The terms which are capitalized but not otherwise defined herein shall have the same meanings as in the Agreement.

A.    **Representations and Warranties of the Company.** The Company hereby represents and warrants to you as follows:

    1.    **Corporate Organization and Authority.** The Company (a) is a corporation validly existing and in good standing under the laws of the Netherlands Antilles; (b) has all requisite corporate power and authority and all necessary licenses and permits to own and operate its properties and to carry on its business as now conducted and as presently proposed to be conducted; and (c) is duly licensed or qualified and is in good standing as a foreign corporation in each jurisdiction wherein the nature of the business transacted by it or the nature of the property owned or leased by it makes such licensing or qualification necessary and where failure to so qualify could reasonably be expected to have a Material Adverse Effect.

    2.    **Subsidiaries.** Schedule 2 hereto contains a list of each Subsidiary of the Company, including its name, jurisdiction of incorporation or organization, other jurisdictions in which it is qualified or licensed to do business as a foreign corporation, and capitalization (including the identity of each stockholder and the number of shares held by each). Each such Subsidiary is a corporation duly organized, validly existing and in good standing under the laws of its jurisdiction of organization as set forth on Schedule 2, with full corporate power and authority to own its properties and to engage in its business as presently conducted and is not required to qualify or be licensed as a foreign corporation in any other jurisdiction where failure to so qualify could reasonably be expected to have a Material Adverse Effect. Except as set forth on Schedule 2, all of the outstanding capital

NYK 633823-12.056463.0019

CONFIDENTIAL

ISI_0002

particular, the Company makes no reference with respect to (i) any action that may be taken in the future by any governmental authority relating to the regulatory status of the Company or the Purchasers, or (ii) with respect to any information set forth in any projection or financial forecast other than the Projections. With respect to projections and financial forecasts delivered by or on behalf of the Company (including the Projections), the Purchasers acknowledge that there are inherent uncertainties in attempting to make such projections or forecasts.

E.    IN NO EVENT SHALL THE COMPANY BE LIABLE HEREUNDER FOR SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY OR OTHER INDIRECT DAMAGES (INCLUDING, BUT NOT LIMITED TO, LOSS OF OR INTERFERENCE WITH BUSINESS OPPORTUNITY), EVEN IF IT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR LOSSES.

F.    GOVERNING LAW. THIS CLOSING CERTIFICATE AND INDEMNIFICATION AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO THE CONFLICTS OF LAW PRINCIPLES THEREOF.

CONFIDENTIAL

ISI_0002

Dated as of July __, 2000

WEST INDIAN SPACE N.V.

By: _____
　　Name:
　　Title:

By: _____
　　Name:
　　Title:

CONFIDENTIAL

ISI_0002

Accepted and Agreed:

IMAGING HOLDINGS II, L.P., as
Purchaser Representative (on behalf of
itself and the other Purchasers)

By:  Imaging Holdings II , LLC,
    its general partner

By: _____
    Jonathan Berger
    President

CONFIDENTIAL

ISI_0002