## MILBANK, TWEED, HADLEY & McCLOY LLP

1 CHASE MANHATTAN PLAZA

NEW YORK, N.Y. 10005-1413

212-530-5000

FAX: 212-530-5219

LOS ANGELES
213-892-4000
FAX: 213-629-5063

WASHINGTON, D.C.
202-835-7500
FAX: 202-835-7586

LONDON
44-171-448-3000
FAX: 44-171-448-3029

MOSCOW
7-501-258-5015
FAX: 7-501-258-5014

TOKYO
813-3504-1050
FAX: 813-3595-2790

HONG KONG
852-2971-4888
FAX: 852-2840-0792

SINGAPORE
65-428-2400
FAX: 65-428-2500

July 25, 2000

To the addressees listed on Schedule A hereto

Ladies and Gentlemen:

We have acted as special counsel to West Indian Space N.V., a Netherlands Antilles company (the "Company"), in connection with the transactions contemplated by the Amended and Restated Note Purchase Agreement dated as of July 20, 2000, by and among the Company, Imaging Holdings I, L.P., Imaging Holdings II, L.P. Imaging Holdings Related, L.P., and the other Purchasers referred to therein (the "Note Purchase Agreement"). Capitalized terms defined in the Note Purchase Agreement are used with the same meanings, unless otherwise defined, in this opinion letter.

In rendering the opinions expressed below, we have examined (a) the Note Purchase Agreement, (b) the Registration Rights Agreement entered into as of July 25, 2000 by and among the Company, Imaging Holdings I, L.P., Imaging Holdings II, L.P., Imaging Holdings Related, L.P., WIS Partners, L.P. ("WIS Partners"), Financiere Bagatelle, S.A. ("Financiere Bagatelle"), Israel Aircraft Industries, Ltd. ("IAI"), Core Software Technology, Inc. ("CORE"), Electro-Optics Industries, Ltd. ("ELOP"), Merrill, Lynch, Pierce, Fenner & Smith Incorporated ("ML"), U.S. Bancorp Libra, a division of U.S. Bancorp Investments, Inc. ("Libra") and Loyd's Invest (Aerospace) Limited ("Loyd's") (such agreement, the "Registration Rights Agreement"), (c) the Securityholders Agreement entered into as of July 25, 2000 by and among the Company, Imaging Holdings I, L.P., Imaging Holdings Related, L.P., Imaging Holdings II, L.P., WIS Partners, Financiere Bagatelle, IAI, CORE, ELOP, ML, Libra, and Loyd's (the "Securityholders Agreement"), (d) the Warrant to be issued by the Company to the Purchasers pursuant to Section 3.25 of the Note Purchase Agreement (the "Warrant" and, together with the Note Purchase Agreement, the Registration Rights Agreement and the Securityholders Agreement, the "Transaction Documents"), and (e) such corporate records of the Company and such other documents as we have deemed necessary as a basis for the opinions expressed below. In our examination, we have assumed the genuineness of all signatures, the authenticity of documents submitted to us as originals and the conformity with authentic original documents of all documents submitted to us as copies. When relevant facts were not independently established, we have relied

NY1:#3260532v8

upon statements of governmental officials and upon representations made in or pursuant to the Transaction Documents and certificates of appropriate representatives of the Company.

In rendering the opinions expressed below, we have assumed that all of the Transaction Documents have been duly authorized by, have been or will be duly executed and delivered by, and (except as to the Company) constitute legal, valid, binding and enforceable obligations of, all of the parties to such documents, that all signatories to such documents have been duly authorized and that all such parties are duly organized and validly existing and have the power and authority (corporate or other) to execute, deliver and perform such documents.

Based upon and subject to the foregoing and subject also to the comments and qualifications set forth below, and having considered such questions of law as we have deemed necessary as a basis for the opinions expressed below, we are of the opinion that:

(i) The Transaction Documents constitute legal, valid and binding obligations of the Company, enforceable against the Company in accordance with their respective terms, in each case except as may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws relating to or affecting the rights of creditors generally and except as the enforceability of the Transaction Documents is subject to the application of general principles of equity (regardless of whether considered in a proceeding in equity or at law), including without limitation (i) the possible unavailability of specific performance, injunctive relief or any other equitable remedy, (ii) concepts of materiality, reasonableness, good faith and fair dealing and (iii) laws rendering unenforceable (A) the release of a party from, or the indemnification of a party against, liability for its own wrongful or negligent acts under certain circumstances and (B) indemnification contrary to United States federal or state securities laws and the public policy underlying such laws.

(ii) No taxes or other charges, including, without limitation, intangible, documentary, stamp, mortgage, recording or transfer taxes or similar charges, are payable to any United States governmental authority on account of (a) the execution, delivery or ownership of the Transaction Documents, (b) the creation of the indebtedness evidenced by any of the Transaction Documents or (c) the filing, recordation or registration in the United States of any of the Transaction Documents, except for any nominal filing or recording fees.

(iii) The consent by the Company in the Transaction Documents to the jurisdiction of courts sitting in the State of New York is a valid consent to the jurisdiction of such courts.

(iv) Assuming that the documents required to be executed and delivered as of the date hereof pursuant to the Note Purchase Agreement are executed and delivered on or before the date hereof, the execution of the Transaction Documents, the compliance by the Company with all of the provisions thereof and the consummation of the transactions contemplated therein, will not conflict with or result in a breach or violation of any of the terms or provisions of, or constitute a default under, or, except as contemplated in the Transaction Documents, create any Lien on any assets or properties of the Company under any indenture, mortgage, deed of trust, loan agreement or other agreement or instrument known to us to which the Company is a party.

(v)    The execution and delivery by the Company of the Transaction Documents to which it is a party, the performance by the Company of its obligations under such Transaction Documents, in accordance with their terms, and the consummation by the Company of the transactions contemplated therein, do not violate any applicable law, rule or regulation of the United States of America.

(vi)    Neither the execution nor the delivery of the Transaction Documents will require the Company to obtain any license, permit or other authorization from, or make any filing or application with any governmental or regulatory authority in the United States of America, other than those that have been made or obtained.

(vii)    The Company is not an "investment company" or an entity "controlled" by an "investment company" as such terms are defined in the Investment Company Act of 1940.

(viii)    The making of the advances and the application of the proceeds thereof as provided in the Note Purchase Agreement do not violate Regulations T, X or U of the Board of Governors of the Federal Reserve System.

(ix)    Upon due execution and delivery of the Securityholders Agreement by each party thereto, Section 3.8 thereof, which provides for the termination of the agreements listed in clauses (i) through (vi) of such section (the "Terminated Agreements"), will also have the effect from and after the date of the Securityholders Agreement of terminating any preemptive or anti-dilution rights provided for in the Terminated Agreements. Neither entry into the Note Purchase Agreement (including without limitation the issuance of the Notes, the Series D shares and the Warrant thereunder), any other Transaction Document (including without limitation the issuance of the Series B Preferred Shares under the Share Subscription Agreement) nor the performance of any of the Company's other obligations thereunder will, to our knowledge without further inquiry, result in the exercise or grant of any preemptive or anti-dilution rights with respect to the capital shares of the Company, other than such rights as have been waived by the party entitled thereto

(x)    To our actual knowledge here are no legal or arbitral proceedings now pending or threatened against or affecting the Company or any of its property that, if determined adversely to the Company, would have a material adverse effect on the Company or which by their terms request as relief to declare any of the Transaction Documents illegal, invalid or unenforceable.

The foregoing opinions are also subject to the following comments and qualifications:

(a)    The Transaction Documents state that they are governed by and to be construed in accordance with the laws of the State of New York. We have assumed that the Transaction Documents will be governed by and construed in accordance with such laws, and we express no opinion as to whether a court of any other jurisdiction would respect such choice of law.

      (b)      The enforceability of provisions in the Transaction Documents to the effect that terms may not be waived or modified except in writing may be limited under certain circumstances.

      (c)      With respect to our opinion expressed in paragraph (x) above, and with your permission, we have relied on the representations of fact by officer of the Company contained in the representation letter to us dated the date hereof and attached hereto as Exhibit I.

      (d)      With your permission we express no opinion as to the requirement to obtain any license, authorization or approval, or make any filing or application with any governmental or regulatory authority of any jurisdiction with respect to the manufacture, delivery, launch, use or operation of the Satellite or any component part thereof, or the sale of any satellite imagery therefrom.

The foregoing opinions are limited to matters involving the laws of the State of New York, and we do not express any opinion as to the laws of any other jurisdiction. In particular, we express no opinion on the effect of the laws of the Netherlands Antilles or the Cayman Islands on the terms of the Transaction Documents.

This opinion letter is provided to you by us as special counsel to the Company pursuant to the Note Purchase Agreement and may not be relied upon by any other person or for any purpose other than in connection with the transactions contemplated by the Transaction Documents without our prior written consent in each instance.

      Very truly yours,

*Milbank, Tweed, Hadley & McCloy*

PDN/JTO