UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

STEPHEN M. WILSON, *et al.*,                                    Case No: 07-Civ-6176 (LTS)

                    Plaintiffs,

      - against -

IMAGESAT INTERNATIONAL N.V., *et al.*,

                    Defendants.
------------------------------------------------------------------X

## **SUPPLEMENTAL DECLARATION OF PETER VAN SCHILFGAARDE**

PETER VAN SCHILFGAARDE hereby declares, pursuant to 28 U.S.C. § 1746:

    1.    I submit this declaration on behalf of ImageSat International, N.V. ("ImageSat"), Israel Aerospace Industries Ltd. ("IAI"), Elbit Systems Ltd. ("Elbit") (IAI and Elbit collectively referred to as the "Defendant Shareholders"), David Arzi, Yoav Chelouche, Shimon Eckhaus, Moshe Keret, Izhak Nissan, Gino Piperno-Beer, Jacob Weiss, Joseph Gaspar, Joseph Ackerman, Michael Federmann, the Estate of Jacob Toren, and Yehoshua Eldar (collectively, the "Defendants") in connection with the action captioned *Wilson, et al. v. ImageSat Int'l N.V.*, 07 Civ. 6176 (LTS) filed in the United States District Court for the Southern District of New York (the "Wilson Action"). I understand that Messrs. Arzi, Chelouche, Eckhaus, Keret, Nissan, Piperno-Beer, Weiss, Gaspar, Ackerman, Federman, Toren, and Eldar are alleged to be current or former directors of ImageSat and have been sued in that capacity. I refer to them herein collectively as the ImageSat D&Os.

    2.    I submit this second declaration in further support of Defendants' motion to dismiss the complaint. I repeat and reaffirm the statements made in my first declaration sworn to 15 October 2007 (the "15 Oct. Decl."). In preparing this declaration, I have

reviewed the Declaration of Frank Kunneman, sworn to 30 January 2008 ("Kunneman Decl."), the Declaration of Geert T.M.J. Raaijmakers, sworn to 30 January 2008 ("Raaijmakers Decl."), and the relevant cases discussed therein.

I.      The Kunneman declaration

3.      As stated in my first declaration, the relevant landmark case in this matter is HR 2 December 1194, NJ 1995, 288, "Poot/ABP". (*See* 15 Oct. Decl. ¶ 25; *see also* Kunneman Decl. ¶ 24.) In my analysis, this case stands for the proposition that claims against directors for mismanagement may be asserted by shareholders only in the limited circumstances where two requirements are met. First, that a *specific norm of care* in the relation between the director and the shareholder is violated. And second, that the damages claimed must *in principle* be in the form of something other than a devaluation of their shares.

4.      Kunneman disputes the second requirement stating that "[n]owhere in the judgement of the Supreme Court ("Poot/ABP") is such a requirement". (*See* Kunneman Decl. ¶ 39.) I respectfully submit that Kunneman must have overlooked the first two sentences of the third paragraph of the Supreme Court's consideration 3.4.1, which read (in the translation attached as Ex. 2 to the 15 Oct. Decl.) as follows:

> This financial loss by the company will, for as long as it has not been reimbursed, involve a decrease in the value of the shares of the company. However, on the basis of this loss created (initially) for them, the shareholders cannot in principle bring an action for damages against the said third party.

5.      The question whether in the circumstances alleged by Poot an exception to this second requirement (a requirement *in principle*) could be made was discussed by the Supreme Court in consideration 3.4.2. As explained there, and amplified in consideration 3.4.3, the Supreme Court did not have to decide this question because Poot failed to allege

which *specific standard of due care* was owed by ABP towards him in his private capacity thereby failing to satisfy even the first requirement.

6. As pointed out in my first declaration, in subsequent cases, the Supreme Court introduced the term *"afgeleide schade"* (derived damages) in connection with the second requirement *in principle*. (*See* 15 Oct. Decl. ¶ 28.) In "Dohmen/Amersfoortse" (HR 29 November 1996, NJ 1997, 178) and again in "Tuin Beheer" (HR 16 February 2007, NJ 2007, 256) the term *afgeleide schade* is defined as "damages suffered by the shareholder as a result of the devaluation of his shares in the company". Considering Poot/ABP and Tuin Beheer together, I conclude that *in principle* derived damages cannot be claimed.

7. "Derived damages" are sometimes alluded to as the opposite of "direct damages" or "direct detriment". This was done by the Supreme Court in HR 13 October 2000, NJ 2000, 699 (Heino Krause) where the members of the Heino Krause cooperative sought to bring a claim for compensation against the former director of the cooperative (S.) owing to mismanagement in conducting the business of the cooperative, as a result of which the members themselves (also) suffered loss. If the damages can be qualified as direct damages the derived damage doctrine does not apply. But in Heino Krause the Supreme Court ruled:

> Direct detriment is not present, however, if the detriment is caused by the negative operating income as a consequence of mismanagement by the director of the cooperative in his conduct of business, through which the member of the cooperative receives a lower milk fee than he would have received in the absence of that mismanagement. *( par. 3.4)*

and:

> As director employed by the cooperative, D. [sic] was required to endeavour to ensure that the cooperative, in conducting business, would conduct itself in accordance with that standard, [to serve their interests with due care] but that does not mean that he had a specific duty of care toward the individual members that he violated through the alleged mismanagement. *(par. 3.5)*

These rulings are consistent with the Poot/ABP and Tuin Beheer decisions.

8.  Kunneman does mention the concept of "derivative loss" (*afgeleide schade*), Kunneman Decl. ¶ 16(ii), but does not discuss the connection between this concept, i.e. the concept of damages sustained as a result of the devaluation of shares, and the requirement of a specific norm of care.  He does not discuss the Supreme Court cases on this point, Dohmen/Amersfoortse, Tuin Beheer, and Heino Krause.  In light of this, the rather broad statement in paragraph 16(ii) of his declaration that Netherlands Antilles law allows shareholders to recover derivate loss from a director if there is a breach of a specific norm of care owed by the director to the shareholder, is not very instructive.

9.  In paragraph 22, Kunneman cites the "Kip/Rabo" case  (HR 2 May 1997, NJ 1997, 662).  I have reviewed the decision and have not found the ruling that, in Kunneman's words, "any allegation of tortious actions that a director committed against the shareholders, should be taken into consideration when deciding whether any of the shareholders has a derivative claim against such director or former director".  (*See* Kunneman Decl. ¶ 22.)  In that case, the Supreme Court first discusses "Poot/ABP" and then continues (par. 3.6):

> The grounds for the claim of Kip and Sloetjes is however of a completely different nature.  Their assertions come down to this, that the Bank has committed tortious acts towards them personally and that the damage they incurred is the result of a coherent complex of tortious acts on the part of the Bank, which lead not only to a serious devaluation of their shares . . . , but also resulted in a situation whereby they subsequently had to sell said shares – being pressurized by the bank – at a highly unfavourable moment, so that the damage due to the devaluation conclusively impaired their capital and cannot any longer be undone by a possible compensation paid by the bank to the companies of the Group. . . .

The distinction between this kind of case, where a third party committed tortious acts towards the plaintiffs personally, and the Poot /ABP situation is obvious.

10.  The Tuin Beheer decision modified the approach slightly.  That case

concerned certain alleged wrongdoings by a Director. As noted in my first declaration (¶ 29), the Supreme Court in Tuin Beheer took the position that, if the damages claimed appear to belong to the category of derived damages, unless further circumstances are alleged, such as the intent to injure the shareholder financially, it cannot be said that the Director also violated a specific norm of care towards the shareholder. The strong implication is that the fact that the damages claimed are derived damages, severely reduces the possibility that violation of a specific norm of care exists. In this approach, which has not as far as I can see brought any material change, the "requirement in principle" that the damages should not be "derived damages" is absorbed, as it were, by the firm requirement that a *specific norm of care* has been violated. Kunneman's conclusion in paragraph 32, that a violation of a specific norm of care towards a shareholder may justify a claim by a shareholder, would be right if he had taken into account the above-cited cases. As it is, based solely on the prior analysis in his declaration, it is deficient.

11. Kunneman cites the Supreme Court decision of 2 November 2007, NJ 2008,5 ("Kessock"), which was rendered after my first declaration was completed and filed, for the proposition that a violation of a specific norm of care can exist if promises were made by the company to the shareholders thereby creating the expectation of a "certain attitude by the company". (*See* Kunneman Decl. ¶ 28.) As the Kessock case was an action by shareholders against a third party bank, Kunneman is mistaken in his reference to promises by "the company". In Kessock, there was an assumption that the third party bank acted in violation of certain financial agreements with two shareholders personally. According to the Supreme Court, the bank's acts were potentially enough to establish a tort or breach of contract "specifically against" the shareholders. (The term "specific norm of care" is not used in this part of the decision). The case was sent back to the Antilles Court for a further examination of the facts and a further decision. The significant feature of this case was the direct

(possibly contractual) relation between the bank and the two shareholders. This special feature makes the decision of the Supreme Court plausible. As Maeijer points out in his annotation in NJ, the case could be classified as one dealing with "direct damages", to a certain extent comparable to the Kip/Rabo case (HR 2 May 1997, NJ 1997, 662), mentioned above. The same is true for the Nebbeling/Citco case (Court of Appeal of the Netherlands Antilles and Aruba 24 May 2005), mentioned by Kunneman in paragraph 31. I note that I do not find the explicit ruling that "a breach of a contract (between a company and a third party) constitutes a breach of a norm of care against the shareholders", (Kunneman Decl. ¶ 31), in that decision. Regardless, the cases discussed above, including the Kessock decision, do not change the derived damages doctrine set forth in both my original declaration and herein.

12. In the Tuin Beheer approach (detailed above in ¶ 6) the real question is how "specific" the *specific norm of care* must be for a violation thereof to satisfy the first Poot/ABP requirement. Kunneman does not address that. In paragraph 39 of his declaration, he seems to imply that in his opinion the general concept of tort is such a specific norm of care. This cannot be right. The general concept of tort has three categories: (1) violation of a subjective right (such as a share in a company), (2) violation of a statutory obligation and (3) violation of the obligation to act in accordance with rules of social behaviour as defined by unwritten law (my translation). As follows from par. 3.4.3 of the Poot/ABP decision, the first two categories do not play a role in the definition of the *specific norm of care*. Apparently the specific norm of care is connected to the third category. It is my understanding that, within that category, the adjective "specific" indicates that the alleged wrongful act should be specifically wrongful towards the shareholder as the addressee and not merely as part of or a side-effect of the wrongfulness towards the company. This also explains why one must be suspicious of "derived damages". This understanding is supported by the Tuin Beheer decision, in particular paragraph 3.5, and in the annotation thereto in NJ by Maeijer.

13. An instructive case in this regard is the District Court's decision in KPN Qwest. There, Plaintiff represented the minority shareholders against the defendant KPN Qwest. Plaintiff argued that the minority shareholders/investors suffered damages, as a consequence of a substantial decrease of value of the KPN Qwest shares due to the (unexpected) bankruptcy of KPN Qwest. The basis for alleged damages was the tortious conduct of KPN Qwest, its directors, its supervisory directors, and its two majority shareholders, which Plaintiff argued were *de facto* directors. The tortious conduct alleged consisted of, among other things, providing misleading information to shareholders, entering into transactions solely to make the financial position of KPN Qwest look favorable, and performing an acquisition which was only in the interest of the majority shareholder.

14. Plaintiff claimed that the two major shareholders had a dominant influence on the corporation and its management and therefore owed a special duty of care to the creditors and other shareholders. KPN Qwest argued that – in light of Poot/ABP – the minority shareholders could not claim damages caused by a third party (such as the directors) and suffered by the corporation.

15. The District Court held, based on the relevant Supreme Court jurisprudence, that the shareholders do not have a derivative action against the third party who committed a tort against the corporation. This claim lies only with the company or the trustee in bankruptcy. The injured shareholder can only claim damages in the event a specific norm of care owed to such person *in personam* was breached by the third party. They state that according to the Supreme Court, "the mere accusation of the third party of negligent behavior is not sufficient to constitute such breach" against the shareholders or directors. The District Court held that plaintiff did not show which specific duty of due care the board of directors and/or major shareholders had breached vis-a vis the minority shareholders and denied the

request for a preliminary witness hearing.

16.    14. As stated in my initial declaration, shareholders' only duty towards other shareholders is to behave reasonably and equitably. (*See* 15 Oct. Decl. ¶ 39, *citing* art. 2:7 NACC.) In paragraphs 46-49 of his declaration, Kunneman discusses a number of Netherlands company law cases that address the reasonableness and fairness provision of Netherlands company law. None of these cases relate to claims for damages. As it is my understanding that the claims asserted in the Complaint in the Wilson Action are for damages, I believe that the cases cited by Kunneman are irrelevant. And I disagree with Kunneman's conclusion in paragraph 50 that "[b]ased on the above [cited cases] it can well be argued that a competent court applying Netherlands Antilles law can allow the Minority Shareholders to bring claims as asserted in the Complaint as their own and independent action against the Majority Shareholders".

II.    The Raaijmakers declaration

17.    In contrast to Kunneman, Raaijmakers identifies the "derivative loss" doctrine with the Poot/ABP landmark case and correctly stresses the fact that derivative loss can only be recovered by way of exception. (*See* Raaijmakers Decl. ¶¶ 9-11.) However, Raaijmakers' assertion that Poot/ABP decided that there is place for such an exception when the third party also breaches a specific norm of care towards the shareholder is incorrect. As indicated above in paragraph 5 the Supreme Court in Poot/ABP did not address that question.

18.    In paragraphs 17 of his declaration, Raaijmakers draws sweeping conclusions about the allegations in the complaint in the instant action. Notably, he does not conclude that the alleged "severe violation of the minority shareholders' rights" constitutes a violation of a specific norm of care. This is consistent with his statement in paragraph 19 that "the Court should evaluate whether the complete allegations, if proven, would constitute a breach

of a specific norm of care towards a shareholder so as to justify a claim of derivative loss". I agree that it is ultimately the court that decides whether an act violates a specific norm of care. It is my opinion that Raaijmakers' assertion at the end of paragraph 19 that the damages to the options and warrant holders are direct is conclusory and unsubstantiated.

III.    Other shareholders remedies

19.    Kunneman states that because minority shareholders in a Netherlands Antilles company do not have the possibility of an inquiry proceeding as it is known under Dutch law "it may be argued that . . . the corporate rules as applicable in the Netherlands should be applied in the Netherlands Antilles in a substantially less rigid manner than in the Netherlands". (*See* Kunneman Decl. ¶ 19.) Raaijmakers similarly notes that the legal tool of inquire proceedings is not available to shareholders under Netherlands Antilles corporate law. (Raaijmakers Decl. ¶¶ 8, 18.)

20.    I am not aware of any authority for the proposition that the corporate rules as applicable in the Netherlands should be applied in the Netherlands Antilles in a less rigid manner than in the Netherlands. In fact, this would be a violation of the *"concordantiebeginsel"*, discussed in the next paragraph.

21.    In my opinion the non-existence of the inquiry procedure in Netherlands Antilles' company law cannot affect the interpretation and application of the common rules of substantive law, such as the law of torts and the court made laws on derived damages. The rules of substantive law are applied by the regular courts in the Netherlands Antilles, and the application is supervised by the Supreme Court of the Netherlands. The so-called "*concordantiebeginsel*" (principle of concordance), as laid down in the Statute for the Kingdom of The Netherlands (which has the force of a treaty), guarantees to the extent possible that they are interpreted in the same way. The Dutch inquiry procedure offers an

opportunity to have the policy of and the state of affairs within a company investigated. It is not intended to claim damages and it does not change the law of torts or any other substantive law. I do not believe that the non existence of the inquiry procedure in the Netherlands Antilles has any impact on the plaintiffs' remedies as dealt with in this case.

22. In paragraph 18 of his declaration, Raaijmakers notes that the alternative remedies under Netherlands Antilles law are "limited, if not theoretical". I believe this is based principally on ill advice regarding the Netherlands Antilles-specific remedies. The Dutch exit procedure is indeed very cumbersome and does not allow for the recovery of damages as part of the procedure. But the Netherlands Antilles exit procedure, which was introduced in 2004, was structured to expedite the procedure and avoid the above-mentioned weaknesses of the Dutch counterpart. Under the Netherlands Antilles procedure, there are more exit possibilities and damages can be recovered concurrently.

23. Kunneman similarly states that "these alternative possibilities are unreasonably cumbersome and time-consuming." (Kunneman Decl. ¶¶ 16(iv), 51.) Apart from the exit procedure discussed above, Kunneman only mentions the "possibility to contest the decisions of the company". (Kunneman ¶ 52.) This procedure is the same as the one in The Netherlands. I am not aware of any statistics or authority that support Kunneman's suggestion that the procedure, if taken up by an Antillean court, would be more cumbersome or time-consuming than it is in the Netherlands (or in any other country).

24. In addition to the improved exit procedure discussed above, Netherlands Antilles law recognises at least three other rules for the protection of minority shareholder rights that are unknown in the Netherlands. First, article 2:21, 3, d, BWNA provides for the annulment of a decision of a corporate body if there is a breach of a shareholders' agreement as described there. Second, article 2:134,4/234,4 BWNA provides for the annulment of a

resolution for the amendment of the articles which adversely affects the legal position of – among others – a shareholder.  Third, article 2:129/229 BWNA provides that shareholders, who alone or jointly with other shareholders may cast at least ten percent of the votes may, if the management of the supervisory board does not comply with a request to that end, convene a shareholders meeting to discuss or decide about an indicated subject matter *without* judicial intervention, as would be required in The Netherlands.

IV.     Conclusions

25.     As discussed above, it is my opinion that the conclusions drawn by Kunneman regarding the admissibility of plaintiffs' claims against the ImageSat D/Os, the company, and the Defendant Shareholders in paragraphs 32, 36, 37, 42 and 50 are based on a less than thorough analysis of the relevant parts of the law of torts and the Supreme Court decisions regarding derivative damages, and are unsound.

26.     I reconfirm the statements and conclusions in my first declaration sworn to 15 October 2007.  Specifically, I reaffirm that Antilles law would not permit a shareholder to assert a claim against either a director or against the company itself where the alleged misconduct is that director failed to act upon a corporate opportunity or entered into a transaction that caused financial loss to the company and that an action by one shareholder against another can only be brought if exceptional circumstances, such as those described above, are alleged.

I declare under penalty of perjury under the laws of the Unites States of America that the foregoing is true and correct.

Executed on March 17, 2008

_____
Peter van Schilfgaarde