# EXHIBIT 2

NJ 1991/645

---

**SUPREME COURT OF THE NETHERLANDS**
May 17, 1991, No. 14 257
(Snijders, Esq., Bloembergen, Esq., Roelvink, Esq., Davids, Esq., Heemskerk, Esq.; A-G Mok, Esq.; with notes from Ma)
RvdW 1991, 123

**Netherlands Civil Code (BW) Arts. 2:7, 11; Netherlands Code of Civil Procedure (Rv) (old) Art. 399**

[Abstract] Corporate law. Resolution of the general shareholders' meeting; good faith/reasonableness and fairness. Cassation; interest.
Appellant contests the resolution to amend the company's articles of incorporation (replace pre-emption rights with approval by the general shareholders' meeting) in preparation for the sale, contested by Appellant, of the shares in the company because it violates good faith, reasonableness and fairness and the duty of care owed to him.
There is no difference in meaning between the "reasonableness and fairness" in Art. 2:7 and the "good faith" in Art. 2:11 (1) BW.
It would be improper to find that a negative reply to the question whether, in arriving at its resolution, the general shareholders' meeting violated the principle of good faith as referred to in Art. 2:11 would still leave room for an affirmative answer to the question whether the meeting acted contrary to the duty of care owed to Appellant.
Weighing of Appellant's interests against those of the vast majority of the shareholders and the company, with the Court of Appeals not having violated any rule of law.
No interest in a cassation complaint (valid per se) that the Court of Appeals made no decision on the claim for compensation since a *rekest civiel* [petition to reverse the judgment] was available.

[Text] Leo Bernard Lampe, of Amsterdam, Cassation Appellant, prior counsel J. Voute, Esq., present counsel A.D. Blees, Esq.,
v.
Tonnema BV, of Sneek, Cassation Appellee, prior counsel J. Wuisman, Esq., present counsel J.K. Franx, Esq.
The Court:
Grounds for appeal
Lampe and the foundation submitted the following grounds for appeal:
Ground I: In No. 1 (a) through (n), the lower court erroneously made an entirely incomplete and therefore arbitrary enumeration of established facts.
Ground II: The lower court erroneously determined that it would not take into consideration Lampe's complaints against the conduct of the supervisory board and the management board of Tonnema relating to the sale of the shares and the amendment of the articles of incorporation because the matter did not involve any conduct or decision of these boards of Tonnema but the decision of the shareholders.
Ground III: The lower court erroneously determined as follows:
"In addition, because of the summary judgment proceedings held, (...) the shareholders, inter alia, were aware of the Appellants' objections."
Ground IV: The lower court erroneously determined that the shareholders were also informed of Lampe's objections because of Lampe's intervention at the meeting of February 3, 1988.
Ground V: The lower court erroneously determined that, by approving the amendment to the articles of incorporation and the transfer of the shares, the general shareholders' meeting sanctioned the supervisory board's conduct as to amending the articles of incorporation.
Ground VI: The order erroneously suggests that the shareholders approved the amendment to the articles of incorporation despite the fact that, because of the summary judgment proceedings held and the meeting of February 3, they, inter alia, were informed of Lampe's objections.
Ground VII: The lower court erroneously determined that:

"Even if the shareholders had accepted Lampe's bid and the sale of the shares had meant the end of Tonnema BV as the company of the De Vries family, the end as a typical family business [sic]. (...) The pre-emption right which Lampe invokes based on the old articles of incorporation could then only mean that, by making an offer to him, a higher price could be obtained for the shares."

Ground VIII: In point 7 of the trial court's order, said court determined that, merely on the basis of the consideration reproduced in point 6 of the order, Appellant 2 could not be considered an interested party as referred to in Art. 2:11 BW.

Ground IX: The lower court erroneously answered in the negative the question whether the general shareholders' meeting held on February 3 acted contrary to good faith based on the following facts:

a. The shareholding in Tonnema was distributed among a large number of persons;
b. The shareholders were (as indicated by the surveys) divided regarding the policy to be conducted;
c. The family was not in a position to provide for adequate management and capital in the future;
d. All shareholders, except for Lampe, representing approximately 98.5% of the outstanding capital, wished to sell their shares on condition that a number of requirements be satisfied (employment opportunities, preservation of trademark position and Dutch character); the bid by Van Nelle Holding NV, hereinafter also called "Van Nelle," satisfied these requirements;
e. Lampe's bid (made without these guarantees) was rejected by the remaining shareholders;
f. Tonnema's works council had no confidence in Lampe.

Ground X: The lower court erroneously determined that a stalemate arose because of Lampe's invocation of his pre-emption right, on the one hand, and the rejection by the remaining shareholders, on the other hand.

Ground XI: The lower court erroneously assumed that Van Nelle's bid met all the conditions imposed on it.

Ground XII: The lower court erroneously determined as follows:

"Finally, the [trial] court also deemed it important that the background to Lampe's position (...) was based on his belief that Van Nelle Holding NV's bid is lower than that which other potential buyers would want to pay. Under that viewpoint, Van Nelle Holding NV's bid would be lower than the value attributable to the shares of Tonnema BV. If this standpoint is correct, then that will be evident if Van Nelle Holding NV exercises the right that, in principle, it holds to buy out Lampe."

The judgment on the grounds for appeal with respect to Ground I:

1. Given that Lampe, or the foundation as the case may be, in their notice of appeal (and likewise immediately thereafter in the statement of appeal), supplemented their complaint and Tonnema failed to object to it in the manner required by law, the Court of Appeals will give judgment on the supplemented complaint.

In reference to Ground VIII, which must be dealt with first of all since it concerns the entitlement of one of the parties to bring an action:

2. Unless it is stated or demonstrated that the foundation could be considered an interested party as defined by Art. 2:11 (2) BW for any reason other than its purpose under its articles of incorporation, as it is described in the notice in the first instance, the foundation has been rightly declared to have no cause of action with respect to its claim. After all, the matter at stake in that claim is the interest of an individual shareholder—who was already involved as a party in the proceedings—vis-à-vis the interests of virtually all of his fellow shareholders. Therefore, this is not a matter of representativeness or of a combination of interests (to be understood to mean that the nature of the interests to be served is such that they can be submitted to the judge as a combined interest). This fact alone precludes the entitlement of the foundation to bring an action. This ground for appeal is denied.

In reference to Ground I:

3. To the extent that the ground complains that the lower court pointed to certain facts, but not others, as having been established, the Court of Appeals notes that the lower court was at liberty to cite the former as such and the latter not as such insofar as the lower court was of the opinion that it could base its judgment merely on the former without thereby coming into conflict with the latter. In that case, the ground for appeal is denied.

To the extent that the ground for appeal complains that the lower court, as evident from the enumeration used by it, erroneously failed to address certain facts in forming its opinion and that the lower court erroneously regarded the fact cited by it in (d) as established, the Court of Appeals will, where necessary, examine and weigh these facts again when assessing the other grounds for appeal. Therefore, this ground requires no additional treatment.

In reference to Grounds II, III, IV, VI, VII, IX and X, which lend themselves to combined treatment:

4. The concerned pre-emption rights clause in the articles of incorporation to be amended did not enjoy any absolute protection in the sense of a unanimous resolution of the general shareholders' meeting being required in order to amend the same. This means that, from the moment he joined the ranks of the shareholders of Tonnema, Lampe should have borne in mind the fact that, given the composition of the general shareholders' meeting of the family business, which Tonnema is, and the individual qualities and desires of these very shareholders as well as his own purchase of a small block of shares and thus slight voting power, he could face an amendment to the articles of incorporation with respect to the pre-emption rights clause.

To that extent, Lampe can scarcely complain that, on the one hand, the lower court attached no weight to the concerned pre-emption rights clause as a guarantee for Lampe, that Tonnema would remain a family business, and that Lampe's opinions regarding the identity and quality of new shareholders would at all times prevail, and, on the other hand, that the lower court considered Lampe's interest rather in the context of obtaining a high price for his shares.

5. Given the fact that, for reasons of their own, the vast majority of the shareholders of Tonnema wished to sell their shares and the same majority, for—even in the eyes of the Court of Appeals—proper (as this also involved the continuity of the Tonnema company and the employment there, as well as the uncertainty of Lampe's plans), reasonable and therefore acceptable grounds, could see no benefit to Tonnema in the person and intentions of Lampe and therefore also chose not to transfer their shares in Tonnema to Lampe, for the majority, there was no alternative other than the one chosen and, considering the foregoing, the majority was also at liberty to pursue that course.

Thus, the challenged conduct can in no way be said to have been solely intended to frustrate Lampe's rights. Therefore, the accusation made by Lampe of conduct contrary to good faith is also incorrect.

6. In the attendant circumstances outlined by Lampe in this matter, of which this is actually the most important one, that the shareholders did not share Lampe's objections to the proposal of the management board and the supervisory board of Tonnema to the extent that they nevertheless approved that proposal, the Court of Appeals can find no support for Lampe's argument that the shareholders lacked sufficient background information (which the Court of Appeals, for lack of more specific details from Lampe, interprets as corporate insight) as well as knowledge and capacity for judgment regarding the problems at hand and therefore could not and did not make a well-founded decision.

Furthermore, based, inter alia, on Mr. Smit's written summaries of the arguments in the first instance, it can be inferred that Lampe or his counsel or both of them had ample opportunity, insofar as they had not already addressed the individual shareholders in writing to that end, to explain their position, though it is also evident that, during the meeting, the shareholders were given some additional time for consideration.

7. Insofar as the Court of Appeals has determined in the foregoing that, upon sufficient reflection, adequately informed shareholders made a well-considered decision, that determination also implies that the Court of Appeals did not find that these shareholders made their decision under the influence of certain conduct of which Lampe accused the management board or the supervisory board of Tonnema.

8. Like the other grounds for appeal, Ground II is also denied because it lacks merit.

In reference to Ground V:

9. Also in view of the considerations set forth in ground 7 for the decision, we must find that this ground for appeal is also without merit and is therefore denied.

In reference to Ground XI:

10. Insofar as the issue in dispute is whether or not practices were conducted contrary to good faith in connection with a decision to amend the articles of incorporation of Tonnema and a judgment has already been delivered on that point by the Court of Appeals in the foregoing grounds for the decision, the follow-up question included in this ground for appeal can be disregarded as irrelevant, especially since—this argument not having been disputed by Tonnema—at the general shareholders' meeting held on March 29, 1988, Lampe himself voted in favor of the proposal to transfer shares to Van Nelle.
This ground for appeal is denied.
In reference to Ground XII:
11. Since, for reasons explained in ground 5 for the decision, the Court of Appeals is of the opinion that the challenged amendment to the articles of incorporation can continue to exist, the Court of Appeals can confine itself to the judgment that it agrees with the finding of the lower court that is challenged in the ground for appeal. The procedure initiated by Van Nelle to buy out the shareholder Lampe offers the latter sufficient certainty that his interests have been given adequate consideration.
This ground for appeal is also denied.
12. Since none of the grounds for appeal raised succeeds for purposes of reversing the appealed decision, the latter will be affirmed, and Lampe and the foundation, as unsuccessful party, are instructed to pay the costs of the appellate proceeding. (etc.)
Ground for appeal in cassation:
Infringement of the law and/or non-compliance with procedural requirements, the non-observance of which results in nullity because the Court of Appeals, on the grounds contained in its decision and to be deemed as adopted herein, decided as was done in the contested decision, for one or more of the following reasons, to be read, where necessary, in connection with each other.
1. In the initial notice, Lampe demanded the nullification of the resolution of the general shareholders' meeting of Tonnema BV dated February 3, 1988, which served to amend Art. 8 of the articles of incorporation, as being contrary to good faith as referred to in Art. 2:11 BW, contrary to reasonableness and fairness as referred to in Art. 2:7 BW, and furthermore unlawful toward Lampe.
2. In ground 5 for its decision, the Court of Appeals denied the claims by finding that the accusation expressed by Lampe of conduct contrary to good faith was incorrect. The Court of Appeals based its judgment on the fact that, for reasons of their own, the vast majority of the shareholders of Tonnema wished to sell their shares and that, for reasons the Court of Appeal viewed as proper, reasonable and therefore acceptable, the same majority could see no benefit to Tonnema in the person and intentions of Lampe and therefore also chose not to transfer their shares in Tonnema to Lampe, and there was no alternative other than the one chosen and, consequently, the majority was also at liberty to pursue that course. Thus, it was also clear to the Court of Appeals that the challenged conduct could not be said to be solely intended to frustrate Lampe's rights.
3. Reproduced in pertinent part, the view of the Court of Appeals is essentially that the disputed resolution of the general shareholders' meeting of Tonnema BV to amend the articles of incorporation was not contrary to good faith since the majority of the shareholders had proper, reasonable and therefore acceptable reasons.
4. In violation of the law and by misjudging its duty of substantiation, the Court of Appeals failed to decide on Lampe's appeal invoking a violation of Art. 2:7 BW and Art. 1401 BW, since, according to its terminology and content as incorporated in ground 5 for its decision, the decision of the Court of Appeals solely relates to the issue whether the resolution of the general shareholders' meeting of February 3, 1988 was contrary to good faith as referred to in Art. 2:11 BW, an issue which is different and narrower than the one addressed by the question whether, as a whole, the conduct of (the general shareholders' meeting of) Tonnema BV was contrary to the reasonableness and fairness owed to Lampe or was unlawful vis-à-vis Lampe. Therefore, Lampe's claims seeking nullification of the aforementioned resolution and/or compensation of the loss incurred by Lampe (a claim with which Lampe supplemented his claim on appeal) should have been granted or examined or at least should have been addressed in the decision.
5. If, indeed, the Court of Appeals meant that, under the circumstances relevant in this matter, including the fact that the majority of the shareholders wished to sell their shares, which majority,

by virtue of the articles of incorporation of Tonnema BV that were in force prior to February 3, 1988, were required to offer their shares first to their fellow shareholders, as well as the fact that their fellow shareholder Lampe, under the circumstances, was willing and ready to exercise his rights under the applicable pre-emption rights clause in the articles of incorporation and purchase the shares to be offered, which the majority wished to prevent, a shareholders' meeting was permitted in order to decide on an amendment to the articles of incorporation as resolved on February 3, 1988, that judgment is incorrect and furthermore unclear.

6. The amendment to the articles of incorporation at issue affects not only the core of the association between the shareholders internally and the family company, as Tonnema BV was at the time, but also concerns Lampe's interests directly because the amendment to the articles of incorporation prevents him from exercising his intention and willingness as described above and places him in a position in which he can be forced to transfer his shares based on the shareholding of less than 5% of the stock remaining for him. A resolution of this sort by the general shareholders' meeting of Tonnema BV is, under the circumstances—despite what the Court of Appeals obviously believes—contrary to good faith and unlawful vis-à-vis Lampe.

7. The Court of Appeals assumes that, in making the resolution to amend the articles of incorporation on February 3, 1988, the general shareholders' meeting of Tonnema BV had proper, reasonable and therefore acceptable grounds. According to the Court of Appeals, these grounds included the continuity of the Tonnema business and the employment there, as well as the uncertainty of Lampe's plans.

Lampe (as well as a fellow shareholder, as evident from the minutes of the meeting of February 3, 1988) argued that the conduct of (the general shareholders' meeting of) Tonnema BV was intended to frustrate Lampe's rights.

a. If the Court of Appeals' judgment is to be read such that, even if this was the objective of (the general shareholders' meeting of) Tonnema BV, the accusation of contrariness with good faith is incorrect, the decision of the court below is in conflict with the law and/or is unclear.

b. Furthermore, it unclear why the Court of Appeals, on the one hand, indeed accepts that the aforementioned grounds, which the Court of Appeals regarded as proper in its own view, stood at the foreground of the contested acts of (the general shareholders' meeting of) Tonnema BV, but, on the other hand, does not accept that the true motives and grounds were the (sole) objective for purposes of frustrating Lampe's rights, as Lampe stated and offered to prove. Consequently, the decision of the court below on this matter fails to provide sufficient insight or lacks sufficient justification.

c. The statements made in (b) above are all the more applicable since the Court of Appeals erroneously failed to examine in any way whether the grounds put forward by Tonnema BV and contested by Lampe actually formed the grounds for the challenged conduct of (the general shareholders' meeting of) Tonnema BV, which, in light of all the circumstances, including those discussed in point 5 above, is extremely unlikely.

d. Finally, the Court of Appeals does not make it clear, nor is it [otherwise] comprehensible why the reasons that motivated the majority of the shareholders of Tonnema BV left the majority of the shareholders no other course than that of the challenged amendment to the articles of incorporation, as understood by Lampe. Even Lampe invoked the interests of the corporation by, for example, pointing out the preservation of the family character that the corporation had always had, and there did not need to be any uncertainty about the employment, although even the legitimate interests of the majority of the shareholders, by complying with the then-existing pre-emption rights clause in the articles of incorporation of Tonnema BV, would in no way experience a legally relevant loss, since even the pre-emption rights clause provided sufficient guarantees for a correct valuation of shares to be transferred by the majority of the shareholders to Lampe, or, if Lampe ultimately could not or would not purchase [them], for a transfer of the shares to a third party. Furthermore, in that case, the reasons signaled by the Court of Appeals by no means justify that solely the interests of the majority of the shareholders concern such vital interests of Tonnema BV that, when weighing the grounds and the interests of Lampe, the interests of the majority of the shareholders and/or Tonnema BV, as these are regarded by the latter, should take precedence and make incontestable a decision that, in principle, is voidable or unlawful with

respect to Lampe.

In other words, if we review the interests which Lampe invoked (the interest of the corporation and the rights obtained under the articles of incorporation existing at the time) and the interests invoked by the majority of the shareholders of Tonnema BV (the interest of the corporation and potential additional surplus proceeds of the shares beyond their actual value in the event of transfer to a third party), then, unlike the Court of Appeals' opinion, which is contrary to law or at least is not substantiated with sufficient clarity, the conclusion should have been, that, when weighing the interests, the amendment to the articles of incorporation selected by the majority of the shareholders was intended, either alone or in conjunction with other factors, to frustrate Lampe's rights, which could never justify the resolution to amend the articles of incorporation vis-à-vis Lampe.

8. Furthermore, in the grounds for its decision, the Court of Appeals misjudges that, when weighing Lampe's interests, the interests of the majority of the general shareholders' meeting, and the interests of Tonnema BV, it is not necessary to examine, as far as Lampe's interests, whether the challenged conduct of the general shareholders' meeting was solely intended to frustrate Lampe's rights. The Court of Appeals should have examined whether the challenged conduct was also intended to frustrate Lampe's rights or at least also resulted in the frustration of those rights, which is likewise contrary to good faith and/or unlawful toward Lampe.

9. Based on the foregoing, the Court of Appeals should not, at least without further substantiation in ground 10 for its decision, have rejected Ground XI.

10. Likewise, based on all the foregoing, the Court of Appeals should not, at least without further substantiation, have rejected Ground XII or at least should not have confined itself to the judgment that the Court of Appeals agreed with the contested determination of the lower court.

11. By means of Ground XII against the finding of the court of first instance, Lampe also (see the explanation of that ground on p. 17 of Appellant's statement of grounds) objected to the fact that the lower court held that Lampe had no interest in his claim, the lower court having relied on the fact that, after the amendment to the articles of incorporation and after the transfer of the shares to a third party, Lampe was sure to be bought out by the third party since his remaining percentage in the stock of Tonnema BV would be less than 5%. In ground 11 for its decision, the Court of Appeal makes no statement about this element of the ground for appeal, and the finding that the Court of Appeals makes there has no bearing whatsoever on that element. If any of the aforementioned elements of the argument should result in cassation of the decision of the Court of Appeals, then a more detailed decision must be made on the point in question.

12. Likewise, in violation of the law and by misjudging its duty of substantiation, the Court of Appeals issued a judgment or decision on the compensation (claimed in the amendment to the complaint) of the loss that Lampe incurred as a result of the conduct of (the general shareholders' meeting of) Tonnema BV, along with statutory interest, an amendment which the Court of Appeals, in ground 1 for its decision, expressly allows with the statement that the Court of Appeals will give judgment on the supplemented complaint, whereas thereupon, the Court of Appeals only issues a judgment on the grounds for appeal brought forward, according to which the decision of the court of first instance is affirmed, in which the lower court (had) still not issued a judgment on the supplemented complaint on appeal.

Supreme Court of The Netherlands:

1. The proceedings in the fact-finding instances

Via a writ dated February 22, 1988, Cassation Appellant, hereinafter called "Lampe," together with Stichting Eigenaren Familiebedrijven, hereinafter called "the Foundation," served Cassation Appellee, hereinafter called Tonnema, with notice of accelerated proceedings before the Court of Leeuwarden and demanded that the resolution of the general shareholders' meeting of Tonnema BV of February 3, 1988, which served to amend Art. 8 of the company's articles of incorporation, be nullified or declared void.

After Tonnema had advanced a defense against the claim, the court of first instance, by order dated June 23, 1988, declared the Foundation unentitled to bring its claim and dismissed Lampe's claim.

Lampe and the Foundation filed an appeal against that order with the Court of Appeals of Leeuwarden; at the same time, they supplemented their claim with a claim for compensation of the losses they had incurred as a result of Tonnema's conduct.

In a decision dated June 28, 1989, the Court of Appeals affirmed the contested order.
(...)
3. Assessment of the appeal
3.1. The following may be assumed in this cassation.
Lampe holds 150 of the 9,600 issued shares of stock of Tonnema. Half of the issued shares of Tonnema were held by descendants of N.J. de Vries, including Lampe, and the other half by descendants of P.J. de Vries.
At a general shareholders' meeting of Tonnema held on December 10, 1986, a tentative decision was made to study the possibility of selling all of the shares to a third party. Lampe was not present at that meeting.
At the general shareholders' meeting of April 24, 1987, at which Lampe *was* present, the possibility of selling the shares to a third party came up for discussion again. At that time, Lampe did not let it be known that he was opposed to such sale.
At the general shareholders' meeting of January 6, 1988, the firm of Pierson, Heldring en Pierson NV, which was tasked with conducting a study as described above, gave a report. An offer of NLG 26 million was made, one which furthermore satisfied the criteria that were defined at a meeting of the management board, supervisory directors and a liaison committee of shareholders, at which each of the two groups of shareholders was represented.
At the meeting or shortly thereafter, all of the shareholders but Lampe signed a statement agreeing to the sale of all shares for at least NLG 26 million and issued a power of attorney to conduct negotiations, sign a sale agreement, and deliver the shares on their behalf. During that meeting, Lampe invoked the pre-emption rights clause then included in Art. 8 of the articles of incorporation of Tonnema, according to which any shareholder wishing to transfer his shares to a third party must first offer them for sale to his fellow shareholders.
After the meeting, the supervisory board and the management board of Tonnema drafted an amendment to its articles of incorporation in which the aforementioned pre-emption rights clause would be replaced by a provision stating that a transfer of shares requires the approval of the general shareholders' meeting. The shareholders were invited to attend a special general meeting to be held on February 3, 1988 at which this proposal to amend the articles of incorporation was to come up for discussion.
Thereupon, in summary judgment proceedings, Lampe demanded an order that the handling of the amendment to the articles of incorporation be deferred. By order dated February 3, 1988, Lampe's claim was dismissed.
At the general shareholders' meeting held on February 3, 1988, Lampe expressed his position and requested that the handling of the amendment to the articles of incorporation be deferred. Despite that request, the meeting dealt with the amendment to the articles of incorporation, and, with 8,650 votes in favor and 830 against [the proposal], resolved to amend the articles of incorporation in accordance with the proposal.
Via a letter dated March 23, 1988 to the shareholders of Tonnema, Lampe submitted a bid for NLG 3,125 per share. None of the shareholders appeared to be willing to accept that bid.
The employees' organizations, the works council of Tonnema and the central works council of Van Nelle Holding NV made a positive recommendation on a potential transfer of the shares of Tonnema to Van Nelle Holding NV. Furthermore, the works council of Tonnema let it be known that it had no confidence in Lampe and no interest in consulting with him.
At the general shareholders' meeting of Tonnema held on March 29, 1988, the approval required by the articles of incorporation was unanimously given (8,800 votes, including that of Lampe) for the sale of the shares to Van Nelle Holding NV. Before that approval was dealt with, Lampe had given a detailed explanation concerning his objections to the manner in which the supervisory board and the management board had acted regarding the sale of the shares to a third party; he pled for a deferral of the vote on the approval, but the remaining shareholders present were not in favor of a deferral.
On March 31, 1988, Van Nelle Holding NV purchased all outstanding shares of Tonnema except for that of Lampe, who had not unconditionally accepted the bid made by Van Nelle Holding NV, and paid the purchase price to the sellers.
Lampe lacks sufficient assets to submit a bid for the shares of Tonnema on his own, [i.e.,] independently of one or more third parties.

In this action, Lampe demands that the aforementioned resolution to amend the articles of incorporation be nullified or declared void, stating that this resolution is contrary to good faith, reasonableness and fairness and the duty of care owed to Lampe because, as the lower court summed up Lampe's argument in ground 2 for its decision, the resolution "(had) no purpose other than to invalidate the pre-emption right to which Lampe was entitled."

Ruling that the general shareholders' meeting had not acted contrary to good faith and therefore not unlawfully toward Lampe, the lower court dismissed the claim.

On appeal, Lampe supplemented his demand with a claim for compensation. The Court of Appeals rejected all of Lampe's grounds for appeal and affirmed the order of the lower court without expressly deciding on the claim for compensation.

3.2. Section 4 of the argument (sections 1 through 3 do not contain any complaints) reproached the Court of Appeals for having failed to decide on Lampe's appeal invoking a violation of Art. 2:7 BW and Art. 1401 BW.

This reproach is unfounded. After all, the Court of Appeals' judgment (ground 5) that conduct contrary to good faith is absent here comprises the judgment that this conduct is not contrary to the reasonableness and fairness referred to in Art. 2:7 or the standard of care arising from Art. 1401.

In contrast to the argument made in the aforementioned section of the argument, the issue whether the resolution to amend the articles of incorporation is contrary to good faith as referred to in Art. 2:11 is not a "different and narrower" issue than the issue whether the conduct of the general shareholders' meeting is contrary to the reasonableness and fairness referred to in Art. 2:7. As is evident from the history of the establishment of Art. 2:7, the term "reasonableness and fairness" in this article is a reflection of "the objective significance pertaining to good faith in Art. 1374 (3) BW in accordance with the established case law of the Supreme Court" (quotation from the report of an oral deliberations concerning Art. 2.1.7b amended draft of Book 2, Parliamentary History NBW, Book 2, p. 136).

Nor would it be proper to find that a negative reply to the question whether, in arriving at its resolution, the general shareholders' meeting violated the principle of good faith as referred to in Art. 2:11 would still leave room for an affirmative answer to the question whether the meeting acted contrary to the duty of care owed to Appellant. To the extent that the aforementioned section seeks to argue that the latter concerns more practices than the mere resolution ("the entire conduct"), that section likewise fails since it does not indicate the other practices to which it refers. Moreover, on appeal, Lampe did not advance any ground for appeal against the judgment of the lower court (ground for appeal 10, last sentence) that the general shareholders' meeting had not acted unlawfully toward Lampe since it had not acted contrary to good faith. And, not surprisingly, after having found that conduct contrary to good faith was not involved, the Court of Appeals was not called upon to separately examine the issue whether it could nevertheless be said that the general shareholders' meeting acted unlawfully toward Lampe.

Therefore, the section in question fails.

3.3. Sections 5 and 6 seek to argue that the Court of Appeal's judgment that the resolution to amend the articles of incorporation is not contrary to good faith is incorrect and incomprehensible.

This argument fails. The Court of Appeals has not demonstrated an incorrect view regarding the requirements of good faith. The Court of Appeal's judgment is property substantiated in grounds 4-7 of the contested decision. The Court of Appeals needed not be dissuaded from its opinion by the circumstances referred to in the aforementioned sections, apart from the fact that, contrary to the presumption clearly made in those sections, on appeal, it cannot be assumed to have been established that Lampe was not only prepared but was actually in a position, with the help of third parties, to purchase the shares of his fellow shareholders.

Otherwise, the correctness of the Court of Appeals' judgment, interwoven as it is with assessments of a factual nature, cannot be reviewed in cassation.

3.4. Section 7 contains complaints essentially implying that the Court of Appeals assigned insufficient weight to the circumstance that Lampe's rights resulting from the pre-emption rights clause existing in the articles of incorporation prior to the amendment were invalidated by the amendment to the articles of incorporation.

The complaints miss their target. In ground 4 for its decision, the Court of Appeals, after having found that, from the beginning of his shareholding, Lampe had to bear in mind the possibility that

the pre-emption rights clause might be amended by a majority decision, subsequently, in ground 5 for its decision, explained why, in the Court of Appeals' opinion, the vast majority of the shareholders were at liberty to resolve to make the amendment in question. The findings in this respect include the fact that the Court of Appeals weighed Lampe's interest in the preservation of his rights resulting from the pre-emption rights clause against the interests of the vast majority of the shareholders and of the business, a weighing which came out against Lampe. Thus, the Court of Appeals did not violate any rule of law. Its findings are not unclear and do not require further development.

Insofar as section [7] assumes that the Court of Appeals found that the only intention of the other shareholders was to frustrate Lampe's right, that assumption is based on an erroneous reading of the Court of Appeals' decision.

Therefore, the section in question is not subject to cassation.

3.5. Section 8 incorrectly presumes that the Court of Appeals did not examine whether the conduct of the general shareholders' meeting was also aimed at, or at least resulted in, the frustration of Lampe's rights. The Court of Appeals assumed that the amendment to the articles of incorporation served to cancel Lampe's aforementioned rights, however not as the ultimate objective but as a necessary means to make the actual goal—the planned transfer of the shares to a third party—achievable. By making a decision on this ground, as it did, the Court of Appeals did not violate any rule of law.

Therefore, the section in question was put forward in vain.

3.6. Sections 9 and 10 have no independent relevance and thus require no discussion.

3.7. Section 11 complains that the Court of Appeals failed to address an element of Ground XII but adds that a more detailed decision must follow if any of the sections preceding section 11 results in cassation. Since that is not the case, the complaint is irrelevant, and the section in question can remain unaddressed.

3.8. Section 12 complains that the Court of Appeals failed to give judgment on the claim for compensation with which Lampe, on appeal, supplemented his demand. The complaint is valid per se, but, based on the provisions of Art. 399 Rv, it cannot result in cassation since the legal remedy of *rekest civiel* [petition to reverse a judgment] was available to Lampe pursuant to the preamble to Art. 382 and under 4e Rv.

3.9. Therefore, the argument cannot succeed, and consequently, the appeal must be denied.

4. Ruling

The Supreme Court:

denies the appeal;

orders Lampe to pay the costs of the cassation proceedings, computed, up to the point of this judgment, at NLG 456.30 in out-of-pocket expenses and NLG 2,500 in attorney's fees for Tonnema.

[Opinion] Findings of A-G Mok, Esq.:

1. Facts

1.1. The close corporation Tonnema, currently the Cassation Appellee, had 9,600 voting shares at the time, which were held by members of (various branches of) a family. Lampe, the Cassation Appellant, is a member of that family; he held 150 shares.

During a general shareholders' meeting (G.S.M.) of Tonnema held on December 10, 1986, the shareholders tentatively resolved to study the possibility of selling all shares in Tonnema to a third party.

1.2. Subsequently, a meeting of the management board, the supervisory board and a shareholders' liaison committee established by the G.S.M., resolved to award the bank Pierson, Heldring en Pierson NV (PHP) a contract to concretely develop a study on the sale of the shares that assumed the following factors:

- optimal price,
- guarantees of the continuity of employment at the company's place of business in Sneek,
- preservation of the trademark's position,
- preservation of the Dutch character of the business.

1.3. At a meeting of the G.S.M. held on January 6, 1988, PHP presented a report on its study. A

bid (which later proved to have been submitted by Van Nelle Holding NV, hereinafter called "VNH") was submitted in the amount of NLG 26 million and furthermore satisfied the requirements reproduced above.

All of the shareholders, except for Lampe, signed a statement agreeing to the sale of all shares in Tonnema for at least NLG 26 million. They issued a power of attorney to conduct negotiations, sign a sale agreement and deliver the shares on their behalf.

1.4. Lampe invoked a pre-emption rights clause contained in the articles of incorporation of Tonnema (pursuant to Art. 2:195 BW), consisting of an obligation to offer shares to [existing] shareholders in connection with a planned sale to one or more third parties. (The articles of incorporation are part of the case documents. They form part of the case documents of a summary judgment proceeding (produced with written summary of the argument) conducted between the parties and submitted in the proceedings before the court of first instance (through an instrument dated April 8, 1988). Article 8 (1) of the articles of incorporation read as follows at that time:

"Every shareholder is at liberty to transfer one or more of his shares to his spouse or to his blood relatives in the direct line or to a fellow shareholder.

Any other transfer of shares may only take place after the shares have been offered for sale to the other shareholders in the manner specified below.")

The supervisory board and the management board then prepared an amendment to the articles of incorporation in order to replace the pre-emption rights clause contained in the same with an approval provision. The shareholders were invited to a special G.S.M. to be held on February 3, 1988 at which they were to resolve on the proposed amendment to the articles of incorporation. Lampe initiated a summary judgment proceeding against Tonnema and the directors of its supervisory board (see preceding note) in which Lampe demanded that handling of the amendment to the articles of incorporation be deferred. The presiding judge president of the Court of Leeuwarden denied the claim by order dated February 3, 1988.

At the G.S.M. held on February 3, 1988, the shareholders resolved, with 8,650 votes in favor and 830 votes against [the proposal], to amend the pre-emption rights clause such that the sale of shares to third parties would be subject to the approval of the G.S.M.

1.5. After the employees' organizations, the central works council of VNH and the works council of Tonnema made a positive recommendation on the transfer of the shares of Tonnema to VNH, the G.S.M. of Tonnema unanimously approved on March 29, 1988 the transfer of the shares to VNH.

At that meeting, Lampe spoke in detail regarding his objections to the course of business and pled for a deferral. However, in the end, when it was evident that the majority did not desire a deferral, he nevertheless voted in favor.

2. Course of the proceedings

2.1. On February 22, 1988, Lampe (together with a fellow shareholder, Stichting Eigenaren Familiebedrijven, which is no longer involved as a party to the proceedings in cassation) served Tonnema with notice of accelerated proceedings before the Court of Leeuwarden. Lampe demanded that the amendment to (the pre-emption rights clause of) Art. 8 of the articles of incorporation of Tonnema be nullified or declared void.

By order of June 23, 1988, the court denied Lampe's claim (and declared the co-plaintiff unentitled to bring its claim.)

2.2. Lampe and his co-plaintiff appealed the lower court's decision to the Court of Appeals of Leeuwarden. At the same time, they supplemented their demand with a claim for compensation of the losses they had incurred because of Tonnema's conduct.

By decision of June 28, 1989, the Court of Appeals affirmed the order of the lower court.

2.3. Lampe filed a (timely) appeal in cassation against that decision, based on an argument consisting of 12 sections, the first three of which contain no complaint of judicial error.

3. Discussion of the ground for appeal in cassation

3.1. In general

According to section 2, the complaints (or, at any rate, those appearing in sections 4-10 of the argument) are addressed against ground 5 of the contested decision.

3.2. Section 4

3.2.1. This section contests in particular that which is not stated in ground 5 of the decision. That is, the Court of Appeals erred in failing to rule on Lampe's appeal based on Arts. 2:7 and 1401 BW.

3.2.2. In ground 5, the Court of Appeals in fact determined that the contested conduct of

Tonnema was in no way solely intended to frustrate Lampe's rights. The Court of Appeals then concluded that, because of this, Lampe's accusation of conduct contrary to good faith was incorrect.

3.2.3. In the initial notice (No. 28), Lampe stated that the challenged resolution of the G.S.M. was contrary to good faith as referred to in Art. 2:11 BW and with reasonableness and fairness as referred to in Art. 2:7 BW.

Next, at the end of ground 10, the lower court, summing up prior considerations, ruled "that the G.S.M. did not act contrary to good faith," thereby evidently summarizing the alleged violation of good faith and reasonableness and fairness.

On appeal, this was (only) protested in ground 9, which was included verbatim (including a clerical error) in the challenged decision. The introduction to that ground reads as follows: "The lower court erroneously answer(s) in the negative the issue whether the general shareholders' meeting held on February 3 acted contrary to good faith based on the following facts: (...)."

The Court of Appeals clearly did not interpret this as a complaint about the lower court's failure to examine separately the previously alleged violation of reasonableness and fairness, nor was it required to construe this as such a complaint.

3.2.4. The foregoing holds true all the more because it is all but generally accepted that, by "reasonableness and fairness" Art. 2:7 of the Act refers to none other than "good faith" in Art. 2:11 (1) opening words and under c. This can be inferred not only from the history of the Act (Van Zeben, Parlementaire Geschiedenis van het NBW [Parliamentary History of the New Netherlands Civil Code], Boek 2 [Book 2], p. 136 (Government: "reasonableness and fairness" reflect the objective significance pertaining to "good faith" in Art. 1374 (3) in accordance with established case law), precedents (HR Oct. 30, 1964, NJ 1965, 107, with notes from G.J. Scholten and June 18, 1982, NJ 1983, 200, with notes from J.M.M. Maeijer, particularly the opinion of the Public Prosecutor (Franx, Esq.), sub 9.), but also from the vast majority of the literature (W.J.M. Noldus, Ongeldigheid van besluiten in de naamloze vennootschap [Invalidity of resolutions in corporations], 1969, pp. 169-170; Asser-Van der Grinten, De rechtspersoon [The legal entity] (Asser 2-II), 1986, No. 133, p. 105; P. van Schilfgaarde, Van de BV en de NV [Close corporations and companies limited by shares], 1990, p. 226 and ibid, Rechtspersonen [Legal entities] (loose-leaf), note 14 to Art. 2:11; W.J. Slagter, Compendium van het ondernemingsrecht [Compendium on corporate law], 1990, p. 100; J.M.M. Maeijer in Goed en trouw [Good and true] (Van der Grinten-bundle) 1984, p. 31. Disagreeing somewhat: F.J.W. Lowensteyn in the aforementioned bundle Goed en Trouw, p. 127 et seq. and in Pitlo-Lowensteyn, Het rechtspersonenrecht [The law of legal entities], 1986, p. 73.).

It is also important to note that, as of January 1, 1992, Art. 2:11 shall be succeeded by Art. 2:15, in which the words "contrary to good faith" are replaced by "contrary to reasonableness and fairness," with an express reference being made to Art. 2:8, which will replace Art. 2:7. (Act of November 15, 1989, Stb. 541, Art. II. See also explanatory statement (parliamentary document 17 725, No. 3) pp. 56-57 concerning Art. 2:8 and pp. 60-61 regarding Art. 2:15, as well as MvA II, (parliamentary document No. 7), p. 16 regarding Art. 15 sub 2.)

Not only does fact account for the way in which the lower court and the Court of Appeals treated the issue (and the limitation in Appellant's statement of grounds), but it also forms an independent obstacle for the section in question: the denial of the alleged violation of good faith indeed includes the denial of the alleged violation of reasonableness and fairness.

3.3. Sections 5 and 6

3.3.1. If I see it correctly, section 5 contains an argument the substantiation of which is to be found in section 6.

In its simplest form, the argument is that the judgment of the Court of Appeals to the effect that the accusation of conduct contrary to good faith was erroneous "is incorrect and furthermore incomprehensible."

The substantiation is that the amendment to the articles of incorporation affects the cooperation among the shareholders and with the corporation and moreover concerns Lampe's interests.

3.3.2. The first point of the substantiation in section 6 appears correct to me. Any amendment to a pre-emption rights clause will affect the aforementioned associations. However, this cannot imply that such an amendment is contrary to good faith and thus, pursuant to Art. 2:11, avoidable. If the legislature had sought that outcome, it would have expressed itself differently than it did in Art. 2:11 (and likewise in the new Art. 2:15, which will go into effect this coming January 1). It could have simply specified that any amendment to a pre-emption rights clause not approved unanimously is avoidable. (Regarding share-transfer restrictions, C.A. Schwarz, Share-transfer restrictions, diss. RUL 1986, passim; V.d. Heijden-V.d. Grinten, handboek [handbook] 1989, No.

181, pp. 304 et seq. (regarding close companies: No. 181.1 on p. 306 et seq.); P. van Schilfgaarde, van de BV en de NV [Close corporations and companies limited by shares], 1990, No. 35, pp. 103 et seq; W.J. Slagter, Compendium van het ondernemingsrecht [Compendium on corporate law], 1990, pp. 220 et seq.; P.J. Dortmond in Rechtspersonen [Legal entities] (loose-leaf), regarding Art. 195.)

The fact that the resolution affects Lampe's interests is also correct, at least if abstract interests are included among them. However, the notion that his material interests would be affected by the amendment to the articles of incorporation seems doubtful. Granted, Lampe held less than 5% of the shares and could be obliged to transfer them as a result of the course of business. However, the statutory provision, particularly that of Art. 2:201a (5), now properly ensures as much as possible that a minority shareholder in a case of this sort will receive compensation that (in terms of the law on mandatory purchases) represents the actual value (market value). Nevertheless, if such a minority shareholder would incur serious material losses because of the buyout provision, the court must deny the demand for buyout (Art. 2:201a (4)). (Cf. V.d. Heijden-V.d. Grinten, loc. cit., No. 199, pp. 360 et seq.; P.J. Dortmond, Rechtspersonen (loose-leaf), notes 4 e and 5 on Art. 201a; L.G.H.J. Houwen in De NV [The company limited by shares] (66) 1988, pp. 17 et seq.; S.M. van Steenbergen in TVVS 1988, p. 143, in particular, p. 144 r.k.)

3.3.3. Assuming that Lampe's interests could be affected by the amendment to the articles of incorporation, this does not (automatically) mean that, by effecting the amendment, the corporation acted contrary to good faith.

Ground 5 for the Court of Appeals' decision indicates, in conjunction with the second paragraph of ground 4, a weighing of interests. In the latter passage, the Court of Appeals identifies Lampe's interests: the guarantees that Tonnema would remain a family company and obtaining a high price for the shares.

In ground 5, the Court of Appeals contrasts the foregoing with the interests of the majority of the shareholders: for their own reasons, they wished to sell their shares and, at the same time, guarantee the continuity of the business and the employment there. Given the circumstances, no other course of action was available, and therefore, the majority was at liberty (without acting contrary to good faith) to pursue that course.

This reasoning is not incomprehensible, nor is it evidence of an erroneous legal interpretation.

3.3.4. It should also be noted that resolutions of (a body of) a legal entity, as are in evidence here, are only subject to marginal review. (Cf. HR Dec. 2, 1983, NJ 1984, 583, with notes from J.M.M. Maeijer and January 9, 1987, NJ 1987, 959, with notes from J.M.M. Maeijer.) In that light, the Court of Appeals certainly cannot be accused of having interpreted its duty of review in a too limited fashion in the matter at issue.

3.4. Section 7

3.4.1. Sub-section (a) starts from a presumption, i.e., that, according to the Court of Appeals, the accusation of violation of good faith would also be unfounded if the amendment to the articles of incorporation were intended to frustrate Lampe's rights.

The presumption is incorrect given that, in the penultimate sentence of ground 5 of its decision, the Court of Appeals now correctly determined that the contested conduct was in no way solely intended to frustrate Lampe's rights.

Therefore, the sub-section in question lacks a factual basis.

3.4.2. Sub-section (b) contains a pair of connected complaints of erroneous reasoning.

First of all, it is [according to the Cassation Appellant] unclear why the grounds cited and considered proper by the Court of Appeals were indicated by the majority thereof.

However, the Court of Appeals could freely infer these grounds from the documents in evidence. In this regard, I, inter alia, make reference to the requirements appearing in the order to PHP and mentioned in par. 1.2 above. Based on the ensuing proposal by PHP, the majority of the shareholders assumed that the requirements were met. Given Lampe's position, if the original share-transfer restriction clause were maintained, it would not be possible to implement that proposal. Moreover, Lampe's plans were uncertain, as determined by the Court of Appeals in ground 5.

It likewise follows from this that the amendment to the articles of incorporation was not solely intended to frustrate Lampe's rights (indeed, there were, other purposes as well). In the opinions defended by Lampe before the Court of Appeals, particularly the statement of grounds, the latter clearly saw no offer to produce evidence to the contrary, nor was it required to see such offer. In the documents in evidence, I have not been able to find a single passage that so much as resembles such offer to produce evidence. (Lampe offered to produce evidence in his statement of grounds (p. 10 and p. 11) and in the pleadings on appeal submitted by his counsel (p. 16), by

none of these offers related to the argument that the sole purpose of the amendment to the articles of incorporation was to frustrate Lampe's rights. Lampe failed to offer to produce any evidence before the court of first instance.)

This leads to the conclusion that the complaints of erroneous reasoning in sub-section 7b are unfounded.

3.4.3. Sub-section (c) is linked to the foregoing sub-section and argues that the Court of Appeals in no way examined whether the grounds put forward by Tonnema and disputed by Lampe were the actual grounds.

The foregoing indicates that the Court of Appeals was able to infer the presence of "proper grounds" from the documents in evidence. The Court of Appeals was not required to state more specific grounds for deeming Tonnema's arguments to be persuasive on this point.

This sub-section is unfounded.

3.4.4. Sub-section (d) complains about the weighing of interests by the Court of Appeals. Such weighing of interests is of a factual nature. Therefore, their correctness cannot be reviewed in cassation. The contested decision is substantiated in a sufficient and clear manner on this point as well. At the same time, it is important to note that this issue concerns a resolution of a body of a legal entity which is only subject to marginal review.

3.5. Section 8

This section raises the argument that the Court of Appeals should have examined whether the challenged conduct was also intended to frustrate Lampe's rights.

Ground 5 (second part) of the Court of Appeals' decision indicates that the Court of Appeals in fact duly assumed that the amendment to the articles of incorporation was also (and not—as Lampe argued—solely) intended to frustrate Lampe's rights. The Court of Appeals correctly addressed this circumstance when it weighed the interests.

Thus, this complaint is also unfounded.

3.6. Sections 9 and 10

These sections have no independent relevance.

3.7. Section 11

3.7.1. This section was put forward conditionally, i.e., in the event that one of the foregoing sections succeeds.

In my opinion, the condition is not satisfied, and consequently, section 11 requires no discussion.

3.7.2. This section contests the treatment of Ground XII (expressed in Arabic numerals in the statement of grounds.) The essence of the complaint is that the Court of Appeals was too restrictive in interpreting the ground and therefore failed to make any statement regarding one of its elements.

However, the Court of Appeals' interpretation of the grounds is of a factual nature. In my opinion, the interpretation given in this case is not unclear. Therefore, a successful argument cannot be made in this respect in cassation. If this section were to come up for discussion, it would fail for this reason.

3.8. Section 12

3.8.1. This section objects to the fact that the Court of Appeals failed to rule on the compensation claimed (on appeal through supplementation of the complaint).

3.8.2. The complaint in this section runs aground based on Art. 399, io Art. 382, introduction and under 4e Rv. If judgment failed to be given on any section of the complaint, [the remedy of] *rekest-civiel* is available, thereby precluding cassation. (Cf. Veegens-Korthals Altes-Groen, Cassatie [Cassation], 1989, No. 52, pp. 109 et seq. and Th.B. ten Kate, Het request-civiel [The request-civil], diss. RUL, 1962, pp. 306 et seq.)

3.8.3. Otherwise, Lampe has no interest in this section.

Should one or more of the foregoing sections of the present appeal in cassation succeed, the result would be that the claims would have to be reevaluated upon remand.

Should the remaining sections fail, no appeal against the absence of an explicit ruling on the compensation claim can succeed since, based on the findings of the Court of Appeals, that claim must be denied.

4. Conclusion

I conclude that the appeal must be denied and that Appellant must be ordered to pay the costs of cassation.

Note:
1. See also the summary proceedings held in this lawsuit: Pres. of the Leeuwarden Court, Feb. 3, 1988, KG 1988, 200. Point 3.2 of the grounds for the decision by the Supreme Court of the Netherlands is of course important. Namely that the judgment stating that it is not a matter of an

act (a decision for amendment to the company's articles of incorporation) contrary to good faith as intended in Art. 2:11, Section 1, Item C, comprises the judgment that this act is not contrary to the reasonableness and fairness intended in Art. 2:7, nor contrary to the requirement for carefulness deriving from Art. 1401.

With regard to the link between Art. 2:11 and Art. 2:7, this is very explicitly expressed in the new wording of Art. 2:15, Section 1, Item B (= Art. 11, Section 1, Item C-old), which will become effective on Jan. 1, 1992: reversibility of a decision by an entity of a legal person … due to its being contrary to the reasonableness and fairness that are required by Art. 8 (= Art. 2:7-old). The terminology is reconciled with that of the NBW [New Netherlands Civil Code], which reserves the term good faith for the meaning which it has in Art. 3:11. The referral to Art. 8 serves to express that reversibility of decisions is only considered in cases of violation of the reasonableness and fairness in internal relationships within a legal person. Art. 8 (= Art. 7-old) is supplemented by a second Section containing a rule regarding the so-called restrictive action of the reasonableness and fairness. See for all this the parliamentary history of the Act Regulating Introduction of Books 3, 5 and 6 of the NBW, Part 6 (adjustment of Books 1 and 2 of the Netherlands Civil Code (BW)): loose-leaf Volume NV and BV, p. IXt-Art. 8-1, ff., and Art. 15-1, et seq. For the relationship between Arts. 8 and 15-new, cf. also my essay in the Bundel Goed en Trouw [Volume Good and Faithful] (Essays for W.C.L. van der Grinten) 1984, p. 31, et seq.

The distinction between Arts. 2:11 and 2:7 (and BW Art. 1401) made by the ground for appeal in cassation, Section 4, was suggested by Lowensteyn's argument in The Law of Legal Entities (1986), p. 72, ff., and in Bundel Goed en Trouw, op. cit., p.127, et seq. Lowensteyn recognizes a difference between the two articles. Art. 11 supposedly involves a marginal judicial review of the decision by an entity of the legal person. In applying Art. 7, the judge can supposedly completely review what is reasonable and fair in the given circumstances. In this case, to act contrary to reasonableness and fairness equals an unlawful act, specifically violation of a legal obligation mandated by the law. In my opinion, the importance of this ground for appeal in cassation was to be found in this viewpoint.

With regard to this review, it is marginal as far as a decision of the General Meeting is concerned. See at least Supreme Court, June 18, 1982, NJ [Dutch Jurisprudence] 1983, 2000 (decision for suspension and removal); (Court and) Supreme Court, Jan. 9, 1987, NJ 1987, 959. Similarly also the literature, see for example Asser-Van der Grinten II, No. 133, and Handbook No. 224.1. The decision (of the Supreme Court) referred to above does not show in specific wording that the court has reviewed marginally. The Supreme Court concludes in Point 3.4 of the grounds for its decision that the court has weighed the interests at issue against each other and this weighing has turned out to be to Lampe's disadvantage. It does not say "could turn out to be." Maybe this is connected to the circumstance that Lampe's interest consisted of the continued preservation of his rights deriving from the pre-emption rights clause. On the other hand, it follows from the grounds for the Supreme Court's decision that the review result that was attained is recognizably based on a weighing of the interests at issue. Cf. A-G Mok's terminology in his brief, Item 5.2, for Supreme Court, Jan. 9, 1987, NJ 1987, 959.

2. From the present Supreme Court's decision it follows only that the question whether the General Meeting's decision (to amend the articles of incorporation) is contrary to good faith constitutes the same question as the one whether the act is contrary to the reasonableness and fairness intended in Art. 2:7. The standard contained in Art. 2:7 (= Art. 8-new) retains its value if the reversal of a decision by an entity of a legal person is not at issue.

The same applies with regard to the concurrence of the requirement for carefulness deriving from Art. 1401, which is a subject that the Attorney General has not addressed in his brief. There had only been a claim for reversal of the particular decision. In so doing, the argument was also made that the decision with respect to Lampe was unlawful. Point 3.2 of the grounds for the court's present decision only implies that, if the General Meeting's action expressed in the decision to amend the articles of incorporation is not contrary to the good faith or reasonableness and fairness to be observed toward Lampe, this action and/or decision of the legal entity is not contrary either to the carefulness existing toward Lampe. This means that the unwritten standards of reasonableness and fairness thus to be observed in the internal relationships within the legal entity which imply a weighing of interests (See also NBW, Art. 3:12) do not differ from the unwritten standards of carelessness [sic] applicable in this respect or [those of] decency to be observed in societal relations (See NBW, Art. 6:162, Section 1). In connection with this, cf. Smarius in WPNR 5608 with the literature discussed there.

Lampe's claim against the corporation was increased on appeal to a higher court with a claim for compensation of the damage sustained by him. See ground for appeal in cassation, Item 12, in Point 3.8 of the grounds for the Supreme Court's decision. Since it was not a matter of unlawfulness according to

the (implicit) judgment of the court, this claim should have been denied as well if the court had rendered an explicit decision on this matter.

It ensues from the Supreme Court's point of view that conversely the reversal of a decision by the General Meeting due to violation of the reasonableness and fairness to be observed toward a shareholder can indeed result in a conflict with societal decency or [in] carelessness toward such a shareholder (the relativity requirement of NBW, Art. 6:163, will then be satisfied automatically). There will then be an obligation for compensation (of loss) by the company to which the unlawful act of the corporate entity is imputable (Art. 6:163, Section 3), provided of course that damage is sustained as a result of the unlawful act. Also when an act by an entity of a legal person is entirely separate from a decision process (Consider the phrase "the totality of the acts" in Point 3.2 of the grounds for the court's decision), it may lead to an unlawful act that is imputable to the legal person. And in addition there is then in special circumstances the possibility that the members of the decision-making entity are privately liable toward one or more shareholders on the basis of an unlawful act that is expressed in the decision. See Supreme Court, Jan. 4, 1963 (Dr. Scholten) NJ 1964, 343, from which we can learn however that, if the decision taken is not considered contrary to the reasonableness and fairness to be observed toward a shareholder, any obligation for compensation (of loss) by the managers and directors privately due to their unlawful acts will quickly fall through owing to the relativity requirement. For an unlawful act by a director toward a manager (rash suspension), see Supreme Court, Dec. 22, 1961 (Ariens-van de Loo), NJ 1962, 43.

3. In this case, it was a matter of an appeal to the violation of good faith in the meaning of abuse of majority power. With regard to the ground for appeal in cassation, Item 8, the Supreme Court emphasized in Point 3.5 of the grounds for the court's decision that the court had assumed that the amendment to the company's articles of incorporation was directed at making Lampe's rights from the pre-emption rights clause expire and that this was done as a necessary means for making the real goal achievable rather than as a final goal. This does not violate a rule of law. In connection with this, I refer to NBW, Art. 3:13, Section 2: one of the ways to abuse power is by exercising it with no other goal than to harm another party. Already according to the clarification to Art. 8, with introductory title NBW, Meijers Bill, the restrictions that set up good faith and the prohibition on abuse of the law coincide when a legal relationship existing between two people creates powers for one of them. See Reehuis-Slob, Parliamentary History, Book 3 of the NBW, p. 1040; see also p. 1049.

Now that the expiration of Lampe's particular rights and the ensuing injury done to him was not the only (final) goal, it came down to the weighing, as emphasized earlier by the Supreme Court, of the interests involved (among which also that of the company), addressed as well by NBW, Art. 3:13. Also with regard to the question whether abuse of a position of power results under certain circumstances in an unlawful act, the Supreme Court judged that this can only be the case if, taking into account the interests involved, one would not in reasonableness have been able to come to the imputed use of that position of power. Cf. Supreme Court, Dec. 2, 1983, NJ 1984, 583.

4. Shareholder rights laid down in accordance with the company's articles of incorporation can be affected by an amendment to the articles of incorporation. Art. 2:192 (81) does not apply: cf. Dortmond in his dissertation, Series due to Van der Heijden Institute, part 31, p. 43. For rights laid down in accordance with the company's articles of incorporation for people other than shareholders, see Arts. 2:122 and 232. However decisions for amendment to the company's articles of incorporation must satisfy the requirements of reasonableness and fairness. Conflict with such requirements was not assumed in this case, nor was it in Supreme Court, March 4, 1960, NJ 1962, 6. Decisions to, among other things, amend the articles of incorporation were however judged contrary to good faith in the case under discussion in Supreme Court, Jan. 9, 1987 (Vecolac-Juliana) <u>NJ 1987, 959</u>. In my opinion, this was because freedom of accession and, to that extent, of association was at issue: see my note. Cf. for the present case also the note by Timmerman in TVVS 1991, p. 190.

5.   Meanwhile Van Nelle, which had acquired more than 95% of the shares in Tonnema BV, has filed a so-called claim for buy-out of Lampe pursuant to BW, Art. 2:201a, which claim was allowed in a decision of the OK dated Sept. 28, 1989 (Docket No. 1008/88). For this decision, see Slagter in TVVS 1990, pp. 233 and 253, and in TVVS 1991, p. 28, m.nt. WJS. See also M.J. van Vliet in Maandblad [Monthly Journal] NV 69 (1991), p. 40. With regard to the calculation of the value, we used the price which Van

Nelle had paid to the majority shareholders. For the determination of values, see my note under NJ 1991, 621.

6. In conclusion I still want to call attention to Point 2 of the grounds for the court's decision regarding the condition of being an interested party and the admissibility of the Stichting Eigenaren Familiebedrijven [Foundation of Owners of Family Enterprises] in addition to Lampe. This ground constitutes a contribution to the jurisprudence on this subject. See also Asser-Van der Grinten II, No. 372.

Maeijer

**Editorial Referrals**

(T) NJ 1992/174
(T) NJ 1994/436
(T) NJ 1995/289
(T) NJ 1996/107
(T) NJ 1996/510
(T) NJ 1996/538
(T) RVDW 1991/123
(T) VN 1992/1713