# EXHIBIT 3

# NJ 2000/699

**SUPREME COURT**
October 13, 2000, No. C99/244HR
(Ms. H.L.J. Roelvink, Mr. R. Herrmann, Mr. A.E.M. Van der Putt-Lauwers, Mr. O. de Savornin Lohman, Mr. A Hammerstein; Advocate-General Hartkamp; with notes from Maeijer)
RvdW 2000, 205
JOL 2000, 483

**Netherlands Civil Code (BW) art. 2:53, 6:162**

[Abstract] **Mismanagement by director of cooperative; independent claim by members against director arising from unlawful act; incidental loss?**
**The members of a cooperative whose purpose is to provide for the material needs of its members by jointly conducting business cannot independently bring claims in respect of the loss caused (through mismanagement) in the operation of the cooperative by the director who is not a member of management, except in the case of conduct that is specifically negligent toward a member of the cooperative and that is directly detrimental to that member's assets. Direct detriment is not present if the detriment experienced by the members is a consequence of the negative operating income of the cooperative caused by the mismanagement. The director must endeavor to ensure that the cooperative serves the interests of the members with due care, but that does not mean that the director had a specific duty of care in respect of the members that he violated through the alleged mismanagement. Under some circumstances, the members can hold the cooperative responsible for the director's mismanagement.**

As a consequence of mismanagement by its director S. (see decision, editor's note), a cooperative suffered great losses. A large share of that loss was passed on to the members in the form of lower milk fees. The poor operating income forced the cooperative's board to agree to a merger through which the entire assets were transferred and the cooperative ceased to exist. In the present action, SOBI, as authorized agent of 147 members of the former cooperative, has brought a claim for damages against S. The Court of Appeals found that the members can directly sue S. for damages, thereby reasoning, in summary, that the members to whom the poor results were passed on by way of lower milk fees suffered a definitive loss as a consequence of the mismanagement apart from the loss suffered by the cooperative, and that S violated a specific standard of due care toward the members since as director, he was responsible for the members' financial position.

In principle, it must be assumed that the members of the cooperative cannot independently bring claims in respect of a loss caused by persons employed by the cooperative, such as the director, in attending to the affairs of the cooperative. An exception to that rule can be accepted in the case of conduct that is specifically negligent toward a member of the cooperative and that is directly detrimental to that member's assets. Direct detriment is not present, however, if the detriment is caused by the negative operating income as a consequence of mismanagement by the director of the cooperative in his conduct of business, through which the member of the cooperative receives a lower milk fee than he would have received in the absence of that mismanagement. It is the nature of a cooperative such as this one, in which business is conducted on behalf of the members who enter into agreements with cooperative to that end, that the operating income ultimately accrues to the members, but that does not imply the aforesaid direct detriment. This cannot be considered direct loss on the part of the members by mere virtue of the fact that the detriment suffered by the members is a consequence of the negative operating income of the cooperative caused by mismanagement by S. The cooperative's income does have an important influence on the income of the members' businesses, but it cannot be conflated with it. After all, the cooperative conducts its own business as a legal entity, and the alleged mismanagement by its director primarily has consequences for the operating income of the cooperative. The loss claimed by the members in this action is thus not a direct loss, but rather an incidental one. The Court of Appeals wrongly found reasons in the legal relationship between the members and the cooperative to accept a specific standard of due care on the part of S. toward the members of the cooperative. The Court of Appeals thereby failed to appreciate that the members, based on their membership in the cooperative and the agreements that they have entered into with the cooperative, maintain a legal relationship with the cooperative on the basis of which they are entitled to expect that the cooperative will serve their interests with due care. As director employed by the cooperative, S. was required to endeavor to ensure that the cooperative, in conducting its business, would conduct itself in accordance with that standard, but that does not mean that he had a specific duty of care toward the individual members that he violated through the alleged mismanagement. Under some circumstances, the members of the cooperative can hold the cooperative responsible for the mismanagement by S. It also bears noting that—in a case like the present one—it would constitute undesirable interference with the arrangement of the cooperative as an independent legal entity if the members of the cooperative were to be granted an individual right to bring claims

against third parties in respect of a loss suffered in the conduct of business. This objection is also of factual significance in the present case since various proceedings are being conducted regarding the same loss. In the case of a loss suffered in the conduct of the cooperative's business, membership in the cooperative as such, therefore, gives the members no right to claim direct loss in respect of third parties. The detriment experienced individually by the members arises from their contractual relationship with the cooperative. It is impossible to accept S., as (former) director of the cooperative, being sued by individual members since he was employed for business that was conducted on behalf of all members.

[Text] 1. S.
2. R., both of Z., Cassation Appellants, Mr. J.L.W. Sillevis Smitt
v.
Foundation for the Investigation of Corporate Information (SOBI), acting as authorized agent of 147 individuals named in the cassation summons, of Amsterdam, Cassation Appellee, Mr. E. Grabandt as legal counsel
**Court of Appeals:**
*4. The assessment of the dispute on appeal*
4.1. The Court of Appeals sees cause for hearing the appeals jointly. SOBI objects to the lower court's ruling that its claim is inadmissible because only the cooperative, and not the members of the cooperative, can claim damages. In arriving at that ruling, the lower court presumably assumed that S. engaged in mismanagement and/or acted unlawfully toward the cooperative, through which not only the cooperative, but also its members, suffered great loss.
4.2. The Court of Appeals agrees with SOBI that in the present situation, the loss suffered by the members is not the same as the loss suffered by the cooperative. It is significant that Heino Krause was a traditional cooperative in which the members delivered all their milk to Heino Krause, for which they did not receive a fixed price, but instead milk fees that depended on Heino Krause's operating income. The process for doing this was that Heino Krause would determine the definitive amount of the milk fee based on the annual assessment of net operating income after taxes, with allowance made for advances already paid to the members for delivered milk. It was also determined what amount of that net income would be added to the Heino Krause equity. A positive net income resulted in a supplementary payment to the members in proportion to the amount of milk delivered, and a negative net income meant that the members had to proportionally repay the advances that they had already received. In such a situation, the (financial) interests of the members were closely intertwined with those of the cooperative.
The detrimental results achieved by Heino Krause in the years 1985-1990 (as a consequence of the presumably assumed mismanagement by S.) were thus passed on to the members by way of lower milk fees. In that sense, therefore, this is no longer a case of loss suffered by Heino Krause; rather, it was the members who definitively suffered that loss. That loss by the members is thus separate from and must be distinguished from the loss suffered by Heino Krause.
In sec. 7.1.c of its Reply and in Annex 2 to its pleading on appeal, SOBI substantiates the fact that detrimental results were achieved in the years 1985-1990 owing to increased purchases of outside milk and powdered milk. S. and R. have insufficiently substantiated their challenge of this point. Indeed, given the fact that the loss was passed on to the members, the Heino Krause assets were not harmed by the presumably assumed mismanagement by S. The figures submitted by SOBI, which are not contested by S. and R. (Annex 1 to the pleading on appeal) show that despite the detrimental results for the years 1985-1990, the Heino Krause assets grew over that period from 2,755,172 guilders to 4,590,656 guilders. In the bad year of 1990, the negative net income after taxes and with allowance made for advances already paid to the members came to approximately 22,000,000 guilders, which was charged to the members and not to the Heino Krause equity. Since in this regard Heino Krause suffered no loss, but the members did by way of lower milk fees, it is not Heino Krause that can claim that loss. It is the members who must be able to claim their own loss.
4.3. The members of Heino Krause can directly sue S. if he has violated a specific standard of due care in respect of them. In assessing this issue, it is once again important to note that Heino Krause was a traditional cooperative in which the members' operating income—the received milk fees—depended entirely on the cooperative's operating income. In such a situation, there existed not only a membership relationship between the cooperative and the members, but also the relationship that exists between a business and suppliers/creditors. In the opinion of the Court of Appeals, S. had a special duty of due care toward the members on the basis of this dual relationship. After all, the management policies pursued by him as director of Heino Krause had direct consequences for the members' financial position, and thus S. bore responsibility for that position. With his management policies, he was supposed to take into account the members' financial interests.
If S. can indeed be faulted for mismanagement, as will be discussed in the following, then he violated that special duty of due care toward the members.
4.4. The preceding leads to the conclusion that the claims brought by SOBI against S. and R. were wrongly dismissed. That conclusion is not altered by the fact that SOBI is also claiming the same loss from Coberco and Moret Ernst & Young. Indeed, SOBI has stated that it will withdraw those claims—on which nothing has (yet) been

paid out—if the claim in the present case is allowed. Such a withdrawal would also put an end to the indemnity claim brought by Coberco against S. concerning the respective loss.
The appealed order must be reversed.

4.5. Since this is an appeal of a final judgment (specifically a dismissal), the devolutive effect of the appeal means that the entire case as presented to the lower court must be brought before the higher court for a ruling by it (see HR January 8, 1993, NJ 1993, 653). Contrary to the arguments made by S. and R., this does not necessitate SOBI adducing grounds for appeal against the lower court's presumed assumption of mismanagement by S. and the loss caused by that. The Court of Appeals rejects the position taken by S. and R. that it should remand the case to the lower court. The invocation of the Supreme Court decision of January 29, 1999 (RvdW 1999, 22) by S. and R. is of no help to their cause. That case involved an appeal of an interim judgment, not a final judgment.

4.6. The question now is whether S., as argued by SOBI, engaged in mismanagement through which he caused imputable and foreseeable loss for the members.

4.7. The Court of Appeals answers that question in the affirmative. The assertions made by SOBI in this regard have been substantiated by many exhibits and insufficiently contested by S. and R. The following picture emerges. Contrary to statutory provisions, in particular art. 21 of the Agriculture Quality Regulation, S. systematically added lactose to all milk and powdered milk. This took place behind closed doors and in screened-off places. The board and members of Heino Krause knew nothing of these lactose additions. The powdered milk was marketed as pure and undiluted, through which a sales advantage was achieved unlawfully. Nevertheless, this did not produce an advantage for Heino Krause and the members because S. began increasingly buying milk and powdered milk from non-member suppliers. This happened to an extent and in a manner of which the board and members of Heino Krause were insufficiently aware. The milk was purchased from non-members at a price higher than that received by the members, which was contrary to art. 24 of the Heino Krause bylaws. S. expanded the volume of sales appreciably, whereby contrary to the Heino Krause board's intention he kept the old condensers—which had been replaced by modern models—in operation despite there being no economic need for that. The same was true of the two old spray drying towers, which had been replaced by a new one. S. furnished incorrect and incomplete information about all of this to the board and members. He told them that the purchase agreements were profitable, that the additionally purchased milk represented a contribution to overhead, and that the use of the extra capacity was cost-lowering. In the annual financial statements prepared by S. for the Heino Krause board, the purchases of powdered milk were reported as purchases of milk, and the long-term contracts entered into with German milk suppliers were not mentioned in the annual financial statements. In reality, these were loss-making transactions, despite the addition of the lactose. As SOBI showed in Annex 2 to the pleading on appeal, whereby S. and R. have not presented a substantiated challenge of the figures contained therein, this produced a detriment totaling nearly 25,000,000 guilders in the years from 1985 through 1990. A large part of that detriment was shouldered by the members of Heino Krause in the form of lower milk fees.
The "lactose fraud" also had a depressing effect on the takeover price that Coberco paid to acquire Heino Krause in the legal merger. When the "lactose fraud" became known, a previous merger partner, namely Hoogwegt, pulled out. The cooperation proposed by Hoogwegt was appreciably more favorable for the members than the Coberco merger proposal.

4.8. The Court of Appeals also considers the loss suffered by the members to be foreseeable. The detriment was evident without the prohibited addition of lactose. But even with that addition it could be foreseen, because of the prohibition on that, that sooner or later it would no longer be possible to add lactose, while Heino Krause was also still committed to long-term, expensive milk purchase agreements. Moreover, it could be foreseen that if the "lactose fraud" were to be made public, the reputation of Heino Krause would suffer, with all detrimental consequences of that.

4.9. It follows from the reasons adduced in 4.7 that S. cannot successfully claim that the detrimental results achieved by Heino Krause were caused by unfavorable market trends. Nor can he contend that he always intended to do more to promote the interests of Heino Krause and its members. In fact, he did just the opposite with his "lactose fraud." As director and not member of management, S. cannot invoke a release from liability. Apart from that, he cannot successfully raise that defense by virtue of the "lactose fraud" being omitted from the annual financial statements and unknown to the board and members.

4.10. With regard to the defense presented by S. and R. in the first instance but rejected by that court, concerning the inadmissibility of SOBI's claim against R. and invocation of the statute of limitations, the Court of Appeals finds as follows. Although S. and R. have stated in the appeal proceedings that they maintain all of their defenses as pleaded in the first instance, they have otherwise pleaded nothing in the appeal proceedings with respect to the two defenses in question here. The Court of Appeals therefore limits itself to adopting the grounds given by the lower court in 4.3 and 4.4, which are deemed to form part this decision, and with which the Court of Appeals is able to fully concur.

4.11. The conclusion is that the claims brought by SOBI are allowable. S. and R., as the unsuccessful parties, are ordered to pay the costs of the proceedings in both instances.
(etc.)

**Grounds for appeal in cassation:**

The grounds for appeal in cassation are misapplication of the law and noncompliance with procedural requirements as referred to in art. 99 of the Judiciary Organization Act. The rulings contested in the cassation proceedings are contained in grounds 4.2 through 4.4 of the decision *a quo*, which will be discussed further in the following. On those grounds, the Court of Appeals, reversing the appealed order, declared admissible the claims brought by SOBI—now the Cassation Appellee—as authorized agent of 147 members of the Heino Krause cooperative, and it then allowed those claims. All of those rulings are erroneous or insufficiently justified for one or more of the reasons presented in the following, which must be considered in connection with each other wherever necessary.

*Section I*

This section concerns the rulings in ground 4.2. The Court of Appeals had first stated the following in ground 4.1:

> "4.1 The Court of Appeals sees cause for hearing the appeals jointly. SOBI objects to the lower court's ruling that its claim is inadmissible because only the cooperative, and not the members of the cooperative, can claim damages. In arriving at that ruling, the lower court presumably assumed that S. engaged in mismanagement and/or acted unlawfully toward the cooperative, through which not only the cooperative, but also its members, suffered great loss."

*Complaints*

1.1. In examining the question of whether SOBI's claims on behalf of 147 members of the Heino Krause cooperative are admissible, the Court of Appeals wrongly attached significance to the question (among other things) of whether the loss suffered by the members is the same loss as that suffered by the cooperative (ground 4.2, first sentence). The Court of Appeals failed to appreciate that in a case like the present one, in which the members of a cooperative have alleged and the judge deciding questions of fact has presumably assumed that not only the cooperative, but also its members, have suffered loss as a consequence of breach of contract and/or unlawful action by a director (named by the articles of association), the members of the cooperative are in principle barred from bringing their own claim against the director (named by the articles of association) for compensation of the loss suffered by them. The interest that parties other than the members of the cooperative have in the preservation of their assets, the cooperative relationship embodied in the cooperative as a legal entity, the position and interest of the individual members of the cooperative with regard to each other, and the fact that they suffered their loss in their capacity as members of the cooperative dictate that members of a cooperative cannot individually assert such a claim.

1.2. In the second paragraph of ground 4.2, the Court of Appeals proceeds from the assumption that the detrimental results of Heino Krause in the years 1985-1990 (as a result of the presumably assumed mismanagement by S.) were passed on to the members in the form of lower milk fees in the manner and under the circumstances described in the first paragraph of ground 4.2. The Court of Appeals then finds as follows:

> "In that sense, therefore, this is no longer a case of loss suffered by Heino Krause; rather, it was the members who definitively suffered that loss. That loss by the members is thus separate from and must be distinguished from the loss suffered by Heino Krause."

With this ruling, the Court of Appeals failed to appreciate that under the circumstances that it describes, the detrimental operating income of the cooperative as a consequence of mismanagement by a director (named by the articles of association) must be considered primarily a loss by the cooperative for which the cooperative itself can claim damages if there are grounds for doing so. This is not and cannot be altered by the fact that the cooperative passed the detrimental results as a consequence of the mismanagement on to the members over a certain period, as the Court of Appeals calls it. After all, the purpose of a cooperative is to provide for the material needs of its members pursuant to agreements entered into with them in the business that it conducts directly or indirectly to that end on their behalf. This does not mean, however, that a detrimental operating income as a consequence of (culpable) mismanagement by a director (named by the articles of association) must not be considered a loss suffered by the cooperative itself. Consequently, the Court of Appeals proceeded from an incorrect conception of law in arriving at the ruling contested in this section.

1.3. The finding by the Court of Appeals in the third paragraph of ground 4.2 is also wrong. The fact that in the bad year of 1990, the negative net income after taxes and with allowance made for advances already paid to the members was charged to the members and not to the Heino Krause equity does not justify the (two-part) conclusion reached by the Court of Appeals (i) that in that regard Heino Krause did not suffer a loss (but the members did) and (ii) that Heino Krause cannot claim that loss. The fact that a cooperative directly or indirectly conducts business on behalf of its members, as a consequence of which its positive or negative operating income accrues or is charged to its members, does not prevent it from claiming compensation for the detrimental consequences of mismanagement by a director (named by the articles of association), even after such detrimental consequences have been charged not to the cooperative's assets, but rather to those of the members in the process of settling with the members and approving the annual financial statements of the cooperative. In this regard too, the Court of Appeals thus proceeded from an incorrect conception of law.

*Section II*

This section concerns the rulings in ground 4.3.

*Complaints*

II.1. To begin with, the Court of Appeals failed to appreciate that one of the essential characteristics of a cooperative is that its purpose is to provide for certain material needs of its members and that pursuant to agreements entered into with its members it conducts business directly or indirectly to that end on their behalf. Given this essential

characteristic, the Court of Appeals wrongly made a distinction in a membership relationship between the cooperative and its members and a relationship that exists between a business and suppliers/creditors, whereby the Court of Appeals linked that distinction to the specific duty of due care identified by the Court of Appeals.

II.2. Secondly, the Court of Appeals failed to appreciate that as a consequence of the essential characteristic of a cooperative described in Section II.1, a director (named by the articles of association) of a cooperative has no specific duty of due care toward the (individual) members of the cooperative that would mean that they can individually assert a claim against the director (named by the articles of association) if he, in the exercise of his function, has engaged in mismanagement, with said claim being for compensation of the loss that they suffered as a consequence of that mismanagement pursuant to the agreement that they as members entered into with the cooperative in the conduct of its business.

*Section III*
This section concerns ground 4.4.
*Complaint*
The Court of Appeals has failed to appreciate that in answering the legal question that the Court of Appeals saw as needing to be answered—namely, whether the members of a cooperative can individually assert a claim in respect of mismanagement against the director (named by the articles of association) of the cooperative of which they are members—it also is or could be of importance whether the members can claim the same loss in the economic and/or legal sense from the cooperative (or its legal successor by universal title) and from any others whose unlawful actions contributed to the members' loss arising. This is not and cannot be altered by the fact that the members of the cooperative have stated in the proceedings, in which they have asserted their claim against the director (named by the articles of association), that they will withdraw their claims against the cooperative and such third parties if their claim in the first-named proceedings is allowed, given the fact that the admissibility of a claim such as the present one cannot be dependent on the willingness of the party bringing it to assert his claim against others in respect of the same loss or to refrain from doing so, or to stand by or withdraw such a claim

**The Supreme Court:**
*1. The proceedings in the fact-finding instance*
With service of a summons on December 6, 1993, Appellee, as authorized agent of 147 individuals named in the summons—hereinafter, respectively, SOBI and the members—summoned Appellants—hereinafter S. and R.—to appear before the Court in Arnhem and petitioned that S. and R. be ordered jointly and severally, with payment by one releasing the other, to compensate the loss suffered by the members as a consequence of the actions by S. described in that summons, said loss to be assessed by the Court and to be settled in accordance with the law, plus replacement interest, in the alternative subject to statutory interest, computed from September 1, 1992. S. and R. challenged the claim and filed a provisional claim pursuant to art. 51 of the Code of Civil Procedure (Rv.), petitioning that the attachments indicated in that brief be withdrawn under forfeiture of a penalty of 5,000 guilders per day. SOBI contested the ancillary claim.

With its order of October 6, 1994, the Court denied the provisional claims brought by S. and R. in the incidental proceedings and entered the case in the docket for further hearing in the main proceedings.
With its order of November 14, 1996, the Court declared the claim brought by SOBI inadmissible.
SOBI and the members appealed this latter order before the Court of Appeals in Arnhem. In their statement of appeal, they added to their claim by petitioning that S. be declared to have acted unlawfully toward the meritorious parties to the action that SOBI represents as authorized agent. In addition, the members claimed compensation for damages to be assessed by the court.
S. et al. filed a motion of objection pursuant to art. 347 (3) Rv., opposition pursuant to art. 134 (2) Rv., petition pursuant to art. 3:71 BW, and (in the alternative) notification pursuant to art. 3:69 (3) BW.
After the members advanced a defense, the Court of Appeals, in its decision of May 19, 1998 on the incidental proceedings, denied the defense by way of motion advanced by S. and entered the case in the docket for further hearing in the main proceedings.
With its decision of April 29, 1999, the Court of Appeals reversed the contested order in the main proceedings and, again giving judgment, allowed the claims by the members.
(...)
*2. The cassation proceedings*
(...)
In his advisory opinion, Advocate-General Hartkamp moves that the appeal be reversed.
The attorney representing S. and R. has reacted to that advisory opinion with a letter dated May 11, 2000.
*3. Assessment of the grounds*
3.1. This case revolves around the question of whether the members of the Heino Krause cooperative (which has since merged with the cooperative association Verenigde Coöperatieve Melkindustrie Coberco BA, hereinafter, Coberco) can bring a claim for compensation against the former director of the cooperative (S.) owing to

mismanagement in conducting the business of the cooperative, as a result of which the members themselves (also) suffered loss; S. was not a member of management in the cooperative. The Court answered that question in the negative. On appeal, the Court of Appeals reversed the Court's final order and found that S. acted unlawfully toward the members of the Heino Krause cooperative. The reasoning of the Court of Appeals was—in summary—as follows.
(a) It is significant that Heino Krause was a traditional cooperative to which the members delivered all their milk against payment of milk fees, the amount of which depended on Heino Krause's operating income. The detrimental results achieved by Heino Krause in the years 1985-1990 (as a consequence of the mismanagement by S.) were thus passed on to the members by way of lower milk fees. This definitive loss suffered by the members is separate from the loss suffered by Heino Krause. It has been established that the results were negative: In 1990, a negative net income of 22 million guilders was charged to the members. Since Heino Krause did not suffer any loss, the members who did suffer loss should be able to claim this as their own loss (ground 4.2).
(b) The members can directly sue S. if he has violated a specific standard of due care in respect of them. That is the case here, because the management policies pursued by S. as director of Heino Krause had direct consequences for the members' financial position, and S. bore responsibility for that position (ground 4.3).
(c) The admissibility of the members' claim is not altered by the fact that they are also claiming the same loss from Coberco and Moret, Ernst & Young (ground 4.4).
(d) S. engaged in mismanagement through which he caused imputable and foreseeable loss for the members. Without the knowledge of the board and members, and contrary to statutory provisions, S. systematically added lactose to milk and powdered milk. The powdered milk was marketed as pure and undiluted. S. began increasingly buying milk and powdered milk from third parties to an extent and in a manner of which the board and members of Heino Krause were insufficiently aware. These third parties received a price higher than that received by the members, which was contrary to art. 24 of the Heino Krause bylaws. S. expanded the volume of sales appreciably, whereby contrary to the Heino Krause board's intention he kept old condensers and two old spray drying towers in operation despite there being no economic need for that. S. furnished incorrect and incomplete information about all of this to the board and members. For example, the purchases of powdered milk were reported as purchases of milk and the long-term, loss-making contracts with German milk suppliers were not reported in the annual financial statements. This produced a detriment totaling 25 million guilders. The loss for the members was foreseeable. The addition of lactose would end sooner or later, while Heino Krause was still committed to the long-term, expensive milk purchase agreements (ground 4.7).
3.2. The grounds for appeal in cassation, which comprise three sections, challenge the rulings contained in grounds 4.2-4.4 in the Court of Appeals decision, as summarized in the preceding (a) through (c), with complaints as to points of law and substantiation. The mismanagement determined by the Court of Appeals and referred to in the preceding 3.1 (d) is taken for granted in the cassation proceedings.
3.3. The following must be stated in advance of an assessment of the grounds for appeal in cassation.
(i) A cooperative of the sort that Heino Krause was, as a legal entity, conducts business on behalf of its members. As such, it independently exercises all rights and obligations pertaining to the conduct of business. This must be understood to include the right to claim compensation for loss from a party that has harmed it in the conduct of its business, if there are grounds for doing so.
(ii) If the director of a cooperative who is not a member of its management is to blame for mismanagement of the seriousness and scope that must be assumed in the present proceedings, then it must be assumed that the director, by virtue of being employed by the cooperative for which he served as director, can under some circumstances—within the limits provided in art. 7:661 BW—be held liable for the loss that was a consequence of that mismanagement. Insofar as the director is liable to pay damages on that basis and has fulfilled that obligation, the compensation paid by the director shall be incorporated into the income of the cooperative.
(iii) The members of the cooperative have transferred their interests to a legal entity that exists for the purpose of providing for the material needs of its members by conducting business jointly. In order to live up to that purpose, the cooperative will have to look after the joint interests of the members, which includes recovering a loss suffered in the conduct of business. By virtue of their membership in the cooperative and on the basis of their contractual relationship with the cooperative, the members of the cooperative have adequate opportunity, if necessary, to protect their interests in respect of the cooperative and to hold the cooperative liable for financial detriment that they may have experienced in their relationship with the cooperative.
3.4. Based on the arguments presented in 3.3, it must be assumed in principle that the members of the cooperative cannot independently bring a claim in respect of a loss caused by persons employed by the cooperative, such as the director, in attending to the affairs of the cooperative. An exception to that rule can be accepted in the case of conduct that is specifically negligent toward a member of the cooperative and that is directly detrimental to that member's assets. Direct detriment is not present, however, if the detriment is caused by the negative operating income as a consequence of mismanagement by the director of the cooperative in his conduct of business, through which the member of the cooperative receives a lower milk fee than he would have received in the absence of that

mismanagement. It is the nature of a cooperative such as this one, in which business is conducted on behalf of the members who enter into agreements with cooperative to that end, that the operating income ultimately accrues to the members, but that does not imply the aforesaid direct detriment.

3.5. The grounds for appeal in cassation contain a number of complaints in which it is contended, in accordance with the preceding, that the Court of Appeals proceeded from an incorrect conception of law in the present case. In particular, the complaints concerning the view accepted by the Court of Appeals—(i) that this is not a case of incidental loss and (ii) that S. violated a specific duty of due care toward the members—are valid.

Concerning (i), it must be noted that no direct loss is present by mere virtue of the fact that the detriment suffered by the members is a consequence of the negative operating income of the cooperative caused by mismanagement by S. The cooperative's income does have an important influence on the income of the members' businesses, but it cannot be conflated with it. After all, the cooperative conducts its own business as a legal entity, and the alleged mismanagement by its director primarily has consequences for the operating income of the cooperative. The loss claimed by the members in this action is thus not a direct loss, but rather an incidental one.

As for (ii), the Court of Appeals wrongly found reasons in the legal relationship between the members and the cooperative to accept a specific standard of due care on the part of S. toward the members of the cooperative. The Court of Appeals thereby failed to appreciate that the members, based on their membership in the cooperative and the agreements that they have entered into with the cooperative, maintain a legal relationship with the cooperative on the basis of which they are entitled to expect that the cooperative will serve their interests with due care. As director employed by the cooperative, D. [sic] was required to endeavor to ensure that the cooperative, in conducting business, would conduct itself in accordance with that standard, but that does not mean that he had a specific duty of care toward the individual members that he violated through the alleged mismanagement. Under some circumstances, the members of the cooperative can hold the cooperative responsible for the mismanagement by S.

3.6. Finally, it also bears noting that—in a case like the present one—it would constitute undesirable interference with the arrangement of the cooperative as an independent legal entity if the members of the cooperative were to be granted an individual right to bring claims against third parties in respect of a loss suffered in the conduct of business. As shown in ground 4.7 of the Lower Court's order, this objection is also of factual significance in the present case since various proceedings are being conducted regarding the same loss, including one against Coberco, which has in turn impleaded S.

It is important to note first of all that in the case of a loss suffered in the conduct of the cooperative's business, membership in the cooperative as such gives the members no right to claim direct loss in respect of third parties. The detriment experienced individually by the members arises from their contractual relationship with the cooperative. In respect of the reduced milk fees, therefore, the members have a right only to compensation by the cooperative, if the cooperative has imputably failed them.

Furthermore, it is impossible to accept S., as (former) director of the cooperative, being sued by individual members since he was employed for the business that was conducted on behalf of all members. The Supreme Court refers to the arguments presented in 3.4 above with regard to the nature of the cooperative.

All of the preceding arguments lead to the conclusion that in the present case only the cooperative can hold S., as director, liable for the consequences of his mismanagement and that the members cannot bring individual claims against him. This is not altered by the fact that Heino Krause has since been absorbed by Coberco. After all, all of its rights and obligations, which have been affirmed without contradiction in these proceedings, have passed to Coberco as the acquiring cooperative.

3.7. The decision by the Court of Appeals cannot stand. The Supreme Court can settle the case on its own. The facts and circumstances adduced by the members are insufficient to allow one to assume the personal liability of S. toward the members. The order by the Lower Court must therefore be upheld.

4. Ruling
The Supreme Court:
reverses the decision by the Court of Appeals in Arnhem of April 27, 1999;
upholds the order by the Court in Arnhem of November 14, 1996;
orders the Cassation Appellees to pay costs of the proceedings on appeal and in cassation, the amount incurred by S. et al. up to this judgment being assessed at 5,540 guilders for the appeal proceedings and 753.72 guilders in disbursements and 3,500 guilders in fees for the cassation proceedings.

[Opinion] **Advisory Opinion** by Advocate-General Mr. Hartkamp:
*Facts and the course of the proceedings*
1) Cassation Appellant 1 (hereinafter S.) was the director of the cooperative association Coöperatieve Melkproductenfabriek "Heino Krause" BA in Heino (hereinafter, Heino Krause) from September 1, 1984 to March 8, 1991. He was suspended as director on the latter date. His employment was subsequently terminated through dissolution of his contract of employment pursuant to article 1639w (old) BW.

In connection with Heino Krause's poor financial result in 1989, in 1990 the board decided to pursue affiliation with a strong partner and to cease operations as an independent milk processor. On August 28, 1991, Heino Krause BA merged with the cooperative association Verenigde Coöperatieve Melkindustrie Coberco BA, hereinafter Coberco, and thus the entire assets of Heino Krause were transferred to Coberco and Heino Krause ceased to exist.

In a summons dated December 6, 1993, Cassation Appellee, hereinafter SOBI, acting in the present case on behalf of 147 former members of Heino Krause, held S. and his former wife R. (Cassation Appellant 2) jointly and severally liable for a loss, to be assessed by the court, suffered as a consequence of—in brief—mismanagement.

2) In an order handed down on November 14, 1996, the Court in Arnhem declared SOBI inadmissible, basing its argument largely on HR December 2, 1994, NJ 1995, 288 with notes from Maeijer. (Poot v. ABP). I refer to the order in that regard.

In an order handed down on April 27, 1999, the Court of Appeals in Arnhem reversed that ruling. It argued as follows:

> "4.2. The Court of Appeals agrees with SOBI that in the present situation, the loss suffered by the members is not the same as the loss suffered by the cooperative. It is significant that Heino Krause was a traditional cooperative in which the members delivered all their milk to Heino Krause, for which they did not receive a fixed price, but instead milk fees that depended on Heino Krause's operating income. The process for doing this was that Heino Krause would determine the definitive amount of the milk fee based on the annual assessment of net operating income after taxes, with allowance made for advances already paid to the members for delivered milk. It was also determined what amount of that net income would be added to the Heino Krause equity. A positive net income resulted in a supplementary payment to the members in proportion to the amount of milk delivered, and a negative net income meant that the members had to proportionally repay the advances that they had already received. In such a situation, the (financial) interests of the members were closely intertwined with those of the cooperative. The detrimental results achieved by Heino Krause in the years 1985-1990 (as a consequence of the presumably assumed mismanagement by S.) were thus passed on to the members by way of lower milk fees. In that sense, therefore, this is no longer a case of loss suffered by Heino Krause; rather, it was the members who definitively suffered that loss. That loss by the members is thus separate from and must be distinguished from the loss suffered by Heino Krause.
> 
> In sec. 7.1.c of its Reply and in Annex 2 to its pleading on appeal, SOBI substantiates the fact that detrimental results were achieved in the years 1985-1990 owing to increased purchases of outside milk and powdered milk. S. and R. have insufficiently substantiated their challenge of this point. Indeed, given the fact that the loss was passed on to the members, the Heino Krause assets were not harmed by the presumably assumed mismanagement by S. The figures submitted by SOBI, which are not contested by S. and R. (Annex 1 to the pleading on appeal) show that despite the detrimental results for the years 1985-1990, the Heino Krause assets grew over that period from 2,755,172 guilders to 4,590,656 guilders. In the bad year of 1990, the negative net income after taxes and with allowance made for advances already paid to the members came to approximately 22,000,000 guilders, which was charged to the members and not to the Heino Krause equity. Since in this regard Heino Krause suffered no loss, but the members did by way of lower milk fees, it is not Heino Krause that can claim that loss. It is the members who must be able to claim their own loss.
> 
> 4.3. The members of Heino Krause can directly sue S. if he has violated a specific standard of due care in respect of them. In assessing this issue, it is once again important to note that Heino Krause was a traditional cooperative in which the members' operating income—the received milk fees—depended entirely on the cooperative's operating income. In such a situation, there existed not only a membership relationship between the cooperative and the members, but also the relationship that exists between a business and suppliers/creditors. In the opinion of the Court of Appeals, S. had a special duty of due care toward the members on the basis of this dual relationship. After all, the management policies pursued by him as director of Heino Krause had direct consequences for the members' financial position, and thus S. bore responsibility for that position. With his management policies, he was supposed to take into account the members' financial interests. If S. can indeed be faulted for mismanagement, as will be discussed in the following, then he violated the special duty of due care toward the members.
> 
> 4.4. The preceding leads to the conclusion that the claims brought by SOBI against S. and R. were wrongly dismissed. That conclusion is not altered by the fact that SOBI is also claiming the same loss from Coberco and Moret Ernst & Young. Indeed, SOBI has stated that it will withdraw those claims—on which nothing has (yet) been paid out—if the claim in the present case is allowed. Such a withdrawal would also put an end to the indemnity claim brought by Coberco against S. concerning the respective loss.
> 
> The appealed order must be reversed."

The Court of Appeals subsequently answered the question of whether S. can be faulted for mismanagement in the affirmative, allowed the claims brought by SOBI, and referred the parties to the procedure for the assessment of damages.

3) Appellants filed—in time—an appeal in cassation of this decision, thereby adducing grounds comprising three sections that relate exclusively to the grounds 4.2-4.4 cited in the preceding. Both parties have advanced written arguments in support of their positions. Appellants have entered a reply.

*Discussion of the grounds for appeal in cassation*

4) In assessing this case, it is helpful to consider the rulings by the Supreme Court in the aforementioned Poot v. ABP decision, as well as several subsequent judgments.
In the Poot v. ABP decision, the Supreme Court ruled,
(i) that if a third party inflicts financial loss on a company by failing to duly fulfill contractual obligations toward the company or through unlawful conduct toward the company (said financial loss entailing a decrease in the value of the stock), only the company has the right to claim compensation from the third party for the loss thereby inflicted on it;
(ii) that in principle shareholders cannot bring their own claims for compensation against the third party on the basis of the detriment (initially) suffered by them (comprising the reduction in the value of their shares); and
(iii) that the situation might differ if the third party's conduct has led to the company's bankruptcy, through which the shares have become worthless, but in that case it must be shown that the third party acted not only unlawfully in respect of the company, but also contrary to the due care demanded in his relationship with the shareholder personally.
In the decision of November 29, 1996, NJ 1997, 178 (Cri Cri), the Supreme Court spoke of "incidental loss" in this regard; the shareholder has no claim to the compensation of loss that can merely be characterized as incidental to the loss suffered by the company.
In the Ventaz case (HR December 12, 1997, NJ 1998, 348 with notes from Maeijer), in which the third party was blamed for conduct that led to the company's bankruptcy and to its shares becoming worthless, no negligent action toward the shareholder was assumed because the purported elements of that (deliberate action to force the company's bankruptcy or action with the conditional intent of harming the shareholder's interests) were not proved.
5) In HR May 2, 1997, NJ 1997, 662 with notes from Maeijer (Kip and Sloetjes v. Rabo Winterswijk), unlawful action against the shareholders (the married couple Kip and Sloetjes) was indeed assumed. The Supreme Court found that the basis of that case was of a completely different nature than in the Poot v. ABP decision. The relevant argument is as follows:

> "3.6 Said decision in HR December 2, 1994, NJ 1995, 288, concerned a case in which the plaintiff, as the director and sole shareholder of a group of companies, adduced facts and circumstances intended to show unlawful action toward that group but did not present any arguments that would lead to the conclusion that the other party had also acted contrary to the due care demanded in its relationship with him personally. The loss in connection with the decrease in the value of the plaintiff's shares—which he still holds—corresponded entirely to the financial loss suffered by the group as a consequence of the alleged unlawful action.
> The basis of the claim brought by Kip and Sloetjes is of a completely different nature, however. They essentially argue that the Bank acted unlawfully toward them personally and that the loss that they suffered is the consequence of a composite of unlawful conduct by the Bank that not only led to the value of their shares being seriously affected by the Bank's negligent loan policies and by pressure to cooperate with the suspension of payments; another consequence was that they—under pressure from the Bank—were forced to sell those shares at a very inauspicious time, so that the loss that arose from the decrease in value had a definitive adverse effect on their assets and can no longer be remedied by any compensation paid by the Bank to the group companies, whereas their interests were moreover closely intertwined with those of the group at the time of the conduct attributed to the Bank, partly because of the security furnished to them and their dependence in terms of income and asset development on the business created by them and conducted by the group."

The Supreme Court (after reversal owing to defective justification) did remand the case to the court of appeals for further fact-finding, but I share annotator Maeijer's conclusion that the loss suffered by the couple qualifies for compensation if the basis argued by them is proved after remanding. The differences with the case in the Poot v. ABP decision are clear. The 1997 case concerned loss that,
(i) (at least partly) cannot be regarded as incidental loss;
(ii) because of the sale of the companies, can no longer be remedied through a claim for damages brought by the companies and that thus had a definitive adverse effect on the shareholders; and
(iii) according to the shareholders' arguments, was a consequence of an unlawful act committed by the bank against them personally, with one factor being the fact that their interests (through personally furnished security and dependence in terms of income and asset development) were substantially intertwined with their companies.
6) If the present case is compared with the cases named in no. 4 and 5, two differences are immediately obvious: The present case involves not a company, but a cooperative association; and the unlawful conduct is not attributed to a third party who was acting with the cooperative, but rather to its director.
It seems to me that the basic premise of the Poot v. ABP decision also applies to the cooperative association: Since we are talking about a legal entity that is involved in legal matters independently, as the bearer of its own rights and

obligations, and that has assets separate from those of its members, then in principle only the cooperative association can act against third parties that have acted unlawfully toward it and caused it loss. What I noted in the advisory opinion for the Poot v. ABP decision (sec. 9) also applies here *mutatis mutandis*. However, exceptions are conceivable, as is also the case in corporate law. As for the second difference, given the reading of unlawful action under Dutch law, it is unclear how a director of a cooperative association could not have to exercise proper care in respect of the interests of its members or how he could never be held liable for unlawful action toward them for failing to exercise the required care. See art. 2:8 j° 6:162 BW NOTE 1 and HR May 17, 1991, NJ 1991, 645 (and the note by Maeijer, sec. 2). Concerning the position of the director of a cooperative, see W.J. Slagter, SER Recommendation on Applying Structural Regulations to Cooperative Associations, TVVS (1985), p. 161 and Postscript, TVVS (1987), p. 91, J. Kras, The Director in the Cooperative, TVVS (1988), pp. 81, 82. These sources show that the director of a cooperative cannot be equated with the director of a corporation or limited-liability company. The dual nature of the cooperative association (company and association) means that the director runs the company and the board runs the association. See also J.H. Lunshof, TVVS (1988), p. 70. The director is of course liable toward the members only if his conduct is (partly) unlawful toward them personally.

As concerns this aspect, I would like to note in general that the possibility of someone (a third party or a manager) acting unlawfully toward the members of a cooperative association personally, seems to me, no less likely than unlawful action toward the shareholders of a company. Rather, the opposite seems to hold true. Whereas the financial and/or emotional interests of a shareholder can be intertwined with his company in a wide range of gradations (on one end of the spectrum is the shareholder who has only one or a few shares in a big company, and at the other end is the sole shareholder/director whose entire assets are invested in the company and for whom the company is "his life"), the interests of the members of a cooperative association are in principle closely intertwined with the cooperative, because a cooperative association, in part from the historical perspective, is to a greater or lesser degree an extension of the members' businesses. NOTE 2 After all, agreements are entered into with them to provide for their material needs (art. 2:53 (1) BW). It is true that the cooperative association has also evolved and now operates in various economic forms, which means that the involvement of the members' businesses in the cooperative varies more widely than was the case in the past, NOTE 3 but that does not alter the fact that in the present case the original model still holds true: After all, the members were obligated to sell all of the milk that they produced to the cooperative, their operating income was completely dependent on the cooperative's operating income, and the cooperative was moreover connected to the members' own businesses and constituted an economic extension of the members' businesses. NOTE 4 Thus, it is understandable that the Court of Appeals considered this state of the members' interests being significantly intertwined with the cooperative as an important element in its determination of unlawfulness. I will now come back to the judgment handed down by the Court of Appeals.

7) The ruling by the Court of Appeals in no. 2 is basically as follows.
(i) The members' loss as referred to in ground 4.2 is not the same as the loss suffered by the cooperative (because its assets increased despite the mismanagement by S., whereas the detrimental operating income was passed on to the members by way of lower milk fees);
(ii) The members definitively suffered that loss (because Heino Krause cannot claim compensation for that loss since it did not suffer it); and
(iii) S. violated a specific duty of due care toward the members: Because the chosen method of compensating for the members' deliveries of milk to the cooperative meant that their financial interests were strongly intertwined with those of the cooperative (their operating income was completely dependent on the operating income of the cooperative), S. was required to consider in his management policies the interests of the members (with whom not only a membership relationship, but also a relationship between a business and suppliers/creditors existed), which he did not do.
(iv) Finally, the Court of Appeals also found that its opinion is not altered by the fact that SOBI has also filed claims for damages against other parties (Coberco and Moret Ernst & Young).
8) The rulings referred to in no. 7 (i) and (ii) are of a factual nature and, in my opinion, evince no incorrect conception of law. I also believe that the latter is true of the rulings under (iii) and (iv). Indeed, the present case as stated shows significantly more points of consistency with the Supreme Court's ruling in the Kip and Sloetjes v. Rabo Bank decision than with the one in the Poot v. ABP decision. Here too, there is a loss that: is not incidental to and does not correspond to the loss of the legal entity; that is the direct consequence of negligent conduct by S. (see the Cri Cri decision); that was definitively suffered by the meritorious plaintiffs and can no longer be remedied by action by or payments to the legal entity NOTE 6); whereas the person being held liable violated a standard of due care toward them, the content of which is principally defined by the close intertwining of their financial interests (income position) with the legal entity.
9) All of the complaints in the grounds for appeal in cassation fail in view of the preceding. In my opinion, it is wrongly argued in subsection I.1 that the members of a cooperative association can assert no claim of their own whatsoever against the director. Subsections I.2 and I.3 protest to no avail the rulings indicated in no. 7 (i) and (ii). The complaints

in subsections III and II take aim, to no avail, at the rulings referred to in, respectively, no. 7 (iii) and (iv).
*Advisory opinion*
My advisory opinion is that the appeal should be denied.

**Notes:**
1. This decision concerned the question of whether the Supreme Court's doctrine must be applied to a cooperative as set forth in the normal sort of case for liquid equity companies (corporations and limited-liability companies) in HR December 2, 1994 (Poot v. ABP) NJ 1995, 288, or as in the ruling of HR May 2, 1997 (Kip and Sloetjes v. Rabo), NJ 1998, 348), which represents a departure from that doctrine because the basis of the claim was of a completely different nature. See Asser-Maeijer 2-III no. 180a concerning these decisions. The Court of Appeals and the Advocate-General (see his Advisory Opinion, no. 8) found immediate inspiration in the Kip and Sloetjes v. Rabo decision; in this decision, the Supreme Court, following the order handed down by the lower court (contained in JOR 1997, 25), applies the Poot v. ABP doctrine that was later further affirmed in HR November 29, 1996 (Cri Cri) NJ 1997, 178 and HR December 12, 1997 (Ventaz v. FNV) NJ 1998, 348.
The Poot v. ABP doctrine states, in brief, that if financial loss is inflicted on a company by a third party through mismanagement or unlawful action, only the company has the right on that basis to claim compensation from the third party for the loss inflicted on it. The shareholder has no claim to compensation of the incidental loss suffered by the company (the decrease in the value of his shares). This might be different if the third party has also violated a specific standard of due care to be applied in respect of the shareholder and his shares have become worthless as a result of bankruptcy.
The Kip and Sloetjes v. Rabo decision shows that if the incidental loss has become a definitive loss, which is to say that it can no longer be remedied by any damages paid by the third party to the company in question, then there is reason to grant such a shareholder an (own) direct claim against that third party, provided that the third party has also acted unlawfully toward the shareholders personally or has acted specifically negligently toward them. According to the Supreme Court, this latter aspect, given the composite of unlawful conduct by the third party (the bank), was not sufficiently considered by the Court of Appeals, and the Supreme Court also emphasized that at the time of the conduct attributed to the third party, the interests of the shareholders were closely intertwined with those of (their companies in) the group (in the form of privately furnished security and the dependence of their income and financial position on the group's business).
Moreover, unlawful or specifically negligent conduct by a third party toward a shareholder personally can cause a loss that is (partly) separate from the loss suffered by the company. See the Kip and Sloetjes v. Rabo decision regarding immaterial loss. Thus, this is not an incidental loss (definitive or otherwise), see HR November 29, 1996 (Cri Cri) NJ 1997, 178, but rather an (own) direct loss (compare with the wording chosen by the Supreme Court in the present decision, ground 3.5) that the shareholder can thus claim independently and directly.
2. The present decision must be considered in light of the aforementioned judgments.
a. In the decision by the Court of Appeals, there was mention on the one hand of the definitive loss suffered by the members of the cooperative (ground 4.2), and on the other hand of the own (direct) loss suffered by those members. The presence of a direct loss is denied by the Supreme Court after a discussion in ground 3.3 (i) and (iii) of the (independent) nature of a cooperative, which conducts its own business on behalf of its members (ground 3.4). The "close intertwining" of the members' financial interests with those of the cooperative (which by law also enters into agreements with them concerning the business that it conducts) is not enough to allow that assumption. In that sense, the phrase "conducting business jointly" that the Supreme Court uses in ground 3.3 (III) was unfortunate. It reminds me too much of the questionable vision of Galle, 1994 inaugural speech, p. 3, who sees the cooperative (in part) as a qualified partnership.
Therefore, the Supreme Court finds that this is a case of incidental loss (ground 3.5) and that it was not adequately shown that that loss is definitive. The Supreme Court points out (end of ground 3.6) that the cooperative can hold the director liable and that the merger that has since taken place is no impediment to that.
b. Secondly, in line with its previous decisions the Supreme Court (ground 3.4) requires that in order for a member of the cooperative to have a claim against the director in respect of loss caused in the conduct of its business, there must be specifically negligent conduct toward him by the director. The Supreme Court finds that there is no such specific duty of due care in the present case. The legal relationship between the members and the cooperative, defined by membership and the contractual relationship, is not enough to support such a duty. The mismanagement by the director is detrimental to the cooperative and, as a consequence, the members, but there is nothing specific about that. I recall here the ground presented in the Poot v. ABP decision that comes down to the argument that in order to establish that the third party violated a specific duty of due care toward the shareholder, it is not enough to posit mismanagement or negligent action by that third party toward the company. I leave aside here the question of whether "conditional intent" is also sufficient for the shareholder to suffer detriment; see my note 2 to HR December 12, 1997 (Ventaz v. FNV) NJ 1998, 348. According to the Advocate-General in no. 12 (c) of his advisory opinion on the Poot v. ABP decision, mere knowledge of the detriment is in any event insufficient. Is the situation with a cooperative different? In note 5 of his advisory opinion on the present decision, the Advocate-General also refers to

the case law concerning the personal liability of directors toward creditors of the company that have suffered detriment. But, given the nature of the loss inflicted here, should third-party creditors be equated with creditors of a cooperative whose position as such is, by law, coupled to their membership? The Supreme Court apparently thinks not. Their contractual relationship with the cooperative gives the members the possibility of holding the cooperative liable on that basis if it has imputably failed them (ground 6, second line). And the somewhat unclear sentence at the end of ground 3.5 that "under some circumstances, the members of the cooperative can hold the cooperative responsible for the mismanagement by the director" probably means to say that under some circumstances such mismanagement can be imputed as unlawful action to the cooperative, which is then liable for it toward the members.
c. Of final note is the Supreme Court's observation (ground 3.6) that its line of reasoning prevents chaotic litigation and recovery situations to which the lower court had made detailed reference. See sec. 9 of the Advocate-General's advisory opinion on the Poot v. ABP decision. This "observation" constitutes an important argument for the approach taken by the Supreme Court.
3. In contrast to the Poot v. ABP case, the issue here was not mismanagement and/or unlawful conduct toward the legal entity by a third party, but rather by its own director who was not a manager. An imputable failure by the manager in respect of the company generally does not mean that he is also liable to the shareholders. The line taken in Poot v. ABP must be followed here; see Asser-Maeijer 2-III no. 322. According to this decision, the situation is no different for a director of a cooperative as regards liability toward the members. The cooperative can hold the director (as its employee) liable for the consequences of his mismanagement, that being subject, according to ground 3.3 (ii), to the limits provided by art. 7:661 BW. This latter point means that the director is in principle liable only in the event of (intent or) deliberate recklessness. If he had been a manager, then he could have been seriously reproached pursuant to art. 2:9 BW. See most recently HR December 10, 1999, NJ 2000, 6). I would say that both criteria must lead to more or less the same results, in any event with liquid equity companies, because there the manager is generally also an employee. Concerning this problem, see Klaassen, Loss-Causing Action in Function, inaugural speech Nijmegen 2000, par. III, 4.2.
Maeijer

**Footnote references**

NOTE 1:
See Timmerman, TVVS (1991); p. 190; Van den Ingh, JOR (1996), p. 379 and De NV 72 (1994), p. 22 with literature in note 74.

NOTE 2:
See Slagter, SER Recommendation on Applying Structural Regulations to Cooperative Associations, TVVS (1985), p. 160; Lunshof, TVVS 1988, p. 67; R.C.J. Galle, TVVS 1990, p. 165, The Cooperative (Tilburg diss., 1993), pp. 123-125 and The Cooperative in Contemporary Perspective (Tilburg lecture, 1994), pp. 1-3. See also the explanatory memorandum to the Introduction of Structural Regulations for Large Cooperatives and for Large Mutual Insurance Associations, Second Chamber 1986-1987, 19 775, no. 3, p. 6: "Depending on the extent or importance of the involvement of the members' businesses in the cooperative, the member-entrepreneurs are individually dependent on their cooperative to a greater extent."

NOTE 3:
See the pleading on appeal by Mr. Mazel, sec. 2.4-2.11; Slagter, SER Recommendation, loc. cit., p. 160; explanatory memorandum, loc. cit., pp. 5, 7; Lunshof, loc. cit., p. 70; Galle, The Cooperative (Tilburg diss., 1993), p. 309.

NOTE 4:
See explanatory memorandum, loc. cit., p 5: "Insofar as cooperatives are connected to the members' own businesses, they can be regarded as an economic extension of the members' businesses."

NOTE 5:
Concerning the position of creditors in this regard, see the advisory opinion on the Poot v. ABP decision, no. 12 (d). Concerning the personal liability of managers toward creditors, see Asser-Hartkamp (III) (1998), no. 262, as well as HR November 7, 1997, NJ 1998, 269 with notes from Maeijer; November 14, 1997, NJ 1998, 270 with notes from Maeijer; HR June 12, 1998, NJ 1998, 727 with notes from PvS; HR November 20, 1998, NJ 1999, 684 with notes from PvS; and HR January 8, 1999, NJ 1999, 318 with notes from Maeijer. The view defended in the written explanation of the grounds that the director is not a body and thus cannot be liable as a manager strikes me as incorrect. The director is indeed regarded in the literature as a body, "provided that the articles of association name the board of management and confer its authorities." (J.N. Kras, TVVS 1998, p. 82). In this case, the director is named in the articles of association and authorities are conferred on him (see art. 39 of the articles of association, exhibit 2 to the answer). But even if he were not a body, that does not bar the possibility of him being personally liable.

NOTE 6:

Not only because Heino Krause no longer exists and thus can no longer bring action, or because only a (small) part of any damages paid by S. to the new legal entity Coberco (created by the merger) would end up with the ex-members of Heino Krause, but most of all because this is a loss suffered by the members, not by the legal entity.