# EXHIBIT 5

**JOR 2002/26, President of the Amsterdam District Court, December 20, 2001**

| | |
|---|---|
| Issue: | JOR 2002/2 |
| Location: | JOR **2002/26** |
| Section: | Corporate law |
| Court: | President of the Amsterdam District Court |
| Date: | December 20, 2001 |

| | |
|---|---|
| Case number: | KG 01/2551 |
| Tribunal: | Orobio de Castro LL.M. |

Parties:    1. Gorillapark BV in Amsterdam,
  2. Trailblazer Ventures BV in Zeist,
        Plaintiffs,
  attorney of record: T. van Wijngaarden LL.M.,
        *versus:*
  the legal person incorporated under foreign law Initi\@tive IP SA (IIP)
     in Paris, France,
       respondent,
   attorney: E.A. Vroom LL.M.

Subject matter:  Minority shareholder has been ordered to act in accordance with an amendment to the shareholders' agreement, which has not been accepted by the minority shareholder.
 The minority shareholder is acting contrary to reasonableness and fairness, by extracting an arrangement that is more favorable to them

Articles:             Civil Code Volume 2, Art. 8

**Summary**

The minority shareholder's refusal to cooperate with the chosen structuring of the company, as a consequence of which, the intended financing will not occur, which will result in a high probability of the company going bankrupt. The presumption has arisen, that in reality, their refusal is aimed at extracting an arrangement that will be different, more favorable to them than to the other shareholders.  In doing so, they intend to undo in their favor, the equality that applies to the group of shareholders who also joined the First Amended Shareholder Agreement. This is contrary to the standards of reasonableness and fairness that must also apply between shareholders, and which must particularly apply between this group of shareholders and the company, which depends on the solidarity of its shareholders for its continued existence.
It would be a different matter, if IIP were being asked to invest (more) money in the business, a risk they no longer wish to take.

**Judgment**

**(...; Ed.)**

**Grounds for the decision:**
1. This judgment is based on the following facts:
a  The activities of Gorillapark are primarily focused on the commercial areas of guidance of and investment in, start-up businesses in the IT sector in the European market.
b  Trailblazer is the founder of Gorillapark and holds approximately 65% of the shares in Gorillapark.
c  Since its incorporation, the issued capital of Gorillapark has been increased a few times by the entry of new shareholders. Initially, the management of Gorillapark owned its capital. They became the holders of ordinary shares.
d  During re-financing of the business in January/February of 2000, a number of investors joined the company, including banks. They became the holders of preferential A-class shares.
e  During a second round of re-financing in May and August 2000, IIP, among others, became a shareholder. The investors that joined the company at the time, became the holders of preferential B-class shares.
f  After the re-financing in January/February of 2000, the Gorillapark shareholders entered into a number of agreements regarding share ownership, which were set down in a shareholders' agreement, dated January 21, 2000.  This agreement was amended on June 28, 2000, to become the First Amended Shareholders' Agreement.
g  When IIP took up its shareholding, they became party to the First Amended Shareholders' agreement through a Deed of Accession, dated August 30, 2001.
h  Because of the recession, the value of Gorillapark shares has dropped sharply since November 2000.
i  In order to generate the additional liquidity required, Gorillapark attempted to attract new shareholders in a third round of financing in 2001.
j  On May 11, 2001, MeesPierson Investeringsmaatschappij BV and NesBic Strategic Investments BV (subsidiaries of Fortis Bank), made available a 10 million bridging loan up to July 8, 2001.
K  Gorillapark's attempts to attract new investors has been unsuccessful.
l  In August 2001, the abovementioned lenders indicated that they were willing to convert the loan into preferential C-class shares in Gorillapark.
As a result, a Second Amended Shareholders' Agreement and an Investment Protection Agreement were drawn up.
m All Gorillapark shareholders, with the exception of IIP, supported this investment and have signed the Second Amended Shareholders' Agreement.
n  The lenders have extended the term of bridging loan until December 30, 2001.  They have also made available a second bridging loan of 10 million to be converted into preferential C-class shares, conditional upon the resolution of the problem with IIP.
2. In this lawsuit, Gorillapark and Trailblazer petition the Court to order IIP to comply with the terms of the Second Amended Shareholders' Agreement, on pain of a penalty of 250,000 Euros for each breach thereof.
3. To that end, they assert that IIP's uncooperative attitude will prevent any possibility of financing the 20 million [in another way, and that the lenders will] demand [repayment of the loan] on December 30, 2001. This will lead to an emergency situation and will result in Gorillapark's bankruptcy. Furthermore, IIP's unhelpful attitude prevents the possibility of a merger. After all, an in-principle agreement had been reached with a potential merger partner, which will fall through if the IIP problem is not resolved in time. IIP has taken an extremely unreasonable position. Their complaint of not being provided with information is unfounded. According to Gorillapark and Trailblazer, IIP's actions are unlawful and contrary to the standards of reasonableness and fairness.
4. IIP put forward a defense, which is detailed below.

**Assessment**

5. IIP refuses to be a party to the Second Amended Shareholders' Agreement for two reasons, i.e. that Gorillapark has provided them with insufficient information and that becoming party to the agreement will result in a significant reduction in the value of their shares. The latter is because shares will be issued to third parties (Fortis Bank) at a considerably lower price as a result of the much lower valuation of the share portfolio, and without commensurate compensation.

6. The first reason does not hold true. The correspondence provided shows that IIP was offered adequate opportunity to familiarize itself with the financial situation at Gorillapark. At any rate, the remainder of the shareholders in their group appear to be of the view that they did receive enough information to make the decision contemplated by Gorillapark. Nor does IIP dispute that the value of the portfolio has fallen significantly, and that this will affect the value of the shares to be issued.

7. IIP's objection that Gorillapark's proposed issue of new shares would have a negative effect on the value of their own shares, does not hold true either. After all, their refusal to cooperate with the chosen structuring of the company, will have the effect that the intended financing by (subsidiaries of) the Fortis Bank will not occur, which, in all probability, will result in the company's bankruptcy. Since it can be assumed that IIP also understands this, it raises the suspicion that the real objective of their refusal is to extract an arrangement in which the terms that apply, will be different for them than for the other shareholders, who, like them, belong to the group that entered into the First Amended Shareholders' Agreement. In doing so, they intend to change the equality among this group of shareholders in their favor. This is contrary to the standards of reasonableness and fairness that must also apply between shareholders, and which must particularly apply between this group of shareholders and Gorillapark, which depends on the solidarity of its shareholders for its continued existence.

8. It would be a different matter, if IIP were being asked to invest (more) money in the business, a risk they no longer wish to take, even if other shareholders were to judge this differently. Such is not the case here, since no financial contribution has been asked from IIP in that sense that their financial exposure would be increased.

9. The foregoing leads to the decision that the petition is granted insofar that this is necessary for the implementation of the issuing of shares that Gorillapark has in mind.

10. IIP, as the party decided against, is ordered to pay the costs.

**Decision:**

1. IIP is ordered to comply with the Second Amended Shareholders' Agreement relating to Gorillapark, insofar as this is necessary for the issuing of shares currently contemplated by Gorillapark, on penalty of a fine of 250,000 Euros for each breach of this order.
2. IIP is ordered to pay the cost of these proceedings (…;*Ed.*)
3. This judgment will have immediate effect.
4. All additional or other requests have been dismissed.