UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEPHEN M. WILSON, *et al.*,

               Plaintiffs,

               v.

IMAGESAT INTERNATIONAL N.V., *et al.*,

               Defendants.

Case No. 07 Civ 6176(LTS)(DFE)

---

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## ISRAEL AEROSPACE INDUSTRIES LTD. AND YEHOSHUA ELDAR'S
## MOTION TO DISMISS THE COMPLAINT

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York  10019-6064
(212) 373-3000

-and-

COHEN TAUBER SPIEVACK &
WAGNER PC
420 Lexington Avenue
Suite 2400
New York, NY 10170
(212) 586-5800

Attorneys for Defendants Israel Aerospace
Industries Ltd. and Yehoshua Eldar

March 25, 2008

## Table of Contents

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................II

ARGUMENT ............................................................................................................ 1

I.      PLAINTIFFS' RICO AND FRAUD CLAIMS FAIL BECAUSE THEY
ARE NOT PLEADED WITH THE PARTICULARITY REQUIRED BY
RULE 9(B)....................................................................................................... 1

     A.      The Complaint Does Not Adequately Plead Scienter or Reliance ............ 1

     B.      Plaintiffs Have Not Pleaded Facts Showing That IAI or Eldar
Made Any False Statements....................................................................... 2

     C.      Mail and Wire Fraud Are Not Pleaded With Particularity ........................ 3

II.      BASED ON THE ALLEGATIONS IN THE COMPLAINT, IAI AND
ELDAR ARE IMMUNE FROM SUIT IN THE UNITED STATES
UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT ............................ 5

III.      THE COURT SHOULD DISMISS THE CASE AGAINST IAI AND
ELDAR BASED ON THE DOCTRINE OF INTERNATIONAL
COMITY ......................................................................................................... 7

IV.      THE COURT SHOULD DISMISS PLAINTIFFS' BREACH-OF-
CONTRACT CLAIMS BECAUSE PLAINTIFFS LACK STANDING TO
SUE IAI AND ELDAR ................................................................................... 8

V.      THIS COURT LACKS PERSONAL JURISDICTION OVER MR.
ELDAR ........................................................................................................... 9

CONCLUSION....................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Antares Aircraft, L.P.* v. *Fed. Republic of Nigeria,*
    999 F.2d 33 (2d Cir. 1993)..............................................................................7

*Atl. Gypsum Co., Inc.* v. *Lloyds Int'l Corp.,*
    753 F. Supp. 505 (S.D.N.Y. 1990) ...............................................................4

*Bandes* v. *Harlow & Jones, Inc.,*
    852 F.2d 661 (2d Cir. 1988)...........................................................................8

*Beth Israel Med. Ctr.* v. *Smith,*
    576 F. Supp. 1061 (S.D.N.Y. 1983)...............................................................4

*Bischoff* v. *Boar's Head Provisions Co.,*
    834 N.Y.S.2d 22 (1st Dep't 2007) .................................................................9

*City of New York* v. *Joseph L. Balkan, Inc.,*
    656 F. Supp. 536 (E.D.N.Y. 1987) ................................................................4

*Commercial Props. Invs., Inc.* v. *Quality Inns Int'l, Inc.,*
    61 F.3d 639 (8th Cir. 1995) ...........................................................................3

*Ctr. Cadillac, Inc.* v. *Bank Leumi Trust Co. of New York,*
    808 F. Supp. 213 (S.D.N.Y. 1992), *aff'd* 99 F.3d 401 (2d Cir. 1995) ..........5

*Daventree Ltd.* v. *Republic of Azerbaijan,*
    349 F. Supp. 2d 736 (S.D.N.Y. 2004).............................................................6

*Drennis* v. *Haligiannis,*
    452 F. Supp. 2d 418 (S.D.N.Y. 2006).............................................................9

*GLM Corp.* v. *Klein,*
    684 F. Supp. 1242 (S.D.N.Y. 1988).................................................................5

*Goldin Assocs., L.L.C.* v. *Donaldson, Lufkin & Jenrette Sec. Corp.,*
    No. 00 Civ. 8688(WHP), 2003 WL 22218643 (S.D.N.Y. Sept. 25, 2003) .................3

*Hecht* v. *Commerce Clearing House,*
    897 F.2d 21 (2d Cir.1990)...............................................................................4

*In re Adelphia Commc'n Corp. Sec. & Derivatives Litig.,*
    398 F. Supp. 2d 244 (S.D.N.Y. 2005).............................................................3

*In re Emex Corp. Sec. Litig.,*
    No. 01 Civ. 4886(SWK), 2002 WL 31093612 (S.D.N.Y. Sept. 18, 2002) .................3

*In re LaBranche Sec. Litig.*,
   405 F. Supp. 2d 333 (S.D.N.Y. 2005).........................................................................3

*In re Van der Moolen Holding N.V. Sec. Litig.*,
   405 F. Supp. 2d 388 (S.D.N.Y. 2005).........................................................................3

*In re Vivendi Universal, S.A. Sec. Litig.*,
   381 F. Supp. 2d 158 (S.D.N.Y. 2003).........................................................................3

*Int'l Hous. Ltd.* v. *Rafidain Bank Iraq*,
   893 F.2d 8 (2d Cir. 1989)............................................................................................7

*Jerome M. Sobel & Co.* v. *Fleck*,
   No. 03 Civ. 1041 RMB GWG, 2003 WL 22839799 (S.D.N.Y. Dec. 1, 2003),
   *adopted by* 2004 WL 48877 (S.D.N.Y. Jan. 8, 2004)...................................................4

*Lafarge Canada, Inc.* v. *Bank of China*,
   No. 00 Civ. 0261(LMM), 2000 WL 1457012 (S.D.N.Y. Sept. 29, 2000)....................7

*LC Capital Partners, LP* v. *Frontier Ins. Grp., Inc.*,
   318 F.3d 148 (2d Cir. 1993)........................................................................................2

*Leutwyler* v. *Office of Her Majesty Queen Rania Al-Abdullah*,
   184 F. Supp. 2d 277 (S.D.N.Y. 2001).........................................................................8

*Miller* v. *City of New York*,
   No. 05 CV 6024(SJ)(RML), 2007 WL 1062505 (E.D.N.Y. Mar. 30, 2007)................4

*Mitland Raleigh-Durham* v. *Myers*,
   807 F. Supp. 1025 (S.D.N.Y. 1992).............................................................................5

*Moses* v. *Martin*,
   360 F. Supp. 2d 533 (S.D.N.Y. 2004).........................................................................5

*Nagel* v. *AIG Life Ins. Co.*,
   No. 94 CIV. 1035 (RPP), 1994 WL 406045 (S.D.N.Y. July 29, 1994),
   *aff'd* 57 F.3d 1063 (2d Cir. 1995) .............................................................................4

*Optics Labs. Corp.* v. *Savannah Bank of Nigeria, Ltd.*,
   816 F. Supp. 898 (S.D.N.Y. 1993) ..............................................................................8

*Pravin Banker Assocs., Ltd.* v. *Banco Popular Del Peru*,
   109 F.3d 850 (2d Cir. 1997).........................................................................................8

*Quatrochi* v. *Citibank, N.A.*,
   618 N.Y.S.2d 820 (1st Dep't 1994) .............................................................................9

*Riis* v. *Mfrs. Hanover Trust Co.*,
    32 F. Supp. 1098 (S.D.N.Y. 1986) ...................................................................9

*Walther* v. *Maricopa Int'l Inv., Corp.*,
    No. 97 Civ. 4816(HB), 1998 WL 186736 (S.D.N.Y. Apr. 17, 1998)..........................9

**STATUTES**

18 U.S.C. § 1962(d) .............................................................................................3

28 U.S.C. § 1605(a) .............................................................................................7

C.P.L.R. § 302(a)(3)(ii).......................................................................................10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) .....................................................................................1, 2, 3

**Argument**[1]

I.  **PLAINTIFFS' RICO AND FRAUD CLAIMS FAIL BECAUSE THEY ARE
    NOT PLEADED WITH THE PARTICULARITY REQUIRED BY RULE
    9(B).**

Plaintiffs seem to argue that they have satisfied Rule 9(b) because their Complaint

is 151 pages long.  (Pl. Br. at 9, 104-05.)  But the Rule requires particularity, not length.

The Complaint is undoubtedly long, but it fails to plead the elements of fraud (falsity,

scienter, and reliance) with the particularity required by the Rule.  (*See* IAI & Eldar Br. at

5-13.)

A.  **The Complaint Does Not Adequately Plead Scienter or Reliance**

As we showed in our moving brief, plaintiffs fail to plead scienter and reliance

with particularity, and this failure defeats their claims of RICO and common-law fraud.

(*See* IAI & Eldar Br. at 9-11.)  Conclusory allegations that defendants never intended to

comply with their contractual obligations, or were motivated by their desire to profit IAI,[2]

are insufficient to allege scienter.  (*See id.*)  Plaintiffs cite neither case law nor the

Complaint in response, and defend their pleading only by asserting in conclusory fashion

that the Complaint "amply satisfies this element."  (Pl. Br. at 109.)  This response is not

sufficient.

These claims also fail because plaintiffs do not adequately plead reliance.  (*See*

IAI & Eldar Br. at 11-12.)  Plaintiffs' assertion that they were injured when they

allegedly forbore from bringing this litigation earlier and continued to work for ImageSat

---

[1]    The arguments set forth herein additionally address plaintiffs' First Amended Complaint, filed March
17, 2008, which, as characterized by plaintiffs in their letter to the Court on that date, "does not
constitute a major substantive rewriting of the Complaint . . . ."

[2]    The Complaint does not allege that any IAI employees had any financial incentive to harm ImageSat
for IAI's benefit.  (Nor could it do so, because IAI employees, including its senior management,
receive government-level compensation from IAI and hold no stock or stock options in the company.)

(Pl. Br. at 109-10) is unsupported by the Complaint. The Complaint nowhere alleges with particularity that plaintiffs could have asserted valid, timely claims but failed to do so to their detriment, or that they were harmed by working for ImageSat. The only case plaintiffs cite in this regard merely states the statute of limitations for a securities-fraud claim. (*Id.* at 110-11 n.30 (citing *LC Capital Partners, LP* v. *Frontier Ins. Grp., Inc.*, 318 F.3d 148, 154 (2d Cir. 1993).)[3] Moreover, the allegation that a plaintiff forbore from bringing litigation is insufficient to show detrimental reliance as a matter of law. (IAI & Eldar Br. at 12.)

### B.    Plaintiffs Have Not Pleaded Facts Showing That IAI or Eldar Made Any False Statements

The Complaint likewise fails to allege facts showing that IAI or Eldar made any false statements, much less when and where any such statements were made. (IAI & Eldar Br. at 6-9.) Plaintiffs' response is mere rhetoric: they assert that they "have detailed a long and sordid history of breaches of fiduciary duty and fraudulent statements and omissions perpetrated by Defendants," provided "[s]ubstantial detail" of the "transactions and events," "described numerous statements that were made to them by various Defendants," and "identified the specific Defendant or Defendants . . . responsible for a given action or statement." (Pl. Br. 106-07.) But they do not point to anything in the Complaint showing that any of this is so with respect to IAI and Eldar.[4]

---

[3]    Plaintiffs also assert that "several of the plaintiffs relied on Defendants' misstatements or misleading omissions in having decided to invest . . . in ImageSat . . . . in the first instance." (Pl. Br. at 110.) But this assertion is not supported by any allegations in the Complaint. Plaintiffs' new allegation that they "continu[ed] to invest money" (Am. Compl. ¶ 311), still fails to satisfy 9(b), in that, among other omissions, they do not identify when, what provoked them, and who among them continued to invest money.

[4]    Plaintiffs assert that they "could have alleged" the identities of every single defendant but chose not to do so. But the Court need not concern itself on this motion with unpleaded allegations, particularly where plaintiffs have already amended their Complaint once after this motion was made without addressing this deficiency, and in any event merely reciting the names of the defendants would still not

Plaintiffs' reliance on the "group pleading doctrine" to defend statements indiscriminately attributed to "Defendants" (Pl. Br. at 108) is also without merit. First, the doctrine does not permit imputation of statements made by *ImageSat* to IAI or Eldar, who were not "individual[s] with direct involvement in the everyday business of the company." *In re Van der Moolen Holding N.V. Sec. Litig.*, 405 F. Supp. 2d 388, 389-99 (S.D.N.Y. 2005) ("[T]he doctrine 'is extremely limited in scope. . . . applying only to clearly cognizable corporate insiders with active daily roles in the relevant companies or transactions.'" (citations omitted)); *Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688(WHP), 2003 WL 22218643, at *5 (S.D.N.Y. Sept. 25, 2003).[5]  Second, this doctrine applies only to "group-published documents," *see In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 192 (S.D.N.Y. 2003) ("oral statements . . . do not fall within the ambit of the group pleading doctrine"), and is thus inapplicable to "what was said and done at ImageSat Board meetings."[6] (Pl. Br. at 109.)

## C.    Mail and Wire Fraud Are Not Pleaded With Particularity

The Complaint also fails to plead with particularity that either IAI or Eldar committed at least two predicate acts.[7] (IAI & Eldar Br. at 13.)  The only alleged mail or

---

satisfy 9(b). (*See* IAI & Eldar Br. at 7.) The case plaintiffs cite, *Commercial Properties Investments, Inc.* v. *Quality Inns International, Inc.*, 61 F.3d 639, (8th Cir. 1995) (Pl. Br. at 106), is beside the point, as the defendant there did "not dispute that [the plaintiff] properly pleaded the time, place, and contents of the misrepresentations."

[5]  Plaintiffs appear to concede this point in asserting that such statements may be attributed to "the directors and senior officers of the entity." (Pl. Br. at 108.)  The cases plaintiffs cite are inapposite. *In re LaBranche Sec. Litig.*, 405 F. Supp. 2d 333, 352 (S.D.N.Y. 2005) (imputing group published documents officers and directors of company); *In re Adelphia Commc'n Corp. Sec. & Derivatives Litig.*, 398 F. Supp. 2d 244, 250 (S.D.N.Y. 2005) (same); *In re Emex Corp. Sec. Litig.*, No. 01 Civ. 4886(SWK), 2002 WL 31093612, at *8 (S.D.N.Y. Sept. 18, 2002) (same).

[6]  Plaintiffs cannot impute to Eldar alleged misstatements in ImageSat Investor Reports. The Investor Reports mentioned in paragraphs 101-104 of the Complaint were issued from 2002-2004. Plaintiffs allege (falsely) that Eldar served on ImageSat's Board only from 1998 to 2001. (Am. Compl. ¶55.)

[7]  Plaintiffs have also not properly pleaded a 18 U.S.C. § 1962(d) RICO Conspiracy. In order to adequately plead such a claim, plaintiffs "must allege 'facts implying an [ ... ] agreement involving

3

wire communications identified are routine business memos and e-mails between IAI and Northrop-Grumman, which plaintiffs do not allege were fraudulent. (*Id.*) Plaintiffs assert that "innocent" communications can still satisfy the jurisdictional elements of mail or wire fraud. (Pl. Br. at 99-100.) Perhaps; but the Complaint must still allege *some* fraudulent conduct. *Nagel* v. *AIG Life Ins. Co.*, No. 94 CIV. 1035 (RPP), 1994 WL 406045, at *1 (S.D.N.Y. July 29, 1994), *aff'd* 57 F.3d 1063 (2d Cir. 1995) ("a RICO complaint cannot be predicated on innocuous business communications, absent some factual basis for inferring the sender's intent to defraud the recipient via a scheme to defraud"); *Atl. Gypsum Co., Inc.* v. *Lloyds Int'l Corp.*, 753 F. Supp. 505, 513 (S.D.N.Y. 1990) (dismissing complaint where it "consists of little more than a description of routine business communications connected to . . . a complex loan transaction"); *Miller*, 2007 WL 1062505, at *3.

Plaintiffs' reliance on *City of New York* v. *Joseph L. Balkan, Inc.*, 656 F. Supp. 536 (E.D.N.Y. 1987), *Beth Israel Medical Center* v. *Smith*, 576 F. Supp. 1061 (S.D.N.Y. 1983), and their progeny (Pl. Br. at 101-02) is misplaced. In cases such as these, plaintiffs must still include *"a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications . . . ."* *Jerome M. Sobel & Co.* v. *Fleck*, No. 03 Civ. 1041 RMB GWG, 2003 WL 22839799, at *5 (S.D.N.Y. Dec. 1, 2003) (emphasis in original), *adopted by* 2004 WL 48877 (S.D.N.Y. Jan. 8, 2004); *see*

---

each of the defendants to commit at least two predicate acts. In other words, the complaint must allege 'some factual basis for a finding of a conscious agreement among the defendants.'" *Miller v. City of New York*, No. 05 CV 6024(SJ)(RML), 2007 WL 1062505, at *4 (E.D.N.Y. Mar. 30, 2007) (quoting *Hecht v. Commerce Clearing House*, 897 F.2d 21, 25, 26 n.4 (2d Cir.1990)). And, "conclusory allegations of an agreement . . . are insufficient to state a RICO conspiracy claim." *Id.* at *5. Statements by the plaintiffs that IAI or any other defendant "acknowledge[s] that predicates were committed by others" (Pl. Br. at 100) (which IAI and Eldar do not acknowledge and plaintiffs did not plead) are conclusory and not indicative of an agreement at the time any predicate act occurred.

*also Ctr. Cadillac, Inc.* v. *Bank Leumi Trust Co. of New York*, 808 F. Supp. 213, 229

(S.D.N.Y. 1992), *aff'd* 99 F.3d 401 (2d Cir. 1995)).  The Complaint here alleges with

particularity neither a scheme to defraud (as discussed above), nor a connection between

any alleged "scheme" and mail or wire communications.[8]

## II.    BASED ON THE ALLEGATIONS IN THE COMPLAINT, IAI AND ELDAR ARE IMMUNE FROM SUIT IN THE UNITED STATES UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT

In its recent letter to IAI, based on a review of the Complaint, the Israeli Ministry

of Defense ("IMOD") stated unequivocally that "[a]ny judicial review of . . . [plaintiffs']

allegations would appear to entail consideration of the internal policy deliberations and

foreign policy activities of the [I]MOD in fundamental areas affecting the sovereignty,

national security and foreign relations interests of the State of Israel."  (Goldstein Decl.,

Ex. A, March 12, 2008 Letter from IMOD to IAI.)  Plaintiffs do not dispute that IAI and

Eldar are presumed immune as agencies or instrumentalities of the State of Israel (*see* IAI

& Eldar Br. at 14-15), and thus ignore the national security and foreign relations interests

implicated by their allegations.  (Pl. Br. 78-84.)  Plaintiffs argue only that (1) the

commercial-activity exception to the FSIA defeats IAI's and Eldar's presumption of

---

[8]    The other cases on which plaintiffs rely are inapposite because in each of them the mail and wires were used to further an adequately-alleged fraudulent scheme. *See Moses* v. *Martin*, 360 F. Supp. 2d 533, 548 (S.D.N.Y. 2004) (holding that receipts sent by defendant to plaintiff "enabled defendants to successfully steal plaintiff's money"); *Mitland Raleigh-Durham* v. *Myers*, 807 F. Supp. 1025, 1056 (S.D.N.Y. 1992) (holding after court trial that mailings and calls made to plaintiffs by defendant, after plaintiffs had been fraudulently induced to investment money, furthered scheme to defraud); *GLM Corp.* v. *Klein*, 684 F. Supp. 1242, 1246 (S.D.N.Y. 1988) (denying motion to dismiss where complaint alleged "uses of the mails and wires which could be found to have related to essential elements of the schemes and to have played an important role in the execution of the scheme to defraud").  Plaintiffs' arguments regarding defendants' alleged failure to disclose the so-called "'2001 EROS B' satellite fraud," are likewise unavailing, because, as plaintiffs admit, mere non-disclosure without a duty to disclose is not fraud, and "there are no fiduciary duties among Netherland Antilles shareholders." (Defs. Jt. Br. at 26.)

immunity; and (2) IAI and Eldar implicitly waived immunity by entering into contracts with New York choice-of-law provisions. (*Id.*) Their arguments are unavailing.

*First,* plaintiffs argue that the commercial-activity exception to the FSIA applies in part[9] because "the very *purpose* of IAI's participating in the joint venture and ultimately in ImageSat was to obtain funding for a private for-profit commercial enterprise." (*Id.* at 80 (emphasis added) (citing Keret Dep. 37).) But plaintiffs acknowledge that the FSIA requires the Court to look to the *nature* of the challenged act rather than its *purpose* in determining whether the act is commercial. (*Id.* at 82.)

The Complaint alleges that the *nature* of IAI's and Eldar's conduct with respect to ImageSat was inherently governmental rather than commercial. Plaintiffs allege that IMOD interfered with the business operations of ImageSat, resulting in what plaintiffs characterize as an "'eminent domain'-style seizure of their assets." (Compl. ¶ 19.) Plaintiffs acknowledge that Israel's national-security interests dictate whether ImageSat can operate with or in a particular country (*see* Bak Decl., Ex. 9, Bar-Lev Dep. 76:18-77:10, 92:18-25; *see also id.* at Ex. 10, Yifrah Dep. 59:22-60:3, 72:17-73:3, 79:24-80:3), and allege that "[ImageSat] now exists . . . to support and advance the regional national security interests and global geopolitical agenda of . . . IMOD." (Compl. ¶ 19.) The alleged advancement of national security interests clearly falls within those sovereign acts protected by the FSIA. (*See* IAI & Eldar Br. at 16-17.)[10]

---

[9]    Plaintiffs' reliance on *Daventree Ltd.* v. *Republic of Azerbaijan*, 349 F. Supp. 2d 736 (S.D.N.Y. 2004), for the proposition that raising money for a commercial venture from American investors is sufficient to invoke the commercial-activity exception is misplaced. In *Daventree*, the plaintiffs brought claims for extortion based on the attempted sale of extorted stocks, options, and shares to U.S. investors. *Id.* at 750-51. Hence, plaintiffs claims were based upon the acts concerning the U.S. investors. Here, plaintiffs claims are based upon the relationship among the defendants, not the solicitation of funds from U.S. investors.

[10]    Moreover, even if the Court finds that some of IAI's and Eldar's acts were commercial in nature, plaintiffs fail to establish that their claims against IAI and Eldar are "based upon" this alleged

*Second*, plaintiffs' attempted reliance on New York choice-of-law provisions in the Master Agreement and the Stock Purchase Agreement to invoke the implicit-waiver exception to immunity under § 1605(a)(1) of the FSIA is improper and misleading. No plaintiff is a party to either of these agreements, and plaintiffs do not have standing to enforce a contract of which they are neither parties nor third-party beneficiaries. *See infra* Section IV; *see also Lafarge Canada, Inc.* v. *Bank of China*, No. 00 Civ. 0261(LMM), 2000 WL 1457012, at *2 (S.D.N.Y. Sept. 29, 2000) ("[A] waiver is to be found only if it was unmistakable and unambiguous."). Moreover, plaintiffs failed to disclose to the Court that at least *five* other agreements that plaintiffs' allegations are based upon, including the Satellite Supply Contracts, contain Israel choice-of-law provisions and arbitration clauses restricting resolution of any disputes to an Israeli forum. (*See* Bak Decl., Exs. 1-5; *id.* at Ex. 9, Bar-Lev Dep. 108:8-147:7.) IAI and Eldar cannot be said to have unmistakably and unambiguously waived immunity here.

## III.    THE COURT SHOULD DISMISS THE CASE AGAINST IAI AND ELDAR BASED ON THE DOCTRINE OF INTERNATIONAL COMITY

Plaintiffs ignore the numerous allegations in the Complaint raising concerns relating to Israel's national-security interests. (*See* IAI & Eldar Br. at 18-19.) Instead, plaintiffs appear to argue that international comity cannot be a ground for dismissal where the claim is (as they assert here) permitted under an exception to the FSIA. (Pl.

---

commercial activity, or that this activity had a "direct effect" in the United States as required for the commercial-activity exception to apply. *See* 28 U.S.C. § 1605(a). The Second Circuit has held that economic losses by a foreign corporation, and economic losses to an American individual or firm, do not establish the requisite "direct effect" in the United States for purposes of the commercial-activity exception to the FSIA. *See Antares Aircraft, L.P.* v. *Fed. Republic of Nigeria*, 999 F.2d 33, 36 (2d Cir. 1993); *Int'l Hous. Ltd.* v. *Rafidain Bank Iraq*, 893 F.2d 8, 11-12 (2d Cir. 1989). Each of the alleged tortious and fraudulent acts on which plaintiffs' claims are based, as well as the alleged breaches of contract, occurred in Israel, not the United States, and plaintiffs' reliance on ancillary acts concerning the United States is insufficient to trigger the commercial-activity exception under the FSIA.

Br. at 84-86.)  That is not the law.  *See Leutwyler* v. *Office of Her Majesty Queen Rania Al-Abdullah*, 184 F. Supp. 2d 277, 302-03 (S.D.N.Y. 2001).

The importance of comity here is further underscored by IMOD's recent letter to IAI asserting its strong belief, for reasons of Israeli national-security, that this case should be litigated in the Israeli courts.  (Goldstein Decl., Ex. A; *see also* Sherman Decl. ¶ 13.) These concerns are dramatized by the deposition testimony of plaintiffs Yifrah and Bar-Lev.  Yifrah, a retired Israeli brigadier general and former ImageSat employee, testified that the disclosure of Israel's classified information in this litigation would violate Israeli law.  (*See* Bak Decl., Ex. 10, Yifrah Dep. 45:9-18; *see also* Sherman Decl. ¶¶ 6, 12.) And Bar-Lev refused to answer question after question at his deposition because he believed the answers could implicate Israel's national security.  (*See* Bak Decl., Ex. 9, Bar-Lev Dep. 19:19-50:24; *see also* Halsband Decl. ¶ 6.)  Accordingly, the circumstances of this case warrant dismissal on comity grounds.[11]

## IV. THE COURT SHOULD DISMISS PLAINTIFFS' BREACH-OF-CONTRACT CLAIMS BECAUSE PLAINTIFFS LACK STANDING TO SUE IAI AND ELDAR

Plaintiffs concede that they are not parties to the Master Agreement or the Stock Purchase Agreement, and implicitly concede—as they must—that they are not parties to the Satellite Supply Contracts.  (Pl. Br. at 112.).  Plaintiffs' attempt to assert breach-of-contract claims despite their non-party status is inapposite to clearly-established

---

[11]  Plaintiffs also allege that "any 'obligation of comity expires when the strong public policies of the forum are vitiated by the foreign act.'"  (Pl. Br. at 85 (quoting *Pravin Banker Assocs., Ltd.* v. *Banco Popular Del Peru*, 109 F.3d 850, 854 (2d Cir. 1997)).)  Plaintiffs take this quote out of context.  *Pravin* makes clear that comity only expires when "foreign interests . . . are fundamentally prejudicial to those of the domestic forum."  *Pravin*, 109 F.3d at 854 (quotation omitted).  No such fundamental prejudice exists here.  The two additional cases cited by plaintiffs in support of this contention address the act-of-state doctrine, not the doctrine of international comity, and are thus irrelevant.  *See Bandes* v. *Harlow & Jones, Inc.*, 852 F.2d 661, 667 (2d Cir. 1988); *Optics Labs. Corp.* v. *Savannah Bank of Nigeria, Ltd.*, 816 F. Supp. 898, 906 (S.D.N.Y. 1993).

precedent. *See Quatrochi* v. *Citibank, N.A.*, 618 N.Y.S.2d 820 (1st Dep't 1994).[12]  As such, this claim should be dismissed.[13] [14]

## V.    THIS COURT LACKS PERSONAL JURISDICTION OVER MR. ELDAR

The Court lacks personal jurisdiction over Mr. Eldar[15] because the Complaint fails to allege facts sufficient to satisfy New York's long-arm statute.  (*See* IAI & Eldar Br. at 2-4.)  Plaintiffs respond by advancing the unsupported argument that this Court has jurisdiction over Mr. Eldar because he allegedly committed a tort outside New York that caused injury here.  (Pl. Br. at 58-59.)  This allegation alone does not suffice.

As explained in our moving brief, plaintiffs fail sufficiently to allege that Mr. Eldar committed a tort.  (*See* IAI & Eldar Br. at 8.)  Even if they had, it is well settled that the situs of a commercial tort is the location of the original event that caused the injury, not the location where financial damages are felt by plaintiffs, and that a financial loss sustained by a New York resident's investment in a foreign entity is not a sufficient predicate for jurisdiction.  *See Walther* v. *Maricopa Int'l Inv., Corp.*, No. 97 Civ. 4816(HB), 1998 WL 186736, at *8-9 (S.D.N.Y. Apr. 17, 1998).  Here, plaintiffs argue that Mr. Eldar participated in a cover-up related to the EROS B satellite, which destroyed

---

[12]  Plaintiffs erroneously rely on *Bischoff* v. *Boar's Head Provisions Co.*, 834 N.Y.S.2d 22 (1st Dep't 2007) to support the legitimacy of their breach-of-contract claims.  *Bischoff* involves a derivative action on behalf of a limited liability company, and thus is beside the point. *See id.* at 22.

[13]  Moreover, the fact that IAI negotiated similar agreements with *some* of the plaintiffs at the same time it negotiated the contracts at issue makes clear that IAI did *not* intend to name any plaintiff as a third-party beneficiary to the Master Agreement, Stock Purchase Agreement, or Satellite Supply Contracts.

[14]  Plaintiffs also fail to refute our argument that as shareholders they do not have standing to assert a claim for fraudulent conveyance.  *See Riis* v. *Mfrs. Hanover Trust Co.*, 632 F. Supp. 1098, 1101 n.2 (S.D.N.Y. 1986) (dismissing plaintiffs claims and holding that plaintiff had "no standing to assert a fraudulent conveyance claim because she is a shareholder and not a creditor of [defendant].").  The case on which plaintiffs rely, *Drennis* v. *Haligiannis*, 452 F. Supp. 2d 418 (S.D.N.Y. 2006), concerns partners in a partnership, not shareholders in a corporation.  (Pl. Br. at 113.)

[15]  Despite the vague "recollection[]" of two unidentified plaintiffs referenced in footnote 17 of plaintiffs' brief (Pl. Br. at 58), documentary and uncontrovertable evidence has been provided to plaintiffs which shows that at all relevant times, Eldar was as a corporate representative of IAI and never a director or alternate director of ImageSat.

the value of plaintiffs' investments and had "foreseeable impact upon Plaintiffs in New York and elsewhere in the United States."[16] (Pl. Br. at 59.) But these purported damages are derived from the diminution of the value of ImageSat. Therefore, the situs of the injury is where ImageSat is incorporated or maintains its principal place of business (*i.e.*, the Netherlands Antilles or Israel), not New York.[17]

### Conclusion

For the reasons set forth here and in Defendants' Joint Reply Memorandum of Law, as well as in our moving briefs, IAI and Eldar respectfully submit that their motion to dismiss be granted, and all claims against them in the Complaint be dismissed with prejudice.

Dated: New York, New York
March 25, 2008

| | |
|---|---|
| COHEN TAUBER SPIEVACK & WAGNER PC | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
|     Stephen Wagner | By:  /s/ Eric S. Goldstein_____ |
|     Sari Kolatch |     Eric S. Goldstein |
| 420 Lexington Avenue |     Jonathan Hurwitz |
| Suite 2400 |     Brian P. Egan |
| New York, NY 10170 |     Aliza J. Balog |
| (212) 586-5800 | 1285 Avenue of the Americas |
| swagner@ctswlaw.com | New York, New York 10019 |
| | (212) 373-3000 |
| | egoldstein@paulweiss.com |

*Attorneys for Israel Aerospace Industries Ltd. and Yehoshua Eldar*

---

[16]     The only New York plaintiffs are holders of expired warrants. It is irrelevant for purposes of C.P.L.R. § 302(a)(3)(ii) whether there were foreseeable injuries to plaintiffs in states other than New York. To the extent plaintiffs' reference to other states is related to their misplaced reliance on the nationwide service of process provision in the RICO statute to confer personal jurisdiction over any of the defendants (Pl. Br. at 39), Mr. Eldar joins in the argument set forth by ImageSat. (*See* ImageSat Reply Br. at 2; s*ee also* July 23, 2007 Stipulation (filed July 27, 2007) (Docket No. 4).)

[17]     Although it is not necessary for the Court to consider the remaining prongs of New York's long-arm statute, plaintiffs also fail to sufficiently allege that the tort had foreseeable consequences in New York, and that Mr. Eldar derived substantial revenue from interstate or international commerce.