UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN M. WILSON, *et al.*, | 07 Civ. 6176 (LTS)(DME) |
| Plaintiffs, | ECF CASE |
| -against- | **SUPPLEMENTAL DECLARATION OF JOSEPH TAMIR** |
| IMAGESAT INTERNATIONAL N.V., *et al.*, | |
| Defendants. | |

JOSEPH TAMIR declares as follows:

1. I am a member of the Israel Bar and have been since 1993. My professional qualifications are described in my prior Declaration dated January 28, 2008. I submit this Supplemental Declaration at the request of counsel for Plaintiffs to respond to certain contentions in Defendants' reply papers regarding "Israeli procedure with respect to privileged evidence in matters of national security, foreign affairs and public interest."

2. While procedures exist under Israeli law for taking special precautions in cases where the giving of evidence is likely to impair the national security or foreign relations of the State of Israel, the circumstances under which such procedures are invoked are narrow. This matter is governed by Sections 44 and 45 of the Evidence Ordinance (New Version), 5731-1971 (hereinafter: "**the Evidence Ordinance**"), cited paragraph 13 of the Supplemental Declaration of Adv. Dror Vigdor submitted by Defendants.

3. According to the Evidence Ordinance, which applies to cases which are brought before Israeli Courts, it is not sufficient merely to raise a generalized allegation that the interests of Israel would be affected by presentation of evidence. Rather, a formal signed certificate from the highest level of the government is necessary. If the government's

contention is that the giving of evidence is likely to impair the security of the State of Israel, the certificate must express the personal opinion of and be signed by the Prime Minister of Israel or the Minister of Defence. If the contention is that the giving of evidence is likely to impair the State of Israel's foreign relations, a certificate signed by the Prime Minister or the Minister of Foreign Affairs is necessary.

4. I have reviewed the submissions made by Defendants in this case consisting of a letter from the Director General of the Ministry of Defence dated March 12, 2008 (submitted in response to a request from Defendant IAI) and the two declarations by employees of IAI. These would be insufficient to satisfy the requirements of the Evidence Ordinance for a plea of Israeli national security, foreign affairs, or public interest privilege, as they are not signed by the requisite officials, stating the opinions that the national security, foreign affairs, or public interest of Israel would be adversely affected by disclosure of evidence.

5. Moreover, under Sections 44 and 45 of the Evidence Ordinance and as acknowledged by Adv. Vigdor, even where a certificate of privilege is filed by the Prime Minister, Minister of Defence, or Minister of Foreign Affairs, a party may file a petition that the subject documents be disclosed with the Supreme Court of Israel or the Court presiding over the case (depending on the specific nature of the privilege claimed), and the Court may exercise its discretion to order that the evidence be disclosed in whole or part notwithstanding the request of the Government of Israel that it remain confidential. In such a proceeding, the Court considering the matter would expect to receive an explanation of how the protected interests of the State of Israel would be damaged by disclosure of the evidence in question.

6. It also bears note that the Public Entities Security Arrangement Law, 5758-1998, regulates security arrangement for many Israeli entities. Among other things, this law enumerates Israeli entities that are under a duty of security in respect of classified information and requires that each of these entities employ a person appointed by the Israeli defence

authorities with the responsibility of overseeing the security of classified information in that entity's possession. Those entities include entities that obviously deal with security-related issues such as the Ministry of Defence but they also include other entities that do not have a clearly security character, like telecommunication companies, shipping companies, the Israeli national water carrier, and various other public or quasi-public entities. However, Defendant ImageSat International, N.V. and its predecessor West Indian Partners Ltd. is not one of the entities mentioned in this law.

7. The caselaw in Israel establishes that when a foreign government or government entity participates in private market transactions, it usually does so on the same basis as private participant and normally does not enjoy immunity from scrutiny or litigation arising from such acts. The leading Israeli case on this issue is <u>Her Majesty the Queen in Right of Canada v. Idelson</u>, P.C.A. 7092/94, PD 51(1) 625, in which the Supreme Court of Israel observed that under customary international law and under Israeli law, "**a foreign state that goes down to the 'market' of private law should be subject to the rules of 'the market'. A foreign state that seeks to negotiate with the people should perform [under – J.T.] the laws that govern those negotiations and abide by their consequences.**"

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed at Tel Aviv, Israel this 18 day of April, 2008.

JOSEPH TAMIR

3