UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
STEPHEN M. WILSON, BRW ENGINEERING      :
LTD., WIS PARTNERS, L.P., MOSHE BAR-    :
LEV, PATRICK ROSENBAUM, MICHAEL MORRIS, :
HAIM YIFRAH, TOP DOWN PARTNERS, LLC,    :
JOEL LEVINE, MORRIS TALANSKY, ABRAHAM   :
MOSHEL, MAGMA INTERNATIONAL SERVICES,   :
LTD., ALBERT REICHMANN, HEXAGRAM        :
INTERNATIONAL LIMITED, and POLYBUTES    :
COMPANY,                                :
                          Plaintiffs,   :
                                        :    07 Civ. 6176 (DLC)
            -v-                         :
                                        :    AMENDED OPINION
                                        :      AND ORDER[1]
IMAGESAT INTERNATIONAL N.V., ISRAEL     :
AEROSPACE INDUSTRIES LTD., ELBIT        :
SYSTEMS LTD, MOISHE KERET, IZHAK        :
NISSAN, JACOB WEISS, SHIMON ECKHAUS,    :
MICHAEL FEDERMANN, ESTATE OF JACOB      :
TOREN, JOSEPH ACKERMAN, JOSEPH GASPAR,  :
GINO PIPERNO-BEER, JAMES DEPALMA, DAVID :
ARZI, YOAV CHELOUCHE, and YEHOSHUA      :
ELDAR,                                  :
                          Defendants.   :
                                        :
----------------------------------------X

Appearances:

For Plaintiffs:
Ira Brad Matetsky
Mark A. Berman
William A. Jaskola
Ganfer & Shore, LLP
360 Lexington Avenue
New York, New York 10017

---

[1]    This Amended Opinion and Order differs from the Opinion and
Order issued on July 22, 2008 in only one way: it corrects the
listing of counsel for defendants Israel Aerospace Industries
Ltd. and Yehoshua Elder.

For Intervenor-Plaintiff Harbinger International Holdings, S.A.:
Shira Yael Rosenfeld
Manuel & Rosenfeld, LLP
One Penn Plaza
Suite 2527
New York, New York 10119

For Defendants ImageSat International N.V., Moshe Keret, Izhak
Nissan, Jacob Weiss, Shimon Eckhaus, Gino Piperno-Beer, David
Arzi, and Yoav Chelouche:
Sander Bak
Deborah Elman
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005

For Defendants Israel Aerospace Industries Ltd. and Yehoshua
Elder:
Eric S. Goldstein
Jonathan H. Hurwitz
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Stephen Wagner
Sari E. Kolatch
Cohen Tauber Spievack & Wagner LLP
420 Lexington Avenue, Suite 2400
New York, New York 10170

For Defendants Elbit Systems Ltd., Michael Federmann, Estate of
Jacob Toren, Joseph Ackerman, and Joseph Gaspar:
Simon Miller
Greenberg Traurig LLP
200 Park Avenue
New York, New York 10166

DENISE COTE, District Judge:

This is a commercial dispute between fifteen minority

shareholders and security holders in ImageSat, a Netherlands

Antilles corporation whose principal place of business is in

Israel, and ImageSat, its two largest shareholders, and about

one dozen of its current and former directors and officers. Plaintiff minority shareholders and security holders allege that defendants engaged in various forms of corporate misconduct, and seek compensation for the diminution in value of their holdings. All the defendants but one have moved to dismiss this action under the doctrine of forum non conveniens. Their motion is granted, and the action is dismissed.

BACKGROUND

The facts are drawn from plaintiffs' amended complaint. Plaintiffs hold either shares, warrants, or stock options to acquire stock in defendant ImageSat. Among the plaintiffs are members of the founding management of ImageSat. ImageSat's principal business is the sale of rights to customer governments to enjoy the exclusive regional use of ImageSat's two high-resolution earth observation satellites. Defendants Israel Aerospace Industries, Ltd. ("IAI") and Elbit Systems Ltd. ("Elbit")[2] supplied these two satellites and are ImageSat's controlling shareholders. The remaining defendants are

---

[2]    As discussed below, the motion to dismiss presently under consideration is focused on plaintiffs' original complaint. Apparently in response to certain arguments raised by defendants in their motion to dismiss, plaintiffs' amended complaint adds one defendant, Elbit Systems Electro-Optics ElOp Ltd. ("ElOp"), which was Elbit's corporate predecessor. For obvious reasons, ElOp does not join in defendants' motion, and it will not be considered a defendant for the purposes of this Opinion. Consideration of ElOp as a defendant, however, would not change the outcome.

individuals who served or currently serve as officers and
directors of ImageSat.

IAI and Elbit are large Israeli defense and aerospace
companies.  IAI is one-hundred-percent government-owned.
Nonetheless, defendants consistently represented to investors,
including plaintiffs, "that ImageSat would be run as an
autonomous, apolitical commercial entity and that its business
would be entirely separate and distinct from the businesses of
IAI and/or Elbit."  Indeed, because ImageSat's customers were
governments that used the company's satellites in furtherance of
their own national security agendas, ImageSat's commercial and
political independence have been of paramount importance to the
company's success.

Plaintiffs claim that IAI and Elbit, with the complicity
and sometimes assistance of the individual defendants, have
squandered ImageSat's commercial promise -- and thereby
diminished the value of plaintiffs' investments -- in order to
further the interests of IAI and Elbit.  Defendants' alleged
perfidy takes various forms, including: overbilling ImageSat for
satellites and services rendered in connection with satellites
that the defendants knew to be deficient and therefore not
capable of ultimately being constructed; usurping ImageSat's
corporate opportunities and breaching contracts establishing
ImageSat's exclusivity rights for the commercialization of

Israeli military earth observation satellite technology; and subordinating the company's commercial and financial interests to the needs of the Israeli government.

Plaintiffs filed their complaint on July 2, 2007, bringing twenty-two causes of action for breach of fiduciary duty (claims 1 through 6), corporate waste (claims 7 and 8), failure to enforce ImageSat's contractual rights (claim 9), self-dealing (claim 10), violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d) (claims 11 and 12), common-law fraud (claim 13), breach of contract and other agreements (claims 14 through 16), reformation of the warrants (claims 17 and 18),[3] fraudulent conveyance (claim 19), disgorgement of compensation (claim 20), conversion and misappropriation of corporate assets (claim 21), and unjust enrichment and restitution (claim 22).  The complaint seeks between $100 million and $300 million in relief on each claim.[4]

---

[3]    The seventeenth and eighteenth claims for relief were dismissed with prejudice pursuant to a stipulation entered on March 17, 2008.

[4]    Plaintiffs filed an amended complaint on March 17, 2008. While the amended complaint amplifies some of the factual allegations made against defendants and adds one defendant, it appears not to alter the claims for relief.  Nor, it should be added, does the amended complaint include allegations that change the forum non conveniens calculus.  The motions to dismiss are directed towards plaintiffs' original complaint but, as noted above, this Opinion draws its facts from the amended complaint.

On October 15, 2007, defendants filed five separate motions to dismiss the complaint, each representing a different constellation of defendants. One of the motions, which represented all the defendants except for Joseph DePalma, sought to dismiss the complaint on the basis of, <u>inter alia</u>, the doctrine of <u>forum non conveniens</u>. It is to this motion that this Opinion is directed. Briefing in connection with all the motions to dismiss was fully submitted on April 22, 2008. This action was transferred from the docket of the Honorable Laura Taylor Swain to this Court's docket on July 15, 2008.

DISCUSSION

All but one of the defendants[5] in this action have jointly moved to dismiss the complaint under the doctrine of <u>forum non conveniens</u>. If the suit is dismissed on this ground, they have agreed to, among other things, submit to jurisdiction in Israel and to waive any statute of limitations defense beyond that which they could have asserted when this action was filed. A careful evaluation of the relevant interests leads ineluctably to the conclusion that this litigation should be dismissed. Having invested in an Israeli-based corporation, and having

---

[5]    The motion is brought on behalf of ImageSat, IAI, Elbit, and twelve of the thirteen individual defendants:  Keret, Nissan, Weiss, Eckhaus, Piperno-Beer, Arzi, Chelouche, Federmann, Ackerman, Gaspar, Eldar, and the Estate of Jacob Toren. One of the defendants, DePalma, is a United States citizen and has expressly refused to join in the motion.

chosen to bring suit based on claims that the corporation has
mismanaged its affairs and has acted to benefit its two largest
shareholders, both of which are Israeli companies, the
plaintiffs have no fair ground to complain that these defendants
insist on being sued in Israel.

A court has discretion to dismiss a case on forum non
conveniens grounds "when an alternative forum has jurisdiction
to hear the case, and trial in the chosen forum would establish
oppressiveness and vexation to a defendant out of all proportion
to plaintiff's convenience. . . ." Sinochem Intern. Co. Ltd. v.
Malaysia Intern. Shipping Corp., 127 S.Ct. 1184, 1190 (2007)
(citation omitted). "Dismissal for forum non conveniens
reflects a court's assessment of a range of considerations, most
notably the convenience to the parties and the practical
difficulties that can attend the adjudication of a dispute in a
certain locality." Id. (citation omitted). The defendant bears
a "heavy burden" when invoking this doctrine. Id. at 1191.

In exercising its discretion, a court must apply the three-
step analysis described by the Second Circuit in Iragorri v.
United Technologies Corporation, 274 F.3d 65, 72-76 (2d Cir.
2001) (en banc).

> At step one, a court determines the degree
> of deference properly accorded the
> plaintiff's choice of forum. At step two,
> it considers whether the alternative forum
> proposed by the defendants is adequate to

> adjudicate the parties' dispute. Finally,
> at step three, a court balances the private
> and public interests implicated in the
> choice of forum.

Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153

(2d Cir. 2005).

The degree of deference to be accorded a plaintiff's choice

of forum "moves on a sliding scale" and is correlated with the

"degree of convenience" that the choice reflects. Id. at 154

(citation omitted). "The more it appears that a domestic or

foreign plaintiff's choice of forum has been dictated by reasons

that the law recognizes as valid, the greater the deference that

will be given to the plaintiff's forum choice." Id. (citation

omitted). Conversely, the more that a plaintiff's choice of a

United States forum appears motivated by forum shopping, the

less deference that choice commands. Id. Factors considered in

determining whether a plaintiff's choice of forum was likely to

have been motivated by convenience include:

> [1] the convenience of the plaintiff's
> residence in relation to the chosen forum,
> [2] the availability of witnesses or
> evidence to the forum district, [3] the
> defendant's amenability to suit in the forum
> district, [4] the availability of
> appropriate legal assistance, and [5] other
> reasons relating to convenience or expense.

Id. at 155 (citing Iragorri, 274 F.3d at 72). The Court of

Appeals has also identified factors indicative of forum

shopping:

> [1] attempts to win a tactical advantage
> resulting from local laws that favor the
> plaintiff's case, [2] the habitual
> generosity of juries in the United States or
> in the forum district, [3] the plaintiff's
> popularity or the defendant's unpopularity
> in the region, or [4] the inconvenience and
> expense to the defendant resulting from
> litigation in that forum.

Id. (citing Iragorri, 274 F.3d at 72).

A forum is generally adequate if defendants are amenable to service of process there, but it may be inadequate if the remedy it offers "is clearly unsatisfactory," such as where the alternative forum "does not permit litigation of the subject matter in dispute." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22 (1981). The alternative forum is not inadequate simply because it does not afford plaintiffs the identical causes of action or relief available in the plaintiffs' chosen forum. Norex, 416 F.3d at 158.

Finally, in step three, a court must balance both public and private interest factors. Private interest factors include:

> the relative ease of access to sources of
> proof; availability of compulsory process
> for attendance of unwilling, and the cost of
> obtaining attendance of willing, witnesses;
> possibility of view of premises, if view
> would be appropriate to the action; and all
> other practical problems that make trial of
> a case easy, expeditious and inexpensive.

Iragorri, 274 F.3d at 73-74 (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). These factors are considered in

light of the particular issues likely to be tried, including
whether the plaintiff's damages are disputed and where the
evidence of damages is likely to be more accessible.  Iragorri,
274 F.3d at 74.  In weighing these factors, a court must
determine whether or not those hardships that the defendants
would suffer if the case were to remain in this district
outweigh the hardships the plaintiffs would suffer if the case
were dismissed and the plaintiffs forced to refile in an
alternative forum.  Pollux Holding Ltd. v. Chase Manhattan Bank,
329 F.3d 64, 75 (2d Cir. 2003).

    Public interest factors include administrative inefficiency
in trying a case in a busy court and away from the locus of the
injury; the burden that jury duty may impose on the community if
the case is tried in a venue with no connection to the issues in
dispute; for cases that affect many people, the public's
interest in having easy access to the trial court proceedings; a
community's interest in having a local case decided at home;
and, in a diversity case, the public interest in having the case
decided in the jurisdiction whose law will govern the case.
Iragorri, 274 F.3d at 74.  An action should be dismissed on the
ground of forum non conveniens "only if the chosen forum is
shown to be genuinely inconvenient and the selected forum
significantly preferable," taking into account the balance of
private and public interests.  Id. at 74-75.

I.    Deference to Plaintiffs' Choice of Forum

The plaintiffs' choice of an American forum for this commercial litigation is entitled to some, but minimal, deference.  Of the fifteen plaintiffs,[6] only about half are United States residents or legally connected to United States residents.  Two of the plaintiffs, Talansky and Moshel, reside in New York.[7]  Talansky, however, also owns an apartment in Jerusalem, has traveled to Israel several times a year for decades, and serves as the treasurer of an Israeli foundation. Three other individual plaintiffs live in this country, although not in New York.[8]  One corporate plaintiff, Top Down Partners LLC, is a United States entity.  Two additional plaintiffs have United States connections: WIS Partners L.P. is a Bermuda entity

---

[6]    By Order dated October 23, 2007 -- eight days after the motions to dismiss were filed -- intervenor-plaintiff Harbinger International Holdings S.A. ("Harbinger") was granted leave to intervene.  Harbinger is a British Virgin Islands corporation with its principal place of business in the British Virgin Islands and an office in New York.  Yoram Ginach, Harbinger's sole director, resides in New York.

[7]    Talansky and Moshel hold bridge warrants but no stock in ImageSat.  The defendants contest their standing to assert many of the claims pressed in this lawsuit.

[8]    Wilson, Morris, and Levine reside in the United States. They reside respectively in Puerto Rico, Florida, and California.

that is majority-owned by a United States corporation,[9] and BRW Engineering is a Cayman Islands corporation wholly owned by co-plaintiff Wilson, an American citizen and Puerto Rico resident.

Of the remaining plaintiffs, one individual is Canadian, and three companies are incorporated in Switzerland, Canada, and Bermuda.  Three plaintiffs are Israelis, although they do travel outside Israel, including to the Western Hemisphere.[10]  It is also noteworthy that many of the claims asserted here are derivative claims and thus belong to the corporation, which is Netherlands Antillean.

Although many of the defendants are contesting the existence of personal jurisdiction over them, most of them traveled on multiple occasions to New York for ImageSat Board and Committee meetings.  One of the defendants is an American.

As discussed in more detail below, most of the relevant events took place in Israel and thus the most pertinent documentary and testimonial evidence exists in Israel. Although the plaintiffs have identified scores of individuals from the Western Hemisphere who may have knowledge relevant to their claims, the fact remains that the most critical evidence

---

[9]     In the amended complaint, however, plaintiffs refer to WIS Partners as a "European investor group**."**

[10]    The three Israeli plaintiffs are Rosenbaum, Bar-Lev and Yifrah.

about the decisions of which the plaintiffs complain is in the possession of Israeli witnesses.

To offset the weight of the Israeli connections to this lawsuit, the plaintiffs stress that many meetings of the Board of Directors for ImageSat took place outside Israel, including in New York because of its convenience.  They also emphasize that for years ImageSat has had American counsel, investment bankers and other professional advisors, and that it operated from Connecticut offices during the period 1999 to 2001. Further, it is uncontested that defendants IAI and Elbit are substantial businesses with a myriad of United States connections and that they can afford the cost of litigating this case at a distance from their home jurisdiction.

As further support for their contention that the Southern District of New York is the appropriate venue for this action, plaintiffs emphasize clauses in contracts associated with the formation of ImageSat and signed in the years between 1994 and 1998 by one or two of the plaintiffs, and a 2000 agreement for security holders.  These joint venture agreements, security holder agreements, and other contracts often included a choice-of-law provision requiring the agreement to be construed in accordance with New York law, as well as a clause in which the parties to the contract consented to the jurisdiction of New York state courts for any suit "arising in connection with" the

agreement.  While these documents go some way to support plaintiffs' assertion of good faith in filing this litigation in New York, they have limited impact on the overall calculus.  For example, plaintiffs have not attempted to show that these contracts either singly or together form the basis of any of their claims in this lawsuit, or that any of the defendants are forbidden as a matter of law by any of these contracts from moving for dismissal on the ground of <u>forum non conveniens</u>. Indeed, as the Supreme Court has underscored, the doctrine of <u>forum non conveniens</u> serves as "a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined."  <u>Sinochem Intern. Co. Ltd.</u>, 127 S.Ct. at 1190 (citation omitted).

Such is the case here.  There is some evidence that the plaintiffs as a group chose this forum because of convenience or expense.  Balanced against this, there is strong evidence that plaintiffs have engaged in forum shopping.  The two most logical jurisdictions for this lawsuit are the place of incorporation and the principal place of business of the company: the Netherlands Antilles and Israel.  None of the parties contends that the Netherlands Antilles is a convenient location for this litigation.  Thus, the alternative jurisdiction -- which defendants proffer and plaintiffs resist -- is Israel.

14

Defendants have argued persuasively that plaintiffs have filed suit in this country to avoid litigating their claims in Israel -- the most logical forum for the litigation.

The business of ImageSat is the commercialization of Israeli military earth observation satellite technology. Its two largest shareholders are Israeli, and plaintiffs contend that it is the interests of these two defendant shareholders which the corporation has pursued to the disadvantage of the remaining investors. These two shareholders, IAI and Elbit, are the industrial suppliers of the two satellites that are the company's major assets; IAI is an Israeli government-owned company and the principal Israeli defense and aerospace company.

In addition to this straightforward recital of the strong nexus between plaintiffs' claims and Israel, a closer examination of plaintiffs' claims suggests their motive for avoiding litigation in Israel. Plaintiffs contend that defendants have interfered with ImageSat's ability to enter into lucrative transactions in order to curry political and economic favor in Israel or with Israel's preferred export partners, or because IAI and Elbit have usurped ImageSat's business opportunities for themselves. Thus, it appears that plaintiffs have filed suit in the United States to avoid a jurisdiction which they fear will be unduly favorable to defendants.

There are other factors at play here which support a finding that plaintiffs have engaged in forum shopping. Filing in the United States has allowed the plaintiffs to assert a RICO claim, whose treble damages provision brings heightened pressure to settlement discussions. Similarly, plaintiffs reserved their right to seek a jury trial. A lawsuit in Israel would not result in an award of treble damages or a jury trial. Finally, litigating this lawsuit in America will be far less convenient for defendants than litigating it in the corporation's home jurisdiction.

In sum, the plaintiffs' choice of forum is entitled to some deference. Roughly half of the plaintiffs are American or connected to United States citizens and entities. While the Second Circuit has cautioned that "neither the plaintiff's citizenship nor residence . . . necessarily controls the outcome" of a forum non conveniens inquiry, Iragorri 274 F.3d at 74, plaintiffs' choice of forum is nonetheless entitled to careful consideration. For the many reasons of fairness and convenience just described, however, it would appear that this lawsuit belongs in Israel. Accordingly, the deference accorded to the plaintiffs' choice of forum is limited.

II.  Adequacy of Israel as a Forum

Israel provides an adequate forum for this litigation. All but one of the defendants have consented to suit there, and this

representation is sufficient to satisfy the court's inquiry as to defendants' amenability to suit in the alternative forum. Norex, 416 F.3d at 157. It appears that the one remaining defendant is amenable to service of process there. That defendant, James DePalma, is a United States citizen. DePalma joined ImageSat's Board of Directors in 2003 as a designee of one of the minority shareholders. He has never been affiliated with IAI or Elbit. Thus, the plaintiffs' allegations are essentially that as an outside director he failed to protect the interests of the company's minority shareholders. While DePalma will not stipulate to the jurisdiction of an Israeli tribunal or to service of process in an Israeli action, it appears that he is subject to personal jurisdiction in Israel. According to Israeli law, an American citizen is subject to the jurisdiction of an Israeli court and service of process if he is deemed a "necessary or proper party of the action." Plaintiffs have not presented any authority to suggest that they will be unable to sue DePalma in an Israeli action. They simply speculate in passing that he "may not be subject" to personal jurisdiction in Israel. This is insufficient to rebut defendants' well-supported claim that this lone defendant who has not yet stipulated to Israeli jurisdiction is amenable to suit there.

Finally, while plaintiffs complain that they will be unable to pursue their RICO claim in Israel, that complaint does not

render Israel an inadequate alternative forum because "[t]he availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum, nor on identical remedies." Norex, 416 F.3d at 158 (citation omitted). Israel clearly permits "litigation of the subject matter in dispute," Piper Aircraft Co., 454 U.S. at 254 n.22, which is all that is required. Israel is, therefore, an adequate alternative forum for this litigation. See Diatronics, Inc. v. Elbit Computers, Ltd., 649 F. Supp. 122, 129-30 (S.D.N.Y. 1986), aff'd, 812 F.2d 712 (2d Cir. 1987) (affirming dismissal for forum non conveniens where plaintiff was American investor, defendant was Israeli company, and "the entire transaction took place in Israel").

III. Balancing Private and Public Interest Factors

Turning to the balance of the private interest factors, the trial of this case will be easier, more expeditious and less expensive if conducted in Israel. See Iragorri, 274 F.3d at 73-74. The Second Circuit instructs that, in applying the private and public interest factors, "the court should focus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed for the trial of these issues." In the Matter of the Arbitration Between Monegasque de Reassurances S.A.M., 311 F.3d 488, 500 (2d Cir.

2002) (citation omitted).  As described above, the gravamen of
plaintiffs' complaint concerns mismanagement of ImageSat and
domination of the company by its two Israeli majority
shareholders.  The issues likely to be tried therefore concern
primarily the extent of this mismanagement and domination.
ImageSat has its principal place of business in Israel; IAI and
Elbit are incorporated and have their principal places of
business in Israel; thirteen of the fourteen individual
defendants are citizens of and/or reside in Israel.  Thus, most
if not all of the documentary evidence is in Israel, and many of
the witnesses who are critical to the proof of the alleged
corporate misconduct reside there.  These include employees of
the Israeli Ministry of Defense, whom the plaintiffs contend
have improperly influenced ImageSat.  Indeed, the complaint is
replete with allegations whose substantiation will require
testimony from Israeli government officials and employees.
Obtaining evidence and testimony from these government witnesses
will be far easier, and perhaps only possible, in Israel.  See
Capital Currency Exchange, N.V. v. Nat'l Westminster Bank PLC,
155 F.3d 603, 611 (2d Cir. 1998).

    Plaintiffs argue that defendants can better bear the cost
of litigating outside their home country since their costs and
expenses are being borne either by insurance or indemnification
from their employers.  There is no need to explore this

assertion in any detail since plaintiffs have not shown, much less argued, that they will be unable to afford the cost of pursuing their claims in Israel.  See, e.g., Gilstrap v. Radianz Ltd., 443 F. Supp. 2d 474, 489 (S.D.N.Y. 2006), aff'd, 233 Fed. App'x 83 (2d Cir. 2007).  Thus, the private interest factors strongly favor the Israeli forum.

The public interest factors of greatest relevance to this litigation also favor dismissal.  Israel has a strong interest in the affairs of ImageSat and its corporate governance.  That company maintains its principal place of business in Israel and its business is the exploitation of technology developed in Israel.  Its largest investors are Israeli, including a government-owned investor, and many of those investors who reside outside Israel have strong ties to Israel that go beyond their investment in ImageSat.  Thus, Israel has a strong stake in insuring that the affairs of ImageSat are conducted with integrity and that its judicial system deals efficiently and fairly with complaints about ImageSat's management.  Similarly, the Israeli business community and Israeli citizens generally have an interest in monitoring this litigation.  It is important to them that this commercial dispute is resolved in a way that does not damage the ability of Israeli companies to raise foreign capital.  Additionally, plaintiffs allege that Israeli military interests and the "national agenda of the State of

Israel" have influenced ImageSat to their detriment.  Such allegations have important implications for Israel and virtually none for the United States.[11]

Moreover, the law that will govern the majority of claims here will most likely be the law of the Netherlands Antilles or Israel.  The neutral application of choice-of-law principles is unlikely to lead to the selection of American law for any of the plaintiffs' claims.[12]  Those claims related to the internal affairs of ImageSat, such as the claims for corporate waste and self-dealing, will likely be governed by the law of the Netherlands Antilles.  Other common-law claims, such as those for conversion and unjust enrichment, will most likely be governed by Israeli law.

In contrast, this country's ties to this litigation are limited.  ImageSat is not registered to do business in the United States.  While ImageSat conducted fund raising activities

---

[11]    With their reply, defendants submitted a letter from the Israeli Ministry of Defense to IAI expressing its "strong interest that this case not be litigated before any foreign tribunal."  Plaintiffs were given an opportunity to submit a sur-reply to address this letter.  Because the motion to dismiss should be granted in any event, it is unnecessary to consider this additional evidence in favor of dismissal.

[12]    The parties debate whether a New York choice-of-law provision in the 2000 Security Holders Agreement among ImageSat, IAI, Elbit, WIS Partners, and intervenor-plaintiff Harbinger has any relevance to this dispute.  As described above, the plaintiffs have not shown that that provision will affect the choice of law for the claims brought in this lawsuit.

in this country and some of the plaintiff investors live in this
country or have ties to America, those fund raising activities
are not the gravamen of this lawsuit, and more investors, both
in terms of their numbers and their percentage of ownership,
reside outside this country.  Thus, our courts and juries[13] have
minimal interest in expending their resources to resolve this
essentially foreign commercial dispute.[14]

---

[13]    Neither party has yet made a demand for jury trial, but the
time to do so has not expired.  In the civil cover sheet, the
plaintiffs indicated a desire for a jury trial.

[14]    Plaintiffs, relying on the New York Court of Appeals'
decision in J. Zeevi and Sons, Ltd. v. Grindlays Bank (Uganda)
Limited, 37 N.Y.2d 220 (1975), nonetheless contend that New York
has a "specific governmental interest" in litigation where
defendants have come to New York to solicit investors and obtain
New York capital.  As the Court recognized in Zeevi, New York
occupies a "preeminent financial position" in the world economy,
and the passage of global capital through New York requires that
New York courts be open to the settling of commercial disputes
that are transacted here.  Id. at 227.  But this principle is
not without its limitations, and commercial disputes that are
more fundamentally connected to other venues are more
appropriately settled there.
    More to the point, Zeevi is distinguishable on two crucial
fronts.  First, the language which plaintiffs cull from Zeevi in
support of their position addressed choice-of-law issues, and
not venue.  Second, the facts of Zeevi bespeak a much closer
nexus to New York than do the facts in this case.  Upon order of
the Ugandan Ministry of Finance canceling foreign exchange
allocations in favor of Israeli companies, defendant Grindlays
Bank canceled payment of certain letters of credit, of which
plaintiff was the beneficiary.  Grindlays Bank argued that there
was a lack of jurisdiction rendering it amenable to suit in New
York.  The Court of Appeals ruled that Grindlays had
anticipatorily breached its obligations under a letter of credit
and that "New York was the locus of repudiation" of the
instrument because the "defendant's order countermanding payment
by cable and letter took effect upon receipt by Citibank in New

"[T]he balance of private and public interests weighs decisively in favor of adjudicating the case in the courts" of Israel.  USHA (India), Ltd. v. Honeywell Int'l, 421 F.3d 129, 134 (2d Cir. 2005).  Even when the deference properly accorded the plaintiffs' choice of forum in this case is added to the equation, the defendants have carried their heavy burden of showing that dismissal in favor of litigation in Israel is warranted.

IV.  Conditional Dismissal

Plaintiffs request that any dismissal be conditioned on defendants' written agreement (1) to submit to the jurisdiction of the appropriate Israeli tribunal and to service of process in an action to be commenced in that tribunal, (2) to waive any defense to the Israeli action based upon any statute of limitations or otherwise based on the passage of time, and (3) to preserve documents and electronically stored information pending the filing of an Israeli action and for a reasonable time thereafter.  All defendants except James DePalma have explicitly consented to this demand.

---

York and then gave rise to a cause of action here."  Id. at 226. In this case, plaintiffs' complaint concerns allegations of corporate mismanagement of an Israeli firm.  Israel is indisputably the locus of the various actions of which plaintiffs complain.

CRITICAL

Defendants, other than DePalma, have agreed to submit to the jurisdiction of an Israeli court and to service of process, underscoring, however, that they have not waived their right to seek arbitration of this dispute.  Plaintiffs have not suggested that DePalma's failure to stipulate is material to their action. Defendants have also agreed that all claims in an Israeli action should only be subject to such time bars as existed as of July 2, 2007, the date this action was filed in the Southern District of New York.  Finally, defendants responding to this motion have acknowledged their obligations to preserve relevant paper and electronic documents.  With these conditions and agreements binding defendants, it is appropriate to grant the dismissal.

CONCLUSION

Subject to an accompanying order, defendants' October 15, 2007 motion to dismiss is granted.

SO ORDERED:

Dated:    New York, New York
          July 30, 2008

                                    _____
                                            DENISE COTE
                                    United States District Judge